Christopher S. Marchese (SBN 170239), marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240, Fax: (858) 678-5099

Frank Scherkenbach (SBN 142549), scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted *Pro Hac Vice*), glitzenstein@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070, Fax: (617) 542-8906

Olga I. May (SBN 232012), omay@fr.com
K. Nicole Williams (SBN 291900), nwilliams@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-4745, Fax: (858) 678-5099

Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V.

*[Caption continued on following page.]*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS B.V., <br><br> Plaintiffs, <br><br> v. <br><br> NIKON CORPORATION, SENDAI NIKON CORPORATION, and NIKON INC., <br><br> Defendants. | Case No. 2:17-cv-07083-RGK (MRWx) <br><br> **JOINT RULE 26(f) REPORT** <br><br> Judge: Hon. R. Gary Klausner <br> Magistrate Judge: Hon. Michael R. Wilner |

Vincent J. Belusko, VBelusko@mofo.com
Roman A. Swoopes, RSwoopes@mofo.com
A Max Olson, aolson@mofo.com
Jonathan Smith, jonathansmith@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
Tel: (213) 892-5200, Fax: (213) 892-5454

Shaelyn K. Dawson, ShaelynDawson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Tel: (415) 268-7000, Fax: (415) 268-7522

Kyle W. Mooney, kmooney@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 336-4094, Fax: (212) 468-7900

Attorneys for Defendants
NIKON CORPORATION, SENDAI NIKON
CORPORATION, and NIKON INC.

## I. BRIEF SYNOPSIS OF THE CASE

Carl Zeiss AG ("Zeiss") and ASML Netherlands B.V. ("ASML") (collectively, "Plaintiffs") filed this action on September 26, 2017, alleging infringement of United States Patent Nos. 6,463,163; 6,731,335, and 9,728,574 (collectively, "the patents-in-suit") by Nikon Corporation, Sendai Nikon Corporation, and Nikon Inc. (collectively "Defendants"). Plaintiffs seek damages adequate to compensate for such alleged infringement and no less than a reasonable royalty together with interest and costs as fixed by the court. Defendants deny infringement and assert that the patents-in-suit are invalid. The case was transferred from Judge Wright to Judge Klausner on Oct. 3, 2017. (D.I. 19.) On November 2, 2017, Defendants filed an Answer to the Complaint. (D.I. 35.)

These parties are presently engaged in Case No. 2:17-cv-03221 ("the 3221 case") in this Court concerning four patents related to digital camera technology. The 3221 case is set for trial on June 26, 2018. (3221 case, D.I. 55.)

## II. MATTERS TO BE ADDRESSED PURSUANT TO RULE 26(f)

### A. Fed. R. Civ. P. 26(f)(3)(A): Timing and Form of Rule 26(a) Disclosures

#### 1. Rule 26(a)(1) Disclosures

The parties agree to exchange Rule 26(a)(1) disclosures on March 12, 2018.

#### 2. Rule 26(a)(2) Disclosures

Plaintiffs submit that the timing of expert discovery should follow Federal Rule of Civil Procedure 26(a)(2)(D).

### B. Fed. R. Civ. P. 26(f)(3)(B): Discovery and Pretrial Plan

The parties' proposed discovery schedule is set forth below.

#### 1. Points of Agreement

The parties anticipate that fact discovery will be needed concerning the following high-level issues in the case: infringement and noninfringement of the

patents-in-suit; validity and invalidity of the patents-in-suit; the extent and bases for the calculation of damages; the bases of any defenses that Defendants assert; and other issues that may arise over the course of this action. The parties also submit that expert discovery is necessary and that third party discovery will be needed as well.

The parties submit that briefing on claim construction issues and a *Markman* hearing could be useful in this case. The parties' proposed schedule below includes dates relevant to claim construction.

The parties see no need for a Special Master in this case.

### 2. Plaintiffs' Position on Contention Discovery

Plaintiffs submit that the discovery requests should govern the disclosure of infringement and invalidity contentions.

