HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   Christopher S. Marchese (170239)
2   marchese@fr.com
3   FISH & RICHARDSON P.C.
    633 West Fifth Street, 26th Floor
4   Los Angeles, CA 90071
    Tel: (213) 533-4240
5   Fax: (877) 417-2378

6   *[Additional Counsel listed on last page.]*

7   Attorneys for Plaintiffs, CARL ZEISS
8   AG and ASML NETHERLANDS B.V.

Vincent J. Belusko (CA SBN 100282)
VBelusko@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard Los Angeles,
California 90017
Tel: (213) 892-5200
Fax: (213) 892-5454

*[Additional Counsel listed on last page.]*

Attorneys for Defendants
NIKON CORPORATION, SENDAI
NIKON CORPORATION, and NIKON
INC.

11      IN THE UNITED STATES DISTRICT COURT
12   FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13   CARL ZEISS AG and ASML
     NETHERLANDS B.V.,
14
15            Plaintiffs,
16   v.
17   NIKON CORPORATION, SENDAI
     NIKON CORPORATION, and NIKON
18   INC.,
19            Defendants.
20
21
22
23
24
25
26
27
28

Case No. 2:17-cv-07083-RGK (MRWx)

**JOINT STIPULATION PURSUANT
TO L.R. 37-2 REGARDING
DISCOVERY DISPUTE OVER
SOURCE CODE**

**[REDACTED VERSION]**

District Judge:  R. Gary Klausner
Magistrate Judge:  Michael R. Wilner

Hearing Date:  July 11, 2018
Time:  9:30 a.m.
Courtroom:  550, 5th Floor
Judge:  Hon. Michael R. Wilner

**DISCOVERY MATTER**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# TABLE OF CONTENTS

I.      Introductory Statement By Plaintiffs ...................................................... 1

II.     Introductory Statement By NIKON ...................................................... 3

III.    Issue In Dispute ...................................................................................... 6

IV.     Plaintiffs' Contentions ........................................................................... 6

        A.      Nikon Has Source Code At Least In the Form of "Library
                and Header" Files and Code That Uses Those Files ................ 6

        B.      The Protective Order Requires Production of Source
                Code  In a Format Allowing It To Be Reasonably
                Reviewed and Searched ........................................................... 6

        C.      Nikon Has Agreed to Produce the Files, But Not in a
                Format Allowing Reasonable Review and Search
                (Without Additional Software) ................................................. 8

        D.      Plaintiffs Have Diligently Sought Meaningful Inspection ....... 9

        E.      Nikon's Objections to Allowing Plaintiffs' Expert To
                Use Its Desired Inspection Tools (Including Reverse
                Engineering Tools) Are Without Merit .................................. 11

        F.      Statement of How Plaintiffs Proposed to Resolve the
                Dispute Over the Issue at Conference With Counsel ............. 14

V.      Nikon's Contentions ............................................................................ 15

        A.      Background ............................................................................. 15

        B.      Plaintiffs' Motion Is Premature in View of Its ████
                Discovery Efforts. .................................................................. 17

        C.      Nikon Fulfilled Its Discovery Obligations Under
                Plaintiffs' Requests for Production When It Made the
                Library Files Available for Inspection. ................................... 18

        D.      Nikon Fulfilled Its Obligations Under the Protective
                Order When It Made the Library Files Available for
                Inspection in Native Form, Since the Protective Order

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Does Not Require Nikon to Install Reverse Engineering
Tools. ....................................................................................19

    1.     The Protective Order Only Requires Library Files
            to Be Made Available for Inspection in Native
            Form. ...........................................................................19

    2.     Paragraph 7.5(c) of the Protective Order Does Not
            Require Installation of the Requested Reverse
            Engineering Tools. ......................................................20

E.    Plaintiffs' Motion Is Nothing More than a Motion to
      Modify the Protective Order and No Good Cause Exists
      for Granting Plaintiffs' Request Since Doing so Will
      Violate Nikon's Contract with ████ to Not Reverse
      Engineer ████ Library Files. ............................................22

F.    Plaintiffs' Offer Under L.R. 37-2.1 Does Not Resolve the
      Dispute. .................................................................................23

JOINT STIPULATION PER L.R. 37-2 REGARDING SOURCE CODE
CASE 2:17-CV-07083-RGK (MRWX)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## I.     INTRODUCTORY STATEMENT BY PLAINTIFFS

Plaintiffs have sued Nikon for patent infringement.  For one patent, Nikon has "library" files in its possession that likely reveal how Nikon's cameras practice the accused feature.  Nikon has agreed to make the library files available on a review computer, but is refusing to allow Plaintiffs to install and use the software necessary to inspect meaningfully their contents.  The parties have reached an impasse on this matter.  ***Plaintiffs seek the following relief***:  Nikon must produce the "library files" and related source code in its possession, and allow Plaintiffs to use the software necessary to meaningfully review and search these files as Plaintiffs' proposed expert identifies in his declaration, Exhibit 1 at ¶ 10.

There is no dispute that these library files are Source Code within the definition of the protective order, Exhibit 1 (Doc. 75) at § 2.5 ("For purposes of this Order, 'Source Code' … includes … library files ….")  There is no dispute that these files contain computer instructions also known as computer code, or object code.  *Id.* at § 2.5 ("'Source Code means … computer code [and] object code…").

There is no dispute that the protective order requires Nikon to produce these files in a format allowing them to be reasonably reviewed and searched.  *Id.* at § 7.5(b) ("Any Source Code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched").

These is no dispute that to review and search these files, one needs to use software that can read the contents of these files, just as with any other computer file.

And there is no dispute that Nikon is refusing to allow Plaintiffs to install the software they need to meaningfully inspect these critical files.

Plaintiffs have repeatedly asked for the inspection of this Source Code, as detailed in Section IV.D below.  *See* also Exhibit 2 (main email thread between counsel).  Plaintiffs have pressed for this information because the source code contains core infringement evidence showing how the library files (which are installed on Nikon cameras) practice one of Plaintiffs' patents.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    Nikon's positions have shifted over time from: (1) refusing to disclose the
2  source code, (2) disclosing the existence of source code files but not identifying the
3  manufacturer, (3) disclosing the source code as consisting of "library and header
4  files" and offering to discuss a reasonable time and place for inspection, (4) ignoring
5  Plaintiffs' requests for these files; (5) claiming that Plaintiffs never requested the
6  library files and refusing to produce them, (6) claiming the library files were not
7  relevant, (7) citing a contract in the Japanese language they Nikon said prevented
8  them from "being reverse engineered or otherwise decompiled" and refusing to
9  produce them, (8) agreeing to produce the library files but not allowing installation of
10  the disassembly software necessary to inspect them due to contract.

