1  Christopher S. Marchese (SBN 170239), marchese@fr.com
2  FISH & RICHARDSON P.C.
   633 West Fifth Street, 26th Floor
3  Los Angeles, CA 90071
   Tel: (213) 533-4240, Fax: (858) 678-5099
4
5  Frank Scherkenbach (SBN 142549), scherkenbach@fr.com
   Kurt L. Glitzenstein (Admitted *Pro Hac Vice*), glitzenstein@fr.com
6  FISH & RICHARDSON P.C.
7  One Marina Park Drive
   Boston, MA 02210-1878
8  Tel: (617) 542-5070, Fax: (617) 542-8906
9
   Olga I. May (SBN 232012), omay@fr.com
10 Markus D. Weyde (SBN 285956), weyde@fr.com
11 FISH & RICHARDSON P.C.
   12390 El Camino Real
12 San Diego, CA 92130
   Tel: (858) 678-4745, Fax: (858) 678-5099
13 *[Additional Counsel listed on last page.]*
14
15 Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V.

16              IN THE UNITED STATES DISTRICT COURT
17     FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

18 | CARL ZEISS AG and ASML NETHERLANDS B.V., | Case No. 2:17-cv-07083-RGK (MRWx) |
   | | |
19 | | **PLAINTIFFS' OPPOSITION BRIEF TO NIKON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [REDACTED VERSION]** |
20 | Plaintiffs, | |
21 | v. | |
22 | NIKON CORPORATION, SENDAI NIKON CORPORATION, and | |
23 | NIKON INC., | Date:      September 24, 2018 |
24 | Defendants. | Time:      9:00 a.m. |
25 | | Judge:     Hon. R. Gary Klausner |
   | | Courtroom: 850, 8th Floor |
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.  THE CLAIMS OF THE '312 AND '017 PATENT ARE NOT INVALID ...................................................................................... 1

    A.  The Specification Includes Adequate Written Description .......... 2

    B.  The Specification Adequately Enables The Claimed Invention ................................................................................. 3

    C.  Defendants' Motion Must Be Denied at a Minimum Due to Genuine Disputes of Material Fact ...................................... 4

II.  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT OF NO INFRINGEMENT AS TO THE '574 PATENT .............................................................................................. 5

III.  DEFENDANTS' PROPOSED CLAIM CONSTRUCTION FOR THE '335 PATENT SHOULD BE REJECTED .......................... 7

IV.  DEFENDANTS ARE NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT OF NO INFRINGEMENT OF THE '335 PATENT ......................................................................... 9

V.  THE ██████████ SENSORS ARE NOT LICENSED ................... 12

    A.  Under the ██████████████████████████████ .................. 12

    B.  ██████████████████████████████████ .............. 14

VI.  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT REGARDING THE '163 PATENT .............................. 15

    A.  How the Accused Cameras Work ................................... 16

    B.  The Accused Cameras "Derive a Correlation Image" as Claimed .................................................................. 17

    C.  The Accused Cameras Identify Candidate Regions "Based on Detecting a Local Maximum" ................................... 18

D.   Defendants Are Not Entitled to Summary Judgment on Claim 15 ..................................................................................19

E.   Defendants' Proposed Claim Construction Lacks Merit ............19

VII.   CONCLUSION ..........................................................................20

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*01 Communique Lab., Inc. v. LogMeIn, Inc.,*
   687 F.3d 1292 (Fed. Cir. 2012) ........................................................3, 4, 7

*Alfred E. Mann Found. v. Cochlear Corp.,*
   2012 WL 12877984 (C.D. Cal. June 18, 2012) .................................... 20

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ................................................................................ 5

*Ariad Pharm., Inc. v. Eli Lilly & Co.,*
   598 F.3d 1336 (Fed. Cir. 2010) (en banc).............................................. 4

*Avid Tech., Inc. v. Harmonic, Inc.,*
   812 F.3d 1040 (Fed. Cir. 2016) .............................................................. 9

*Baldwin Graphic Sys. v. Siebert, Inc.,*
   512 F.3d 1338 (Fed. Cir. 2008) ...................................................1, 5, 6, 7

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,*
   289 F.3d 801 (Fed. Cir. 2002) ................................................................ 9

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ................................................................................ 5

*Convolve, Inc. v. Compaq Computer Corp.,*
   812 F.3d 1313 (Fed. Cir. 2016) .............................................................. 3

*CytoLogix Corp. v. Ventana Med.,*
   424 F.3d 1168 (Fed. Cir. 2005) .............................................................. 1

*Dealertrack, Inc. v. Huber,*
   674 F.3d 1315 (Fed. Cir. 2012) .............................................................. 3

*elcommerce.com, Inc. v. SAP AG,*
   745 F.3d 490 (Fed. Cir. 2014) ........................................................... 5, 17

*ERBE Elektromedizin GmbH v. Int'l Trade Comm'n,*
   566 F.3d 1028 (Fed. Cir. 2009) .........................................................8, 10

*Intendis GMBH v. Glenmark Pharms. Inc.*,
  822 F.3d 1355 (Fed. Cir. 2016) .................................................................. 11, 12

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) ............................................................................ 8

*Kaneka Corp. v. Xiamen Kingdomway*,
  790 F.3d 1298 (Fed. Cir. 2015) ............................................................................ 8

*KCJ Corp. v. Kinetic Concepts, Inc.*,
  223 F.3d 1351 (Fed. Cir. 2016) ................................................................... 2, 6, 7

*Liebel-Flarsheim Co. v. Medrad*,
  358 F.3d 898 (Fed. Cir. 2004) .............................................................................. 6

*MEMS Tech. Berhad v. ITC*,
  447 F. App'x 142 (Fed.Cir.2011) ....................................................................... 10

*Micro Chem. v. Great Plains Chem.*,
  194 F.3d 1250 (Fed. Cir. 1999) .......................................................................... 20

