1  Christopher S. Marchese (SBN 170239), marchese@fr.com
2  FISH & RICHARDSON P.C.
   633 West Fifth Street, 26th Floor
3  Los Angeles, CA 90071
   Tel: (213) 533-4240, Fax: (858) 678-5099
4

5  Frank Scherkenbach (SBN 142549), scherkenbach@fr.com
   Kurt L. Glitzenstein (Admitted *Pro Hac Vice*), glitzenstein@fr.com
6  FISH & RICHARDSON P.C.
7  One Marina Park Drive
   Boston, MA 02210-1878
8  Tel: (617) 542-5070, Fax: (617) 542-8906

9
   Olga I. May (SBN 232012), omay@fr.com
10 Markus D. Weyde (SBN 285956), weyde@fr.com
11 FISH & RICHARDSON P.C.
   12390 El Camino Real
12 San Diego, CA 92130
   Tel: (858) 678-4745, Fax: (858) 678-5099
13

14 *[Additional Counsel listed on last page.]*

15
   Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V.
16

17           IN THE UNITED STATES DISTRICT COURT
18  FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

19 | CARL ZEISS AG and ASML NETHERLANDS B.V., | Case No. 2:17-cv-07083-RGK (MRWx) |
   |---|---|
20 | | |
   | Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION** |
21 | v. | |
22 | NIKON CORPORATION, SENDAI NIKON CORPORATION, and NIKON INC., | |
23 | | Date:        September 24, 2018 |
24 | | Time:        9:00 a.m. |
   | Defendants. | Judge:       Hon. R. Gary Klausner |
25 | | Courtroom:   850, 8th Floor |

26

27

28

1

## **<u>TABLE OF CONTENTS</u>**

2

**<u>Page</u>**

3

I.   Plaintiffs Are Entitled to Summary Adjudication of Ownership ............................ 1

4
5

II.   Plaintiffs Are Entitled to Summary Adjudication of No Marking for the '312, '017, and '574 Patents ("Kwon patents") and the '335 Patent ................................ 1

6
7

III.   Plaintiffs Are Entitled to Summary Adjudication That the Kaifu and Yuki References Do Not Anticipate the '312 and '017 Patents ........................................ 2

8

    A.   Plaintiffs' Proposed Claim Constructions Are Correct ................................. 2

9

    B.   Defendants Present No Evidence That Kaifu or Yuki Anticipate ............. 3

10
11

IV.   Plaintiffs Are Entitled to Summary Adjudication for the Written Description Defense for the Kwon Patents ..................................................................... 3

12
13

V.   Plaintiffs Are Entitled to Summary Adjudication That Claim Elements 1(c)-1(f) of the '335 Patent Are Satisfied ................................................................ 4

14
15

    A.   Plaintiffs' Construction of "Turning on/off" Should Be Adopted and the Motion for Summary Judgment Should Be Granted. ................................... 4

16

    B.   Defendants' Counterarguments Are Meritless. ................................................ 6

17

    C.   Plaintiffs' Summary Judgment Motion Should Be Granted. ........................ 8

18

    D.   Defendants' Untimely Cross-Motion Should Be Denied. ............................ 8

19
20

VI.   Plaintiffs Are Entitled to Summary Adjudication That Guidash '900 Is Not Prior Art to the Kwon Patents ............................................................................... 9

21

VII.   Plaintiffs Are Entitled to Summary Adjudication that the Yow Thesis Is Not Prior Art to the '163 Patent .......................................................................... 10

22
23
24
25
26
27
28

PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5
*Adv. Fiber Techs. Trust v. J & L Fiber Servs.*,
   674 F.3d 1365 (Fed. Cir. 2012) ................................................................ 6

6

7
*In re Bayer*,
   568 F.2d 1357 (C.C.P.A. 1978) .............................................................. 10

8

9
*Broadcom v. Emulex*,
   732 F.3d 1325 (Fed. Cir. 2013) ................................................................ 6

10

11
*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................. 1

12
*Centricut v. Esab Group.*,
   390 F.3d 1361 (Fed. Cir. 2004) ................................................................ 9

