VINCENT J. BELUSKO (CA SBN 100282)
VBelusko@mofo.com
JONATHAN M. SMITH (CA SBN 292285)
JonathanSmith@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

JACK W. LONDEN (CA SBN 85776)
JLonden@mofo.com
DIANA B. KRUZE (CA SBN 247605)
DKruze@mofo.com
SHAELYN DAWSON (CA SBN 288278)
Shaelyndawson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
NIKON CORPORATION, SENDAI
NIKON CORPORATION, and NIKON INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

CARL ZEISS AG and ASML NETHERLANDS, B.V.,

Plaintiffs,

v.

NIKON CORPORATION, SENDAI NIKON CORPORATION, and NIKON INC.,

Defendants.

Case No. 2:17-cv-07083 RGK (MRWx)

**DEFENDANTS NIKON CORPORATION, SENDAI NIKON CORPORATION, AND NIKON INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR PARTIAL STAY PENDING *INTER PARTES* REVIEW**

Date: October 15, 2018
Time: 9:00 a.m.
Courtroom: 850, 8th Floor

Hon. R. Gary Klausner

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....... ii
I. BACKGROUND ....... 2
  A. Procedural History ....... 2
  B. The IPR Petitions and Institutions ....... 3
    1. ’335 IPR Petition and Institution ....... 3
    2. ’163 IPR Petition and Institution ....... 3
II. LEGAL STANDARD ....... 4
III. ARGUMENT ....... 5
  A. Factor 1: The Stage of Litigation ....... 5
  B. Factor 2: A Stay Would Simplify The Case ....... 6
    1. A Stay Would Greatly Simplify Trial for the Court and Jury ....... 6
    2. A Stay Would Significantly Simplify Summary Judgment ....... 9
  C. Factor 3: A Stay Will Not Cause Any Undue Prejudice to Plaintiffs ....... 10
IV. CONCLUSION ....... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asetek Holdings, Inc, v. Cooler Master Co.*,
No. 13-cv-00457-JST,
2014 WL 1350813 (N.D. Cal. April 3, 2014) ........ 8

*AutoAlert, Inc. v. Dominion Dealer Sols., LLC*,
No. SACV-12-01661-JST(JPRx),
2013 WL 8014977 (C.D. Cal. May 22, 2013)........ 8

*Black Hills Media, LLC v. Pioneer Elecs. (USA) Inc.*,
No. CV 14-00471 SJO,
2014 WL 4638170 (C.D. Cal. May 8, 2014)........ 5

*In re Cygnus Telecomms. Tech., LLC, Patent Litig.*,
385 F. Supp. 2d 1022 (N.D. Cal. 2005)........ 8

*Cypress Semiconductor Corp. v. GSI Tech., Inc.*,
No. 13-CV-02013-JST,
2014 WL 5021100 (N.D. Cal. Oct. 7, 2014) ........ 8

*Evolutionary Intelligence LLC v. Yelp Inc.*,
No. C-13-03587-DMR,
2013 WL 6672451 (N.D. Cal. Dec. 18, 2013) ........ 7

*Inogen, Inc. v. Inova Labs, Inc.*,
No. SACV-11-1692-JST,
2012 WL 4748803 (C.D. Cal. Mar. 20, 2012) ........ 11

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
No. CV 11-3397-JGB,
2014 WL 12673678 (C.D. Cal., Dec. 5, 2014) ........ 4, 5, 6

*Limestone v. Micron Tech.*,
No. 15-cv-00278-DOC,
2016 WL 3598109 (C.D. Cal. Jan. 12, 2016)........ 4, 10

*Microsoft Corp. v. TiVo Inc.*,
No. 10-CV-00240-LHK,
2011 WL 1748428 (N.D. Cal. May 6, 2011) ........ 5

*In re Morgan Stanley*,
417 F. App'x 947 (Fed. Cir. 2011) .......... 2

*NFC Tech. LLC v. HTC Am., Inc.*,
No. 2:13-CV-1058-WCB,
2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) .......... 4

*Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*,
No. SACV-16-00300-CJC,
2017 WL 8220599 (C.D. Cal., June 27, 2017) .......... 7, 10

*Synopsys, Inc. v. ATopTech, Inc.*,
No. 13-cv-02965-MMC (DMR),
2015 WL 5210669 (N.D. Cal. Sept. 7, 2015) .......... 6

*TAS Energy, Inc. v. San Diego Gas & Elec. Co.*,
No. 12-cv-2777-GPC (BGS),
2014 WL 794215 (S.D. Cal. Feb. 26, 2014) .......... 9

