**EXHIBIT A TO THE DECLARATION OF SHAELYN K. DAWSON IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR PARTIAL STAY**

Trials@uspto.gov                                    Paper No. 7
571-272-7822                              Entered: August 28, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

NIKON CORPORATION,
Petitioner,

v.

ASML NETHERLANDS B.V.
CARL ZEISS AG,
Patent Owner.

_____

Case IPR2018-00687
Patent 6,731,335 B1

_____

Before JEFFREY S. SMITH, DAVID C. McKONE, and
KEVIN W. CHERRY, *Administrative Patent Judges*.

McKONE, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2018-00687
Patent 6,731,335 B1

# I.  INTRODUCTION

## A.  Background

Nikon Corporation ("Petitioner") filed a Petition (Paper 2, "Pet.") to institute an *inter partes* review of claims 1–12 of U.S. Patent No. 6,731,335 B1 (Ex. 1001, "the '335 patent").  Petitioner indicates that Sendai Nikon Corporation, Nikon Inc., and Nikon Americas Inc. are real parties in interest. Pet. 4.  Carl Zeiss AG and ASML Netherlands B.V. (collectively, "Patent Owner") filed a Preliminary Response (Paper 6, "Prelim. Resp.").  Upon consideration of the Petition and Preliminary Response, we conclude, under 35 U.S.C. § 314(a), that Petitioner has established a reasonable likelihood that it would prevail with respect to at least one challenged claim. Accordingly, we institute an *inter partes* review of claims 1–12 of the '335 patent.

## B.  Related Matter

The parties indicate that the '335 patent has been asserted in *Carl Zeiss AG v. Nikon Corp.*, Case No. Case No. 2:17-cv-03221 RGK (MRWx). Pet. 4; Paper 4, 2.

## C.  Evidence Relied Upon

Petitioner relies on the following prior art:

| | | |
|---|---|---|
| Ex. 1006 ("Takahashi") | EP 0 757 476 A2 | Feb. 5, 1997 |
| Ex. 1007 ("Gowda") | US 6,115,066 | Sept. 5, 2000 |
| Ex. 1008 ("Dickinson") | EP 0 707 417 A2 | Apr. 17, 1996 |
| Ex. 1009 ("Matsunaga") | US 7,113,213 B2 | Sept. 26, 2006 |

2

IPR2018-00687
Patent 6,731,335 B1

Petitioner also relies on the Declaration of Stuart Kleinfelder, Ph.D.
(Ex. 1002, "Kleinfelder Decl.").

### D. The Asserted Grounds

Petitioner asserts the following grounds of unpatentability (Pet. 17–
18):

| Reference(s) | Basis | Claims Challenged |
|---|---|---|
| Takahashi | § 103(a) | 1–5, 7, 9, and 11 |
| Takahashi and Gowda | § 103(a) | 6, 8, 10, and 12 |
| Takahashi and Dickinson | § 103(a) | 1–5, 7, 9, and 11 |
| Takahashi, Dickinson, and Gowda | § 103(a) | 6, 8, 10, and 12 |
| Matsunaga | § 103(a) | 1–5, 7, 9, and 11 |
| Matsunaga and Gowda | § 103(a) | 6, 8, 10, and 12 |
| Matsunaga and Dickinson | § 103(a) | 1–5, 7, 9, and 11 |
| Matsunaga, Dickinson, and Gowda | § 103(a) | 6, 8, 10, and 12 |

### E. The '335 Patent

The '335 patent describes a complementary metal oxide
semiconductor (CMOS) image sensor including a unit pixel.  Ex. 1001,
Abstract.  A unit pixel is illustrated in Figure 4, reproduced below:

3

IPR2018-00687
Patent 6,731,335 B1

# FIG. 4



Figure 4 is a circuit diagram of a unit pixel. *Id.* at 4:50–51.

Unit pixel 400 includes two photodiodes 401, 402 connected to

transfer transistors M43 and M44, respectively. *Id.* at 4:60–67. The

photodiodes receive light from an object and generate and integrate

photoelectric charges. *Id.* at 5:2–4, 5:9–11. Transfer transistor M43, M44

4

IPR2018-00687
Patent 6,731,335 B1

transfer the generated charges to single sensing node A in response to
control signals Tx1 and Tx2, respectively.  *Id.* at 5:4–8, 5:11–15.  The
photodiodes share reset transistor M1, drive transistor M3, and select
transistor M4.  *Id.* at 4:67–5:2.  Reset transistor Ml is coupled between
power supply Vdd and single sensing node A and outputs the photoelectric
charges on single sensing node A in response to control signal Rx.  *Id.* at
5:16–19.  Drive transistor M3 is coupled to power supply Vdd and acts as a
source follower in response to an output of single sensing node A.  *Id.* at
5:19–22.  Select transistor M4 outputs image data in response to a control
signal Sx, which is produced by address signals.  *Id.* at 5:22–24.

The operation of unit pixel 400 is shown in Figure 5, reproduced
below:

Dawson Decl. Exh. A, Page 6

IPR2018-00687
Patent 6,731,335 B1



FIG. 5

Figure 5 is a timing chart illustrating control signals to control transistors in unit pixel 400.  *Id.* at 4:52–53, 5:25–26.

In sections A1 and A2, transfer transistors M43, M44, respectively, are turned on and select transistor M4 is turned off, so that photodiodes 401, 402, respectively, are fully depleted.  *Id.* at 5:29–33, 5:41–46.  In sections

6

IPR2018-00687
Patent 6,731,335 B1

B1 and B2, transistors M43, M44, respectively, are turned off and photodiodes 401, 402, respectively, generate and integrate photoelectric charges. *Id.* at 5:35–40, 5:47–53. In section C1, reset transistor M1 and select transistor M4 are turned on and transfer transistors M43, M44 are turned off such that a reset voltage level is outputted through select transistor M44 and drive transistor M3 is driven by sensing node A. *Id.* at 5:54–59. In section D1, reset transistor M1 is turned off to settle the voltage and in section E1, the reset voltage is sampled. *Id.* at 5:61–65. In section F1, transfer transistor M43 is turned on and integrated photoelectric charges from photodiode 401 are transferred to the output terminal through sensing node A, drive transistor M3, and select transistor M4. *Id.* at 5:66–6:6. In section G1, transfer transistor M43 is turned off to settle the voltage and in section H1, data voltage level is sampled. *Id.* at 6:7–11. In sections C2–H2, sections C1–H1 are repeated for photodiode 402 and transfer transistor M44. *Id.* at 6:12–36.

The sampled reset and data voltages are output to an analog to digital converter (ADC) and the difference between the reset and data digital signals becomes an output image value. *Id.* at 6:52–65.

