**EXHIBIT B TO THE DECLARATION OF SHAELYN K. DAWSON IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR PARTIAL STAY**

Trials@uspto.gov                                                Paper 7
571-272-7822                                      Entered: August 28, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

NIKON CORPORATION,
Petitioner,

v.

ASML NETHERLANDS B.V.
CARL ZEISS AG,
Patent Owner.

_____

Case IPR2018-00688
Patent 6,463,163 B1
_____

Before JEFFREY S. SMITH, DAVID C. McKONE, and
KEVIN W. CHERRY, *Administrative Patent Judges*.

SMITH, *Administrative Patent Judge*.

DECISION
Instituting *Inter Partes* Review
*35 U.S.C. § 314(a)*

IPR2018-00688
Patent 6,463,163 B1

## I.  INTRODUCTION

Petitioner filed a Petition for *inter partes* review of claims 1–4, 6, 7,
9–11, 14–16, and 19 of U.S. Patent No. 6,463,163 B1 (Ex. 1001, "the '163
patent").  Paper 2 ("Pet.").  Patent Owner filed a Preliminary Response.
Paper 6 ("Prelim. Resp.").  Patent Owner also filed a statutory disclaimer of
claims 9–14.  Ex. 2002.  Institution of an *inter partes* review is authorized by
statute when "the information presented in the petition . . . and any
response . . . shows that there is a reasonable likelihood that the petitioner
would prevail with respect to at least 1 of the claims challenged in the
petition."  35 U.S.C. § 314(a).

Upon consideration of the Petition and the Preliminary Response, we
are persuaded Petitioner has demonstrated a reasonable likelihood that it
would prevail in establishing the unpatentability of at least one claim of the
'163 patent.  Accordingly, we institute an *inter partes* review on all
challenged claims and grounds raised in the Petition, with the exception of
claims 9–14, which have been statutorily disclaimed by Patent Owner.

### A.  Related Matters

The '163 patent is the subject of *Carl Zeiss AG and ASML
Netherlands B.V. v. Nikon Corporation, Sendai Nikon Corporation, and
Nikon Inc*., Case No. 2:17-cv-7083-RGK (C.D. Cal.), filed Sept. 26, 2017.

### B.  The '163 Patent

The '163 patent relates generally to image pattern detection and
recognition and more particularly to a system and a method for face
detection.  Ex. 1001, 1:6–8.  The face detection system and method for pre-
filtering an input image utilizes a candidate selector that selects candidate
regions of the input image that potentially contain a picture of a human face.

Dawson Decl. Exh. B, Page 44

IPR2018-00688
Patent 6,463,163 B1

*Id*. at 2:20–24.  A face detector then verifies whether the candidate regions do contain a human face.  *Id*. at 2:24–27.

The candidate selector includes a linear matched filter and a non-linear filter that operate in series to select the candidate regions of the input image.  *Id*. at 2:34–37.  Components of the candidate selector are shown in Figure 3, which is reproduced below.



FIG. 3

As shown in Figure 3 above, candidate selector 12 includes linear correlator 52 and processing module 54, which form linear matched filter 56. Ex. 1001, 6:60–63.  Candidate selector 12 also includes contrast calculators 58, 60, and 62 and decision module 64, which form non-linear filter 66. *Id*. at 63–65.  Linear correlator 52 performs a linear correlation on an input

3

IPR2018-00688
Patent 6,463,163 B1

image using a filtering kernel to convert the input image into a correlation image. *Id*. at 7:10–43. The correlation image is transmitted to processing module 54, which selects regions that contain a local maximum and have pixel correlation values that are greater than a threshold value as temporary candidate regions. *Id*. at 7:44–51. The local maximum is a location on the correlation image where the correlation value is greater than the correlation values of surrounding locations. *Id*. at 7:51–53.

The temporary candidate regions are transmitted to non-linear filter 66. *Id*. at 7:61–63. For each temporary candidate region, non-linear filter 66 analyzes local contrast values within sub-regions of the temporary candidate region. *Id*. at 7:64–66. The local contrast values are computed by contrast calculators 58, 60, and 62. *Id*. at 8:8–10. Temporary candidate regions having local contrast values greater than a threshold value are identified as candidate regions. *Id*. at 8:2–5. The candidate regions are transmitted to the face detector. *Id*. at 8:63–64.

*C. Illustrative Claim*

Claims 1, 9, and 15 of the challenged claims of the '163 patent are independent. Claim 1 is illustrative of the claimed subject matter:

> 1. A method of pre-filtering an input image to determine whether said input image includes a target image pattern of interest comprising steps of:
>
> receiving said input image;
>
> correlating said input image with preselected reference data to derive a correlation image, said preselected reference data being representative of said target image pattern of interest, said correlation image having image data indicative of correlations between said input image and said preselected reference data; and

4

IPR2018-00688
Patent 6,463,163 B1

> selecting a candidate region of said input image having a likelihood of containing said target image pattern of interest on a basis of correlating said input image with said preselected reference data, said step of selecting including identifying potential candidate regions of said input image based on detecting a local maximum in said correlation image and screening said potential candidate regions by analyzing a grayscale characteristic of said potential candidate regions, said screening including discarding said potential candidate regions that do not satisfy a predetermined criterion with respect to said grayscale characteristic in order to increase a probability that said selected candidate region contains said target image pattern of interest.

Ex. 1001, 15:65–16:20.

## D. References

Petitioner relies on the following references.  Pet. 16.

| Reference | Title | Date | Ex. No. |
|---|---|---|---|
| Yow | "Feature-Based Human Face Detection," Journal of Image and Vision Computing 15, pp. 713–55. | 1997 | Ex. 1003 |
| Yow Thesis | "Automatic Human Face Detection and Localization" pp. 1–193 | 1998[1] | Ex. 1004 |
| Kosugi | JP H5-174149 | 1993 | Ex. 1005 |
| Fang | WO 96/38808 | 1996 | Ex. 1006 |
| Crowley | "Integration and Control of Reactive Visual Processes," Journal of Robotics and Autonomous Systems 16, pp. 17–27. | 1995 | Ex. 1007 |
| Rowley | "Neural Network-Based Face Detection," IEEE Transactions on Pattern Analysis and Machine Intelligence, vol. 20, no. 1, pp 23–38. | Jan. 1998 | Ex. 1008 |

---

[1] Although the document is dated 1998, Patent Owner disputes that the Yow Thesis was publicly available at that time, as discussed in detail below.

