1   VINCENT J. BELUSKO (CA SBN 100282)
    VBelusko@mofo.com
2   HECTOR G. GALLEGOS (CA SBN 175137)
    HGallegos@mofo.com
3   JONATHAN M. SMITH (CA SBN 292285)
    JonathanSmith@mofo.com
4   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
5   Los Angeles, California  90017-3543
    Telephone: 213.892.5200
6   Facsimile: 213.892.5454

7   JACK W. LONDEN (CA SBN 85776)
    JLonden@mofo.com
8   DIANA B. KRUZE (CA SBN 247605)
    DKruze@mofo.com
9   SHAELYN DAWSON (CA SBN 288278)
    Shaelyndawson@mofo.com
10  MORRISON & FOERSTER LLP
    425 Market Street
11  San Francisco, California  94105-2482
    Telephone: 415.268.7000
12  Facsimile: 415.268.7522

13  Attorneys for Defendants
    NIKON CORPORATION, SENDAI
14  NIKON CORPORATION, and NIKON INC.

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17                  WESTERN DIVISION

18

19  CARL ZEISS AG and ASML          Case No. 2:17-cv-07083 RGK (MRWx)
    NETHERLANDS, B.V.,
20                                  **NIKON CORPORATION, SENDAI**
                  Plaintiffs,       **NIKON CORPORATION, AND**
21                                  **NIKON INC.'S  MEMORANDUM**
         v.                         **OF CONTENTIONS OF FACT AND**
22                                  **LAW**
    NIKON CORPORATION, SENDAI
23  NIKON CORPORATION, and          Trial:        November 6, 2018
    NIKON INC.,                     Time:         9:00 a.m.
24                                  Courtroom:    850, 8th Floor
                  Defendants.
25                                  Hon. R. Gary Klausner

26

27

28

# TABLE OF CONTENTS

**Page**

I.    PLAINTIFFS' CLAIMS [L.R. 16-4.1(**A**)-(**C**)].................................................2

    A.    Direct Infringement Under 35 U.S.C. § 271(a) ...............................3

        1.    Elements Required to Prove Infringement Under 35 U.S.C. § 271(a) .........................................................................3

        2.    Evidence that Nikon is Not Liable for Infringement Under 35 U.S.C. § 271(a) ...................................................4

    B.    Induced Infringement Under 35 U.S.C. § 271(b) ..........................28

        1.    Elements Required to Prove Inducement Under 35 U.S.C. § 271(b).......................................................................28

        2.    Evidence that Nikon Is Not Liable for Induced Infringement Under 35 U.S.C. § 271(b).................................29

    C.    Contributory Infringement Under 35 U.S.C. § 271(c).....................31

        1.    Elements Required to Prove Infringement Under 35 U.S.C. § 271(c) .......................................................................32

        2.    Evidence that Defendants Are Not Liable for Contributory Infringement Under 35 U.S.C. § 271(c) ............32

II.   NIKON'S DEFENSES [L.R. 16-4.1(**D**)] ......................................................35

    A.    Failure to State a Claim................................................................35

        1.    Legal Standard...................................................................35

        2.    Evidence that Plaintiffs Have Failed to State a Claim ...........35

    B.    Non-infringement.........................................................................36

    C.    Invalidity ....................................................................................36

        1.    Invalidity Under 35 U.S.C. § 112....................................36

        2.    Invalidity Under 35 U.S.C. §§ 102 and 103 ....................43

    D.    Estoppel......................................................................................47

        1.    Prosecution History Estoppel ...........................................48

        2.    Other Estoppel .................................................................49

    E.    Marking ......................................................................................49

        1.    Marking Elements.............................................................49

        2.    Nikon's Marking Position ................................................50

    F.    Limitation on Recovery of Costs ..................................................51

        1.    Limitation on Recovery of Costs Elements............................51

        2.    Evidence in Support of Limitation on Recovery of Costs Defense ...................................................................51

    G.    No Entitlement to Injunctive Relief ..............................................51

        1.    Legal Standard for Injunctive Relief .......................................51

Case No. 2:17-cv-07083-RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
la-1397638

i

# TABLE OF CONTENTS
## (continued)

**Page**

      2.    Evidence in Support of No Entitlement to Injunctive Relief Defense ................................................................ 52

  H.  No Enhanced Damages ................................................................ 52

      1.    No Enhanced Damages Elements ............................................. 52

      2.    Evidence in Support of No Enhanced Damages Defense ........ 53

  I.   Lack of Personal Jurisdiction Over Sendai Nikon Corp. .................... 53

      1.    Personal Jurisdiction Elements ................................................ 53

      2.    Evidence in Support of Lack of Personal Jurisdiction Defense ...................................................................................... 54

III.  EVIDENTIARY ISSUES [L.R. 16-4.1(**H**)] ......................................... 56

  A.  Issues Relating to Motions *in Limine* ............................................. 56

  B.  Issues Relating to Sealing Confidential Information ........................ 57

IV.  ISSUES OF LAW [L.R. 16-4.1(**I**)] ..................................................... 57

  A.  Claim Construction ........................................................................... 57

      1.    '163 Patent .............................................................................. 58

      2.    '312 Patent .............................................................................. 63

      3.    '017 Patent .............................................................................. 64

      4.    '574 Patent .............................................................................. 66

      5.    '335 Patent .............................................................................. 67

  B.  Plaintiffs' Are Not Entitled to Injunctive Relief ............................. 68

  C.  Plaintiffs' Are Not Entitled to Enhanced Damages ......................... 68

V.   DAMAGES ........................................................................................... 69

  A.  Damages Generally ........................................................................... 69

  B.  Nikon's Reasonable Royalty Analysis ............................................. 69

VI.  BIFURCATION OF ISSUES [L.R. 16-4.3] ......................................... 73

VII.  MOTION TO STAY ............................................................................. 73

VIII.  JURY TRIAL [L.R. 16-4.4] .................................................................. 74

IX.  ATTORNEYS' FEES [L.R. 16-14.5] ................................................... 74

X.   ABANDONMENT OF ISSUES [L.R. 16-4.6] ..................................... 74

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Am. Med. Sys. v. Med. Eng'g Corp.*,
6 F.3d 1523 (Fed. Cir. 1993) ................................................................................. 50

*Arctic Cat Inc. v. Bombardiaer Rec. Prods.*,
876 F.3d 1350 (Fed. Cir. 2017), *cert. denied*, No. 17-1645,
2018 WL 2766092 (U.S. Oct. 1, 2018) ............................................................. 50

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
377 U.S. 476 (1964) ...................................................................................... 32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 35

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 35

*Biomedino, LLC v. Water Techs. Corp.*,
490 F.3d 946 (Fed. Cir. 2007) ................................................................. 73, 74

*Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*,
229 F.3d 1120 (Fed. Cir. 2000) ........................................................................ 44

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) ......................................................................... 3

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) ........................................................................ 29

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ................................................................................. 51, 68

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
344 F.3d 1359 (Fed. Cir. 2003) ..................................................................... 4, 48

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002) ................................................................................... 4, 48

Case No. 2:17-cv-07083-RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
la-1397638

iii

*Freedman Seating Co. v. Am. Seating Co.*,
   420 F.3d 1350 (Fed. Cir. 2005) ............................................................... 3

*Georgia-Pacific v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970), *modified & aff'd*, 446 F.2d 295
   (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971) .................................. 70, 71, 72

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ........................................................................... 28, 29

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ......................................................................... 53, 68

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ................................................................ 54

*Inamed Corp. v. Kuzmak*,
   249 F.3d 1356 (Fed. Cir. 2001) .............................................................. 54

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .............................................................................. 54

*IPX Holdings, LLC v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005) .............................................................. 42

*Ivera Med. Corp. v. Hospira, Inc.*,
   801 F.3d 1336 (Fed. Cir. 2015) .............................................................. 43

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) .............................................................. 32

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) .......................................................... 3, 57, 73, 74

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996) ................................................................ 50

*Multiform Desiccants, Inc. v. Medzam Ltd.*,
   133 F.3d 1473 (Fed. Cir. 1998) .............................................................. 3

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014) ......................................................................... 40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ........................................................................ 57, 58

*OSI Sys., Inc. v. Instrumentarium Corp.*,
  892 A.2d 1086 (Del. Ch. 2006) ........................................................................ 73

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) .......................................................................... 53, 54

*Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*,
  871 F.2d 1082 (Fed. Cir. 1989) ........................................................................ 73

*Robert Bosch, LLC v. Snap-On Inc.*,
  769 F.3d 1094 (Fed. Cir. 2014) ........................................................................ 40

*Ruiz v. A.B. Chance Co.*,
  234 F.3d 654 (Fed. Cir. 2000) .......................................................................... 43

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ........................................................................ 36

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ............................................................................................ 4

*Wordtech Sys. v. Integrated Network Sols., Inc.*,
  609 F.3d 1308 (Fed. Cir. 2010) ........................................................................ 69

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) .......................................................................................... 54

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
la-1397638

v

**Statutes**

35 U.S.C.

§ 102 ...................................................................................................*passim*
§ 103 ...................................................................................................*passim*
§ 112 .................................................................................................... 36, 42
§ 112, ¶ 1 ...................................................................................................... 36
§ 112, ¶ 2 .............................................................................................. 36, 40
§ 112, ¶ 6 ...........................................................................................*passim*
§ 271(a) ............................................................................................... 2, 3, 4
§ 271(b) ........................................................................................... 2, 28, 29
§ 271(c) ........................................................................................... 2, 31, 32
§ 284 ............................................................................................................ 69
§ 285 ............................................................................................................ 73
§ 287 ...................................................................................................... 50, 73
§ 287(a) ...................................................................................................... 50
§ 287(b)(2) .................................................................................................. 50
§ 288 ............................................................................................................ 51

Cal. Civ. Proc. Code
§ 410.10 ...................................................................................................... 54

**Other Authorities**

Fed. R. Civ. P. 54(d)(1) ...................................................................... 74

Civ. Local Rule
16-4.1 ............................................................................................................ 1
16-4.1(a)-(c) .............................................................................................. 2
16-4.1(d) .................................................................................................... 35
16-4.1(h) .................................................................................................... 56
16-4.1(i) ...................................................................................................... 57
16-4.3 .......................................................................................................... 73
16-4.4 .......................................................................................................... 74
16-4.6 .......................................................................................................... 74
16-10(c) ........................................................................................................ 1
16-14.5 ........................................................................................................ 74

Pursuant to Local Rule 16-4, Defendants Nikon Corporation, Sendai Nikon Corporation, and Nikon Inc. (when discussed together, "Nikon") respectfully submit the following Memorandum of Contentions of Fact and Law, addressing the contentions of the parties in advance of the trial scheduled to commence on November 6, 2018.[1]

## BACKGROUND

Nikon Corporation is a corporation organized under the laws of Japan having a principal place of business at Shinagawa Intercity Tower C, 2-15-3, Konan, Minato-ku, Tokyo 108-6290, Japan.

Nikon Inc. is a corporation organized under the laws of New York having a principal place of business at 1300 Walt Whitman Road, Melville, NY 11747-3064.

Sendai Nikon Corporation ("Sendai Nikon") is a corporation organized under the laws of Japan having a principal place of business at 277, Aza-hara, Tako, Natori, Miyagi 981-1221, Japan.   Sendai Nikon has no contacts at all with the United States, and has no role in the design, development, importation, or sale of the cameras accused of infringement in this case.

On April 28, 2017, Plaintiffs Carl Zeiss AG and ASML Netherlands BV ("Plaintiffs") filed a patent infringement action, Case No. 2:17-cv-03221 RGK (MRWx), asserting U.S. Patent Nos. 6,972,792 ("'792 Patent"); 7,209,167 ("'167Patent"); 8,149,312 ("'312 Patent"); and 8,625,017 ("'017 Patent").  (3221 ECF No. 1).  On September 26, 2017, Plaintiffs filed the instant case, Case No. 2:17-cv-07083 RGK (MRWx), asserting U.S. Patent Nos. 6,463,163 ("'163

---

[1] In keeping with L.R. 16-4.1's directive to include "a brief description of the key evidence in opposition to each of the claims," Nikon has attempted to keep this Memorandum concise.  To the extent the Court would like additional detail, Defendants will happily provide that.  Additionally, L.R. 16-10(c) states that "each party may serve and file a trial brief which may . . . (c) Reply to the Memorandum of Contentions of Fact and Law of any other party."  As such, Nikon reserves all rights to reply to Plaintiffs' positions in Nikon's trial brief.

Patent"); 6,731,335 ("'335 Patent"); and 9,728,574 ("'574 Patent").  (7083 ECF No. 1.)

On May 18, 2018, the Court granted Defendants' Motion for Partial Summary Judgment in the 3221 case and dismissed Counts III and IV relating to the '312 and '017 Patents.  Following that order, Plaintiffs filed a motion for reconsideration, which the Court granted on June 26, 2018—only two weeks before trial in the 3221 case.  Accordingly, the Court severed the '312 and '017 Patents from the 3221 case and consolidated them with this, the 7083 case.

Trial is scheduled to commence on November 6, 2018, on all issues pertaining to the '163, '335, '574, '312, and '017 patents.

# I.   PLAINTIFFS' CLAIMS [L.R. 16-4.1(a)-(c)]

In their First Amended Complaint in the 3221 case, Plaintiffs asserted against Nikon two counts of patent infringement that remain to be adjudicated here:

**Count III:** Plaintiffs allege that Nikon infringed U.S. Patent 8,149,312 (the "'312 Patent") under 35 U.S.C. §§ 271(a), (b), or (c).  (3221 ECF No. 33 ¶¶ 80–99.)

**Count IV:** Plaintiffs allege that Nikon infringed U.S. Patent 8,625,017 (the "'017 Patent") under 35 U.S.C. §§ 271(a), (b), or (c).  (3221 ECF No. 33 ¶¶ 100–119.)

