UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|---|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

| Proceedings: | (IN CHAMBERS) Order Re: Plaintiffs' Motion for Summary Adjudication (DE 150); Defendants' Motion for Partial Summary Judgment and Claim Construction Ruling (DE 146) |
|---|---|

## I.  INTRODUCTION

On September 26, 2017, plaintiffs Carl Zeiss AG and ASML Netherlands, B.V. (collectively, "Plaintiffs") filed a complaint (the "Complaint") against defendants Nikon Corporation, Sendai Nikon Corporation, and Nikon, Inc. (collectively, "Defendants"). In the Complaint, Plaintiffs assert that Defendants have infringed three patents: (1) Patent No. 6,463,163 (the "'163 patent"); (2) Patent No. 6,731,335 (the "'335 patent"); and (3) Patent No. 9,728,574 (the "'574 patent").

The parties were before this Court in a related case earlier this year. (*See* 2:17-cv-03321-RGK-MRW.) In relevant part, Plaintiffs asserted that Defendants infringed two other patents: (1) Patent No. 8,149,312 (the "'312 patent"); and (2) Patent No. 8,625,017 (the "'017 patent"). On June 26, 2018, the Court granted Plaintiffs' Motion to Sever the '017 and '312 patents from the prior case and consolidate them into this action. As a result, this action now involves five patents: the '163, '335, '574, '017, and '312 patents.

Now before the Court is Plaintiffs' Motion for Summary Adjudication ("Plaintiffs' Motion") and Defendants' Motion for Partial Summary Judgment and Claim Construction Ruling ("Defendants' Motion").

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion and **DENIES** Defendants' Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

## II.   FACTUAL BACKGROUND

Plaintiff Carl Zeiss A.G. ("Zeiss") is a German corporation that produces a wide array of optics-based products and devices, including microscopes, binoculars, eye glass lenses, and camera lenses. Plaintiff ASML Netherlands, B.V. ("ASML") is a Dutch corporation that designs, manufactures, and sells lithography systems for semiconductors, which in turn are used to create chips that power various electronics.

Together, Plaintiffs allege that they own the five patents-in-suit. In general terms, the '312, '017, '574, and '335 patents are directed to a complementary metal oxide semiconductor ("CMOS") image sensor. The '163 patent is directed to a face detection system.

Defendants are Japanese and American entities that manufacture and sell digital cameras and related software. Plaintiffs allege that certain of Defendants' digital cameras (the "Accused Products" or "Accused Cameras") infringe upon the '163, '335, '574, '017, and '312 patents either literally or under the doctrine of equivalents. Accordingly, Plaintiffs seek monetary damages as well as an injunction barring Defendants from engaging in further acts of patent infringement.

Plaintiffs now move for summary adjudication on seven discrete issues and Defendants move for partial summary judgment and claim construction.

## III.   JUDICIAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 970 (Fed. Cir. 1999). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a)–(b).

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324. The materiality of a fact is determined by whether it might influence the outcome of the case based on the contours of the

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL - AMENDED

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|---|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | | |

underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over such facts amount to genuine issues if a reasonable jury could resolve them in favor of the nonmoving party. *Id.*

In a patent case, the Court may engage in claim construction as part of its order on a summary judgment motion. *See Conoco, Inc. v. Energy & Environment Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006).

## IV.   PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION

Plaintiffs move for summary adjudication on seven issues: (1) Plaintiffs own the patents-in-suit; (2) Defendants failed to meet their burden on the marking defense for the '312, '017, '574, and '335 patents; (3) the '312 and '017 patents are not anticipated by the Kaifu and Yuki references; (4) Defendants' written description defense fails as to the '312, '017, and '574 patents; (5) certain Nikon cameras infringe steps (c) through (f) of claim 1 of the '335 patent; (6) the Guidash '900 patent is not prior art to the '312, '017, and '574 patents; and (7) the Yow Thesis is not prior art to the '163 patent. The Court addresses each issue in turn.

### A.   Ownership of the Patents-in-Suit

Plaintiffs contend that there is no dispute that Plaintiffs own the patents-in-suit.

The patents' transactional history is convoluted. (*See* Pls.' Mot. 1:28–2:28.) The '312, '017, and '574 patents originated in application 11/345,207 ("'312 patent application") assigned to Magnachip Semiconductor LLC ("MagnaChip"). This application became the '312 patent. The '017 and '574 patents stem from applications that are continuations of the '312 patent application.

The '335 patent was originally assigned to Hyundai Electronics Industries Co., Ltd., which then reorganized to form Hynix Semiconductor, Inc ("Hynix"). Hynix assigned the '335 patent to MagnaChip in January 2005. On April 15, 2009, MagnaChip assigned the '335 patent and the applications resulting in the '312, '017, and '574 patents to Crosstek Capital, LLC, who then assigned them to Intellectual Ventures II LLC ("IV II") in 2011. IV II assigned the '312, '017, and '335 patents— which had matured from their applications into patents—as well as the '574 application to Intellectual Ventures Fund 99 LLC ("IV Fund"). Finally, Plaintiff ASML's wholly-owned subsidiary, Tarsium, B.V. ("Tarsium"), acquired the '312, '017, and '335 patents and the '574 application from IV Fund in June 2014.

The application that issued into the '163 patent was originally assigned to Hewlett-Packard Company ("HP"). The parties offer conflicting evidence about whether HP later assigned it to Hewlett-

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

Packard Development Company, L.P. ("HP Development"), but agree that Tarsium acquired the '163 patent from HP and HP Development in 2012.

Defendants dispute the final link in this chain of title. Plaintiffs present evidence that in December 2016, Tarsium assigned the '312, '017, '335, and '163 patents and the '574 application to Plaintiff ASML and Carl Zeiss SMT, who then assigned its ownership to Plaintiff Zeiss. Defendants, on the other hand, present evidence that the Tarsium assignment was backdated to be effective as of October 1, 2012, at which time Tarsium did not hold title to any of the patents-in-suit. Defendants note that Carl Zeiss SMT's ownership interest also stemmed from this backdated assignment, so Carl Zeiss SMT could not have validly assigned its ownership to Plaintiff Zeiss. In their Response to Plaintiffs' Statement of Uncontroverted Facts ("Defendants' SOF"), Defendants signal seven other disputes as to the validity of Plaintiffs' chain of title. (*See* Defendants' SOF, Fact Nos. A-19–A25, ECF No. 162-2.)

Accordingly, there is a genuine dispute as to material fact regarding the issue of whether Plaintiffs own the rights to the patents-in-suit. Plaintiffs are not entitled to summary adjudication on this ground.

## B.   Marking Defense for the '312, '017, '574, '335 Patents

Plaintiffs next request summary adjudication that Defendants failed to meet the burden of production identifying unmarked products under the '312, '017, '574, and '335 patents pursuant to 35 U.S.C. § 287 ("marking statute"). 35 U.S.C. § 287(a). Under the marking statute, "a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover damages." *Arctic Cat Inv. v. Bombardier Recreational*, 876 F.3d 1350, 1365 (Fed. Cir. 2017). Defendants may assert the "marking defense"—that Plaintiffs failed to comply with the marking statute, and thus the infringement claims fail. An alleged infringer challenging the patentee's compliance with the marking statute bears the burden of production to "articulate the products it believes are unmarked 'patented articles' subject to § 287." *Id.* at 1368.

