VINCENT J. BELUSKO (CA SBN 100282)
VBelusko@mofo.com
HECTOR G. GALLEGOS (CA SBN 175137)
HGallegos@mofo.com
JONATHAN M. SMITH (CA SBN 292285)
JonathanSmith@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

JACK W. LONDEN (CA SBN 85776)
JLonden@mofo.com
DIANA B. KRUZE (CA SBN 247605)
DKruze@mofo.com
SHAELYN DAWSON (CA SBN 288278)
Shaelyndawson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
NIKON CORPORATION, SENDAI
NIKON CORPORATION, and NIKON INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| CARL ZEISS AG and ASML NETHERLANDS, B.V., Plaintiffs, v. NIKON CORPORATION, SENDAI NIKON CORPORATION, and NIKON INC., Defendants. | Case No. 2:17-cv-07083 RGK (MRWx) **NIKON CORPORATION, SENDAI NIKON CORPORATION, AND NIKON INC.'S AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW** Trial:         November 6, 2018 Time:         9:00 a.m. Courtroom:  850, 8th Floor Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**Page**

I.     BACKGROUND ...........................................................................................1

II.    PLAINTIFFS' CLAIMS [L.R. 16-4.1(a)-(c)] .........................................2

   A.   Direct Infringement Under 35 U.S.C. § 271(a) ...................................3

     1.   Elements Required to Prove Infringement Under 35 U.S.C. § 271(a) .......3

     2.   Evidence that Nikon is Not Liable for Infringement Under 35 U.S.C. § 271(a) ...........................................................................4

   B.   Induced Infringement Under 35 U.S.C. § 271(b) ...........................29

     1.   Elements Required to Prove Inducement Under 35 U.S.C. § 271(b) .......30

     2.   Evidence that Nikon Is Not Liable for Induced Infringement Under 35 U.S.C. § 271(b) ...........................................30

   C.   Contributory Infringement Under 35 U.S.C. § 271(c) ....................33

     1.   Elements Required to Prove Infringement Under 35 U.S.C. § 271(c) .....33

     2.   Evidence that Defendants Are Not Liable for Contributory Infringement Under 35 U.S.C. § 271(c) ...............................................33

III.   Nikon's Defenses [L.R. 16-4.1(d)] .........................................................36

   A.   Failure to State a Claim .......................................................................36

     1.   Legal Standard .............................................................................36

     2.   Evidence that Plaintiffs Have Failed to State a Claim .........................37

   B.   Non-infringement .................................................................................37

   C.   Invalidity ................................................................................................38

     1.   Invalidity Under 35 U.S.C. § 112 ................................................38

     2.   Invalidity Under 35 U.S.C. §§ 102 and 103 .................................44

   D.   Estoppel .................................................................................................49

     1.   Prosecution History Estoppel .......................................................49

     2.   Other Estoppel .............................................................................51

   E.   Marking ..................................................................................................52

     1.   Marking Elements .........................................................................52

     2.   Nikon's Marking Position ............................................................52

   F.   Limitation on Recovery of Costs ........................................................53

     1.   Limitation on Recovery of Costs Elements ..................................53

     2.   Evidence in Support of Limitation on Recovery of Costs Defense .........53

   G.   No Entitlement to Injunctive Relief ...................................................54

     1.   Legal Standard for Injunctive Relief ...........................................54

     2.   Evidence in Support of No Entitlement to Injunctive Relief Defense .....54

   H.   No Enhanced Damages .........................................................................55

     1.   No Enhanced Damages Elements ................................................55

# TABLE OF CONTENTS
## (continued)

| | Page |
|---|---|
| 2. Evidence in Support of No Enhanced Damages Defense | 55 |
| I. Lack of Personal Jurisdiction Over Sendai Nikon Corp. | 56 |
|    1. Personal Jurisdiction Elements | 56 |
|    2. Evidence in Support of Lack of Personal Jurisdiction Defense | 57 |
| IV. EVIDENTIARY ISSUES [L.R. 16-4.1(h)] | 58 |
|   A. Issues Relating to Motions *in Limine* | 58 |
|   B. Infringement of the '335 Patent | 59 |
|   C. Issues Relating to Sealing Confidential Information | 60 |
| V. ISSUES OF LAW [L.R. 16-4.1(i)] | 60 |
|   A. Claim Construction | 60 |
|    1. Claim construction is an issue of law for the Court to decide | 61 |
|    2. '312 Patent | 69 |
|    3. '017 Patent | 74 |
|    4. '574 Patent | 79 |
|    5. '335 Patent | 81 |
|   B. Plaintiffs' Are Not Entitled to Injunctive Relief | 83 |
|   C. Plaintiffs' Are Not Entitled to Enhanced Damages | 83 |
|   D. Plaintiffs are Foreclosed From Pursuing Infringement Under the Doctrine of Equivalents | 84 |
| VI. Damages | 84 |
|   A. Damages Generally | 84 |
|   B. Nikon's Reasonable Royalty Analysis | 84 |
| VII. BIFURCATION OF ISSUES [L.R. 16-4.3] | 88 |
| VIII. MOTION TO STAY | 89 |
| IX. JURY TRIAL [L.R. 16-4.4] | 89 |
| X. ATTORNEYS' FEES [L.R. 16-14.5] | 89 |
| XI. ABANDONMENT OF ISSUES [L.R. 16-4.6] | 89 |

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Med. Sys. v. Med. Eng'g Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993) ............................................................. 52

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
  876 F.3d 1350 (Fed. Cir. 2017), *cert. denied*,
  No. 17-1645, 2018 WL 2766092 (U.S. Oct. 1, 2018) ......................... 52

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  377 U.S. 476 (1964) ............................................................................ 33

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 36

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 36

*Biomedino, LLC v. Water Techs. Corp.*,
  490 F.3d 946 (Fed. Cir. 2007) ............................................................ 88

*Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*,
  229 F.3d 1120 (Fed. Cir. 2000) .......................................................... 45

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
  567 F.3d 1314 (Fed. Cir. 2009) ............................................................ 4

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006) ...................................................... 29-30

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) .............................................................. 53, 82, 88

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  344 F.3d 1359 (Fed. Cir. 2003) ...................................................... 4, 49

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002) ....................................................................... 4, 49

*Freedman Seating Co. v. Am. Seating Co.*,
   420 F.3d 1350 (Fed. Cir. 2005) ................................................................. 3

*Georgia-Pacific v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970), *modified & aff'd*, 446 F.2d 295
   (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971) ....................... 84, 86

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ................................................................................ 29

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ...................................................................... 54, 82

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ............................................................... 55

*Inamed Corp. v. Kuzmak*,
   249 F.3d 1356 (Fed. Cir. 2001) ............................................................. 56

*Int'l Shoe Co. v. Wash.*,
   326 U.S. 310 (1945) ................................................................................ 56

*IPXL Holdings LLC v. Amazon.com Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005) ............................................................. 43

*Ivera Med. Corp. v. Hospira, Inc.*,
   801 F.3d 1336 (Fed. Cir. 2015) ............................................................. 44

*Johnson & Johnston Assocs. Inc. v. R.E. Service Co., Inc.*,
   285 F.3d 1046 (Fed. Cir. 2002) ................................................. 14, 59, 83

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ............................................................. 33

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ...................................................... 3, 60, 88

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996) ............................................................... 51

*Multiform Desiccants, Inc. v. Medzam Ltd.*,
   133 F.3d 1473 (Fed. Cir. 1998) ............................................................... 3

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

iv

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014) ........................................................................41

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ..........................................................60

*OS/Sys., Inc. v. Instrumentarium Corp.*,
    892 A.2d 1086 (Del. Ch. 2006) ..........................................................88

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ............................................................55

*Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*,
    871 F.2d 1082 (Fed. Cir. 1989) ..........................................................88

*Robert Bosch, LLC v. Snap-On Inc.*,
    769 F.3d 1094 (Fed. Cir. 2014) ..........................................................41

*Ruiz v. A.B. Chance Co.*,
    234 F.3d 654 (Fed. Cir. 2000) ............................................................45

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ..........................................................37

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ...............................................................................4

*Wordtech Sys. v. Integrated Network Sols., Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010) ..........................................................84

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ............................................................................56

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

v

**Statutes**

35 U.S.C.

§ 102 ................................................................................ 37, 44

§ 103 ................................................................................ 37, 44

§ 112 ...............................................................................*passim*

§ 271 ...................................................................................... 11

§ 271(a) ............................................................................ 2, 3, 4

§ 271(b) ......................................................... 2, 3, 29, 30, 32

§ 271(c) ............................................................... 2, 3, 33, 35

§ 284 ...................................................................................... 80

§ 285 ...................................................................................... 84

§ 287 ................................................................................ 51, 82

§ 287(b)(2) ........................................................................... 50

§ 288 ................................................................................ 51, 52

Cal. Civ. Proc. Code

§ 410.10 ................................................................................ 54

**Other Authorities**

Federal R. Civ. P

54(d)(1) ................................................................................ 84

Civ. Local Rule

16-4.1 ...................................................................................... 1

16-4.1(A)-(C) .......................................................................... 2

16-4.1(D) .............................................................................. 36

16-4.1(H) .............................................................................. 55

16-4.1(I) ................................................................................ 57

16-4.3 .................................................................................... 83

16-4.4 .................................................................................... 84

16-4.6 .................................................................................... 84

16-10(c) .................................................................................. 1

16-14.5 .................................................................................. 84

16-4 ........................................................................................ 1

1    Pursuant to Local Rule 16-4 and the Court's Order requesting an Amended

2   Memorandum of Contentions of Fact and Law (ECF No. 296), Defendants Nikon

3   Corporation, Sendai Nikon Corporation, and Nikon Inc. (when discussed together,

4   "Nikon") respectfully submit the following Amended Memorandum of Contentions

5   of Fact and Law, addressing the contentions of the parties in advance of the trial

6   scheduled to commence on November 6, 2018.[1]

7   **I.    BACKGROUND**

8    Nikon Corporation is a corporation organized under the laws of Japan having

9   a principal place of business at Shinagawa Intercity Tower C, 2-15-3, Konan,

10   Minato-ku, Tokyo 108-6290, Japan.

11    Nikon Inc. is a corporation organized under the laws of New York having a

12   principal place of business at 1300 Walt Whitman Road, Melville, NY 11747-3064.

13    Sendai Nikon Corporation ("Sendai Nikon") is a corporation organized under

14   the laws of Japan having a principal place of business at 277, Aza-hara, Tako,

15   Natori, Miyagi 981-1221, Japan.  Sendai Nikon has no contacts at all with the

16   United States, and has no role in the design, development, importation, or sale of

17   the cameras accused of infringement in this case.[2]

18    On April 28, 2017, Plaintiffs Carl Zeiss AG and ASML Netherlands BV

19   ("Plaintiffs") filed a patent infringement action, Case No. 2:17-cv-03221 RGK

20   (MRWx), asserting U.S. Patent Nos. 6,972,792 ("'792 Patent"); 7,209,167

21   ("'167Patent"); 8,149,312 ("'312 Patent"); and 8,625,017 ("'017 Patent").  (3221

22   _____

23   [1]In keeping with L.R. 16-4.1's directive to include "a brief description of the
key evidence in opposition to each of the claims," Nikon has attempted to keep this
Memorandum concise.  To the extent the Court would like additional detail,

24   Defendants will happily provide that.  Additionally, L.R. 16-10(c) states that "each
party may serve and file a trial brief which may . . . (c) Reply to the Memorandum

25   of Contentions of Fact and Law of any other party."  As such, Nikon reserves all
rights to reply to Plaintiffs' positions in Nikon's trial brief.

26

27   [2]Plaintiffs no longer assert any claims against Sendai Nikon Corporation and
will be filing a notice of dismissal with respect to Sendai Nikon Corporation

28   forthwith.

ECF No. 1).  On September 26, 2017, Plaintiffs filed the instant case, Case No. 2:17-cv-07083 RGK (MRWx), asserting U.S. Patent Nos. 6,463,163 ("'163 Patent"); 6,731,335 ("'335 Patent"); and 9,728,574 ("'574 Patent").  (7083 ECF No. 1.)

On May 18, 2018, the Court granted Defendants' Motion for Partial Summary Judgment in the 3221 case and dismissed Counts III and IV relating to the '312 and '017 Patents.  Following that order, Plaintiffs filed a motion for reconsideration, which the Court granted on June 26, 2018—only two weeks before trial in the 3221 case.  Accordingly, the Court severed the '312 and '017 Patents from the 3221 case and consolidated them with this, the 7083 case.

Trial is scheduled to commence on November 6, 2018, on all issues pertaining to the '163, '335, '574, '312, and '017 patents.

## II.   PLAINTIFFS' CLAIMS [L.R. 16-4.1(A)-(C)]

In their First Amended Complaint in the 3221 case, Plaintiffs asserted against Nikon two counts of patent infringement that remain to be adjudicated here:

- **Count I:** Plaintiffs allege that Nikon infringed U.S. Patent 8,149,312 (the "'312 Patent") under 35 U.S.C. §§ 271(a), (b), or (c).  (3221 ECF No. 33 ¶¶ 80–99.)

- **Count II:** Plaintiffs allege that Nikon infringed U.S. Patent 8,625,017 (the "'017 Patent") under 35 U.S.C. §§ 271(a), (b), or (c).  (3221 ECF No. 33 ¶¶ 100–119.)

- In their Complaint in the 7083 case, Plaintiffs asserted against Nikon three counts of patent infringement:

- **Count III:**  Plaintiffs allege that Nikon infringed U.S. Patent 6,463,163 (the "'163 Patent") under 35 U.S.C. §§ 271(a), (b), or (c).  (ECF No. 1 ¶¶ 44–65.)

- **Count IV:**  Plaintiffs allege that Nikon infringed U.S. Patent 6,731,335 (the "'335 Patent") under 35 U.S.C. §§ 271(a), (b), or (c).  (ECF No. 1 ¶¶ 66–88.)

- **Count V:**  Plaintiffs allege that Nikon infringed U.S. Patent 9,728,574 (the "'574 Patent") under 35 U.S.C. §§ 271(a), (b), or (c).  (ECF No. 1 ¶¶ 89–108.)

## A.    Direct Infringement Under 35 U.S.C. § 271(a)

Plaintiffs allege that Nikon is liable for direct infringement of each asserted patent, pursuant to 35 U.S.C. § 271(a).

### 1.    Elements Required to Prove Infringement Under 35 U.S.C. § 271(a)

Plaintiffs must prove direct infringement under 35 U.S.C. § 271(a). "[W]hoever without authorization makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).

In order to prove direct infringement, there is a two-step inquiry: "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (citation omitted).

A finding of infringement requires that every limitation of a claim find literal or equivalent correspondence in the accused product.  *See, e.g.*, *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005).