### 3. Defendants' Position on Contention Discovery

Defendants believe that the parties would benefit from establishing a framework at the outset of this case to govern the content and timing of infringement, invalidity, and damages contentions. Defendants specifically propose the parties should make disclosures that mirror the content and timing of Northern District of California's Patent Local Rules. Accordingly, Plaintiffs should be required to disclose their infringement contentions before Defendants are required to disclose their invalidity contentions or respond to any discovery requests related to Defendants' invalidity theories. The table below contains Defendants' proposals for the timing of the submission of contentions.[1]

---

[1] Because the parties could not agree on a proposed case schedule, both sides have served contention interrogatories. It is Defendants' position that these interrogatories are premature in light of Defendants' proposal that the court set a contentions schedule for infringement, invalidity, and damages. If the court adopts Defendants' proposal, Defendants believe both parties should drop the interrogatories that overlap with contentions.

### 4. Plaintiffs' Position on the Reuse of Documents and Deposition Testimony from the 3221 Case

In the interests of efficiency and cost-reduction, Plaintiffs submit that documents and deposition testimony produced in the 3221 case should be used in this Action without requiring the re-production of such documents and depositions. Corporate witnesses deposed in the 3221 case shall not be deposed for a second time in this Action on overlapping corporate deposition topics. Rather, the deposition testimony from the 3221 case shall be afforded the same treatment in this Action as though it were elicited originally in this Action for any and all overlapping deposition topics.

### 5. Defendants' Position on the Reuse of Documents and Deposition Testimony from the 3221 Case

Defendants agree that relevant documents and deposition testimony produced in the 3221 case may be used in this Action without requiring the re-production of such documents and depositions. Defendants disagree with Plaintiffs' position regarding the reuse of corporate witnesses' depositions. Plaintiffs have chosen to sue Defendants in a separate lawsuit on separate patents and, under FRCP 30, Defendants have a right to depose Plaintiffs' corporate witnesses in connection with this Action specifically.

To be clear, absent written permission to the contrary, the Parties may not use any documents or depositions from the case pending between the parties in the International Trade Commission in In re Matter of Certain Digital Cameras, Devices, and Components Thereof, Investigation No. 337-TA-1059. Additionally, the Parties may not use any documents or depositions produced in Case No. 2:17-cv-07083-RGK (MRWx) for Case No. 2:17-cv-03221-RGK (MRWx).

### 6. Foreign Discovery

Plaintiffs anticipate that foreign discovery from third parties will be necessary.

This includes Letters Rogatory directed to third parties in Japan.

## 7. The Parties' Proposed Case Schedules

The parties propose the following dates:

| Event | Plaintiffs' Proposed Dates | Defendants' Proposed Dates |
|---|---|---|
| Scheduling Conference | February 26, 2018 | February 26, 2018 |
| Initial Disclosures | March 12, 2018 | March 12, 2018 |
| Deadline to Join Parties or Amend Pleadings without Cause | March 7, 2018 | April 23, 2018 |
| Infringement Contentions | n/a | March 12, 2018 (N.D. Cal. P.L.R. 3-1) |
| Invalidity Contentions | n/a | April 26, 2018 (N.D. Cal. P.L.R. 3-3) |
| Damages Contentions | n/a | June 15, 2018 (N.D. Cal. P.L.R. 3-8) |
| Responsive Damages Contentions | n/a | July 16, 2018 |
| Exchange Proposed Claim Terms for Construction | | July 23, 2018 |
| Joint Claim Construction Statement (including proposed constructions and list of extrinsic evidence) | | August 13, 2018 |
| Opening *Markman* Briefs | | September 4, 2018 |
| Rebuttal *Markman* Briefs | | September 18, 2018 |
| *Markman* Hearing | | September 24, 2018 |

| Event | Plaintiffs' Proposed Dates | Defendants' Proposed Dates |
|---|---|---|
| Completion of Fact Discovery | July 20, 2018 | November 5, 2018 |
| Completion of Expert Discovery | | December 3, 2018 |
| Last day to File Motions (Including Dispositive and *Daubert* Motions) | August 22, 2018 | December 17, 2018 |
| Memoranda of Contentions of Fact and Law, Witness List, and Exhibit List | September 17, 2018 | January 7, 2019 |
| Narrative Statement of Expert Qualifications | October 1, 2018 | January 21, 2019 |
| Pretrial Conference | October 8, 2018 | February 4, 2019 |
| Jury Trial | October 22, 2018 | February 19, 2019 |

### 8. Electronic Service Protocol

The parties agree to electronically serve any document (including all exhibits or attachments thereto) that is not filed with the Court, or is filed under seal with the Court, including all correspondence. No confirmatory hard copies need be provided. The parties may be served by email at the addresses below:

For Plaintiffs: External-Zeiss-NikonCDCAL7083ServiceEmail@fr.com

For Defendants: Nikon7083MoFoExternal@mofo.com

The parties agree that emailing PDF documents to the email address recited above by 11:59 PM Pacific Time on a given day shall constitute valid service on that day pursuant to Fed. R. Civ. P. 5. The parties agree that such electronic service should have the same effect as personal service under the Federal Rules. The parties further

agree that if a party elects to serve a document using a method of service other than email, the serving party will also email the other party a PDF copy of the document on the same day the document is served. Exhibits or other documents too voluminous to be sent practicably by email may be served using a secure file transfer site or by overnight courier. In that regard, document productions shall not be made by email.

### C. Fed. R. Civ. P. 26(f)(3)(C): Electronically Stored Information and Email

#### 1. Electronically Stored Information

The parties agree that they will take reasonable, good-faith steps to preserve potentially relevant electronically stored information, as required under the Federal Rules of Civil Procedure.

#### 2. Document Production

Absent a showing of good cause, ESI productions need not include metadata except that the following fields shall be included in the production if such fields exist and are reasonably available to the producing party:

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Number stamped on first image page of document |
| ENDBATES | Number stamped on last image page of document |
| BEGATTACH | Number stamped on first image page of attachment(s) |
| ENDATTACH | Number stamped on last image page of attachment(s) |
| CONFIDENTIALITY | Indicates whether a document has been designated as confidential under the stipulated protective order that the parties plan to submit |

| **Field Name** | **Field Description** |
|---|---|
| CUSTODIAN | Where applicable and available, identifies the individual (custodian) from whom the document originated and all other individuals whose files were de-duplicated but contained a copy of the document (De-Duped Custodian) |
| FILENAME | File name of an electronic document or attachment |
| NATIVEFILELINK | For documents produced as native file, link to that file |
| TEXTFILELINK | Link to text file produced with document or attachment |
| FILE EXTENSION | File extension of the native document |

The parties agree that all electronic materials produced in this action shall be exchanged electronically via secure FTP or on CD, DVD, flash drive, or hard drive. To the extent the documents are ordinarily maintained by the producing party in a form that is electronically searchable, they must be produced in a form that is electronically searchable. To the extent a producing party provides electronically-produced files in searchable format, the receiving party accepts the searchable portion of the file "as is," and the producing party accepts no liability as to the accuracy of searches conducted upon such files, provided the production complies with all aspects of these stipulations.

For documents originating in paper format, the parties agree to scan such documents and exchange:

(a) Concordance DAT files containing unique field delimiters and the following fields: (i) Beginning Production Number; (ii) Ending Production Number; and (iii) Confidentiality;

    (b) The corresponding scanned images in single-page TIFF format for images produced in black and white, and JPEG format for images produced in grayscale or color; however, if such images cannot be produced legibly in TIFF or JPEG format, they will be produced in high resolution PDF format, unless the producing party elects to produce the document(s) solely in native format;

    (c) Optical character recognition (OCR) data included as part of the DAT file or in separate files to the extent such OCR data is in the possession of the producing party or its counsel. To the extent a producing party provides OCR data, the receiving party accepts the data "as is," and the producing party accepts no liability as to the accuracy of searches conducted using the OCR data and no party may bring a discovery motion based upon the provision of OCR data; and

    (d) All document productions should be logically unitized (i.e., to preserve page breaks between documents and otherwise allow separate documents to be identified), if applicable.

For certain documents originating in electronic format that can only be effectively used and understood in their native format (e.g., Excel files, .txt files, and media files), a party may choose to produce such documents in native format. Such files shall be labeled with a unique production number and appropriate confidentiality designation, if any, in the file name or on the disks, hard drives, or other media containing such electronic files, as well as in the BEG BATES field of the load file. However, the receiving party must reasonably, and without unduly burdensome measures by the producing party, be able to open and review any documents produced solely in native format. A party that opts to produce these electronic files in native format will provide at least the following metadata fields: custodian name; filename; and date modified. In the event that a party converts one of these natively produced

documents to PDF, TIFF, or paper format, that party agrees to apply the appropriate confidentiality label to each page of such document as well as the unique Bates number associated with that page; in the event a receiving party contends that such an approach would impose undue burden in a particular case, the receiving party agrees to promptly confer with the producing party prior to converting such documents to PDF, TIFF, or paper format about the manner in which confidentiality and Bates designations will be applied to such documents and will not engage in such conversion unless agreement has been reached.