11    Nikon's delays have consumed precious time.  While Plaintiffs have been
12  diligent in its pursuit of these files, *see* timeline *infra* Section IV.D, Nikon's shifting
13  objections have consumed almost all of the discovery period in this case.  Nikon's
14  delay has worked great prejudice on Plaintiffs, and these files should have been
15  produced months ago.

16    Plaintiffs respectfully request that the Court order the production of source
17  code with the software requested by Plaintiffs' experts necessary to review and search
18  the files, including any reverse engineering tools.  *See* Exhibit 1 ¶ 10.  If Nikon feels
19  it is unable or unwilling to meet its obligation under the protective order that "[a]ny
20  Source Code produced in discovery shall be made available for inspection, ***in a***
21  ***format allowing it to be reasonably reviewed and searched***," Exhibit 3 at § 7.5(b),
22  then Plaintiffs' experts can provide a source code review computer that complies that
23  the protective order (no network access, etc.) set up with the software needed to
24  inspect the library files, which can be left at the offices of Nikon's counsel
25  throughout the case.

26

27

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

## II.    INTRODUCTORY STATEMENT BY NIKON

Plaintiffs' motion implicates the highly-confidential and proprietary software

of ███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ in a ***human-readable*** form called

"***source code***."  This is the source code that Plaintiffs want.  But Nikon does not have

this source code.  Nikon has only the ***machine-readable*** code created from that

source code that is called "***object code***" (library files), *i.e.*, the code that is installed

on some of Nikon's cameras.[1]  Nikon obtained this object code ██████████████

████████████████████████████████████████████████████████

██████████    Plaintiffs' claim that Nikon must facilitate the reverse engineering

of ████████████████████████████ is contrary to the  terms of the

protective order and Plaintiffs do not even attempt to establish good cause to re-write

the protective order.

Plaintiffs knew or should have known that ████████████ was at issue since

before this action was even filed in light of the parties' ongoing parallel litigations.

But Plaintiffs did not diligently pursue discovery of the ██████████████

██████.  Instead, Plaintiffs waited until the eleventh hour before attempting to obtain

this source code ██████████.  Plaintiffs are now pursuing Letters Rogatory and have

served ██████████████████████████.  Therefore, Plaintiffs

have a viable remedy to obtain the discovery that they seek.  Plaintiffs should not be

able to end run the formal discovery process by forcing Nikon to reverse engineer

---

[1] *See Asset Mktg. Sys. Inc. v. Gagnon*, 542 F.3d 748, 755 n.5 (9th Cir. 2008) (discussing difference between the source code authored by programmers and compiled object code that machines can understand and execute).  (*See also* Ex. 1 ¶ 15 (demonstrating what library files look like to humans).)

JOINT STIPULATION PER L.R. 37-2 REGARDING SOURCE CODE
CASE 2:17-CV-07083-RGK (MRWx)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  ▮▮▮▮▮▮▮▮▮  just because Plaintiffs fear that they have waited too long to obtain and

2  analyze that code.[2]

3      Plaintiffs' request is also contrary to the existing protective order.  The

4  production of Source Code files under the Protective Order only requires two things.

5  *First*, the files themselves must be placed on a secure computer and made available

6  for inspection.  *Second*, if the Receiving Party (in this case, Plaintiffs) requests,

7  Nikon must install "commercially available software tools for ***viewing and searching***

8  Source Code" on the secure computer.  Nikon fully complied with both of these

9  provisions when it made the ▮▮▮▮ library files available for inspection on June 6.

10 (*See* Section V.D.1.)  Plaintiffs' recent claim that "software tools for viewing and

11 searching" also includes reverse engineering software is belied by its own discovery

12 correspondence, which characterized that software as "decompilers" or "other reverse

13 engineering tools."  (*See* Section V.D.2.)  The Protective Order does not require

14 Nikon to install a decompiler or any other reverse engineering tool on the secure

15 computer.

16     Accordingly, the only basis for granting Plaintiffs' request for reverse

17 engineering tools is through a modification of the Protective Order.  But Plaintiffs

18 have not—and cannot—show good cause to modify the Protective Order.  Modifying

19 the Protective Order that Plaintiffs willingly entered into now to allow reverse

20 engineering would not only breach ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮  with Nikon, it would also nullify the protections afforded to third

22 parties like ▮▮▮▮  under paragraph 10 of the Protective Order.  (*See* Section V.E.)

23     In sum, Plaintiffs have served ▮▮▮▮  with a subpoena requesting human

24 readable source code for the very same library files as are at issue in this motion.

25

26  _____

27     [2] Plaintiffs' claim that they are merely asking Nikon to facilitate ***Plaintiffs'***
    reverse engineering of the code is pure form over substance.  No reasonable

28  interpretation of ▮▮▮▮▮▮▮▮▮▮▮▮▮  would allow for Nikon to facilitate a
    third party's reverse engineering of the code provided to it.

4

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  Plaintiffs must allow that formal discovery process to play out and should seek to

2  obtain human readable source code directly from ████.  Plaintiffs' request that

3  Nikon facilitate Plaintiffs' reverse engineering of ████ code in violation of

4  Nikon's license agreement should be denied.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

## III.    ISSUE IN DISPUTE

Are Plaintiffs permitted to review and search Nikon's source code production including "library" files using software generally known as disassembly (aka decompilation or reverse engineering) software?

## IV.    PLAINTIFFS' CONTENTIONS

### A.    Nikon Has Source Code At Least In the Form of "Library and Header" Files and Code That Uses Those Files

Plaintiffs have sued Nikon accusing a number of Nikon-branded cameras of infringing a patent relating to detecting faces and other objects in images.  Nikon represents that this functionality is provided by a third party supplier to Nikon.