*Monsanto Co. v. Scruggs*,
  459 F.3d 1328 (Fed. Cir. 2006) ............................................................................ 4

*Northrop Grumman Corp. v. Intel Corp.*,
  325 F.3d 1346 (Fed. Cir. 2003) .......................................................................... 20

*Odetics, Inc. v. Storage Tech.*,
  185 F.3d 1259 (Fed. Cir. 1999) .......................................................................... 19

*Rockwell Int'l Corp. v. United States*,
  31 Fed. Cl. 70 (1994) ......................................................................................... 12

*SanDisk Corp. v. Kingston Tech. Co.*,
  695 F.3d 1348 (Fed. Cir. 2012) ............................................................................ 3

*Silicon Graphics v. nVidia*,
  58 F.Supp. 2d 331 (D.Del.1999) ........................................................................ 10

*Skky, Inc. v. Mindgeek*,
  859 F.3d 1014 (Fed. Cir. 2017) .......................................................................... 19

*Spindelfabrik Suessen-Schurr v. Schubert & Salzer*,
  903 F.2d 1568 (Fed. Cir. 1990) .......................................................................... 12

iv

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)

*Synthes USA v. Spinal Kinetics, Inc.,*
    734 F.3d 1332 (Fed. Cir. 2013) ........................................................................ 2

*TecSec, Inc. v. IBM Corp.,*
    731 F.3d 1336 (Fed. Cir. 2013) ...................................................................... 19

*Telemac Cellular v. Topp Telecom,*
    247 F.3d 1316 (Fed. Cir. 2001) ........................................................................ 3

*TI Group Auto. Sys, v. VDO N. Am.,*
    375 F.3d 1126 (Fed. Cir. 2004) ...................................................................... 19

*TransPerfect Global, Inc. v. Matal,*
    703 Fed. Appx. 953 (Fed. Cir. 2017) ............................................................... 3

*In re Vaeck,*
    947 F.2d 488 (Fed. Cir. 1991) .......................................................................... 4

*WeddingChannel.com v. The Knot,*
    2005 WL 165286 (S.D.N.Y. Jan.26, 2005) .................................................... 10

*WundaFormer, LLC v. Flex Studios, Inc.,*
    680 Fed. Appx. 925 (Fed. Cir. 2017) ............................................................... 3

*Wyeth & Cordis v. Abbott Labs.,*
    720 F.3d 1380 (Fed. Cir. 2013) ........................................................................ 2

*Xerox Corp. v. Google Inc.,*
    801 F. Supp. 2d 293 (D. Del. 2011) ................................................................. 8

**Other Authorities**

U.S. Patent No. 6,731,335 ........................................................................ 3, 7, 9, 12

U.S. Patent No. 7,262,411 ................................................................................... 3

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)

## I.      THE CLAIMS OF THE '312 AND '017 PATENT ARE NOT INVALID[1]

Defendants argue that the asserted claims of the '312 and '017 patents are invalid for lack of written description and enablement. Defendants assert that the Court's order on the motion for reconsideration construed "unit pixel" "to encompass one or more photodiodes" and "offers no bounds to how many photodiodes could be implemented" (Mot. at 3-4), and that the claims are invalid because the specification does not describe embodiments with pixels having more than one photodiode. Defendants are incorrect.

The Court's reconsideration order rejected Defendants' attempt to narrow the claims to a single photodiode. (D.I. 438.) Defendants sought this narrow construction on summary judgment, contending no infringement because ███████████ ████████████. On reconsideration, the Court vacated its grant of summary judgment, holding that there was no basis to "'necessitate' departing from the general rule [in *Baldwin*] that 'a' means 'one or more,'" and that "unit pixel" and "sensing pixel" "encompass one or more photodiodes." (*Id.* at 4.)[2] Because the issue was whether the claims are limited to a single photodiode for purposes of infringement, the holding does not construe the claims in the "unbounded" "one or more" fashion that Defendants assert, but rather *vacates* the prior construction that the claims are *limited to a single photodiode*—and, thus, that Defendants' sensors do not infringe. In other words, that the claims "encompass one or more photodiodes," as stated in the order, means that a unit pixel with two photodiodes can infringe. In any event, if "unit pixel" and "sensing pixel" were construed to include "one or more photodiodes," the construction may be clarified as: "not limited to a single photodiode." *See CytoLogix Corp. v. Ventana Med.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) (upholding claim construction at end of trial).

Regardless, as Plaintiffs have previously explained, the specifications should not be read as narrowly as Defendants have advocated. It is well-established that "standing

_____

[1] We have used the same section numbers as Defendants for each of their issues.
[2] Defendants presented the same validity arguments in their prior opposition, (D.I. 398 at 12), but the Court did not credit the arguments and ruled for Plaintiffs (D.I. 438).

1

PLAINTIFFS' OPPOSITION BRIEF TO NIKON DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT
Case No. 2:17-cv-07083-RGK (MRWx)

1  alone, a disclosure of a preferred or exemplary embodiment encompassing a singular

2  element does not disclaim a plural embodiment." *KCJ Corp. v. Kinetic Concepts, Inc.*, 223

3  F.3d 1351, 1356 (Fed. Cir. 2016). Yet Defendants once again urge a contrary rule—asking

4  the Court to find that because the exemplary embodiments disclosed in the '312/'017

5  patents show a single photodiode, the claims fail under both written description and

6  enablement. Having addressed this issue in deciding the reconsideration motion, the

7  Court should reject Defendants' attempt to re-argue this issue on summary judgment.

8       In any event, Defendants' motion must fail as to both written description and

9  enablement because a skilled artisan would recognize the specifications to teach unit

10  pixels containing one or more photodiodes. Both written description and enablement

11  require reading the specification through the eyes of a *skilled artisan*. Written description

12  asks "whether the disclosure of the application relied upon reasonably conveys to those

13  skilled in the art that the inventor ha[d] possession of the claimed subject matter as of

14  the filing date." *Synthes USA v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013).