13

14
*Chimie v. PPG Indus., Inc.*,
   402 F.3d 1371 (Fed. Cir. 2005) ................................................................ 5

15

16
*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
   800 F.3d 1375 (Fed. Cir. 2015) ................................................................ 9

17

18
*ERBE v. ITC*,
   566 F.3d 1028 (Fed. Cir. 2009) ................................................................ 5

19

20
*In re Hall*,
   781 F.2d 897 (Fed. Cir. 1986) ................................................................ 10

21
*Honeywell v. Universal Avionics*,
   493 F.3d 1358 (Fed. Cir. 2007) ................................................................ 5

22

23
*IBM v. Priceline Group Inc.*,
   271 F. Supp. 3d 667 (D. Del. 2017) ....................................................... 10

24

25
*Intamin Ltd. v. Magnetar Techs., Corp.*,
   483 F.3d 1328 (Fed. Cir. 2007) ................................................................ 7

26

27
*Intel v. Hartford Accident & Indem. Co.*,
   952 F.2d 1551 (9th Cir. 1991) .................................................................. 1

28
*Intellectual Ventures I v. T-Mobile USA*,
   2018 WL 4201163 (Fed. Cir. Sept. 4, 2018) ............................................ 9

ii

PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

*Intendis GmbH v. Glenmark Pharms., Inc.,*
    822 F. 3d 1355 (Fed. Cir. 2016) ........................................................... 8

*Kaneka v. Xiamen Kingdomway Group.,*
    790 F.3d 1298 (Fed. Cir. 2015) ............................................................ 6

*In re Katz Interactive Call Processing Patent Litig.,*
    639 F.3d 1303 (Fed. Cir. 2011) ............................................................ 6

*In re Klopfenstein,*
    380 F.3d 1345 (Fed. Cir. 2004) .......................................................... 10

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ............................................................................. 1

*MEMC Elec. Materials v. Mitsubishi Materials Silicon,*
    420 F.3d 1369 (Fed. Cir. 2005) ............................................................ 3

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .......................................... 5

*Research Corp. Tech. v. Microsoft Corp.,*
    627 F.3d 859 (Fed. Cir. 2010) ............................................................ 10

*Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V.,*
    365 F.3d 1299 (Fed. Cir. 2004) ............................................................ 8

*Smith & Nephew, Inc. v. Ethicon, Inc.,*
    276 F.3d 1304 (Fed. Cir. 2001) ............................................................ 7

*Xerox Corp. v. Google Inc.,*
    801 F. Supp. 2d 293 (D. Del. 2011) ...................................................... 8

*z4 Techs., Inc. v. Microsoft Corp.,*
    507 F.3d 1340 (Fed. Cir. 2007) .......................................................... 10

iii
PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

# I.   PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION OF OWNERSHIP

Faced with Plaintiffs' well-pled motion for summary judgment of ownership, Defendants bore the burden in their opposition to "identify specific facts … that demonstrate that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Intel v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (nonmovant must present "significant probative evidence"). Conclusory allegations do not establish a genuine dispute. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Defendants failed to identify any factual dispute. At most, Defendants *suggest* that there *might* be problems with the chain of title for the asserted patents, but they presented no specific *evidence* of a genuine issue of material fact. (*See* Opp. at 3.) For example, Defendants note that the patents had multiple previous owners and were the subject of multiple agreements (*id.*), but fail to even identify—let alone support with evidence—any defect in any patent's chain of title (*see id.*). Defendants further suggest that communications between Plaintiffs and HP may support "a title problem" (*id.*), but do not even attempt to explain the supposed problem, or how the communications with HP would support such a dispute[1] (*see id.*).