*Tire Hanger Corp. v. My Car Guy Concierge Servs. Inc.*,
No. 5:14-CV-00549-ODM,
2015 WL 857888 (C.D. Cal. Feb. 27, 2015) .......... 8

*Transp. Techs., LLC v. L.A. Cty. Metro. Transp. Auth.*,
No. CV 15-6423-RSWL-MRWx,
2016 U.S. Dist. LEXIS 96754 (C.D. Cal. July 22, 2016) .......... 4

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
943 F. Supp. 2d 1028 (C.D. Cal. 2013) .......... 5

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307 (Fed. Cir. 2014) .......... 4

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*,
No. 14-cv-01153-VAP,
2015 WL 1809309 (C.D. Cal. Apr. 20, 2015) .......... 5, 9

**Statutes**

35 U.S.C.
§ 315(e) .......... 9

This case should be stayed with respect to U.S. Patent No. 6,463,163 and U.S. Patent No. 6,731,335 (the "'163 patent" and "'335 patent"). The Court invited Defendants Nikon Corp., Nikon Inc., and Sendai Nikon Corp. ("Nikon") to renew their motion to stay this case as to the '335 and '163 patents whenever the Patent Trial & Appellate Board ("PTAB") actually instituted *inter partes* review ("IPR").[1] Just over a week ago, the PTAB did so on **all** asserted claims of the '163 and '335 patents. This accounts for 194 of 197 accused products in this case, two of three patent families, and the vast majority of issues in the parties' summary judgment briefing. Because IPR proceedings are expedited and will almost certainly eliminate parts of this case, the Court should partially stay this litigation in the name of judicial efficiency until the IPRs are complete.

If the Court were to stay proceedings related to the '335 and '163 patents, there would be only one patent family remaining: U.S. Patent Nos. 8,149,312 ("'312 patent"), 8,625,017 ("'017 patent"), and 9,728,574 ("'574 patent")[2] ("collectively, the "'312 patent family"). These three patents come from the same family, share substantially the same specification, and cover the same image sensor technology. Moreover, Plaintiffs accuse only 3 products of infringing the '312 patent family (as opposed to the nearly 200 products accused of infringing the '163 and '335 patents). And the parties agree that one of those products is representative of all three. Moreover, much of the parties' pretrial work and summary judgment briefing regarding the '312 patent family is already complete because two of the three patents were part of Case No 2:17-cv-03221-RGK (MRWx) ("3221 case").

[1] In denying Nikon's original motion to stay without prejudice, this Court stated: "[i]f the PTAB institutes IPR, Defendants may bring another motion to stay at that time." (ECF No. 89 at 3.)

[2] Nikon also filed an IPR petition on claims of the '574 patent. The PTAB will decide whether it will institute review of the claims by September 29, 2018, before this motion is decided. Nikon will file a supplemental notice with the Court once it receives the PTAB's decision on that patent.

Accordingly, a trial on the ’312 patent family would be substantially streamlined, and could take place over just a few days.

Should any claims survive the IPR, Plaintiffs Carl Zeiss AG and ASML Netherlands BV (“Plaintiffs”) would still be able to pursue a monetary remedy, and will not have been unduly prejudiced in the interim, given that Plaintiffs do not make or sell any products that compete with the accused Nikon cameras. *See In re Morgan Stanley*, 417 F. App’x 947, 948 (Fed. Cir. 2011). Therefore, the Court should stay this case with respect to the ’163 and ’335 patents.

# I. BACKGROUND

## A. Procedural History

Plaintiffs’ lawsuit, filed in September 2017, pleads infringement of five patents. (ECF No. 1; 3221 ECF No. 438.) The patents purportedly cover various features of digital cameras, including face detection (’163 patent) and image sensor technology (’335 patent and ’312 patent family). (*See generally* ECF. Nos. 1-7 – 1-9.) The three patents that form the ’312 patent family are related and share substantially the same specification. Initially, the ’312 and ’017 patents were in the 3221 case. The Court granted Nikon summary judgment on those two patents (3221 ECF No. 249), but then reversed its decision on reconsideration. (3221 ECF No. 438.) The Court then severed the ’312 and ’017 patents from the 3221 case and consolidated them into the instant 7083 case. (*Id.*)

In this case, Plaintiffs have accused 197 Nikon products of infringing the ’163 patent, 21 Nikon products of infringing the ’335 patent, and only three Nikon products of infringing the remaining ’312 patent family. (*See, e.g.*, ECF No. 153-3.)