Claim 1, reproduced below, is illustrative of the invention:

1.   A method for driving a unit pixel which comprises a first photodiode for receiving light from an object and for generating and integrating photoelectric charges; a first transfer transistor coupled between the first photodiode and a single sensing node, for transferring the photoelectric charges generated in the first photodiode to the single sensing node, in response to a first control signal; a second photodiode for receiving light from the object and for generating and integrating photoelectric charges; a second transfer transistor coupled between the second photodiode and the single sensing

7

IPR2018-00687
Patent 6,731,335 B1

node, for transferring the photoelectric charges generating in
the second photodiode to the single sensing node, in response to
a second control signal; a reset transistor coupled between a
power supply and the single sensing node, for outputting the
photoelectric charges stored in the single sensing node, in the
response to a third control signal; a drive transistor coupled to
the power supply, for acting as a source follower in response to
an output of the single sensing node; and a select transistor
coupled to the drive transistor, for outputting an image data
driven by the drive transistor in response to address signals, the
method comprising the steps of:

(a) fully depleting the first and second photodiodes;

(b) receiving light in the first and second photodiodes and
generating photoelectric charges;

(c) turning on the reset transistor, turning off the first and
second transfer transistors and turning on a
selector transistor, and outputting a reset voltage
level through the single sensing node, the drive
transistor and the select transistor;

(d) turning off the reset transistor and then turning on the
first transfer transistor with said reset transistor
remaining off, and outputting a data voltage level
of the photoelectric charges generated in the first
photodiode through the single sensing node, the
drive transistor and the select transistor;

(e) turning on the reset transistor, turning off the first
transfer transistor and outputting the reset voltage
level through the single sensing node, the drive
transistor and the select transistor; and

(f) turning off the reset transistor and then turning on the
second transfer transistor with said reset transistor
remaining off, and outputting a data voltage level
of the photoelectric charges generated in the
second photodiode through the single sensing
node, the drive transistor and the select transistor.

8

IPR2018-00687
Patent 6,731,335 B1

## II. ANALYSIS

### A.    Claim Construction

We interpret claims of an unexpired patent using the broadest reasonable construction in light of the specification of the patent in which they appear.  *See* 37 C.F.R. § 42.100(b); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144–45 (2016).  "Under a broadest reasonable interpretation, words of the claim must be given their plain meaning, unless such meaning is inconsistent with the specification and prosecution history." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1062 (Fed. Cir. 2016).  Neither party raises a disputed issue of claim construction that we must address at this stage of the proceeding.

### B.    Asserted Grounds of Unpatentability

A claim is unpatentable under 35 U.S.C. § 103(a) if the differences between the claimed subject matter and the prior art are "such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  We resolve the question of obviousness on the basis of underlying factual determinations, including:  (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of skill in the art; and (4) objective evidence of nonobviousness, i.e., secondary considerations.[1]  *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

---

[1] The current record does not include allegations or evidence of objective indicia of nonobviousness.

9

IPR2018-00687
Patent 6,731,335 B1

### 1. Level of Ordinary Skill

Citing to Dr. Kleinfelder's testimony, Petitioner contends that a skilled artisan would have had a Bachelor's degree in electrical engineering and approximately four years of relevant experience with image sensors, or, alternatively, a Master's degree in electrical engineering or related field with at least two years of relevant experience with image sensors. Pet. 14–15 (citing Ex. 1002 ¶ 10). Patent Owner does not contest Petitioner's proposal or provide a proposal of its own. We credit Dr. Kleinfelder's testimony and, on the current record, adopt Petitioner's proposed level of ordinary skill.

### 2. Alleged Obviousness of Claims 1–5, 7, 9, and 11 over Takahashi

Petitioner contends that claims 1–5, 7, 9, and 11 would have been obvious over Takahashi. Pet. 23–39. For the reasons given below, Petitioner has demonstrated a reasonable likelihood that it would prevail on this ground.

### a. Scope and Content of the Prior Art—Overview of Takahashi

Takahashi describes a CMOS solid-state image pickup apparatus. Ex. 1006, 1:7–10. Figures 1 and 8 depict example circuit diagrams of similar embodiments. We focus primarily on the embodiment of Figure 8, reproduced below, although we discuss Figure 1 for components that overlap the two embodiments.

10

IPR2018-00687
Patent 6,731,335 B1



Figure 8 is a schematic circuit constructional diagram of a photoelectric

converting device.  *Id.* at 3:55–57.  We note that most of the features of

Figure 8 are described with respect to Figure 1.  Figure 1 shows a similar

11

IPR2018-00687
Patent 6,731,335 B1

circuit that uses photo gate 2 to convert light to photoelectric charge. *Id.* at
4:21–24, 5:17–20. "The embodiment [of Figure 8] is characterized in that
no photo gate is used in the photoelectric converting unit but a pn
photodiode 24 is used." *Id.* at 9:31–34. Petitioner contends that Figures 1
and 8 are otherwise identical, Pet. 22, a point that Patent Owner does not
dispute. We agree that this is the most logical reading of Takahashi, as both
figures share most of their numerical designations. Because claim 1 refers to
a photodiode, rather than a photo gate, Figure 8 is the most relevant to this
proceeding and we focus our discussion there, with reference to Takahashi's
discussion of Figure 1 where appropriate.

    In Figure 8, two instances of photodiode 24 are coupled to two
instances of transfer switch MOS transistor 3, respectively. Ex. 1006, 4:24–
25. MOS transistor for resetting 4 and source-follower amplifier MOS
transistor 5 are coupled to power supply V$_{DD}$ and transfer switches 3. *Id.* at
25–26. Horizontal selection switch MOS transistor 6 is coupled to amplifier
5. *Id.* at 4:26–27.

    Takahashi's circuit operation is shown in Figure 3, reproduced below:

IPR2018-00687
Patent 6,731,335 B1



FIG. 3

Figure 3 is a timing chart for the embodiment of Figure 1. *Id.* at 3:44–45.

Petitioner acknowledges that "Takahashi does not explicitly state that the

timing of FIG. 3 is employed for FIG. 8," but argues that "one of ordinary

13

IPR2018-00687
Patent 6,731,335 B1

skill in the art would immediately recognize that the timing chart of FIG. 3 is
equally applicable to the pixel of FIG. 8 because the charge transfer and
CDS [correlated double sampling] operations shown in FIG. 3 are applied
equally to the pixel of photodiodes as well as the pixel of photo gates."
Pet. 37.  As Petitioner notes, Takahashi describes no other timing for the unit
pixel of Figure 8.  *Id.*  Thus, Petitioner argues, Figure 3 would be equally
applicable to Figure 8 or, at least, would have been obvious to use with
Figure 8.  *Id.* at 38.  Patent Owner does not advance any other reading of
Takahashi.  We agree with Petitioner that the most logical reading of
Takahashi is that the timing diagram of Figure 3 applies equally to the
circuit of Figure 8, at least as to the components that share the same
numerical designations.