5

IPR2018-00688
Patent 6,463,163 B1

### E. Asserted Grounds of Unpatentability

Petitioner contends that claims 1–4, 6, 7, 15, 16, and 19 of the '163 patent are unpatentable based on the following grounds:[2]

| Reference(s) | Basis | Challenged Claims |
|---|---|---|
| Yow | § 103 | 1–3, 6, 15, 16, and 19 |
| Yow and Crowley | § 103 | 4 and 7 |
| Yow Thesis | § 103 | 1–3, 6, 7, 15, 16, and 19 |
| Yow Thesis and Crowley | § 103 | 4 |
| Kosugi | § 103 | 1, 4, 6, and 7 |
| Kosugi and Fang | § 103 | 2 and 3 |
| Kosugi, Fang, and Rowley | § 103 | 15 and 19 |

## II.  ANALYSIS

### A. Claim Construction

We interpret claims of an unexpired patent using the broadest reasonable construction in light of the specification of the patent in which they appear.  *See* 37 C.F.R. § 42.100(b); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144–45 (2016).  "Under a broadest reasonable interpretation, words of the claim must be given their plain meaning, unless such meaning is inconsistent with the specification and prosecution history." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1062 (Fed. Cir. 2016).

 "Construing a means-plus-function claim term is a two-step process. The court must first identify the claimed function.  Then, the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339,

---

[2] Because claims 9–11 and 14 have been disclaimed, we will not address these claims in our analysis of the asserted grounds of unpatentability.

6

IPR2018-00688
Patent 6,463,163 B1

1351 (Fed. Cir. 2015) (en banc).  In cases involving a special purpose computer-implemented means-plus-function limitation, the Federal Circuit requires "that the specification disclose an algorithm for performing the claimed function."  *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1374 (Fed. Cir. 2015).  "A description of the function in words may disclose, at least to the satisfaction of one of skill in the art, enough of an algorithm to provide the necessary structure under § 112, ¶ 6."  *Typhoon Touch Techs., Inc. v. Dell, Inc*., 659 F.3d 1376, 1385 (Fed. Cir. 2011).

Petitioner proposes construing the term "correlation" recited in claims 1, 7, 10, and 11 as "an image correlation operation between the input image and a kernel that results in a correlation image."  Pet. 9–10.  Petitioner proposes construing the term "correlating" recited in claims 1, 6, 9, and 10 as "performing an image correlation operation between the input image and a kernel that results in a correlation image."  Pet. 9–11.  Petitioner proposes construing the term "convolution" recited in claims 4, 10, and 16 as "an image correlation operation between the input image and a kernel, resulting in a correlation image."  Pet. 11–12.

Patent Owner contends construing the terms "correlation," "correlating," and "convolution" is not necessary in order to resolve any dispute.  Prelim. Resp. 5.  Patent Owner also contends that Petitioner's proposed constructions of "correlation," "correlating," and "convolution" are not the broadest reasonable constructions of these terms.  *Id.*

Construction of these terms is not necessary to resolve a dispute.  We determine that the terms "correlation," "correlating," and "convolution" do not require express construction at this stage.  *See Vivid Techs., Inc. v. Am. Sci. & Eng'g*, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms

7

IPR2018-00688
Patent 6,463,163 B1

need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").

Claim 15 recites "first filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern, said filtering means being configured to correlate said input image with a reference image pattern to select said image regions." Petitioner identifies the claimed function as "identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern" and "correlate said image with a reference image pattern to select said image regions." Pet. 13. Patent Owner identifies a similar function. Prelim. Resp. 9.

Petitioner contends the corresponding structure for performing this function is linear matched filter 56 programmed to employ the algorithm described at 7:10–21, 7:44–47 of the Specification of the '163 patent. Pet. 13–14 (citing Ex. 1016 ¶ 34). Patent Owner contends the corresponding structure is at least linear matched filter 56. Prelim. Resp. 9 (citing Ex. 1001, 6:65–7:1).

We construe "first filtering means" as a means-plus-function limitation with the function of identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern by correlating said image with a reference image pattern to select said image regions, and with the corresponding structure encompassing at least a linear matched filter programmed to employ the algorithm described at 7:10–21, 7:44–47 of the '163 patent and equivalents.

Claim 15 recites "second filtering means . . . for screening said image regions that has a high likelihood of containing said target image pattern"

8

IPR2018-00688
Patent 6,463,163 B1

and "configured to examine a grayscale characteristic of said image regions
as a determination factor in selecting said candidate region from among said
image regions."  Petitioner identifies the claimed function as "screening said
image regions to select a candidate region that has a high likelihood of
containing said target image pattern," and "examine a grayscale
characteristic of said image regions as a determination factor in selecting
said candidate region from among said image regions."  Pet. 14.  Patent
Owner identifies a similar function.  Prelim. Resp. 9–10.

Petitioner contends the corresponding structure for performing this
function is non-linear filter 66 programmed to employ the algorithm
described at 7:64–8:7 of the Specification of the '163 patent.  Pet. 14 (citing
Ex. 1016 ¶ 36).  Patent Owner contends the corresponding structure is at
least non-linear filter 66.  Prelim. Resp. 9–10 (citing Ex. 1001, 6:65–7:1).

We construe "second filtering means" as a means-plus-function
limitation with the function of screening image regions to select a candidate
region that has a high likelihood of containing the target image pattern by
examining a grayscale characteristic of the image regions as a determination
factor in selecting the candidate region, and with the corresponding structure
encompassing at least a non-linear filter programmed to employ the
algorithm described at 7:64–8:7 of the '163 patent and equivalents.

Claim 15 recites an "image pattern detector . . . designed to analyze
said candidate region to verify whether said candidate region contains said
target image pattern."  Petitioner contends this is a means-plus-function
limitation because this limitation lacks sufficiently defined structure.
Pet. 14–15.  According to Petitioner, a skilled artisan would not understand

9

IPR2018-00688
Patent 6,463,163 B1

an "image pattern detector" to have a sufficiently definite meaning as the
name for structure. *Id.*

Patent Owner contends that the term "image pattern detector" does not
include the word "means," and therefore, a presumption arises that the
"image pattern detector" is not a means-plus-function limitation. Patent
Owner contends that the broadest reasonable interpretation of "image pattern
detector" is broader than the means-plus-function construction proposed by
Petitioner. Prelim. Resp. 8. Prelim. Resp. 6. According to Patent Owner, a
person of ordinary skill in the art of image processing would have
understood the term "image pattern detector" to refer to known,
conventional techniques to detect human faces in a selected region of an
input image, connotative of structure. Prelim. Resp. 7–9. In particular,
Patent Owner relies on an article by Fu and Rosenfeld and the disclosure of
the '163 patent to contend that a person of ordinary skill in the art would
have understood that the claimed "image pattern detector" refers to one of
many known, conventional devices to detect human faces within selected
regions of an image. Prelim. Resp. 7–8 (citing Ex. 2001, 1336; Ex. 1001,
1:27–29, 2:24–27; 3:16–24, 5:53–56).