In their Complaint in the 7083 case, Plaintiffs asserted against Nikon three counts of patent infringement:

**Count I:**  Plaintiffs allege that Nikon infringed U.S. Patent 6,463,163 (the "'163 Patent") under 35 U.S.C. §§ 271(a), (b), or (c).  (ECF No. 1 ¶¶ 44–65.)

**Count II:**  Plaintiffs allege that Nikon infringed U.S. Patent 6,731,335 (the "'335 Patent") under 35 U.S.C. §§ 271(a), (b), or (c).  (ECF No. 1 ¶¶ 66–88.)

**Count III:**  Plaintiffs allege that Nikon infringed U.S. Patent 9,728,574 (the "'574 Patent") under 35 U.S.C. §§ 271(a), (b), or (c).  (ECF No. 1 ¶¶ 89–108.)

### A.   Direct Infringement Under 35 U.S.C. § 271(a)

Plaintiffs allege that Nikon is liable for direct infringement of each asserted patent, pursuant to 35 U.S.C. § 271(a).

### 1.   Elements Required to Prove Infringement Under 35 U.S.C. § 271(a)

Plaintiffs must prove direct infringement under 35 U.S.C. § 271(a). "[W]hoever without authorization makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).

In order to prove direct infringement, there is a two-step inquiry: "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (citation omitted).

A finding of infringement requires that every limitation of a claim find literal or equivalent correspondence in the accused product.  *See, e.g.*, *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005).

Finding infringement under the "doctrine of equivalents" analysis requires a showing that the "equivalent" performs "substantially the same function . . . in substantially the same way to achieve substantially the same result."  *Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998)  (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). Infringement by equivalents is limited by several doctrines, including ensnarement, vitiation, and prosecution history estoppel.  The doctrine of ensnarement states that a patentee may not assert a "scope of equivalency that would encompass, or ensnare, the prior art." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009)  The doctrine of claim vitiation prevents

application of the doctrine of equivalents in a way that would completely eliminate a claim element, *i.e.*, render the claim limitation inconsequential or non-existent. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997).

### a.     Prosecution History Estoppel Elements

Prosecution history estoppel prevents applying the doctrine of equivalents to reach subject matter relinquished by the patent applicant during prosecution. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002). Amending a claim is not considered surrendering a particular equivalent if the rationale behind the amendment bears "no more than a tangential relation to the equivalent." *Id*. at 740.  However, an "amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003).

### 2.     Evidence that Nikon is Not Liable for Infringement Under 35 U.S.C. § 271(a)

Nikon will introduce the following categories of evidence establishing that Nikon did not directly infringe any of the asserted patents under 35 U.S.C. § 271(a):

- Testimony and evidence showing that Plaintiffs failed to prove that any Nikon Defendant directly infringed or directly infringes any asserted patent;
- Testimony and evidence that Nikon Corp. does not directly interact with U.S. customers;
- Testimony and evidence that Sendai Nikon Corp. only manufactures cameras for Nikon Corp. in Japan and has no contacts with the U.S., and has no role in the design, development, marketing, or sale of the accused products;
- Testimony and evidence showing that Plaintiffs failed to identify

1     instances of users using the asserted method claims of the '574

2     Patent in the U.S.;

3        •   Testimony and evidence showing that Plaintiffs failed to identify

4     instances of users using the asserted method claims of the '335

5     Patent in the U.S.;

6        •   Testimony and evidence showing that Plaintiffs failed to identify

7     instances of users using the asserted method claims of the '163

8     Patent in the U.S.;

9        •   Testimony and evidence that Nikon Corp. did not know of the

10    '163 Patent before May 2009;

11       •   Testimony and evidence that Sendai Nikon Corp. and Nikon Inc.

12    did not know of the '163 Patent before the complaint for

13    Investigation No. 337-TA-1059 was filed in the International

14    Trade Commission;

15       •   Testimony and evidence that Nikon Corp. did not know of the

16    '335 Patent before February 27, 2009;

17       •   Testimony and evidence that Nikon Inc. and Sendai Nikon Corp.

18    did not know of the '335 Patent before they received a copy of

19    Plaintiffs' complaint in the 7083;

20       •   Testimony and evidence that Nikon Corp., Nikon Inc., and Sendai

21    Nikon Corp. did not know of the '574 Patent before they received

22    a copy of Plaintiffs' complaint filed in the 7083 case;

23       •   Testimony and evidence that Nikon Corp. first became aware of

24    the existence of the '312 Patent in March 2013, but did not know

25    of its contents at that time;

26       •   Testimony and evidence that Nikon Corp. first became aware of

27    the contents of the '312 Patent when it received a copy of

28    Plaintiffs' complaint filed in the 3221 case;

5

- Testimony and evidence that Nikon Corp. first became aware of the '017 Patent when it received a copy of Plaintiffs' complaint in the 3221 case;

- Testimony and evidence that Nikon Inc. and Sendai Nikon Corp. did not know of the '312 and '017 Patents until they received a copy of Plaintiffs' complaint in the 3221 case;

- Testimony and evidence showing that Plaintiffs failed to identify any infringement evidence for Sendai Nikon Corp;

- Testimony and evidence showing that Plaintiffs failed to prove that Nikon Corp directly infringes any asserted patent;

- Testimony and evidence that Nikon had a good faith belief of non-infringement and invalidity of the asserted patents (See I.A.2 (failure to prove direct infringement), II.B (non-infringement), and II.C (invalidity));

- Testimony and evidence that Sendai Nikon Corp. is not an "alter ego" of Nikon Corp.;

- Other testimony and evidence as listed in the subsections below; and

- Nikon incorporates by reference all arguments regarding noninfringement in its expert reports, including, but not limited to, the expert reports regarding noninfringement of Trevor Darrell and Stuart Kleinfelder.

### a.    The '163 Patent

The accused Nikon cameras do not infringe the asserted claims of the '163 Patent, either literally or under the doctrine of equivalents.

**(i)     There is no literal infringement**

Plaintiffs are asserting claims 1–4, 6–7, 15–16, and 19 of the '163 Patent [2] against 105 Nikon camera models with human face or pet detection functionality provided by third-party Omron Corporation.   Defendants will show at trial that none of the above claims are infringed by the Nikon cameras.[3]

**(1)     Cameras with human face detection software or hardware from Omron Corporation**

Defendants will show that the accused Nikon cameras do not meet the limitations of the independent claim 1 of the '163 Patent using at least the following categories of evidence:

- Testimony and evidence showing that the accused Nikon cameras do not perform correlation of an input image with preselected reference data representative of a target image pattern of interest;
- Testimony and evidence showing that the accused Nikon cameras do not derive a correlation image; and
- Testimony and evidence showing that the accused Nikon cameras do not select a candidate region of the input image by detecting a local maximum in a correlation image.

Nikon will also prove at trial that the accused Nikon cameras do not meet the limitations of independent system claim 15 for at least the following reasons:

- Testimony and evidence showing that the structures identified by Plaintiffs in the accused products as being the "first filtering

---

[2] These claims have been addressed in the expert report of Plaintiffs' expert Joseph Mundy.  Plaintiffs had also asserted claims 9–14 of the '163 Patent, but later statutorily disclaimed them before the Patent Office on June 7, 2018, after Nikon filed an IPR petition challenging the patentability of the '163 patent claims.

[3] Defendants reserve the right, in the event Plaintiffs assert other claims of the '163 patent, to demonstrate at trial that none of the other claims are being infringed.

1    means" are not linear filters;

2    • Testimony and evidence showing that the structures identified by

3    Plaintiffs in the accused products as being the "second filtering

4    means" do not compare contrast values in regions of the input

5    image;

6    • Testimony and evidence showing that the accused Nikon cameras

7    do not perform correlation of an input image with a reference

8    image pattern being indicative of said target image pattern;

9    • Testimony and evidence showing that the accused Nikon cameras

10   do not derive a correlation image;

11   • Testimony and evidence showing that the accused Nikon cameras

12   do not select a candidate region of the input image by detecting a

13   local maximum in a correlation image; and

14   • Testimony and evidence showing that the functionalities in the

15   accused Nikon cameras accused of being an "image pattern

16   detector" cannot perform target image pattern detection by

17   themselves.

18   The accused Nikon cameras do not meet the limitations of claims 2, 4, and 6–

19   7, which are dependent on claim 1, for at least the reasons that they do not meet the

20   limitations of claim 1.  The accused Nikon cameras do not meet the limitations of

21   claim 3, which is dependent on claim 2, for at least the reasons that they do not

22   meet the limitations of claim 2.

23   In addition, Defendants will show that the accused Nikon cameras do not

24   satisfy the additional limitations of dependent claims 2 and 3 because they do not

25   compare contrast values in regions of the input image.

26   The accused Nikon cameras do not meet the limitations of claims 16 and 19,

27   which are dependent on claim 15, for at least the reasons that they do not meet the

28   limitations of claim 15.

Further, Defendants will show that the accused Nikon cameras do not satisfy the additional limitations of dependent claim 16 because they do not perform a linear convolution operation between the input image and a convolution kernel representative of a human face.

Finally, Defendants will show that the accused Nikon cameras do not satisfy the additional limitations of dependent claim 19 because they do not compute contrast values and do not compare such values with a threshold contrast value.

### (2)   Cameras with pet detection software from Omron Corporation

Plaintiffs are asserting claims 1, 4, 6–7, 15, and 19 against these cameras. Defendants will show that the accused Nikon cameras do not meet the limitations of the independent claim 1 of the '163 Patent using at least the following categories of evidence:

- Testimony and evidence showing that the accused Nikon cameras do not perform correlation of an input image with preselected reference data representative of a target image pattern of interest;
- Testimony and evidence showing that the accused Nikon cameras do not derive a correlation image; and
- Testimony and evidence showing that the accused Nikon cameras do not select a candidate region of the input image by detecting a local maximum in a correlation image.

The accused Nikon cameras do not meet the limitations of independent system claim 15 for at least the following reasons:

- Testimony and evidence showing that the structures identified by Plaintiffs in the accused products as the "first filtering means" are not linear filters;
- Testimony and evidence showing that the structures identified by Plaintiffs in the accused products as being the "second filtering

means" do not compare contrast values in regions of the input image;

- Testimony and evidence showing that the accused Nikon cameras do not perform correlation of an input image with a reference image pattern being indicative of said target image pattern;

- Testimony and evidence showing that the accused Nikon cameras do not derive a correlation image;

- Testimony and evidence showing that the accused Nikon cameras do not select a candidate region of the input image by detecting a local maximum in a correlation image; and

- Testimony and evidence showing that the functionalities in the accused Nikon cameras accused of being an "image pattern detector" cannot perform target image pattern detection by themselves.

The accused Nikon cameras do not meet the limitations of claims 4 and 6–7, which are dependent on claim 1, for at least the reasons that they do not meet the limitations of claim 1.

The accused Nikon cameras do not meet the limitations of claim 19, which is dependent on claim 15, for at least the reasons that they do not meet the limitations of claim 15.

Finally, Defendants will show that the accused Nikon cameras do not satisfy the additional limitations of dependent claim 19 because they do not compute contrast values and do not compare such values with a threshold contrast value.

### (ii)   There is no infringement under the doctrine of equivalents

The accused Nikon cameras do not infringe under the doctrine of equivalents, for at least the following reasons:

- Detecting candidate regions based on a comparison of confidence

values with fixed thresholds is not the same or equivalent to detecting local maxima in a correlation image;

- A filter employing non-linear processes is not equivalent to a linear filter; and

- Defendants are precluded from asserting infringement by equivalents due to prosecution history estoppel.  (*See* Section II.D.1.a.)

### (iii) Evidence for non-infringement by the accused Nikon cameras

In their defense to the allegations of infringement, Defendants will rely on the following key facts and evidence:

- The '163 Patent and its file wrapper (prosecution history);

Testimony and evidence related to the Parties' claim constructions;

- Testimony and evidence that the accused Nikon cameras with human face and/or pet detection do not satisfy independent claims 1 and 15 and any of their dependent claims, including without limitation testimony by Defendants' expert Dr. Trevor Darrell.

### b. The '335 Patent

Defendants contend that the accused Nikon cameras do not infringe the asserted claims of the '335 Patent, either literally or under the doctrine of equivalents.

### (i) There is no literal infringement

Plaintiffs have asserted claims 1-12 of the '335 Patent against the following Nikon camera models: Nikon AW1, D4, D4S, Df, D5, D300, D500, D600, D610, D750, D800, D800E, D810, D810A, D850, D3100, D3200, D3300, D3400, D5300, D5500, D5600, D7000, D7100, D7500, J1, J2, J3, J4, S1, S2, V1, V2, and V3.

### (1) Nikon D4/D4s/Df , D3100, and D3200

In their defense to the allegations of infringement, Defendants will rely on the following key facts and evidence showing that the Nikon D4, D4s, Df do not infringe claims 1-12 of the '335 patent for the following reasons:

- The Nikon D4/D4s/Df do not perform one or more of the recited steps of claim 1, including steps (a), (c), (d), (e), and (f);

Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege infringement by the D3100 or D3200, Nikon reserves the right to respond and rebut any new evidence or analysis that may be presented by Plaintiffs.

### (2) Nikon D5 and D7100

In their defense to the allegations of infringement, Defendants will rely on the following key facts and evidence showing that the accused Nikon D5 do not meet the limitations of claim 1 for at least the following reasons:

- The Nikon D5 image sensor does not satisfy the "reset transistor coupled between . . . " limitation recited in the limiting preamble of claim 1; and
- The Nikon D5 does not perform one or more of the recited steps of claim 1, including steps (a), (c), (d), (e), and (f);

Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege infringement by the D7100.  Nikon reserves the right to respond and rebut any new evidence or analysis that may be presented by Plaintiffs.