Defendants do not identify any unmarked products under the '312, '017, and '574 patents. Therefore, a marking defense as to those patents fails.

With respect to the '335 patent, both parties agree that because it contains only "method claims," it falls outside the purview of the marking statute. The marking statute does not apply "where the patent is directed to a process or method." *Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009). Plaintiffs and Defendants agree that '335 contains only method claims. Therefore, products licensed under the '335 patent do not need to be marked, so this defense fails regardless of whether Defendants identify unmarked products under this patent.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL - AMENDED

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|----------|------------------------|------|-------------------|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

As a result, Plaintiffs are entitled to summary adjudication that Defendants' marking defense fails with respect to the '312, '017, '574, and '335 patents.

### C.   Anticipation of the '312 and '017 Patents by Kaifu and Yuki

Plaintiffs request summary adjudication that U.S. Patent Application Pub. No. 2003/0010896 ("Kaifu") and U.S. Patent Application Pub. No. 2002/0024606 ("Yuki") (collectively, "Kaifu and Yuki references") do not anticipate the claims of the '312 and '017 patents.

The first step in an invalidity analysis is determining the proper meaning of the relevant claim terms in dispute, which is a question of law. *Akami Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1195 n.4 (Fed. Cir. 2003). The court then determines whether, based on the court's claim construction, any of the asserted claims are anticipated by prior art. *U.S. Water Services, Inc. v. Novozymes A/S*, 843 F.3d 1345, 1350 (Fed. Cir. 2016).

### 1.   Claim Construction

Plaintiffs propose six claim constructions in the '312 and '017 patents. Under their proposed construction, Plaintiffs argue, the Kaifu and Yuki references do not anticipate any of their asserted claims. The Court must first construe the asserted claims.

The claims of the patent define the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). First, the "words of a claim 'are generally given their ordinary and customary meaning.'" *Id.* (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The plain meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* The context in which the term is used in a claim can be "highly instructive." *Id.* at 1314.

The court thus reviews the claims' ordinary meaning within the context of the patent specification. *Id.* (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)). The specifications are particularly important. *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1314 (citing *Vitronics*, 90 F.3d at 1582). In addition to the specification, the patent's prosecution history may be instructive. *Markman*, 52 F.3d at 980.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

If the claims' meaning is still unclear, the court may then look to extrinsic evidence concerning relevant scientific principles or the meaning of technical terms, including expert testimony, dictionaries, and learned treatises. *Phillips*, 415 F.3d at 1314; *Markman*, 52 F.3d at 980. Extrinsic evidence is, however, less instructive than the claim language, specifications, or prosecution history, and should be given less weight. *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004).

The Court addresses each of the proposed claim constructions in turn.

> a.      '312 Patent Claim 1: "selectively shared . . ."

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "selectively shared with a sensing node of a unit pixel in a current scan line" (claim 1 of '312 patent) | "connectable via a switch with a sensing node of a unit pixel in a current scan line to selectively receive photocharges from one or more photodiodes of the unit pixel in the current scan line and not from any photodiode in the previous scan line" | Plain and ordinary meaning (Smith Decl. Ex. 5 at 24, ECF No. 166-5.)<br><br>Unit pixel(s): "light detecting structure having a single photodiode and corresponding sensing node." (*Id.* at 23.) |

Claim 1 of the '312 patent recites:

> A complementary metal-oxide semiconductor (CMOS) image sensor comprising: a pixel array including a plurality of unit pixels arranged in a matrix shape of rows and columns, each unit pixel comprising: a photodiode configured to generate photocharges by absorbing an external light; and a sensing node configured to receive the photocharges transferred from the photodiode; wherein a sensing node of a unit pixel in a previous scan line is *selectively shared with a sensing node of a unit pixel in a current scan line* in response to a line select signal of the current scan line." (emphasis added.)

It is helpful to begin with the object of the invention. As the Court explained in the prior related case, the '312 patent was invented to increase the storage capacitance of a sensing node via a sharing scheme. The prior art was inadequate because its sensing node did not have enough capacitance to receive increased photocharges, making it difficult to obtain the desired photo-sensitivity. The '312 patent is directed to fixing this problem by adapting the sensing node sharing scheme; that is, by "sharing the sensing node of an adjacent non-selected pixel while a selected pixel operates." ('312 Patent, 3:14–19.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|----------|------------------------|------|------------------|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | |

Claim 1 recites the mechanism by which the line select signal of a current scan line shares the sensing node of a neighboring previous scan line so that both sensing nodes receive the photocharges transferred from the photodiode of the current scan line. This increases the capacitance of the current scan line because instead of sending photocharges to just one sensing node, the photodiode sends photocharges to both its own sensing node and the sensing node of a neighboring scan line.

As the specification illustrates, "the CMOS image sensor of the present invention shares the sensing node of the nearest-neighboring unit pixel of a *non-selected line* when the specific unit pixel of a selected line is operating." ('312 Patent, 5:21–24.) This enables the selected line to "receive much more photocharges generated due to the enhanced fill-factor." (*Id.* at 5:24–25.) A key element of this invention is that when the sharing occurs, the neighboring unit pixel is not itself selected; that is, it is not receiving its own photocharges from its own photodiode. If it were, the object of this sharing scheme would be defeated. The capacitance of a unit pixel is increased so that it can receive increased photocharges when its sensing node connects to a neighboring sensing node that *is not already in use*. If the neighboring sensing node was itself receiving photocharges from its own photodiode, the overall fill-factor would not increase by distributing the photocharges among multiple sensing nodes.

Defendants disagree with this construction: "There is no requirement in the claim language of the '312 or '017 patent that photocharges **not** be received from any photodiode in the previous scan line." (Ds.' Opp'n, 7:13–14, ECF No. 162-1) (emphasis in original.) But the specification language makes it clear that the sensing node that is shared comes from the nearest-neighboring *non-selected line*. In light of the invention's purpose, the requirement that the photocharges not be received from any photodiode in the previous scan line while the sharing scheme is in operation is implied. Otherwise, the unit pixel's fill-factor would not be increased; its photocharges would merely be dispersed.

Plaintiffs' construction is thus logical. Only charges from the photodiode(s) of the currently scanned pixel are transferred to the shared neighboring sensing node, not charges from that neighboring sensing node's own photodiode.

        *b.*     *'312 Patent Claim 7: "selected unit pixel" and "neighboring unit pixel"*

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|------------|--------------------------|--------------------------|
| "selected unit pixel" (claim 7 of '312 patent) | "unit pixel enabled to receive photocharges from one or more corresponding photodiodes" | "selected light detecting structure having a single photodiode and corresponding sensing node" |
| "neighboring unit pixel" (claim 7 of '312 patent) | "nearby unit pixel disconnected from its one or more photodiodes" | "neighboring light detecting structure having a single photodiode and corresponding sensing node" |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | |

Claim 7 of the '312 patent recites:

A complementary metal-oxide sensor (CMOS) image sensor comprising: a pixel array in which a plurality of unit pixels are arranged in a matrix shape of rows and columns; and a switching device configured to interconnect a sensing node of a *selected unit pixel* to a sensing node of a *neighboring unit pixel* in response to a select signal.