Finding infringement under the "doctrine of equivalents" analysis requires a showing that the "equivalent" performs "substantially the same function . . . in substantially the same way to achieve substantially the same result."  *Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998)  (citing

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

3

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). Infringement by equivalents is limited by several doctrines, including ensnarement, vitiation, and prosecution history estoppel.  The doctrine of ensnarement states that a patentee may not assert a "scope of equivalency that would encompass, or ensnare, the prior art."  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009).  The doctrine of claim vitiation prevents application of the doctrine of equivalents in a way that would completely eliminate a claim element, *i.e.*, render the claim limitation inconsequential or non-existent. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997).

### a.    Prosecution History Estoppel Elements

Prosecution history estoppel prevents applying the doctrine of equivalents to reach subject matter relinquished by the patent applicant during prosecution.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002). Amending a claim is not considered surrendering a particular equivalent if the rationale behind the amendment bears "no more than a tangential relation to the equivalent."  *Id.* at 740.  However, an "amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003).

### 2.    Evidence that Nikon is Not Liable for Infringement Under 35 U.S.C. § 271(a)

Nikon will introduce the following categories of evidence establishing that Nikon did not directly infringe any of the asserted patents under 35 U.S.C. § 271(a):

- Testimony and evidence showing that Plaintiffs failed to prove that any Nikon Defendant directly infringed or directly infringes any asserted patent;

- Testimony and evidence that Nikon Corp. does not directly interact with U.S. customers;
- Testimony and evidence that Sendai Nikon Corp. only manufactures cameras for Nikon Corp. in Japan and has no contacts with the U.S., and has no role in the design, development, marketing, or sale of the accused products;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '574 Patent in the U.S.;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '335 Patent in the U.S.;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '163 Patent in the U.S.;
- Testimony and evidence that Nikon Corp. did not know of the '163 Patent before May 2009;
- Testimony and evidence that Sendai Nikon Corp. and Nikon Inc. did not know of the '163 Patent before the complaint for Investigation No. 337-TA-1059 was filed in the International Trade Commission;
- Testimony and evidence that Nikon Corp. did not know of the '335 Patent before February 27, 2009;
- Testimony and evidence that Nikon Inc. and Sendai Nikon Corp. did not know of the '335 Patent before they received a copy of Plaintiffs' complaint in the 7083;

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

5

1        •  Testimony and evidence that Nikon Corp., Nikon Inc., and Sendai

2          Nikon Corp. did not know of the '574 Patent before they received a

3          copy of Plaintiffs' complaint filed in the 7083 case;

4        •  Testimony and evidence that Nikon Corp. first became aware of the

5          existence of the '312 Patent in March 2013, but did not know of its

6          contents at that time;

7        •  Testimony and evidence that Nikon Corp. first became aware of the

8          contents of the '312 Patent when it received a copy of Plaintiffs'

9          complaint filed in the 3221 case;

10       •  Testimony and evidence that Nikon Corp. first became aware of the

11         '017 Patent when it received a copy of Plaintiffs' complaint in the

12         3221 case;

13       •  Testimony and evidence that Nikon Inc. and Sendai Nikon Corp.

14         did not know of the '312 and '017 Patents until they received a

15         copy of Plaintiffs' complaint in the 3221 case;

16       •  Testimony and evidence showing that Plaintiffs failed to identify

17         any infringement evidence for Sendai Nikon Corp;

18       •  Testimony and evidence showing that Plaintiffs failed to prove that

19         Nikon Corp directly infringes any asserted patent;

20       •  Testimony and evidence that Nikon had a good faith belief of non-

21         infringement and invalidity of the asserted patents (See I.A.2

22         (failure to prove direct infringement), II.B (non-infringement), and

23         II.C (invalidity));

24       •  Testimony and evidence that Sendai Nikon Corp. is not an "alter

25         ego" of Nikon Corp.;

26       •  Other testimony and evidence as listed in the subsections below;

27         and

28

- Nikon incorporates by reference all arguments regarding noninfringement in its expert reports, including, but not limited to, the expert reports regarding noninfringement of Trevor Darrell and Stuart Kleinfelder.

### a.    The '163 Patent

The accused Nikon cameras do not infringe the asserted claims of the '163 Patent, either literally or under the doctrine of equivalents.

### (i)    There is no literal infringement

Plaintiffs are asserting claims 1–4, 6–7, 15–16, and 19 of the '163 Patent [3] against 105 Nikon camera models with human face or pet detection functionality provided by third-party Omron Corporation.  Defendants will show at trial that none of the above claims are infringed by the Nikon cameras.[4]

### (1)    Cameras with human face detection software or hardware from Omron Corporation

Defendants will show that the accused Nikon cameras do not meet the limitations of the independent claim 1 of the '163 Patent using at least the following categories of evidence:

- Testimony and evidence showing that the accused Nikon cameras do not perform correlation of an input image with preselected reference data representative of a target image pattern of interest;
- Testimony and evidence showing that the accused Nikon cameras do not derive a correlation image; and

---

[3] These claims have been addressed in the expert report of Plaintiffs' expert Joseph Mundy.  Plaintiffs had also asserted claims 9–14 of the '163 Patent, but later statutorily disclaimed them before the Patent Office on June 7, 2018, after Nikon filed an IPR petition challenging the patentability of the '163 patent claims.

[4] Defendants reserve the right, in the event Plaintiffs assert other claims of the '163 patent, to demonstrate at trial that none of the other claims are being infringed.

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

7

1      • Testimony and evidence showing that the accused Nikon cameras

2         do not select a candidate region of the input image by detecting a

3         local maximum in a correlation image.

4      Nikon will also prove at trial that the accused Nikon cameras do not meet the

5   limitations of independent system claim 15 for at least the following reasons:

6      • Testimony and evidence showing that the structures identified by

7         Plaintiffs in the accused products as being the "first filtering

8         means" are not linear filters;

9      • Testimony and evidence showing that the structures identified by

10        Plaintiffs in the accused products as being the "second filtering

11        means" do not compare contrast values in regions of the input

12        image;

13     • Testimony and evidence showing that the accused Nikon cameras

14        do not perform correlation of an input image with a reference image

15        pattern being indicative of said target image pattern;

16     • Testimony and evidence showing that the accused Nikon cameras

17        do not derive a correlation image;

18     • Testimony and evidence showing that the accused Nikon cameras

19        do not select a candidate region of the input image by detecting a

20        local maximum in a correlation image; and

21     • Testimony and evidence showing that the functionalities in the

22        accused Nikon cameras accused of being an "image pattern

23        detector" cannot perform target image pattern detection by

24        themselves.

25     The accused Nikon cameras do not meet the limitations of claims 2, 4, and 6–

26  7, which are dependent on claim 1, for at least the reasons that they do not meet the

27  limitations of claim 1.  The accused Nikon cameras do not meet the limitations of

28  claim 3, which is dependent on claim 2, for at least the reasons that they do not

1    meet the limitations of claim 2.

2           In addition, Defendants will show that the accused Nikon cameras do not

3    satisfy the additional limitations of dependent claims 2 and 3 because they do not

4    compare contrast values in regions of the input image.

5           The accused Nikon cameras do not meet the limitations of claims 16 and 19,

6    which are dependent on claim 15, for at least the reasons that they do not meet the

7    limitations of claim 15.

8           Further, Defendants will show that the accused Nikon cameras do not satisfy

9    the additional limitations of dependent claim 16 because they do not perform a

10   linear convolution operation between the input image and a convolution kernel

11   representative of a human face.

12          Finally, Defendants will show that the accused Nikon cameras do not satisfy

13   the additional limitations of dependent claim 19 because they do not compute

14   contrast values and do not compare such values with a threshold contrast value.

15                        **(2)    Cameras with pet detection software from
                                    Omron Corporation**

16          Plaintiffs are asserting claims 1, 4, 6–7, 15, and 19 against these cameras.

17   Defendants will show that the accused Nikon cameras do not meet the limitations of

18   the independent claim 1 of the '163 Patent using at least the following categories of

19   evidence:

20
                 •   Testimony and evidence showing that the accused Nikon cameras
21
                     do not perform correlation of an input image with preselected
22
                     reference data representative of a target image pattern of interest;
23
                 •   Testimony and evidence showing that the accused Nikon cameras
24
                     do not derive a correlation image; and
25
                 •   Testimony and evidence showing that the accused Nikon cameras
26
                     do not select a candidate region of the input image by detecting a
27
                     local maximum in a correlation image.
28

1    The accused Nikon cameras do not meet the limitations of independent

2    system claim 15 for at least the following reasons:

3        • Testimony and evidence showing that the structures identified by

4          Plaintiffs in the accused products as the "first filtering means" are

5          not linear filters;

6        • Testimony and evidence showing that the structures identified by

7          Plaintiffs in the accused products as being the "second filtering

8          means" do not compare contrast values in regions of the input

9          image;

10       • Testimony and evidence showing that the accused Nikon cameras

11         do not perform correlation of an input image with a reference image

12         pattern being indicative of said target image pattern;

13       • Testimony and evidence showing that the accused Nikon cameras

14         do not derive a correlation image;

15       • Testimony and evidence showing that the accused Nikon cameras

16         do not select a candidate region of the input image by detecting a

17         local maximum in a correlation image; and

18       • Testimony and evidence showing that the functionalities in the

19         accused Nikon cameras accused of being an "image pattern

20         detector" cannot perform target image pattern detection by

21         themselves.

22       The accused Nikon cameras do not meet the limitations of claims 4 and 6–7,

23   which are dependent on claim 1, for at least the reasons that they do not meet the

24   limitations of claim 1.

25       The accused Nikon cameras do not meet the limitations of claim 19, which is

26   dependent on claim 15, for at least the reasons that they do not meet the limitations

27   of claim 15.

28       Finally, Defendants will show that the accused Nikon cameras do not satisfy

the additional limitations of dependent claim 19 because they do not compute contrast values and do not compare such values with a threshold contrast value.

### (ii)     There is no infringement under the doctrine of equivalents

The accused Nikon cameras do not infringe under the doctrine of equivalents, for at least the following reasons:

- Detecting candidate regions based on a comparison of confidence values with fixed thresholds is not the same or equivalent to detecting local maxima in a correlation image;

- A filter employing non-linear processes is not equivalent to a linear filter; and

- Defendants are precluded from asserting infringement by equivalents due to prosecution history estoppel.  (*See* Section II.D.1.a.)

### (iii)    Evidence for non-infringement by the accused Nikon cameras

In their defense to the allegations of infringement, Defendants will rely on the following key facts and evidence:

- The '163 Patent and its file wrapper (prosecution history);
Testimony and evidence related to the Parties' claim constructions;

- Testimony and evidence that the accused Nikon cameras with human face and/or pet detection do not satisfy independent claims 1 and 15 and any of their dependent claims, including without limitation testimony by Defendants' expert Dr. Trevor Darrell.

### b.     The '335 Patent

Defendants contend that the accused Nikon cameras do not infringe the asserted claims of the '335 Patent, either literally or under the doctrine of equivalents.

(i)   **There is no literal infringement**

The Court already ruled in its summary adjudication and partial summary judgment order that the Accused Products "cannot literally infringe" the '335 patent.  (ECF No. 305 at 14.)  Thus, Plaintiffs cannot pursue a literal infringement theory for the '335 patent under any provision of 35 U.S.C. § 271.

In any event, Plaintiffs have asserted claims 1-12 of the '335 Patent against the following Nikon camera models: Nikon AW1, D4, D4S, Df, D5, D300, D500, D600, D610, D750, D800, D800E, D810, D810A, D850, D3100, D3200, D3300, D3400, D5300, D5500, D5600, D7000, D7100, D7500, J1, J2, J3, J4, S1, S2, V1, V2, and V3.  As noted above, because the Court has already ruled on this issue, Plaintiffs should be barred from making any arguments, offering any opinions, or presenting any evidence that the accused products literally infringe the '335 Patent. To the extent Plaintiffs do make such arguments, offer such opinions, or present such evidence, Defendants will show that the claims of the '335 patent are not literally infringed as follows.

(1)   **Nikon D4/D4s/Df , D3100, and D3200**

In their defense to the allegations of infringement, Defendants will rely on the following key facts and evidence showing that the Nikon D4, D4s, Df do not infringe claims 1-12 of the '335 patent for the following reasons:

- The Nikon D4/D4s/Df do not perform one or more of the recited steps of claim 1, including steps (a), (c), (d), (e), and (f);

Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege infringement by the D3100 or D3200, Nikon reserves the right to respond and rebut any new evidence or analysis that may be presented by Plaintiffs.

(2)   **Nikon D5 and D7100**

In their defense to the allegations of infringement, Defendants will rely on the following key facts and evidence showing that the accused Nikon D5 do not

meet the limitations of claim 1 for at least the following reasons:

- The Nikon D5 image sensor does not satisfy the "reset transistor coupled between . . . " limitation recited in the limiting preamble of claim 1; and

- The Nikon D5 does not perform one or more of the recited steps of claim 1, including steps (a), (c), (d), (e), and (f);

Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege infringement by the D7100.  Nikon reserves the right to respond and rebut any new evidence or analysis that may be presented by Plaintiffs.

**(3)   Nikon D5600, D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, D850**

In their defense to the allegations of infringement, Defendants will rely on the following key facts and evidence showing that the accused Nikon D5600, D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, and D850 do not meet the limitations of claim 1 for at least the following reasons:

- The Nikon D5600 does not perform one or more of the recited steps of claim 1, including steps (a), (c), (d), (e), and (f).

- The D5600, D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, and D850 are subject to a license agreement and therefore cannot infringe the '335 Patent.

Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege infringement by the D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, or D850. Nikon reserves the right to respond and rebut any new evidence or analysis that may be presented by Plaintiffs.

1

           **(4)**    **Nikon 1 V1, J1, J2, S1, V2, J3, S2, AW1, J4, and V3**

2

      In their defense to the allegations of infringement, Defendants will rely on

3

the following key facts and evidence showing that the accused Nikon 1 V1, J1, J2,

4

S1, V2, J3, S2, AW1, J4, and V3 cameras do not meet the limitations of claim 1 for

5

at least the following reasons:

6

          • The Nikon 1 V2, J3, S2, and AW1 image sensor (Aptina AR1410)

7

             does not satisfy the "reset transistor coupled between . . . "

8

             limitation recited in the limiting preamble of claim 1; and

9

          • The Nikon 1 V1, J1, J2, S1, V2, J3, S2, AW1, J4, and V3 do not

10

             perform one or more of the recited steps of claim 1, including steps

11

             (a), (c), (d), (e), and (f).