If a receiving party determines that any electronic document received from the producing party that is not in native format is not reasonably usable or intelligible due to the production format, or upon another showing of good cause, the receiving party may request and obtain any such documents from the producing party in native format.

### 3. Sources Not to Be Searched

Absent a showing of good cause, neither party shall be obligated to search for or produce data from: automated disaster recovery backup systems and/or disaster recovery backup tapes; RAM or temporary files; temporary internet files, history, cache, cookies, and other on-line access data; data in metadata fields that are updated automatically such as last-opened dates; data remaining from systems no longer in use that is unintelligible on the systems in use; residual, fragmented, damaged, permanently deleted, slack, and unallocated data; legacy computer systems; personal digital assistants; mobile devices; cell phones; USB flash drives, or the like; portable disks; voicemails; instant messages; cell phone text messages; or social media.

### 4. Email

The parties agree that they are not obligated to search for, collect, produce, or log on a privilege log emails in response to any interrogatories or document requests served by any of the parties. If either party determines in good faith that emails from custodians should be searched and produced, then that party must demonstrate good

1 cause for the limited production of emails from such custodians. The parties agree
2 that, in the event email is sought, the request for email shall be as specific and narrow
3 as possible. The parties further agree that, in the event email is sought, the request
4 shall specifically identify, to the extent possible, the requested email custodian, search
5 terms for that custodian's email, and a relevant time frame. If, after meeting and
6 conferring, a resolution cannot be reached, the party seeking production may move
7 for relief from the Court. Notwithstanding the foregoing, no party is prohibiting from
8 producing emails or affirmatively relying upon any emails that it has produced or
9 otherwise obtained.

**D.    Fed. R. Civ. P. 26(f)(3)(D): Privilege and Protection Issues**

  **1.    Points of Agreement**

The parties agree to submit a proposed protective order for the Court's approval to protect the confidentiality of documents and things produced during this action.

The parties further agree to the following with respect to the discoverability of expert communications:

(a) The parties agree that they will not seek drafts of expert reports, declarations, or affidavits, or notes taken by experts retained to testify in this case or in any other litigation or proceeding (past or current) in which the expert has been retained. The parties further agree that they will not seek communications or documents relating to communications between such experts and counsel, including email communications, whether generated in connection with this case or another litigation or proceeding.

(b) Except where a draft was produced as the only available copy, the parties agree not to inquire at deposition or trial as to the contents of drafts of expert reports, declarations, or affidavits or notes pertaining thereto, whether drafted in connection with this case or another litigation or proceeding, and that the parties will not inquire at deposition or at trial as to the expert's

communications, whether written or oral, with counsel, whether generated in connection with this case or another litigation or proceeding.

(c) The parties will, however, identify and produce copies of any documents referenced, cited, or relied upon by the expert in his or her expert report. Furthermore, nothing in the parties' agreement is intended to restrict the parties' ability to (i) inquire into the basis of any of the opinions expressed by any experts in his or her report, declaration, or affidavit, including the manner by which such opinions were reached, and information relied upon in reaching such opinions; (ii) otherwise inquire into the process by which an expert report, affidavit or declaration was drafted, provided that, in so doing, the parties may not discover the contents of any such drafts of expert reports, declarations or affidavits, or notes pertaining thereto; or (iii) obtain reports, testimony, or other evidence through other means such as publicly available sources.

**2.   Plaintiffs' Position on Privilege Logs**

Plaintiffs submit that the burden of generating privilege logs outweighs the benefit, and that the parties' counsel, as officers of the Court, can be trusted to withhold documents on the basis of privilege only when it is justified. Accordingly, Plaintiff proposes that the parties not be required to produce privilege logs in this action.

**3.   Defendants' Position on Privilege Logs**

Defendants propose that the parties meet and confer in good faith regarding the format for privilege logs. In addition, Defendants propose that any responsive documents that are attorney-client or work-product privileged that were created after the date that this action was commenced (September 26, 2017) do not need to be reflected on a privilege log.