Nikon has represented to Plaintiffs that it has "library and header" files that are provided to it by this third party (███████████) that contains at least some of the detection functionality.  *See, e.g.,* Exhibit 2 at 16 (Nikon's May 4 email to Plaintiffs referencing "library and header files" and stating after addressing third party CBI "we can discuss a reasonable time and place for their inspection."); *see also* Exhibit 4 at 31 (Nikon's May 10 second supplemental response to interrogatory No. 8, stating ████████████████████████ ████████████████████████████████ ████████)

This ██████ source code is important evidence in Plaintiffs' case against Nikon, since it may contain all or part of the algorithms by which the accused cameras perform object and face detection, a core issue going to infringement of one of the patents in this case.

### B.    The Protective Order Requires Production of Source Code In a Format Allowing It To Be Reasonably Reviewed and Searched

Nikon may not refuse to allow meaningful inspection of critical source code. This is a basic aspect of Nikon's discovery obligations, and is expressly confirmed by the Protective Order: "Any Source Code produced in discovery shall be made

6

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

available for inspection, ***in a format allowing it to be reasonably reviewed and searched.***" Exhibit 3 at 7.5(b). This provision addresses the thousands of possible ways that Source Code that may be in a party's possession.[3] *See* Exhibit 1 at ¶ 11. The software required to review and search each type of file varies with the type of file being viewed or searched. *Id.*

This is no different than other files stored in a computer. For instance, legal briefs like this one are commonly written with word processing software that saves files with the extension ".doc" or ".wpd." Without the proper software to interpret those files, the contents are gobbledygook. *See* Exhibit 1 ¶ 13 (showing the contents of the expert's declaration to this motion as it appears on the computer without the proper software).

The protective order does not—and need not—explicitly state "in the event that Source Code is stored in Microsoft Word format, Nikon shall allow Plaintiff to use Microsoft Word to open the document." This is superfluous because the point is that "any Source Code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched." To deny the use of software to read the file is to fail to provide the file in a "in a format allowing it to be reasonably reviewed and searched." It is not meaningful production at all.

---

[3] The Protective Order lays out the general categories of Source Code for this case, and even in these general categories there are thousands of specific implementations. Exs. 1 ¶ 11, 3 § 2.5 ("For purposes of this Order, 'Source Code' means source code, computer code, object code (*i.e.,* computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator), microcode, pseudocode, source code listings and descriptions of source code, object code listings and descriptions of object code, register transfer language ('RTL'), firmware, and hardware description language ('HDL'), as well as any and all programmer notes, annotations, revision histories, and other comments of any type related thereto and accompanying the code. For avoidance of doubt, this includes, but is not limited to, source files, make files, intermediate output files, executable files, header files, resource files, binaries, scripts, algorithms, library files, module definition files, map files, object files, linker files, browse info files, and debug files.")

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    The situation is no different when dealing with a library file rather than a word

2    processing file.   Again, without the right software, the file might appear as

3    gobbledygook.  See Exhibit 1 ¶ 15 (showing the contents of a library file for Microsoft

4    Windows as it is displayed on the computer without the proper software).  Just like

5    the word processing file example, without the correct software to interpret the 0's and

6    1's that are encoded within the computer, the library file has not been provided "in a

7    format allowing it to be reasonably reviewed and searched."

8    Whereas the software needed to inspect the "docx" files is a word processor,

9    the software needed to inspect the "library" files at issue here is a disassembler /

10   decompiler.

11   Furthermore, to the extent Nikon contends that source code in binary or "object

12   code" form is somehow different and need not be produced in a reasonably viewable

13   and searchable format, or that a party need not be allowed to install the tools it needs

14   to reasonably view and search them, the Protective Order itself rebuts that contention.

15   The protective order's source code provision *mostly* contemplates the production of

16   such binary or object code.  *See* Exhibit 3 at § 2.5 (defining source code as including

17   "***computer instructions*** … ***expressed in a form suitable for input to an assembler*** …

18   ***microcode***, … ***object code listings***, ***firmware***, … ***intermediate output files***,

19   ***executable files***, … ***resource files, binaries***, … ***library files***, … ***object files, linker***

20   ***files, browse info files, and debug files***.") (emphasis added).  The parties agreed that

21   such files must be produced in a "format allowing it to be reasonably reviewed and

22   searched," which means that the producing party must correspondingly allow the

23   reviewing party to use the commercial tools necessary for such review and searching.

24   **C.    Nikon Has Agreed to Produce the Files, But Not in a Format**

25   **Allowing Reasonable Review and Search (Without Additional**

     **Software)**

26

27   After months of dispute and delay, summarized in the timeline *infra* Section

28   IV.D, Nikon finally agreed to produce the source code relating to the detection

8

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  functionality that it receives from ████. *See, e.g.*, Exhibit 2 at 3 (Nikon's May 29

2  email to Plainitffs: "We will inform you once all of the ████ library files become

3  available for inspection on the source code computer."). However, providing a library

4  file without allowing the software to view it is not providing it in "a format allowing

5  it to be reasonably reviewed and searched."[4]

6  **D.    Plaintiffs Have Diligently Sought Meaningful Inspection**

7        Plaintiffs have diligently been seeking meaningful access to the source code at

8  issue in this case from Nikon, as this timeline demonstrates. *See generally* Exhibit 2

9  (main email thread).

10   - **February 5**: Plaintiffs serve requests for production for source code.

11   - **April 6**:  After a long dispute over the protective order, the stipulated

12     protective order is filed.  Prior to this date, Nikon refused to provide

13     information on source code, and redacted its interrogatory responses

14     relating to same.

15   - **April 6 (same day)**:  Plaintiffs email Nikon requesting source code.

16     Nikon does not reply.

17   - **April 10**: Plaintiffs email Nikon requesting source code.  Nikon replies

18     that "Defendants have contacted third party vendors regarding source

19     code for face detection."

20   - **April 18**: Plaintiffs email Nikon requesting source code and request

21     meet and confer.  Nikon asks for April 25 for meet and confer.

22   - **April 25**:  Parties meet and confer.

23   - **April 26**: Plaintiffs email Nikon requesting source code.