15  Enablement asks whether, "at the effective filing date of the patent, one of ordinary skill

16  in the art could not practice their full scope without undue experimentation." *Wyeth &*

17  *Cordis v. Abbott Labs.*, 720 F.3d 1380, 1384 (Fed. Cir. 2013).

18       As explained below, it undisputed that the '312 and '017 patents satisfy written

19  description and enablement when viewed through the skilled artisan's eyes, warranting

20  summary judgment for Plaintiffs. If Defendants' unsupported *ipse dixit* assertions are

21  credited, they raise genuine disputes of material fact precluding summary judgment.

22       **A.    The Specification Includes Adequate Written Description**

23       The claims do not recite pixels that have one or more photodiodes, but a "unit

24  pixel" or "sensing pixel" that includes "a photodiode." Because the patents include clear

25  written description support for a pixel including "a photodiode," the written description

26  requirement is satisfied as a matter of law. [P7 ("P" are Plaintiffs' statements of fact).]

27       Even if "unit pixel" were construed to include "one or more photodiodes,"

28  Defendants' position is still erroneous. "It is well-settled that a patentee need not describe

1    in the specification every conceivable and possible future embodiment of his invention."

2    *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1327 (Fed. Cir. 2012). Consistent with that

3    fundamental principle, the Federal Circuit has repeatedly applied the construction "one

4    or more" without concern for the lack of a numerical upper bound.[3]

5         Here, a skilled artisan would have recognized that a pixel can include more than a

6    single photodiode at least because such pixels were well-known at the priority date. [P1.]

7    Plaintiffs' expert, Dr. Subramanian, testifies that a skilled artisan would have understood

8    that '312/'017 inventor had knowledge of pixels having one or more photodiodes

9    because such pixels were well known. [P5.] For example, U.S. Patent No. 6,731,335, also

10   asserted here and which predates the '312/'017 patents by several years, describes a unit

11   pixel having *two photodiodes* [P2], the same number as Defendants' sensors. Similarly, U.S.

12   Patent No. 7,262,411, which also predates the patents and lists one of Defendants'

13   experts (Dr. Kleinfelder) as the inventor, describes pixels having *two and four photodiodes.*

14   [P3.] Indeed, Dr. Kleinfelder testified that a skilled artisan would understand the

15   disclosure of a pixel to teach one or more photodiodes. [*Id.*] While Defendants' other

16   expert Mr. Butterworth opined that a skilled artisan would understand a pixel to consist

17   of only one photodiode, he offered nothing but conclusory opinions. [P4]; *Telemac Cellular*

18   *v. Topp Telecom*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) (expert's conclusory statements are

19   not evidence). Indeed, Mr. Butterworth cited no evidence outside the patent to support

20   his assertion, merely stating that "[i]n my opinion this is the only reasonable

21   construction." [P4.] Additionally, Mr. Butterworth did not even consider or cite Dr.

22   Kleinfelder's '411 patent. [*Id.*] Therefore, Defendants fail to raise a genuine dispute of

23   material fact, warranting summary judgment of written description for Plaintiffs.

24   **B.    The Specification Adequately Enables The Claimed Invention**

25

26   [3] *See, e.g., TransPerfect Global, Inc. v. Matal*, 703 Fed. Appx. 953, 957 (Fed. Cir. 2017) ("one
     or more hyperlinks"); *WundaFormer, LLC v. Flex Studios, Inc.*, 680 Fed. Appx. 925, 931

27   (Fed. Cir. 2017) ("one or more transverse members"); *Convolve, Inc. v. Compaq Computer
     Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016) ("one or more processors"); *SanDisk Corp. v.*

28   *Kingston Tech. Co.*, 695 F.3d 1348, 1359-61 (Fed. Cir. 2012) ("one or more user data
     portions"); *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1296-97 (Fed. Cir.
     2012) ("one or more locator server computers").

As stated above, enablement asks whether the skilled artisan at the filing date of the patent could practice the full scope of the invention without undue experimentation. Here, that is clearly the case, and summary judgment should be granted for Plaintiffs.

First, as stated above, the claims recite a "unit pixel" comprising "a photodiode." Such a configuration is disclosed in the specification. The Court's conclusion on reconsideration that the claims are not limited to a single photodiode does not alter the fact that the specification enables the full scope of the claims. Second, even if the claims are construed to include "one or more photodiodes," that too is enabled to the full scope of the claims. As Dr. Subramanian explains, a skilled artisan would have little difficulty modifying the preferred embodiment to include one or more photodiodes based on his or her knowledge that pixels often can and do include more than one photodiode. [P309.] Neither Defendants nor their experts address this knowledge of a skilled artisan, and thus cannot meet their burden of proving lack of enablement by clear and convincing evidence. *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1338 (Fed. Cir. 2006) (affirming grant of JMOL of no invalidity based on enablement where undisputed evidence showed contested limitation was "well-known and well-documented"). Moreover, it is undisputed that that designing image sensors is a predictable art, with skilled artisans being able to know what the effect of the changes they make will be, and that prior art discloses pixels with more than one photodiode. *See In re Vaeck*, 947 F.2d 488, 495 (Fed. Cir. 1991) (noting that the required level of disclosure for an invention involving a "'predictable' factor such as a mechanical or electrical element" is lower). [P302-303, P310].[4]

## C.   Defendants' Motion Must Be Denied at a Minimum Due to Genuine Disputes of Material Fact

Written description is a question of fact. *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598

---

[4] Defendants' reliance on *Magsil* is misplaced. There, the Federal Circuit found lack of enablement based on an inventor's attempt to capture technology that was undisputedly developed only **after** the patent was filed. 687 F.3d at 1382 (noting that the "field of art has advanced vastly after the filing of the claimed invention"). *Id.* Here, there is no question that using more than one photodiode was well known in the art long prior to filing of the patents, as discussed above.