Nor do Defendants allege any dispute or insufficiency in the evidence Plaintiffs adduced in support of summary judgment. (*See id.*) Indeed, they admit that Plaintiffs perfected ownership of the asserted patents "[i]n exactly the same way as in the 3221 case" (*id.* at 2)—where Defendants offered no evidence or argument to refute Plaintiffs' showing of ownership through the HP transaction, and did not cross-examine a single witness on ownership at trial. Plaintiffs' motion included all the ownership evidence presented in the 3221 case and more; Defendants have not presented any specific facts or evidence that demonstrates a "genuine issue" for trial.[2] *Celotex*, 477 U.S. at 322-23.

# II.   PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION OF

---

[1] Defendants cite a string of emails between Plaintiffs' counsel and HP, but those emails discuss only one U.S. Patent (U.S. Patent No. 6,972,792) which is not asserted in this case.
[2] Defendants' brief makes clear that, rather than truly contest ownership, they seek to use it to inject extraneous themes into the trial, as they did in the 3221 case. (*E.g.*, Opp. at 3 (alleging Plaintiffs made an "effort to intentionally hide their acquisition from Nikon.").)

1

**NO MARKING FOR THE '312, '017, AND '574 PATENTS ("KWON PATENTS") AND THE '335 PATENT**

Defendants essentially concede that Plaintiffs are entitled to summary judgment of no marking for the Kwon and '335 patents. They acknowledge (1) that "there is no marking requirement" for the '335 patent "because it only contains method claims" and (2) that they have not identified any products that they contend should have been marked with the Kwon patent numbers. (*See* Opp. at 3.) The stipulation they offered is irrelevant here and anyway insufficient. It did not cover the '335 patent, and for the others, was conditioned on Plaintiffs' stipulating to dismiss Sendai Nikon Corp. (*See* D.I. 166-2.)[3] Plaintiffs are entitled to summary judgment on this issue.

**III.   PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION THAT THE KAIFU AND YUKI REFERENCES DO NOT ANTICIPATE THE '312 AND '017 PATENTS**

Plaintiffs presented constructions and showed that Kaifu and Yuki do not disclose those limitations, properly construed. (Br. at 3-8.) Defendants offer neither constructions, nor any evidence, that Kaifu and Yuki disclose the limitations under *any* construction. The Court should adopt Plaintiffs' constructions and grant this motion.

**A.   Plaintiffs' Proposed Claim Constructions Are Correct**

The claims should be construed to require that the shared sensing nodes receive charges from the photodiode(s) of the currently scanned pixel, and not from the photodiode(s) of the pixel with which the sensing nodes are shared. As explained (Br. at 5-6), this facilitates an increase in the storage capacitance of the sensing node accessible by the currently scanned pixel—a central idea of the inventions.

Defendants offer no concrete argument in response, but baldly assert (*id.* at 7), without citation, that this requirement "is not supported by the claim language." Defendants do not even attempt to address Plaintiffs' explanation that the claim should be so construed in light of the specification. (*Id.* at 6.)

Defendants only other assertion (Opp. at 5) is that Plaintiffs have been inconsistent

---

[3] The proposed stipulation attached to that email, which Defendants did not submit, included the proposed stipulation regarding Sendai Nikon. Mukherji Decl., Ex. 40.

2

PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

in the constructions they have offered. Not so. Defendants cherry-pick language from a brief in the 3221 case that addressed *whether* the sensing node will be shared, not *how* it will be shared—which is the subject of the present dispute. (*See* 3221 case, D.I. 181 at 17.) Dr. Subramanian also did not offer a contrary construction, as Defendants allege, but explicitly endorsed Plaintiffs' proposed construction (*See* D.I. 150-38 at ¶ 87).[4]

### B. Defendants Present No Evidence That Kaifu or Yuki Anticipate

If Plaintiffs' construction is adopted, summary judgment should be granted because Defendants present no argument that Kaifu and Yuki disclose the selectively shared sensing nodes feature. (*See* Opp. at 6-7.) For instance, they do not identify where either reference allegedly teaches sensing nodes that are selectively shared or coupled. (*Id.*)[5]