On March 19, 2018, Nikon filed a Motion to Stay the instant case pending IPR of the ’335, ’163, and ’574 patents. (ECF No. 58-1.) The Court denied that motion without prejudice, and invited Nikon to renew its motion to stay if the PTAB instituted the IPRs. (ECF No. 89 at 3.) As described in more detail below,

the PTAB instituted IPR on all of the asserted claims of the ’335 and ’163 patents.

On August 22, 2018, both Plaintiffs and Nikon filed motions for partial summary judgment. (ECF Nos. 153-1, 173.) On August 31, 2018, each party opposed the other party’s motion for partial summary judgment. (ECF Nos. 162-1, 185-9.) Replies for both parties’ motions are due on September 10, 2018. The majority of the issues covered by the parties’ summary judgment motions relate to the ’335 and ’163 patent: the same two patents that are now part of an active IPR proceeding. No claim construction has been done in this case with respect to the ’163 and ’335 patents.

Fact discovery closed on August 8, 2018, and expert discovery is set to close on September 18, 2018. There are numerous future pretrial deadlines, including filing motions in *limine* (September 21, 2018); exchanging the Memorandum of Contentions of Law and Fact (September 26), filing the Memoranda (October 1, 2018); filing the Joint Exhibit List (October 1, 2018); lodging the Pretrial Conference Order (October 11, 2018); filing Joint and Disputed Jury Instructions (October 19, 2018); and filing Trial Briefs (October 30, 2018). Trial is set for November 6, 2018 and is expected to last one week or more.

### B. The IPR Petitions and Institutions

#### 1. ’335 IPR Petition and Institution

On February 26, 2018, Nikon filed an IPR petition challenging claims 1-12 of the ’335 patent. (ECF No. 58-2 ¶ 4.) On August 28, the PTAB instituted IPR on all claims of the ’335 patent. (Decl. of Shaelyn K. Dawson in Supp. of Nikon’s Renewed Mot. to Stay (“Dawson Decl.”) Ex. A.)

#### 2. ’163 IPR Petition and Institution

On February 22, 2018, Nikon Corp. filed an IPR petition challenging claims 1-4, 6, 7, 9-11, 14-16, and 19 of the ’163 patent. (ECF No. 58-2 ¶ 3.) On August 28, 2018, the PTAB instituted IPR on claims 1–4, 6–7, 15–16, and 19. (Dawson Decl. Ex. B.) Plaintiffs’ expert, Dr. Mundy, opines only that the same claims

infringe. Dr. Mundy's report, executed under penalty of perjury, does not provide infringement opinions regarding any other claims.[3]

## II. LEGAL STANDARD

Courts in this District often grant stays pending IPRs in light of the "liberal policy in favor of granting motions to stay proceedings pending the outcome of" IPR proceedings. *Transp. Techs., LLC v. L.A. Cty. Metro. Transp. Auth.*, No. CV 15-6423-RSWL-MRWx, 2016 U.S. Dist. LEXIS 96754, at *8 (C.D. Cal. July 22, 2016) (citations omitted); *see also Kaneka Corp. v. SKC Kolon PI, Inc.*, No. CV 11-3397-JGB (RZx), 2014 WL 12673678, at *2 (C.D. Cal., Dec. 5, 2014); *Limestone v. Micron Tech.*, No. 15-cv-00278-DOC (RNBx), 2016 WL 3598109, at *2 (C.D. Cal. Jan. 12, 2016). "While a motion to stay could be granted even before the PTAB rules on a post-grant review petition, no doubt the case for a stay is stronger after post-grant review has been instituted." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014). As one court stated, "since the circuit court's decision in *VirtualAgility*, courts have been nearly uniform in granting motions to stay proceedings in the trial court after the PTAB has instituted *inter partes* review proceedings." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *6 (E.D. Tex. Mar. 11, 2015) (citing several district court decisions, including decisions from this District and the Northern District of California) (citations omitted).

Courts consider the following three factors when evaluating a stay motion: (1) the timing of the case; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *VirtualAgility*, 759 F.3d at 1315-16 (Fed. Cir. 2014). Ultimately, "the totality of the circumstances governs" whether a

[3] Additionally, Plaintiffs statutorily disclaimed claims 9–14 during the IPR. (Dawson Decl. Ex. B at 2.)

stay is appropriate. *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013) (citation omitted). Here, the totality of the circumstances and each of the three factors weigh strongly in favor of a stay.