With reference to Figure 3, during time T0, selection switch transistor
6 is turned on via control pulse φS0 and reset transistor 4 is turned off via
control pulse φR0.  Ex. 1006, 4:58–5:7.  During time T1, the reset voltage
(referred to by Takahashi as "dark voltage") is output and, subsequently, the
top transfer switch transistor 3 is turned on via control pulse φTXo0.  *Id.* at
5:7–15.  During time T2, photoelectric charge is transferred from the top
photodiode 24 and, at time T3, the charge is output.  *Id.* at 5:24–31.  Figure 3
shows that this process is repeated for the bottom transfer switch transistor 3
(controlled by pulse φTXe0) and bottom photodiode 24.  *Id.* at 6:6–13.

### b.  *Claim 1*

The preamble of method claim 1 recites a specific structure of a unit
pixel, including "a first photodiode," "a first transfer transistor . . . for
transferring the photoelectric charges . . . in response to a first control

IPR2018-00687
Patent 6,731,335 B1

signal," "a second photodiode," "a second transfer transistor . . . for
transferring the photoelectric charges . . . in response to a second control
signal," "a reset transistor," "a drive transistor coupled to the power supply,"
and "a select transistor."  These components are arranged in claim 1's
preamble in substantially the same manner as shown in the '335 patent's
Figure 4, reproduced above.

Petitioner maps the components shown in Takahashi's Figures 1 and 8
to these components as follows:

> top photo gate 1 (Figure 1) or top photodiode 24 (Figure 8) to
> "first photodiode" of claim 1;

> top transfer switch transistor 3 and control signal $\phi$TXo0 to
> "first transfer transistor" and "first control signal" of
> claim 1;

> bottom photo gate 1 (Figure 1) or bottom photodiode 24
> (Figure 8) to "second photodiode" of claim 1;

> bottom transfer switch transistor 3 and control signal $\phi$TXe0 to
> "second transfer transistor" and "second control signal"
> of claim 1;

> reset transistor 4 to "reset transistor" of claim 1;

> source-follower amplifier transistor 5 to "drive transistor" of
> claim 1;

> selection switch transistor 6 to "select transistor of claim 1; and

> the junction of transistors 3, 4, and 5 to the "single sensing
> node" of claim 1.

Pet. 24–26, 36.  A comparison of the '335 patent's Figure 4 with
Takahashi's Figure 8 shows that the components identified by Petitioner are
arranged in the same manner as in the preamble of claim 1.  Patent Owner
does not contest this.

15

IPR2018-00687
Patent 6,731,335 B1

Petitioner contends that Takahashi teaches (e.g., through Figure 3 and its corresponding description) each step of claim 1 except for claim 1(a) ("fully depleting the first and second photodiodes"). Pet. 26–31, 36–38. We agree that Petitioner's evidence supports a finding that Takahashi teaches each of steps 1(b)–1(f). Patent Owner does not contest these allegations. We briefly review Petitioner's evidence as to steps 1(b)–1(f) and then discuss in detail Petitioner's obviousness arguments as to step 1(a), which Patent Owner does contest.

As to step 1(b), Petitioner contends that, *inter alia*, Figure 9 of Takahashi shows photodiodes 24 receiving light (hv) and generating photoelectric charges. Pet. 26; *see also* Ex. 1006, 9:37 (stating that charges are generated in photodiodes 24). As to step 1(c), as Petitioner notes (Pet. 27–28), during time T0, reset transistor 4 and selection switch transistor 6 are on, transfer switch transistors 3 are off, and a reset ("dark") voltage is output through the junction of transistors 3, 4, and 5. Ex. 1006, 4:58–5:11, Fig. 3. As to step 1(d), as Petitioner explains, at the end of time T0, reset transistor 4 is turned off; and during time T1, top transfer switch transistor 3 is turned on (with signal φTXo0) while reset transistor 4 is off, and charge from the top photodiode 24 is output through the junction of transistors 3, 4, and 5, source-follower amplifier transistor 5, and selection switch transistor 6. *Id.* at 5:7–23, Fig. 3. As to steps 1(e) and 1(f), Petitioner argues that Figure 3 shows that steps 1(c) and 1(d) are repeated for the bottom photodiode 24 and transfer switch transistor 3. Pet. 29–31, 36–37. We agree with Petitioner. *See* Ex. 1006, 6:6–13, Fig. 3.

Petitioner concedes that Takahashi does not disclose step 1(a). Pet. 23. Nevertheless, Petitioner argues that it would have been obvious to

16

IPR2018-00687
Patent 6,731,335 B1

fully deplete Takahashi's photodiodes "in order to eliminate any residual charges on the photodiode prior to capturing an image." *Id.* Petitioner cites to Dr. Kleinfelder, who testifies:

> There are important reasons to deplete a photodiode prior to integration. One such reason is a phenomenon known as "dark current,"[2] which can cause charge to accumulate in a photodiode even without any light exposure. The gradual accumulation of this unwanted charge degrades the quality of an image in the form of noise. Another reason photodiodes are depleted before integration is that photodiodes may retain accumulated electric charges from a previous image if those electric charges were not fully transferred to the floating diffusion from the prior readout.

Ex. 1002 ¶ 73.

Dr. Kleinfelder also notes that the '335 patent describes a step of fully depleting a photodiode as part of the prior art. *Id.* In particular, in describing Figures 2 and 3, which the figures themselves identify as "prior art," the '335 patent describes, as the first step of a process for a "conventional unit pixel": "1) In section 'A' of FIG. 3, the transfer transistor M21 and the reset transistor M11 are turned on and the select transistor M41 is turned off, so that the photodiode 101 is *fully depleted*." Ex. 1001, 2:17–20 (emphasis added), 2:59.

Patent Owner contends that Takahashi does not teach step 1(a) of claim 1. Patent Owner acknowledges that the considerations identified by

---

[2] "Dark current" is "(3) (photoelectric device) The current flowing in the absence of irradiation." IEEE 100, THE AUTHORITATIVE DICTIONARY OF IEEE STANDARDS TERMS 267 (7th ed. 2000). On the current record, this appears to be different from the "dark voltage" described in Takahashi (e.g., Ex. 1006, 5:7–11) as the voltage output when a pixel is reset.