We agree with Patent Owner that the broadest reasonable construction
of "image pattern detector" is not limited to the means-plus-function
construction proposed by Petitioner. We construe the claimed "image
pattern detector" as encompassing at least the known, conventional devices
that detect human faces within a selected region of an input image described
in the '163 patent and the article by Fu and Rosenfeld. *See* Ex. 1001, 2001.

IPR2018-00688
Patent 6,463,163 B1

### B. Obviousness Over Yow

Petitioner, relying on the Declaration of Dr. Irfan Essa (Ex. 1016), challenges claims 1–3, 6, 15, 16, and 19 as obvious over Yow.  Pet. 17–29.

### 1. Yow (Ex. 1003)

Yow discloses a feature-based algorithm for detecting faces that uses spatial filters to detect feature points from the image, and uses geometric and gray level constraints to group the feature points into face candidates. Ex. 1003, Abstract.  The algorithm then evaluates the likelihood that each candidate is a face.  *Id.*

The feature points are detected in two steps.  First, the image is filtered to find a list of interest points.  *Id.* at 716.  At a course scale, six facial features each resemble a dark elongated bar on a light background, which can be found by filtering the image using a matched bandpass filter, such as an elongated second derivative Gaussian filter.  *Id.*  Local maxima in the response indicate the presence and locations of such structures in the image.  *Id.*

Second, edges around each interest point are examined to determine whether two parallel edge segments exist on both sides of the interest point. *Id.*  If so, then the point is flagged as a facial feature point, and a feature region around the feature point is defined.  *Id.*

Figure 3 of Yow below illustrates the process of detecting a feature region.  *Id.*

11

IPR2018-00688
Patent 6,463,163 B1



Fig. 3. Preattentive feature selection process.

The left portion of Figure 3 above shows an interest point detected using spatial filtering, the center portion shows edges around the interest point that are detected and linked based on their proximity and similarity in orientation and strength, and the right portion shows a box drawn around the linked edges to define a feature region. *Id.* The feature region's image characteristics, such as edge length, edge strength, and gray-level variance, are stored in a feature vector. *Id.* If a Mahalanobis distance of the feature vector is within a threshold of a class of facial features, such as eyebrow, eye, nose, or mouth, then the facial feature is identified as valid. *Id.* Otherwise, it is discarded. *Id.*

*2. Analysis of Claims 1–3, 6, 15, 16, and 19*

Claim 1 recites "receiving said input image." Petitioner contends this limitation is disclosed by Yow's description of finding a list of interest points from the image using spatial filtering. Pet. 20 (citing Ex. 1003, 716).

Claim 1 recites "correlating said input image with preselected reference data to derive a correlation image, said preselected reference data being representative of said target image pattern of interest, said correlation image having image data indicative of correlations between said input image and said preselected reference data." Petitioner contends this limitation is taught by Yow's teaching of obtaining a correlation image by correlating the

12

IPR2018-00688
Patent 6,463,163 B1

input image with an elongated Gaussian filter representative of bar-shaped
features such as eyes and mouth.  Pet. 20 (citing Ex. 1003, 716).  According
to Petitioner, the response of the Gaussian filter is a correlation image
having data indicative of correlations between the input image and filter.  *Id.*
Petitioner contends that although Yow does not explicitly disclose that the
response is a correlation image, it would have been obvious to a person of
ordinary skill to provide a correlation image as the output of Yow's
Gaussian filter.  Pet. 19–20 (citing Ex. 1016 ¶ 45).

Dr. Essa testifies that Yow's step of correlating the input image with a
second derivative elongated Gaussian filter results in a matrix of correlation
output values, which is a correlation image of the same size as the input
image.  Ex. 1016 ¶ 45.  Dr. Essa further testifies that although Yow does not
explicitly disclose that the result of the correlation is a correlation image, it
would have been obvious for a person of ordinary skill to provide that matrix
of correlation values as the correlation image.  *Id.*

Claim 1 recites

selecting a candidate region of said input image having a
likelihood of containing said target image pattern of interest on a
basis of correlating said input image with said preselected
reference data, said step of selecting including identifying
potential candidate regions of said input image based on
detecting a local maximum in said correlation image and
screening said potential candidate regions by analyzing a
grayscale characteristic of said potential candidate regions, said
screening including discarding said potential candidate regions
that do not satisfy a predetermined criterion with respect to said
grayscale characteristic in order to increase a probability that said
selected candidate region contains said target image pattern of
interest.

Petitioner contends Yow discloses this limitation in disclosing a preattentive

13

IPR2018-00688
Patent 6,463,163 B1

feature selection process that correlates an input image with preselected reference data, identifies potential candidate regions based on local maxima in correlation output, and screens the potential candidate regions by analyzing grayscale characteristics.  Pet. 21–22 (citing Ex. 1003, 716, Fig. 3).

The supporting section of Yow discloses identifying a potential feature region of the input image based on examining a region around an interest point, where the interest point was detected based on local maxima in the filtered image.  Ex. 1003, 716, Fig. 3.  The supporting section of Yow discloses storing the potential feature region's image characteristics, such as edge length, edge strength, and gray-level variance, in a feature vector, and determining whether a Mahalanobis distance of the feature vector to a class of facial features is within an admission threshold.  *Id.*  The supporting section of Yow further discloses discarding the potential feature region if the region's feature vector does not belong to any class of facial features.  *Id.*

Patent Owner contends that Dr. Essa's testimony that Yow's filtering response teaches a "correlation image" should not be credited because, according to Patent Owner, Dr. Essa's statements are not supported by any actual evidence.  Prelim. Resp. 19–20.  Patent Owner also contends that the Petition does not explain why a person of ordinary skill in the art would have been motivated to modify the elements disclosed in Yow.  Prelim. Resp. 20–21.

Yow discloses "filtering the [input] image using a matched bandpass filter" such as a "second derivative Gaussian, elongated," to find facial features that each resemble a dark elongated bar on a light background.  Ex. 1003, 716.  Although Yow describes the filtered image as a "response,"

Dawson Decl. Exh. B, Page 56

IPR2018-00688
Patent 6,463,163 B1

rather than a "correlation image," Dr. Essa testifies that filtering the input image with the second derivative elongated Gaussian filter "results in a matrix of correlation output values." Ex. 1016 ¶ 45. Dr. Essa further testifies that although "Yow does not explicitly disclose that the result of the correlation is a correlation image, it would have been obvious for one of ordinary skill to provide that matrix of correlation values as the correlation image." *Id.*

For purposes of this Decision, we credit Dr. Essa's testimony and determine that at this stage of the proceeding, the Petition and supporting evidence adequately provide a reason why a person of ordinary skill in the art would have considered the result of filtering an input image with an elongated filter to be a correlation image that correlates the input image to an elongated reference pattern indicative of facial features. There is a reasonable likelihood that Petitioner would prevail in showing that claim 1 would have been obvious over Yow.