### (3) Nikon D5600, D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, D850

In their defense to the allegations of infringement, Defendants will rely on

the following key facts and evidence showing that the accused Nikon D5600, D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, and D850 do not meet the limitations of claim 1 for at least the following reasons:

- The Nikon D5600 does not perform one or more of the recited steps of claim 1, including steps (a), (c), (d), (e), and (f).
- The D5600, D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, and D850 are subject to a license agreement and therefore cannot infringe the '335 Patent.

Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege infringement by the D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, or D850. Nikon reserves the right to respond and rebut any new evidence or analysis that may be presented by Plaintiffs.

### (4)   Nikon 1 V1, J1, J2, S1, V2, J3, S2, AW1, J4, and V3

In their defense to the allegations of infringement, Defendants will rely on the following key facts and evidence showing that the accused Nikon 1 V1, J1, J2, S1, V2, J3, S2, AW1, J4, and V3 cameras do not meet the limitations of claim 1 for at least the following reasons:

- The Nikon 1 V2, J3, S2, and AW1 image sensor (Aptina AR1410) does not satisfy the "reset transistor coupled between . . . " limitation recited in the limiting preamble of claim 1; and
- The Nikon 1 V1, J1, J2, S1, V2, J3, S2, AW1, J4, and V3 do not perform one or more of the recited steps of claim 1, including steps (a), (c), (d), (e), and (f).

Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege infringement by the Nikon 1 V1, J1, J2, S1, V2, J3, S2, AW1, or J4.  Nikon reserves the right to respond and rebut any new

evidence or analysis that may be presented by Plaintiffs.

**(ii)** **There is no basis for applying the doctrine of equivalents**

In their defense to the allegations of infringement, Defendants will rely on the following key facts and evidence showing that Plaintiffs' attempt to argue infringement under the doctrine of equivalents is flawed, for at least the following reasons:

**(1)** **Nikon D4/D4s/Df**

- Alternating the turning on/off of the reset and transfer transistors is substantially different from turning on both transistors at the same time;

- Less than full depletion is substantially different from full depletion; and

- Turning on and turning off, as recited in the various steps of claim 1, is substantially different from keeping on and keeping off, respectively. That is, transitioning the transistors to an "on" or "off" state constitutes a substantial difference to ensuring that the specified transistor is on or off.

- Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege direct infringement by the D3100 and D3200, and therefore further failed to present any evidence of analysis of infringement under the doctrine of equivalents. Nikon reserves the right to respond and rebut any new evidence of analysis that may be presented by Plaintiffs.

**(2)** **Nikon D5**

- The accused circuit is substantially different than the reset transistor configuration recited in the limiting preamble of claim 1;

- Turning on and turning off, as recited in the various steps of claim 1, is substantially different from keeping on and keeping off, respectively. That is, transitioning the transistors to an "on" or "off" state constitutes a substantial difference to ensuring that the specified transistor is on or off.

- Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege direct infringement by the D7100, and therefore further failed to present any evidence of analysis of infringement under the doctrine of equivalents. Nikon reserves the right to respond and rebut any new evidence of analysis that may be presented by Plaintiffs.

### (3)    Nikon D5600

- Turning on and turning off, as recited in the various steps of claim 1, is substantially different from keeping on and keeping off, respectively. That is, transitioning the transistors to an "on" or "off" state constitutes a substantial difference to ensuring that the specified transistor is on or off.

- Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege direct infringement by the D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, or D850, and therefore further failed to present any evidence of analysis of infringement under the doctrine of equivalents. Nikon reserves the right to respond and rebut any new evidence of analysis that may be presented by Plaintiffs.

(4)   **Nikon 1 V1, J1, J2, S1, V2, J3, S2, AW1, J4, and V3**

- The accused circuit is substantially different than the reset transistor configuration recited in the limiting preamble of claim 1;

- Turning on and turning off, as recited in the various steps of claim 1, is substantially different from keeping on and keeping off, respectively.

- Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege direct infringement by the Nikon 1 V1, J1, J2, S1, V2, J3, S2, AW1, or J4, and therefore further failed to present any evidence of analysis of infringement under the doctrine of equivalents.  Nikon reserves the right to respond and rebut any new evidence of analysis that may be presented by Plaintiffs.

(iii)   **Evidence for non-infringement by the accused Nikon cameras**

In defense to the allegations of infringement, Defendants will rely on the following key facts and evidence:

- The '335 Patent and its file wrapper;

- Testimony and evidence that Plaintiffs' have failed to identify any evidence of direct infringement of the '335 Patent by Nikon or consumers;

- Testimony and evidence related to the Parties' claim constructions; and

- Testimony and evidence that the accused Nikon camera models do not operate the same or substantially the same with respect to the functionalities accused of infringing the '335 Patent claims.

- Nikon incorporates all evidence identified in the rebuttal expert

report of Dr. Stuart Kleinfelder.

### c.   The '312 Patent

The accused sensors do not infringe the asserted claims of the '312 patent, either literally or under the doctrine of equivalents.

### (i)   There is no literal infringement

As properly construed, the accused sensors do not literally infringe any of the asserted claims of the '312 patent, specifically, claims 1-3, 6-9 and 11-16.  In particular, Defendants will rely on the following key facts and evidence:

- The accused sensors do not literally meet the limitation of "wherein a sensing node of a unit pixel in a previous scan line is selectively shared with a sensing node of a unit pixel in a current scan line in response to a line select signal of the current scan line," as recited in claim 1 of the '312 patent. Specifically, the accused sensors do not include a line select signal that causes selective sharing of a sensing node in a current scan line and a sensing node in a previous scan line.  Furthermore, the accused sensors do not share sensing nodes between a current and a previous scan lines, regardless of whether it is "in response to a select signal," because the accused sensors share floating diffusions only between a current and a subsequent scan line.

- The accused sensors also do not include the "switching device" recited by claim 7 of the '312 patent, regardless of whether or not the term is construed as a means-plus-function limitation.  In the event the term is construed as a means-plus-function limitation, the accused sensors do not include a structure that performs the recited function or that would correlate with the corresponding structure of the limitation.  Even if the term is not construed as a means-plus-function term, the accused sensors do not perform the function of "interconnect a sensing node of a selected unit pixel to a sensing node of a neighboring unit pixel in

1  response to a select signal," wherein "the select signal" that controls a

2  select transistor.

3  • The accused sensors do not infringe claims that depend on claims 1 or

4  7 for at least the reasons enumerated above.

5  **(ii)   There is no basis for applying the doctrine of equivalents**

6

7  Plaintiffs' attempt to argue infringement under the doctrine of equivalents is

8  flawed.  In defending against Plaintiffs' allegations, Defendants will rely on the

following key facts and evidence:

9

10  • There is no equivalence between the accused sensors and the "in

11  response to a line select signal" limitation because, by using

12  independent control signals to control the floating-diffusion switch and

13  the select transistor (as it is done in the accused Nikon sensors), the

14  accused products achieve the floating-diffusion switching function via

15  a substantially different way to achieve a substantially different result

16  from the perspective of one of ordinary skill in the art.  First, a

17  different physical wiring layout is required to independently control

18  the select transistor and the floating-diffusion switch ("FDSW")

19  transistor, and substantially different timings for those control signals

20  are required to operate those separate transistors.  In particular, a

21  separate control signal line is dedicated to the floating diffusion

22  switch, requiring a different wiring structure all together, thus the

23  "way" is substantially different.  Second, the result is also substantially

24  different because the accused products provide the flexibility to share

25  floating diffusions only when such sharing is desired, which may not

26  be in every situation.  The '312 Patent discloses only the sharing of

27  sensing nodes that always happens under the control of the select

28  signal when a unit pixel is being read out, and neither discloses nor

suggests the flexible sharing of sensing nodes.

- There is also a substantial difference between sharing sensing nodes in a current and a previous scan line, as required by claim 1 of the '312 patent, and the sharing of floating diffusions between a current and a subsequent scan line, as done by the accused sensors.

- With respect to the "switching device" limitation of claim 7 of the '312 patent, a switching device that uses the row select signal to interconnect two sensing nodes of neighboring scan lines (as required by claim 7 of the '312 patent) vs. a floating-diffusion switch that uses an independent, dedicated control signal for interconnect the floating diffusions (such as the case for the accused sensors) are two substantially different and distinct structures. The differences are substantial in that, in the accused sensors, a substantially different control scheme is used to control the floating diffusion switch, rather than relying on the row select signal of the current scan line. The two structures perform the function of sharing sensing nodes in a substantially different way (single vs. dual control signals) to achieve a substantially different result (always sharing the neighboring sensing node when a single select signal is used vs. capable of sharing or not sharing the sensing nodes when independent control signals are used).

   **(iii) Prosecution history estoppel limits the doctrine of equivalents**

   Prosecution history estoppel precludes Plaintiffs from attempting to prove infringement of the '312 patent claims through the doctrine of equivalents. In particular, Plaintiffs cannot argue that two different, independent control signals that respectively control the sharing of floating diffusion switches and select transistors are the equivalent of a single select signal. This is because during the prosecution of the '312 patent, in an effort to distinguish prior art cited by the

Examiner, the applicants of the '312 patent specifically argued the novelty of the single select signal as a distinguishing feature of the claimed subject matter. Similarly, applicants of the '312 patent also distinguished the prior art based on sharing the sensing nodes between a current and a *previous* scan line.  Therefore:

- Prosecution history estoppel prevents Plaintiffs from applying the doctrine of equivalents to argue infringement by the accused sensors that use independent control signals for controlling the floating diffusion switches and the select transistors; and

- Prosecution history estoppel prevents Plaintiffs from applying the doctrine of equivalents to argue infringement by the accused sensors that do not share sensing nodes between a current and a previous scan line, but rather between a current and subsequent scan line.

**(1)     Evidence in Support of Prosecution History Estoppel Defense**

In support of their prosecution history estoppel defense, Defendants will rely upon the following key facts and evidence:

- The '312 patent and its file wrapper;
- Prior art considered by the patent examiner during the prosecution of the '312 patent; and
- Documentary evidence and testimony that the patentee relinquished subject matter to avoid prior art during the patent prosecution, including testimony of Nikon's expert Dr. Stuart Kleinfelder.

**(iv)     Non-infringement evidence concerning the accused sensors**

In order to rebut claims of infringement, Defendants will rely on the following key facts and evidence:

- The '312 patent and its file wrapper;
- All testimony and documentary evidence related to the Parties' claim constructions; and

- Testimony and documentary evidence that the accused sensors do not satisfy independent claims 1 or 7, or any of their dependent claims, including without limitation testimony of Nikon's expert Dr. Stuart Kleinfelder.

### d.    The '017 Patent

The accused Nikon sensors do not infringe the asserted claims of the '017 patent, either literally or under the doctrine of equivalents.

### (i)    There is no literal infringement

As properly construed, the accused Nikon sensors do not literally infringe any claims of the '017 patent, including asserted claim 1-3, 6-8, and 10-17 of the '017 Patent.  In particular:

- The accused sensors do not literally meet the limitation of "a sensing node arranged to receive the electrical signal, wherein the sensing node is selectively couplable to a sensing node of a sensing pixel in a *previous* scan line of the pixel array."  As discussed above, the accused sensors do not share sensing nodes with "previous" scan lines.

- The accused sensors also do not include a "switching device" recited by claim 7 of the '017 patent, regardless of whether or not that term is construed as a means-plus-function limitation.  In the event the term is construed as a means-plus-function limitation, the accused sensors do not include any structure that performs the recited function or that would correlate with the corresponding structure of the limitation. Even if the term is not construed as a means-plus-function term, the accused sensors do not perform the function of "interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line," wherein the "select signal" is properly construed to

1    mean the same select signal that controls a select transistor.

2    • The accused sensors do not infringe claims that depend on claims 1 or

3    7 for at least the reasons enumerated above.

4    **(ii)    No doctrine of equivalents**

5    Plaintiffs' attempt to argue infringement under the doctrine of equivalents is

6    flawed, for at least the following reasons:

7    • There is also no equivalence between the accused sensors and the "in

8    response to a line select signal" limitation because, by using

9    independent control signals to control the floating-diffusion switch and

10    the select transistor (as it is done in the accused Nikon sensors), the

11    accused products achieve the floating-diffusion switching function via

12    a substantially different way to achieve a substantially different result

13    from the perspective of one of ordinary skill in the art.  First, a

14    different physical wiring layout is required to independently control

15    the select transistor and the floating-diffusion switch ("FDSW")

16    transistor, and substantially different timings for those control signals

17    are required to operate those separate transistors.  In particular, a

18    separate control signal line is dedicated to the floating diffusion

19    switch, requiring a different wiring structure all together, thus the

20    "way" is substantially different.  Second, the result is also substantially

21    different because the accused products provide the flexibility to share

22    floating diffusions only when such sharing is desired, which may not

23    be in every situation.  The '017 Patent discloses only the sharing of

24    sensing nodes that always happens under the control of the select

25    signal when a unit pixel is being read out, and neither discloses nor

26    suggests the flexible sharing of sensing nodes.

27    • With respect to the "switching device" limitation of claim 7 of the

28    '017 patent, a switching device that uses the row-select signal to

interconnect two sensing nodes of neighboring scan lines (as required by claim 7 of the '017 patent) vs. a switching device that uses an independent, dedicated control signal for interconnecting the sensing nodes (such as the case for the accused Nikon sensors) are substantially different and distinct structures. The differences are substantial in that, in the accused sensors, a substantially different control scheme is used to control the floating diffusion switch, rather than relying on the row select signal of the current scan line.  The two structures perform the function of sharing sensing nodes using a substantially different way (single vs. dual control signals) to achieve a substantially different result (always sharing the neighboring sensing node when a single select signal is used vs. capable of sharing or not sharing the sensing nodes when independent control signals are used).