Defendants' construction appears to be a remnant from the prior case, in which the parties disputed whether "a photodiode" meant "one" or "more than one." (*See* 2:17-cv-03321-RGK-MRW, ECF No. 438.) Here, the Court adopts Plaintiffs' construction for "selected unit pixel." The selected unit pixel within the meaning of claim 7 is the pixel that is enabled to receive photocharges from one or more corresponding photodiodes.

The "neighboring unit pixel" is the nearby unit pixel that may be shared with the selected unit pixel via its shared sensing node. As described above, when it is being shared, the neighboring unit pixel is not receiving photocharges from its own photodiode; that is, it is not connected to its one or more photodiodes. As such, the Court adopts Plaintiffs' construction in its essence: the term "neighboring unit pixel" is construed as a "nearby unit pixel that is not connected from its one or more photodiodes."

  *c.*  *'017 Patent Claim 1: ". . . selectively couplable to a sensing node . . ."*

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "the sensing node is selectively couplable to a sensing node of a sensing pixel in a previous scan line" (claim 1 of '017 patent) | "a sensing node in a current scan line is selectively connectable via a switch with a sensing node of a sensing pixel in a previous scan line to receive an electrical signal from one or more photodiodes of the sensing pixel in the current scan line and not from any photodiode in the previous scan line" | Plain and ordinary meaning (Smith Decl. Ex. 5 at 25, ECF No. 166-5.) |

Claim 1 of the '017 patent recites:

An image sensor, comprising: a pixel array in which a plurality of sensing pixels are arranged in a matrix of rows and columns, wherein a sensing pixel in the pixel array includes: a photodiode operable to produce an electrical signal in response to incident light; and a sensing node arranged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

to receive the electrical signal, wherein *the sensing node is selectively couplable to a sensing node of a sensing pixel in a previous scan line* of the pixel array.

The Court also adopts Plaintiffs' construction here, for the reasons explained above. The sharing scheme of this invention allows the sensing node of the current scan line to be connected to the sensing node of a previous scan line.

> d.      '017 Patent Claim 7: "first sensing pixel" and "second sensing pixel"

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "first sensing pixel" (claim 7 of '017 patent) | "sensing pixel enabled to receive an electrical signal from one or more corresponding photodiodes" | "a light detecting structure having a single photodiode and corresponding sensing node" |
| "second sensing pixel" (claim 7 of '017 patent) | "nearby sensing pixel disconnected from its one or more photodiodes" | "light detecting structure having a single photodiode and corresponding sensing node" |

Claim 7 of the '017 patent recites:

> An image sensor, comprising: a pixel array in which a plurality of sensing pixels are arranged in a matrix of rows and columns, wherein each sensing pixel comprises: a photodiode operable to produce an electrical signal in response to incident light; and a sensing node arranged to receive the electrical signal; and a switching device configured to interconnect a first sensing node of a *first sensing pixel* to a second sensing node of a *second sensing pixel* in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line.

The term "first sensing pixel" refers to the sensing pixel that originally receives the photocharges from its photodiode; or, the sensing pixel that shares its neighbor's sensing node in order to increase its own capacitance. Accordingly, "second sensing pixel" refers to the sensing pixel of the nearby, non-selected neighboring line that connects to the first sensing node when the first needs to increase its fill-factor. As discussed, the second sensing pixel would not be connected to its own photodiode to receive photocharges when it is being shared with the first sensing pixel. Therefore, the Court adopts the following constructions: "first sensing pixel" means "sensing pixel enabled to receive an electrical signal from one or more corresponding photodiodes," and "second sensing pixel" means "nearby sensing pixel not connected to its one or more photodiodes."

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL - AMENDED

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|---|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | | |

2.    *Anticipation by Kaifu or Yuki*

Given the Court's construction of the claim terms above, the next issue is whether the Kaifu or Yuki references anticipate the '312 and '017 patents. Plaintiffs contend that they do not.

For a claim to be anticipated by a prior art, the claim and the prior art must be the same: "Anticipation requires that all of the claim elements and their limitations are shown in a single prior art reference." *TF3 Limited v. Tre Milano, LLC*, 894 F.3d 1366, 1374 (Fed. Cir. 2018) (citing *In re Skvorecz*, 580 F.3d 1262, 1266 (Fed. Cir. 2009)). "A patent is invalid for anticipation when the same device or method, having all of the elements contained in the claim limitations, is described in a single prior art reference." *Crown Operations Intern., Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002). "An anticipating reference must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by persons of ordinary skill in the field of the invention." *Id.*

As with other claims of invalidity, the party wishing to invalidate a patent by anticipation must show by clear and convincing evidence so that no reasonable jury could find otherwise. *Eli Lily & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2011). Anticipation is a question of fact. *IPXL Holdings, L.L.C., v. Amazon.com, Inc.*, 430 F.3d 1337, 1380 (Fed. Cir. 2005). But if the record reveals that no reasonable jury could find that the patent is not anticipated, summary judgment is appropriate. *Telemax Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001).

 Here, the parties do not dispute what Kaifu and Yuki disclose. Generally, Kaifu and Yuki both teach the coupling or sharing of sensing nodes by applying signals to switches. More specifically, however, they each teach the *averaging* of photocharges throughout a plurality of pixels. This distinction is critical.

Kaifu discloses a method of coupling the outputs of neighboring photodiodes via switches to calculate the average value of potentials. Unlike the '312 and '017 patents, Kaifu does not disclose that the shared sensing nodes receive charges from only one pixel at a time. This element is key to the inventions: the capacitance of the first pixel is increased because it shares its photocharges with a second sening pixel. In contrast, the Kaifu invention averages the charges among a plurality of sensing nodes to "suppress sensitivity drop upon adding and reading out pixels for resolution conversion." (Kaifu, 0015.) Nothing in the Kaifu reference indicates that this averaging scheme increases the capacitance of the first pixel.

Similarly, Yuki discloses an image sensing apparatus in which a plurality of pixels transfer charges accumulated in a photodiode to a floating sensing node where the charges are averaged among the pixels via a transfer switch. The goal in Yuki is to increase image quality "when an object image is

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | |

sensed over a plurality of sensing areas." (Yuki, 0018.) The averaging mechanism does not increase the fill-factor of the first sensing pixel as it does in the '312 and '017 patents.

For the Kaifu and Yuki references to anticipate the '312 and '017 patents, they must describe the same method and have all the elements contained in the claim limitations. Here, they do not. Averaging photocharges among a plurality of sensing pixels to obtain a higher image quality is not the same as sending a photodiode's photocharges to two sensing pixels to increase its capacitance. When photocharges are averaged in Kaifu and Yuki, it does not increase any sensing node's fill-factor; it merely disperses the charges throughout a plurality of nodes.

Accordingly, the Court finds that the Kaifu and Yuki references do not anticipate the '312 and '017 patents and thus grants summary adjudication on this ground.

### D.    Written Description Defense to the '312, '017, '574 Patents

Plaintiffs also move for summary adjudication that certain claim terms of the '312, '017, and '574 patents are not invalid for lack of written description under 35 U.S.C. § 112. Like anticipation, lack of written description is a question of fact judged from the perspective of a person of ordinary skill in the art as of the patent's filing date. *Vas-Cath, Inv. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991). When a party moves for summary adjudication that its patent claims are not invalid, as Plaintiffs do here, the nonmoving party must produce evidence raising a genuine issue of fact regarding whether the patents failed the written description requirement. *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

A patent specification must contain "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. § 112(a). Specifically, Defendants contend that the terms "selectively shared" from the '312 patent, "selectively couplable" from the '017 patent, and "selectively electrically coupling" from the '574 patent lack written description support and thus those claims are invalid. Defendants must eventually show this by clear and convincing evidence.