12

      Additionally, Plaintiffs and their expert Dr. Carley failed to present any

13

evidence or analysis sufficient to allege infringement by the Nikon 1 V1, J1, J2, S1,

14

V2, J3, S2, AW1, or J4.  Nikon reserves the right to respond and rebut any new

15

evidence or analysis that may be presented by Plaintiffs.

16

          **(ii)**    **There is no basis for applying the doctrine of**

17

                **equivalents**

18

      Plaintiffs are foreclosed as a matter of law from pursuing an infringement

19

theory under the doctrine of equivalents due to dedication to the public.  *Johnson &*

20

*Johnston Assocs. Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046 (Fed. Cir. 2002).

21

Plaintiffs are also foreclosed due to prosecution history estoppel.  Nevertheless, to

22

the extent Plaintiffs attempt to pursue such a theory, Defendants will rely on the

23

following key facts and evidence showing that Plaintiffs' attempt to argue

24

infringement under the doctrine of equivalents is flawed, for at least the following

25

reasons:

26

27

28

### (1)  Nikon D4/D4s/Df

- Alternating the turning on/off of the reset and transfer transistors is substantially different from turning on both transistors at the same time;

- Less than full depletion is substantially different from full depletion; and

- Turning on and turning off, as recited in the various steps of claim 1, is substantially different from keeping on and keeping off, respectively. That is, transitioning the transistors to an "on" or "off" state constitutes a substantial difference to ensuring that the specified transistor is on or off.

- Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege direct infringement by the D3100 and D3200, and therefore further failed to present any evidence of analysis of infringement under the doctrine of equivalents. Nikon reserves the right to respond and rebut any new evidence of analysis that may be presented by Plaintiffs.

### (2)  Nikon D5

- The accused circuit is substantially different than the reset transistor configuration recited in the limiting preamble of claim 1;

- Turning on and turning off, as recited in the various steps of claim 1, is substantially different from keeping on and keeping off, respectively. That is, transitioning the transistors to an "on" or "off" state constitutes a substantial difference to ensuring that the specified transistor is on or off.

- Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege direct infringement by the D7100, and therefore further failed to present any evidence of

analysis of infringement under the doctrine of equivalents. Nikon reserves the right to respond and rebut any new evidence of analysis that may be presented by Plaintiffs.

### (3)    Nikon D5600

- Turning on and turning off, as recited in the various steps of claim 1, is substantially different from keeping on and keeping off, respectively. That is, transitioning the transistors to an "on" or "off" state constitutes a substantial difference to ensuring that the specified transistor is on or off.

- Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege direct infringement by the D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, or D850, and therefore further failed to present any evidence of analysis of infringement under the doctrine of equivalents. Nikon reserves the right to respond and rebut any new evidence of analysis that may be presented by Plaintiffs.

### (4)    Nikon 1 V1, J1, J2, S1, V2, J3, S2, AW1, J4, and V3

- The accused circuit is substantially different than the reset transistor configuration recited in the limiting preamble of claim 1;

- Turning on and turning off, as recited in the various steps of claim 1, is substantially different from keeping on and keeping off, respectively.

- Additionally, Plaintiffs and their expert Dr. Carley failed to present any evidence or analysis sufficient to allege direct infringement by the Nikon 1 V1, J1, J2, S1, V2, J3, S2, AW1, or J4, and therefore

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

16

further failed to present any evidence of analysis of infringement under the doctrine of equivalents.  Nikon reserves the right to respond and rebut any new evidence of analysis that may be presented by Plaintiffs.

### (iii)    Evidence for non-infringement by the accused Nikon cameras

In defense to the allegations of infringement, Defendants will rely on the following key facts and evidence:

- The '335 Patent and its file wrapper;
- Testimony and evidence that Plaintiffs' have failed to identify any evidence of direct infringement of the '335 Patent by Nikon or consumers;
- Testimony and evidence related to the Parties' claim constructions; and
- Testimony and evidence that the accused Nikon camera models do not operate the same or substantially the same with respect to the functionalities accused of infringing the '335 Patent claims.
- Nikon incorporates all evidence identified in the rebuttal expert report of Dr. Stuart Kleinfelder.

### c.    The '312 Patent

The accused sensors do not infringe the asserted claims of the '312 patent, either literally or under the doctrine of equivalents.

### (i)    There is no literal infringement

As properly construed, the accused sensors do not literally infringe any of the asserted claims of the '312 patent, specifically, claims 1-3, 6-9 and 11-16.  In particular, Defendants will rely on the following key facts and evidence:

- The accused sensors do not literally meet the limitation of "wherein a sensing node of a unit pixel in a previous scan line is selectively

shared with a sensing node of a unit pixel in a current scan line in response to a line select signal of the current scan line," as recited in claim 1 of the '312 patent. Specifically, the accused sensors do not include a line select signal that causes selective sharing of a sensing node in a current scan line and a sensing node in a previous scan line.  Furthermore, the accused sensors do not share sensing nodes between a current and a previous scan lines, regardless of whether it is "in response to a select signal," because the accused sensors share floating diffusions only between a current and a subsequent scan line.

- The accused sensors also do not include the "switching device" recited by claim 7 of the '312 patent, regardless of whether or not the term is construed as a means-plus-function limitation.  In the event the term is construed as a means-plus-function limitation, the accused sensors do not include a structure that performs the recited function or that would correlate with the corresponding structure of the limitation.  Even if the term is not construed as a means-plus-function term, the accused sensors do not perform the function of "interconnect a sensing node of a selected unit pixel to a sensing node of a neighboring unit pixel in response to a select signal," wherein "the select signal" that controls a select transistor.

- The accused sensors do not infringe claims that depend on claims 1 or 7 for at least the reasons enumerated above.

### (ii)   There is no basis for applying the doctrine of equivalents

Plaintiffs' attempt to argue infringement under the doctrine of equivalents is flawed.  In defending against Plaintiffs' allegations, Defendants will rely on the following key facts and evidence:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- There is no equivalence between the accused sensors and the "in response to a line select signal" limitation because, by using independent control signals to control the floating-diffusion switch and the select transistor (as it is done in the accused Nikon sensors), the accused products achieve the floating-diffusion switching function via a substantially different way to achieve a substantially different result from the perspective of one of ordinary skill in the art.  First, a different physical wiring layout is required to independently control the select transistor and the floating-diffusion switch ("FDSW") transistor, and substantially different timings for those control signals are required to operate those separate transistors.  In particular, a separate control signal line is dedicated to the floating diffusion switch, requiring a different wiring structure all together, thus the "way" is substantially different.  Second, the result is also substantially different because the accused products provide the flexibility to share floating diffusions only when such sharing is desired, which may not be in every situation.  The '312 Patent discloses only the sharing of sensing nodes that always happens under the control of the select signal when a unit pixel is being read out, and neither discloses nor suggests the flexible sharing of sensing nodes.

- There is also a substantial difference between sharing sensing nodes in a current and a previous scan line, as required by claim 1 of the '312 patent, and the sharing of floating diffusions between a current and a subsequent scan line, as done by the accused sensors.

- With respect to the "switching device" limitation of claim 7 of the '312 patent, a switching device that uses the row select signal to interconnect two sensing nodes of neighboring scan lines (as

required by claim 7 of the '312 patent) vs. a floating-diffusion switch that uses an independent, dedicated control signal for interconnect the floating diffusions (such as the case for the accused sensors) are two substantially different and distinct structures. The differences are substantial in that, in the accused sensors, a substantially different control scheme is used to control the floating diffusion switch, rather than relying on the row select signal of the current scan line.  The two structures perform the function of sharing sensing nodes in a substantially different way (single vs. dual control signals) to achieve a substantially different result (always sharing the neighboring sensing node when a single select signal is used vs. capable of sharing or not sharing the sensing nodes when independent control signals are used).

### (iii) Prosecution history estoppel limits the doctrine of equivalents

Prosecution history estoppel precludes Plaintiffs from attempting to prove infringement of the '312 patent claims through the doctrine of equivalents.  In particular, Plaintiffs cannot argue that two different, independent control signals that respectively control the sharing of floating diffusion switches and select transistors are the equivalent of a single select signal.  This is because during the prosecution of the '312 patent, in an effort to distinguish prior art cited by the Examiner, the applicants of the '312 patent specifically argued the novelty of the single select signal as a distinguishing feature of the claimed subject matter.  Similarly, applicants of the '312 patent also distinguished the prior art based on sharing the sensing nodes between a current and a *previous* scan line.  Therefore:

- Prosecution history estoppel prevents Plaintiffs from applying the doctrine of equivalents to argue infringement by the accused

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

20

sensors that use independent control signals for controlling the floating diffusion switches and the select transistors; and

- Prosecution history estoppel prevents Plaintiffs from applying the doctrine of equivalents to argue infringement by the accused sensors that do not share sensing nodes between a current and a previous scan line, but rather between a current and subsequent scan line.

### (1)   Evidence in Support of Prosecution History Estoppel Defense

In support of their prosecution history estoppel defense, Defendants will rely upon the following key facts and evidence:

- The '312 patent and its file wrapper;
- Prior art considered by the patent examiner during the prosecution of the '312 patent; and
- Documentary evidence and testimony that the patentee relinquished subject matter to avoid prior art during the patent prosecution, including testimony of Nikon's expert Dr. Stuart Kleinfelder.

### (iv)   Non-infringement evidence concerning the accused sensors

In order to rebut claims of infringement, Defendants will rely on the following key facts and evidence:

- The '312 patent and its file wrapper;
- All testimony and documentary evidence related to the Parties' claim constructions; and
- Testimony and documentary evidence that the accused sensors do not satisfy independent claims 1 or 7, or any of their dependent claims, including without limitation testimony of Nikon's expert Dr. Stuart Kleinfelder.

#### d.    The '017 Patent

The accused Nikon sensors do not infringe the asserted claims of the '017 patent, either literally or under the doctrine of equivalents.

#### (i)    There is no literal infringement

As properly construed, the accused Nikon sensors do not literally infringe any claims of the '017 patent, including asserted claim 1-3, 6-8, and 10-17 of the '017 Patent.  In particular:

- The accused sensors do not literally meet the limitation of "a sensing node arranged to receive the electrical signal, wherein the sensing node is selectively couplable to a sensing node of a sensing pixel in a *previous* scan line of the pixel array."  As discussed above, the accused sensors do not share sensing nodes with "previous" scan lines.

- The accused sensors also do not include a "switching device" recited by claim 7 of the '017 patent, regardless of whether or not that term is construed as a means-plus-function limitation.  In the event the term is construed as a means-plus-function limitation, the accused sensors do not include any structure that performs the recited function or that would correlate with the corresponding structure of the limitation.  Even if the term is not construed as a means-plus-function term, the accused sensors do not perform the function of "interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line," wherein the "select signal" is properly construed to mean the same select signal that controls a select transistor.

- The accused sensors do not infringe claims that depend on claims 1 or 7 for at least the reasons enumerated above.

### (ii)   No doctrine of equivalents

Plaintiffs' attempt to argue infringement under the doctrine of equivalents is flawed, for at least the following reasons:

- There is also no equivalence between the accused sensors and the "in response to a line select signal" limitation because, by using independent control signals to control the floating-diffusion switch and the select transistor (as it is done in the accused Nikon sensors), the accused products achieve the floating-diffusion switching function via a substantially different way to achieve a substantially different result from the perspective of one of ordinary skill in the art.  First, a different physical wiring layout is required to independently control the select transistor and the floating-diffusion switch ("FDSW") transistor, and substantially different timings for those control signals are required to operate those separate transistors.  In particular, a separate control signal line is dedicated to the floating diffusion switch, requiring a different wiring structure all together, thus the "way" is substantially different. Second, the result is also substantially different because the accused products provide the flexibility to share floating diffusions only when such sharing is desired, which may not be in every situation. The '017 Patent discloses only the sharing of sensing nodes that always happens under the control of the select signal when a unit pixel is being read out, and neither discloses nor suggests the flexible sharing of sensing nodes.

- With respect to the "switching device" limitation of claim 7 of the '017 patent, a switching device that uses the row-select signal to

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

23

interconnect two sensing nodes of neighboring scan lines (as required by claim 7 of the '017 patent) vs. a switching device that uses an independent, dedicated control signal for interconnecting the sensing nodes (such as the case for the accused Nikon sensors) are substantially different and distinct structures. The differences are substantial in that, in the accused sensors, a substantially different control scheme is used to control the floating diffusion switch, rather than relying on the row select signal of the current scan line.  The two structures perform the function of sharing sensing nodes using a substantially different way (single vs. dual control signals) to achieve a substantially different result (always sharing the neighboring sensing node when a single select signal is used vs. capable of sharing or not sharing the sensing nodes when independent control signals are used).

- There is also a substantial difference between sharing sensing nodes of current and previous scan lines, as required by claim 1 of the '017 patent, and the sharing of floating diffusions between a current and subsequent scan line, as done by the accused sensors.

       **(iii)**    **Prosecution history estoppel limits the doctrine of equivalents**

Prosecution history estoppel precludes Plaintiffs from attempting to prove infringement of the '017 patent claims through the doctrine of equivalents.  Because the '017 patent claims priority to the '312 patent (Defendants note that the '017 patent should not be afforded the priority of the '312 patent because new matter was added at the time of filing), the prosecution history estoppel effect of the '312 patent also applies to the '017 patent.  Hence, the discussion above with respect to the '312 patent is equally applicable to the '017 patent.

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

24

**(1)** **Evidence in Support of Prosecution History Estoppel Defense**

In support of their prosecution history estoppel defense, Defendants will rely upon the following key facts and evidence:

- The '312 patent and its file wrapper;
- The '017 patent and its file wrapper;
- Prior art considered by the patent examiner during the prosecution of the '312 and '017 patents; and
- Documentary evidence and testimony that the applicant relinquished subject matter to avoid prior art during the patent prosecution, including testimony of Defendants' expert Dr. Stuart Kleinfelder.

**(iv)** **Evidence for non-infringement by the accused sensors**

In order to prove non-infringement, Defendants will rely on the following key facts and evidence:

- The '312 patent and its file wrapper;
- The '017 patent and its file wrapper;
- All of the testimony and documentary evidence related to the Parties' claim constructions; and
- Testimony and documentary evidence that the accused sensors do not include each and every limitation of independent claims 1 or 7, or any of their dependent claims, including without limitation testimony of Defendants' expert Dr. Stuart Kleinfelder.

**e.** **The '574 Patent**

The accused Nikon sensors do not infringe the asserted claims of the '574 patent, either literally or under the doctrine of equivalents.

**(i)** **There is no literal infringement**

As properly construed, the accused Nikon sensors do not literally infringe

any claims of the '574 patent, including asserted claims 1-13 and 16-31 of the '574
Patent.  In particular:

- The accused sensors do not include any of a "first pixel," "second
  pixel," "third pixel," or "sensing pixel" recited limitations of the
  asserted claims of the '574 patent.