**E. Fed. R. Civ. P. 26(f)(3)(E): Additional Limitations on Discovery**

The parties agree that the discovery limits of the Federal Rules of Civil Procedure shall be observed with respect to all discovery, except as noted below.

**1. Depositions**

*Limitations*

**Plaintiffs' Position.** Plaintiffs contend that a total of 170 hours per side is appropriate as a limit for depositions of parties and their present employees and inventors who no longer work for the company, pursuant to Fed. R. Civ. P. 30(b)(1) and 30(b)(6), and for third parties. Each deposition should be limited to no more than seven (7) hours per deponent on the record, with the exception of: (1) depositions of witnesses requiring an interpreter, which should be limited to no more than fourteen (14) hours per deponent on the record, provided, however, that for such translated depositions the number of hours counted against the 170-hour limit shall be the number of hours on the record divided by two; and (2) depositions pursuant to Fed. R. Civ. P. 30(b)(6), which may be longer than seven (7) hours on the record per deponent for any deponent designated for a substantial number of deposition topics, and whose duration will be determined in advance of the deposition in good faith by the parties on a case-by-case basis. Plaintiffs further contend that these total numbers of hours and per-deposition time limits will not include expert depositions, the limits of which should be calculated separately and agreed to by the parties at a later date.

**Defendants' Position.** Defendants contend that the limitations on depositions imposed by Federal Rule of Civil Procedure 30 (i.e., 10 depositions of 7 hours each, for a total of 70 hours) are appropriate for this case. Defendants contend that to the extent any deposition testimony is reused from the 3221 case in accordance with Section II(B)(5), such deposition time will count against the total limit. Defendants further contend that the parties should attempt to negotiate any deviations from these limits on a case-by-case basis.

*Location*

The parties agree that depositions be conducted at a location of the witness's convenience, unless otherwise required by law or agreed to by the parties.

**2.      Interrogatories**

**a.      Plaintiffs' Position**

Plaintiffs propose that each side is permitted to serve up to a maximum of 35 interrogatories upon the other side.

**b.      Defendants' Position**

Defendants' propose that each side is permitted to serve up to a maximum of 25 interrogatories upon the other side in accordance with Fed. R. Civ. P. 33.

**3.      Requests for Admission**

The parties agree that each side is permitted to serve up to a maximum of 50 requests for admission upon the other side. A reasonable number of requests for admission intended solely for document authentication will not count toward this total.

**F.      Fed. R. Civ. P. 26(f)(3)(F): Other Orders Currently Sought from the Court**

The parties will submit a proposed protective order for the Court's approval to protect the confidentiality of documents and things produced during this action.

**III.    MATTERS TO BE ADDRESSED PURSUANT TO LOCAL RULE 26-1**

**A.      Complex Cases**

The parties agree that this litigation is not "complex" within the meaning of the Manual for Complex Litigation, and no portion of the Manual for Complex Litigation needs to be utilized in this matter.

**B.      Dispositive Motion Schedule**

Pursuant to Local Rule 26-1(b), the parties anticipate bringing motions for summary judgment on the schedule proposed above in Section II.B.

**C.   Alternative Dispute Resolution**

The parties agree to proceed with Settlement Procedure No. 2 under L.R. 16-15.4.

**D.   Trial Estimate**

The parties estimate that trial will last six (6) court days.

**E.   Additional Parties**

Subject to new and material disclosures during the course of discovery, Plaintiffs do not at this time know whether they will add additional defendants to the case and therefore reserve the right to do so.

**F.   Expert Witnesses**

Plaintiffs submit that the timing of expert discovery should follow Federal Rule of Civil Procedure 26(a)(2)(D).

Dated: February 16, 2018          FISH & RICHARDSON P.C.

                                  By: */s/ K. Nicole Williams*
                                       K. Nicole Williams

                                  Attorneys for Plaintiffs
                                  CARL ZEISS AG AND ASML
                                  NETHERLANDS B.V.

Dated: February 16, 2018          MORRISON & FOERSTER LLP

                                  By: */s/ Vincent J. Belusko*
                                       Vincent J. Belusko

                                  Attorneys for Defendants
                                  NIKON CORPORATION, SENDAI
                                  NIKON CORPORATION, AND NIKON
                                  INC.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 16, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ K. Nicole Williams*
nwilliams@fr.com