24

25

---

26  [4] Alternately, Nikon is refusing to install the "commercially available software tools"
       allowed by the protective order, Exhibit 3 § 7.5 (c).  Either way, the result is the
27     same – it is as if Nikon has provided a banker's box full of documents in a
       windowless review room, and refuses to allow Plaintiffs to turn on the lights.
28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

- **May 1**:  Parties meet and confer.  Nikon reveals it has "library and header files"; that this code is provided by ███████; and that Nikon contacted ██████ on April 25 for permission to disclose ███████ CBI.

- **May 2**: Plaintiffs email Nikon requesting source code.

- **May 4**: Nikon writes regarding the "library and header files":  "If there is third party CBI, we will need their consent prior to production in accordance with the parties' protective order.  If not, we can discuss a reasonable time and place for inspection."

- **May 9**: Plaintiffs request meet and confer.  Nikon does not reply.

- **May 10**: Plaintiffs request meet and confer.  Nikon does not reply.

- **May 11**: Plaintiffs request meet and confer.  Nikon does not reply.

- **May 14**: Plaintiffs request meet and confer and note need to raise the issues with the magistrate if Nikon does not reply.

- **May 16**: Parties meet and confer.

- **May 18**: Nikon writes: "We are looking into your request that Nikon produce the ████████ library files in its possession" and newly claims that because of a Japanese contract, they may not be reverse engineered or otherwise decompiled."

- **May 21**: Plaintiffs write Nikon: ""We have made several attempts to resolve this matter through meet and confers.  At this point, we see no choice but to raise this to the Court if Nikon will not meet its discovery obligations.  If you think another meet and confer would be helpful, we are happy to discuss either later today or tomorrow morning."  Nikon does not reply.

- **May 22**: Nikon writes Plaintiffs: "Plaintiffs' repeated demands for production appears to be nothing more than a harassment tactic."

- **May 23**: Plaintiffs advise that they will contact the Court.  Nikon initially responds by erroneously claiming Plaintiffs need to wait 7 days

JOINT STIPULATION PER L.R. 37-2 REGARDING SOURCE CODE
CASE 2:17-CV-07083-RGK (MRWx)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    before doing so.  Plaintiffs offer to meet and confer.  Nikon does not

2    reply.

3    • **May 24**: Nikon agrees to "make all of the ███ library files relating to

4    the accused face detection features available for inspection by early

5    June.  We cannot provide any software for decompiling these library

6    files as doing so will lead to a breach of Nikon's contractual

7    obligations."

8    • **May 24**: Plaintiffs write Nikon to confirm that Plaintiffs may use

9    decompiling software during inspection.

10   • **May 29**: Nikon writes it "cannot allow Plaintiffs to install any software

11   for reverse-engineering these library files" citing contracts (in Japanese).

12   • **May 30**: Plaintiffs request meet and confer.

13   • **June 1**: Parties meet and confer.  Parties at impasse.

14   • **June 6**: Plaintiffs request call with Judge Wilner.

15   • **June 7**: Call with Judge Wilner.  Following call, Plaintiffs request

16   discussion on already-planned meet and confer to narrow this briefing.

17   Nikon does not reply.  On the previously scheduled meet and confer,

18   Nikon is not able to discuss the issue, so Plaintiffs request meet and

19   confer for June 8.

20   • **June 8**:  Plaintiffs email requesting meet and confer.  Nikon does not

21   reply.  Plaintiffs begin Rule 37 process.

22

23   **E.    Nikon's Objections to Allowing Plaintiffs' Expert To Use Its Desired
         Inspection Tools (Including Reverse Engineering Tools) Are
24       Without Merit**

25   Nikon has advanced a changing set of arguments as to why it will not allow

26   Plaintiffs to use software to review the "library" files.  As of this writing, Nikon is

27   maintaining these objections:

28

11

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

### 1. Nikon Claims a Contract Prevents the Use of Decompilation Tools and So Nikon Will Not Allow Their Use[5]

On May 18, Nikon for the first time claimed Nikon says it has agreements in Japanese with a third party that prevent Nikon from reverse engineering the library files. Exhibit 2 at 10. But the concern underlying such a clause, which allegedly restricts Nikon's use of the files in its normal course of business, is (if relevant) effectively addressed by the protective order. Moreover, "Parties cannot create a privilege against civil discovery by mere written agreement." *Brown v. Tellermate Holdings, Ltd.*, No. 2:11-cv-1122, 2013 U.S. Dist. LEXIS 48278, at *11-12 (S.D. Ohio Apr. 3, 2013). Finally, Plaintiffs are not asking Nikon to reverse engineer the library files, but only make them available for meaningful inspection, which means allowing Plaintiffs to use the required software tools including decompilers to examine the "library" code.

### 2. Nikon Claims That Plaintiffs Should Obtain the Source Code From ▮▮▮▮

On the pre-filing call with the Court, Nikon claimed that this matter would be moot soon, because Plaintiffs could get this material from ▮▮▮ directly. To be absolutely clear: this issue is in no way "moot."

To be clear, because of Nikon's delay tactics, Plaintiffs are trying everything they can to obtain this source code. The same day that Nikon updated its written interrogatory to identify ▮▮▮ as the provider, Plaintiffs subpoenaed ▮▮▮▮ ▮▮▮▮ subsidiaries. That has not been effective. Plaintiffs are in the process of issuing Letters Rogatory to ▮▮▮▮▮, translating on a "rush" basis the

---

[5] Plaintiffs asked Nikon if they would drop this argument based on guidance from the Court. Nikon did not respond to three requests for a meet and confer on this issue following the pre-filing call with the Court and so Plaintiffs address this issue in case Nikon continues to maintain this objection.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    Court's authorization ███████████ so they can conveyed to ████████████.

2    Plaintiffs have also recently tried to subpoena the ██████████████████ itself.

3    　　　None of this is relevant to Nikon's discovery obligations.  There is no question

4    that Nikon has the Source Code in question, and in fact is likely the best source for

5    identifying which Source Code it put on which accused camera.  Plaintiffs are entitled

6    to seek discovery via multiple parallel routes in addition to Nikon, the party in this

7    litigation, and indeed with the limited time for discovery in this matter, there is no

8    time to see if one route will yield the same source code that Nikon in fact has and says

9    it is already in the process of making available.  Exhibit 2 at 3 (Nikon's May 29 email:

10   "We will inform you once all of the ██████ library files become available for

11   inspection on the source code computer.")