F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Although enablement is a question of law, it is based on underlying factual findings. *Alcon*, 745 F.3d at 1188.

Here, even if the conclusory *ipse dixit* assertions of Defendants' experts are credited—and as noted above they should not be—then the well-supported contrary opinions of Plaintiff's experts give rise to genuine disputes of material fact that preclude summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This is especially true since all doubts regarding the evidence must be resolved in favor of the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Specifically, Defendants' motion contains the following conclusory statements regarding the underlying factual inquiries for both written description and enablement: Mot. at 4 ("a person of ordinary skill in the art would not consider that the named inventor possessed the concept of a multi-photodiode structure at the time the '017 and '312 Patents were filed.") (citing Nikon expert report); *id.* at 5 ("A person of ordinary skill in the art would need to first consider how to implement a unit pixel with multiple photodiodes….") (citing Nikon expert report); *id.* ("A person of ordinary skill in the art would invariably need to perform undue experimentation to implement such a pixel circuit….") (citing Nikon expert report). As stated above, Plaintiffs' expert offers contrary opinions that undue experimentation would not be required to implement a pixel with more than one photodiode, [P6], and the objective evidence from the '335 and '411 patents demonstrates that a skilled artisan would have known that the "unit pixel" could have included one or more photodiodes. Thus, even if Defendants' conclusory evidence were given weight, genuine disputes preclude summary judgment.

## II.   DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT OF NO INFRINGEMENT AS TO THE '574 PATENT

The Court has already held in the related 3221 case that the specification of the '312 and '017 patents, which is the same as that of the '574 patent, does not limit or otherwise necessitate an interpretation of the invention that is confined to a single photodiode per pixel. (D.I. 438 at 4.) That is law of the case that should resolve the issue as well for the '574 patent, given the rule set forth in *Baldwin Graphic Sys. v. Siebert, Inc.*,

512 F.3d 1338 (Fed. Cir. 2008). Defendants erroneously assert that the Court reached that conclusion "specifically because of the open-ended claim language that recites 'each unit pixel *comprising: a* photodiode'" (Mot. at 6), and that "[b]ecause the '574 claims do not recite any pertinent open-ended claim language regarding the photodiodes" (*id.*), the '574 claims should be limited to only a single photodiode per pixel. Defendants are incorrect on both the facts and the law. As to the facts, all of the independent claims of the '574 patent include the open-ended term "comprising" in the preamble. As to the law, the Court's conclusion followed from the Federal Circuit's holding in *Baldwin* that "a" must be interpreted as "one or more" unless the patentee has evinced a "clear intent" to limit "a" to "one." (D.I. 438 at 2-3.) The claims in *Baldwin*, as in the '574 patent, used the term "comprising" in the preamble,[5] *id.* at 1340, and the court's decision there placed no significance whatsoever on whether this open-ended term is found in the preamble or the body of the claim: "[t]his court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more's in open-ended claims containing the transitional phrase 'comprising.'" *KCJ Corp. v. Kinetic Concepts, Inc.,* 223 F.3d 1351, 1356 (Fed.Cir.2000). "'That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention." *Baldwin*, 512 F.3d at 1342. Likewise, nor can Defendants' fairly contend that this Court's order rested on where in the '312 and '017 claims the term "comprising" was found. (D.I. 438 at 2-4.)

Defendants' argument is also misleading with respect to claims 1-16 and 30-31 of the '574 patent because those claims do not even recite photodiodes, so it would be incongruous to limit them a specific number of photodiodes. It would be improper to import any photodiode requirement into the claims, let alone a requirement that the pixels have exactly one photodiode. *Liebel-Flarsheim Co. v. Medrad*, 358 F.3d 898, 913 (Fed. Cir. 2004) (stating it is improper to read limitations into claims from even the only embodiment absent a clear intrinsic indication to the contrary).

---

[5] The term appeared only in the preamble in claim 14, and in both the preamble and the body in claim 1, and the Federal Circuit did not distinguish between them.

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)

As to the claims that do recite a photodiode (independent claim 17, dependent claim 18, and independent claim 24), they all recite the step of transferring a photocharge from "a photodiode." In the absence of language expressing a clear intent to deviate from its commonly-understood meaning (and Defendants identify none), it follows from *Baldwin* that "a photodiode" must be interpreted as "one or more photodiodes."

Defendants are incorrect in their assertion that the pixel terms should be limited to a single photodiode per pixel because that is the preferred embodiment in the specification. (Mot. at 6-7.) The *absence* of any discussion in the patents of multiple photodiodes or nodes per pixel does not manifest *any* intent whatsoever on the numerical issue, let alone the requisite "clear intent" to limit those features in the claims to "one and only one." *See 01 Communique*, 687 F.3d at 1297 (stating that ambiguity in the specification is not clear intent to overcome general rule that "a" means "one or more"). The patent simply places no significance on the number of photodiodes per unit pixel. "[S]tanding alone, a disclosure of a preferred or exemplary embodiment encompassing a singular element does not disclaim a plural embodiment." *KCJ Corp.*, 223 F.3d at 1356.

Accordingly, the asserted claims of the '574 patent should not be limited to a single photodiode, which moots Defendants' contention that the accused cameras do not infringe. [D308.] Moreover, Defendants' argument that construing the '574 patent's pixel terms to include one or more photodiodes would render the claims invalid (Mot. at 7) is also flawed for the same reasons discussed in Section I, *supra*.

## III.   DEFENDANTS' PROPOSED CLAIM CONSTRUCTION FOR THE '335 PATENT SHOULD BE REJECTED

Defendants attempt to narrow the '335 claims regarding the order and overlap of the method steps and the preamble. Defendants are incorrect on both issues.