Instead, Defendants try to manufacture a dispute by pointing to an alleged (but not actual) inconsistency in Plaintiffs' expert's opinion, and stating without support that Plaintiffs and their expert "do not deny" that the references have the feature at issue. (*Id.*) Such conclusory statements are insufficient to establish a genuine dispute. *MEMC Elec. Materials v. Mitsubishi Materials Silicon,* 420 F.3d 1369, 1373 (Fed. Cir. 2005) (nonmovant must present "specific evidence indicating there is a genuine issue for trial"). There is also no inconsistency. While it is true that the sensing nodes of Kaifu and Yuki receive charges from more than one pixel (*see* Br. at 7-8), neither discloses what is claimed: that the shared nodes receive charges from only one of the pixels that share the node at a time (thus increasing the capacitance available to a single pixel).

## IV.   PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION FOR THE WRITTEN DESCRIPTION DEFENSE FOR THE KWON PATENTS

As an initial matter, Defendants' argument is limited to the term "selectively shared," which appears only in claim 1 of the '312 patent. They do not argue that "selectively couplable" and "selectively electrically coupling" lack written description and

---

[4] Dr. Subramanian's doctrine of equivalents analysis is neither inconsistent nor relevant to the current dispute, as the doctrine by design extends the claims beyond the literal scope of a claim limitation.

[5] Indeed, on this issue, Defendants give not citations to either reference (except by reproducing a figure from each without explanation) or to their expert. (Opp. at 6-7.)

PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

1   do not address the '017 or '574 patents. Summary adjudication is thus warranted for all
2   claims of the '017 and '574 patents and claims 7-9 and 11-16 of the '312 patent.

3         Summary adjudication is also warranted for claim 1 of the '312 patent. The term at
4   issue is "selectively shared ... in response to a line select signal of the current scan line."
5   Figure 4 shows this: Sensing node SN2 is selectively shared with sensing node SN1 in
6   response to signal Sx2 so that signal Sx2 *selects* whether SN2 and SN1 are *shared*. (Br. at 9.)

7         The '312 patent supports the term even if it were construed to require selectivity
8   during a reading operation, as Defendants seem to suggest. *See* Mukherji Decl., Ex. 41 at
9   ¶¶ 81, 94; Opp. at 8. A skilled artisan would have recognized that Mr. Kwon had
10  possession of the "selectively sharing" operation. *See id.*, Ex. 42 at ¶¶ 196-98. The patent
11  discloses that "since the CMOS image sensor of the present invention shares the sensing
12  node of the nearest-neighboring unit pixel of a non-selected line when the specific unit
13  pixel of a selected line is operating, it is possible to receive much more photocharges
14  generated due to the enhanced fill-factor." ('312, 5:21-26; *see id.*, Ex. 41 at ¶ 69 (recognizing
15  that the invention "is to increase capacitance of a sensing node").) Figure 4 also shows
16  that Mr. Kwon possessed and expressly described transistors controlled by their own
17  separate control signals. (*See, e.g,* '312, 4:25-34.) CMOS image sensor technology is a
18  predictable art, and one skilled in it could understand and predict the operation of
19  controlling two separate transistors with separate and independent signals. Mukherji Decl.,
20  Ex. 42 at ¶¶ 190, 860, 864-67. Defendants provide no evidence to the contrary.

## V.   PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION THAT CLAIM ELEMENTS 1(C)-1(F) OF THE '335 PATENT ARE SATISFIED

23        Defendants do not dispute that the Accused Cameras practice steps 1(c)-1(f) under
24  Plaintiffs' construction of "turning on/off." (Opp. at 14-16.) Because the specification
25  mandates this construction, it should be adopted and this motion should be granted.

### A.   Plaintiffs' Construction of "Turning on/off" Should Be Adopted and the Motion for Summary Judgment Should Be Granted.

27        The parties dispute whether "turning on" and "turning off" just require ensuring
28  that transistors are on or off (Plaintiffs) or also require an affirmative transition into those

states (Defendants).[6] Defendants' argument fails because they analyze the term in the abstract, rather than in light of the specification. That is legal error. "[T]he specification is _always_ highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*). Here, the specification mandates Plaintiffs' construction.