## III. ARGUMENT

### A. Factor 1: The Stage of Litigation

The first factor—the stage of the litigation—favors a stay. This factor considers whether the case has progressed significantly enough for a stay to be disfavored. *See, e.g.*, *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. 14-cv-01153-VAP (SPx), 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015).

Stays pending post-grant proceedings in the PTO are routinely granted in cases as far or farther along than this one. *See e.g.*, *Kaneka Corp.*, 2014 WL 12673678, at *2; *see also Black Hills Media, LLC v. Pioneer Elecs. (USA) Inc.*, No. CV 14-00471 SJO (PJWx), 2014 WL 4638170, at *5 (C.D. Cal. May 8, 2014) (granting stay); *Microsoft Corp. v. TiVo Inc.*, No. 10-CV-00240-LHK, 2011 WL 1748428, at *6 (N.D. Cal. May 6, 2011) ("Many courts have stayed patent infringement suits pending reexamination even after discovery was complete.") (citation omitted).

A patent case from this district, *Kaneka Corp. v. SKC Kolon PI, Inc.* is instructive. There, the court held that "[t]he instant case has progressed rather substantially toward trial. The parties have completed discovery, attended a *Markman* hearing, and briefed cross motions for summary judgment. 2014 WL 12673678, at *2. Nevertheless, the Court granted the stay because "there is significant effort that still lies ahead, including oral argument on summary judgment, pretrial motions and briefing, preparation for trial, the trial, post-trial motions, and possibly appeals." *Id.* Moreover, the *Kaneka* Court stated, "the Court also takes into consideration the complexity and history of this suit, both of which suggest that significant time and resources will be spent on trial preparation and the trial itself." *Id.* (citation omitted).

Here, as in *Kaneka*, while fact discovery is complete, expert discovery is currently ongoing and pre-trial tasks are in its nascent stages. Moreover, a significant amount of time and resources will be spent on trial preparation and the trial itself if a stay on the ’335 and ’163 patents is not granted. No claim construction has been done with respect to the ’335 and ’163 patents. The first factor therefore favors a stay.

**B. Factor 2: A Stay Would Simplify The Case**

**1. A Stay Would Greatly Simplify Trial for the Court and Jury**

First, a stay would greatly simplify the presentation of evidence to the Court and to potential jurors. The scale of Plaintiffs’ infringement case—the bulk of which rests on the ’163 and ’335 patents—is simply not triable in its current form. Plaintiffs accuse 197 different products. (ECF No. 153-3.) Plaintiffs accuse almost all of these products of infringing the ’163 and/or the ’335 patents. Yet only three of the 197 accused models are accused of infringing the ’312 patent family. Therefore, if the case is stayed as to the ’335 and ’163 patents, approximately 1% of the accused products would remain.[4] A trial on one patent family and one representative product could be accomplished in a matter of days, and the resources expended by both the court and the parties would similarly drop precipitously.

[4] Plaintiffs may argue that they could simplify their presentation of evidence without a stay by relying on “representative products.” If Plaintiffs want to rely on representative products, it is their burden to provide evidence that the accused products are substantially the same. *See, e.g., Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-02965-MMC (DMR), 2015 WL 5210669, at *4 (N.D. Cal. Sept. 7, 2015). The parties have agreed that the D4/Df sensor is representative of the sensor in the three products accused of infringing the ’312 patent family. Other than that, to date, however, Plaintiffs have provided no factual basis to suggest that any Nikon product is, indeed, “representative” of any other with respect to the asserted claims. In fact, Plaintiffs encountered this same issue at the last trial, desperately trying to fix a lack of proof by rattling off dozens of product names via its damages expert in rebuttal. (3221 ECF No. 520-4 at 830-834.) In the related 3221 case, the jury ultimately invalidated one of the patents, and found that Nikon did not infringe either patent.

Reducing the amount of claims at issue would greatly simplify this lawsuit as well. The claims before the PTAB include all of the claims from the ’163 and ’335 patents that Plaintiffs assert.[5] In cases such as this, stays are routinely granted because they will “dramatically simplify the issues in the case.” *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.*, No. SACV-16-00300-CJC (RAOx), 2017 WL 8220599, at *2 (C.D. Cal., June 27, 2017) (granting stay when there were 36 asserted claims from six patents, 29 of which had IPR institutions). Moreover, most of this litigation will be moot if the PTAB cancels all the challenged claims, in which case a stay will have avoided the unnecessary expenditure of judicial and party resources.