IPR2018-00687
Patent 6,731,335 B1

Dr. Kleinfelder "generally need to be taken into account in image sensor
design."  Prelim. Resp. 17.  Nevertheless, Patent Owner argues, Takahashi
already describes mechanisms for addressing dark current and residual
charges and, therefore, a skilled artisan would not have had a reason to
perform step 1(a) in Takahashi's procedure.  *Id.* at 17–18.

      With respect to Takahashi's Figure 8, Takahashi states that "[c]harges
generated by the control pulse φTX are completely transferred to the FD
portion."  Ex. 1006, 9:37–39.  Takahashi has similar description for the
embodiment of Figure 1.  *Id.* at 5:17–23 ("In this instance, it is preferable to
set to a voltage relation such as to raise a potential well extending under the
photo gate 2 and to allow the light generation carriers to be perfectly
transferred to the FD portion 21.  Therefore, so long as the complete transfer
can be performed, the control pulse φTX is not limited to a pulse but can be
also set to a fixed electric potential.").  Takahashi also describes another
embodiment in which

> the surface $p^+$-type layer 26 constructs the photoelectric
> converting unit together with the n-type layer 25 and a pixel is
> formed by a buried type photodiode.  With such a structure, a
> dark current which is generated in the surface can be
> suppressed.  As compared with Fig. 9, since high photo charges
> of a good efficiency can be obtained, an image signal of a high
> S/N ratio and a high quality can be obtained.

*Id.* at 10:6–14.

      Patent Owner argues that Petitioner "ignores these teachings when it
assumes that it would have been obvious for a [person of ordinary skill in
the art] to add the step of 'fully depleting the first and second photodiodes'
to the Takahashi system" and "does not acknowledge this structural element
and does not explain why it would have been obvious for a [person of

18

IPR2018-00687
Patent 6,731,335 B1

ordinary skill in the art] to implement the step of fully depleting the photodiodes when a structural element is already in place for accomplishing this result."  Prelim. Resp. 19–20.  Referring to these aspects of Takahashi, Patent Owner argues that

> structural elements exist in Takahashi to ensure that the electric charges are fully transferred to the floating diffusion *during* readout.  Thus, using Dr. Kleinfelder's own logic, it is unnecessary in Takahashi to fully deplete the photodiodes *before* readout as an initial step in driving a unit pixel for capturing the next image.

*Id.* at 20.  Patent Owner argues that the precondition Dr. Kleinfelder sets for needing step 1(a) is not met in Takahashi.  *Id.* at 21.  According to Patent Owner, "[s]ince the charges in the photodiode are completely transferred to the floating diffusion during image readout, a [person of ordinary skill in the art] would have recognized no need to implement a step of fully depleting the photodiodes before integrating a new image."  Prelim. Resp. 22.  Patent Owner characterizes this as "a strong teaching away that militates in favor of non-obviousness."  *Id.* at 2, 29.

At this stage of the proceeding, we credit Dr. Kleinfelder's testimony that a skilled artisan would have had reasons to implement step 1(a) in Takahashi's system to avoid noise and degradation of image quality due to dark current or retained accumulated charge in the photodiodes.  Ex. 1002 ¶ 73.  The '335 patent clearly identifies this step as conventional in the art of CMOS image sensors.  Ex. 1001, 2:17–20.  Patent Owner points us to statements in Takahashi that it contends also solve the problems identified by Dr. Kleinfelder.  Nevertheless, even if we fully credit these arguments, they do not persuade us that a skilled artisan would have been dissuaded or discouraged from implementing step 1(a) in Takahashi's system.  *See In re*

19

IPR2018-00687
Patent 6,731,335 B1

*Mouttet*, 686 F.3d 1322, 1334 ("[T]he mere disclosure of alternative designs does not teach away.  This court has further explained that just because better alternatives exist in the prior art does not mean that an inferior combination is inapt for obviousness purposes.") (internal citations and quotation marks omitted).  Petitioner's evidence supports a finding that a skilled artisan would have had reasons to implement step 1(a) of claim 1 in Takahshi's system.

In sum, on the current record, Petitioner has established a reasonable likelihood that it would prevail with respect to claim 1 as obvious over Takahashi.

### c.  Claim 2–5, 7, 9, and 11

Claim 2 depends from claim 1 and recites that step 1(b) includes "generating and integrating the photoelectric charges of the first photodiode, regardless of the states of the reset transistor, the second transfer transistor and the select transistor, while the first transfer transistor is turned off." Claim 4 depends from claim 1 and adds a similar limitation as to the second photodiode.  Petitioner argues that Figure 3 of Takahashi shows the reset transistor, select transistor, and other transfer transistor changing states while the transfer transistor for a photodiode is off (and the photodiode is generating and integrating charge).  Pet. 31–32, 38–39.  Dr. Kleinfelder testifies that generation and integration of photoelectric charges on a photodiode occur whenever the corresponding transfer transistor is turned off.  Ex. 1002 ¶ 74.  This evidence supports findings that Takahashi teaches the additional limitations of claims 2 and 4.

IPR2018-00687
Patent 6,731,335 B1

Claim 3 depends from claim 2 and recites "wherein the method controls a depletion time and a photo charge generating and integrating time by adjusting a turn-on time and a turn-off time for the first and second transfer transistors." Dr. Kleinfelder testifies that "a depletion time and a photo charge generating and integrating time are controlled by the timing operations of the corresponding transfer transistor, with depletion capable of occurring when the transfer transistor is turned on and generation and integration of photoelectric charges capable of occurring when the transfer transistor is turned off." Ex. 1002 ¶ 75; Pet. 39. This evidence supports findings that Takahashi teaches the additional limitations of claim 3.

Claims 5, 7, 9, and 11 depend from claim 1 and account for a settling time between when the reset or transfer transistors are turned off and the respective reset or data values are sampled. For each of these claims, Petitioner points to evidence, shown in particular in Figure 3, that Takahashi incorporates "a brief pause" between when the respective transistor is turned off and when the reset or data value is sampled. Pet. 32–36. This evidence supports findings that Takahashi teaches the additional limitations of claims 5, 7, 9, and 11.

In sum, on the current record, Petitioner has established a reasonable likelihood that it would prevail with respect to claims 2–5, 7, 9, and 11 as obvious over Takahashi. Patent Owner does not present separate argument for these dependent claims.

21

IPR2018-00687
Patent 6,731,335 B1

### 3. Alleged Obviousness of Claims 6, 8, 10, and 12 over Takahashi and Gowda

Petitioner contends that claims 6, 8, 10, and 12 would have been obvious over Takahashi and Gowda.  Pet. 41–44.  For the reasons given below, Petitioner has demonstrated a reasonable likelihood that it would prevail on this ground.