Claim 2 recites "said step of screening said potential candidate regions further includes comparing a contrast value calculated for a sub-region of each potential candidate region to a threshold contrast value, said target image pattern of interest being a human face." Petitioner contends Yow discloses this limitation in disclosing performing edge detection in sub-regions centered around each correlation point, and comparing a contrast value for a sub-region of each potential candidate region to a threshold value using Canny edge detection. Pet. 23 (citing Ex. 1003, 716; Ex. 1016 ¶ 101).

Claim 3 recites said "step of comparing said contrast value is a step of comparing said contrast value from said sub-region of said each potential candidate region that is located in an upper-half portion of said each

15

IPR2018-00688
Patent 6,463,163 B1

potential candidate region." Petitioner contends Yow discloses this limitation in disclosing analyzing sub-regions about a feature point. Pet. 23 (citing Ex. 1003, 716).

Claim 6 recites "said step of correlating said input image with said preselected reference data includes removing an undesired image characteristic from said input image, said removal being effectuated by a mathematical property of said preselected reference data." Petitioner contends Yow discloses this limitation in disclosing using a matched bandpass filter to remove undesired image characteristics such as noise from the image. Pet. 24 (citing Ex. 1003, 716; Ex. 1016 ¶ 1016).

We have analyzed Petitioner's evidence and determine that it supports findings that the additional limitations of claims 2, 3, and 6 are taught by Yao. Thus, on the current record, there is a reasonable likelihood that Petitioner would prevail in showing that claims 2, 3, and 6 would have been obvious over Yow. We note that Patent Owner does not present separate arguments for these dependent claims.

Claim 15 recites

> first filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern, said filtering means being configured to correlate said input image with a reference image pattern to select said image regions, said reference image pattern being indicative of said target image pattern.

Petitioner contends Yow discloses this limitation in describing a matched bandpass filter, such as a second derivative Gaussian elongated at an aspect ratio of 3:1, to correlate the input image with six facial features that each resembles a dark elongated bar on a light background. Pet. 27 (citing Ex. 1003, 716).

16

IPR2018-00688
Patent 6,463,163 B1

> Claim 15 also recites
>
> Second filtering means operatively coupled to and operatively following said first filtering means for screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern, said second filtering means being configured to examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions.

Petitioner contends Yow discloses this limitation in disclosing an edge detector coupled to the correlation filter, to analyze a grayscale characteristic, such as contrast, of the image regions selected by the correlation filter. Pet. 27 (citing Ex. 1003, 716).

Claim 15 further recites "an image pattern detector connected to and operatively following said second filtering means to receive said candidate region, said image pattern detector designed to analyze said candidate region to verify whether said candidate region contains said target image pattern." Petitioner contends Yow teaches an "image pattern detector designed to analyze said candidate region to verify whether said candidate region contains said target image pattern" in teaching known neural network face detection, as publicized by Rowley. Pet. 28 (citing Ex. 1003, 714). Petitioner contends that combining Yow's pre-filtering stage to select a limited number of candidate regions, with the well-known Rowley neural network face detection stage, results in better detection of small faces. Pet. 28 (citing Ex. 1016 ¶ 121). According to Petitioner, a person of ordinary skill in the art would have replaced Yow's face detection stage with the Rowley face detection stage to overcome Yow's shortcoming of being unable to detect faces that are too small. Pet. 28 (citing Ex. 1003, 732).

17

IPR2018-00688
Patent 6,463,163 B1

Patent Owner contends that the Petition provides a functional analysis
of the means-plus-function limitations of claim 15, but does not perform a
structural analysis.  Prelim. Resp. 10–15.  According to Patent Owner, the
Petition does not establish that the identified structure for the claimed "first
filtering means," "second filtering means," and "image pattern detector" is
the same as or equivalent to the corresponding structure disclosed in the
Specification of the '163 patent.  *Id.*

The Petition identifies the structure in the Specification corresponding
to the claimed "first filtering means" as a linear matched filter, and identifies
the equivalent structure in Yow as a matched bandpass filter.  Pet. 13–14,
27.  The Petition identifies the structure in the Specification corresponding
to the claimed "second filtering means" as a non-linear filter, and identifies
the equivalent structure in Yow as a non-linear edge detector.  Pet. 14, 27.

At this stage of the proceeding, the Petition establishes sufficiently
that Yow teaches "first filtering means" and "second filtering means" as
disclosed in the Specification and their equivalents, as claimed.  We have
not construed the "image pattern detector" as a means-plus-function
limitation at this stage of the proceeding, as discussed in our claim
construction above.  Patent Owner's contention regarding the claimed
"image pattern detector" is not commensurate with the scope of the claim.

Patent Owner contends that the "Petition and Dr. Essa have failed to
proffer any explanation or persuasive evidence demonstrating that it would
have been obvious to modify Yow as proposed by Petitioner."  Prelim. Resp.
21.  Petitioner and Dr. Essa explained that combining Yow's pre-filtering
stage to select a limited number of candidate regions, with the well-known

18

IPR2018-00688
Patent 6,463,163 B1

Rowley neural network face detection stage, results in better detection of small faces.  *See* Pet. 28; Ex. 1016 ¶ 121.

At this stage of the proceeding, the Petition and supporting evidence establish a reasonable likelihood that claim 15 would have been obvious over Yow.

Claim 16 recites "said first filtering means includes a linear matched filter configured to perform a linear convolution operation on said input image with a convolution kernel, said convolution kernel being a numerical representation of said reference image pattern, said reference image pattern being representative of a human face."  Petitioner contends Yow discloses this limitation in disclosing a linear matched bandpass filter to identify six facial features that each resembles a dark elongated bar on a light background.  Pet. 28 (citing Ex. 1003, 716; Ex. 1016 ¶ 122).

Claim 19 recites "said second filtering means includes a non-linear filter coupled in series to said first filtering means, said non-linear filter configured to select said candidate region by comparing a computed contrast value from a sub-region of each identified image region to a threshold contrast value."  Petitioner contends Yow discloses this limitation in describing an edge detector to perform Canny edge detection, which compares a contrast value with a threshold value.  Pet. 29 (citing Ex. 1003, 722; Ex. 1016 ¶ 124).