- There is also a substantial difference between sharing sensing nodes of current and previous scan lines, as required by claim 1 of the '017 patent, and the sharing of floating diffusions between a current and subsequent scan line, as done by the accused sensors.

###### (iii)    Prosecution history estoppel limits the doctrine of equivalents

Prosecution history estoppel precludes Plaintiffs from attempting to prove infringement of the '017 patent claims through the doctrine of equivalents.  Because the '017 patent claims priority to the '312 patent (Defendants note that the '017 patent should not be afforded the priority of the '312 patent because new matter was added at the time of filing), the prosecution history estoppel effect of the '312 patent also applies to the '017 patent.  Hence, the discussion above with respect to the '312 patent is equally applicable to the '017 patent.

###### (1)    Evidence in Support of Prosecution History Estoppel Defense

In support of their prosecution history estoppel defense, Defendants will rely

upon the following key facts and evidence:

- The '312 patent and its file wrapper;
- The '017 patent and its file wrapper;
- Prior art considered by the patent examiner during the prosecution of the '312 and '017 patents; and
- Documentary evidence and testimony that the applicant relinquished subject matter to avoid prior art during the patent prosecution, including testimony of Defendants' expert Dr. Stuart Kleinfelder.

### (iv)   Evidence for non-infringement by the accused sensors

In order to prove non-infringement, Defendants will rely on the following key facts and evidence:

- The '312 patent and its file wrapper;
- The '017 patent and its file wrapper;
- All of the testimony and documentary evidence related to the Parties' claim constructions; and
- Testimony and documentary evidence that the accused sensors do not include each and every limitation of independent claims 1 or 7, or any of their dependent claims, including without limitation testimony of Defendants' expert Dr. Stuart Kleinfelder.

### e.   The '574 Patent

The accused Nikon sensors do not infringe the asserted claims of the '574 patent, either literally or under the doctrine of equivalents.

### (i)   There is no literal infringement

As properly construed, the accused Nikon sensors do not literally infringe any claims of the '574 patent, including asserted claims 1-13 and 16-31 of the '574 Patent.  In particular:

- The accused sensors do not include any of a "first pixel," "second

pixel," "third pixel," or "sensing pixel" recited limitations of the asserted claims of the '574 patent.

- The accused sensors do not literally meet the limitation of "selectively electrically coupling the first sensing node of the first pixel to a second sensing node of a second pixel of the image sensor, wherein the first pixel is in an $n^{th}$ line and the second pixel is in an n-$1^{th}$ line," as recited in claim 9 of the '574 patent. As discussed above, the accused sensors do not share sensing nodes with "previous" scan lines.

- The accused sensors also do not selectively couple sensing nodes in response to row select signals, as required by each of claims 3, 13, 17-19, 24-26, 28 and 29 of the '574 patent.

The accused Nikon sensors do not meet the limitations of the asserted claims of the '574 patent for at least the reasons enumerated above.

### (ii) There is no basis for applying the doctrine of equivalents

Plaintiffs' attempt to argue infringement under the doctrine of equivalents is flawed, for at least the following reasons:

- The difference between the structure of the accused sensor pixels and a "first pixel," "second pixel," "third pixel," or "sensing pixel," as recited in the asserted claims, is not insubstantial to one of ordinary skill in the art. The function of the "first pixel," "second pixel," "third pixel," and "sensing pixel" in the asserted claims of the '574 Patent is to detect light at a single location (i.e., using a single photodiode) in the image plane. The way by which a "first pixel," "second pixel," "third pixel," or "sensing pixel" performs that function, as shown in the patents, is with a structure that includes a single photodiode to generate charges corresponding to the amount of light detected by the photodiode, and a corresponding sensing node to read out the

1      photodiode voltage.  Two photodiodes that constitute two separate

2      pixels that share a single floating diffusion, such as those found in the

3      accused products, perform a substantially different function – to detect

4      (separately) light for more than one color (e.g., red and green), and do

5      so in a substantially different way (by sharing a single floating

6      diffusion), to provide substantially different results (outputting two

7      different color values rather than just one) than a single photodiode

8      structure that makes up a "sensing pixel."  Separately, the sharing of a

9      single sensing node between two photodiodes requires a substantially

10     different way of operation than having a sensing node dedicated to

11     each photodiode.  Specifically, the structural difference between two

12     photodiodes sharing one sensing node using two transfer gates with

13     independent controls vs. one photodiode with one transfer gate that

14     transfer charges to a dedicated sensing node use substantially different

15     control operations.

16     • There is also no equivalence between the independent control signal

17        used in the accused sensors and the "select signal" limitation because,

18        by using independent control signals to control the floating-diffusion

19        switch and the select transistor (as it is done in the accused sensors),

20        the accused products achieve the floating-diffusion switching function

21        via a substantially different way to achieve a substantially different

22        result from the perspective of one of ordinary skill in the art.  First, a

23        different physical wiring layout is required to independently control

24        the select transistor and the floating-diffusion switch ("FDSW")

25        transistor, and substantially different timings for those control signals

26        are required to operate those separate transistors.  In particular, a

27        separate control signal line is dedicated to the floating diffusion

28        switch, requiring a different wiring structure all together, thus the

1    "way" is substantially different.  Second, the result is also substantially

2    different because the accused products provide the flexibility to share

3    floating diffusions only when such sharing is desired, which may not

4    be in every situation.  The '574 Patent discloses only the sharing of

5    sensing nodes that always happens under the control of the select

6    signal when a unit pixel is being read out, and neither discloses nor

7    suggests the flexible sharing of sensing nodes.

8    • There is also a substantial difference between sharing sensing nodes of

9    current and previous scan rows, as required by claims 11 and 12 of the

10   '574 patent, and the sharing of floating diffusions between a current

11   and subsequent scan line, as done by the accused sensors.

### (iii)   Prosecution history estoppel limits the doctrine of equivalents

Prosecution history estoppel precludes Plaintiffs from attempting to prove infringement of the '574 patent claims through the doctrine of equivalents.  Because the '574 patent claims priority to the '312 patent (Defendants note that the '574 patent should not be afforded the priority of the '017 or the '312 patent because new matter was added at the time of filing), the prosecution history estoppel effect of the '312 patent also operates on the '574 patent.  Hence, the discussion above with respect to the '312 patent is equally applicable to the '574 patent.

### (1)   Evidence in Support of Prosecution History Estoppel Defense

In support of their prosecution history estoppel defense, Defendants will rely upon the following key facts and evidence:

• The '312 patent and its file wrapper;

• The '017 patent and its file wrapper;

• The '574 patent and its file wrapper;

• Prior art considered by the patent examiner during the prosecution of

the '312, 017, and '574 patents; and

- Documentary evidence and testimony that the applicant relinquished subject matter to avoid prior art during the patent prosecution, including testimony of Nikon's expert Dr. Stuart Kleinfelder.

### (iv) Evidence for non-infringement by the accused sensors

In order to rebut Plaintiffs' claims of infringement, Defendants will rely on the following key facts and evidence:

- The '312 patent and its file wrapper;
- The '017 patent and its file wrapper;
- The '574 patent and its file wrapper;
- All of the testimony and documentary evidence related to the Parties' claim constructions; and
- Testimony and documentary evidence that the accused sensors do not include each and every limitation of the independent claims or any of their dependent claims, including without limitation testimony of Defendants' expert Dr. Stuart Kleinfelder.

## B.     Induced Infringement Under 35 U.S.C. § 271(b)

Defendants are not liable for induced infringement of any of the asserted patents pursuant to 35 U.S.C. § 271(b).

### 1.     Elements Required to Prove Inducement Under 35 U.S.C. § 271(b)

In order to be liable for inducement of infringement, a defendant must "actively induce[] infringement of a patent." 35 U.S.C. § 271(b). "Induced infringement under § 271(b) requires knowledge [by the inducer] that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 755 (2011). Thus, the inducer must have "actively and *knowingly* aid[ed] and abet[ted] another's direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-1305 (Fed. Cir. 2006). "[K]nowledge of the acts alleged to

constitute infringement" is not enough. The 'mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.'" *Id.* at 1305.

> **2.**   **Evidence that Nikon Is Not Liable for Induced Infringement Under 35 U.S.C. § 271(b)**

Nikon will introduce the following categories of evidence establishing that Nikon did not induce infringement any of the asserted patents under 35 U.S.C. § 271(b):

- Testimony and evidence that Nikon Corp. does not directly interact with U.S. customers;
- Testimony and evidence that Sendai Nikon Corp. only manufactures cameras for Nikon Corp. in Japan and has no contacts with the U.S., and has no role in the design, development, marketing, or sale of the accused products;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '335 Patent in the U.S.;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '574 Patent in the U.S.;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '163 Patent in the U.S.;
- Testimony and evidence that Nikon Corp. did not know of the '163 Patent before May 2009;
- Testimony and evidence that Sendai Nikon Corp. and Nikon Inc. did not know of the '163 Patent before the complaint for

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
la-1397638

29

1    Investigation No. 337-TA-1059 was filed in the International

2    Trade Commission;

3    • Testimony and evidence that Nikon Corp. did not know of the

4    '335 Patent before February 27, 2009;

5    • Testimony and evidence that Nikon Inc. and Sendai Nikon Corp.

6    did not know of the '335 Patent before they received a copy of

7    Plaintiffs' complaint in the 7083;

8    • Testimony and evidence that Nikon Corp., Nikon Inc., and Sendai

9    Nikon Corp. did not know of the '574 Patent before they received

10    a copy of Plaintiffs' complaint filed in the 7083 case;

11    • Testimony and evidence that Nikon Corp. first became aware of

12    the existence of the '312 Patent in March 2013, but did not know

13    of its contents at that time;

14    • Testimony and evidence that Nikon Corp. first became aware of

15    the contents of the '312 Patent when it received a copy of

16    Plaintiffs' complaint filed in the 3221 case;

17    • Testimony and evidence that Nikon Corp. first became aware of

18    the '017 Patent when it received a copy of Plaintiffs' complaint in

19    the 3221 case;

20    • Testimony and evidence that Nikon Inc. and Sendai Nikon Corp.

21    did not know of the '312 and '017 Patents until they received a

22    copy of Plaintiffs' complaint in the 3221 case;

23    • Testimony and evidence that Nikon did not specifically intend

24    anyone to infringe the asserted patents;

25    • Testimony and evidence that Nikon was not willfully blind to the

26    asserted patents;

27    • Testimony and evidence that Nikon did not have any intent or

28    knowledge required by 35 U.S.C. § 271(b);

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
la-1397638

30

- Testimony and evidence showing that Plaintiffs failed to identify any infringement evidence for Sendai Nikon Corp.;
- Testimony and evidence showing that Plaintiffs failed to identify any evidence proving that Nikon knowingly, actively, and intentionally aided and abetted another's infringement in the U.S.;
- Testimony and evidence that Nikon had a good faith belief of non-infringement and invalidity for the asserted patents (*See* I.A.2 (failure to prove direct infringement), II.B (non-infringement), and II.C (invalidity));
- Testimony and evidence that operating a Nikon camera in one of the many modes that do not involve Face Priority AF or Pet Portrait is a substantial non-infringing use for the '163 Patent;
- Testimony and evidence that operating a Nikon D4, Df, or D4S in two of the three modes of operation, including the base mode and video mode of operation, is a substantial non-infringing use for the '312, '017, and '574 Patent;
- Testimony and evidence that Sendai Nikon Corp. is not an "alter ego" of Nikon Corp.
- Testimony and evidence that there is no direct infringement of the asserted claims of the '163, '335, '312, '017, '574 Patents, and therefore no indirect infringement
  - *See* I.A.2 (failure to prove direct infringement) and II.B (non-infringement)

### C.    Contributory Infringement Under 35 U.S.C. § 271(c)

Defendants are not liable for contributory infringement of the asserted patents pursuant to 35 U.S.C. § 271(c).

### 1. Elements Required to Prove Infringement Under 35 U.S.C. § 271(c)

In order to prove contributory infringement, Plaintiffs must prove that: (1) Defendants knew of the patents; (2) Defendants supplied a part or a component to a third party for use in a product, machine, or process that infringes a claim; (3) the third party infringed the claim; and (4) the part or component is a significant part of the invention, was especially made or adapted for use in a way that infringes, and has no significant non-infringing use. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488-89 (1964).

"In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (citations omitted).