The crux of the parties' argument is whether the sensing nodes in the '312, '017, and '574 patents are "selectively" shared with one another—as in shared only at certain times—or always shared. The three patents are continuations of one another and share identical specifications, so the written description is the same in each.

The claims and written description illustrate that the sensing nodes are sometimes shared and at other times not shared. For example, claim 4 of the '574 patent recites the following: "the method of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | |

claim 1, further comprising: after said generating an output signal, *decoupling* the first sensing node from the second sensing node and electrically *coupling* the second sensing node to a third sensing node of a third pixel of the image sensor." ('574 Patent, Claim 4). The language "decoupling" and "coupling" indicates that the sensing nodes of the selected line and the neighboring line are disconnected, then the selected line and a third line are connected. If the sensing nodes were always shared with one another, as Defendants suggest, this language would be superfluous. Moreover, in the '574 patent specifications, the switching device is described as "*interconnecting* the sensing node of the currently selected pixel to the sensing node of the nearest-neighboring pixel which is lately scanned, *in response to the row select signal*." ('574 Patent, 5:12–16.) A row select signal, as described, *signals* the sensing notes to connect with one another; thus, the nodes are not already connected.

Defendants' expert appears to say the same thing: "Operating together by a line/select signal, a select transistor and a switching device M400/M450 to ensure that sensing nodes in a previous and a current scan lines are shared *whenever the current scan line is active*." (Pls.' Mot., Ex. 26, ¶ 82, ECF No. 150-37.) The conditional language indicates that the select transistor and the switching device ensure the sensing nodes are shared when the current scan line is active, but not otherwise. When the current scan line is inactive, the select transistor and switching device do not operate by a signal to interconnect the nodes. Individuals skilled in the art fully understand the invention as described, and the written description defense fails.

Accordingly, Plaintiffs are entitled to summary adjudication on this issue.

E.     **Nikon Cameras' Infringement of Claim 1(e)-(f) of the '335 Patent**

Plaintiffs request summary adjudication that Defendants' Accused Cameras infringe claim elements 1(c)-(f) of the '335 patent. Plaintiffs accuse 31 Nikon cameras of infringing the claims of the '335 patent, including the D4, D4S, and Df cameras. (*See* Pls.' Mot., 11 n.3, ECF No. 173.) Defendants counter with a request that the Court grant summary judgment of non-infringement *sua sponte* with respect to the D4, D4S, and Df cameras.

A claim for patent infringement must be shown by a preponderance of the evidence. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). First, the court construes the claims as a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372–74 (1996). Next, the court must determine whether the Accused Products contain each limitation of the properly construed claims, either literally or under the doctrine of equivalents. *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005). When the only dispute is about the proper claim construction, summary judgment is appropriate. *Voice Techs. Group, Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 612 (Fed. Cir. 1999).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | |

### 1.   *Claim Construction*

The parties offer different constructions of the phrases "turning on" and "turning off" as they appear in elements 1(c) through 1(f) of the '335 patent. The '335 patent is directed to providing a CMOS image sensor with a reduced chip area by decreasing the number of transistors in each pixel array and providing a method for driving the sensor. At issue here is whether "turning on" and "turning off" transistors in steps 1(c)-1(f) of '335 requires *ensuring* that the transistors are on or off, as Plaintiffs contend, or whether it requires the transistors to *transition* to on or off during that step, as Defendants suggest.

| Claim Term | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|
| "turning on/off" as used in method steps 1(c)-1(f) of '335 patent | "turning on" means *ensuring that* the specified transistor is on; "turning off" means *ensuring that* the specified transistor is off | "turning on" means *transitioning* from an off state to an on state and "turning off" means *transitioning* from an off state to an on state, wherein the steps occur in the order recited in the limitation |

Claims are primarily given their plain and ordinary meaning. *Phillips*, 415 F.3d at 1312–13. Here, the Court construes the phrases "turning on" and "turning off" as they are used in Claim 1 to mean *transitioning* from on to off. Although the phrase "*turned* off" as it is used elsewhere in the patent may align with Plaintiffs' construction, the gerund "turning" is not used in ordinary language to mean "remaining in the same state." Lights that are "turning off" or "turning on" are transitioning from one state to the next. Throughout claim 1, the transistors go from "turning off" to "turning on" and vice versa in a way that plainly means they transition from on to off.

Accordingly, the Court construes the phrases "turning off" and "turning on" as used in steps 1(c) through 1(f) of claim 1 of the '335 patent to mean that the transistors *transition* from on to off.

### 2.   *Infringement*

Plaintiffs argue that the Accused Cameras "perform claim elements 1(c) through 1(f) of the '335 patent exactly as the specific embodiment in the patent does." (Pls.' Mot., 11:3–4, ECF No. 150.) In the alternative, Defendants argue that the D4, D4S, and Df cameras do not infringe the '335 patent at all based on their construction of the phrases "turning on" and "turning off."

To prove literal infringement, the patentee must show that the accused device contains each limitation of the asserted claims. *Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|---|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | | |

1247 (Fed. Cir. 2000). Under the doctrine of equivalents, even if the accused products do not literally infringe on a claim, the accused infringer can still be liable for patent infringement. *See Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 866 (Fed. Cir. 2017).

Defendants contend that under their proposed claim construction, wherein the phrase "turning off" means the transition from on to off, the Accused Cameras D4, D4s, and Df do not infringe as a matter of law. In the Accused Products' undisputed annotated timing diagram, the transfer transistors remain in an "off" or "on" state. (*See* Ds.' Opp'n 15:4–23, ECF No. 162-1.) Defendants suggest that because they do not *transition* from off to on, or vice versa, there is no "turning off the reset transistor" and steps 1(c) through 1(f) of '335 are not literally satisfied.

The timing diagram of the Accused Cameras is not disputed. It shows, for example, that the transfer transistors remain in an "off" state during the time that steps 1(c) and 1(e) of the '335 patent are allegedly performed. But in steps 1(c) and 1(e) of the '335 patent, the transfer transitors are described as "turning off," or transitioning from on to off. Accordingly, the Accused Products cannot literally infringe.

They may infringe under the doctrine of equivalents, depending on the importance of the transition from on to off in that step. There are two tests for infringement under the doctrine of equivalents: (1) whether the accused product performs substantially the same function in substantially the same way to obtain the same result; and (2) whether the accused product is substantially different from what is patented. *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 866 (Fed. Cir. 2017). Whether a patent infringes under the doctrine of equivalents is a question of fact. *Ferguson Beauregard v. Mega Sys., Inc.*, 350 F.3d 1327, 1388 (Fed. Cir. 2003).

Plaintiffs' expert asserts that even if Defendants' construction is adopted, the transition to an on or off state "constitutes an insubstantial difference to ensuring that the specified transistor is on or off." (Pls.' Reply, 8:17–21, ECF No. 201.) Defendants, on the other hand, counter that "[t]urning on and turning off a transistor is a very different function from keeping on and keeping off a transistor," rendering the Accused Products' performance "substantially different." (Ds.' Opp'n, 15:27–28, ECF No. 162-1.)