- The accused sensors do not literally meet the limitation of
  "selectively electrically coupling the first sensing node of the first
  pixel to a second sensing node of a second pixel of the image
  sensor, wherein the first pixel is in an $n^{th}$ line and the second pixel
  is in an $n-1^{th}$ line," as recited in claim 9 of the '574 patent.  As
  discussed above, the accused sensors do not share sensing nodes
  with "previous" scan lines.

- The accused sensors also do not selectively couple sensing nodes in
  response to row select signals, as required by each of claims 3, 13,
  17-19, 24-26, 28 and 29 of the '574 patent.

The accused Nikon sensors do not meet the limitations of the asserted claims
of the '574 patent for at least the reasons enumerated above.

### (ii)    There is no basis for applying the doctrine of equivalents

Plaintiffs' attempt to argue infringement under the doctrine of equivalents is
flawed, for at least the following reasons:

- The difference between the structure of the accused sensor pixels
  and a "first pixel," "second pixel," "third pixel," or "sensing pixel,"
  as recited in the asserted claims, is not insubstantial to one of
  ordinary skill in the art.  The function of the "first pixel," "second
  pixel," "third pixel," and "sensing pixel" in the asserted claims of
  the '574 Patent is to detect light at a single location (i.e., using a
  single photodiode) in the image plane.  The way by which a "first

1   pixel," "second pixel," "third pixel," or "sensing pixel" performs
2   that function, as shown in the patents, is with a structure that
3   includes a single photodiode to generate charges corresponding to
4   the amount of light detected by the photodiode, and a
5   corresponding sensing node to read out the photodiode voltage.
6   Two photodiodes that constitute two separate pixels that share a
7   single floating diffusion, such as those found in the accused
8   products, perform a substantially different function – to detect
9   (separately) light for more than one color (e.g., red and green), and
10  do so in a substantially different way (by sharing a single floating
11  diffusion), to provide substantially different results (outputting two
12  different color values rather than just one) than a single photodiode
13  structure that makes up a "sensing pixel."  Separately, the sharing
14  of a single sensing node between two photodiodes requires a
15  substantially different way of operation than having a sensing node
16  dedicated to each photodiode.  Specifically, the structural
17  difference between two photodiodes sharing one sensing node
18  using two transfer gates with independent controls vs. one
19  photodiode with one transfer gate that transfer charges to a
20  dedicated sensing node use substantially different control
21  operations.

22  • There is also no equivalence between the independent control
23  signal used in the accused sensors and the "select signal" limitation
24  because, by using independent control signals to control the
25  floating-diffusion switch and the select transistor (as it is done in
26  the accused sensors), the accused products achieve the floating-
27  diffusion switching function via a substantially different way to
28  achieve a substantially different result from the perspective of one

of ordinary skill in the art.  First, a different physical wiring layout is required to independently control the select transistor and the floating-diffusion switch ("FDSW") transistor, and substantially different timings for those control signals are required to operate those separate transistors.  In particular, a separate control signal line is dedicated to the floating diffusion switch, requiring a different wiring structure all together, thus the "way" is substantially different.  Second, the result is also substantially different because the accused products provide the flexibility to share floating diffusions only when such sharing is desired, which may not be in every situation.  The '574 Patent discloses only the sharing of sensing nodes that always happens under the control of the select signal when a unit pixel is being read out, and neither discloses nor suggests the flexible sharing of sensing nodes.

- There is also a substantial difference between sharing sensing nodes of current and previous scan rows, as required by claims 11 and 12 of the '574 patent, and the sharing of floating diffusions between a current and subsequent scan line, as done by the accused sensors.

   **(iii)**   **Prosecution history estoppel limits the doctrine of equivalents**

   Prosecution history estoppel precludes Plaintiffs from attempting to prove infringement of the '574 patent claims through the doctrine of equivalents.  Because the '574 patent claims priority to the '312 patent (Defendants note that the '574 patent should not be afforded the priority of the '017 or the '312 patent because new matter was added at the time of filing), the prosecution history estoppel effect of the '312 patent also operates on the '574 patent.  Hence, the discussion above with respect to the '312 patent is equally applicable to the '574 patent.

(1) **Evidence in Support of Prosecution History Estoppel Defense**

In support of their prosecution history estoppel defense, Defendants will rely upon the following key facts and evidence:

- The '312 patent and its file wrapper;
- The '017 patent and its file wrapper;
- The '574 patent and its file wrapper;
- Prior art considered by the patent examiner during the prosecution of the '312, 017, and '574 patents; and
- Documentary evidence and testimony that the applicant relinquished subject matter to avoid prior art during the patent prosecution, including testimony of Nikon's expert Dr. Stuart Kleinfelder.

(iv) **Evidence for non-infringement by the accused sensors**

In order to rebut Plaintiffs' claims of infringement, Defendants will rely on the following key facts and evidence:

- The '312 patent and its file wrapper;
- The '017 patent and its file wrapper;
- The '574 patent and its file wrapper;
- All of the testimony and documentary evidence related to the Parties' claim constructions; and
- Testimony and documentary evidence that the accused sensors do not include each and every limitation of the independent claims or any of their dependent claims, including without limitation testimony of Defendants' expert Dr. Stuart Kleinfelder.

**B.    Induced Infringement Under 35 U.S.C. § 271(b)**

Defendants are not liable for induced infringement of any of the asserted patents pursuant to 35 U.S.C. § 271(b).

### 1. Elements Required to Prove Inducement Under 35 U.S.C. § 271(b)

In order to be liable for inducement of infringement, a defendant must "actively induce[] infringement of a patent." 35 U.S.C. § 271(b). "Induced infringement under § 271(b) requires knowledge [by the inducer] that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 755 (2011). Thus, the inducer must have "actively and *knowingly* aid[ed] and abet[ted] another's direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-1305 (Fed. Cir. 2006). "[K]nowledge of the acts alleged to constitute infringement" is not enough. The 'mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.'" *Id.* at 1305.

### 2. Evidence that Nikon Is Not Liable for Induced Infringement Under 35 U.S.C. § 271(b)

Nikon will introduce the following categories of evidence establishing that Nikon did not induce infringement any of the asserted patents under 35 U.S.C. § 271(b):

- Testimony and evidence that Nikon Corp. does not directly interact with U.S. customers;
- Testimony and evidence that Sendai Nikon Corp. only manufactures cameras for Nikon Corp. in Japan and has no contacts with the U.S., and has no role in the design, development, marketing, or sale of the accused products;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '335 Patent in the U.S.;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '574 Patent in the U.S.;

- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '163 Patent in the U.S.;

- Testimony and evidence that Nikon Corp. did not know of the '163 Patent before May 2009;

- Testimony and evidence that Sendai Nikon Corp. and Nikon Inc. did not know of the '163 Patent before the complaint for Investigation No. 337-TA-1059 was filed in the International Trade Commission;

- Testimony and evidence that Nikon Corp. did not know of the '335 Patent before February 27, 2009;

- Testimony and evidence that Nikon Inc. and Sendai Nikon Corp. did not know of the '335 Patent before they received a copy of Plaintiffs' complaint in the 7083;

- Testimony and evidence that Nikon Corp., Nikon Inc., and Sendai Nikon Corp. did not know of the '574 Patent before they received a copy of Plaintiffs' complaint filed in the 7083 case;

- Testimony and evidence that Nikon Corp. first became aware of the existence of the '312 Patent in March 2013, but did not know of its contents at that time;

- Testimony and evidence that Nikon Corp. first became aware of the contents of the '312 Patent when it received a copy of Plaintiffs' complaint filed in the 3221 case;

- Testimony and evidence that Nikon Corp. first became aware of the '017 Patent when it received a copy of Plaintiffs' complaint in the 3221 case;

1
2
3

- Testimony and evidence that Nikon Inc. and Sendai Nikon Corp. did not know of the '312 and '017 Patents until they received a copy of Plaintiffs' complaint in the 3221 case;

4
5

- Testimony and evidence that Nikon did not specifically intend anyone to infringe the asserted patents;

6
7

- Testimony and evidence that Nikon was not willfully blind to the asserted patents;

8
9

- Testimony and evidence that Nikon did not have any intent or knowledge required by 35 U.S.C. § 271(b);

10
11

- Testimony and evidence showing that Plaintiffs failed to identify any infringement evidence for Sendai Nikon Corp.;

12
13
14

- Testimony and evidence showing that Plaintiffs failed to identify any evidence proving that Nikon knowingly, actively, and intentionally aided and abetted another's infringement in the U.S.;

15
16
17
18

- Testimony and evidence that Nikon had a good faith belief of non-infringement and invalidity for the asserted patents (*See* I.A.2 (failure to prove direct infringement), II.B (non-infringement), and II.C (invalidity));

19
20
21

- Testimony and evidence that operating a Nikon camera in one of the many modes that do not involve Face Priority AF or Pet Portrait is a substantial non-infringing use for the '163 Patent;

22
23
24
25

- Testimony and evidence that operating a Nikon D4, Df, or D4S in two of the three modes of operation, including the base mode and video mode of operation, is a substantial non-infringing use for the '312, '017, and '574 Patent;

26
27

- Testimony and evidence that Sendai Nikon Corp. is not an "alter ego" of Nikon Corp.

28

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

32

1      • Testimony and evidence that there is no direct infringement of the

2      asserted claims of the '163, '335, '312, '017, '574 Patents, and

3      therefore no indirect infringement
        o *See* I.A.2 (failure to prove direct infringement) and II.B (non-
4         infringement)

5  **C.     Contributory Infringement Under 35 U.S.C. § 271(c)**

6      Defendants are not liable for contributory infringement of the asserted

7  patents pursuant to 35 U.S.C. § 271(c).

8      **1.     Elements Required to Prove Infringement Under 35 U.S.C.
                § 271(c)**
9

10      In order to prove contributory infringement, Plaintiffs must prove that: (1)

11  Defendants knew of the patents; (2) Defendants supplied a part or a component to a

12  third party for use in a product, machine, or process that infringes a claim; (3) the

13  third party infringed the claim; and (4) the part or component is a significant part of

14  the invention, was especially made or adapted for use in a way that infringes, and

15  has no significant non-infringing use.  *Aro Mfg. Co. v. Convertible Top*

16  *Replacement Co.*, 377 U.S. 476, 488-89 (1964).

17      "In order to succeed on a claim of contributory infringement, in addition to

18  proving an act of direct infringement, plaintiff must show that defendant 'knew that

19  the combination for which its components were especially made was both patented

20  and infringing' and that defendant's components have 'no substantial non-

21  infringing uses.'"  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed.

22  Cir. 2009) (citations omitted).

23      **2.     Evidence that Defendants Are Not Liable for Contributory
                Infringement Under 35 U.S.C. § 271(c)**

24      Defendants will introduce the following categories of evidence establishing

25  that Defendants did not contribute to the infringement any of the asserted patents

26  under 35 U.S.C. § 271(c):

27      • Testimony and evidence that Nikon Corp. does not directly interact

28      with U.S. customers;

- Testimony and evidence that Sendai Nikon Corp. only manufactures cameras for Nikon Corp. in Japan and has no contacts with the U.S., and has no role in the design, development, marketing, or sale of the accused products;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '335 Patent in the U.S.;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '574 Patent in the U.S.;
- Testimony and evidence showing that Plaintiffs failed to identify instances of users using the asserted method claims of the '163 Patent in the U.S.;
- Testimony and evidence that Nikon Corp. did not know of the '163 Patent before May 2009;
- Testimony and evidence that Sendai Nikon Corp. and Nikon Inc. did not know of the '163 Patent before the complaint for Investigation No. 337-TA-1059 was filed in the International Trade Commission;
- Testimony and evidence that Nikon Corp. did not know of the '335 Patent before February 27, 2009;
- Testimony and evidence that Nikon Inc. and Sendai Nikon Corp. did not know of the '335 Patent before they received a copy of Plaintiffs' complaint in the 7083;
- Testimony and evidence that Nikon Corp., Nikon Inc., and Sendai Nikon Corp. did not know of the '574 Patent before they received a copy of Plaintiffs' complaint filed in the 7083 case;

1       • Testimony and evidence that Nikon Corp. first became aware of the
2          existence of the '312 Patent in March 2013, but did not know if its
3          contents at that time;
4       • Testimony and evidence that Nikon Corp. first became aware of the
5          contents of the '312 Patent when it received a copy of Plaintiffs'
6          complaint filed in the 3221 case;
7       • Testimony and evidence that Nikon Corp. first became aware of the
8          '017 Patent when it received a copy of Plaintiffs' complaint in the
9          3221 case;
10      • Testimony and evidence that Nikon Inc. and Sendai Nikon Corp.
11         did not know of the '312 and '017 Patents until they received a
12         copy of Plaintiffs' complaint in the 3221 case;
13      • Testimony and evidence that Nikon did not intend for anyone to
14         infringe the asserted patents;
15      • Testimony and evidence that Nikon was not willfully blind to the
16         asserted patents;
17      • Testimony and evidence that Nikon did not have any intent or
18         knowledge required by 35 U.S.C. § 271(c);
19      • Testimony and evidence showing that Plaintiffs failed to identify
20         any infringement evidence for Sendai Nikon Corp.;
21      • Testimony and evidence that Nikon had a good faith belief of non-
22         infringement and invalidity of the asserted patents (*See* I.A.2
23         (failure to prove direct infringement), II.B (non-infringement), and
24         II.C (invalidity));
25      • Testimony and evidence that Nikon does not sell or otherwise
26         distribute the accused products as components of a multi-
27         component product;
28

- Testimony and evidence that operating a Nikon camera in one of the many modes that do not involve Face Priority AF or Pet Portrait is a substantial non-infringing use for the '163 Patent;

- Testimony and evidence that operating a Nikon D4, Df, or D4S in two of the three modes of operation, including the base mode and video mode of operation, is a substantial non-infringing use for the '312, '017 and '574 Patent;

- Testimony and evidence that Sendai Nikon Corp. is not an "alter ego" of Nikon Corp.

- Testimony and evidence that there is no direct infringement of the asserted claims of the '163, '335, '312, '017, '574 Patents, and therefore no indirect infringement

  - *See* I.A.2 (failure to prove direct infringement) and II.B (non-infringement)

## III.   NIKON'S DEFENSES [L.R. 16-4.1(D)]

### A.   Failure to State a Claim

#### 1.   Legal Standard

To state a legal claim, a plaintiff must plausibly allege sufficient facts such that, accepted as true, allow a court to draw the inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level . . . . " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id.* (citation omitted).