12   　　　Indeed, there is a basic fairness issue here where Nikon is hiding behind a third

13   party.  "It would be patently unfair if [defendant] were able to continue to discover

14   relevant information from [plaintiff] while relegating [plaintiff] to seek information

15   from [non-party]."  *Bank of N.Y. v. Meridien Biao Bank Tanz.*, 171 F.R.D. 135, 149

16   (S.D.N.Y. 1997).  Nikon's argument that the purported availability of third party

17   discovery moots its own obligation is without merit.

18   　　　**3.  Nikon Claims that Reverse Engineering Tools Change the**
19   　　　　　　**Library Files**

20   　　　For the first time in this dispute, Nikon on the pre-filing call claimed to the

21   Court that reverse engineering tools would modify the underlying libraries, and

22   therefore are not tools for "viewing" source code.  This argument fails for multiple

23   reasons.

24   　　　***First***, Nikon's argument is incorrect, and in fact, would negate the whole point

25   of the reverse engineering process, whose goal is to determine how the library code

26   functions.  Exhibit 1 at ¶ 9.  The point of the disassembly process is to determine how

27   the underlying program works.  *Id.*

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

***Second***, this is not a ripe objection at this time, before Plaintiffs' experts have even begun their review.  The time for Nikon to challenge the accuracy of Plaintiffs' analysis is after it is done.  Nikon cannot refuse Plaintiffs the discovery they need to perform an analysis based on speculation that they might not do it correctly.

***Third***, other courts in the Ninth Circuit have recognized the necessity of reverse engineering to prove infringement in patent cases like this one precisely to determine how the source code operates.  "Reverse engineering may well be the only method by which plaintiff will be able to state his infringement contentions with sufficient specificity, including identifying the location of each infringing element and grouping similar accused products."  *Bender v. Maxim Integrated Prod., Inc.*, No. C 09-01152 SI, 2010 WL 2991257, at *5 (N.D. Cal. July 29, 2010).

**F.    Statement of How Plaintiffs Proposed to Resolve the Dispute Over the Issue at Conference With Counsel**

In accordance with L.R. 37-2.1, Plaintiffs state that they proposed to resolve this dispute by asking Nikon to allow the use of software generally known as decompilation (aka disassembly or reverse engineering) software to inspect the library files.

To the extent Nikon had concerns about installing the software itself, Plaintiffs are also "willing to have our experts bring in a machine that fully complies that the protective order (no network access, etc.) that they set up with the software they need to inspect the library files so that Nikon does not need to install anything.  The machine could be left at [Nikon counsel's offices] throughout the case."  Ex. 2 at 1 (Plaintiff's June 7 email from Plaintiffs' counsel to Nikon's counsel).

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    **V.    NIKON'S CONTENTIONS**

2    Plaintiffs misstate the nature of the present dispute.  The proper inquiry is

3    twofold.  *First*, does the freely-negotiated Protective Order require Nikon to facilitate

4    Plaintiffs' reverse engineering of ██████████ proprietary library files, *i.e.,*

5    decompiling the machine-readable object code back into human-readable source

6    code.  *Second*, if not, have Plaintiffs demonstrated good cause to modify the

7    Protective Order to require Nikon to facilitate Plaintiffs' reverse engineering of

8    ████ proprietary library files.  As demonstrated below, the answer to both

9    questions is plainly no.  Accordingly, Plaintiffs' motion should be denied.

10    **A.    Background**

11    Plaintiffs mischaracterize the background of this dispute and the parties' meet

12    and confer process.  Plaintiffs did not even seek production of the ████ library files

13    in Nikon's possession and at issue in this motion, and Nikon already has more than

14    met its obligations in light of the Federal Rules, Plaintiffs' discovery requests, and the

15    Protective Order.  Plaintiffs also gloss over the fact that they have subpoenaed ████

16    to produce the source code used to create these very same files and that ████

17    production of the files would render moot this motion.

18    Plaintiffs' discovery requests sought the production of human-readable source

19    code in Nikon's possession.  Plaintiffs' discovery requests did not seek the

20    production of any machine-readable object code that results from compiling the

21    source code, such as library files.[6]  Indeed, Plaintiffs expressly defined "Source

22    Code" at the outset of their discovery requests — and even distinguish it from the

23    object code "firmware" that it is used to create:

24

25    _____

26    [6] Human-readable source code is created by programmers and then is compiled into
       machine-readable "object code" that is installed on, *e.g.*, digital cameras.  Reverse-
27    engineering tools such as decompilers can be used to translate (to varying degrees)
       the machine-readable object code  back into the human-readable source code that was
28    used to create it.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1
2
3
4
5
6
7
8

      "Source Code" means any collection of computer instructions *written using any human-readable computer language*, including but not limited to pseudocode and files or models created in or by "Simulink," "ASCET," or similar software, files containing code in "C", "C++", or "Java." Source code specifically also includes firmware, code written in assembly or assembler language, and EXPEED code. Source Code further includes "include" files, "make" files, "link" files, "build" files, "calibration" files, and other *human readable text files* used in the generation and/or building of software and/or firmware.

9
10
11
12

(Ex. 5, Plaintiffs' Request for Production of Documents, Set 1 (Nos. 1-155) at 6 (emphases added).)  Nikon does not have ███ source code in its possession, custody, or control.  Rather, Nikon only has the machine-readable object code versions—the library files—now at issue.

13
14
15
16
17
18
19
20
21

      Nikon repeatedly informed Plaintiffs that their discovery requests were limited to source code and Plaintiffs never provided a meaningful response.  (Ex. 2 at 10, May 18, 2018 email from Nikon's counsel to Plaintiffs' counsel; *see also id.* at 7, May 22, 2018 email from Nikon's counsel to Plaintiffs' counsel.)  Nonetheless, in order to avoid burdening the Court with motion practice, Nikon agreed to make the ███ library files (object code) available for inspection.  (*Id.* at 4, May 24, 2018 email from Nikon's counsel to Plaintiffs' counsel.)  Nikon was clear from the outset that it could not provide any decompiling software that would allow Plaintiffs to reverse engineer this object code back into human-readable source code:

22
23
24
25
26
27

      We disagree that the ███ library files are relevant. Specifically, we disagree that the definition of "source code" in Plaintiffs' discovery requests encompass library files, which are not "written using any human-readable computer language."  Nevertheless, in order to avoid burdening the Court with additional motion practice, Nikon has made and will make the ███ library files available for inspection on the source code computers.  We expect to make all of the ███ library files relating to the accused face detection features available for inspection by early June. ***We cannot provide any software for***

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

***decompiling these library files as doing so will lead to a breach of Nikon's contractual obligations.***

(*Id.*)  The parties then began discussing whether the protective order required Nikon to install reverse engineering software and the parties subsequently reached an impasse on that issue.  (*Id.* at 1–3.)