<u>Order and Overlap of Steps</u>: Defendants' argument that the steps 1(a)–(f) of the '335 Patent must "be performed in [] order" (Mot. 8), fails to confront the substance of the parties' actual dispute. Steps 1(a)–(f) are time intervals rather than instantaneous events, and the real dispute is whether these intervals can *overlap* (Plaintiffs' position) or not (Defendants'). As an example, the issue is whether the photodiode circuitry can

7

1  "receiv[e] light … and generat[e] photoelectric charges" (step (b)) while other circuitry is

2  collecting and "outputting a reset voltage" (step (c)) (Plaintiffs), or whether the

3  photodiodes must somehow be disabled while another step takes place (Defendants).

4      Plaintiffs submit that, properly construed, steps 1(a)–1(f) can overlap. "Unless the

5  steps of a method actually recite an order, the steps are not ordinarily construed to require

6  one," *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001), and

7  even where steps are to be performed in order, they are still permitted to overlap absent

8  language that "unequivocal[ly] preclu[des]" it. *Xerox Corp. v. Google Inc.*, 801 F. Supp. 2d

9  293, 303 (D. Del. 2011) (overlap permitted even though steps had to be performed in

10  order); *Kaneka Corp. v. Xiamen Kingdomway*, 790 F.3d 1298, 1307 (Fed. Cir. 2015) (same).

11      Here, the specification unequivocally provides that overlap can and does occur.

12  This is "dispositive" because courts "do not construe claim language to be inconsistent

13  with the clear language of the specification." *ERBE Elektromedizin GmbH v. Int'l Trade*

14  *Comm'n*, 566 F.3d 1028, 1034 (Fed. Cir. 2009). The specification explains, for example,

15  that step (b) (photodiodes receive light and generate photoelectric charges) overlaps the

16  whole of steps (c), (e) (outputting reset voltages twice)

17  and (d) (outputting a first data voltage). [Resp. to D18,

18  D19, D20 ("D" are Defendants' statements of fact)].

19  This can be seen in the timing diagram of FIG. 5

20  (annotated, right). Step (b) occurs during the time

21  periods B1 (first photodiode) and B2 (second

22  photodiode) [Resp. to D19, D20], highlighted in red.

23  These periods overlap with steps (c) and (e), which



24  occur during periods C1 and C2 respectively (green highlight) and step (d), which occurs

25  during F1 (blue). [Resp. to D19, D20.] In short, the specification shows overlapping steps

26  are an intended implementation of claim 1.

27      Defendants' argument that the patentee disclaimed this preferred approach during

28  prosecution is meritless. (Mot. at 8-9.) "For prosecution disclaimer to attach, our

precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016). First, there is no disclaimer whatsoever relating to the order of steps because the applicant did not distinguish the Guidash reference on that ground. [Resp. to D21.] Rather, the applicant argued that Guidash did not perform steps (d) and (f) at all. *Id.* The applicant argued that steps (d) and (f) recite "turning on the first[/second] transfer transistor *with said reset transistor remaining off*," whereas in Guidash, "when the first[/second] transfer gate is pulsed on, the reset gate is *also on*." [Resp. to D21.] Second, the language Nikon cites simply describes the order that steps are recited in the claim, and is not in any way a disclaimer of them overlapping. [Resp. to D20; *see also* D19.]

<u>Whether preamble is limiting</u>: Plaintiffs agree that the specific preamble language discussed in Defendants' summary judgment motion is limiting,[6] although, as explained below, they are not entitled to summary judgment of noninfringement. However, Defendants overreach by asserting that the *entire* preamble is limiting. For instance, "statements of intended use or asserted benefits in the preamble [only] … limit … claims … if the applicant clearly and unmistakably relied on those uses or benefits to distinguish prior art." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002). Because Defendants do not even attempt to explain why the bulk of the preamble should be limiting (Mot. at 9), the entire preamble should not be deemed limiting.

## IV. DEFENDANTS ARE NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT OF NO INFRINGEMENT OF THE '335 PATENT

Defendants' noninfringement argument is based on errors of law and fact. As discussed, claim 1's preamble requires a "reset transistor *coupled* between a power supply and the single sensing node" [P1]. Defendants first argue that a few accused cameras do not satisfy this because their reset transistor is connected *indirectly* to the sensing node,

---

[6] Specifically, a "reset transistor coupled between a power supply and the single sensing node for outputting the photoelectric charges stored in the single sensing node, in [] response to a third control signal."

1   with another transistor in between.[7] (Mot. at 10-11 (D5); 12 (███████████).)

2   　　　Defendants' argument fails as a legal matter of claim construction. The unstated

3   and unsupported premise of Defendants' argument is that electrical components are

4   "coupled" only if they directly connect to each other with no electrical components in

5   between. (Mot. at 10-12.) That is wrong.[8] Here, the specification expressly uses "coupled"

6   to include indirect connections through an intermediate transistor: It states that "the

7   plurality of photodiodes are electrically *coupled to* the single sensing node," [Resp. to D28,

8   '335 at 3:27–28; 7:15–16], and then shows that this coupling

9   can be indirect with a transistor between the photodiodes

10  and the sensing node. For example, FIG. 4 (right) shows

11  that the two photodiodes (green) are coupled to the single

12  sensing node (blue) via an indirect connection, with transfer

13  transistors Tx1, Tx2 (red) in between. Thus, Defendants'



14  implicit claim construction for "coupled" would exclude the very usage of that term in

15  the specification above, which is not correct. *ERBE*, 566 F.3d at 1034. Moreover, as many

16  courts have found, the plain meaning of "coupled" covers indirect connections. *See Silicon*

17  *Graphics v. nVidia*, 58 F.Supp. 2d 331, 346 (D.Del.1999) ("couple" in electronics context

18  not limited to "directly coupled."); *MEMS Tech. Berhad v. ITC*, 447 F. App'x 142, 151–52

19  (Fed.Cir.2011) ("electrically coupled" includes direct or indirect connections via

20  intervening circuitry); *WeddingChannel.com v. The Knot*, 2005 WL 165286, at *10112

21  (S.D.N.Y. Jan.26, 2005) (similar).