Even in the abstract, to "turn" something on/off can cover cases with and without a transition. To use Defendants' example—where "one were to walk into a room with the light already on" (Opp. at 10)—that light can be said to be "turned" on. For example: "I walked into the room and saw that the light was _turned on_." The specification uses these terms to include both the act of turning on/off, and the state of being turned on/off. This is "dispositive" because courts "do not construe claim language to be inconsistent with the clear language of the specification." *ERBE v. ITC*, 566 F.3d 1028, 1034 (Fed. Cir. 2009). This is true even if the specification uses the term in a way other than its ordinary sense. In *Honeywell v. Universal Avionics*, 493 F.3d 1358, 1361-64 (Fed. Cir. 2007), the Federal Circuit construed a term "in a manner different from its ordinary meaning" because "[t]he specification … clearly communicates the meaning the patentees have assigned to the term" and "[t]o hold otherwise would not include within the scope of the claim a preferred embodiment." Likewise in *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005), it held that "'dust-free[]' could not be read literally … [b]ecause a literal construction … would not read on the preferred embodiment …." The same is true here.

*First*, the specification expressly uses "turn on/off" (and variants thereof) where the system ensures that a transistor is on or off, without transitioning it to that state. It says that "[i]n section 'A1'" of FIG. 5 (annotated excerpt below), "the reset transistor [is] _turned on_ and the select transistor [] is _turned off._" ('335, 5:29-31.) As the figure shows, neither transistor transitions from off to on or vice versa during A1. Rather, the system simply

---

[6] Defendants assert that they have revised their proposed construction to "plain meaning," but they assert that this requires affirmatively transitioning between states. (Opp. at 10.)

1  ensures that both are in the recited state, which they were in

2  before.[7] Defendants' construction would contradict how the

3  specification uses the term.

4        *Second*, Defendants err by excluding the disclosed

5  embodiment. "[A]n interpretation which excludes a disclosed

6  embodiment from the scope of the claim is rarely, if ever,

7  correct," *Broadcom v. Emulex*, 732 F.3d 1325, 1333 (Fed. Cir.

8  2013), and one that "excludes *all* disclosed embodiments …

9  is especially disfavored." *Kaneka v. Xiamen Kingdomway Group.*,

10 790 F.3d 1298, 1304 (Fed. Cir. 2015). Here, Defendants do not dispute that—as we have

11 shown (Br. at 12-13)—their construction excludes the FIG. 5 embodiment (Opp. at 11).

12 This is the only disclosed embodiment of the claimed method (see next section).

13     **B.    Defendants' Counterarguments Are Meritless.**

14     Defendants' counterarguments are meritless. Their assertion that FIG. 5 can be

15 excluded because it allegedly is not the *only* embodiment fails. (Opp. at 11-12.) *First*, it

16 misstates the law. Embodiments cannot be excluded just because other embodiments

17 exist. For instance, in *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1324

18 (Fed. Cir. 2011), the court held it was error to limit a term because "[w]hile [one]

19 embodiment … requires [the limitation] … another embodiment does not … [and] there

20 is a strong presumption against a claim construction that excludes a disclosed

21 embodiment." *See Adv. Fiber Techs. Trust v. J & L Fiber Servs.*, 674 F.3d 1365, 1375 (Fed.

22 Cir. 2012) (Even when "an embodiment is disclosed in a single sentence … [a] disclosed

23 embodiment is a disclosed embodiment" and cannot be disregarded).

24     *Second*, FIG. 5 is the only embodiment of the claimed method. Defendants' other

25 alleged "embodiment"—'335, 3:64-4:37—is merely a verbatim repetition of claim 1[8] from

26

27 _____

28 [7] The specification relatedly uses "turn on/off" this way referring to multiple Figures. (*E.g.*, '335, 2:17-20 (re: FIG. 3, reset and select transistors); 5:42-47 (FIG. 5, same)).
[8] Specifically, it repeats verbatim the claim as originally filed. The few changes in prosecution do not matter here. Mukherji Decl., Ex. 43 (comparison with claim).



PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

the "Summary of the Invention" section. Embodiments are *examples* that disclose the "the reasonable practice of the [claimed] method," *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1309-10 (Fed. Cir. 2001). That is why it is wrong to construe the claims to exclude them. *Id.* Repeating claim language does not explain it, and certainly does not justify ignoring the patent's actual example of the invention.[9]

Defendants' other arguments are quickly answered. The patent's use of "turn on/off" in some places and "keep on/off" in others (Opp. at 11) supports *Plaintiffs*, because the patent uses both terms to cover no-transition periods, and thus rejects the distinction Defendants seek to make between them (transition versus no-transition).[10]

| "Turn on" | "In section 'A1', the reset transistor [is] *turned on* …" (5:29-30) |  |
| "Keep on" | "In section 'C1', the reset transistor … *keep[s] on* a turn-on state" (5:53-58) | |

Plaintiffs' construction also does not render any part of element 1(f) redundant.[11] (Opp. at 10.)[12] Element 1(f) undisputedly refers to a time interval. To satisfy its "turning off the reset transistor" and "turning on the second transfer transistor" language, the system must ensure that these transistors are respectively off and on during at least part of that interval. (Neither side has argued that they must be on/off throughout.) So the additional language "with said reset transistor remaining off" an additional requirement that these transistors are in their recited states *at the same time*. It is not redundant.[13]

---

[9] *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328 (Fed. Cir. 2007), which Defendants cite (Opp. at 11) is not applicable. *Intamin* holds that "[a] patentee may draft different claims to cover different embodiments." 483 F.3d at 1337. In other words, if a patent has multiple claims and multiple embodiments that line up with them, the embodiments can be covered by the claims *collectively. Id.* That does not mean that the *only* disclosed embodiment can be excluded from *all* the claims, as Nikon seeks to do here.

[10] This is not to say that the patent uses the terms synonymously. It uses "turned on/off" to cover two cases: those where the system ensures that the transistor is on/off (1) by transitioning and (2) without transitioning. "Keep on/off" is used only for the latter case.

[11] This reasoning applies equally to Defendants' identical arguments under claims 2 and 4.

[12] "[C]laim element 1(f) requires 'turning off the reset transistor and then turning on the second transfer transistor with said reset transistor remaining off.'" (Opp. at 10.)

[13] Defendants' final argument is plain legal error. They argue that "Figure 5 … was not included in the claims" because it shows a step *in addition* to those recited in the claim.

PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

### C.   Plaintiffs' Summary Judgment Motion Should Be Granted.

Summary judgment should be granted. Defendants do not dispute that the Accused Cameras practice steps 1(c)-1(f) under Plaintiffs' construction of "turning on/off," regardless of how the dispute over overlapping steps is resolved. (Opp. 14-16.)

### D.   Defendants' Untimely Cross-Motion Should Be Denied.

Even under Defendants' construction of "turning on/off," their untimely cross-motion for partial summary judgment of noninfringement should be denied. *First*, Defendants' motion requires a further construction that the claimed steps cannot overlap. (Opp. at 13-14.) As explained in opposition to Defendants' summary judgment motions. (D.I. 179-2 at 7-9), claim steps may overlap absent language that "unequivoca[ly] preclu[des]" it. *Xerox Corp. v. Google Inc.*, 801 F. Supp. 2d 293, 303 (D. Del. 2011). Here, on the contrary, the specification (FIG.5) affirmatively shows that some steps *do* overlap. Defendants concede this. (Opp. at 13-14.) Defendants' argument that FIG. 5 has no relation to the claims (*id.* at 14) is wrong for the reasons discussed above.

*Second*, even under both of Defendants' constructions, genuine issues of material fact would remain as to whether the cameras satisfy the claims under the doctrine of equivalents. "Infringement under the doctrine of equivalents is a question of fact …." *Intendis GmbH v. Glenmark Pharms., Inc.*, 822 F. 3d 1355, 1360-61 (Fed. Cir. 2016). Here, Plaintiffs' expert has explained that "transitioning the transistors to an 'on' or 'off' state constitutes an insubstantial difference to ensuring that the specified transistor is on or off." (D.I. 149-14 at ¶¶ 329-31.) While Defendants provide conclusory assertions to the contrary (Opp. at 15-16), this factual dispute cannot be resolved on summary judgment.