As stated, the case could be reduced to one patent family and 3 (as opposed to hundreds) of accused products. Moreover, the parties have agreed that the D4/Df sensor is representative of all three products for the ’312 patent family. No other products have been agreed to as representative with respect to the ’335 or ’163 patents. If the litigation is not stayed and some or all of the challenged claims are found unpatentable during IPR, “the Court will have wasted resources and the parties will have expended funds addressing invalid claims.” *Evolutionary Intelligence LLC v. Yelp Inc.*, No. C-13-03587-DMR, 2013 WL 6672451, at *6 (N.D. Cal. Dec. 18, 2013).

If a stay is not granted, the resources of the parties and this Court that unnecessarily will be expended are tremendous. And even if only some asserted claims of the patents-in-suit are cancelled, the IPR process will nonetheless significantly “simplify the issues and streamline the litigation by reducing claim construction disputes and minimizing the number of claims that the parties need to address.” *Tire Hanger Corp. v. My Car Guy Concierge Servs. Inc.*, No. 5:14-CV-00549-ODM (Manx), 2015 WL 857888, at *2 (C.D. Cal. Feb. 27, 2015) (citation

[5] Thirteen of the asserted claims from the ’574 patent are challenged.

omitted).

Importantly, as to the surviving claims, if any, the PTAB proceedings will guide and clarify the interpretation and scope of those claims. Indeed, the file history of any surviving patents-in-suit will evolve during the IPRs, affecting even the unchallenged claims. For example, the PTAB may make statements, and Patent Owner/Plaintiffs may take positions in the IPR proceedings, that impact the interpretation of the language of the asserted claims. These statements, such as characterizing a patent or distinguishing prior art, can inform this Court in determining the proper construction of any surviving claims after the IPRs have concluded. Additionally, these statements may also clarify or limit the scope of any unchallenged claims. It would therefore waste judicial and party resources to litigate this case in parallel, including with respect to claim construction, when the file history of the patents-in-suit will still be evolving. *See In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 385 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) ("For those claims that survive the reexamination, this court may have a richer prosecution history upon which to base necessary claim construction determinations."); *AutoAlert, Inc. v. Dominion Dealer Sols., LLC,* No. SACV-12-01661-JST(JPRx), 2013 WL 8014977, at *2 (C.D. Cal. May 22, 2013) (finding the outcome from the PTAB would facilitate trial by providing the Court with the PTAB's opinion and clarifying the scope of the claims); *see also Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-CV-02013-JST, 2014 WL 5021100, at *3 (N.D. Cal. Oct. 7, 2014) (finding partial stay warranted) ("There is a significant possibility that *inter partes* review will simplify the infringement issues for trial.") (emphasis in original); *Asetek Holdings, Inc, v. Cooler Master Co.*, No. 13-cv-00457-JST, 2014 WL 1350813, at *3 (N.D. Cal. April 3, 2014) (quoting *Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. 09-cv-05659-WHA 2011 WL 445509, at *3 (N.D. Cal. Feb. 3, 2011) ("ordinarily, '[i]f any of the asserted claims are canceled [by review] the ordeals of claim construction and trial will

become unnecessary for those claims.'").

Finally, even if none of the asserted claims are cancelled during the IPRs, the stayed litigation would still be streamlined, and resources conserved, due to file history estoppel that may arise as well as the estoppel provision of 35 U.S.C. § 315(e). This latter provision estops a party from re-litigating invalidity issues that it raised in instituted IPR trials as to any surviving claims, thereby sparing the Court from needing to reconsider those issues. *See, e.g., Wonderland*, 2015 WL 1809309, at *3 (finding "significant judicial resources" could be saved with a stay because "estoppel will prevent Defendants from raising in this Court invalidity grounds that were or could reasonably have been raised during the IPR"). Thus, staying the case may even benefit Plaintiffs in the event that some of its asserted claims survive.

The IPRs institution decisions will likely moot much of this litigation or at least simplify the issues to be litigated. A stay will aid the Court and streamline the litigation in either scenario. "Whatever the PTAB's decision, the case will be simplified for this Court." *TAS Energy, Inc. v. San Diego Gas & Elec. Co.*, No. 12-cv-2777-GPC (BGS), 2014 WL 794215, at *4 (S.D. Cal. Feb. 26, 2014). The second factor thus strongly favors a stay as well.