### a. Scope and Content of the Prior Art—Overview of Gowda

Gowda describes a CMOS image sensor in which correlated double sampling is performed entirely in the digital domain.  Ex. 1007, Abstract. Figure 3, reproduced below, illustrates an example:

22

IPR2018-00687
Patent 6,731,335 B1



FIG. 3

TO PROCESSING/IMAGE STORAGE ELECTRONICS

Figure 3 is a schematic block diagram of an image sensor. *Id.* at 3:44–45.

In Gowda's device 20, analog to digital converters (ADC) $40_1$ to $40_N$ replace analog readout circuits to read the outputs of a plurality of pixels 30. *Id.* at 3:55–61.  According to Gowda, "A/D converters $40_1$–$40_N$ directly convert the reset level and signal level on the respective column busses $15_1$–

23

IPR2018-00687
Patent 6,731,335 B1

$15_N$ to digital values, which are then stored in registers $42_1$–$42_N$." *Id.* at
3:61–64.  Gowda states that

> The data stored in the registers are transferred to logic block 44
> which includes processing/subtraction circuitry to subtract the
> reset levels from the corresponding signal levels to complete a
> correlated double sampling operation.  As a result, since noisy
> analog capacitors to store the reset and signal levels are
> obviated, the accuracy of the correlated double sampling is
> improved.

*Id.* at 3:64–4:4.

### b.  Claim 6, 8, 10, and 12

Claim 6 depends from claim 5 and recites "wherein the sampled reset
voltage level is outputted to an analogue-to-digital converter so that the
sampled reset voltage level is converted into a digital signal."  Claims 8, 10,
and 12 depend from claims 7, 9, and 11, respectively, and add substantially
the same limitation for the sampled data voltage levels (claims 7, 11) and
reset voltage level (claim 9).

Petitioner argues that Gowda provides an express example of the use
of an ADC to sample reset and data voltage levels and convert them to
digital signals.  Pet. 41–43.  As explained above, Gowda describes a CMOS
imaging device in which "A/D converters . . . directly convert the reset level
and signal level on the respective column buses . . . to digital values, which
are then stored in registers . . . ."  Ex. 1007, 3:61–64.  Petitioner argues and
Dr. Kleinfelder testifies that Gowda includes an explicit motivation to
combine its ADCs with the pixels disclosed in Takahashi, namely, noise
reduction and increased accuracy.  Pet. 43–44 (citing Ex. 1007, 3:64–4:4);
Ex. 1002 ¶ 76.

24

IPR2018-00687
Patent 6,731,335 B1

Petitioner's evidence supports findings that Gowda teaches the
additional limitations of claims 6, 8, 10, and 12, and that a skilled artisan
would have had reasons to combine the teachings of Takahashi and Gowda.

In sum, on the current record, Petitioner has established a reasonable
likelihood that it would prevail with respect to claims 6, 8, 10, and 12 as
obvious over Takahashi and Gowda.  Patent Owner does not raise separate
arguments for this ground.  Prelim. Resp. 34.

### 4. Alleged Obviousness of Claims 1–5, 7, 9, and 11 over Takahashi and Dickinson

Petitioner contends that claims 1–5, 7, 9, and 11 would have been
obvious over Takahashi and Dickinson.  Pet. 47–49.  For the reasons given
below, Petitioner has demonstrated a reasonable likelihood that it would
prevail on this ground.

### a. Scope and Content of the Prior Art—Overview of Dickinson

Dickinson describes an active pixel image sensor with active pixel
circuitry shared by multiple sensing elements.  Ex. 1008, Abstract.  Figure 4,
reproduced below, illustrates an example:

25

IPR2018-00687
Patent 6,731,335 B1

## FIG. 4



Figure 4 is a circuit diagram of an active pixel image sensor.  *Id.* at 3:9–10

Photodiodes RD, GRN, and BL capture red, green, and blue light,
respectively, and are connected through gating elements Q4, Q5, and Q6,
respectively.  *Id.* at 4:5–11.  Each photodiode/gating element pair is
connected in parallel to the gate of a source follower, formed by transistors
Q2 and Q3, and also are connected to power source Vdd through reset
transistor Q1.  *Id.* at 4:11–15.  In operation, *inter alia*, "[e]ach RD, GRN and
BL photodiode is first pre-charged by connecting each photodiode to Vdd,

26

IPR2018-00687
Patent 6,731,335 B1

by holding the reset signal high while pulsing each of the gate transistors
TX1 to TX3 as shown with timing 'A' [of Figure 5]."  *Id.* at 4:20–25, Fig. 5.

### b.  Claim 1–5, 7, 9, and 11

Petitioner contends that Dickinson includes an express disclosure of
claim element 1(a), "fully depleting the first and second photodiodes."
Pet. 47.  In particular, Petitioner contends that Dickinson's disclosure
relative to time period "A" of its Figure 5 (Ex. 1008, 4:20–25, quoted
above), "corresponds exactly to the photodiode depletion operation
described in the '335 Patent" and shown in time periods A1 and A2 of the
'335 patent's Figure 5.  Pet. 45–47.  Dr. Kleinfelder testifies that the
operation Dickinson describes would accomplish the "fully depleting" step
of claim 1.  Ex. 1002 ¶ 70.  Petitioner proposes combining Dickinson and
Takahashi for the same reasons as given above for modifying Takahashi
alone, namely, to deplete residual charge and dark current to reduce noise.
Pet. 48–49.  Here, Petitioner cites the same testimony of Dr. Kleinfelder.
*Id.* (citing Ex. 1002 ¶¶ 72–73).  *See also* Ex. 1002 ¶ 77 ("Dickinson and
Takahashi are both directed to CMOS image sensors.  A person of ordinary
skill would have found it obvious to combine Takahashi with Dickinson to
deplete the photodiodes prior to image capture.  Such combinations are
simply combining prior art elements according to known methods to yield
predictable results.").  Petitioner relies on Takahashi for the remaining
limitations of claims 1–5, 7, 9 and 11, as detailed above.

Patent Owner repeats the arguments it makes for Takahashi alone,
discussed above.  Prelim. Resp. 27 ("It would not have been obvious to
implement an additional procedural step in . . . Takahashi . . . to solve a

IPR2018-00687
Patent 6,731,335 B1

problem that was already addressed with structural elements in . . . [that] reference[]. That Dickinson arguably may describe this procedural step does not change the fact that a POSITA would not have been motivated to implement it."). Additionally, Patent Owner argues that Dickinson "describes a relatively basic solution for implementing a color pixel," and "describes no noise cancelling features and does not describe a system that uses double correlated sampling." *Id.* Patent Owner argues that Dickinson would have been "unhelpful for addressing the complex structural solution[] proposed in Takahashi." *Id.* at 28.