We have analyzed Petitioner's evidence and determine that it supports findings that the additional limitations of claims 16 and 19 are taught by Yao.  Thus, on the current record, there is a reasonable likelihood that Petitioner would prevail in showing that claims 16 and 19 would have been

19

IPR2018-00688
Patent 6,463,163 B1

obvious over Yow.  We note that Patent Owner does not present separate
arguments for these dependent claims.

### C. Obviousness Over Yow and Crowley

Petitioner, relying on the Declaration of Dr. Irfan Essa (Ex. 1016),
challenges claims 4 and 7 as obvious over Yow and Crowley.  Pet. 29–32.

### 1. Crowley (Ex. 1007)

Crowley discloses a face detection process that operates by
normalized correlation of an average face image with several levels of a
Gaussian pyramid.  Ex. 1007, 25.  The average face image has been formed
by acquiring a number of face images of laboratory members with a neutral
background, normalizing their position and orientation, then computing an
average image.  *Id*.  A face detection signal is given by a threshold on
normalized correlation with the average face.  *Id*.

### 2. Analysis of Claims 4 and 7

Claim 4 recites "calculating said preselected reference data utilizing a
plurality of training images containing said target image pattern of interest,
thereby forming a convolution kernel."  Petitioner contends Crowley teaches
this limitation in teaching an average face image that has been formed by
acquiring a number of face images of laboratory members and computing an
average image.  Pet. 31–32 (citing Ex. 1007, 25).

Petitioner contends that Yow teaches using a correlation filter for
correlating with an input image, and Crowley teaches a normalized
correlation filter obtained from a plurality of training images.  Pet. 30–31.
Petitioner contends that a person of ordinary skill in the art would have
known that replacing the known correlation filter of Yow with the known
normalized correlation filter of Crowley would yield the predictable result of

20

IPR2018-00688
Patent 6,463,163 B1

a correlation image that more accurately matches features found in a variety
of faces.  Pet. 31 (citing Ex. 1016 ¶ 106).

Claim 7 recites "said step of selecting said candidate region further
includes comparing correlation values associated with each of said potential
candidate regions to a threshold correlation value."  Petitioner contends that
Crowley teaches this limitation in teaching that a face detection signal is
given by a threshold on normalized correlation with the average face.
Pet. 32 (citing Ex. 1007, 25).  Petitioner contends that a person of ordinary
skill in the art would have realized the advantages of using threshold values
taught by Crowley for selecting a subset of the regions of local correlation
maxima in Yow's approach as the only regions that could contain a face.
*Id*. (citing Ex. 1016 ¶ 110).

Patent Owner contends that Yow's face detection algorithm uses a
filter that represents a dark elongated bar on a light background, while
Crowley uses an average face image.  Prelim. Resp. 23 (citing Ex. 1003,
216; Ex. 1007, 25).  Patent Owner contends that if Crowley's average face
image were substituted for Yow's filter, the output of the combination would
not indicate the presence and location of every dark elongated bar on a light
background in the image, which Yow's algorithm relies on to select
individual facial features.  *Id*.

Patent Owner's contention does not address the combination proposed
by Petitioner, that Yow's pre-filtering stage can be implemented using
Crowley's correlation filter to predictably yield a correlation image as taught
by Crowley.  Pet. 31.  Petitioner's declarant Dr. Essa testifies that simply
replacing Yow's correlation filter with Crowley's correlation filter leads to

21

IPR2018-00688
Patent 6,463,163 B1

the predictable result of a correlation image that more accurately highlights

matches with features found in a variety of actual faces.  Ex. 1016 ¶ 106.

At this stage of the proceeding, Petitioner has established sufficiently

that the combination of Yow and Crowley teaches the limitations of claims 4

and 7.  We also determine the Petition and supporting evidence establishes a

reasonable likelihood that claims 4 and 7 would have been obvious over the

combination of Yow and Crowley.

### D.  Obviousness Over Yow Thesis

Petitioner, relying on the Declaration of Dr. Irfan Essa (Ex. 1016),

challenges claims 1–3, 6, 7, 15, 16, and 19 as obvious over the Yow Thesis.

Pet. 33–50.

### 1.  Yow Thesis (Ex. 1004)

Yow discloses a feature-based algorithm for detecting faces that, in a

preattentive stage, uses spatial filters to detect feature points from the image,

and uses geometric and gray level constraints to group the feature points into

face candidates.  Ex. 1004, Abstract, 63–64.  The algorithm then, in an

attentive stage, evaluates the likelihood that each candidate is a face.

Ex. 1004, Abstract, 64.

The preattentive stage detects feature points in two steps.  Ex. 1004,

63.  First, a list of interest points is found from the image using the response

of Gaussian derivative filters.  *Id*. at 63–64.  Next, edges around each

interest point are examined and linked based on their proximity, and

similarity in orientation and strength.  *Id*. at 64.  Each detected interest point

is checked to see if there is a pair of roughly parallel edges of similar length

and proportional separation, and if so, is flagged as a feature point.  *Id*.  In

22

IPR2018-00688
Patent 6,463,163 B1

the attentive stage, the feature points and associated feature regions are actively grouped using a model of the face. *Id.*

Figure 2.4 below shows an example of images produced during the first step of the preattentive stage.



In Figure 2.4 above, the left column shows a first input image and a second input image. Ex. 1004, 33–34. The center column shows the outputs of convolving each input image with a Gaussian derivative filter of a matching scale and orientation ("matched filtering") to obtain a correlation image. *Id.* The right column shows the resulting interest points detected in each image. *Id.*

Figures 2.9(a)–(d) below show an example of images produced during the second step of the preattentive stage. Ex. 1004, 43–44.

23

IPR2018-00688
Patent 6,463,163 B1



(a)                                        (b)

(c)                                        (d)

Figure 2.9(a) above shows an image and corresponding interest points
obtained from matched bandpass filtering. *Id*. at 44.  Figure 2.9(b) shows
edges detected in the image, and Figure 2.9(c) shows detected edges next to
detected feature points that are linked in an approximately horizontal

24

IPR2018-00688
Patent 6,463,163 B1

orientation. *Id*. Figure 2.9(d) shows the image with the detected feature points. *Id*.