### 2. Evidence that Defendants Are Not Liable for Contributory Infringement Under 35 U.S.C. § 271(c)

Defendants will introduce the following categories of evidence establishing that Defendants did not contribute to the infringement any of the asserted patents under 35 U.S.C. § 271(c):

- Testimony and evidence that Nikon Corp. does not directly interact with U.S. customers;
- Testimony and evidence that Sendai Nikon Corp. only manufactures cameras for Nikon Corp. in Japan and has no contacts with the U.S., and has no role in the design, development, marketing, or sale of the accused products;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '335 Patent in the U.S.;

- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '574 Patent in the U.S.;

- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '163 Patent in the U.S.;

- Testimony and evidence that Nikon Corp. did not know of the '163 Patent before May 2009;

- Testimony and evidence that Sendai Nikon Corp. and Nikon Inc. did not know of the '163 Patent before the complaint for Investigation No. 337-TA-1059 was filed in the International Trade Commission;

- Testimony and evidence that Nikon Corp. did not know of the '335 Patent before February 27, 2009;

- Testimony and evidence that Nikon Inc. and Sendai Nikon Corp. did not know of the '335 Patent before they received a copy of Plaintiffs' complaint in the 7083;

- Testimony and evidence that Nikon Corp., Nikon Inc., and Sendai Nikon Corp. did not know of the '574 Patent before they received a copy of Plaintiffs' complaint filed in the 7083 case;

- Testimony and evidence that Nikon Corp. first became aware of the existence of the '312 Patent in March 2013, but did not know if its contents at that time;

- Testimony and evidence that Nikon Corp. first became aware of the contents of the '312 Patent when it received a copy of Plaintiffs' complaint filed in the 3221 case;

- Testimony and evidence that Nikon Corp. first became aware of the '017 Patent when it received a copy of Plaintiffs' complaint in

the 3221 case;

- Testimony and evidence that Nikon Inc. and Sendai Nikon Corp. did not know of the '312 and '017 Patents until they received a copy of Plaintiffs' complaint in the 3221 case;

- Testimony and evidence that Nikon did not intend for anyone to infringe the asserted patents;

- Testimony and evidence that Nikon was not willfully blind to the asserted patents;

- Testimony and evidence that Nikon did not have any intent or knowledge required by 35 U.S.C. § 271(c);

- Testimony and evidence showing that Plaintiffs failed to identify any infringement evidence for Sendai Nikon Corp.;

- Testimony and evidence that Nikon had a good faith belief of non-infringement and invalidity of the asserted patents (*See* I.A.2 (failure to prove direct infringement), II.B (non-infringement), and II.C (invalidity));

- Testimony and evidence that Nikon does not sell or otherwise distribute the accused products as components of a multi-component product;

- Testimony and evidence that operating a Nikon camera in one of the many modes that do not involve Face Priority AF or Pet Portrait is a substantial non-infringing use for the '163 Patent;

- Testimony and evidence that operating a Nikon D4, Df, or D4S in two of the three modes of operation, including the base mode and video mode of operation, is a substantial non-infringing use for the '312, '017 and '574 Patent;

- Testimony and evidence that Sendai Nikon Corp. is not an "alter ego" of Nikon Corp.

- Testimony and evidence that there is no direct infringement of the asserted claims of the '163, '335, '312, '017, '574 Patents, and therefore no indirect infringement

  o *See* I.A.2 (failure to prove direct infringement) and II.B (non-infringement)

## II.    NIKON'S DEFENSES [L.R. 16-4.1(d)]

### A.    Failure to State a Claim

#### 1.    Legal Standard

To state a legal claim, a plaintiff must plausibly allege sufficient facts such that, accepted as true, allow a court to draw the inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.* (citation omitted).

#### 2.    Evidence that Plaintiffs Have Failed to State a Claim

- Testimony and evidence to show that Plaintiffs have not stated a sufficient claim to accuse Sendai Nikon of infringement. *See Twombly*, 550 U.S. at 555;

- Testimony and evidence to show that Plaintiffs allege no specific facts to support an inference that Sendai Nikon or Nikon Inc. had pre-suit knowledge of the patents-in-suit or knowledge that one or more of Defendants' activities allegedly induced or contributed to infringement;

- Testimony and evidence to show that Plaintiffs also failed to allege which Nikon entity (i.e., Nikon Corp., Sendai Nikon, or Nikon,

Inc.) is accused of which elements of inducement and contributory infringement;

- Testimony and evidence to show that the following cameras are subject to a license:  Nikon D5600, D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, and D850.

- Testimony and evidence to show that Plaintiffs failed to allege sufficient facts to state a claim of infringement by the following accused Nikon cameras:  D300, D500, D600, D610, D750, D800, D800E, D810, D810A, D850, D3100, D3200, D3300, D3400, D5300, D5500, D7000, D7100, D7500, V1, J1, J2, S1, V2, J3, S2, AW1, and J4;

- Evidence consistent with Nikon's Motion to Dismiss Plaintiffs' First Amended Complaint in the 3221 case (3221 ECF No. 34-1).

### B.    Non-infringement

Plaintiffs bear the burden of proving infringement.  *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011).  Defendants will show that Plaintiffs fail to meet that burden for the reasons, and using the evidence described in, Section I.A.2.

### C.    Invalidity

Nikon contends that the asserted patents are invalid under 35 U.S.C. §§ 112, ¶¶ 1, 2, 6; *id*. § 102; or *id*. § 103.[4]

### 1.    Invalidity Under 35 U.S.C. § 112

### a.    35 U.S.C. § 112, ¶ 1 – Written Description

The asserted claims of the '312, '017, and '574 Patents, and claims 5, 7, and 9 of the '335 Patent, are invalid because the common specification of the '312,

---

[4] All statutory citations in this Motion are pre-AIA.

1   '017, '574, and '335 Patents does not contain an adequate written description of the

2   claimed subject matter.  Defendants will show by clear and convincing evidence

3   that the specification fails to meet the legal requirements for written description of

4   an invention.  *See* Federal Circuit Bar Association Model Jury Instructions, B.4.2a.

5         The written description requirement ensures that the issued claims

6   correspond to the scope of the written description that was provided in the original

7   application.  *E.g*., Federal Circuit Bar Association Model Jury Instructions, B.4.2a.

8   In deciding whether the patents' specification satisfies the written description

9   requirement, the jury must consider the description from the viewpoint of a person

10  having ordinary skill in the field of technology of the patent when the application

11  was filed.  The written description requirement is satisfied if a person having

12  ordinary skill reading the original patent application would have recognized that it

13  describes the full scope of the claimed invention as it is finally claimed in the issued

14  patent and that the named inventor actually possessed that full scope by the filing

15  date of the original application.  *E.g*., Federal Circuit Bar Association Model Jury

16  Instructions, B.4.2a.

17        Specifically, for the '312 patent, all of the asserted claims recite a "unit

18  pixel."  To the extent "unit pixel" is ultimately determined to include "one or more"

19  photodiodes, the '312 patent specification would not lead a person of ordinary skill

20  in the art to reasonably conclude that the named inventor was in possession of the

21  claimed subject matter.

22        Specifically, for the '312 patent, claim 1 recites "wherein a sensing node of a

23  unit pixel in a previous scan line is selectively shared with a sensing node of a unit

24  pixel in a current scan line in response to a line select signal of the current scan

25  line."  To the extent "selectively sharing" refers to variable capacitance of a pixel or

26  the use of a signal other than the select signal of the current scan line to share

27  sensing nodes, the '312 patent specification would not lead a person of ordinary

28  skill in the art to reasonably conclude that the named inventor was in possession of

1   the claimed subject matter.

2        Specifically, for the '017 patent, all asserted claims recite a "sensing pixel."

3   To the extent "sensing pixel" is ultimately determined to include "one or more"

4   photodiodes, the '017 patent specification would not lead a person of ordinary skill

5   in the art to reasonably conclude that the named inventor was in possession of the

6   claimed subject matter.

7        Specifically, for the '017 patent, claim 1 recites "a sensing node arranged to

8   receive the electrical signal, wherein the sensing node is selectively couplable to a

9   sensing node of a sensing pixel in a previous scan line of the pixel array."  To the

10  extent "selectively couplable" refers to variable capacitance of a pixel or the use of

11  a signal other than the select signal of the current scan line to share sensing nodes,

12  the '017 patent specification would not lead a person of ordinary skill in the art to

13  reasonably conclude that the named inventor was in possession of the claimed

14  subject matter.

15       Specifically, for the '574 patent, various asserted claims recite "first pixel,"

16  "second pixel," "third pixel," and "sensing pixel."  To the extent any of such pixel

17  terms is ultimately determined to include "one or more" photodiodes, the '574

18  patent specification would not lead a person of ordinary skill in the art to

19  reasonably conclude that the named inventor was in possession of the claimed

20  subject matter.

21       Specifically, with respect to the asserted method claims of the '574 patent,

22  the '574 patent specification would not lead a person of ordinary skill in the art to

23  reasonably conclude that the named inventor was in possession of the claimed

24  methods.

25       Specifically, with respect to the asserted claim 30 of the '574 patent, the '574

26  patent specification would not read a person of ordinary skill in the art to

27  reasonably conclude that the named inventor was in possession of the claimed

28  subject matter, including an external system.

1   Specifically, with respect to claims 3, 9-16, and 24-29 of the '574 patent,

2   each of which recites limitation directed to the selective coupling of sensing nodes,

3   To the extent selectively coupling refers to variable capacitance of a pixel or the use

4   of a signal other than the select signal of the current scan line to share sensing

5   nodes, the '574 patent specification would not lead a person of ordinary skill in the

6   art to reasonably conclude that the named inventor was in possession of the claimed

7   subject matter.

8   Specifically, with respect to claim 2 of the '574 patent, the '574 patent

9   specification would not lead a person of ordinary skill in the art to reasonably

10  conclude that the name inventor was in possession of the claimed subject matter of

11  using a select signal to control the transfer transistor, or the use of more than one

12  select signal in connection with the scanning of a single pixel.

13  Specifically, with respect to claim 4 of the '574 patent, the '574 patent

14  specification would not lead a person of ordinary skill in the art to reasonably

15  conclude that the name inventor was in possession of the claimed subject matter of

16  connecting a second and third pixel together, which would effectively require

17  coupling of a previous and a subsequent sensing node, without connecting a

18  current-scan sensing node.

19  Specifically, with respect to claim 6 of the '574 patent, the '574 patent

20  specification would not lead a person of ordinary skill in the art to reasonably

21  conclude that the named inventor was in possession of the claimed subject matter

22  resetting two sensing nodes (first and second) to a reset level for one of the pixels.

23  For each of the '312, '017, and '574 patents, to the extent any of the asserted

24  claims are construed to encompass the use of an independent control signal, other

25  than a row select signal, to "selectively" couple or share the sensing nodes of two

26  pixels, the common specification of the patents would not lead a person of ordinary

27  skill in the art to reasonably conclude that the named inventor was in possession of

28  the claimed subject matter.

1        For the '335 Patent, claims 5, 7, and 9 lack written description and

2  enablement because they recite additional steps that are not disclosed in the

3  specification.  For example, Claim 5 recites the step of turning off the reset

4  transistor after step (c) of claim 1.  However, step (d) of claim 1 also recites turning

5  off the reset transistor.  There is no disclosure in the '335 patent of turning off the

6  reset transistor twice in a row.  Therefore, there is no written description to support

7  the language of claim 5.  The same issue exists for claims 7 and 9.  In particular,

8  claim 7, when read in connection with step (e) of claim 1, requires turning off the

9  first transfer transistor twice in a row, and claim 9 requires turning off the reset

10  transistor twice in a row (again).  Further, the specification of the '335 patent does

11  not enable a person of ordinary skill in the art to carry out the steps of claims 5, 7,

12  or 9.

13              **b.     35 U.S.C. § 112, ¶ 2 – Indefiniteness**

14        Defendants will prove that the asserted claims of the '335 Patent are

15  indefinite under 35 U.S.C. § 112, ¶ 2 and therefore invalid.  The test for

16  definiteness is whether the patent claim, when viewed in light of the specification

17  and prosecution history, informs a person of skill in the art about the invention with

18  reasonable certainty.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120,

19  2128–30 (2014).  To succeed, Defendants must show by clear and convincing

20  evidence that the claims are indefinite.  *Id.* at 2130.

21        Claim 1 of the '335 Patent is indefinite because it is vague and unclear to a

22  person of ordinary skill in the art, specifically, whether the "turning on" and

23  "turning off" as recited in steps 1(c) – 1(f) represent a step of transitioning from an

24  off state to an on state and from an on state to an off state, respectively, or whether

25  the steps occur in the order recited, and if not in what order they would occur.

26  Claim 1 and all dependent claims thereto are therefore invalid.  35 U.S.C. § 112, ¶

27  2; *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1102 (Fed. Cir. 2014)

28  (where an independent claim is held indefinite, any claims that depend on that

independent claim are indefinite as well).

Claim 3 of the '335 Patent is indefinite because the phrase "the method controls a depletion time and a photo charge generating and integrating time by adjusting a turn-on time and a turn-off time for the first and second transfer transistors" is indefinite, as it is unclear to a person of ordinary skill in the art whether the control of depletion time, photo charge generating time, and integrating time are made respectively or collectively.

Claim 5 of the '335 Patent is indefinite because it is unclear to a person of ordinary skill in the art whether the recited steps occur prior to or after the steps recited in step (c) of claim 1.

Claim 6 of the '335 Patent is indefinite because it is unclear to a person of ordinary skill in the art the whether the term "so that the sampled reset voltage level is converted into a digital signal" is a part of the claimed method or a mere statement of purpose of the prior step(s).

Claim 7 of the '335 Patent is indefinite because it is unclear to a person of ordinary skill in the art whether the recited steps occur prior to or after the steps recited in step (d) of claim 1.

Claim 8 of the '335 Patent is indefinite because it is unclear to a person of ordinary skill in the art the whether the term "so that the sampled reset voltage level is converted into a digital signal" is a part of the claimed method or a mere statement of purpose of the prior step(s).

Claim 9 of the '335 Patent is indefinite because it is unclear to a person of ordinary skill in the art it is unclear whether the additionally recited steps occur prior to or after the steps recited in step (e) of claim 1.

Claim 10 of the '335 Patent is indefinite because it is unclear to a person of ordinary skill in the art the whether the term "so that the sampled reset voltage level is converted into a digital signal" is a part of the claimed method or a mere statement of purpose of the prior step(s).

Claim 11 of the '335 Patent is indefinite because it is unclear to a person of ordinary skill in the art whether the further recited steps occur prior to or after the steps recited in step (f) of claim 1.

Claim 12 of the '335 Patent is indefinite because it is unclear to a person of ordinary skill in the art the whether the term "so that the sampled reset voltage level is converted into a digital signal" is a part of the claimed method or a mere statement of purpose of the prior step(s).