Whether the Accused Products perform a substantially different function because they do not transition from "on" to "off" is a question of fact. Accordingly, Plaintiffs' request for summary adjudication that Defendants' Accused Cameras infringe claim elements 1(c)-(f) of the '335 patent is denied, as is Defendants' request that the Court grant summary judgment on non-infringement *sua sponte*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

### F.   The Guidash '900 Patent as Prior Art to the '312, '017, and '574 Patents

Plaintiffs request summary adjudication that the U.S. Patent 7,705,900 ("Guidash '900") is not prior art and thus cannot anticipate the '312, '017, and '574 patents because it was filed after the application that issued those patents. Defendants counter that the '312, '017, and '574 patents are invalid for anticipation based on an alternate reading of the filing dates.

"A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). To anticipate under 35 U.S.C. § 102(a), if a claimed invention was known, used, patented, or described in a publication prior to the patentee's date of invention, the claim lacks novelty and is invalid. 35 U.S.C. § 102(a). Therefore, it is necessary to determine the effective filing date of the claimed invention to determine which patents could constitute prior art.

The Guidash '900 patent was issued from an application filed on April 21, 2006. The '312 patent was based on an application filed on January 31, 2006, three months prior. The '017 patent was issued from an application filed on March 2, 2012. Finally, the '574 patent was issued from an application filed January 3, 2014. Based on these dates alone, the Guidash '900 would predate only the '017 and '574 applications. Plaintiffs contend, however, that because the '017 and '574 patents are continuances of the '312 patent, they are entitled to the earlier priority date of the '312 patent in January 2006. Defendants raise evidence to the contrary. (*See* Smith Decl. Ex. 13, ¶¶ 95, 99, ECF No. 166-13.)

Defendants further contend that the Guidash '900 application in April 2006 was based on a separate provisional application, Provisional Application No. 60/686,104 ("'104 provisional"), filed June 1, 2005, which predates the applications of all three patents. In support, Defendants' expert opines that the claims of Guidash '900 are supported by the '104 provisional. (*See* Butterworth Decl., ECF No. 167.)

"For a patent to claim priority from the filing date of its provisional application, it must satisfy 35 U.S.C. § 119(e)(1)." *Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015). Under 35 U.S.C. § 119(e)(1), the provisional application's specification must include a written description of the invention as well as the manner and process of making it, clearly enough "to enable an ordinarily skilled artisan to practice the invention claimed in the non-provisional application." *Id.* Whether a provisional application is a prior art "depends on its written description support for the claims of the issued patent of which it was a provisional." *Id.* at 1382. The party challenging the patent bears the burden of proving that the patent is entitled to the filing date of the provisional application by comparing the claims of the prior art to the disclosure in that patent's provisional application. *Id.* at 1381.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|---|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | | |

Here, Defendants bear that burden. Plaintiffs argue that Defendants failed to demonstrate that the claims of the Guidash '800 patent are supported by its provisional application and thus that the 2005 filing date applies. Defendants, however, provide evidence that their expert analyzed the Guidash '900 claims and compared them to the '104 provisional, opining that the '104 provisional "discloses substantially the same material disclosure that support both the claims of the Guidash '900 and render invalid the asserted claims of the '017 and '574 patents." (Butterworth Decl., ¶¶ 10–12, ECF No. 167.)

Defendants have thus compared the claims of the Guidash '900 to the disclosure in the Guidash provisional application as required. *See Dynamic Drinkware,* 800 F.3d at 1378. Accordingly, there remains a genuine issue of material fact as to whether the provisional application supports the claims of the Guidash '900 patent to claim the priority of the earlier filing date, and thus whether the timing allows anticipation.

Summary adjudication is therefore not appropriate on this issue.

**G.    The Yow Thesis as Prior Art to the '163 Patent**

Finally, Plaintiffs request summary adjudication that the Yow Thesis, a dissertation written by Kin Choong Yow entitled "Automatic human face detection and localization," is not prior art to the '163 patent. Plaintiffs argue that Defendants cannot prove by clear and convincing evidence that the thesis was publicly accessible before the date the '163 patent was filed, and as such it could not have been a prior art that anticipates the '163 patent.

A patent is invalid if the claimed invention was described in a printed publication before its filing date. 35 U.S.C. § 102(a)(1). "The determination of whether a document is a 'printed publication'. . . 'involves a case-by-case inquiry into the facts and circumstances surrounding the reference's disclosure to members of the public.'" *Medtronic, Inc. v. Barry*, 891 F.3d 1368, 1380 (Fed. Cir. 2018) (citing *In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004)). The touchstone of this inquiry is "public accessibility." *Medtronic*, 891 F.3d at 1380. "A reference will be considered publicly accessible if it was disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence can locate it." *Id.* (citations omitted). When a reference is stored in a library, "we generally inquire whether the reference was sufficiently indexed or cataloged." *Id.*

Defendants present evidence that the Yow Thesis was deposited in the University of Cambridge library by March 17, 1998. The '163 patent was filed January 11, 1999. For the Yow Thesis to anticipate the '163 patent, it must have been a printed publication that was publicly accessible within the meaning of 35 U.S.C. § 102 prior to that date in 1999.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL - AMENDED

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |


The parties offer conflicting evidence regarding whether the depositing of the Yow Thesis at the Cambridge Library in 1998 means the thesis was catalogued, indexed, or otherwise made publicly accessible, as is required to constitute a "printed publication." Defendants have presented specific evidence sufficient to create a genuine issue of material fact as to whether the Yow Thesis was a printed publication. Accordingly, summary judgment on this issue is not appropriate.

### H.    Conclusion

For the foregoing reasons, the Court grants Plaintiffs' Motion as to the following three issues: (1) the marking defense for the '312, '017, '574, and '335 patents fails; (2) the '312 and '017 patents are not anticipated by the Kaifu and Yuki references; and (3) Defendants' written description defense fails as to the '312, '017, and '574 patents.

## V.    DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants move for summary adjudication of the following issues: (1) the claims of the '017 and '312 patents are invalid; (2) the '574 patent is not infringed; (3) claim construction on the '335 patent; (4) certain Accused Products do not infringe the '335 patent; (5) Sony sensors are licensed under the '335 patent; and (6) the '163 patent is not infringed. The Court addresses each argument in turn.

### A.    Validity of the '017, '312, and '574 Patents

Defendants request for summary judgment that the asserted claims of the '017 and '312 patents are invalid. The crux of Defendants' argument is that based on this Court's prior claim construction of the '017 and '312 patents in a related case, the claims of both are invalid for lack of written description and are not enabled. (*See* 2:17-cv-03321-RGK-MRW, ECF No. 438.)

In the prior case, the Court construed the terms "unit pixel" and "sensing pixel" within the '312 and '017 patents to encompass one or more photodiodes. The Court considers Defendants' arguments with this construction in mind.

Defendants first contend that the '017 and '312 claims are invalid because the patents' specifications provide no support for the use of multiple photodiodes for a given unit pixel. Defendants raise two arguments: lack of written description and lack of enablement. Both are questions of fact judged from the perspective of a person of ordinary skill in the art as of the patent's filing date. *Vas-Cath, Inv. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991). A patent specification must contain "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. § 112(a). Similarly, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|---|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | | |

enablement requirement is satisfied when a person of ordinary skill in the art, after reading the specification, can practice the full scope of the claimed invention without undue experimentation. *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993).