**2.      Evidence that Plaintiffs Have Failed to State a Claim**

- Testimony and evidence to show that Plaintiffs have not stated a sufficient claim to accuse Sendai Nikon of infringement.  *See Twombly*, 550 U.S. at 555;

- Testimony and evidence to show that Plaintiffs allege no specific facts to support an inference that Sendai Nikon or Nikon Inc. had pre-suit knowledge of the patents-in-suit or knowledge that one or more of Defendants' activities allegedly induced or contributed to infringement;

- Testimony and evidence to show that Plaintiffs also failed to allege which Nikon entity (i.e., Nikon Corp., Sendai Nikon, or Nikon, Inc.) is accused of which elements of inducement and contributory infringement;

- Testimony and evidence to show that the following cameras are subject to a license:  Nikon D5600, D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, and D850.

- Testimony and evidence to show that Plaintiffs failed to allege sufficient facts to state a claim of infringement by the following accused Nikon cameras:  D300, D500, D600, D610, D750, D800, D800E, D810, D810A, D850, D3100, D3200, D3300, D3400, D5300, D5500, D7000, D7100, D7500, V1, J1, J2, S1, V2, J3, S2, AW1, and J4;

- Evidence consistent with Nikon's Motion to Dismiss Plaintiffs' First Amended Complaint in the 3221 case (3221 ECF No. 34-1).

**B.      Non-infringement**

Plaintiffs bear the burden of proving infringement.  *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011).  Defendants will

1   show that Plaintiffs fail to meet that burden for the reasons, and using the evidence

2   described in, Section I.A.2.

3   **C.     Invalidity**

4       Nikon contends that the asserted patents are invalid under 35 U.S.C. §§ 112,

5   ¶¶ 1, 2, 6; *id.* § 102; or *id.* § 103.[5]

6   **1.     Invalidity Under 35 U.S.C. § 112**

7   **a.     35 U.S.C. § 112, ¶ 1 – Written Description**

8       The asserted claims of the '312, '017, and '574 Patents, and claims 5, 7, and

9   9 of the '335 Patent, are invalid because the common specification of the '312,

10   '017, '574, and '335 Patents does not contain an adequate written description of the

11   claimed subject matter.  Defendants will show by clear and convincing evidence

12   that the specification fails to meet the legal requirements for written description of

13   an invention.  *See* Federal Circuit Bar Association Model Jury Instructions, B.4.2a.

14       The written description requirement ensures that the issued claims

15   correspond to the scope of the written description that was provided in the original

16   application.  *E.g.*, Federal Circuit Bar Association Model Jury Instructions, B.4.2a.

17   In deciding whether the patents' specification satisfies the written description

18   requirement, the jury must consider the description from the viewpoint of a person

19   having ordinary skill in the field of technology of the patent when the application

20   was filed.  The written description requirement is satisfied if a person having

21   ordinary skill reading the original patent application would have recognized that it

22   describes the full scope of the claimed invention as it is finally claimed in the issued

23   patent and that the named inventor actually possessed that full scope by the filing

24   date of the original application.  *E.g.*, Federal Circuit Bar Association Model Jury

25   Instructions, B.4.2a.

26       Specifically, for the '312 patent, all of the asserted claims recite a "unit

27    

28       [5]All statutory citations in this Memorandum are pre-AIA.

pixel." To the extent "unit pixel" is ultimately determined to include "one or more" photodiodes, the '312 patent specification would not lead a person of ordinary skill in the art to reasonably conclude that the named inventor was in possession of the claimed subject matter.

Specifically, for the '312 patent, claim 1 recites "wherein a sensing node of a unit pixel in a previous scan line is selectively shared with a sensing node of a unit pixel in a current scan line in response to a line select signal of the current scan line." To the extent "selectively sharing" refers to variable capacitance of a pixel or the use of a signal other than the select signal of the current scan line to share sensing nodes, the '312 patent specification would not lead a person of ordinary skill in the art to reasonably conclude that the named inventor was in possession of the claimed subject matter.

Specifically, for the '017 patent, all asserted claims recite a "sensing pixel." To the extent "sensing pixel" is ultimately determined to include "one or more" photodiodes, the '017 patent specification would not lead a person of ordinary skill in the art to reasonably conclude that the named inventor was in possession of the claimed subject matter.

Specifically, for the '017 patent, claim 1 recites "a sensing node arranged to receive the electrical signal, wherein the sensing node is selectively couplable to a sensing node of a sensing pixel in a previous scan line of the pixel array." To the extent "selectively couplable" refers to variable capacitance of a pixel or the use of a signal other than the select signal of the current scan line to share sensing nodes, the '017 patent specification would not lead a person of ordinary skill in the art to reasonably conclude that the named inventor was in possession of the claimed subject matter.

Specifically, for the '574 patent, various asserted claims recite "first pixel," "second pixel," "third pixel," and "sensing pixel." To the extent any of such pixel terms is ultimately determined to include "one or more" photodiodes, the '574

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

39

patent specification would not lead a person of ordinary skill in the art to reasonably conclude that the named inventor was in possession of the claimed subject matter.

Specifically, with respect to the asserted method claims of the '574 patent, the '574 patent specification would not lead a person of ordinary skill in the art to reasonably conclude that the named inventor was in possession of the claimed methods.

Specifically, with respect to the asserted claim 30 of the '574 patent, the '574 patent specification would not read a person of ordinary skill in the art to reasonably conclude that the named inventor was in possession of the claimed subject matter, including an external system.

Specifically, with respect to claims 3, 9-16, and 24-29 of the '574 patent, each of which recites limitation directed to the selective coupling of sensing nodes, To the extent selectively coupling refers to variable capacitance of a pixel or the use of a signal other than the select signal of the current scan line to share sensing nodes, the '574 patent specification would not lead a person of ordinary skill in the art to reasonably conclude that the named inventor was in possession of the claimed subject matter.

Specifically, with respect to claim 2 of the '574 patent, the '574 patent specification would not lead a person of ordinary skill in the art to reasonably conclude that the name inventor was in possession of the claimed subject matter of using a select signal to control the transfer transistor, or the use of more than one select signal in connection with the scanning of a single pixel.

Specifically, with respect to claim 4 of the '574 patent, the '574 patent specification would not lead a person of ordinary skill in the art to reasonably conclude that the name inventor was in possession of the claimed subject matter of connecting a second and third pixel together, which would effectively require coupling of a previous and a subsequent sensing node, without connecting a

current-scan sensing node.

Specifically, with respect to claim 6 of the '574 patent, the '574 patent specification would not lead a person of ordinary skill in the art to reasonably conclude that the named inventor was in possession of the claimed subject matter of resetting two sensing nodes (first and second) to a reset level for one of the pixels.

For each of the '312, '017, and '574 patents, to the extent any of the asserted claims are construed to encompass the use of an independent control signal, other than a row select signal, to "selectively" couple or share the sensing nodes of two pixels, the common specification of the patents would not lead a person of ordinary skill in the art to reasonably conclude that the named inventor was in possession of the claimed subject matter.

For the '335 Patent, claims 5, 7, and 9 lack written description and enablement because they recite additional steps that are not disclosed in the specification.  For example, Claim 5 recites the step of turning off the reset transistor after step (c) of claim 1.  However, step (d) of claim 1 also recites turning off the reset transistor.  There is no disclosure in the '335 patent of turning off the reset transistor twice in a row.  Therefore, there is no written description to support the language of claim 5.  The same issue exists for claims 7 and 9.  In particular, claim 7, when read in connection with step (e) of claim 1, requires turning off the first transfer transistor twice in a row, and claim 9 requires turning off the reset transistor twice in a row (again).  Further, the specification of the '335 patent does not enable a person of ordinary skill in the art to carry out the steps of claims 5, 7, or 9.

### b.   35 U.S.C. § 112, ¶ 2 – Indefiniteness

Defendants will prove that the asserted claims of the '335 Patent are indefinite under 35 U.S.C. § 112, ¶ 2 and therefore invalid.  The test for definiteness is whether the patent claim, when viewed in light of the specification and prosecution history, informs a person of skill in the art about the invention with

1  reasonable certainty. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120,

2  2128–30 (2014).  To succeed, Defendants must show by clear and convincing

3  evidence that the claims are indefinite.  *Id.* at 2130.

4        Claim 1 of the '335 Patent is indefinite because it is vague and unclear to a

5  person of ordinary skill in the art, specifically, whether the "turning on" and

6  "turning off" as recited in steps 1(c) – 1(f) represent a step of transitioning from an

7  off state to an on state and from an on state to an off state, respectively, or whether

8  the steps occur in the order recited, and if not in what order they would occur.

9  Claim 1 and all dependent claims thereto are therefore invalid.  35 U.S.C. § 112, ¶

10  2; *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1102 (Fed. Cir. 2014)

11  (where an independent claim is held indefinite, any claims that depend on that

12  independent claim are indefinite as well).

13        Claim 3 of the '335 Patent is indefinite because the phrase "the method

14  controls a depletion time and a photo charge generating and integrating time by

15  adjusting a turn-on time and a turn-off time for the first and second transfer

16  transistors" is indefinite, as it is unclear to a person of ordinary skill in the art

17  whether the control of depletion time, photo charge generating time, and integrating

18  time are made respectively or collectively.

19        Claim 5 of the '335 Patent is indefinite because it is unclear to a person of

20  ordinary skill in the art whether the recited steps occur prior to or after the steps

21  recited in step (c) of claim 1.

22        Claim 6 of the '335 Patent is indefinite because it is unclear to a person of

23  ordinary skill in the art the whether the term "so that the sampled reset voltage level

24  is converted into a digital signal" is a part of the claimed method or a mere

25  statement of purpose of the prior step(s).

26        Claim 7 of the '335 Patent is indefinite because it is unclear to a person of

27  ordinary skill in the art whether the recited steps occur prior to or after the steps

28  recited in step (d) of claim 1.

1    Claim 8 of the '335 Patent is indefinite because it is unclear to a person of

2 ordinary skill in the art the whether the term "so that the sampled reset voltage level

3 is converted into a digital signal" is a part of the claimed method or a mere

4 statement of purpose of the prior step(s).

5    Claim 9 of the '335 Patent is indefinite because it is unclear to a person of

6 ordinary skill in the art it is unclear whether the additionally recited steps occur

7 prior to or after the steps recited in step (e) of claim 1.

8    Claim 10 of the '335 Patent is indefinite because it is unclear to a person of

9 ordinary skill in the art the whether the term "so that the sampled reset voltage level

10 is converted into a digital signal" is a part of the claimed method or a mere

11 statement of purpose of the prior step(s).

12    Claim 11 of the '335 Patent is indefinite because it is unclear to a person of

13 ordinary skill in the art whether the further recited steps occur prior to or after the

14 steps recited in step (f) of claim 1.

15    Claim 12 of the '335 Patent is indefinite because it is unclear to a person of

16 ordinary skill in the art the whether the term "so that the sampled reset voltage level

17 is converted into a digital signal" is a part of the claimed method or a mere

18 statement of purpose of the prior step(s).

19    Claim 1 of the '312 Patent and claim 1 of the '017 Patent are indefinite

20 because they are mixed claims directed to both an apparatus and a method for using

21 that apparatus.  "A claim is considered indefinite if it does not reasonably

22 apprise those skilled in the art of its scope."  *IPXL Holdings LLC v. Amazon.com*

23 *Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005) (citation omitted).

24            **(i)    Evidence in Support of Invalidity Under 35
                       U.S.C. § 112 Defenses**

25
                **(1)    '335 Patent, claims 5, 7 & 9**
26
        • The '335 patent, the patents and patent applications cited therein,
27
              and the '335 prosecution history.
28

- Testimony and evidence to show that claims 5, 7, and 9 fail to meet the written-description and/or enablement requirement.
- All evidence regarding claim construction and invalidity in Nikon's expert reports.

### (2)   '312 Patent, claim 1

- The '312 patent, the patents and patent applications cited therein, and the '312 prosecution history.
- Expert testimony and evidence that a person of ordinary skill in the art would understand claim 1 of the '312 patent was directed to both an apparatus and a method for using the claimed apparatus.
- All evidence regarding claim construction and invalidity in Nikon's expert reports.

### (3)   '017 Patent, claim 1

- The '017 patent, the patents and patent applications cited therein, and the '312 and '017 prosecution histories.
- Expert testimony and evidence that a person of ordinary skill in the art would understand that claim 1 of the '017 patent was directed to both an apparatus and a method for using the claimed apparatus.
- All evidence regarding claim construction and invalidity set forth in Nikon's expert reports.

## 2.   Invalidity Under 35 U.S.C. §§ 102 and 103

### a.   Elements for Invalidity Under 35 U.S.C. § 102

In order to be entitled to a patent, the claimed subject matter must actually be "new." In general, the claimed subject matter is new when the identical apparatus or method has not been made, used, or disclosed before. Anticipation must be determined on a claim-by-claim basis. *E.g.*, Federal Circuit Bar Association Model Jury Instructions, B.4.3b-1.

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

44

### b. Elements for Invalidity Under 35 U.S.C. § 103

"A party seeking to invalidate a patent on obviousness grounds must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Ivera Med. Corp. v. Hospira, Inc.*, 801 F.3d 1336, 1344 (Fed. Cir. 2015) (citation omitted). In determining whether a patent claim is obvious, the jury must consider the level of ordinary skill in the art that someone would have had at the time the patent applications were filed, the scope and content of the prior art, and any differences between the prior art and the claimed invention. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); Federal Circuit Bar Association Model Jury Instructions, B.4.3c.

In considering whether a claim is obvious, the jury may also consider "secondary considerations, which include: (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claim provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements of the claim; (4) whether the prior art teaches away from combining elements in the claim; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces." *See Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1129 (Fed. Cir. 2000); Federal Circuit Bar Association Model Jury Instructions, B.4.3c.

### c. Invalidity Under 35 U.S.C. §§ 102 and 103 Defense

#### (i) The '163 Patent

Defendants will prove by clear and convincing evidence that every asserted

claim of the '163 Patent is anticipated or obvious in view of prior art.

(1)   **Evidence in support of §§ 102 and 103 invalidity**

In support of their §§ 102 and 103 defenses, Defendants will rely on the following key facts and evidence:

- The '163 Patent and its file wrapper;
- All testimony and evidence related to the Parties' claim constructions;
- Primary and secondary prior art references, including without limitation: Yow; the Yow Thesis; Kosugi; Hoogenboom; Fang; Crowley; and Rowley;
- Other publications cited in the prior art references, including without limitation: Yow & Cipolla, 1995 and Canny;
- Testimony and evidence concerning the public accessibility of any asserted prior art references;
- Testimony of Defendants' expert witness Dr. Trevor Darrell that the '163 Patent claims are anticipated and/or obvious in view of the prior art;
- Testimony and evidence establishing a lack of secondary considerations regarding obviousness; and
- The arguments set forth in Nikon's expert reports regarding invalidity.