Parallel to these discussions, Plaintiffs have also pursued third party discovery directly from ███████████████████████████████████ ███████████████████  Specifically, Plaintiffs have (1) applied for Letters Rogatory directed to ███████████████; (2) served ███████████████ with a subpoena *ad testificandum* seeking testimony from ███████████████████████ ███████████████████████████, who purportedly resides in Illinois (Ex. 6, Plaintiffs' Notice of Subpoena to Testify at a Deposition to ███████████); and (3) served ███████████████ with a subpoena *duces tecum* seeking the source code for the face recognition software accused of infringement in this case (Ex. 7, Plaintiffs' Notice of Subpoena to Produce Documents to ███████████.)  These third party discovery requests seek the original source code for the very same library files that are at issue here — and in its original form (not an inexact reverse engineered form).  ███████ responses to these discovery requests are forthcoming.

**B.    Plaintiffs' Motion Is Premature in View of Its ████ Discovery Efforts.**

Plaintiffs try to play down their ongoing efforts to seek discovery directly from ████, even though that discovery will likely render this entire dispute moot. Plaintiffs' deposition subpoena against ███████████ requests a deposition on June 20, 2018.  (Ex. 6.)  Plaintiffs' document subpoena against ███████████ requests production of source code on June 15, 2018.  (Ex. 7.)  Plaintiffs have provided no indication that ███████████████████ will resist these requests — as of June 14, neither has served objections or motions to quash their respective subpoenas, but even if they did, this effort to discover the source code

17

JOINT STIPULATION PER L.R. 37-2 REGARDING SOURCE CODE
Case 2:17-cv-07083-RGK (MRWx)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  from its author should be completed first.  Plaintiffs may well obtain access to the

2  original source code for ████ face detection software in the near future, which

3  would moot this entire dispute.  Accordingly, Plaintiffs' request is premature.

4       Plaintiffs contend this discovery from ████ is irrelevant, but this is simply

5  wrong.  ██████████████ for its face detection software, which means

6  the code in their possession exists in a human-readable form, *i.e.*, the form in which

7  Plaintiffs wish to review the ████ software.  In comparison, the library files in

8  Nikon's possession are not human-readable; they are object code, meaning they are

9  machine-readable.  Thus, ████ source code would be far more enlightening as to

10  the functionality of ████ face detection software, and whether there is any

11  infringement.  *Sony Computer Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 602

12  ("Object code cannot, however, be read by humans.  The [] functions of the code

13  therefore are frequently undiscoverable in the absence of investigation and

14  translation"); *see also Asset Mktg. Sys.*, 542 F.3d at 755 n.5 (distinguishing human

15  readable source code from machine readable object code).  Reverse engineering the

16  ████ library files through the use of decompilers and disassemblers would likely

17  yield flawed information about the original ████ source code.  (*See, e.g.*, Ex. 8 at 1

18  (Wikipedia entry on decompiler) ("Decompilers are usually unable to perfectly

19  reconstruct the original source code, and as such, will frequently produce obfuscated

20  code.").)  For reliability reasons, obfuscated code should not be used to determine

21  infringement or non-infringement, particularly when Plaintiffs may be able to obtain

22  the actual source code from the ████.

**C.   Nikon Fulfilled Its Discovery Obligations Under Plaintiffs' Requests for Production When It Made the Library Files Available for Inspection.**

Plaintiffs' accusation that Nikon is eschewing its discovery obligations by

hiding behind ████ is also wrong.  The genesis of this dispute is Plaintiffs' requests

for production, which simply require the production of Source Code (as that term is

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1   defined in Plaintiffs' requests).  (Ex. 5, Plaintiffs' Request for Production of

2   Documents, Set 1 (Nos. 1-155) at 6.)  Nikon copied the ▇▇▇ library files onto a

3   secure computer located in Los Angeles, where they have remained available for

4   inspection since June 6.  (Ex. 9 at 1, June 1, 2018 email from L. Ranks to S.

5   Dawson.)

6        This fact alone readily distinguishes the *Bank of N.Y.* case, which addressed

7   what third party documents fall within a party's "control" for purposes of discovery.

8   171 F.R.D. 135, 146-49 (S.D.N.Y. 1997).   Here, because Nikon has already made the

9   ▇▇▇ library files in its possession available for inspection, there is no question that

10  Nikon has fulfilled its discovery obligations under Plaintiffs' requests for production.

11  As Plaintiffs acknowledge, their requests for production do not and cannot force

12  Nikon to reverse engineer the library files in its possession.  (*See supra* at 10

13  ("Plaintiffs are not asking Nikon to reverse engineer the library files").)

14  **D.   Nikon Fulfilled Its Obligations Under the Protective Order When It
        Made the Library Files Available for Inspection in Native Form,
15      Since the Protective Order Does Not Require Nikon to Install
        Reverse Engineering Tools.**
16

17      **1.   The Protective Order Only Requires Library Files to Be Made
             Available for Inspection in Native Form.**
18

19      The existing language of the Protective Order, which Plaintiffs agreed to after

20  weeks of negotiations, makes clear that Nikon is only obligated to make the ▇▇▇

21  library files available for inspection in the form in which Nikon possesses them.

22  Paragraph 2.5 defines "Source Code" to include library files, which in turn triggers

23  paragraph 7.5(b):  "[the library files] produced in discovery shall be made available

24  for inspection."  (ECF No. 75 at ¶¶ 2.5, 7.5(b).)  Nikon already fulfilled this

25  obligation on June 6 when it made the ▇▇▇ library files available for inspection in

26  their native form.  (Ex. 9 at 1, June 1, 2018 email from L. Ranks to S. Dawson.)