22  　　　Defendants' second argument makes the same error. They argue that because the

23

24  ─────────────────

25  [7] Defendants do not dispute that the reset transistors satisfy the requirement of being coupled to the power supply. (*See* Mot. 10-12.)

26  [8] The preamble also discloses the direction that charge flows. The power supply (vdd in FIG. 4 above) is coupled to the "reset transistor" (M1), which is coupled to the sensing

27  node (A), which is coupled to the drive transistor (M3) which is coupled to the select transistor (M4). *See* Claim 1. The flow of charge must follow this same path, as confirmed

28  by the non-preamble limitations, which specify that the voltages are output "through the single sensing node, the drive transistor and the select transistor." *See id.*

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)

1  reset transistor is not directly connected to the sensing node, it only "transfer[s] charges

2  to the neighboring transistor" and not to the sensing node itself. (Mot. at 10, 12.) In other

3  words, Defendants again argue that the "output" of the reset transistor must go directly

4  to the sensing node without passing through an intermediate transistor. This argument

5  fails. As a matter of law, "outputting" does not require a direct transfer of charge to the

6  sensing node. On the contrary, the specification again expressly uses the word "output"

7  to include indirect transmission through an intermediate transistor. It states that the

8  "single sensing node [] selectively receiv[es] the photo charges *outputted from the photodiodes*"

9  [P12], and further discloses that this outputting can be indirect through intermediate

10  transistors. As seen in FIG. 4 (reproduced above), there is a transistor on the path

11  between the photodiodes and the sensing node. [P12][9]

12      Moreover, as a matter of fact, the output of the reset transistor is in effect *directly*

13  transferred to the sensing node, since ██████████████████████████████████████

14  ████████████████████████████████████████. [P13]. Thus, at all relevant

15  times, these intermediate transistors ████████████████████████████████████

16  ██████████████████████████████████████

17      Lastly, even on Defendants' incorrect constructions, summary judgment would be

18  foreclosed by genuine factual disputes infringement under the doctrine of equivalents.

19  "Infringement under the doctrine of equivalents is a question of fact …." *Intendis GMBH*

20  *v. Glenmark Pharms. Inc.*, 822 F. 3d 1355, 1360-61 (Fed. Cir. 2016). Here, Plaintiffs' expert,

21  Dr. Carley, has explained that, even under Defendants' incorrect constructions, the

22  indirect connection between the reset transistor and the sensing node is not substantially

23  different from a direct connection. [P14] These approaches perform substantially the

24  same function (connect or disconnect the power supply to the sensing node as needed)

25  in substantially the same way (transistors act as a switch to make or break the electrical

27  [9] Further, the claim language Defendants rely on does not say that the reset transistor
outputs "to" the sensing node in any case, but rather that it is "for outputting the
28  photoelectric charges *stored in the single sensing node*" [P1]—i.e. that is purpose is to help
with the output *of* the sensing node.

11

1   connection between the power supply and the sensing node), to achieve substantially the

2   same result (reset the sensing node by making its voltage essentially the same as that of

3   the power supply). *Id.* While Nikon's expert provided a conclusory assertion to the

4   contrary, these genuine factual disputes cannot be resolved on summary judgment.

## V.   THE █████████ SENSORS[10] ARE NOT LICENSED

6      The ████████ sensors in the accused cameras are unlicensed because Sony is

7   only licensed to make sensors on its own behalf, not for Nikon. "[D]efendant has the

8   burden of proof to show the existence of a license and the scope of any such license."

9   *Rockwell Int'l Corp. v. United States*, 31 Fed. Cl. 70, 77 (1994). Thus, "[a]s the proponents

10   of the defense, it was incumbent upon [Defendants] to show that the license authorized

11   the sale of the infringing machines in the United States." *Spindelfabrik Suessen-Schurr v.*

12   *Schubert & Salzer*, 903 F.2d 1568, 1576 (Fed. Cir. 1990).

13      Defendants cannot carry this burden. As discussed in detail below, ██████

14   ████████████████████████████████████████████

15   ████████████████████████████████████████████

16   ████████████████████████████████████████████

17   ████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████

21   ████████████████████████████████████████

22      **A.**   **Under the** █████████████████████████████████

23   ████████████████████████████████████████████

24   ████████████████████████████████

---

[10] Defendants' motion for summary judgment only applies to the subset of the cameras accused under the '335 patent where ██████████████████████████. Other accused cameras have image sensors made by other third parties, which Defendants do not contend are licensed. In this section, we refer to "Nikon" instead of "Defendants" at times for consistency with documents we discuss.

12

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)

[Resp. to D50.] As "foundry" and "contract manufactur[er]" are terms of art in the semiconductor industry [P15], they are construed according to their meaning in that industry as follows: "*Foundry Rights*"—A "foundry" is "for semiconductor manufacturing, a vendor providing [silicon] wafer processing" [P16.] Thus, a "foundry" company is one that manufactures custom integrated circuits on its customers' behalf. [*Id.*].

"*Foundry*" *and* "*Contract Manufacturing*" *Services*—Foundries can be further classified according to the services they provide and their level of involvement in chip design. First, in the simple "foundry" model, the foundry company acts as a manufacturing arm of its customer, does limited design, and instead "produce[s] custom large-scale integrated circuit wafers from the customers' designs." [P17.]