Defendants' final perfunctory legal arguments also fail. Their argument that FIG. 5 is an unclaimed embodiment that cannot be captured by equivalents (Opp. at 16) fails because FIG. 5 is reflected in the claims. And their argument that Plaintiffs disclaimed non-overlap during prosecution is factually and legally wrong. (*See* D.I. 179-2 at 8-9;

---

(Opp. at 12.) But recited "steps … may be supplemented by additional … steps and still fall within the scope of the claim." *Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V.*, 365 F.3d 1299, 1305 (Fed. Cir. 2004). Thus, FIG. 5 is within the scope of Claim 1.

PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

1    *Intellectual Ventures I v. T-Mobile USA*, 2018 WL 4201163, at *4-5 (Fed. Cir. Sept. 4, 2018).)

2    ## VI.   PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION THAT GUIDASH '900 IS NOT PRIOR ART TO THE KWON PATENTS

4         Plaintiffs showed that Guidash '900 is not prior art to the Kwon patents because it was filed after the first U.S. application to which they receive priority. (Br. 15-16.) Plaintiffs also showed that Defendants had not met their burden to show that Guidash '900 could receive priority to an earlier provisional application because they had failed "to compare the claims of [Guidash '900] to the disclosure in the [] provisional application." *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1381 (Fed. Cir. 2015).

         Recognizing the fatal defect in their position, Defendants have submitted a *Dynamic Drinkware* analysis that is not only untimely, but too conclusory to meet Defendants' burden.

| Guidash '900 Claim | '104 Provisional Support |
|---|---|
| 1 | Figs. 1, 4 and corresponding description |
| 2 | Fig. 1 and corresponding description |
| 3 | Fig. 1 and corresponding description |

Specifically, it contains nothing but a 2-column table (excerpt above) that lacks any analysis to support the bald assertion that the provisional supports Guidash '900's claim. It does not analyze any claim limitation or identify any specific place where the provisional discloses one. Expert analysis is typically necessary to support a jury finding in "patent cases [like this] involving complex technology." *Centricut v. Esab Group.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004). Such conclusory expert testimony—that all of "claim 1" is present in "Figs. 1, 4 and corresponding description"—is tantamount to no testimony at all.

         Moreover, as Defendants' expert report shows, their attempt to invalidate the Kwon patents relies on disclosures in Guidash '900 (*e.g.*, such as FIGs. 12-13) that do not appear in the provisional and so cannot receive its priority date even if Guidash '900's *claims* were supported. *E.g.,* Mukherji Decl., Ex. 41 at App'x. L-3 (claims 1ab, 7ac), M-3 (1a, 7ab), N-3 (1abc, 9ab, 17a, 24a, 30e). Lastly, even if Guidash '900 could somehow reach back to its provisional, it still is not prior art. Plaintiffs showed the Kwon patents receive priority from an earlier-filed Korean application.[14] *Id.* at Ex. 42, at ¶¶ 20, 93; App'x A.

_____

[14] Defendants incorrectly argue that "it is Plaintiffs' burden to demonstrate that the claims of the '017 and '574 patents are entitled to earlier priority of the parent applications," citing *Research Corp. Tech. v. Microsoft Corp.*, 627 F.3d 859, 871 (Fed. Cir. 2010). However, unlike

PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

# VII. PLAINTIFFS ARE ENTITLED TO SUMMARY ADJUDICATION THAT THE YOW THESIS IS NOT PRIOR ART TO THE '163 PATENT

To be a printed publication, a "reference must have been sufficiently accessible to the public interested in the art …" *In re Klopfenstein*, 380 F.3d 1345, 1348 (Fed. Cir. 2004). Defendants' evidence does not show that the Yow thesis was accessible to the interested public, and the cases they cite highlight this lack of evidence. For example, in *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986), the court relied on an affidavit from a library employee describing the library's practices, including the "general practice for indexing, cataloging, and shelving theses." The affiant used this data to estimate the time it took to make the dissertation available to the interested public. *Id.* In *Klopfenstein*, the reference was "prominently displayed for approximately three cumulative days" at two conferences and was "shown to a wide variety of viewers, a large subsection of whom possessed ordinary skill in the art." 380 F.3d at 1350. In *IBM v. Priceline Group Inc.*, 271 F. Supp. 3d 667, 675 (D. Del. 2017), the prior art thesis was submitted to the library, received by the library, cataloged and searchable, and physically shelved before the critical date.

Here, Defendants have adduced no evidence of the general practices of the Cambridge University Library and no evidence that the Yow thesis was ever displayed to the public. Even accepting, *arguendo*, that the Yow thesis was in the library's possession in 1998, there is no evidence that anyone interested in the thesis could have located and accessed it at that time. *Cf. In re Bayer*, 568 F.2d 1357, 1361 (C.C.P.A. 1978) ("[S]ince appellant's thesis could have been located in the university library only by one having been informed of its existence by the faculty committee, and not by means of the customary research aids available in the library, the probability of public knowledge of the contents of the [thesis], was virtually nil." (internal quotations omitted)). Thus, Defendants have not met their burden to show that the Yow thesis is prior art to the '163 patent.

---

*Research Corp.*, in which the Court determined whether a later-filed continuation of a continuation-in-part was entitled to an earlier priority date, the '017 and '574 patents are both continuations of the '312 patent and thus presumptively entitled to the parent priority date. *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1344 (Fed. Cir. 2007). Thus, *Research Corp.* does not apply here.

PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

1

2

Dated: September 10, 2018                 FISH & RICHARDSON P.C.

3

4                                    By:  */s/ Proshanto Mukherji*

5

6                 Christopher S. Marchese (SBN 170239)
                  marchese@fr.com

7                 FISH & RICHARDSON P.C.
                  633 West Fifth Street, 26th Floor

8                 Los Angeles, CA 90071
                  Tel: (213) 533-4240, Fax: (858) 678-5099

9

10                Frank Scherkenbach (SBN 142549)
                  scherkenbach@fr.com

11                Kurt L. Glitzenstein (Admitted Pro Hac Vice)

12                glitzenstein@fr.com

13                Proshanto Mukherji (Admitted *Pro Hac Vice*)
                  mukherji@fr.com

14                Jeffrey Shneidman (Admitted *Pro Hac Vice*)
                  shneidman@fr.com

15                Elizabeth G.H. Ranks (Admitted *Pro Hac Vice*),

16                ranks@fr.com

17                FISH & RICHARDSON P.C.
                  One Marina Park Drive

18                Boston, MA 02210-1878

19                Tel: (617) 542-5070, Fax: (617) 542-8906

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

Olga I. May (SBN 232012)
omay@fr.com
Markus D. Weyde (SBN 285956) weyde@fr.com
K. Nicole Williams (SBN 291900)
nwilliams@fr.com
Jared A. Smith (SBN 306576)
jasmith@fr.com
Oliver J. Richards (SBN 310972)
orichards@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-5070, Fax: (858) 678-5099

Jennifer Huang (Admitted *Pro Hac Vice*)
jhuang@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel: (612) 335-5070, Fax: (612) 288-9696

Andrew R. Kopsidas (Admitted Pro Hac Vice)
kopsidas@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Ste. 1000 Floor
Washington, DC 20005
Tel: (202) 783-5070, Fax: (202) 783-2331

Attorneys for Plaintiffs, CARL ZEISS AG and
ASML NETHERLANDS B.V.

PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on September 10, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/D.I. system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Proshanto Mukherji*
Proshanto Mukherji
mukherji@fr.com

PLAINTIFFS' REPLY ISO MOTION FOR SUMMARY ADJUDICATION