**2. A Stay Would Significantly Simplify Summary Judgment**

An Order granting a stay of the '335 and '163 patents would also significantly simplify the Court's resources regarding summary judgment. For example, in Nikon's Motion for Partial Summary Judgment (ECF No. 153-1), Nikon briefed the following issues: 1) claim construction of the '335 patent; 2) non-infringement of the '335 patent; 3) a licensing defense related to the '335 patent; 4) non-infringement of the '163 patent; 5) invalidity of the '312 and '017 patents; and 6) non-infringement for all of the accused products of the '574 patent. Of these issues, all but two would be obviated by an Order granting a stay.

Similarly, Plaintiffs moved for summary adjudication on several issues, including infringement of the '335 patent; and a finding that a certain reference is

not prior art to the '163 patent.[6] All of these arguments would be rendered moot by granting a stay.

Accordingly, this factor strongly weighs in favor of granting a partial stay.

**C. Factor 3: A Stay Will Not Cause Any Undue Prejudice to Plaintiffs**

The third factor—undue prejudice or tactical disadvantage to Plaintiffs—also favors a stay, especially since Plaintiffs are non-practicing entities. *Polaris Innovations*, 2017 WL 8220599, at *3 ("Polaris has failed to identify any concrete prejudice or tactical disadvantage it will face should this case be stayed. Polaris, a non-practicing entity, only claims vaguely that staying litigation will, to some unstated extent, interfere with its ability to license the patents at issue.").

Because Zeiss and ASML do not themselves currently sell products covered by the patents-in-suit, and do not compete directly with Nikon in the camera business, monetary damages would adequately compensate Plaintiffs, and a stay would merely delay the collection of damages, if any. In similar circumstances, Courts in this District have found that the mere passage of time does not unduly prejudice non-practicing entities. *See, e.g.*, *Limestone*, 2016 WL 3598109, at *5 (finding that a non-practicing plaintiff would not suffer undue prejudice because any monetary damages would be compensable). Here, the stay would be relatively brief, and Plaintiffs would suffer absolutely no prejudice in the interim.

Moreover, while Plaintiffs claim they are in the process of making a product and the complaint mentions injunctive relief in passing, (*e.g.*, ECF No. 1 ¶ 65), Plaintiffs have presented no factual basis to suggest that they are entitled to injunctive relief or that the release of that product will be anytime soon. The fact

---

[6] Plaintiffs also moved for summary judgment on: 1) ownership of the patents; 2) validity of the '312 patent family; and 3) no marking for the '312 patent family and '335 patent. With respect to the marking argument, Nikon offered to stipulate that it is unaware of any unmarked products embodying the '312, '017, and '574 patents, but Plaintiffs unnecessarily filed their motion anyway. (ECF No. 162-1 at 3-4.)

that Plaintiffs have neither moved for a preliminary injunction nor indicated they would seek such relief post-trial further favors a stay. *See Inogen, Inc. v. Inova Labs, Inc.*, No. SACV-11-1692-JST (ANx), 2012 WL 4748803, at *3 (C.D. Cal. Mar. 20, 2012) (finding that failure to file for an injunction weighs against undue prejudice, even though the parties were direct competitors and "a lengthy stay of three to six years would allow [Defendant] to gain market share at the expense of [Plaintiff]'s permanent loss of market share").

Importantly, the requested stay will delay this case only if some of the instituted claims survive the IPR proceedings. On the other hand, if the patents-in-suit do not survive renewed scrutiny by the PTAB, then the vast majority of this case will be over. Plaintiffs' anticipated monetary relief regarding the '335 and '163 patents will only come if they still have a case after the IPRs, and any post-IPR litigation will be streamlined by virtue of the IPRs. At worst, Plaintiffs' prospective recovery of monetary damages will be postponed, but this delay will be relatively brief in view of the tight time constraints imposed on IPRs under the AIA.

Thus, the third factor strongly favors a stay as well.

## IV. CONCLUSION

Given the parties have substantial pretrial and trial work ahead of them and that a partial stay of the '335 and '163 patents would significantly simplify the case, Nikon respectfully request that the Court partially stay this litigation pending the resolution of PTAB Case Nos. IPR2018-00688 and IPR2018-00687.

Dated: September 11, 2018

Respectfully submitted,

JACK LONDEN
VINCENT J. BELUSKO
MORRISON & FOERSTER LLP

By: /s/ *Vincent J. Belusko*
Vincent J. Belusko

Attorneys for Defendants
NIKON CORPORATION;
SENDAI NIKON CORPORATION;
AND NIKON INC.