As explained above for Takahashi alone, we credit Dr. Kleinfelder's testimony that a skilled artisan would have had reasons to implement step 1(a) in Takahashi's system and are not persuaded by Patent Owner's arguments that Takahashi teaches away from this. Dickinson is further evidence that fully depleting photodiodes before sampling them was conventional. For the reasons given above, Petitioner's evidence supports findings that the remaining limitations of claims 1–5, 7, 9, and 11 are taught by Takahashi. On the current record, Petitioner has established a reasonable likelihood that it would prevail with respect to claims 1–5, 7, 9, and 11 as obvious over Takahashi and Dickinson.

### 5. *Alleged Obviousness of Claims 6, 8, 10, and 12 over Takahashi, Dickinson, and Gowda*

Petitioner contends that claims 6, 8, 10, and 12 would have been obvious over Takahashi, Dickinson, and Gowda. Pet. 49–50. Petitioner incorporates its arguments as to Takahashi and Gowda for its allegations as to Takahashi, Dickinson, and Gowda. Pet. 49–50. Patent Owner does not

Dawson Decl. Exh. A, Page 29

IPR2018-00687
Patent 6,731,335 B1

raise separate arguments for this ground. Prelim. Resp. 34. For the same reasons given in Section II.B.3 above, Petitioner has established a reasonable likelihood that it would prevail with respect to claims 6, 8, 10, and 12 as obvious over Takahashi, Dickinson, and Gowda.

### 6. *Alleged Obviousness of Claims 1–5, 7, 9, and 11 over Matsunaga*

Petitioner contends that claims 1–5, 7, 9, and 11 would have been obvious over Matsunaga. Pet. 52–63. On April 24, 2018, the Supreme Court held that a decision to institute under 35 U.S.C. § 314 may not institute on less than all claims challenged in the petition. *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1369–60 (2018). Therefore, because we institute on the grounds discussed above for Takahashi, we institute on the Matsunaga grounds as well. Nevertheless, as explained below, Patent Owner raises arguments that, at this stage of the proceeding, have merit.

### a. *Scope and Content of the Prior Art—Overview of Matsunaga*

Matsunaga describes an image system that uses an amplification-type MOS sensor for receiving an optical image through a photoelectric conversion element, converting the image into an electrical signal, and outputting the signal. Ex. 1009, Abstract. Matsunaga describes almost fifty embodiments, of which Petitioner (Pet. 50) focuses its allegations on the twenty-fifth embodiment, shown in Figure 61, reproduced below:

29

IPR2018-00687
Patent 6,731,335 B1



# FIG.61

Figure 61 is a circuit diagram of a unit cell.  Ex. 1009, 20:8–9.

In Figure 61, photodiode selection transistors 63*a*, 63*b* select one the detection signals of photodiodes 62*a*, 62*b*, respectively, as an output of unit

30

IPR2018-00687
Patent 6,731,335 B1

cell P1-1-1 through output circuit 68.  *Id.* at 63:10–18.  Output circuit 68
includes amplification transistor 64, which amplifies the electric charge
signal from photodiodes 62*a*, 62*b*; vertical selection transistor 65 for
selecting the unit cell; and reset transistor 66 for charging and discharging
the electric charge applied to the gate of amplification transistor 64.  *Id.* at
63:24–31.

The behavior of unit cell P1-1-1 is shown in Figure 62, reproduced
below:



## FIG.62

Figure 62 is a timing chart showing the operation of the circuit of Figure 61.
*Id.* at 20:10–11.  The signal designations (6-1, 7-1, etc.) correspond to the
signal lines of the same designations in Figure 61.

When a reset pulse is applied to reset line 7-1, reset transistor 66 is
turned on and the electric charge of the input terminal of output circuit 68 is

31

IPR2018-00687
Patent 6,731,335 B1

reset to zero. *Id.* at 66:28–36. After resetting, signal electric charge is accumulated in photodiodes 62*a*, 62*b*, for example, first photodiode 62*a* is read, then photodiode 62*b*. *Id.* at 67:4–13. A selection pulse on photodiode selection line 22-1 causes an output signal of photodiode 62*a* to be amplified by amplification transistor 64 and output to vertical signal line 8-1. *Id.* at 67:14–22. A pulse on selection line 24-1 similarly causes a signal from photodiode 62*b* to be output on vertical signal line 8-1. *Id.* at 68:3–13.

### b. *Claim 1*

We first address the Petitioner's allegations that Matsunaga teaches the structure recited in the preamble of claim 1. Petitioner maps the structure shown in Figure 61 of Matsunaga to the structure of claim 1's preamble as follows:

> photodiode 62*a* to "a first photodiode" of claim 1;
>
> photodiode 62*b* to "a second photodiode" of claim 1;
>
> photodiode selection transistor 63*a* and photodiode selection line 22-1 to "a first transfer transistor" and "a first control signal" of claim 1;
>
> photodiode selection transistor 63*b* and photodiode selection line 24-1 to "a second transfer transistor" and "a second control signal" of claim 1;
>
> reset transistor 66 to "a reset transistor" of claim 1;
>
> conjunction of transistors 63*a*, 63*b*, 64, and 66 to "a single sensing node" of claim 1;
>
> amplification transistor 64 to "a drive transistor" of claim 1; and
>
> vertical selection transistor 65 to "a select transistor" of claim 1.

Pet. 52–55.

32

IPR2018-00687
Patent 6,731,335 B1

As can be seen from Figure 61, vertical selection transistor 65 is connected to the power supply (the arrow at the junction of vertical selection transistor 65 and reset transistor 66) and amplification transistor 64 is connected to vertical selection transistor 65, rather than the power supply. Thus, the alleged drive transistor is not coupled directly to the power supply. Petitioner argues that amplification transistor 64, the alleged drive transistor, is "coupled to the power supply *through select transistor 65* for acting as a source follower in response to an output of the single sensing node." Pet. 54 (emphasis added). Petitioner does not otherwise explain this argument or support it with additional evidence.

> In response, Patent Owner argues
>
> The '335 patent clearly claims a circuit in which the power supply is coupled to the drive transistor, which in turn is coupled to the select transistor. *To be clear, this would not exclude embodiments where other components are between the drive transistor and the power supply*, or between the select transistor and the drive transistor. The '335 patent does, however, require a specific arrangement and that arrangement is indisputably not present in Matsunaga.