### 2. *Analysis of claims 1–3, 6, 7, 15, 16, and 19*

Petitioner contends that the Yow thesis qualifies as a printed publication under 35 U.S.C. § 102(a), because the Yow thesis was made publicly available before April 22, 1998, which is prior to the January 11, 1999, filing date of the '163 patent. Pet. 33 (citing Ex. 1011). According to Petitioner, the Yow thesis was approved on March 17, 1998. *Id*. Petitioner also contends that the author of the Yow thesis had been approved for the award of a Ph.D. degree before April 22, 1998. Pet. 33 (citing Ex. 1012). According to Petitioner, Exhibits 1011 and 1012 establish that the Yow thesis was deposited and catalogued in the Cambridge University Library before April 22, 1998. *Id*. Petitioner also contends that several publications from 1998 and 1999 cite to other 1998 University of Cambridge Ph.D. theses, which creates an inference that the Yow thesis was also publicly accessible in 1998. Pet. 33–34 (citing Ex. 1013, 18, 20; Ex. 1014, 244; Ex. 1015, 219).

Patent Owner contends that an entry showing that the Yow thesis was approved on March 17, 1998, does not establish that the Yow thesis was publicly available as of that date. Prelim. Resp. 28. Patent Owner also contends that showing the author had been approved for the award of the Ph.D. degree, and the thesis had been required to be deposited in the University Library does not establish that the Yow thesis was publicly available as of that date. Prelim. Resp. 28–29. Patent Owner contends that showing that other publications cite to other 1998 University of Cambridge

IPR2018-00688
Patent 6,463,163 B1

Ph.D. theses does not establish that the Yow thesis was publicly available
before January 11, 1999.  Prelim. Resp. 29.

When addressing the issue of whether an uncatalogued, unshelved
thesis is a "publication," the Federal Circuit stated that "delays within a
university library . . . are of utmost significance because public access to the
document is thereby deferred." *Application of Bayer*, 568 F.2d 1357, 1362
(CCPA 1978).  In a subsequent case, the Federal Circuit "conclude[d] that
competent evidence of the general library practice may be relied upon to
establish an approximate time when a thesis became accessible." *In re Hall*,
781 F.2d 897, 899 (Fed. Cir. 1986).  The Federal Circuit stated that
affidavits from a librarian showed the librarian "was relying on his library's
general practice for indexing, cataloging, and shelving theses in estimating
the time it would have taken to make the dissertation available to the
interested public," and held that the dissertation was available as a printed
publication. *Id*. at 899–90.

Although Petitioner provides evidence of the date of approving the
Yow thesis, and the date of depositing the Yow thesis with a library
(Exs. 1011 and 1012), Petitioner does not provide evidence of the "library's
general practice for indexing, cataloging, and shelving theses," nor how
Petitioner relied on the "library's general practice for indexing, cataloging,
and shelving theses in estimating the time it would have taken to make the
[Yow thesis] available to the interested public." *Hall*, 781 F.2d at 899.

At this stage of the proceeding, we have concerns that Petitioner has
not established sufficiently that the Yow thesis is available as a printed
publication.  Nevertheless, we institute a trial on this ground pursuant to the
Supreme Court's direction that a final written decision under 35 U.S.C.

26

IPR2018-00688
Patent 6,463,163 B1

§ 318(a) must decide the patentability of all claims challenged in the petition. *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1360 (2018).

### E. Obviousness Over Yow Thesis and Crowley

Petitioner, relying on the Declaration of Dr. Irfan Essa, challenges claim 4 as obvious over the Yow Thesis and Crowley. Pet. 50–51.

At this stage of the proceeding, we have concerns that Petitioner has not established sufficiently that the Yow thesis is available as a printed publication, as discussed above, but proceed on this ground pursuant to *SAS Institute*.

### F. Obviousness Over Kosugi

Petitioner, relying on the Declaration of Dr. Irfan Essa, challenges claims 1, 4, 6, and 7 as obvious over Kosugi. Pet. 33–50.

### 1. Kosugi (Ex. 1005)

Kosugi discloses an image recognition apparatus including rough search unit 100 that scans a rough pixelation of an unknown image using a rough pixelation of a target image to search for a location in the unknown image that matches the target image. Ex. 1005 ¶¶ 9–13, Figs. 1 and 5. For example, the location can be detected when a Euclidian distance between the rough unknown image and the rough target image is a minimum value, and the value is below a threshold. Ex. 1005 ¶¶ 13, 18. After the general location is known, detailed search unit 200 performs a detailed search of the general location using detailed pixelations of the unknown image and the target image. Ex. 1005 ¶¶ 20–24, Figs. 1 and 6. The output of the detailed search unit is sent to recognition unit 300. Ex. 1005 ¶ 26, Fig. 1.

27

IPR2018-00688
Patent 6,463,163 B1

### 2. Analysis of claims 1, 4, 6, and 7

Claim 1 recites "receiving said input image."  Petitioner contends this limitation is disclosed by Kosugi's description of an object image targeted for recognition.  Pet. 55 (citing Ex. 1005 ¶ 6).

Claim 1 recites "correlating said input image with preselected reference data to derive a correlation image, said preselected reference data being representative of said target image pattern of interest, said correlation image having image data indicative of correlations between said input image and said preselected reference data."  Petitioner contends this limitation is taught by Kosugi's teaching of a rough search unit to derive distances between locations in a rough pixelated input image and a rough pixelated target image, where the smaller the distance, the closer the match between the input image and the target image.  Pet. 55–57 (citing Ex. 1005 ¶¶ 6, 1–14; Figs. 2 and 5).  Petitioner contends that the distance is calculated for each location of the input image, and the result is stored in a position-size-distance accumulation unit along with M x N position data in the input image.  Pet 57 (citing Ex. 1005 ¶¶ 13–14).

According to Petitioner, although Kosugi does not disclose a correlation image explicitly, it would have been obvious to create such an image using the M x N matrix of distance data stored in the accumulation unit for each location in the input image.  Pet. 57 (citing Ex. 1016 ¶ 168).  Dr. Essa testifies that the distance of Kosugi is a correlation value, because the smaller the distance, the greater the match.  Ex. 1016 ¶ 168.  Dr. Essa testifies that simply generating a matrix containing the inverse of the distance for each input image location would constitute a correlation image. *Id*.

Dawson Decl. Exh. B, Page 70

IPR2018-00688
Patent 6,463,163 B1

Claim 1 recites

> selecting a candidate region of said input image having a
> likelihood of containing said target image pattern of interest on a
> basis of correlating said input image with said preselected
> reference data, said step of selecting including identifying
> potential candidate regions of said input image based on
> detecting a local maximum in said correlation image and
> screening said potential candidate regions by analyzing a
> grayscale characteristic of said potential candidate regions, said
> screening including discarding said potential candidate regions
> that do not satisfy a predetermined criterion with respect to said
> grayscale characteristic in order to increase a probability that said
> selected candidate region contains said target image pattern of
> interest.