Claim 1 of the '312 Patent and claim 1 of the '017 Patent are indefinite because they are mixed claims directed to both an apparatus and a method for using that apparatus. "A claim is considered indefinite if it does not reasonably apprise those skilled in the art of its scope." *IPXL Holdings LLC v. Amazon.com Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005) (citation omitted).

### (i)  Evidence in Support of Invalidity Under 35 U.S.C. § 112 Defenses

#### (1)  '335 Patent, claims 5, 7 & 9

- The '335 patent, the patents and patent applications cited therein, and the '335 prosecution history.
- Testimony and evidence to show that claims 5, 7, and 9 fail to meet the written-description and/or enablement requirement.
- All evidence regarding claim construction and invalidity in Nikon's expert reports.

#### (2)  '312 Patent, claim 1

- The '312 patent, the patents and patent applications cited therein, and the '312 prosecution history.
- Expert testimony and evidence that a person of ordinary skill in the art would understand claim 1 of the '312 patent was directed to both an apparatus and a method for using the claimed apparatus.
- All evidence regarding claim construction and invalidity in Nikon's

expert reports.

### (3)   '017 Patent, claim 1

- The '017 patent, the patents and patent applications cited therein, and the '312 and '017 prosecution histories.

- Expert testimony and evidence that a person of ordinary skill in the art would understand that claim 1 of the '017 patent was directed to both an apparatus and a method for using the claimed apparatus.

- All evidence regarding claim construction and invalidity set forth in Nikon's expert reports.

### 2.   Invalidity Under 35 U.S.C. §§ 102 and 103

#### a.   Elements for Invalidity Under 35 U.S.C. § 102

In order to be entitled to a patent, the claimed subject matter must actually be "new."  In general, the claimed subject matter is new when the identical apparatus or method has not been made, used, or disclosed before. Anticipation must be determined on a claim-by-claim basis. *E.g.*, Federal Circuit Bar Association Model Jury Instructions, B.4.3b-1.

#### b.   Elements for Invalidity Under 35 U.S.C. § 103

"A party seeking to invalidate a patent on obviousness grounds must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336, 1344 (Fed. Cir. 2015) (citation omitted).  In determining whether a patent claim is obvious, the jury must consider the level of ordinary skill in the art that someone would have had at the time the patent applications were filed, the scope and content of the prior art, and any differences between the prior art and the claimed invention.  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); Federal Circuit Bar Association Model Jury Instructions, B.4.3c.

In considering whether a claim is obvious, the jury may also consider "secondary considerations, which include: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claim provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements of the claim; (4) whether the prior art teaches away from combining elements in the claim; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces." *See Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1129 (Fed. Cir. 2000); Federal Circuit Bar Association Model Jury Instructions, B.4.3c.

### c.   Invalidity Under 35 U.S.C. §§ 102 and 103 Defense

#### (i)   The '163 Patent

Defendants will prove by clear and convincing evidence that every asserted claim of the '163 Patent is anticipated or obvious in view of prior art.

##### (1)   Evidence in support of §§ 102 and 103 invalidity

In support of their §§ 102 and 103 defenses, Defendants will rely on the following key facts and evidence:

- The '163 Patent and its file wrapper;
- All testimony and evidence related to the Parties' claim constructions;
- Primary and secondary prior art references, including without limitation: Yow; the Yow Thesis; Kosugi; Hoogenboom; Fang; Crowley; and Rowley;
- Other publications cited in the prior art references, including

1    without limitation: Yow & Cipolla, 1995 and Canny;

2    • Testimony and evidence concerning the public accessibility of any

3        asserted prior art references;

4    • Testimony of Defendants' expert witness Dr. Trevor Darrell that

5        the '163 Patent claims are anticipated and/or obvious in view of

6        the prior art;

7    • Testimony and evidence establishing a lack of secondary

8        considerations regarding obviousness; and

9    • The arguments set forth in Nikon's expert reports regarding

10       invalidity.

11                    **(ii)    The '335 Patent**

12        Defendants will prove by clear and convincing evidence that every asserted

13   claim of the '335 Patent is anticipated or obvious in view of prior art.

14                    **(1)    Evidence in support of §§ 102 and 103 invalidity**

15        In support of their §§ 102 and 103 defenses, Defendants will rely on the

16   following key facts and evidence:

17   • The '335 Patent and its file wrapper;

18   • All testimony and evidence pertinent to the Parties' claim

19       constructions;

20   • Prior art documents and physical exhibits, including without

21       limitation Takahashi, Matsunaga, Dickinson, and Gowda;

22   • Testimony of Nikon's expert witness Dr. Stuart Kleinfelder that

23       the '335 Patent claims are anticipated and/or obvious in view of

24       the prior art;

25   • Testimony and evidence establishing lack of secondary

26       considerations regarding obviousness; and

27   • All of the arguments regarding invalidity in Nikon's expert

28

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
la-1397638

45

1    reports.

2                    **(iii)    The '312 Patent**

3         In support of their §§ 102 and 103 defenses, Defendants will rely on the

4    following key facts and evidence:

5         • The '312 patent and its file wrapper;

6         • All Testimony and evidence pertinent to the Parties' claim

7              constructions;

8         • Prior art documents and physical exhibits, including without

9              limitation: Kaifu, Yuki, Guidash '665, Rhodes, and admitted prior

10             art;

11        • Testimony of Defendants' expert witnesses Mark Butterworth that

12             the '312 patent claims are anticipated and/or obvious in view of

13             the prior art; and

14        • Testimony and evidence establishing the lack of secondary

15             considerations of obviousness.

16                   **(iv)    The '017 Patent**

17        In support of their §§ 102 and 103 defenses, Defendants will rely on the

18   following key facts and evidence:

19        • The '312 patent and its file wrapper;

20        • The '017 patent and its file wrapper;

21        • All Testimony and evidence pertinent to the Parties' claim

22             constructions;

23        • Prior art documents and physical exhibits, including without

24             limitation: Kaifu, Yuki, Guidash '665, Guidash '990, Suzuki,

25             Narui, Rhodes, and the admitted prior art;

26        • Testimony of Defendants' expert witnesses Mark Butterworth that

27             the '017 patent claims are not entitled to a priority date earlier than

28             the March 2, 2012 U.S. filing date of the '017 patent.

- Testimony of Defendants' expert witness Mark Butterworth that the '017 patent claims are anticipated and/or obvious in view of the prior art; and

- Testimony and evidence establishing lack of secondary considerations regarding obviousness.

### (v)    The '574 Patent

In support of their §§ 102 and 103 defenses, Defendants will rely on the following key facts and evidence:

- The '312 patent and its file wrapper;
- The '017 patent and its file wrapper;
- The '574 patent and its file wrapper;
- All Testimony and evidence pertinent to the Parties' claim constructions;
- Prior art documents and physical exhibits, including without limitation: Kaifu, Yuki, Guidash '665, Guidash '990, Rhodes, Suzuki, Narui, Barbier, Altice Jr., and the admitted prior art;
- Testimony of Defendants' expert witness Mark Butterworth that the '574 patent claims are anticipated and/or obvious in view of the prior art;
- Testimony of Defendants' expert witnesses Mark Butterworth that the '574 patent claims are not entitled to a priority date earlier than the January 3, 2014 U.S. filing date of the '574 patent; and
- Testimony and evidence establishing lack of secondary considerations of obviousness.

### D.    Estoppel

Defendants contend that Plaintiffs are estopped from proving infringement by licensed products and that prosecution history estoppel precludes Plaintiffs from attempting to prove infringement of at least several of the asserted patents under the

doctrine of equivalents.

### 1.   Prosecution History Estoppel

Prosecution history estoppel prevents applying the doctrine of equivalents to reach subject matter relinquished by the patent applicant during prosecution. *Festo Corp.*, 535 U.S. at 734.  Amending a claim is not considered surrendering a particular equivalent if the rationale behind the amendment bears "no more than a tangential relation to the equivalent." *Id.* at 740.  However, "amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim." *Festo Corp.*, 344 F.3d at 1369.

### a.   Prosecution History Estoppel – '163 Patent

Defendants will prove that prosecution history estoppel precludes Plaintiffs from attempting to prove infringement of the '163 Patent claims through the doctrine of equivalents.  In particular, Plaintiffs cannot argue that the accused products derive a correlation image "pixel by pixel," because the patentee distinguished Moghaddam, a prior art that derives, one region of an input image at a time, a probability that an image region contains a human face, by stating that Moghaddam did not calculate a "correlation image."  Plaintiffs also cannot argue that the accused products infringe by calculating a purported correlation image pixel after they identify a candidate region, because the patentee argued that the '163 patent claims that deriving a correlation image necessarily precedes the step of identifying potential candidate regions.  Finally, Plaintiffs are also precluded from arguing that the accused products infringe by identifying candidate regions through methods other than detecting a local maximum in a derived correlation image.

### (i)   Evidence in Support of Prosecution History Estoppel Defense

- The '163 Patent and its file wrapper; and
- Prior art considered by the patent examiner during the prosecution of the '163 Patent, including without limitation Moghaddam; and

- Documentary evidence and testimony that the patentee relinquished subject matter to avoid prior art during prosecution, including testimony of Defendants' expert Dr. Trevor Darrell.

### b.  Prosecution History Estoppel – Kwon Patents ('312, '017, '574 Patents)

Defendants will prove that prosecution history estoppel precludes Plaintiffs from attempting to prove infringement of the Kwon Patent claims through the doctrine of equivalents.  In particular, Plaintiffs cannot argue that a "select line" or any other similar limitation refers to any signals other than a row select signal under the doctrine of equivalents, because the applicants made arguments during the prosecution of the '312 patent to distinguish against the cited prior art.

#### (i)  Evidence in Support of Prosecution History Estoppel Defense

- The '312 Patent and its file wrapper;
- Prior art considered by the patent examiner during the prosecution of the '312 Patent; and
- Documentary evidence and testimony that the patentee relinquished subject matter to avoid prior art during the patent prosecution, including testimony of Nikon's expert Mark Butterworth.

### 2.  Other Estoppel

- Testimony and evidence to show that the following cameras are subject to a license:  Nikon D5600, D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, and D850.

## E.  Marking

### 1.  Marking Elements

When a patentee or its licensee makes or sells devices that are covered by its patent, the patentee cannot recover damages that may have occurred before the patentee gave the alleged infringer "notice of infringement."  35 U.S.C. § 287(b)(2).

Notice under § 287(b)(2) can be accomplished in one of two ways: actual or constructive. *See, e.g.*, *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir. 1996). Thus, for Plaintiffs to be entitled to damages that may have accrued before it filed this lawsuit in April 2017, Plaintiffs must show either actual notice to Nikon or that it complied with the marking requirements. *See Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1536 (Fed. Cir. 1993).

"The patentee bears the burden of *pleading and proving* he complied with § 287(a)'s marking requirement." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) (emphasis added), *cert. denied*, No. 17-1645, 2018 WL 2766092 (U.S. Oct. 1, 2018). The Federal Circuit further held that the district court committed "legal error" to place the burden on the defendant, noting that "*[t]he burden* of proving compliance with marking *is and at all times remains on the patentee*." *Id.* at 1367 (emphasis added).

### 2. Nikon's Marking Position

Defendants contend that at least one claim of the '163 Patent is being practiced by unmarked articles.

#### a. Evidence in Support of Marking Position

In support of their marking defense, Defendants will rely on the following key facts and evidence:

- Testimony and evidence that show that Plaintiffs did not meet their burden to show compliance with the marking statute under 35 U.S.C. § 287;

- Testimony and evidence showing that one of Plaintiffs' licensee's did not mark products that practiced the '163 Patent;

- The '163 Patent and its file wrapper;

- All Testimony and evidence pertinent to the Parties' claim constructions;

- Testimony, documentary evidence, and physical exhibits showing

and/or related to the unmarked articles;

- Testimony by Defendants' expert witness Dr. Trevor Darrell; and
- Testimony by Defendants' expert witness Julie Davis.

### F.  Limitation on Recovery of Costs

#### 1.  Limitation on Recovery of Costs Elements

Plaintiffs are precluded from seeking recovery of costs by 35 U.S.C. § 288. Under 35 U.S.C. § 288, Plaintiffs can recover no costs in this case, because "[w]henever a claim of a patent is invalid, an action may be maintained for the infringement of a claim of the patent which may be valid.  The patentee shall recover no costs unless a disclaimer of the invalid claim has been entered at the Patent and Trademark Office before the commencement of the suit."

#### 2.  Evidence in Support of Limitation on Recovery of Costs Defense

Various claims of the '163, '335, '312, '017, and '574 Patents are invalid, as explained in Defendants' Motion for Partial Summary Judgment (ECF No. 146, 153-1) and petitions for *inter partes* review (*see* ECF No. 203-3, 203-4). Defendants are not aware of any disclaimer filed.  Accordingly, under 35 U.S.C. § 288, Plaintiffs can recover no costs in this case.

### G.  No Entitlement to Injunctive Relief

#### 1.  Legal Standard for Injunctive Relief

Plaintiffs bear the burden of proving entitlement to injunctive relief.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Plaintiffs must prove the following:  (1) they have suffered an irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for their injury; (3) that, considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *Id.*

### 2. Evidence in Support of No Entitlement to Injunctive Relief Defense

In support of their position, Defendants will rely on the following key facts and evidence:

- All evidence demonstrating that Defendants have not infringed and do not infringe any of the asserted claims of the patents-in-suit, described more fully at Section I.A.2;
- All evidence that all of the asserted claims of the patents-in-suit are invalid, described more fully at Section II.C;
- Testimony and evidence that Plaintiffs do not currently, and do not plan to, sell in the United States consumer products that compete with the Accused Products;
- Testimony and evidence that Plaintiffs do not currently sell in the United States products that embody the asserted patents;
- Testimony and evidence regarding Plaintiffs' acquisition of, and their motive for acquiring, the asserted patents;
- Testimony and evidence showing that the asserted patents have been licensed;
- Expert testimony evidence that Plaintiffs have not suffered and will not suffer any irreparable injury; and
- Expert testimony evidence that Plaintiffs have an adequate remedy at law;
- Testimony and evidence that the public interest would be disserved if the Nikon defendants were enjoined.