Defendants base their argument on the Court's Order in which the Court held that the terms "unit pixel" and "sensing pixel" encompassed *one or more* photodiodes rather than simply just one. (*See* 2:17-cv-03321-RGK-MRW, ECF No. 438.) As explained before, "an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) (citation omitted). The court also explained that "[t]he exceptions to this rule are extremely limited: a patentee must 'evince[ ] a clear intent' to limit 'a' or 'an' to 'one.'" *Id.* In other words, "[a]n exception to the general rule arises *only* "where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule." *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) (citing *Baldwin*, 512 F.3d at 1342–43). The Court went on to find that the specification and the claim language are not sufficient to overcome the general rule that "a" means "one or more."

Defendants now contend that the '312 and '017 written descriptions fail to teach unit pixels containing one or more photodiodes. This is not so. Defendants present no evidence that a person skilled in the art of CMOS image sensors would be unable to understand the specifications to indicate that "a" can mean "one or more" in open-ended claims containing the phrase "comprising." *See Baldwin*, 512 F.3d at 1342. Plaintiffs, on the other hand, present evidence that pixels having one or more photodiodes were common at the time the patents were filed.

Similarly, Defendants argue that the claims fail for lack of enablement because a person skilled in the art would need to perform undue experimentation to practice the full scope of the inventions. Plaintiffs present evidence that a skilled artisan would have little difficulty modifying the preferred embodiments in the '312 and '017 patents to include more than one photodiode. (Marchese Decl., Ex. 1, Subramanian Rebuttal Rep. ¶¶ 185–188, ECF No. 185-10.) In contrast, Defendants present evidence that skilled artisan *would* need to perform undue experimentation to determine how to implement a unit pixel with "up to several hundred" photodiodes. (Butterworth Report ¶¶ 80, 93, 96, ECF No. 167.)

Accordingly, there is a genuine issue as to material fact regarding the invalidity of the '017 and '312 patents for lack of written description and enablement and summary judgment is not appropriate on this ground.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|---|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | | |

### A. Infringement of the '574 Patent

Defendants next argue that the "pixel" limitations of the claims should be construed as limited to a pixel having a *single* photodiode per sensing node, thereby precluding infringement, because the Accused Products have two photodiodes. The Court engages in claim construction first.

#### 1. Claim Construction

Defendants propose that the Court construe the terms "sensing pixel," "first pixel," "second pixel," and "third pixel" in the '574 patent to be limited to *one* photodiode per sensing node. The Court has already construed the terms "unit pixel" and "sensing pixel" in the '017 and '312 patents to mean *one or more* photodiodes, as explained above. But Defendants believe the '574 patent requires a narrower construction: "Because the '574 claims do not recite any pertinent open-ended claim language regarding the photodiodes, the *Baldwin* case does not apply." (Ds.' Mot. 6:9–11, ECF No. 153-1.)

To be sure, the '574 patent does not contain the same open-ended claim language that this Court construed with respect to the '017 and '312 patents ("each unit pixel *comprising: a photodiode*"). There is no mention of a photodiode in the '574 claim language at all. Claim 1 recites, in relevant part: "A method, *comprising: generating photocharge* at a first pixel of an image sensor, the first pixel having a transfer transistor and a first sensing node." ('574 Patent, Claim 1.) In contrast, claim 1 of the '312 patent reads in relevant part: "each unit pixel *comprising: a photodiode* configured to generate photocharges." ('312 Patent, Claim 1.)

The specifications for the '574, '017, and '312 patents are identical, as the '574 is a continuation of the prior two. As a result, this Court's prior analysis applies here. The Court cannot conclude that the patent specifications evince a clear intent to limit the claim limitation to a single photodiode. More importantly, there is no language in the '574 claims that limits the invention to one photodiode per pixel either. The phrase "comprising" as it appears in the transition of claim 1 is open-ended, indicating that the invention can include additional elements as long as it includes the elements listed in the claim. *See MagSil Corp. v. Hitachi Global Storage Technologies, Inc.*, 687 F.3d 1377, 1383 (Fed. Cir. 2012); *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371 (Fed. Cir. 2005); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001). Accordingly, the Court finds no reason to depart from its prior construction of the related '017 and '312 patents to allow the terms "sensing pixel," "first pixel," "second pixel," and "third pixel" in the '574 patent to include *one or more* photodiodes per sensing node.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

    2.    <u>*Infringement*</u>

Defendants request summary judgment that the Accused Products do not infringe the asserted claims of the '574 patent, as they have more than one photodiode per pixel. But because the Court does not adopt Defendants' limited construction above, summary judgment is not appropriate here. There remains an issue of fact regarding whether the Accused Products infringe the '574 patent.

    3.    <u>*Lack of Written Description and Enablement*</u>

Defendants argue in the alternative that if the Court adopts the same construction of the '017 and '312 patents for the '574 patent, then the patent fails for lack of written description and enablement. Defendants arguments are the same as those articulated with respect to the '312 and '017 patents; namely, that the open-ended claim language renders the patent invalid. For the reasons outlined above, the Court disagrees. The written description of the '574 patent is identical to that of the other two. There is therefore the same genuine issue of material fact as to the patent's invalidity, and as such, summary judgment is not granted.

**B.**    <u>**'335 Claim Construction**</u>

Defendants next argue that claim 1 of the '335 patent should be construed as requiring that: (1) the method steps are performed in the sequence as written; and (2) the preamble of claim 1 is a claim limitation setting forth the structure upon which the method is to be performed.

    1.    <u>*Performance of the '335 Claim 1 Method Steps in Sequence*</u>

Defendants present evidence that the claim 1 method steps are intended to be performed in order. (Smith Decl., Ex. I at NIKON708300010934-35, ECF No. 154-8.) Plaintiffs agree. The crux of the debate arises from Plaintiffs' contention that the steps also may overlap.

Figure 5, one of the preferred embodiments, illustrates a timing chart of control signals to control transistors of a unit pixel. ('335 Patent, 5:25–28.) The description indicates that in that embodiment, step B1 occurs at the same time as C1, D1, and E1. That is, "[s]ection B1 continues on *regardless of the states of the reset transistor* M1" and other transistors that transition in sections C1, D1, and E1. ('335 Patent, 5:34–38.) Section B1 illustrates the photodiode generating and integrating photoelectric charges. This diagram, however, better aligns with claim 2, which recites: "The method as recited in claim 1, wherein the step (b) comprises the step of generating and integrating the photoelectric charges of the first photodiode, *regardless of the states of the reset transistor*, the second transfer transistor and the select transistor, while the first transfer transistor is turned off." ('335 Patent, Claim 2.) Claim 2 recites

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|---|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | | |

an alternative method to claim 1. Accordingly, although the steps overlap in claim 2, the patent does not disclose an overlap in claim 1.

The Court thus construes the method steps in claim 1 to mean that they perform in sequence but is not persuaded that the steps necessarily overlap.