(ii)   **The '335 Patent**

Defendants will prove by clear and convincing evidence that every asserted claim of the '335 Patent is anticipated or obvious in view of prior art.

(1)   **Evidence in support of §§ 102 and 103 invalidity**

In support of their §§ 102 and 103 defenses, Defendants will rely on the

following key facts and evidence:

- The '335 Patent and its file wrapper;
- All testimony and evidence pertinent to the Parties' claim constructions;
- Prior art documents and physical exhibits, including without limitation Takahashi, Matsunaga, Dickinson, and Gowda;
- Testimony of Nikon's expert witness Dr. Stuart Kleinfelder that the '335 Patent claims are anticipated and/or obvious in view of the prior art;
- Testimony and evidence establishing lack of secondary considerations regarding obviousness; and
- All of the arguments regarding invalidity in Nikon's expert reports.

### (iii)   The '312 Patent

In support of their §§ 102 and 103 defenses, Defendants will rely on the following key facts and evidence:

- The '312 patent and its file wrapper;
- All Testimony and evidence pertinent to the Parties' claim constructions;
- Prior art documents and physical exhibits, including without limitation: Kaifu, Yuki, Guidash '665, Rhodes, and admitted prior art;
- Testimony of Defendants' expert witnesses Mark Butterworth that the '312 patent claims are anticipated and/or obvious in view of the prior art;[6] and

---

[6] The Court's holding that Yuki and Kaifu do not anticipate the '312 or '017 Patents is based on claim construction holdings with which Defendants disagree. Defendants reserve the right to object and/or appeal the Court's claim-construction ruling as well as the holding of no anticipation by Kaifu or Yuki.

1  • Testimony and evidence establishing the lack of secondary
2  considerations of obviousness.

3  **(iv)   The '017 Patent**

4  In support of their §§ 102 and 103 defenses, Defendants will rely on the
5  following key facts and evidence:

6  • The '312 patent and its file wrapper;

7  • The '017 patent and its file wrapper;

8  • All Testimony and evidence pertinent to the Parties' claim
9  constructions;

10 • Prior art documents and physical exhibits, including without
11 limitation: Kaifu, Yuki, Guidash '665, Guidash '990, Suzuki,
12 Narui, Rhodes, and the admitted prior art;

13 • Testimony of Defendants' expert witnesses Mark Butterworth that
14 the '017 patent claims are not entitled to a priority date earlier than
15 the March 2, 2012 U.S. filing date of the '017 patent.

16 • Testimony of Defendants' expert witness Mark Butterworth that the
17 '017 patent claims are anticipated and/or obvious in view of the
18 prior art; and

19 • Testimony and evidence establishing lack of secondary
20 considerations regarding obviousness.

21 **(v)   The '574 Patent**

22 In support of their §§ 102 and 103 defenses, Defendants will rely on the
23 following key facts and evidence:

24 • The '312 patent and its file wrapper;

25 • The '017 patent and its file wrapper;

26 • The '574 patent and its file wrapper;

27 • All Testimony and evidence pertinent to the Parties' claim
28 constructions;

1   • Prior art documents and physical exhibits, including without

2      limitation: Kaifu, Yuki, Guidash '665, Guidash '990, Rhodes,

3      Suzuki, Narui, Barbier, Altice Jr., and the admitted prior art;

4   • Testimony of Defendants' expert witness Mark Butterworth that the

5      '574 patent claims are anticipated and/or obvious in view of the

6      prior art;

7   • Testimony of Defendants' expert witnesses Mark Butterworth that

8      the '574 patent claims are not entitled to a priority date earlier than

9      the January 3, 2014 U.S. filing date of the '574 patent; and

10  • Testimony and evidence establishing lack of secondary

11     considerations of obviousness.

12  **D.     Estoppel**

13  Defendants contend that Plaintiffs are estopped from proving infringement

14  by licensed products and that prosecution history estoppel precludes Plaintiffs from

15  attempting to prove infringement of at least several of the asserted patents under the

16  doctrine of equivalents.

17  **1.     Prosecution History Estoppel**

18  Prosecution history estoppel prevents applying the doctrine of equivalents to

19  reach subject matter relinquished by the patent applicant during prosecution. *Festo*

20  *Corp.*, 535 U.S. at 734. Amending a claim is not considered surrendering a

21  particular equivalent if the rationale behind the amendment bears "no more than a

22  tangential relation to the equivalent." *Id.* at 740. However, "amendment made to

23  avoid prior art that contains the equivalent in question is not tangential; it is central

24  to allowance of the claim." *Festo Corp.*, 344 F.3d at 1369.

25  **a.     Prosecution History Estoppel – '163 Patent**

26  Defendants will prove that prosecution history estoppel precludes Plaintiffs

27  from attempting to prove infringement of the '163 Patent claims through the

28  doctrine of equivalents. In particular, Plaintiffs cannot argue that the accused

products derive a correlation image "pixel by pixel," because the patentee distinguished Moghaddam, a prior art that derives, one region of an input image at a time, a probability that an image region contains a human face, by stating that Moghaddam did not calculate a "correlation image." Plaintiffs also cannot argue that the accused products infringe by calculating a purported correlation image pixel after they identify a candidate region, because the patentee argued that the '163 patent claims that deriving a correlation image necessarily precedes the step of identifying potential candidate regions. Finally, Plaintiffs are also precluded from arguing that the accused products infringe by identifying candidate regions through methods other than detecting a local maximum in a derived correlation image.

### (i)    Evidence in Support of Prosecution History Estoppel Defense

- The '163 Patent and its file wrapper; and
- Prior art considered by the patent examiner during the prosecution of the '163 Patent, including without limitation Moghaddam; and
- Documentary evidence and testimony that the patentee relinquished subject matter to avoid prior art during prosecution, including testimony of Defendants' expert Dr. Trevor Darrell.

### b.    Prosecution History Estoppel – '335 Patent

Defendants will prove that prosecution history estoppel precludes Plaintiffs from attempting to prove infringement of the '335 Patent claims through the doctrine of equivalents. In particular, Plaintiffs cannot argue that, in claim 1, the transitioning the transistors to an "on" or "off" state constitutes an insubstantial difference to ensuring that the specified transistor is on or off. Plaintiffs also cannot argue performing steps (a) through (f) in claim 1 in order without any overlap is insubstantially different from performing the steps out of order or that the steps may be overlapped. In showing prosecution history estoppel.

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

50

**(i)** **Evidence in Support of Prosecution History Estoppel Defense**

- The '335 Patent and its file wrapper; and

- Prior art considered by the patent examiner during the prosecution of the '335 Patent; and

- Documentary evidence and testimony that the patentee relinquished subject matter to avoid prior art during prosecution, including testimony of Defendants' expert Dr. Stuart Kleinfelder.

**c.** **Prosecution History Estoppel – Kwon Patents ('312, '017, '574 Patents)**

Defendants will prove that prosecution history estoppel precludes Plaintiffs from attempting to prove infringement of the Kwon Patent claims through the doctrine of equivalents. In particular, Plaintiffs cannot argue that a "select line" or any other similar limitation refers to any signals other than a row select signal under the doctrine of equivalents, because the applicants made arguments during the prosecution of the '312 patent to distinguish against the cited prior art.

**(i)** **Evidence in Support of Prosecution History Estoppel Defense**

- The '312 Patent and its file wrapper;

- Prior art considered by the patent examiner during the prosecution of the '312 Patent; and

- Documentary evidence and testimony that the patentee relinquished subject matter to avoid prior art during the patent prosecution, including testimony of Nikon's expert Mark Butterworth.

**2.** **Other Estoppel**

- Testimony and evidence showing that Plaintiffs are estopped from asserting infringement for the following cameras because they are subject to a license agreement:  Nikon D5600, D500, D600, D750,

1                 D800, D800E, D810, D810A, D3300, D5300, D5500, D7000,

2                 D7500, and D850.

3      **E.**     **Marking**

4          **1.**     **Marking Elements**

5        When a patentee or its licensee makes or sells devices that are covered by its

6 patent, the patentee cannot recover damages that may have occurred before the

7 patentee gave the alleged infringer "notice of infringement." 35 U.S.C. § 287(b)(2).

8 Notice under § 287(b)(2) can be accomplished in one of two ways: actual or

9 constructive. *See, e.g.*, *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-12 (Fed. Cir.

10 1996). Thus, for Plaintiffs to be entitled to damages that may have accrued before

11 it filed this lawsuit in April 2017, Plaintiffs must show either actual notice to Nikon

12 or that it complied with the marking requirements. *See Am. Med. Sys. v. Med.*

13 *Eng'g Corp.*, 6 F.3d 1523, 1536 (Fed. Cir. 1993).

14        "The patentee bears the burden of *pleading and proving* he complied with §

15 287(a)'s marking requirement." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876

16 F.3d 1350, 1366 (Fed. Cir. 2017) (emphasis added), *cert. denied*, No. 17-1645,

17 2018 WL 2766092 (U.S. Oct. 1, 2018). The Federal Circuit further held that the

18 district court committed "legal error" to place the burden on the defendant, noting

19 that "*[t]he burden* of proving compliance with marking *is and at all times remains*

20 *on the patentee*." *Id.* at 1367 (emphasis added).

21            **2.**     **Nikon's Marking Position**

22        Defendants contend that at least one claim of the '163 Patent is being

23 practiced by unmarked articles.

24           **a.**     **Evidence in Support of Marking Position**

25        In support of their marking defense, Defendants will rely on the following

26 key facts and evidence:

27

28

1         •   Testimony and evidence that show that Plaintiffs did not meet their

2            burden to show compliance with the marking statute under 35

3            U.S.C. § 287;

4         •   Testimony and evidence showing that one of Plaintiffs' licensee's

5            did not mark products that practiced the '163 Patent;

6         •   The '163 Patent and its file wrapper;

7         •   All Testimony and evidence pertinent to the Parties' claim

8            constructions;

9         •   Testimony, documentary evidence, and physical exhibits showing

10          and/or related to the unmarked articles;

11         •   Testimony by Defendants' expert witness Dr. Trevor Darrell; and

12         •   Testimony by Defendants' expert witness Julie Davis.

13     **F.**     **Limitation on Recovery of Costs**

14         **1.**     **Limitation on Recovery of Costs Elements**

15     Plaintiffs are precluded from seeking recovery of costs by 35 U.S.C. § 288.

16 Under 35 U.S.C. § 288, Plaintiffs can recover no costs in this case, because

17 "[w]henever a claim of a patent is invalid, an action may be maintained for the

18 infringement of a claim of the patent which may be valid.  The patentee shall

19 recover no costs unless a disclaimer of the invalid claim has been entered at the

20 Patent and Trademark Office before the commencement of the suit."

21         **2.**     **Evidence in Support of Limitation on Recovery of Costs Defense**

22

23     Various claims of the '163, '335, '312, '017, and '574 Patents are invalid, as

24 explained in Defendants' Motion for Partial Summary Judgment (ECF No. 146,

153-1) and petitions for *inter partes* review (*see* ECF No. 203-3, 203-4).

25 Defendants are not aware of any disclaimer filed.  Accordingly, under 35 U.S.C.

26 § 288, Plaintiffs can recover no costs in this case.

27

28

### G.  No Entitlement to Injunctive Relief

#### 1.  Legal Standard for Injunctive Relief

Plaintiffs bear the burden of proving entitlement to injunctive relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs must prove the following: (1) they have suffered an irreparable injury; (2) that remedies at law, such as monetary damages, are inadequate to compensate for their injury; (3) that, considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.*

#### 2.  Evidence in Support of No Entitlement to Injunctive Relief Defense

In support of their position, Defendants will rely on the following key facts and evidence:

- All evidence demonstrating that Defendants have not infringed and do not infringe any of the asserted claims of the patents-in-suit, described more fully at Section I.A.2;

- All evidence that all of the asserted claims of the patents-in-suit are invalid, described more fully at Section II.C;

- Testimony and evidence that Plaintiffs do not currently, and do not plan to, sell in the United States consumer products that compete with the Accused Products;

- Testimony and evidence that Plaintiffs do not currently sell in the United States products that embody the asserted patents;

- Testimony and evidence regarding Plaintiffs' acquisition of, and their motive for acquiring, the asserted patents;

- Testimony and evidence showing that the asserted patents have been licensed;

- Expert testimony evidence that Plaintiffs have not suffered and will not suffer any irreparable injury; and

- Expert testimony evidence that Plaintiffs have an adequate remedy at law;

- Testimony and evidence that the public interest would be disserved if the Nikon defendants were enjoined.

**H.    No Enhanced Damages**

**1.    No Enhanced Damages Elements**

Plaintiffs did not plead enhanced damages.  An enhanced damages award "should generally be reserved for egregious cases typified by willful misconduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016).  Enhanced damages are only appropriate in "egregious cases of misconduct beyond typical infringement" and should not be awarded in "garden-variety cases."  *Id.* at 1935. Plaintiffs have not shown they are entitled to enhanced damages.

**2.    Evidence in Support of No Enhanced Damages Defense**

In support of their position, Defendants will rely on the following key facts and evidence:

- Testimony and evidence that shows that Nikon did not infringe any of the asserted claims of the patents-in-suit;

- Testimony and evidence that shows that Nikon had a good faith belief that the accused products did not and do not infringe any of the asserted claims of the patents-in-suit;

- Testimony and evidence that shows that Nikon had a good faith belief that the asserted claims were invalid;

- Testimony and evidence that show that Plaintiffs did not meet their burden to show that this is an "egregious case[] of misconduct beyond typical infringement"; and

- Testimony and evidence that show that Defendants were not willful or willfully blind to infringement.

## I.      Lack of Personal Jurisdiction Over Sendai Nikon Corp.

### 1.      Personal Jurisdiction Elements

Plaintiffs "bear[] the burden of demonstrating that jurisdiction is appropriate." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted).  To make a *prima facie* showing to establish personal jurisdiction, plaintiff must "demonstrate facts that if true would support jurisdiction over the defendant." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).

California's "long-arm" statute provides that a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."  Cal. Civ. Proc. Code § 410.10.  If a defendant is found to be within the reach of the California long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with due process, that is, whether plaintiff has demonstrated that defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted).  "However, because California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

Constitutional due process concerns are satisfied when a nonresident defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citations omitted).