27      Plaintiffs' focus on the requirement that Source Code be made available "in a

28  format allowing it to be reasonably reviewed and searched" is misguided.  (*Supra* at

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

7.)  The library files *can* be "reviewed and searched" but Plaintiffs want more. Plaintiffs contend that this language requires Nikon to load reverse-engineering tools onto the source code computer, to allow Plaintiffs to use those tools to reverse engineer ███████ library files into source code, and to then review the reverse engineered source code.  Plaintiffs very easily could have, but did not, propose that these obligations re written into the protective order.[7]

In fact, Plaintiffs' suggestion that this obligation now be read into the protective order is contradicted by paragraph 7.5(c).  Under paragraph 7.5(c), "[Plaintiffs] may request that commercially available software tools for viewing and searching Source Code be installed on the secured PC."  (ECF 75 at 18.)  This is the only provision in the Protective Order that defines the types of software tools that the parties must provide to assist in any review of Source Code.  And critically, it does not mention decompilers, disassemblers, or any other reverse engineering tools, even though Plaintiffs negotiated and agreed to this provision knowing full well that the Protective Order's Source Code definition included many types of machine-readable object code, such as library files.  Plaintiffs cannot now seek to re-interpret "software tools for viewing and searching Source Code" to cover reverse engineering tools, particularly when their discovery correspondence shows that the software Plaintiffs seek to install does not fall within the scope of paragraph 7.5(c).

**2.    Paragraph 7.5(c) of the Protective Order Does Not Require Installation of the Requested Reverse Engineering Tools.**

Plaintiffs acknowledged during the meet and confer process that they seek to install a decompiler or other reverse engineering tool onto the source code computer. (Ex. 2 at 1, June 7, 2018 email from Plaintiffs' counsel to Nikon's counsel (referencing "reverse engineering tools"); *id.* at 2, May 30, 2018 email from

---

[7] There is nothing unusual about not including that language given that a party that does not have the original source code often does not have the right to reverse engineer the source code from the object code that a third party provides to it.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  Plaintiffs' counsel to Nikon's counsel (referencing "decompilers and other tools used

2  in the art to analyze binary code"); *id.* at 3, May 24, 2018 email from Plaintiffs'

3  counsel to Nikon's counsel (referencing "software for decompiling these library

4  files").)  Decompilers take the machine-readable object code such as library files and

5  attempt to return them into their original human-readable code form.  (Ex. 8 at 1

6  (Wikipedia entry on decompiler).)  Accordingly, a decompiler is not viewing and

7  searching software since it converts library files (which exist in a machine readable

8  language of 1's and 0's) into a human-readable computer language.  *Id.*

9  ("Decompilers are usually unable to perfectly reconstruct the original source code,

10  and as such, will frequently produce obfuscated code.")

11      Dr. Martin's expert declaration confirms that the software at issue is not a

12  viewing and searching tool.  In carefully worded language, he characterizes IDA Pro

13  as software for "***allowing*** for the viewing and searching of object code, such as . . .

14  library files."  (Ex. 1 at ¶ 7.)  He does not assert that IDA Pro is a "software tool[] for

15  viewing or searching," the only class of software permitted under paragraph 7.5(c).

16  This is because he cannot: according to IDA Pro's manufacturer, IDA Pro is

17  disassembling software.  (Ex. 1 at ¶ 8 ("As a ***disassembler***, IDA Pro . . .") (emphasis

18  added).)  Similar to decompilers, disassemblers convert machine-readable object code

19  such as library files into a human-readable form.  (Ex. 10 at 1 (Wikipedia entry on

20  disassembler ("computer program that translates machine language into assembly

21  language—the inverse operation to that of an assembler. . .  Disassembly, the output

22  of a disassembler, is often formatted for human-readability rather than suitability for

23  input to an assembler, making it principally a reverse-engineering tool").)  *See also*

24  *Sony Computer Ent.*, 203 F.3d at 599-601 (discussing disassemblers in the context of

25  reverse engineering).)  Disassemblers, like decompilers, are not viewing and

26  searching software under paragraph 7.5(c) of the protective order.  Accordingly,

27  Nikon should not be ordered to install such reverse engineering software on the

28  source code computer.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

2

3

**E.    Plaintiffs' Motion Is Nothing More than a Motion to Modify the Protective Order and No Good Cause Exists for Granting Plaintiffs' Request Since Doing so Will Violate Nikon's Contract with ████ to Not Reverse Engineer ██████ Library Files.**

4    Contrary to Plaintiffs' arguments, Nikon is not using the ████ contract to

5    shield itself from discovery.  (*See supra* at 10.)  Rather, the ████ contract is

6    primarily relevant in determining whether good cause exists to modify paragraph

7    7.5(c) of the protective order to cover reverse engineering tools, since as explained

8    above, the existing language does not require Nikon to install any such tools.

9    In the 9th Circuit, district courts have the inherent authority to modify a

10    protective order where good cause is shown.  *Finjan, Inc. v. ESET, LLC*, No.

11    17CV183, 2017 U.S. Dist. LEXIS 211101, at *5, (S.D. Cal. Dec. 21, 2017).  The

12    party seeking modification bears the burden of showing good cause.  *Id.*  Here,

13    Nikon's contract with ████ defeats any purported showing of good cause for

14    modification, since the ██████████████████████████████████████

15    ██.  (Ex. 11, partial translation of ████████ contract produced at NIKON7083-

16    00135530, NIKON7083-00135532.)

17    When ████ consented to Nikon's production of library files in this litigation

18    under paragraph 10 of the Protective Order, ████ reasonable expectation was that

19    its library files would not be reverse engineered given the two layers of protection it

20    had.  First, paragraph 7.5(c) of the Protective Order does not permit the installation of

21    reverse engineering software.  Second, the ████████████████████████████

22    ████████████████████.  Modifying the Protective Order now to permit

23    reverse engineering of ████ library files would unduly jeopardize ██████

24    interests in protecting its face detection source code, as evidenced by the

25    ██████████████████████████████████████████████.