Foundries can also serve as "contract manufacturers." [P18.] As industry literature demonstrates, contract manufacturers are "capital-intensive businesses [that] assume more responsibility for product design and process innovation." [*Id.*] They can play a role in helping customers design chips. [*Id.*] "Product design and design for manufacturing may … be services that are provided by the contract manufacturer." [*Id.*] "Contract manufacturers [may] … offer[] state-of-the-art engineering services …" and provide "'turnkey' manufacturing, in which the contract manufacturer selects and process[es] electronic components …." [*Id.*]. The key characteristic of contract-manufacturer-style foundries is that they use their design and manufacturing facilities to help build custom chips substantially exclusively for a customer, rather than for their own use. [*Id.*]

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)

1

2

3

4

5

6

7

8

9

10

11    **B.**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)

1

2

3

4

5

6

7

8

9

10

11

12

13    Defendants' other argument raises a genuine dispute of material fact.

14

15

16

17

18

19

20

21

22

23

24

25    **VI.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT**
      **REGARDING THE '163 PATENT**

26

27    Defendants' summary judgment motion for the '163 patent should be denied as it

28    relies on two genuine disputes of material fact on which a jury may find for Plaintiffs:

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)

| Defendants claim… | But the evidence is… |
|---|---|
| 1. The accused cameras "do not derive a correlation image." | 1. The accused cameras **do** derive a correlation image. [P171.] |
| 2. The accused cameras "do not identify candidate regions based on detecting a local maximum in a correlation image." | 2. The accused cameras **do** identify candidate regions based on detecting a local maximum in a correlation image.  [P172.] |

**A.     How the Accused Cameras Work**

The accused cameras perform face detection on humans, dogs, and cats. [P100-P101.] For example, "Face Priority Autofocus" uses face detection to focus the camera on a person's face. [P102.] ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

For example, one could take a photograph of a dog (right) using Nikon's "Pet Portrait" mode on an accused camera ████████  The image is made up of many rows of tiny pixels. Like all of the accused ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)

**B.    The Accused Cameras "Derive a Correlation Image" as Claimed**

The accused cameras "derive a correlation image." The actual preselected reference data ███████████████████████████████████████████

Dr. Mundy calculated not only the correlation image above, but also additional correlation images that he derived by █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

By contrast, Defendants offer only attorney argument and expert *ipse dixit* for their erroneous claim that as to "a correlation image in the accused products … there is none." (Mot. at 17.) Unsupported argument has no weight on summary judgment. *elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 506 (Fed. Cir. 2014) ("Attorney argument is not evidence."). Defendants incorrectly claim ████████████████████████████████ ███████████████████████████████████████ (Mot at 17.) Not so; [P129], and irrelevant because it does not reflect any claim limitation.[12] In contrast to Dr. Mundy, who analyzes ███████████████ in his expert report, Defendants' expert Dr. Darrell does not cite a single line of source code in his declaration. [P131-P132.] Aside from Dr. Darrell's *ipse dixit*, there is no evidence supporting Defendants' position.

Defendants argue for their proposed construction, but claim construction is not required here because the accused cameras meet this limitation under any of the proposed

───────────────

11 ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████ The claim contains no such limitation.

17

constructions. Defendants contend "correlation image" is a "two-dimensional image obtained by an image correlation operation between the input image and a kernel." [P133.] Plaintiffs propose plain and ordinary meaning, or in the alternative, that a correlation image is a "set of pixel correlation values." [P134.] The accused cameras meet any of these proposed constructions according to Dr. Mundy's testimony.[13]

## C. The Accused Cameras Identify Candidate Regions "Based on Detecting a Local Maximum"

Defendants present a straw man view of what it means to detect a local maximum. (Mot. at 16 ██████████████████████████████████ ████████████████████ Claim 1 does not contain that limitation, and Dr. Mundy showed that the accused cameras ██████████████████████████ ██████████████████████████████████████████████████████: In his invalidity report, he claims prior art "discloses identifying regions of interest based on local maxima correlation values, namely by *comparing the correlation values of different face candidates with a threshold value*."[14] [P136.] ████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████ Thus, there is a genuine dispute of material fact as to whether "identifying potential candidate regions of said input image based on detecting a local maximum in

---

[13] Defendants raise prosecution history estoppel arguments relating to doctrine of equivalents (Mot. at 17-18), but Defendants' arguments are irrelevant because there is a genuine dispute of material fact as to whether the accused products <u>literally</u> infringe.

[14] *See also* [P140] (Dr. Darrell: "Hoogenboom discloses selecting a candidate region of the input image having a likelihood of containing the target image pattern by detecting a local maximum in the correlation image. Namely, the values of the Normalized Correlation Coefficient must be above a threshold.").

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)

1  said correlation image" is met.

2      **D.**    **Defendants Are Not Entitled to Summary Judgment on Claim 15**

3      Defendants contend that the accused cameras do not meet claim 15 for the same

4  two reasons as claim 1. (Mot. at 20.)[15] More specifically, even though claim 15 does not

5  recite these two limitations, Defendants contend that the "first filtering means" should

6  be construed to include structure that incorporates the "correlation image" and "based

7  on detecting a local maximum." Even assuming *arguendo* that this element should be

8  construed as means-plus-function having such structure, which as shown below it should

9  not be, for the reasons stated above, the accused cameras satisfy these limitations, or at

10  least there are genuine disputes of material fact that preclude summary judgment.[16]

11      **E.**    **Defendants' Proposed Claim Construction Lacks Merit**

12      The Court need not construe any claim to deny Defendants' motion. However, if

13  it does construe "first filtering means" position, it should adopt Plaintiffs' construction.

14      Plaintiffs have overcome the presumption that a claim element reciting "means"

15  is governed by § 112(6). Both parties agree "first filtering means" describes an algorithm.

16  [P141.] Here, the claim itself recites the structure of that algorithm. [P142.] As such, the

17  term should not be construed under § 112(6). *TI Group Auto. Sys, v. VDO N. Am.,* 375

18  F.3d 1126, 1135 (Fed. Cir. 2004) ( "pumping means" not § 112(6) because claim recited

19  the structure, location, and operation); *TecSec, Inc. v. IBM Corp.,* 731 F.3d 1336, 1347 (Fed.