Prelim. Resp. 31–32 (emphasis added). Here, Patent Owner appears to concede that "a drive transistor coupled to the power supply" can include a drive transistor coupled, through another component, to the power supply; rather, Patent Owner argues, the intermediate component cannot be the select transistor, because the drive transistor and select transistor described in the '335 patent are not arranged in that way. We are not persuaded. Claim 1 recites that the drive transistor is coupled to the power supply and the select transistor is coupled to the drive transistor. If we accept Patent Owner's concession that the drive transistor can be coupled to the power

33

IPR2018-00687
Patent 6,731,335 B1

supply through another component, nothing in claim 1 excludes the select transistor from being the intermediate component.  Patent Owner does not cite to other evidence suggesting claim 1 is more limited.

Claim 1 recites "a select transistor coupled to the drive transistor, *for outputting an image data driven by the drive transistor*."  Relatedly, steps 1(c) through 1(f) recite "outputting" reset and data voltages "through the single sensing node, the drive transistor and the select transistor."  Petitioner concedes that "Matsunaga does not disclose that the outputs are made 'through' the select transistor as claimed, because the select transistor 65 locates above the drive transistor 64 in FIG. 61."  Pet. 62.  Nevertheless, Petitioner argues that it would have been obvious to swap the positions of amplification transistor 64 and vertical selection transistor 65 and that to do so would have been "simply choosing from two predictable solutions or design choices with either choice having a reasonable expectation of success."  *Id.* at 62–63.  With transistors 64 and 65 reversed, the outputs would be through vertical selection transistor 65.

Petitioner supports its argument with the testimony of Dr. Kleinfelder, who repeats this argument in his testimony and adds that "the ordering of the connection does not affect the basic functionality of selecting and reading a pixel, and a person of ordinary skill in the art would have found it obvious to reverse the order as shown in Matsunaga."  Ex. 1002 ¶ 82.  Dr. Kleinfelder also testifies:

> FIG. 61 of Matsunaga has the read (64) and select (65) transistors in a reversed order when compared with '335 and Takahashi.  One of ordinary skill in the art at the time would have been aware that both configurations had been proposed for use and/or actually used in image sensors of the day.  One of

34

IPR2018-00687
Patent 6,731,335 B1

> ordinary skill in the art would also have understood that the two
> variations are logically equivalent, albeit with certain subtle
> advantages and disadvantages to each.  For example, the
> configuration in Matsunaga may under some circumstances
> allow a slightly wider useful range of output voltages, while
> that in '335 and Takahashi may present a lower typical output
> capacitance at the column level.  Ultimately, however, it would
> have been understood by one of ordinary skill in the art at the
> time that both are operated in the same logical fashion and yield
> the same fundamental results.

*Id.* ¶ 49.  Dr. Kleinfelder does not identify the basis for his testimony on this
point.

Patent Owner argues that Matsunaga's twenty-fifth embodiment
provides faster settling than Petitioner's proposed modification and that in
Matsunaga's expected applications (video cameras, facsimile machines,
copying machines, and scanners), reducing settling speed would be
disadvantageous.  Prelim. Resp. 33–34.  Patent Owner does not support its
argument with evidence at this stage of the proceeding.  Nevertheless, in
light of the conclusory nature of Petitioner's supporting evidence, Patent
Owner raises a legitimate concern regarding Petitioner's proposed
modifications to Matsunaga.

Petitioner also concedes that Matsunaga does not teach step 1(a),
"fully depleting the first and second photodiodes."  Pet. 61.  Nevertheless,
Petitioner argues that "it would have been obvious to one of ordinary skill in
the art to fully deplete the photodiodes in order to eliminate any residual
electric charges prior to capturing an image for the reasons discussed above
in connection with Takahashi."  *Id.*  Petitioner cites the same expert
testimony that it cites for its challenge based on Takahashi.  *Id.* at 61–62
(citing Ex. 1002 ¶¶ 72–73).

35

IPR2018-00687
Patent 6,731,335 B1

As with Takahashi, Patent Owner argues that Matsunaga describes
structural elements designed to address dark current and residual charges in
the photodiodes and, thus, it would have been unnecessary to modify
Matsunaga's circuit.  Prelim. Resp. 23–24.  In particular, Matsunaga
explains: (1) the use of the structure of Figure 30 "can prevent a dark current
from leaking into the photodiode 83," Ex. 1009, 72:36–41; (2) with the
structure of Figures 25A and 25B, "the diffusion potential at the $p^-/p^+$
boundary can partly prevent a dark current generated in the $p^-$-type substrate
81 from the flowing to the $p^+$-layer side," *id.* at 70:27–35; and (3) with the
structure of Figure 64, "p-type wells suited for the respective constituent
elements can be formed, and leakage of a dark current into the photodiode
can be prevented," *id.* at 72:57–65.  Patent Owner characterizes Matsunaga
as including circuitry similar to that of Takahashi and presents arguments
substantially similar to those presented for Takahashi (summarized above).
Prelim. Resp. 24–26.  As with Takahashi, Patent Owner characterizes
Matsunaga's disclosure as including "a strong teaching away that militates
in favor of non-obviousness."  *Id.* at 29.

As with Takahashi, and for the same reasons, we credit
Dr. Kleinfelder's testimony at this stage of the proceeding and find Patent
Owner's arguments to the contrary unpersuasive.  We note further that
Matsunaga's disclosure is more equivocal on this point than Takahashi's.
*Compare* Ex. 1006, 5:20–22 ("perfectly transferred"; "complete transfer")
*with* Ex. 1009, 70:33–34 ("partly prevent a dark current").  Moreover,
although Matsunaga addresses dark current, it does not purport to address
the additional reason to modify Matsunaga, residual charge, raised by
Dr. Kleinfelder.

36

IPR2018-00687
Patent 6,731,335 B1

If we were to accept Petitioner's proposed reversal of Matsunaga's amplification transistor 64 and vertical selection transistor 65, Petitioner's evidence establishes that the remaining steps of claim 1 are taught in Matsunaga.  As to step 1(b), Matsunaga describes photodiodes that receive light and generate photoelectric charges.  Pet. 55 (citing Ex. 1009, 64:19–23, 67:1–6).  As to steps 1(c) through 1(f), as shown in Figure 62, reset pulse 7-1 is asserted to reset the pixel (step 1(c)); the reset transistor is turned off and photodiode selection transistor 63*a* is turned on via a pulse of signal 22-1 (step 1(d)); photodiode selection transistor 63*a* is turned off and the reset transistor is turned on via pulse 7-1 (step 1(e)); and the reset transistor is turned off and selection transistor 63*b* is turned on via a pulse of signal 24-1 (step 1(f)).  Pet. 55–58.  As explained above, if Matsunaga's amplification transistor 64 and vertical selection transistor 65 are reversed, the reset and data outputs would be through both amplification transistor 64 and vertical selection transistor 65.