Petitioner contends Kosugi teaches this limitation in disclosing a rough
search unit that identifies potential candidate regions by detecting locations
of minimum distances.  Pet. 58 (citing Ex. 1005 ¶ 18).  According to
Petitioner, a skilled artisan would have understood that a minimum distance
corresponds to a maximum correlation value.  Pet. 58 (citing Ex. 1016
¶ 169).  Petitioner further contents that Kosugi's process further compares
the minimum distance to a threshold, and further screens potential candidate
regions using a detailed search unit that analyzes the grayscale characteristic
of intensity value to discard regions not close in grayscale values to a finer-
pixelated target image.  Pet 58–60 (citing Ex. 1005 ¶¶ 5, 24, 26; Figs. 3 and
6).

Patent Owner contends that the only support for Petitioner's
obviousness argument regarding Kosugi's teaching of a correlation image is
a citation to the Declaration of Dr. Essa.  Prelim. Resp. 32–33 (citing
Pet. 57; Ex. 1016 ¶ 168).  According to Patent Owner, Dr. Essa only
provides conclusory statements about what Kosugi discloses.  Pet. 33.

Dawson Decl. Exh. B, Page 71

IPR2018-00688
Patent 6,463,163 B1

Dr. Essa testifies that

> While Kosugi does not explicitly disclose a correlation image, it
> would have been obvious to create such an image using the
> existing matrix, already stored in the accumulation unit 108 and
> containing, for each location in the input image, the distances in
> intensity space between features in the reference data and in the
> unknown image.  Because the smaller the distance, the greatest
> the match (correlation value) between the input and target
> images, simply generating a matrix—easily obtained from the
> existing stored matrix—containing for example the inverse of the
> distance for each location in the input image would constitute a
> "correlation image" and would have been obvious in my view.

Ex. 1016 ¶ 168.

For purposes of this Decision, we credit Dr. Essa's testimony and
determine that at this stage of the proceeding, Petitioner and Dr. Essa have
articulated sufficient reasoning to support the conclusion that one of
ordinary skill would have obtained a correlation image from the stored
matrix of distances between locations in an input image and a target image
taught by Kosugi.  For purposes of this Decision, we determine the Petition
and supporting evidence adequately establishes a reasonable likelihood that
Kosugi renders claim 1 obvious.

Claim 4 recites "calculating said preselected reference data utilizing a
plurality of training images containing said target image pattern of interest,
thereby forming a convolution kernel."  Petitioner contends Kosugi discloses
this limitation in teaching taking an average value for a plurality of face
images as the target image.  Pet. 60 (citing Ex. 1005 ¶ 11).  We have
analyzed Petitioner's evidence and determine that it supports a finding that
the additional limitation of claim 4 is taught by Kosugi.  Thus, on the current
record, there is a reasonable likelihood that Petitioner would prevail in
showing that claim 4 would have been obvious over Kosugi.  We note that

30

IPR2018-00688
Patent 6,463,163 B1

Patent Owner does not present separate arguments for these dependent
claims.

Claim 6 recites "said step of correlating said input image with said
preselected reference data includes removing an undesired image
characteristic from said input image, said removal being effectuated by a
mathematical property of said preselected reference data."  Petitioner
contends Kosugi discloses this limitation in disclosing removing high
frequency noise from the input image by performing rough pixelation.
Pet. 60 (citing Ex. 1005 ¶ 34; Ex. 1016 ¶ 181).

Patent Owner contends that Petitioner does not address how Kosugi's
removal of high-frequency noise by rough pixelation of the image teaches
that noise removal is "effectuated by a mathematical property of said
preselected reference data" as claimed.  Prelim. Resp. 37–28.  We disagree
with Patent Owner.  Kosugi discloses that the rough pixelation of the target
image is performed by obtaining an M x N block of pixels, and that rough
pixelation of the input image is performed by obtaining a P x Q block of
pixels.  Ex. 1012 ¶¶ 10, 12, Fig. 5.  Kosugi discloses comparing an M x N
region of the P x Q input image block with the M x N target image block.
Ex. 1005 ¶ 13, Fig 5.  This evidence supports a finding that the additional
limitation of claim 6 is taught by Kosugi.  Thus, on the current record, there
is a reasonable likelihood that Petitioner would prevail in showing that claim
6 would have been obvious over Kosugi.

Claim 7 recites "said step of selecting said candidate region further
includes comparing correlation values associated with each of said potential
candidate regions to a threshold correlation value."  Petitioner contends that
Kosugi teaches this limitation in teaching comparing the distances in

31

IPR2018-00688
Patent 6,463,163 B1

intensity space with a threshold value.  Pet. 61 (citing Ex. 1005 ¶ 18).
Dr. Essa testifies that a person of ordinary skill in the art would have
realized that correlation values would be represented by inverses of
distances, such that comparing correlation values to a threshold would have
been obvious given that Kosugi teaches comparing distances to a threshold.
Ex. 1016 ¶ 183.

Patent Owner contends that the only support for Petitioner's
obviousness argument regarding comparing correlation values to a threshold
is a conclusory statement from Dr. Essa.  Prelim. Resp. 33–34.  Dr. Essa
testifies that

> in my opinion one of ordinary skill in the art would have realized
> that locations of minimum distance in intensity space are
> locations of maximum correlation value, such that correlation
> values would be represented, for example, as inverses of the
> distances.  It would have been obvious to a person of ordinary
> skill in the art to compare correlation values to a threshold, given
> that Kosugi discloses comparing distances in intensity space to a
> threshold value, in my view.

Ex. 1016 ¶ 183.  For purposes of this Decision, we credit Dr. Essa's
testimony and determine that at this stage of the proceeding, Petitioner and
Dr. Essa have articulated sufficient reasoning to support the conclusion of
obviousness.  Thus, on the current record, there is a reasonable likelihood
that Petitioner would prevail in showing that claim 7 would have been
obvious over Kosugi.

### G. Obviousness Over Kosugi and Fang

Petitioner, relying on the Declaration of Dr. Irfan Essa, challenges
claims 2, 3, 9–11, and 14 as obvious over Kosugi and Fang.  Pet. 61–67.

32

IPR2018-00688
Patent 6,463,163 B1

### 1. Fang (Ex. 1006)

Fang discloses a system for fast eye localization that is based on filters utilizing high horizontal contrast density of the eye region to determine eye positions in a grayscale image of a human face.  Ex. 1006, 2, Fig. 3.