### H. No Enhanced Damages

#### 1. No Enhanced Damages Elements

Plaintiffs did not plead enhanced damages. An enhanced damages award "should generally be reserved for egregious cases typified by willful misconduct."

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016).  Enhanced damages are only appropriate in "egregious cases of misconduct beyond typical infringement" and should not be awarded in "garden-variety cases."  *Id.* at 1935.  Plaintiffs have not shown they are entitled to enhanced damages.

### 2.      Evidence in Support of No Enhanced Damages Defense

In support of their position, Defendants will rely on the following key facts and evidence:

- Testimony and evidence that shows that Nikon did not infringe any of the asserted claims of the patents-in-suit;

- Testimony and evidence that shows that Nikon had a good faith belief that the accused products did not and do not infringe any of the asserted claims of the patents-in-suit;

- Testimony and evidence that shows that Nikon had a good faith belief that the asserted claims were invalid;

- Testimony and evidence that show that Plaintiffs did not meet their burden to show that this is an "egregious case[] of misconduct beyond typical infringement"; and

- Testimony and evidence that show that Defendants were not willful or willfully blind to infringement.

## I.      Lack of Personal Jurisdiction Over Sendai Nikon Corp.

### 1.      Personal Jurisdiction Elements

Plaintiffs "bear[] the burden of demonstrating that jurisdiction is appropriate."  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted).  To make a *prima facie* showing to establish personal jurisdiction, plaintiff must "demonstrate facts that if true would support jurisdiction over the defendant."  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th

1  Cir. 1995)).

2        California's "long-arm" statute provides that a court "may exercise

3  jurisdiction on any basis not inconsistent with the Constitution of this state or of the

4  United States."  Cal. Civ. Proc. Code § 410.10.  If a defendant is found to be within

5  the reach of the California long-arm statute, the court then must analyze whether

6  the exercise of personal jurisdiction comports with due process, that is, whether

7  plaintiff has demonstrated that defendant "purposefully avail[ed] itself of the

8  privilege of conducting activities within the forum State," so that it should

9  "reasonably anticipate being haled into court there."  *World-Wide Volkswagen*

10  *Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted).  "However,

11  because California's long-arm statute is coextensive with the limits of due process,

12  the two inquiries collapse into a single inquiry: whether jurisdiction comports with

13  due process."  *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

14        Constitutional due process concerns are satisfied when a nonresident

15  defendant has "certain minimum contacts with [the forum state] such that the

16  maintenance of the suit does not offend traditional notions of fair play and

17  substantial justice."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citations

18  omitted).

19        **2.    Evidence in Support of Lack of Personal Jurisdiction
              Defense**

20
21  In support of their position, Defendants will rely on the following key facts and

22  evidence:

23          •  Testimony and documentary evidence that show Sendai Nikon has

24             no contacts with California or the United States.  Therefore, the

25             exercise of personal jurisdiction over it violates California's long-

26             arm statute and the U.S. Constitution's Due Process Clause;

27          •  Testimony and documentary evidence that show Sendai Nikon is a

28             Japanese corporation with its principal place of business in

54

Miyagi, Japan;

- Testimony and documentary evidence that show Sendai Nikon has no contact with California or its residents and does not conduct business in California or anywhere else in the United States;

- Testimony and documentary evidence that show Sendai Nikon is not registered to conduct business in California, or anywhere else in the United States, and does not in fact conduct any business in the United States;

- Testimony and documentary evidence that show Sendai Nikon has no employees, agents, offices, facilities, distributors, or representatives in California, or in the United States;

- Testimony and documentary evidence to show that Sendai Nikon also does not have a bank account or any financial instruments in California, or elsewhere in the United States;

- Testimony and documentary evidence that show Sendai Nikon has no real or personal property located in California;

- Testimony and documentary evidence that show Sendai Nikon does not sell or offer to sell its cameras to customers in California or the United States, nor does it sell any product to individual end consumers;

- Testimony and documentary evidence that show Sendai Nikon has no contact with California citizens, corporate entities or organizations;

- Testimony and documentary evidence to show that Sendai Nikon does not ship or otherwise import any product into California or the United States;

- Testimony and documentary evidence to show that Sendai Nikon has no dealings with Nikon Inc., the only U.S.-based Nikon

defendant in this suit;

- Testimony and documentary evidence that Sendai Nikon Corp. is not and "alter ego" of Nikon Corp; and

- Evidence consistent with Nikon's Motion to Dismiss Plaintiffs' First Amended Complaint in the 3221 case (3221 ECF No. 34-1) and the supporting Declaration of Nobuyuki Muraishi (3221 ECF No. 34-2).

## III.   EVIDENTIARY ISSUES [L.R. 16-4.1(h)]

### A.   Issues Relating to Motions *in Limine*

The parties have filed various motions *in limine*.  Defendants filed motions in limine regarding the following issues:

- Motion *in Limine* No. 1 to Exclude Opinions of Plaintiffs' Damages Expert, Dr. DeForest McDuff;

- Motion *in Limine* No. 2 to Exclude Evidence Relating to an Article Written by David Etchells;

- Motion *in Limine* No. 3 to Exclude Prejudicial Statements About Pre-Damages Period;

- Motion *in Limine* No. 4 to Exclude Evidence ONSEMI-CDCA0002056 and the Sealed Declaration of Rob Mihalko;

- Motion *in Limine* No. 5 to Exclude Evidence Regarding Undisclosed Infringement Position and Daubert Motion to Exclude Opinions of Dr. Richard Carley;

- Motion *in Limine* No. 6 to Exclude Mention of Non-Accused Camera Features;

- Motion *in Limine* No. 7 to Exclude Opinions by Dr. Mundy Not Disclosed in his Reports, Declaration, or Deposition;

- Motion *in Limine* No. 8 to Exclude Evidence of Willful

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
la-1397638

56

Infringement and Willful Blindness;

- Motion *in Limine* No. 9 to Exclude Evidence of Infringement by Sendai Nikon Corporation;
- Motion *in Limine* No. 10 to Exclude Evidence Relating to Negotiations.

## B. Issues Relating to Sealing Confidential Information

Much of the evidence to be presented at trial involves highly confidential business information of Plaintiffs, Defendants, and third parties. Public disclosure of this information would cause significant harm to the litigants and third parties. Defendants request that the courtroom be sealed during the presentation of such evidence.

Plaintiffs presumably will have corporate representatives in the courtroom. In addition to sealing the courtroom, Defendants request that Plaintiffs' corporate representatives be excluded during presentation of evidence that includes Nikon's and third party confidential information. As contemplated by the Protective Order in this case (ECF No. 75), Defendants' and third parties' Highly Confidential information has been restricted to disclosure to Plaintiffs' outside attorneys only. Disclosure of Nikon's confidential information to Plaintiffs' corporate representatives would cause significant harm to Defendants and third parties.

## IV. ISSUES OF LAW [L.R. 16-4.1(i)]

### A. Claim Construction

Claim construction is an issue of law for the Court to decide. *Markman*, 52 F.3d at 976. When there is an actual dispute regarding the proper scope of a term, the Court must resolve that dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). Various claim terms still require construction by the Court. The parties proposed during discovery competing

constructions for these terms,[5] as set forth in the table below.  Defendants believe

all of the following terms should be construed by the Court as indicated in

Defendants' proposed constructions.  To the extent Plaintiffs submit additional

terms in their Memorandum of Contentions of Law and Fact, Defendants reserve

the right to respond to those terms in Defendants' trial brief.  Defendants also note

that certain terms that must be construed by the Court have been submitted for

construction in Defendants' Motion for Partial Summary Judgment and Request for

Claim Construction Ruling, specifically the following terms:

- o '574 Patent—"sensing pixel"; "first pixel"; "second pixel"; "third pixel"
- o '335 Patent—the steps of claim 1 are performed in the order in which they are recited; the preamble of claim 1 is limiting;
- o '163 Patent—"correlation image"; "first filtering means"; "second filtering means."

### 1.    '163 Patent

| Term | Claim | Plaintiffs' Proposal | Nikon's Proposal |
|------|-------|----------------------|------------------|
| "correlating" | 1, 6 | Plain and ordinary meaning; no construction required. | "performing an image correlation operation between the input image and a kernel that results in a correlation image" |
|  |  | If the Court decides to construe this term, in the alternative Plaintiffs propose that "correlating" means "applying a set of |  |

---

    [5] Plaintiffs' Second Suppl. Resps. to Defendants' First Set of Interrogs. (No. 11) at Exs. F-1 – F-5; Defendants' Twelfth Suppl. Resps. to Plaintiffs' First Set of Interrogs. (No. 13) at Suppl. Ex. 7.

| | | | |
|---|---|---|---|
| | | weights to the values in a region of an image and computing the sum of the weighted values." | |
| "correlation" | 1, 7 | Plain and ordinary meaning; no construction required.<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "correlation" means "the application of a set of weights in a region of an image and computing the sum of the weighted values." | "an image correlation operation between the input image and a kernel that results in a correlation image" |
| "correlation image" | 1 | Plain and ordinary meaning; no construction required.<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "correlation image" means "a set of pixel correlation values" | "A two-dimensional image obtained by an image correlation operation between the input image and a kernel" |

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
la-1397638

59

| "convolution" | 4, 16 | Plain and ordinary meaning; no construction required.

If the Court decides to construe this term, in the alternative Plaintiffs propose that "convolution" means "application of a set of weights in a region of an image and computing the sum of the weighted values." | "An image correlation operation between the input image and a kernel, resulting in a correlation image" |
| "convolution kernel" | 4, 16 | Plain and ordinary meaning; no construction required

If the Court decides to construe this term, in the alternative Plaintiffs propose that "convolution kernel" means the "set of weights used in correlation." | "a two-dimensional matrix that represents a target image pattern of interest" |
| "first filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern" | 15 | This term is not subject to § 112 ¶ 6.

A first filter that identifies a plurality of image regions of said input image that have a likelihood of containing said target image pattern and is configured to correlate said input image with a reference image pattern | This term is subject to § 112 ¶ 6.

**Function**: "identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern" and "correlate said image with a reference image pattern to select said image regions" |

| | | | |
|---|---|---|---|
| | | to select said image regions, said reference image pattern being indicative of said target image pattern.<br><br>**_Alternatively_**, if the Court finds this term subject to § 112 ¶ 6:<br><br>**Function**: identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern<br><br>**Structure**: "linear matched filter" and equivalents thereof<br><br>**_Alternatively_**, if the Court finds this term subject to § 112 ¶ 6 and adopts Defendants' Function, the structure is still provided by "linear matched filter" and equivalents thereof. | **Structure**: linear matched filter 56, programmed to employ an algorithm described at 7:10-21 and 7:44-53 |
| "second filtering means operatively coupled to and operatively following said first filtering means for screening said image regions to select a | 15 | This term is not subject to § 112 ¶ 6.<br><br>A second filter operatively coupled to and operatively following said first filtering means that screens said image regions to select a candidate region that has a high likelihood of | This term is subject to § 112 ¶ 6.<br><br>**Function**: "screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern" and "examine a grayscale characteristic of said image regions as a |

| candidate region that has a high likelihood of containing said target image pattern, said second filtering means being configured to examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions" | containing said target image pattern and that is configured to examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions.<br><br>**Alternatively**, if the Court construes Defendants' requested language and also finds this term subject to § 112 ¶ 6:<br><br>**Function**: screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern<br><br>**Structure**: "non-linear filter" and equivalents thereof<br><br>**Alternatively**, if the Court construes Defendants' requested language and finds this term subject to § 112 ¶ 6 and adopts Defendants' Function, the structure for Defendants' proposed function is still | determination factor in selecting said candidate region from among said image regions"<br><br>**Structure**: non-linear filter 66 programmed to employ an algorithm described at 7:64-8:7 |

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
la-1397638

62

| | | | |
|---|---|---|---|
| | | provided by the structure immediately above. | |

### 2.   '312 Patent[6]

| Term | Claims | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|
| "selectively shared" | 1 | Plain and ordinary meaning; no construction required<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "selectively shared" means "selectively connectable directly or indirectly" | This term lacks written description support<br><br>_Alternatively:_<br><br>"electrically coupled" |
| "in response to a line select signal" (claim 1)<br><br>"in response to a select signal" (claim 7) | 1, 7 | Plain and ordinary meaning; no construction required<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "in response to a line select signal" means "in response to an electrical signal applied to a switching device" | "in response to a signal that is applied to a select transistor of a unit pixel to couple the unit pixel to an output line" |
| "a switching device configured to interconnect a sensing node of a selected unit pixel to a | 7 | This term is not subject to 35 U.S.C. § 112, ¶ 6 and no construction is required (plain and ordinary meaning).<br><br>However, if the Court | This term is governed by 35 U.S.C. § 112, ¶ 6.<br><br>Function: to interconnect the sensing node of the selected unit pixel to the sensing node of a |

---

[6] Nikon reserves the right to appeal the Court's holding that the term "unit pixel" is not limited to a single-photodiode structure. Nikon further reserves the right to rebut Plaintiffs' construction for any additional terms not listed herein.