    2.    *The '335 Claim 1 Preamble as a Claim Limitation*

Generally, the preamble does not limit the claim. *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010). The preamble limits the claim only in rare circumstances where it recites the "essential structure or steps" or when it is "necessary to give life, meaning, and vitality to the claim." *Id.* If deletion of the preamble phrase "does not affect the structure or steps of the claimed invention," the preamble is not limiting. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

Plaintiffs agree that part of the claim 1 preamble limits the claim; specifically, "a reset transistor coupled between a power supply and the single sensing node, for outputting the photoelectric charges stored in the single sensing node, in the response to a third control signal." ('335 Patent, Claim 1.) Plaintiffs argue, however, that the preamble's other parts are limiting.

The remainder of the preamble describes the structure of the invention and the locations and purpose of each photodiode and transistor. Claim 1 then goes on to describe the method steps, including when each type of transistor is turned off or on. Without the explanation of the location and purpose of each transistor, the steps of the claim (i.e., "turning off the first and second transfer transistors") would be unclear. The preamble explains *what* those first and second transfer transistors are, and *where* they are located. As such, the preamble recites the claim's essential structure and is therefore limiting.

**C.    Infringement of the '335 Patent**

Defendants move for summary judgement that the sensor of the accused Nikon D5 and similarly-structured cameras[1] does not infringe the '335 patent because it fails to meet the limitations of claim 1. Specifically, the sensor does not include "a reset transistor *coupled between a power supply and the single sensing node* for outputting the photoelectric charges stored in the single sensing node, in the

---

[1] Defendant also argues that the Aptina AR1410 sensor used in the Nikon 1 V2, J3, S2, and AW1 cameras does not infringe the '335 patent for the same reasons. The reset transistor in the Aptina AR 1410 is similarly coupled between a power supply and the source of another transistor, rather than the sensing node. As such, the Court's analysis of the Nikon D5 sensor applies to each of these accused cameras in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|---|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | | |

response to a third control signal." ('335 Patent, Claim 1.) The reset transistor in the Nikon D5 sensor, Defendants argue, is coupled between a power supply and the source of another transistor—not a sensing node. Defendants construe "coupled" to mean directly connected. Plaintiffs, on the other hand, urge the Court to construe the term "coupled" to include "indirect connections through an intermediate transistor." (Pls.' Opp'n 10:5-7, ECF No. 165-7.)

The Court finds that the preamble of claim 1 is limiting. Therefore, if the Nikon D5 camera does not satisfy this limitation, it cannot literally infringe. *See Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

The term "coupled" can mean either direct or indirect connections. For example, the patent specifications state: "the plurality of photodiodes are electrically *coupled* to the sensing node." ('335 Patent, 3:27–28.) Here, the verb "coupled" indicates an indirect connection. As it is used in claim 1, however, the term "coupled" indicates a direct connection: "a reset transistor coupled between a power supply and the single sensing node." ('335 Patent, Claim 1.) The preamble recites that the reset transistor is located *between* the power supply and the single sensing node. If another transistor was wedged between the reset transistor and the sensing node, it would presumably have been listed in the preamble. As Defendants indicate, the purpose of the '335 patent is to reduce the unit pixel's chip area by minimizing the number of transistors. ('335 Patent, 7:10–13.) Adding another transistor between the reset transistor and the sensing node not mentioned in the claim language would "depart[] from the scope and spirit of the invention as disclosed." ('335 Patent, 7:25–30.) Accordingly, the Court interprets the word "coupled" as it is used in the preamble of claim 1 with respect to the reset transistor to mean "directly connected." The Nikon D5 camera cannot literally infringe because its reset transistor and sensing node are not directly connected. (*See* Kleinfelder Decl., ¶¶ 55–60, 67–69, ECF No. 153-24.)

It may, however, infringe under the doctrine of equivalents. The two tests for infringement under the doctrine of equivalents are (1) whether the accused product performs substantially the same function in substantially the same way to obtain the same result; and (2) whether the accused product is substantially different from what is patented. *Mylan Institutional LLC*, 857 F.3d at 866. Whether a patent infringes under the doctrine of equivalents is a question of fact. *Ferguson*, 350 F.3d at 1388.

Defendants contend that the reset transistor in the Nikon D5 sensor does not output photoelectric charges in response to a control signal, and thus it does not perform substantially the same function as the '335 invention. Specifically, the D5 reset transistor "simply completes the electrical connection" between two other transistors, which combine to cause the output of the photoelectric charges. (Kleinfelder Decl., ¶¶ 60–61, ECF No. 153-24.) In response, Plaintiffs argue that the verb "output" includes indirect transmission through an intermediate transistor. But even if Defendants' construction of the term "output" prevailed, Plaintiffs' expert opines that any indirect connection between the reset

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | |

transistor and the sensing node in the Nikon D5 sensor is "insubstantially different" and thus does not satisfy the doctrine of equivalents test. (Carley Decl., ¶¶ 220–224, ECF No. 184-32.)

In short, the parties present conflicting evidence as to whether the Nikon D5 sensor performs substantially the same function, in substantially the same way, to obtain the same result as the '335 patent. As such, summary judgment is not appropriate on this issue.

### D.    Sony Sensors' Licensing

Defendants contend that because the Accused Products with Sony-made sensors are licensed under the '335 patent, they cannot infringe. Patent infringement only occurs when a patented invention is made, used, offered, or sold "without authority." 35 U.S.C. § 271. A patent license is "in essence nothing more than a promise by the licensor not to sue the licensee." *Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1082 (Fed. Cir. 1987).

In 2008, Sony and its affiliates obtained a license from the prior owner of the '335 patent granting them the right to use, sell, import, and distribute technology that would infringe on the patent in the absence of the agreement. (Smith Decl., Ex. N, 23:3–24:10, 27:6–44:9, 55:11–58:8, ECF No. 154-14; Ex. M, ¶ 11, ECF No. 154-13.) Defendant argues that the Sony sensors are Licensed Offerings,[2] and thus their operation cannot result in infringement. (Smith Decl., Ex. M, ECF No. 154-13.) If they are Licensed Offerings, the License Agreement grants them a "license, under the Patents, to make. . . use, sell, offer for sale, import, and otherwise distribute and dispose of Licensed Offerings during the Term." (Smith Decl., Ex. M, ¶ 2(b), ECF No. 154-13.)

Plaintiffs counter that the Sony image sensors are not Licensed Offerings because they fall under the "No Foundry Rights" provision of the License Agreement. (*See* Smith Decl., Ex. M., ¶ 2(e), ECF No. 154-13.) This section excludes from the definition of Licensed Offerings any products "manufactured, produced or provided by Subscriber (or its Affiliate) on behalf of a third party (A) from designs received in a substantially completed form from that third party, and (B) for resale to that third party." (*Id.*)

---

[2] Licensed Offerings are "products, services, or technologies made, used, imported, offered for sale, distributed, or otherwise disposed of during the Term hereof, by Subscriber and/or a Subscriber Affiliate that in the absence of this Agreement would infringe. . . at least one valid and enforceable claim of a Patent." (Smith Decl., Ex. M, ¶ 1(h), ECF No. 154-13.)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL - AMENDED

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|---|---|---|---|---|
| Title | *Carl Zeiss A.G. v. Nikon Corp.* | | | |

The dispute hinges on whether Nikon, the third party, gave Sony its image sensor designs "in a substantially completed form." Defendants contend that it did not. Instead, Defendants present evidence that Nikon plays no part in the design of the internal circuitry of image sensors, and thus Sony does not manufacture its image sensors from substantially completed designs provided by Nikon. (*See e.g.,* Smith Decl., Ex. P, 12:4–13:10, 14:12–15:3, 42:25–43:14, 67:17–20, 68:11–19, ECF No. 154-16.) Plaintiffs, on the other hand, offer evidence that the Sony-made image sensors are designed by Nikon "from the ground up." (*See* Marchese Decl., Exs. 7, 9–10, ECF No. 164.)