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

56

## 2. Evidence in Support of Lack of Personal Jurisdiction Defense

In support of their position, Defendants will rely on the following key facts and evidence:

- Testimony and documentary evidence that show Sendai Nikon has no contacts with California or the United States.  Therefore, the exercise of personal jurisdiction over it violates California's long-arm statute and the U.S. Constitution's Due Process Clause;

- Testimony and documentary evidence that show Sendai Nikon is a Japanese corporation with its principal place of business in Miyagi, Japan;

- Testimony and documentary evidence that show Sendai Nikon has no contact with California or its residents and does not conduct business in California or anywhere else in the United States;

- Testimony and documentary evidence that show Sendai Nikon is not registered to conduct business in California, or anywhere else in the United States, and does not in fact conduct any business in the United States;

- Testimony and documentary evidence that show Sendai Nikon has no employees, agents, offices, facilities, distributors, or representatives in California, or in the United States;

- Testimony and documentary evidence to show that Sendai Nikon also does not have a bank account or any financial instruments in California, or elsewhere in the United States;

- Testimony and documentary evidence that show Sendai Nikon has no real or personal property located in California;

- Testimony and documentary evidence that show Sendai Nikon does not sell or offer to sell its cameras to customers in California or the

United States, nor does it sell any product to individual end consumers;

- Testimony and documentary evidence that show Sendai Nikon has no contact with California citizens, corporate entities or organizations;

- Testimony and documentary evidence to show that Sendai Nikon does not ship or otherwise import any product into California or the United States;

- Testimony and documentary evidence to show that Sendai Nikon has no dealings with Nikon Inc., the only U.S.-based Nikon defendant in this suit;

- Testimony and documentary evidence that Sendai Nikon Corp. is not and "alter ego" of Nikon Corp; and

- Evidence consistent with Nikon's Motion to Dismiss Plaintiffs' First Amended Complaint in the 3221 case (3221 ECF No. 34-1) and the supporting Declaration of Nobuyuki Muraishi (3221 ECF No. 34-2).

## IV.   EVIDENTIARY ISSUES [L.R. 16-4.1(H)]

### A.   Issues Relating to Motions *in Limine*

The parties have filed various motions *in limine*.  Defendants filed motions in limine regarding the following issues:

- Motion in Limine No. 1 to Exclude Opinions of Plaintiffs' Damages Expert, Dr. DeForest McDuff;

- Motion in Limine No. 2 to Exclude Evidence Relating to an Article Written by David Etchells;

- Motion in Limine No. 3 to Exclude Prejudicial Statements About Pre-Damages Period;

1      • Motion in Limine No. 4 to Exclude Evidence ONSEMI-

2         CDCA0002056 and the Sealed Declaration of Rob Mihalko;

3      • Motion in Limine No. 5 to Exclude Evidence Regarding

4         Undisclosed Infringement Position and Daubert Motion to Exclude

5         Opinions of Dr. Richard Carley;

6      • Motion in Limine No. 6 to Exclude Mention of Non-Accused

7         Camera Features;

8      • Motion in Limine No. 7 to Exclude Opinions by Dr. Mundy Not

9         Disclosed in his Reports, Declaration, or Deposition;

10     • Motion in Limine No. 8 to Exclude Evidence of Willful

11        Infringement and Willful Blindness;

12     • Motion in Limine No. 9 to Exclude Evidence of Infringement by

13        Sendai Nikon Corporation;

14     • Motion in Limine No. 10 to Exclude Evidence Relating to

15        Negotiations.

16     **B.    Infringement of the '335 Patent**

17        Plaintiffs are foreclosed from making any arguments, offering any opinions,

18 or presenting any evidence regarding an infringement theory under the doctrine of

19 equivalents for the '335 Patent because the subject matter Plaintiffs seek to capture

20 through the doctrine of equivalents was dedicated to the public. *Johnson &*

21 *Johnston Assocs. Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046 (Fed. Cir. 2002).

22 Plaintiffs are also foreclosed from making any arguments, offering any opinions, or

23 presenting any evidence regarding an infringement theory under the doctrine of

24 equivalents for the '335 Patent because of prosecution history estoppel.

25 Accordingly, Defendants will seek to preclude Plaintiffs from making such

26 arguments, offering such opinions, and presenting such evidence.

27        Plaintiffs are similarly foreclosed from pursuing infringement theories under

28 the doctrine of equivalents for the '312, '017, '574, and '163 patents. Defendants

1   will also seek to preclude Plaintiffs from making such arguments, offering such

2   opinions, and presenting such evidence.

3       **C.**    **Issues Relating to Sealing Confidential Information**

4       Much of the evidence to be presented at trial involves highly confidential

5   business information of Plaintiffs, Defendants, and third parties.  Public disclosure

6   of this information would cause significant harm to the litigants and third parties.

7   Defendants request that the courtroom be sealed during the presentation of such

8   evidence.

9       Plaintiffs presumably will have corporate representatives in the courtroom.

10   In addition to sealing the courtroom, Defendants request that Plaintiffs' corporate

11   representatives be excluded during presentation of evidence that includes Nikon's

12   and third party confidential information.  As contemplated by the Protective Order

13   in this case (ECF No. 75), Defendants' and third parties' Highly Confidential

14   information has been restricted to disclosure to Plaintiffs' outside attorneys only.

15   Disclosure of Nikon's confidential information to Plaintiffs' corporate

16   representatives would cause significant harm to Defendants and third parties.

17   **V.**    **ISSUES OF LAW [L.R. 16-4.1(I)]**

18       **A.**    **Claim Construction**

19       The Court construed terms related to the '335, '312, '017, and '574 patents in

20   its October 4, 2018, Amended Order on Summary Judgment (ECF No. 305) and

21   ordered the parties to file updated Memoranda of Contentions of Law and Fact.

22   (ECF No. 296.)  Nikon has updated its claim constructions below.[7]

23

24         [7]Nikon disagrees with the Court's constructions regarding the '312, '017, and

25   '574 patents and reserves all rights, including its right to object and/or appeal. Moreover, to the extent any of these interpretations change on reconsideration,

26   Nikon reserves all rights.  Nikon further reserves the right to appeal the Court's holding that the terms "unit pixel", "sensing pixel", "first pixel", 'second pixel" and

27   "third pixel" are not limited to a single-photodiode structure. Finally, Nikon reserves the right to rebut Plaintiffs' construction for any additional terms not listed

28   herein.

1.      **Claim construction is an issue of law for the Court to decide.**

*Markman*, 52 F.3d at 976.  When there is an actual dispute regarding the proper scope of a term, the Court must resolve that dispute.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  Various claim terms still require construction by the Court.  The parties proposed during discovery competing constructions for these terms,[8] as set forth in the table below.  Defendants believe all of the following terms should be construed by the Court as indicated in Defendants' proposed constructions.  To the extent Plaintiffs submit additional terms in their Memorandum of Contentions of Law and Fact, Defendants reserve the right to respond to those terms in Defendants' Trial Brief.  '163 Patent

| **Term** | **Claim** | **Plaintiffs' Proposal** | **Nikon's Proposal** |
|---|---|---|---|
| "correlating" | 1, 6 | Plain and ordinary meaning; no construction required.<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "correlating" means "applying a set of weights to | "performing an image correlation operation between the input image and a kernel that results in a correlation image" |

---

[8]Plaintiffs' Second Suppl. Resps. to Defendants' First Set of Interrogs. (No. 11) at Exs. F-1 – F-5; Defendants' Twelfth Suppl. Resps. to Plaintiffs' First Set of Interrogs. (No. 13) at Suppl. Ex. 7.

| Term | Claim | Plaintiffs' Proposal | Nikon's Proposal |
|---|---|---|---|
| | | the values in a region of an image and computing the sum of the weighted values." | |
| "correlation" | 1, 7 | Plain and ordinary meaning; no construction required.<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "correlation" means "the application of a set of weights in a region of an image and computing the sum of the weighted values." | "an image correlation operation between the input image and a kernel that results in a correlation image" |
| "correlation image" | 1 | Plain and ordinary meaning; no construction | "A two-dimensional image obtained by an image correlation |

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

62

| Term | Claim | Plaintiffs' Proposal | Nikon's Proposal |
|---|---|---|---|
| | | required.<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "correlation image" means "a set of pixel correlation values" | operation between the input image and a kernel" |
| "convolution" | 4, 16 | Plain and ordinary meaning; no construction required.<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "convolution" means "application of a set of weights in a region of an image and | "An image correlation operation between the input image and a kernel, resulting in a correlation image" |

| Term | Claim | Plaintiffs' Proposal | Nikon's Proposal |
|---|---|---|---|
| | | computing the sum of the weighted values." | |
| "convolution kernel" | 4, 16 | Plain and ordinary meaning; no construction required<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "convolution kernel" means the "set of weights used in correlation." | "a two-dimensional matrix that represents a target image pattern of interest" |

| Term | Claim | Plaintiffs' Proposal | Nikon's Proposal |
|---|---|---|---|
| "first filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern" | 15 | This term is not subject to § 112 ¶ 6.<br><br>A first filter that identifies a plurality of image regions of said input image that have a likelihood of containing said target image pattern and is configured to correlate said input image with a reference image pattern to select said image regions, said reference image pattern being indicative of said target image pattern.<br><br>**Alternatively**, if the Court finds this term subject to § | This term is subject to § 112 ¶ 6.<br><br>**Function**: "identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern" and "correlate said image with a reference image pattern to select said image regions"<br><br>**Structure**: linear matched filter 56, programmed to employ an algorithm described at 7:10-21 and 7:44-53 |

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

65

| Term | Claim | Plaintiffs' Proposal | Nikon's Proposal |
|---|---|---|---|
| | | 112 ¶ 6: **Function**: identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern **Structure**: "linear matched filter" and equivalents thereof **Alternatively**, if the Court finds this term subject to § 112 ¶ 6 and adopts Defendants' Function, the structure is still provided by "linear matched filter" and equivalents thereof. | |
| "second filtering means operatively | 15 | This term is not subject to § 112 ¶ 6. | This term is subject to § 112 ¶ 6. **Function**: "screening said |

| Term | Claim | Plaintiffs' Proposal | Nikon's Proposal |
|---|---|---|---|
| coupled to and operatively following said first filtering means for screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern, said second filtering means being configured to examine a grayscale characteristic of said image regions as a determination factor in selecting said | | A second filter operatively coupled to and operatively following said first filtering means that screens said image regions to select a candidate region that has a high likelihood of containing said target image pattern and that is configured to examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions. **Alternatively**, if the Court construes | image regions to select a candidate region that has a high likelihood of containing said target image pattern" and "examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions" **Structure**: non-linear filter 66 programmed to employ an algorithm described at 7:64-8:7 |

| Term | Claim | Plaintiffs' Proposal | Nikon's Proposal |
|---|---|---|---|
| candidate region fromamong said image regions" | | Defendants' requested language and also finds this term subject to § 112 ¶ 6:<br><br>**Function**: screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern<br><br>**Structure**: "non-linear filter" and equivalents thereof<br><br>**Alternatively**, if the Court construes Defendants' requested language and finds this term subject to § 112 ¶ 6 and adopts | |

| Term | Claim | Plaintiffs' Proposal | Nikon's Proposal |
|---|---|---|---|
| | | Defendants' Function, the structure for Defendants' proposed function is still provided by the structure immediately above. | |

### 2.    '312 Patent

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| "unit pixel" | All | (The Court held that unit pixel is not limited to a single-photodiode structure) | "light detecting structure(s) having one or more photodiodes" | "light detecting structure having a single photodiode and corresponding sensing node." |
| "selectively shared with a sensing node of a unit pixel in a current scan line" | 1 | "connectable via a switch with a sensing node of a unit pixel in a current scan line to | "connectable via a switch with a sensing node of a unit pixel in a current scan line to selectively receive | Plain and ordinary meaning, wherein "unit pixel" means "light detecting structure having a single photodiode |

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

69

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|------|--------|---------------------|-------------------------|--------------------------|
|  |  | selectively receive photocharges from one or more photodiodes of the unit pixel in the current scan line and not from any photodiode in the previous scan line" | photocharges from one or more photodiodes of the unit pixel in the current scan line and not from any photodiode in the previous scan line" | and corresponding sensing node." |
|  | 1 |  | Plain and ordinary meaning; no construction required<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "selectively shared" means | This term lacks written description support<br><br>*Alternatively:* "electrically coupled" |

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| | | | "selectively connectable directly or indirectly" | |
| | 1, 7 | | Plain and ordinary meaning; no construction required<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "in response to a line select signal" means "in response to an electrical signal applied to a switching device" | "in response to a signal that is applied to a select transistor of a unit pixel to couple the unit pixel to an output line" |
| "a switching device configured to interconnect a | 7 | | This term is not subject to 35 U.S.C. § 112, ¶ 6 and no | This term is governed by 35 U.S.C. § 112, ¶ 6. |

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| sensing node of a selected unit pixel to a sensing node of a neighboring unit pixel in response to a select signal" | | | construction is required (plain and ordinary meaning).<br><br>However, if the Court decides to construe the term, it should be construed to mean a switching device configured to interconnect two sensing nodes.<br><br>Function: interconnecting a sensing node of a selected unit pixel to a sensing node of a neighboring unit pixel in response to a select signal | Function: to interconnect the sensing node of the selected unit pixel to the sensing node of a neighboring unit pixel in response to a select signal<br><br>Structure: (as shown in FIG. 4): switching device M400 or M450 for interconnecting the sensing node of the currently selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned, in response to the row select signal. |

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| | | | Structure: switching device such as a transistor (e.g., M400, M450.) | |
| "selected unit pixel" | 7 | "the pixel that is enabled to receive photocharges from one or more corresponding photodiodes" | "unit pixel enabled to receive photocharges from one or more corresponding photodiodes" | "selected light detecting structure having a single photodiode and corresponding sensing node" |
| "neighboring unit pixel" | 7 | "nearby unit pixel that is not connected from its one or more photodiodes" | "nearby unit pixel disconnected from its one or more photodiodes" | " neighboring light detecting structure having a single photodiode and corresponding sensing node" |

### 3.   '017 Patent[9]

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| "sensing pixel" | All | (The Court held that sensing pixel is not limited to a single-photodiode structure) | "light detecting structure(s) having one or more photodiodes" | "light detecting structure having a single photodiode and corresponding sensing node." |
| "the sensing node is selectively couplable to a sensing node of a sensing pixel in a previous scan line" | 1 | "a sensing node in a current scan line is selectively connectable via a switch with a sensing node of a sensing pixel in a previous scan line to receive an electrical signal from one or more photodiodes of the sensing pixel in the current scan line and not from | "a sensing node in a current scan line is selectively connectable via a switch with a sensing node of a sensing pixel in a previous scan line to receive an electrical signal from one or more photodiodes of the sensing pixel in the current scan line and not from | Plain and ordinary meaning |

[9]Nikon reserves the right to appeal the Court's holding that the term "sensing pixel" is not limited to a single-photodiode structure.  Nikon further reserves the right to rebut Plaintiffs' construction for any additional terms not listed herein.