26    This is particularly unfair given that ████ allowed the library files to be produced

27    in light of the existing Protective Order that does ***not*** allow for the reverse

28    engineering of its proprietary code.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    At a minimum, ███ should be afforded the protections to non-parties under

2  paragraph 10 of the existing Protective Order — 21days to intervene — especially

3  since Plaintiffs have outstanding third party discovery requests directed to ███ on

4  essentially the very same subject matter: the source code for ███ face detection

5  software.

6    **F.    Plaintiffs' Offer Under L.R. 37-2.1 Does Not Resolve the Dispute.**

7    Plaintiffs provided their latest offer under local rule 37-2.1 one day before they

8  initiated the rule 37 proceeding and the parties remain in discussions on its merits.

9  Presently, it is unclear how Plaintiffs' proposal resolves the issue.  Bringing a second

10 computer equipped with reverse engineering software does not help since paragraph

11 7.5(b) precludes Plaintiffs from copying any Source Code, including ███ library

12 files, to the second computer.  Plaintiffs also cannot copy the reverse engineering

13 software on the second computer to the secure computer since paragraph 7.5(b) also

14 requires the secure computer to remain disconnected from any other computer.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION PER L.R. 37-2 REGARDING SOURCE CODE
Case 2:17-cv-07083-RGK (MRWx)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Dated:  June 19, 2018          FISH & RICHARDSON P.C.

By:  /s/ Jeffrey Shneidman

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel:  (213) 533-4240, Fax: (858) 678-5099

Frank Scherkenbach (SBN 142549)
scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted *Pro Hac Vice*)
glitzenstein@fr.com
Proshanto Mukherji (Admitted *Pro Hac Vice*)
mukherji@fr.com
Jeffrey Shneidman (Admitted *Pro Hac Vice*)
shneidman@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel:  (617) 542-5070, Fax: (617) 542-8906

Olga I. May (SBN 232012)
omay@fr.com
Markus D. Weyde (SBN 285956)
weyde@fr.com
K. Nicole Williams (SBN 291900)
nwilliams@fr.com
Jared A. Smith (SBN 306576)
jasmith@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070, Fax:  (858) 678-5099

JOINT STIPULATION PER L.R. 37-2 REGARDING SOURCE CODE
Case 2:17-cv-07083-RGK (MRWx)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jennifer Huang (Admitted *Pro Hac Vice)*
jhuang@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel:  (612) 335-5070, Fax:   (612) 288-9696

Andrew R. Kopsidas (Admitted Pro Hac Vice)
kopsidas@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Ste. 1000 Floor
Washington, DC 20005
Tel:  (202) 783-5070, Fax: (202) 783-2331

Attorneys for Plaintiffs, CARL ZEISS AG and
ASML NETHERLANDS B.V.

JOINT STIPULATION PER L.R. 37-2 REGARDING SOURCE CODE
CASE 2:17-CV-07083-RGK (MRWx)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1    Dated:  June 19, 2018                    MORRISON & FOERSTER LLP

2                                             By:  */s/ Vincent J. Belusko*

3

4                                             Vincent J. Belusko
                                              (CA SBN 100282)
5                                             VBelusko@mofo.com
                                              Jonathan M. Smith
6                                             JonathanSmith@mofo.com
7                                             A Max Olson
                                              aolson@mofo.com
8                                             MORRISON & FOERSTER LLP
9                                             707 Wilshire Boulevard Los Angeles,
                                              California 90017
10                                            Tel: 213.892.5200
11                                            Fax: 213.892.5454

12                                            Jack W. Londen (CA SBN 85776)
13                                            JLonden@mofo.com
                                              Diana Barrett Kruze
14                                            dkruze@mofo.com
15                                            Shaelyn K. Dawson
                                              Shaelyndawson@mofo.com (CA SBN
16                                            288278)
17                                            MORRISON & FOERSTER LLP
18                                            425 Market Street
                                              San Francisco, California 94105
19                                            Tel: 415.268.7000
20                                            Fax: 415.268.7522

21                                            Kyle W. Mooney
22                                            kmooney@mofo.com
                                              MORRISON & FOERSTER LLP
23                                            250 West 55th Street
24                                            New York, NY 10019
                                              Tel: 212-336-4094
25                                            Fax: 212-368-7900

26

27

28

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Koichiro Minamino
mick@minaminolaw.com
Minamino Law Office PLLC
2000 Pennsylvania Avenue NW
Ste 6000
Washington, DC 20006
202-777-3638

Matthew N. Duescher
mduescher@fostermurphy.com
Foster, Murphy, Altman & Nickel, PC
1150 18th Street, Ste 775
Washington, DC 20003
Tel: 202-822-4110
Fax: 202-822-4199

Attorneys for Defendants
NIKON CORPORATION, SENDAI
NIKON CORPORATION, and NIKON
INC.

JOINT STIPULATION PER L.R. 37-2 REGARDING SOURCE CODE
CASE 2:17-CV-07083-RGK (MRWx)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**ECF ATTESTATION**

I, Jeffrey Shneidman, am the ECF User who identification and password are being used to electronically file this SEALED JOINT STIPULATION PURSUANT TO L.R. 37-2 REGARDING DISCOVERY DISPUTE OVER SOURCE CODE.  In accordance with Local Rule 5-4.3.4, concurrence in and authorization of the filing of this document has been obtained from the counsel for defendants, and Fish & Richardson P.C. shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

Dated:  June 19, 2018                    FISH & RICHARDSON P.C.


                                         By:  */s/ Jeffrey Shneidman*
                                              Jeffrey Shneidman
                                              shneidman@fr.com

                                         Attorneys for Plaintiffs
                                         CARL ZEISS AG AND ASML
                                         NETHERLANDS B.V.

JOINT STIPULATION PER L.R. 37-2 REGARDING SOURCE CODE
CASE 2:17-CV-07083-RGK (MRWx)

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

## **<u>CERTIFICATE OF SERVICE</u>**

2       The undersigned hereby certifies that a true and correct copy of the above and

3   foregoing document has been served on June 19, 2018, to all counsel of record who

4   are deemed to have consented to electronic service via the Court's CM/ECF system

5   per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic

6   mail, facsimile and/or overnight delivery.

7

8                                 */s/ Jeffrey Shneidman*

9                                 Jeffrey Shneidman
                                  shneidman@fr.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION PER L.R. 37-2 REGARDING SOURCE CODE
CASE 2:17-CV-07083-RGK (MRWx)