20  Cir. 2013) (similar); *Skky, Inc. v. Mindgeek* 859 F.3d 1014 (Fed. Cir. 2017) (similar).

21   

---

22  [15] Though Nikon purports to move only under its own claim construction of "first filtering means," Nikon does not identify any allegedly missing structure, and Nikon has

23  not shown it is entitled to summary judgment under any proffered construction.

24  [16] Defendants are also wrong that prosecution history estoppel applies to claim 15. (Mot. at 20.) Defendants contend that "first filtering means" should be construed to include "the added limitations of amended claim 1," and that prosecution history estoppel applies

25  to claim 15 as it does to claim 1. (*Id.*). First, as described above, prosecution history estoppel is irrelevant because the issue is <u>literal</u> infringement. Second, Defendants

26  incorrectly imply that structural *components* of a means-plus-function element are

27  limitations. *Odetics, Inc. v. Storage Tech.,* 185 F.3d 1259, 1268 (Fed. Cir. 1999). The question is whether the *overall structure*, not components of the structure, is satisfied exactly or

28  equivalently under § 112(6), *see id.*, and Defendants' attempt to isolate components of their proposed structure and apply prosecution history estoppel is legally erroneous.

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION

Case No. 2:17-cv-07083-RGK (MRWx)

However, if the Court concludes that § 112(6) applies, Defendants' proposed structure is far too narrow. "[A] court may not import into the claim features that are unnecessary to perform the claimed function. Features that do not perform the recited function do not constitute corresponding structure and thus do not serve as claim limitations." *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1352 (Fed. Cir. 2003); *Micro Chem. v. Great Plains Chem.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).

Here, Plaintiffs have proposed a structure of "linear matched filter." [P143] This is sufficient structure drawn from the specification, *e.g.,* '163 at 2:35, 7:10, to perform the functions alternatively identified by the parties. [P144-P158.] Nikon's proposed structure, which covers twenty-two lines of the specification [P159] represents improper "structural limitations from the written description that are unnecessary to perform the claimed function." *Alfred E. Mann Found. v. Cochlear Corp.*, 2012 WL 12877984, at *7 (C.D. Cal. June 18, 2012) (quotations omitted). [P161-P163.][17] In the alternative that the Court looks to Nikon's structure, the minimal language there is "a linear matched filter [that] includes a linear-convolution step and a decision step." '163 7:12-13. [P164.]

The Court should find that the claim term is not governed by § 112(6) or in the alternative, adopt Plaintiffs' structure for the "first filtering means…" element as "linear matched filter" and reject Nikon's overly limiting structure.[18]

## VII.   CONCLUSION

Defendants' request for summary judgment should be denied on all issues, and summary judgment entered for Plaintiffs on written description, enablement, and license.

---

[17] For example, although the function identified by Defendants is "identifying a plurality of image regions …" and "correlate said image …," Defendants propose limiting structure that is not necessary to perform this function, such as quoting one (of several) embodiments of a "processing module 54 [that] is configured such that only regions that contain a local maximum in the correlation image and have pixel correlation values that are greater than a fixed threshold value T, are selected." [P159-P163.]

[18] Defendants also raise "second filtering means" without identifying a relevant dispute. In particular, Defendants' proposed structure does not recite either the "correlation image" or the "identifying…" language at issue in their motion. Their proposed structure is so narrow as to be an error of law, involving, e.g., the "expected positions of the eyes of a human face" that have nothing to do with the function. [P165-P170.]

20

1  Dated:  August 31, 2018          FISH & RICHARDSON P.C.

2                                   By:  /s/ Christopher S. Marchese

3  _____

4                                        Christopher S. Marchese (SBN 170239)
                                         marchese@fr.com
5                                        FISH & RICHARDSON P.C.

6                                        633 West Fifth Street, 26th Floor
                                         Los Angeles, CA 90071
7                                        Tel:  (213) 533-4240, Fax: (858) 678-5099

8
                                         Frank Scherkenbach (SBN 142549)
9                                        scherkenbach@fr.com

10                                       Kurt L. Glitzenstein (Admitted Pro Hac Vice)
                                         glitzenstein@fr.com
11                                       Proshanto Mukherji (Admitted *Pro Hac Vice*)
                                         mukherji@fr.com
12
                                         Jeffrey Shneidman (Admitted *Pro Hac Vice*)
13                                       shneidman@fr.com

14                                       Elizabeth G.H. Ranks (Admitted *Pro Hac Vice*),
                                         ranks@fr.com
15                                       FISH & RICHARDSON P.C.

16                                       One Marina Park Drive
                                         Boston, MA 02210-1878
17                                       Tel:  (617) 542-5070, Fax: (617) 542-8906

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Olga I. May (SBN 232012)
omay@fr.com
Markus D. Weyde (SBN 285956) weyde@fr.com
K. Nicole Williams (SBN 291900)
nwilliams@fr.com
Jared A. Smith (SBN 306576)
jasmith@fr.com
Oliver J. Richards (SBN 310972)
orichards@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070, Fax:   (858) 678-5099

Jennifer Huang (Admitted *Pro Hac Vice*)
jhuang@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel:  (612) 335-5070, Fax:   (612) 288-9696

Andrew R. Kopsidas (Admitted Pro Hac Vice)
kopsidas@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Ste. 1000 Floor
Washington, DC 20005
Tel:  (202) 783-5070, Fax: (202) 783-2331

Attorneys for Plaintiffs, CARL ZEISS AG and
ASML NETHERLANDS B.V.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 31, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Christopher S. Marchese*
Christopher S. Marchese
marchese@fr.com

PLAINTIFFS' OPPOSITION TO NIKON'S SUMMARY JUDGMENT MOTION
Case No. 2:17-cv-07083-RGK (MRWx)