In sum, on the current record, Patent Owner has cast doubt on Petitioner's proposal to modify Matsunaga's circuit to reverse amplification transistor 64 and vertical selection transistor 65.  If that modification is made, though, Petitioner's evidence supports findings that the remaining limitations of claim 1 are taught by Matsunaga.

### c.  Claim 2–5, 7, 9, and 11

Regarding claims 2 and 4, Petitioner introduces evidence to show that Matsunaga's photodiodes 62*a*, 62*b* generate and integrate charges regardless of the states of reset transistor 66, vertical selection transistor 65, and the other of photodiode selection transistors 63*a*, 63*b*.  Pet. 58; Ex. 1002 ¶ 74.

37

IPR2018-00687
Patent 6,731,335 B1

As to claim 3, Petitioner's evidence shows that Matsunaga's photodiode selection switches 63*a*, 63*b* are independently controlled, supporting Petitioner's argument that adjusting the turn-on and turn-off times of these switches controls depletion and charge generating/integrating times.  Pet. 58 (citing Ex. 1009, 63:19–23).

For claims 5, 7, 9, and 11, Petitioner points to evidence, shown in particular in Figure 62, that Matsunaga incorporates "a brief pause" between when the respective transistor is turned off and when the reset or data value is sampled.  Pet. 59–61.

In sum, on the current record, Petitioner's evidence supports findings that Matsunaga teaches the additional limitations of claims 2–5, 7, 9, and 11. Patent Owner does not present separate argument for these dependent claims.

### 7. *Alleged Obviousness of Claims 6, 8, 10, and 12 over Matsunaga and Gowda*

Petitioner contends that claims 6, 8, 10, and 12 would have been obvious over Matsunaga and Gowda.  Pet. 63–65.  Petitioner's evidence and argument for this ground track its allegations for Takahashi combined with Gowda (discussed in Section II.B.3 above).[3]  As with its earlier argument, Petitioner relies on Gowda's express teachings to show reasons to combine.

---

[3] In its claim chart, Petitioner states that Matsunaga discloses outputting voltage level to an ADC, citing Ex. 1009, 8:30–34, 8:49–58, 9:36–40, 14:10–28.  Pet. 64.  Nevertheless, in the argument it presents, Petitioner does not appear to rely on Matsunaga for this teaching or explain how its citations to Matsunaga here fit with those presented for the claims from which claims 6, 8, 10, and 12 depend.  *Id.* at 63.

38

IPR2018-00687
Patent 6,731,335 B1

*Id.* at 63. For essentially the same reasons given in Section II.B.3 above, Petitioner's evidence supports findings that Gowda teaches the additional limitations of claims 6, 8, 10, and 12, and that a skilled artisan would have had reasons to combine the teachings of Matsunaga and Gowda.

Patent Owner does not raise separate arguments for this ground. Prelim. Resp. 34.

### 8. *Alleged Obviousness of Claims 1–5, 7, 9, and 11 over Matsunaga and Dickinson*

Petitioner contends that claims 1–5, 7, 9, and 11 would have been obvious over Matsunaga and Dickinson. Pet. 65–66. Petitioner incorporates its evidence and argument presented for its proposed combination of Takahashi and Dickinson (discussed in Section II.B.4 above). *Id.* Patent Owner presents a combined counter-argument for Takahashi or Matsunaga in view of Dickinson; thus, its arguments are the same as discussed in detail above. Prelim. Resp. 26–29. For the reasons given in Section II.B.4 above, Petitioner's evidence supports a finding that a skilled artisan would have had reasons to combine Matsunaga and Dickinson for step 1(a) of claim 1. The remaining limitations of claims 1–5, 7, 9, and 11 are discussed in Section II.B.6 above.

### 9. *Alleged Obviousness of Claims 6, 8, 10, and 12 over Matsunaga, Dickinson, and Gowda*

Petitioner contends that claims 6, 8, 10, and 12 would have been obvious over Matsunaga, Dickinson, and Gowda. Pet. 66. Petitioner incorporates its arguments as to Matsunaga and Gowda for its allegations as to Matsunaga, Dickinson, and Gowda. Pet. 66. Patent Owner does not raise

Dawson Decl. Exh. A, Page 40

IPR2018-00687
Patent 6,731,335 B1

separate arguments for this ground.  Prelim. Resp. 34.  For the same reasons
given in Section II.B.7 above, Petitioner's evidence supports findings that
Gowda teaches the additional limitations of claims 6, 8, 10, and 12, and that
a skilled artisan would have had reasons to combine the teachings of
Matsunaga, Dickinson, and Gowda.

## III.   CONCLUSION

Petitioner has established a reasonable likelihood that claims 1–12 are
unpatentable.  We have not yet made a final determination of the
patentability of these claims or the construction of any claim term.

## IV.   ORDER

For the reasons given, it is:

ORDERED that *inter partes* review is instituted on the following
grounds:

Claims 1–5, 7, 9, and 11, under 35 U.S.C. § 103(a), as obvious over
Takahashi;

Claims 6, 8, 10, and 12, under 35 U.S.C. § 103(a), as obvious over
Takahashi and Gowda;

Claims 1–5, 7, 9, and 11, under 35 U.S.C. § 103(a), as obvious over
Takahashi and Dickinson;

Claims 6, 8, 10, and 12, under 35 U.S.C. § 103(a), as obvious over
Takahashi, Dickinson, and Gowda;

Claims 1–5, 7, 9, and 11, under 35 U.S.C. § 103(a), as obvious over
Matsunaga;

Dawson Decl. Exh. A, Page 41

IPR2018-00687
Patent 6,731,335 B1

Claims 6, 8, 10, and 12, under 35 U.S.C. § 103(a), as obvious over Matsunaga and Gowda;

Claims 1–5, 7, 9, and 11, under 35 U.S.C. § 103(a), as obvious over Matsunaga and Dickinson;

Claims 6, 8, 10, and 12, under 35 U.S.C. § 103(a), as obvious over Matsunaga, Dickinson, and Gowda;

FURTHER ORDERED that the trial is limited to the grounds identified above, and no other ground is authorized; and

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(a), *inter partes* review of U.S. Patent No. 6,731,335 B1 is hereby instituted commencing on the entry date of this Decision, and pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial.

41

IPR2018-00687
Patent 6,731,335 B1


PETITIONER:

David L. Fehrman
David T. Yang
MORRISON & FOERSTER LLP
dfehrman@mfo.com
dyang@mofo.com


PATENT OWNER:

Kurt L. Glitzenstein
John C. Phillips
Chris Marchese
Kim Leung
FISH & RICHARDSON P.C.
glitzenstein@fr.com
phillips@fr.com
marchese@fr.com
leung@fr.com