### 2. Analysis of claims 2 and 3

Claim 2 recites "said step of screening said potential candidate regions further includes comparing a contrast value calculated for a sub-region of each potential candidate region to a threshold contrast value, said target image pattern of interest being a human face."  Petitioner contends Fang discloses this limitation in disclosing screening images for localizing a sub-region, namely, the eye sub-region, by comparing a contrast value to a threshold contrast value.  Pet. 64 (citing Ex. 1006, 2; Figs. 2 and 3). Petitioner contends that a person of ordinary skill in the art would have realized the advantages of using contrast values for further screening candidate regions, and would have replaced Kosugi's screening criterion with Fang's contrast filter to yield the predictable result of more accurate screening of potential face candidates.  Pet. 63 (citing Ex. 1016 ¶ 176).

Claim 3 recites said "step of comparing said contrast value is a step of comparing said contrast value from said sub-region of said each potential candidate region that is located in an upper-half portion of said each potential candidate region."  Petitioner contends Fang discloses this limitation in disclosing a step of screening images for localizing an upper-half portion, namely, the eye sub-region, of a potential candidate region, by comparing a contrast value to a threshold.  Pet. 64 (citing Ex. 1006, 8).

We have analyzed Petitioner's evidence and determine that it supports a finding that the additional limitations of claims 2 and 3 are taught by Fang.

33

IPR2018-00688
Patent 6,463,163 B1

Thus, on the current record, there is a reasonable likelihood that Petitioner would prevail in showing that claims 2 and 3 would have been obvious over Kosugi and Fang.  We note that Patent Owner does not present separate arguments for these dependent claims.

### H.  Obviousness Over Kosugi, Fang, and Rowley

Petitioner, relying on the Declaration of Dr. Irfan Essa, challenges claims 15 and 19 as obvious over Kosugi, Fang, and Rowley.  Pet. 67–70.

Claim 15 recites "first filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern, said filtering means being configured to correlate said input image with a reference image pattern."  Petitioner contends Kosugi discloses this limitation in disclosing a rough search unit as discussed in Petitioner's obvious analysis of claim 1 over Kosugi.  Pet. 69 (citing Pet. 55–59).  According to Petitioner, Kosugi's rough search unit involves a linear filter that calculates distances between the input and target images in intensity space.  Pet. 69 (citing Ex. 1016 ¶ 192).  As explained above, a linear filter is corresponding structure for the first filter means.  Thus, we reject Patent Owner's argument (Prelim. Resp. 17–18), that Petitioner does not identify adequate corresponding structure in Kosugi.

Claim 15 recites "second filtering means operatively coupled to and operatively following said first filtering means for screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern, said second filtering means being configured to examine a grayscale characteristic of said image regions."  Petitioner contends Fang's contrast filter is a non-linear filter.  Pet. 69.  Dr. Essa testifies that in "my view one of ordinary skill in the art would have been

34

IPR2018-00688
Patent 6,463,163 B1

motivated to replace Kosugi's grayscale characteristic analysis in the second
step with Fang's contrast filter, and have a reasonable expectation of success
in so doing." Ex. 1016 ¶ 193. As explained above, a non-linear filter is
corresponding structure for the second filter means. Thus, we reject Patent
Owner's argument (Prelim. Resp. 18), that Petitioner does not identify
adequate corresponding structure in Kosugi.

Claim 15 recites "an image pattern detector connected to and
operatively following said second filtering means to receive said candidate
region, said image pattern detector designed to analyze said candidate
region." Petitioner contends Kosugi teaches an image pattern detector in
teaching a recognition unit. Pet. 70 (citing Ex. 1005 ¶¶ 26–28, Figs. 1, 4,
and 6). Petitioner contends Rowley teaches a neural network face detector.
Pet. 70 (citing Ex. 1008). Petitioner contends that using Rowley's face
detector in place of the face detector of Kosugi would have been obvious.
Pet. 68 (citing Ex. 1016 ¶ 196). Dr. Essa testifies that using Rowley's neural
network face detector in place of Kosugi's recognition unit face detector
yields the predictable result of more accurate face detection. Ex. 1016
¶ 196.

Patent Owner argues that Petitioner does not identify sufficient
structure in Kosugi and Rowley corresponding to an image pattern detector,
assuming that this limitation is in means-plus-function format. Prelim.
Resp. 18. As explained above, we do not construe image pattern detector to
be a means-plus-function limitation. Accordingly, Patent Owner's argument
is not commensurate in scope with the claim language.

Claim 19 recites "said second filtering means includes a non-linear
filter coupled in series to said first filtering means." Petitioner contends

Dawson Decl. Exh. B, Page 77

IPR2018-00688
Patent 6,463,163 B1

Fang teaches this limitation in teaching comparing a contrast value from a sub-region to a threshold value.  Pet. 70 (citing Ex. 1006, 8).

For claims 15 and 19, we note that Patent Owner does not present separate arguments for these claims, but rather, relies on arguments presented for claim 1, namely, that Kosugi does not teach a correlation image as claimed.  *See* Prelim. Resp. 32.  We have addressed these arguments in our analysis of claim 1 above.

We have analyzed Petitioner's evidence and determine that it supports a finding that the additional limitation of claims 15 and 19 are taught by Fang.  Thus, on the current record, there is a reasonable likelihood that Petitioner would prevail in showing that claims 15 and 19 would have been obvious over Kosugi, Fang, and Rowley.

## III.  CONCLUSION

We have considered the information presented in the Petition and Preliminary Response and determine that there is a reasonable likelihood that Petitioner would prevail with respect to at least one claim challenged in the Petition.  *See* 35 U.S.C. § 314(a); 37 C.F.R. § 42.108.

## IV.  ORDER

Accordingly, it is

ORDERED that pursuant to 35 U.S.C. § 314, an *inter partes* review of claims 1–4, 6, 7, 15, 16, and 19[3] of U.S. Patent No. 6,463,163 B1 is instituted on all grounds.

---

[3] Because Patent Owner filed a statutory disclaimer for claims 9–14, we do not institute on challenged claims 9–11 and 14.  *See* Ex. 2002.

Dawson Decl. Exh. B, Page 78

IPR2018-00688
Patent 6,463,163 B1

FURTHER ORDERED that pursuant to 35 U.S.C. 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; the trial commences on the entry date of this Decision.

37

IPR2018-00688
Patent 6,463,163 B1

PETITIONER:

David L. Fehrman
Matthew I. Kreeger
David T. Yang
Sorin G. Zaharia
dfehrman@mofo.com
mkreeger@mofo.com
dyang@mofo.com
szaharia@mofo.com

PATENT OWNER:

Kurt L. Glitzenstein
John C. Phillips
Chris Marchese
Kim Leung
IPR16713-0019IP1@fr.com
PTABInbound@fr.com
Glitzenstein@fr.com
phillips@fr.com
marchese@fr.com
leung@fr.com

38