| Term | Claims | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|
| sensing node of a neighboring unit pixel in response to a select signal" | | decides to construe the term, it should be construed to mean a switching device configured to interconnect two sensing nodes.<br><br>Function: interconnecting a sensing node of a selected unit pixel to a sensing node of a neighboring unit pixel in response to a select signal<br><br>Structure: switching device such as a transistor (e.g., M400, M450.) | neighboring unit pixel in response to a select signal<br><br>Structure: (as shown in FIG. 4): switching device M400 or M450 for interconnecting the sensing node of the currently selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned, in response to the row select signal. |
| "selected unit pixel" | 7 | "unit pixel enabled to receive photocharges from one or more corresponding photodiodes" | "selected light detecting structure having a single photodiode and corresponding sensing node" |
| "neighboring unit pixel" | 7 | "nearby unit pixel disconnected from its one or more photodiodes" | " neighboring light detecting structure having a single photodiode and corresponding sensing node" |

### 3.    '017 Patent[7]

| Term | Claims | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|
| "selectively couplable" | 1 | Plain and ordinary meaning; no construction | This term lacks written description support |

---

[7] Nikon reserves the right to appeal the Court's holding that the term "sensing pixel" is not limited to a single-photodiode structure.  Nikon further reserves the right to rebut Plaintiffs' construction for any additional terms not listed herein.

| Term | Claims | Plaintiffs' Construction | Defendants' Construction |
|------|--------|-------------------------|--------------------------|
| | | required | *Alternatively:* |
| | | If the Court decides to construe this term, in the alternative Plaintiffs propose that "selectively couplable" means "selectively connectable directly or indirectly" | "electrically couplable" |
| "in response to a select signal" | 7 | Plain and ordinary meaning; no construction required<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "in response to a select signal" means "in response to an electrical signal" | "a signal that is applied to a select transistor of a unit pixel to couple the unit pixel to an output line" |
| "a switching device configured to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line" | 7 | This term is not subject to 35 U.S.C. § 112, ¶ 6 and no construction is required (plain and ordinary meaning).<br><br>However, if the Court decides to construe the term, it should be construed to mean a switching device configured to interconnect two sensing nodes.<br><br>Function: Interconnecting a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in | This term is governed by 35 U.S.C. § 112, ¶ 6.<br><br>Function: to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line<br><br>Structure: (as shown in FIG. 4): switching device M400 or M450 for interconnecting the sensing node of the currently selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned, in response to a row |

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
la-1397638

65

| Term | Claims | Plaintiffs' Construction | Defendants' Construction |
|------|--------|------------------------|------------------------|
| | | response to a select signal<br><br>Structure: Switching device such as a transistor (e.g., M400, M450.) | select signal. |
| "first sensing pixel" | 7 | "sensing pixel enabled to receive photocharges from one or more corresponding photodiodes" | Term lacks written description support.<br><br>Alternatively:<br><br>"a light detecting structure having a single photodiode and corresponding sensing node" |
| "second sensing pixel" | 7 | "nearby unit pixel disconnected from its one or more photodiodes" | Term lacks written description support.<br><br>Alternatively:<br>"a nearby light detecting structure having a single photodiode and corresponding sensing node" |

4.    '574 Patent[8]

| Term | Claims | Plaintiffs' Construction | Defendants' Construction |
|------|--------|------------------------|------------------------|
| "first pixel"<br><br>"second pixel"<br><br>"third pixel"<br><br>"sensing pixel(s)" | 1, 4, 6, 9-15, 17, 18, 20, 23, 24, 30 | Plain and ordinary meaning; no construction required<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "first pixel," "second pixel," "third | Term lacks written description support.<br><br>Alternatively:<br><br>"light detecting structure having a single photodiode and corresponding sensing node" |

[8] Nikon reserves the right to rebut Plaintiffs' construction for any additional terms not listed herein.

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
la-1397638

66

| Term | Claims | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|
| | | pixel, and "sensing pixel" means "light detecting structure(s) having one or more photodiodes" | |
| "select signal" | 2, 5, 7, 13, 17, 18, 19, 22, 29 | Plain and ordinary meaning; no construction needed.<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "select signal" means "electrical signal." | "signal for selecting a row of image sensing pixels" |
| "selectively electrically coupling" | 3, 9, 13, 24 | Plain and ordinary meaning; no construction needed.<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "selectively electrically coupling" means "selectively electrically connecting directly or indirectly." | This term lacks written description support<br><br>_Alternatively:_<br><br>"electrically coupling" |

### 5.   '335 Patent

| Term | Claim | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|
| Preamble | 1 | "reset transistor coupled between a power supply and the single sensing node for outputting the photoelectric charges stored in the single sensing node, in [] response to a third control signal" is limiting | Entire preamble of claim 1 is a limitation |
| "(a) fully depleting the first and | 1 | Plain and ordinary | fully depleting by "setting both the reset transistor and |

| | | | |
|---|---|---|---|
| second photodiodes" | | | corresponding transfer transistor on while the select transistor is off" |
| "adjusting a turn-on time and a turn-off time for the first and second transfer transistors" | 3 | Plain and ordinary | "varying the turn-on and turn-off times of the first and second transfer transistors" |
| Whether steps (a) – (f) must be performed in order | 1 | Yes, with overlap | Yes (in the specific order set forth in the claim as (a) followed by (b) as followed by (c) as followed by (d) as followed by (e) and as followed by (f).) |

## B.   Plaintiffs' Are Not Entitled to Injunctive Relief

Whether Plaintiffs are entitled to injunctive relief is an issue of law for the Court to decide.  *eBay*, 547 U.S. at 391.  Plaintiffs are not entitled to injunctive relief as a matter of law because Defendants have not infringed any of the asserted claims of the patents-in-suit, and the asserted claims of the patents-in-suit are invalid.

Moreover, even assuming the patents-in-suit are valid and infringed (which they are not), Plaintiffs are not entitled to injunctive relief because they have not suffered and will not suffer irreparable injury; remedies available at law are adequate to compensate for any injury; the balance of hardships between the parties does not favor a remedy in equity; and the public interest would be disserved by a permanent injunction.

## C.   Plaintiffs' Are Not Entitled to Enhanced Damages

An enhanced damages award "should generally be reserved for egregious cases typified by willful misconduct." *Halo Elecs.*, 136 S. Ct. at 1934.  Enhanced damages are only appropriate in "egregious cases of misconduct beyond typical infringement" and should not be awarded in "garden-variety cases."  *Id.* at 1935. Plaintiffs have not shown they are entitled to enhanced damages, as there has been

1  no proof of egregious misconduct on the part of the Nikon defendants.  Plaintiffs

2  cannot prove infringement, let alone any "egregious" misconduct, and Nikon has a

3  good faith belief that the asserted claims of the patents-in-suit are not infringed and

4  are invalid.

5  **V.    DAMAGES**

6      **A.    Damages Generally**

7      Nikon disputes that Plaintiffs are entitled to any damages for the reasons

8  listed within this Memorandum.  Even if Plaintiffs are entitled to damages (which

9  Nikon contends they are not), Plaintiffs are not entitled to damages arising out of

10  the following general categories:

11         • The following Nikon cameras, which are subject to a license:  Nikon

12            D5600, D500, D600, D750, D800, D800E, D810, D810A, D3300,

13            D5300, D5500, D7000, D7500, and D850.

14         • Use of any Nikon accused camera operating in non-infringing modes

15            of operation;

16         • Infringement of the '163 Patent before the date the complaint was filed

17            in this action for failure to mark.

18      **B.    Nikon's Reasonable Royalty Analysis**

19     To the extent Plaintiffs are entitled to any damages (Nikon contends they are

20  not), Nikon will rely on the damages expert opinions of Julie Davis.  As explained

21  in Ms. Davis's report, under 35 U.S.C. § 284, "[u]pon finding for the claimant the

22  court shall award the claimant damages adequate to compensate for the

23  infringement, but in no event less than a reasonable royalty for the use made of the

24  invention by the infringer, together with interest and costs as fixed by the court."  A

25  reasonable royalty is the payment that would have resulted from a hypothetical

26  negotiation between the patent holder and the infringer taking place just before the

27  time when the infringing sales first began.  *See Wordtech Sys. v. Integrated*

28  *Network Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010).

Various factors may be relevant for the evaluation of a reasonable royalty, including the factors outlined in *Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified & aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971).  The *Georgia-Pacific* factors are:

- 1. The royalties received by the patent owner for the licensing of the patent in suit, proving or tending to prove an established royalty;

- 2. The rates paid by the licensee for the use of other patents comparable to the patent in suit;

- 3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

- 4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

- 5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter;

- 6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales;

- 7. The duration of patent and the terms of the license;

- 8. The established profitability of the product made under the patent; its commercial success; and its current popularity;

- 9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out

similar results;

- 10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

- 11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use;

- 12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

- 13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

- 14. The opinion testimony of qualified experts; and

- 15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.  318 F. Supp. at 1120.

Defendants incorporate by reference all evidence in their expert reports. Specifically, in support of their position, Defendants will rely on the following key facts and evidence:

- Evidence and testimony relating to an analysis of the factors

identified in *Georgia-Pacific*;

- Evidence and testimony relating to an analysis of Georgia Pacific factor 15, a hypothetical negotiation pictured to take place between a willing licensee and willing licensor as of the date of first infringement.  In her expert report, Ms. Davis opined that damages would consist of upfront, lump-sum payments for the '163, '335, '312, '017, and '574 patents;

- Evidence and testimony to show the parties to and dates of the hypothetical negotiation;

- Evidence and testimony that shows that the value of the accused features is small or negligible;

- Evidence and testimony regarding comparable licenses;

- Evidence and testimony regarding the amount(s) paid by others for the patents;

- Evidence and testimony regarding the transactional history of the patents-in-suit;

- Evidence and testimony from third parties regarding the valuation of the patents-in-suit;

- Evidence and testimony regarding the appropriate royalty structure;

- Evidence and testimony relating to non-infringing alternatives;

- Evidence and testimony relating to apportionment, including the opinions of Dr. Lorin Hitt;

- Evidence and testimony that the Accused Functionalities are not important to consumers;

- Evidence and testimony that certain categories of damages are inappropriate because various Nikon cameras are licensed;

- Evidence and testimony related to Plaintiffs' failure to mark

1  products in compliance with 35 U.S.C. § 287;

2  • Evidence and testimony that shows Plaintiffs' apportionment

3  methods are unreliable and yield unreasonable results;

4  • Evidence and testimony that shows that Dr. McDuff's conclusion

5  that the outcome of the hypothetical negotiations would result in

6  running royalties is not supported;

7  • Evidence and testimony that shows that Dr. McDuff's adjustment

8  for Nikon's supposed convoyed sales is unreliable;

9  • Evidence and testimony to contradict Plaintiffs' damages expert

10  Dr. McDuff's reasonable royalty and apportionment analysis,

11  including testimony from Defendants' damages and technical

12  experts.

13  **VI.   BIFURCATION OF ISSUES [L.R. 16-4.3]**

14  Defendants request bifurcation of claim construction, indefiniteness, and

15  license, which should be tried first before issues of liability and damages.  The

16  issues of claim construction and indefiniteness are strictly legal matters for the

17  Court to decide.  *See Markman*, 52 F.3d at 976; *Biomedino, LLC v. Water Techs.*

18  *Corp.*, 490 F.3d 946, 949 (Fed. Cir. 2007).  The issue of license interpretation also

19  is strictly a legal issue for the Court to decide.  *Power Lift, Inc. v. Weatherford*

20  *Nipple-Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989); *OS/Sys., Inc. v.*

21  *Instrumentarium Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006).

22  **VII.   MOTION TO STAY**

23  Defendants filed a renewed motion to partially stay this case with respect to

24  the '163 and '335 Patents because the PTAB has instituted *inter partes* review.

25  (ECF No. 203.)  If Defendants' motion to stay is granted, trial would significantly

26  reduce the issues for trial.  For example, trial would proceed on issues related to

27  only the '312, '017, and '574 Patents, and would involve only the Nikon D4

28  camera, as the Nikon D4 camera is representative of the Nikon D4, Df, and D4S

1  cameras for purposes of infringement of the '312, '017, and '574 Patents.

2  **VIII.  JURY TRIAL [L.R. 16-4.4]**

3  The parties have both timely demanded a jury trial.  The issues of

4  infringement, damages, written description and anticipation should be tried to the

5  jury.  The issues of obviousness and license are legal issues with underlying issues

6  of fact.  The issues of claim construction and indefiniteness are strictly legal issues

7  and should be tried to the Court.  *Markman*, 52 F.3d at 976; *Biomedino*, 490 F.3d at

8  949.  The issue of whether Plaintiffs are entitled to permanent injunctive relief

9  should be tried to the Court.  *See eBay*, 547 U.S. at 391.

10 **IX.  ATTORNEYS' FEES [L.R. 16-14.5]**

11 Nikon intends to seek attorneys' fees pursuant to 35 U.S.C. § 285, which

12 may be awarded in exceptional cases.  Nikon also intends to seek costs under

13 Federal Rule of Civil Procedure 54(d)(1).

14 **X.  ABANDONMENT OF ISSUES [L.R. 16-4.6]**

15 Defendants have not abandoned any issues.  Plaintiffs apparently have

16 abandoned infringement allegations against the following camera models, but, at

17 the time of filing this Memorandum, have not formally dismissed them from the

18 case:  D300; D600; D610; D800; D800E; D3400; D7000; D7100.

19

20

21

22

23

24

25

26

27

28

1    Dated:   October 1, 2018          Respectfully submitted,

2                                      JACK LONDEN
                                       VINCENT J. BELUSKO
3                                      MORRISON & FOERSTER LLP

4

5                                      By: */s/ Vincent J. Belusko*
                                           Vincent J. Belusko
6
                                       Attorneys for Defendants
7                                      NIKON CORPORATION;
                                       SENDAI NIKON CORPORATION;
8                                      AND NIKON INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28