Accordingly, there is a genuine dispute of fact as to whether Nikon provides Sony with its sensor designs in a substantially completed form and thus falls under the "No Foundry Rights" provision. If so, the Sony sensors are not Licensed Offerings and could still have infringed the patent. Because of the factual disputes underlying this question, summary judgment is not appropriate.

### E.    Infringement of the '163 Patent

Finally, Defendants argue that none of the asserted claims in '163 are infringed because the Accused Products do not derive a correlation image or identify candidate regions based on detecting local maxima, as recited in the '163 claims.

The '163 patent is directed to a face detection system that pre-filters an input image to determine which parts of the image contain a face.[3] The pre-filtering is done by a candidate selector, which selects candidate regions of the input image that potentially represent a face. Then, the associated face detector verifies whether the candidate regions do in fact contain facial features. This pre-filtering involves the screening out of regions that do not contain a face. Then, only the candidate regions that do contain a face are processed by the face detector. This reduces the amount of computational processing that the face detector must ultimately perform. ('163 Patent, 2:21–33.)

In the invention's preferred embodiment, the candidate selector contains a filter that uses a filtering kernel to derive a correlation image. The filtering kernel is generated by averaging several target images during a training period. More specifically, when an input image is correlated with the kernel, it creates a correlation image, which then helps identify candidate regions. Candidate regions are regions of an image that have a probability of containing the target image, i.e. a human face. Once the candidate region is identified, a filter analyzes the greyscale contrast of those regions to remove regions that do not meet certain criteria. Eventually, the system detects a face.

---

[3] In this context, "face" refers to a human face, although the parties indicate that the system can also detect the faces of dogs and cats (collectively, "pets").

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|---|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | | |

1.     <u>Claim 1</u>

Defendants indicate two limitations from claim 1 that are not met by the Accused Products: (1) correlating the input image with preselected reference data to derive a correlation image; and (2) identifying potential candidate regions of the input image based on detecting a local maximum in the correlation image. ('163 Patent, Claim 1.) To infringe, the Accused Product must contain each limitation of the claims. *See Bayer AG*, 212 F.3d at 1247.

Claim 1 of the '163 patent recites the method of pre-filtering the input image to determine whether the image includes a "target image pattern," or a face. Claim 1 recites:

A method of pre-filtering an input image to determine whether said input image includes a target image pattern of interest comprising steps of: receiving said input image; *correlating said input image with preselected reference data to derive a correlation image*, said preselected reference data being representative of said target image pattern of interest, said correlation image having image data indicative of correlations between said input image and said preselected reference data; and selecting a candidate region of said input image having a likelihood of containing said target image pattern of interest on the basis of correlating said input image with said preselected reference data, said step of selecting including *identifying potential candidate regions of said input image based on detecting local maximum in said correlation image.*

The limitations at issue are emphasized above. ('163 Patent, Claim 1.) The correlation image is used to correlate the input image and the preselected reference data to detect the pattern that indicates elements of a face, or potential candidate regions. The potential candidate regions are chosen based on detecting "local maximum" in the image, which indicate the locations on the correlation image that meet certain threshold criterion and are consequently more likely to include elements of a face. In this preferred embodiment, only the image regions having a local maximum in the correlation image are analyzed by the face detector. (*See* '163 Patent, 13:8–21.)

Defendants contend that the Accused Cameras do not identify candidate regions based on detecting a local maximum in the correlation image. Instead, Defendants argue, they select regions of interest based on comparing confidence values in those regions with fixed thresholds. (Darrell Decl., ¶¶ 76–77, ECF No. 153-25.) Plaintiffs offer evidence to the contrary. The Accused Cameras, Plaintiffs' expert indicates, do derive a correlation image and identify candidate regions based on detecting local maximums in the correlation image. (Mundy Decl., ¶¶ 27–39, 84–93, 143–144, ECF No. 165-22.) Preselected reference data that is representative of a face is scanned over a picture to derive a "correlation image." (*See id.* at ¶¶ 75–77.) Using Nikon's "Pet Portrait" mode on an Accused Camera as an example, Plaintiffs' expert describes the derivation of a correlation image of a dog's face in detail.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL - AMENDED**

| Case No. | 2:17-CV-07083-RGK-MRW | | Date | October 04, 2018 |
|----------|------------------------|---|------|------------------|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | | |

(*Id.* ¶¶ at 74–104.) Both parties present conflicting evidence about whether the Accused Cameras detect local maximum in the correlation image by comparing correlation values against a threshold value. (*Compare* Mundy Decl., ¶ 100, ECF No. 165-22, *with* Darrell Decl., ¶ 77, ECF No. 153-25.)

Plaintiffs have accordingly met their burden of offering evidence to create a genuine issue as to material fact about whether the limitations from claim 1 of the '163 patent are met by the Accused products. Accordingly, summary judgment on this claim is denied.

        2.   <u>Claim 15</u>

Similarly, the parties present conflicting evidence about whether the Accused Products infringe independent claim 15 of the '163 patent. Defendants first request that the Court construe the limitations of claim 15 in means-plus-function format. But even if the Court construes the limitations in Defendants' preferred format, their argument mirrors those of claim 1 above; namely, that the Accused Cameras do not infringe claim 15 because they do not derive a correlation image or identify candidate regions based on local maxima. Plaintiffs present evidence of the same disputed facts outlined above.

Accordingly, because there is a genuine dispute as to material fact about whether the Accused Cameras derive correlation images or identify candidate regions using local maxima, the Court denies Defendants' motion.

**VI.**    <u>**CONCLUSION**</u>

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion on the following three issues:

        (1) The marking defense for the '312, '017, '574, and '335 patents fails;

        (2) The '312 and '017 patents are not anticipated by the Kaifu and Yuki references; and

        (3) Defendants' written description defense fails for the '312, '017, and '574 patents.

The Court **DENIES** Plaintiffs' Motion on the following four issues:

        (1) Plaintiffs own the patents-in-suit;

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL - AMENDED

| Case No. | 2:17-CV-07083-RGK-MRW | Date | October 04, 2018 |
|---|---|---|---|
| Title | ***Carl Zeiss A.G. v. Nikon Corp.*** | | |

(2) The Nikon cameras at issue[4] infringe steps (c)–(f) of claim 1 of the '335 patent;

(3) The Yow Thesis is not prior art to the '163 patent; and

(4) The Guidash '900 patent is not prior art to the '312, '017, and '574 patents.

The Court **DENIES** Defendants' Motion.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer

_____

---

[4] The following Nikon cameras are accused of infringing the claims of the '335 patent: D4, Df, D4S, D5, D500, D600, D600, D610, D750, D800, D800E, D810, D810A, D3100, D3300, D5300, D5500, D5600, D7000, D7500, V1, V2, V3, D850, D3200, J1, J2, J3, J4, S1, S2, AW1.