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| | | any photodiode in the previous scan line" | any photodiode in the previous scan line" | |
| "selectively couplable" | 1 | | Plain and ordinary meaning; no construction required<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "selectively couplable" means "selectively connectable directly or indirectly" | This term lacks written description support<br><br>*Alternatively:* "electrically couplable" |
| "in response to a select signal" | 7 | | Plain and ordinary meaning; no construction required | "a signal that is applied to a select transistor of a unit pixel to couple the unit |

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

75

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| | | | If the Court decides to construe this term, in the alternative Plaintiffs propose that "in response to a select signal" means "in response to an electrical signal" | pixel to an output line" |
| "a switching device configured to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, | 7 | | This term is not subject to 35 U.S.C. § 112, ¶ 6 and no construction is required (plain and ordinary meaning).<br><br>However, if the Court decides to construe the term, it should be construed to mean | This term is governed by 35 U.S.C. § 112, ¶ 6.<br><br>Function: to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, |

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line" | | | a switching device configured to interconnect two sensing nodes.<br><br>Function: Interconnecting a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal<br><br>Structure: Switching device such as a transistor (e.g., M400, M450.) | wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line<br><br>Structure: (as shown in FIG. 4): switching device M400 or M450 for interconnecting the sensing node of the currently selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned, in response to a row select signal. |
| "first | 7 | "sensing pixel | "sensing pixel | Term lacks |

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

77

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| sensing pixel" | | enabled to receive photocharges from one or more corresponding photodiodes" | enabled to receive photocharges from one or more corresponding photodiodes" | written description support.<br><br>Alternatively:<br><br>"a light detecting structure having a single photodiode and corresponding sensing node" |
| "second sensing pixel" | 7 | "nearby unit pixel disconnected from its one or more photodiodes" | "nearby unit pixel disconnected from its one or more photodiodes" | Term lacks written description support.<br><br>Alternatively: "a nearby light detecting structure having a single |

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|------|--------|---------------------|-------------------------|-------------------------|
| | | | | photodiode and corresponding sensing node" |

#### 4.    '574 Patent[10]

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|------|--------|---------------------|-------------------------|-------------------------|
| "first pixel"<br><br>"second pixel"<br><br>"third pixel"<br><br>"sensing pixel(s)" | 1, 4, 6, 9-15, 17, 18, 20, 23, 24, 30 | (The Court held that the "pixel" terms in the '574 Patent are not limited to a single-photodiode structure) | Plain and ordinary meaning; no construction required<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "first pixel," "second pixel," "third pixel, and "sensing pixel" means "light detecting structure(s) having | Term lacks written description support.<br><br>Alternatively:<br><br>"light detecting structure having a single photodiode and corresponding sensing node" |

_____

[10]Nikon reserves the right to rebut Plaintiffs' construction for any additional terms not listed herein.

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| | | | one or more photodiodes" | |
| "select signal" | 2, 5, 7, 13, 17, 18, 19, 22, 29 | | Plain and ordinary meaning; no construction needed.<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose that "select signal" means "electrical signal." | "signal for selecting a row of image sensing pixels" |
| "selectively electrically coupling" | 3, 9, 13, 24 | | Plain and ordinary meaning; no construction needed.<br><br>If the Court decides to construe this term, in the alternative Plaintiffs propose | This term lacks written description support<br><br>*Alternatively:*<br><br>"electrically coupling" |

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

80

| Term | Claims | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| | | | that "selectively electrically coupling" means "selectively electrically connecting directly or indirectly." | |

### 5.    '335 Patent

| Term | Claim | Court's Construction | Plaintiffs' Construction | Defendants' Construction |
|---|---|---|---|---|
| Preamble | 1 | Entire preamble of claim 1 is a limitation | "reset transistor coupled between a power supply and the single sensing node for outputting the photoelectric charges stored in the single sensing node, in [] response to a third control signal" is limiting | Entire preamble of claim 1 is a limitation |
| "(a) fully | 1 | | Plain and | fully depleting by |

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

81

| depleting the first and second photodiodes" | | | ordinary | "setting both the reset transistor and corresponding transfer transistor on while the select transistor is off" |
|---|---|---|---|---|
| "adjusting a turn-on time and a turn-off time for the first and second transfer transistors" | 3 | | Plain and ordinary | "varying the turn-on and turn-off times of the first and second transfer transistors" |
| Whether steps (a) – (f) must be performed in order | 1 | Yes | Yes, with overlap | Yes |
| "turning on"/"turning off" terms | 1 | the phrases "turning off" and "tuning on" as used in steps 1(c) through 1(f) mean that the transistors *transition* | "turning on" means *ensuring that* the specified transistor is on; "turning off" means *ensuring that* the specified transistor is off | Plain and ordinary meaning |

| | | from on to off, and from off to on, respectively. | | |
|---|---|---|---|---|

### B.      Plaintiffs' Are Not Entitled to Injunctive Relief

Whether Plaintiffs are entitled to injunctive relief is an issue of law for the Court to decide.  *eBay*, 547 U.S. at 391.  Plaintiffs are not entitled to injunctive relief as a matter of law because Defendants have not infringed any of the asserted claims of the patents-in-suit, and the asserted claims of the patents-in-suit are invalid.

Moreover, even assuming the patents-in-suit are valid and infringed (which they are not), Plaintiffs are not entitled to injunctive relief because they have not suffered and will not suffer irreparable injury; remedies available at law are adequate to compensate for any injury; the balance of hardships between the parties does not favor a remedy in equity; and the public interest would be disserved by a permanent injunction.

### C.      Plaintiffs' Are Not Entitled to Enhanced Damages

An enhanced damages award "should generally be reserved for egregious cases typified by willful misconduct." *Halo Elecs.*, 136 S. Ct. at 1934.  Enhanced damages are only appropriate in "egregious cases of misconduct beyond typical infringement" and should not be awarded in "garden-variety cases."  *Id*. at 1935.  Plaintiffs have not shown they are entitled to enhanced damages, as there has been no proof of egregious misconduct on the part of the Nikon defendants.  Plaintiffs cannot prove infringement, let alone any "egregious" misconduct, and Nikon has a good faith belief that the asserted claims of the patents-in-suit are not infringed and are invalid.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.     Plaintiffs are Foreclosed From Pursuing Infringement Under the Doctrine of Equivalents**

Plaintiffs are foreclosed from making any arguments, offering any opinions, or presenting any evidence regarding an infringement theory under the doctrine of equivalents for the '335 Patent because the subject matter Plaintiffs seek to capture through the doctrine of equivalents was dedicated to the public. *Johnson & Johnston Assocs. Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046 (Fed. Cir. 2002). Plaintiffs are also foreclosed from making any arguments, offering any opinions, or presenting any evidence regarding an infringement theory under the doctrine of equivalents for the '335 Patent because of prosecution history estoppel.  Plaintiffs are similarly foreclosed from pursuing infringement theories under the doctrine of equivalents for the '312, '017, '574, and '163 patents because of prosecution history estoppel.  These are issues of law for the Court to decide.

## VI.   DAMAGES

### A.     Damages Generally

Nikon disputes that Plaintiffs are entitled to any damages for the reasons listed within this Memorandum.  Even if Plaintiffs are entitled to damages (which Nikon contends they are not), Plaintiffs are not entitled to damages arising out of the following general categories:

- The following Nikon cameras, which are subject to a license: Nikon D5600, D500, D600, D750, D800, D800E, D810, D810A, D3300, D5300, D5500, D7000, D7500, and D850.
- Use of any Nikon accused camera operating in non-infringing modes of operation;
- Infringement of the '163 Patent before the date the complaint was filed in this action for failure to mark.

### B.     Nikon's Reasonable Royalty Analysis

To the extent Plaintiffs are entitled to any damages (Nikon contends they are

1    not), Nikon will rely on the damages expert opinions of Julie Davis.  As explained

2    in Ms. Davis's report, under 35 U.S.C. § 284, "[u]pon finding for the claimant the

3    court shall award the claimant damages adequate to compensate for the

4    infringement, but in no event less than a reasonable royalty for the use made of the

5    invention by the infringer, together with interest and costs as fixed by the court."  A

6    reasonable royalty is the payment that would have resulted from a hypothetical

7    negotiation between the patent holder and the infringer taking place just before the

8    time when the infringing sales first began.  *See Wordtech Sys. v. Integrated*

9    *Network Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010).

10           Various factors may be relevant for the evaluation of a reasonable royalty,

11   including the factors outlined in *Georgia-Pacific v. United States Plywood Corp.*,

12   318 F. Supp. 1116 (S.D.N.Y. 1970), *modified & aff'd*, 446 F.2d 295 (2d Cir. 1971),

13   *cert. denied*, 404 U.S. 870 (1971).  The *Georgia-Pacific* factors are:

14           • 1. The royalties received by the patent owner for the licensing of

15               the patent in suit, proving or tending to prove an established

16               royalty;

17           • 2. The rates paid by the licensee for the use of other patents

18               comparable to the patent in suit;

19           • 3. The nature and scope of the license, as exclusive or non-

20               exclusive; or as restricted or non-restricted in terms of territory or

21               with respect to whom the manufactured product may be sold;

22           • 4. The licensor's established policy and marketing program to

23               maintain his patent monopoly by not licensing others to use the

24               invention or by granting licenses under special conditions designed

25               to preserve that monopoly;

26           • 5. The commercial relationship between the licensor and licensee,

27               such as, whether they are competitors in the same territory in the

28               same line of business; or whether they are inventor and promoter;

- 6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales;
- 7. The duration of patent and the terms of the license;
- 8. The established profitability of the product made under the patent; its commercial success; and its current popularity;
- 9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;
- 10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;
- 11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use;
- 12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;
- 13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;
- 14. The opinion testimony of qualified experts; and
- 15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

86

1   license to manufacture and sell a particular article embodying the

2   patented invention—would have been willing to pay as a royalty

3   and yet be able to make a reasonable profit and which amount

4   would have been acceptable by a prudent patentee who was willing

5   to grant a license.  318 F. Supp. at 1120.

6   Defendants incorporate by reference all evidence in their expert reports.

7   Specifically, in support of their position, Defendants will rely on the following key

8   facts and evidence:

9   • Evidence and testimony relating to an analysis of the factors

10   identified in *Georgia-Pacific*;

11   • Evidence and testimony relating to an analysis of Georgia Pacific

12   factor 15, a hypothetical negotiation pictured to take place between

13   a willing licensee and willing licensor as of the date of first

14   infringement.  In her expert report, Ms. Davis opined that damages

15   would consist of upfront, lump-sum payments for the '163, '335,

16   '312, '017, and '574 patents;

17   • Evidence and testimony to show the parties to and dates of the

18   hypothetical negotiation;

19   • Evidence and testimony that shows that the value of the accused

20   features is small or negligible;

21   • Evidence and testimony regarding comparable licenses;

22   • Evidence and testimony regarding the amount(s) paid by others for

23   the patents;

24   • Evidence and testimony regarding the transactional history of the

25   patents-in-suit;

26   • Evidence and testimony from third parties regarding the valuation

27   of the patents-in-suit;

28   • Evidence and testimony regarding the appropriate royalty structure;

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mem. of Contentions of Fact and Law
sf-3950688

87

- Evidence and testimony relating to non-infringing alternatives;

- Evidence and testimony relating to apportionment, including the opinions of Dr. Lorin Hitt;

- Evidence and testimony that the Accused Functionalities are not important to consumers;

- Evidence and testimony that certain categories of damages are inappropriate because various Nikon cameras are licensed;

- Evidence and testimony related to Plaintiffs' failure to mark products in compliance with 35 U.S.C. § 287;

- Evidence and testimony that shows Plaintiffs' apportionment methods are unreliable and yield unreasonable results;

- Evidence and testimony that shows that Dr. McDuff's conclusion that the outcome of the hypothetical negotiations would result in running royalties is not supported;

- Evidence and testimony that shows that Dr. McDuff's adjustment for Nikon's supposed convoyed sales is unreliable;

- Evidence and testimony to contradict Plaintiffs' damages expert Dr. McDuff's reasonable royalty and apportionment analysis, including testimony from Defendants' damages and technical experts.

## VII.   BIFURCATION OF ISSUES [L.R. 16-4.3]

Defendants request bifurcation of claim construction, indefiniteness, and license, which should be tried first before issues of liability and damages.  The issues of claim construction and indefiniteness are strictly legal matters for the Court to decide.  *See Markman*, 52 F.3d at 976; *Biomedino, LLC v. Water Techs. Corp.*, 490 F.3d 946, 949 (Fed. Cir. 2007).  The issue of license interpretation also is strictly a legal issue for the Court to decide.  *Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989); *OS/Sys., Inc. v. Instrumentarium Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006).

## VIII.  MOTION TO STAY

Defendants filed a renewed motion to partially stay this case with respect to the '163 and '335 Patents because the PTAB has instituted *inter partes* review. (ECF No. 203.)  If Defendants' motion to stay is granted, trial would significantly reduce the issues for trial.  For example, trial would proceed on issues related to only the '312, '017, and '574 Patents, and would involve only the Nikon D4 camera, as the Nikon D4 camera is representative of the Nikon D4, Df, and D4S cameras for purposes of infringement of the '312, '017, and '574 Patents.  The Court took Defendants' motion under submission on October 10, 2018. (ECF No. 312.)

## IX.    JURY TRIAL [L.R. 16-4.4]

The parties have both timely demanded a jury trial.  The issues of infringement, damages, written description and anticipation should be tried to the jury.  The issues of obviousness and license are legal issues with underlying issues of fact.  The issues of claim construction and indefiniteness are strictly legal issues and should be tried to the Court.  *Markman*, 52 F.3d at 976; *Biomedino*, 490 F.3d at 949.  The issue of whether Plaintiffs are entitled to permanent injunctive relief should be tried to the Court.  *See eBay*, 547 U.S. at 391.

## X.     ATTORNEYS' FEES [L.R. 16-14.5]

Nikon intends to seek attorneys' fees pursuant to 35 U.S.C. § 285, which may be awarded in exceptional cases.  Nikon also intends to seek costs under Federal Rule of Civil Procedure 54(d)(1).

## XI.    ABANDONMENT OF ISSUES [L.R. 16-4.6]

Defendants have not abandoned any issues.  Plaintiffs apparently have abandoned infringement allegations against the following camera models, but, at the time of filing this Memorandum, have not formally dismissed them from the case:  D300; D600; D610; D800; D800E; D3400; D7000; D7100.

1
2   Dated: October 11, 2018   Respectfully submitted,
3                  JACK LONDEN
                    VINCENT J. BELUSKO
4                  MORRISON & FOERSTER LLP
5
6                 By: */s/ Vincent J. Belusko*
7                    Vincent J. Belusko
8                 Attorneys for Defendants
                   NIKON CORPORATION;
9                 SENDAI NIKON
                   CORPORATION; AND NIKON
10                INC.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28