VINCENT J. BELUSKO (CA SBN 100282)
VBelusko@mofo.com
HECTOR G. GALLEGOS (SBN 175137)
HGallegos@mofo.com
JONATHAN M. SMITH (CA SBN 292285)
JonathanSmith@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

JACK W. LONDEN (CA SBN 85776)
JLonden@mofo.com
DIANA B. KRUZE (CA SBN 247605)
DKruze@mofo.com
SHAELYN DAWSON (CA SBN 288278)
Shaelyndawson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
NIKON CORPORATION, SENDAI
NIKON CORPORATION, and NIKON INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS, B.V., <br><br> Plaintiffs, <br><br> v. <br><br> NIKON CORPORATION, SENDAI NIKON CORPORATION, and NIKON INC., <br><br> Defendants. | Case No. 2:17-cv-07083 RGK (MRWx) <br><br> **NIKON CORPORATION AND NIKON INC'S PROPOSED DISPUTED JURY INSTRUCTIONS WITH PLAINTIFFS' OBJECTIONS** <br><br> Trial Date: November 6, 2018 <br> Time: 9:00 a.m. <br> Courtroom: 850, 8th Floor <br><br> Hon. R. Gary Klausner |

In accordance with the Court's Order for Jury Trial (ECF No. 50), Nikon hereby submits the following proposed jury instructions.  Nikon expects the instructions to evolve and be modified as the case gets closer to trial, the parties continue to meet-and-confer, and issues are narrowed.  Nikon reserves all rights to modify, add, and/or delete instructions.

## INDEX OF DEFENDANTS' PROPOSED JURY INSTRUCTIONS

| No. | TITLE | SOURCE | PAGE |
|-----|-------|--------|------|
| PRELIMINARY | | | |
| 1 | OUTLINE OF TRIAL | Federal Circuit Bar Association, Model Patent Jury Instruction, A.5 (July 2016). | 4 |
| CLOSING | | | |
| 1 | PATENT CLAIMS | Federal Circuit Bar Association, Model Patent Jury Instruction, A.5 (July 2016). | 9 |
| 2 | INTERPRETATION OF CLAIMS | Closing Instructions from 3221 (Dkt. 511) updated to address 7083 claims per the Court's October 3, 2018 Order (ECF No. 295); N.D. Cal. Model Patent Jury Instructions (Jan. 2018) ("NDCA"), 2.1. | 12 |
| 3 | SECTION 112, PARAGRAPH 6 | Federal Circuit Bar Association, Model Patent Jury Instruction, B.2(2.3a) (July 2016); *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240 - 41 (Fed. Cir. 2007); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332-34 (Fed. Cir. 2006) | 22 |
| 4 | INFRINGEMENT | Closing Instructions from 3221 (Dkt. 511); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). | 30 |
| 5 | DIRECT INFRINGEMENT | Northern District of California, Model Patent Jury Instruction, B.3(3.2) (Jan. 2018). | 36 |

| 6 | LITERAL INFRINGEMENT | Northern District of California, Model Patent Jury Instruction, B.3(3.3) (Jan. 2018). | 43 |
|---|---|---|---|
| 7 | LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS | Northern District of California, Model Patent Jury Instruction, B.3(3.5) (Jan. 2018). | 48 |
| 8 | CONTRIBUTORY INFRINGEMENT | NDCA 3.6; *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). | 57 |
| 9 | INVALIDITY—BURDEN OF PROOF) | Northern District of California, Model Patent Jury Instruction, B.4.1(4.1a) (Jan. 2018). | 61 |
| 10 | INVALIDITY—PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART | Northern District of California, Model Patent Jury Instruction, B.4.1(4.1b) (Jan. 2018). | 67 |
| 11 | ANTICIPATION | Federal Circuit Bar Association, Model Patent Jury Instruction, B.4.3b-1 (July 2016). | 70 |
| 12 | WRITTEN DESCRIPTION REQUIREMENT | Federal Circuit Bar Association, Model Patent Jury Instruction, B.4.2 (4.2a) (July 2016); 35 U.S.C. § 112(2). | 74 |
| 13 | REASONABLE ROYALTY—DEFINITION | Federal Circuit Bar Association, Model Patent Jury Instruction, B.6 (6.6) (July 2016). | 78 |
| 14 | LICENSE DEFENSE | 35 U.S.C. § 271(a); *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1535 (2017); *Quanta Computer, Inc. v. L.G. Elecs., Inc.*, 533 U.S. 617, 628–630 (2008). | 81 |

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

**NIKON'S PRELIMINARY INSTRUCTION NO. 1**

**(OUTLINE OF TRIAL)**

The trial will now begin.  First, each side may make an opening statement. An opening statement is not evidence.  It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence.  A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, i.e., that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt.  On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, Plaintiffs will present its evidence in support of their contention that some of the claims of the '163, '335, '312, '017, and '574 patents have been and continue to be infringed by Nikon.  To prove infringement of any claim, Plaintiffs must persuade you that it is more likely than not that Nikon has infringed that claim.

Nikon will then present its evidence that the claims of the '163, '335, '312, '017, and '574 patents are invalid.  To prove invalidity of any claim, Nikon must

persuade you by clear and convincing evidence that the claim is invalid.  In addition to presenting its evidence of invalidity, Nikon will put on evidence responding to Plaintiffs' proof of infringement.

Plaintiffs may then put on additional evidence responding to Nikon's evidence that the claims of the '163, '335, '312, '017, and '574 patents are invalid, and to offer any additional evidence of infringement.  This is referred to as "rebuttal" evidence.  Plaintiffs' "rebuttal" evidence may respond to any evidence offered by Nikon.

Finally, Nikon may have the option to put on its "rebuttal" evidence to support its contentions as to the validity of the claims of the '163, '335, '312, '017, and '574 patents by responding to any evidence offered by Plaintiffs on that issue.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments. These closing arguments by the attorneys are not evidence.  After the closing arguments and instructions, you will then decide the case.


Source: Federal Circuit Bar Association, Model Patent Jury Instruction, A.5 (July 2016).

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

# PLAINTIFFS' OBJECTION'S TO NIKON'S PRELIMINARY
# INSTRUCTION NO. 1
# (OUTLINE OF TRIAL)

In the 3221 case, which had a very similar structure, the Court gave the instruction proposed by the Plaintiff. *See* 3221 Trial Tr. Day 1 at 76:20-77:9. There is no reason to deviate here or go into additional detail. Defendants' proposed instruction includes a lot more words, but will not help the jury. Information regarding the different burdens will be explained during trial and are appropriately addressed in the Closing Instructions. Both side have proposed instructions relating to infringement, invalidity, and damages. The cursory objections included in this instruction will confuse, rather than assist, the jury in adjudicating these issues.

If the Court does intend to provide a more detailed instruction regarding how the trial works and burdens of proof, Plaintiffs urge the Court to use Instruction 1.21 from the 9th Circuit Manual of Model Jury Instructions from 2018, which states:

> The trial will now begin. Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.
>
> The plaintiffs will then present evidence, and counsel for the defendants may cross-examine. Then the defendants may present evidence, and counsel for the plaintiffs may cross-examine. Finally, the plaintiffs may present some additional evidence to respond to what the defendants presented, and counsel for the defendants may cross-examine.
>
> There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide

1   whether something is more likely true than not, in other words, that it is
2   slightly more probable.  This is called the "preponderance of evidence"
3   standard.  On other issues you must use a higher standard and decide whether
4   it is highly probable that something is true.  This is called the "clear and
5   convincing" standard.

6           To prove infringement of any claim, plaintiffs must persuade you that
7   it is more likely than not that the defendants have infringed that claim.  To
8   prove invalidity of any claim, the defendants must persuade you that it is
9   highly probable that the claim is invalid.

10          After the evidence has been presented, I will instruct you on the law
11  that applies to the case and the attorneys will make closing arguments.

12          After that, you will go to the jury room to deliberate on your verdict.

13

14  SOURCE: 9th Cir. Model (2018), 1.21.

# NIKON'S REPLY[1] TO PLAINTIFFS' OBJECTION
## (OUTLINE OF TRIAL)

Neither of Plaintiffs' alternative Instructions is appropriate in this patent case.  Specifically, both Instructions Plaintiffs propose (one named "How a Trial Works" and one named "Outline of Trial") incorrectly assert that it will be first and last to present evidence on all issues.  On the issue of invalidity, the party that bears the burden of proof both presents its evidence first at trial and has the opportunity to rebut.  *See, e.g.*, *Novartis Pharm. Corp. v. Tea Pharm. USA, Inc.*, No. 05-cv-1887 (DMC), 2009 WL 3334850, at *1 (D. N.J. Oct. 14, 2009) ("In a trial of patent validity, bearing the burden of proof entitles a defendant to present first and last with regard to that issue."); *accord Sudden Valley Supply LLC v. Zeeman*, No. 4:13-cv-53 RLW, 2015 U.S. Dist. LEXIS 75406, at *2–5 (E.D. Mo. June 11, 2015); *Personalized User Model, L.L.P. v. Google Inc.*, No. 09-525-LPS, 2014 U.S. Dist. LEXIS 37817, at *2–3 (D. Del. Mar. 6, 2014)..

As in the 3221 case, Nikon should present first and last on the issue of invalidity.   Plaintiffs already agreed to this order of proof in the Joint Proposed Final Pretrial Conference Order, filed just last week.  (ECF No. 323-2 at 43.)

**[END OF PRELIMINARY INSTRUCTIONS]**

---

[1] Nikon notes that, for many of Nikon's proposed Instructions, Plaintiffs objected with several-page responses.  Under the Court's Order for Jury Trial (ECF No. 50), the Court instructed that "the party opposing the instruction must attach a short statement (one or two paragraphs) supporting the objection and the party submitting the instruction must attach a short reply."  (*Id.* at 5.)  Nikon has attempted to reply to Plaintiffs' lengthy objections as succinctly and briefly as possible.

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

# NIKON'S CLOSING INSTRUCTION NO. 1

## (PATENT CLAIMS)

Before you can decide whether defendant has infringed plaintiffs' patent, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent. The patent claims[2] involved here are:

| Patent | Asserted Claims |
| --- | --- |
| '163 | 1–4, 6–7, 15–16, and 19 |
| '335 | 1-12 |
| '312 | 1, 2, 6, 7-9, and 11-14 |
| '017 | 1, 2, 7, 8, 12, 13, 15, and 16 |
| '574 | 1, 3, 4, 6, 9-11, 17-20, 24, and 30-31 |

Each patent is an exhibit in evidence. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. Each of the claims must be considered individually, and to show patent infringement, Plaintiffs need only establish that one claim has been infringed.

Source: Closing Instructions from 3221 (Dkt. 511), modified to include asserted claims.

---

[2] Nikon reserves its right to amend this table if Plaintiffs only try a subset of these claims.

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PLAINTIFFS' OBJECTIONS TO NIKON'S

## CLOSING INSTRUCTION NO. 1

### (PATENT CLAIMS)

Defendants' listing of asserted patent claims is incorrect.  Plaintiffs are amenable to omitting the table of patent claims.  Alternatively, Plaintiffs propose including the correct listing of asserted claims as shown below:

| Patent | Asserted Claims |
|--------|-----------------|
| '163 | 1–4, 6–7, 15–16, and 19 |
| '335 | 1-12 |
| '312 | 1, 2, 6, 7, 9, and 11-14 |
| '017 | 1, 2, 7, 8, 12, 13, 15, and 16 |
| '574 | 1, 3, 4, 6, 9-11, 17-20, 24, and 30-33 |

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

1
2

**NIKON'S REPLY TO PLAINTIFFS' OBJECTION**
**(PATENT CLAIMS)**

3

4

5

6

7

Plaintiffs and Nikon agree on this Instruction, except that Nikon objects that the asserted claims Plaintiffs list in their disputed Instruction for the '574 patent are incorrect.  In Plaintiffs' interrogatory response regarding infringement, Plaintiffs only charted claims 1-31, and did **not address** claims 32 and 33.  Accordingly, Plaintiffs have waived the ability to assert claims 32 and 33.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

# NIKON'S CLOSING INSTRUCTION NO. 2

## (INTERPRETATION OF CLAIMS[3])

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

For the '163 patent, the scope of the claims is that of their plain and ordinary meaning as understood by a person of ordinary skill in the art.  I have provided additional interpretation of the following claim terms:

| '163 Patent Claim Term | Claims | Construction |
|---|---|---|
| "correlating" | 1, 6 | "performing an image correlation operation between the input image and a kernel that results in a correlation image" |
| "correlation" | 1, 7 | "an image correlation operation between the input image and a kernel that results in a correlation image" |
| "correlation image" | 1 | "a two-dimensional image obtained by an image correlation operation between the input image and a kernel" |

---

[3] Nikon understands that the Court construed terms related to the '312, '017, and '574 patents in its October 4, 2018, Order on Summary Judgment (ECF No. 305). Nikon disagrees with these constructions and reserves all rights, including its right to object and/or appeal. Moreover, to the extent any of these interpretations change on reconsideration, Nikon reserves all rights.

| '163 Patent Claim Term | Claims | Construction |
|---|---|---|
| "convolution" | 4, 16 | "an image correlation operation between the input image and a kernel, resulting in a correlation image" |
| "convolution kernel" | 4, 16 | "a two-dimensional matrix that represents a target image pattern of interest" |
| "first filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern" | 15 | "linear matched filter 56, programmed to employ an algorithm described at 7:10-21 and 7:44-53." *See also* Nikon's Closing Instruction No. ("SECTION 112, PARAGRAPH 6") |
| "second filtering means operatively coupled to and operatively following said first filtering means for screening said image regions to select a candidate region that has a high likelihood of containing said target | 15 | "non-linear filter 66 programmed to employ an algorithm described at 7:64-8:7." *See also* Nikon's Closing Instruction ("SECTION 112, PARAGRAPH 6") |

| '163 Patent Claim Term | Claims | Construction |
|---|---|---|
| image pattern, said second filtering means being configured to examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions" | | |

Moreover, for the '335 patent,[4] I have construed the following terms as follows:

| '335 Patent Claim Terms | Claims | Construction |
|---|---|---|
| "turning on"/"turning off" terms | 1 | the phrases "turning off" and "tuning on" as used in steps l (c) through l (f) mean that the transistors *transition* from on to off, and from off to on, respectively. |
| Whether steps (a) – (f) must be performed in | 1 | Without any overlap |

---

[4] These constructions are based on Court's October 3, 2018 Order on Summary Judgment (ECF No. 295).

order

I have also construed the following terms:

| '335 Patent Claim Terms | Claims | Construction |
|---|---|---|
| "(a) fully depleting the first and second photodiodes" | 1 | fully deplete by "setting both the reset transistor and corresponding transfer transistor on while the select transistor is off" |
| "adjusting a turn-on time and a turn-off time for the first and second transfer transistors" | 3 | "varying the turn-on and turn-off times of the first and second transfer transistors" |

For the '312/017/574 patent family,[5] I have construed the following claim terms as follows:

| '312 Patent Claim Terms | Claims | Construction |
|---|---|---|
| Selectively shared with a sensing node of a unit pixel in a current scan line | 1 | Connectable via a switch with a sensing node of a unit pixel in a current scan line to selectively receive photocharges from one or more photodiodes of the unit pixel in the current scan line and not from any photodiode in the previous scan line |

---

[5] Nikon understands that the Court construed terms related to the '312, '017, and '574 patents in its October 4, Amended 2018, Order on Summary Judgment (ECF No. 305). Nikon disagrees with these constructions and reserves all rights, including its right to object and/or appeal. Moreover, to the extent any of these interpretations change on reconsideration, Nikon reserves all rights.

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

| Selected unit pixel | 7 | Unit pixel enabled to receive photocharges from one or more corresponding photodiodes |
| Neighboring unit pixel | 7 | Nearby unit pixel that is not connected from its one or more photodiodes |

| '017 Patent Claim Terms | Claims | Construction |
|---|---|---|
| The sensing node is selectively couplable to a sensing node of a sensing pixel in a previous scan line | 1 | a sensing node in a current scan line is selectively connectable via a switch with a sensing node of a sensing pixel in a previous scan line to receive an electrical signal from one or more photodiodes of the sensing pixel in the current scan line and not from any photodiode in the previous scan line |
| First sensing pixel | 7 | Sensing pixel enabled to receive an electrical signal from one or more corresponding photodiodes |
| Second sensing pixel | 7 | Nearby sensing pixel not connected from its one or more photodiodes |

I have also construed the following terms:

| '312 Patent Claim Terms | Claims | Construction |
|---|---|---|

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

| '312 Patent Claim Terms | Claims | Construction |
|---|---|---|
| "in response to a line select signal" (claim 1)<br><br>"in response to a select signal" (claim 7) | 1, 7 | "in response to a signal that is applied to a select transistor of a unit pixel to couple the unit pixel to an output line" |
| "a switching device configured to interconnect a sensing node of a selected unit pixel to a sensing node of a neighboring unit pixel in response to a select signal" | 7 | This term is governed by 35 U.S.C. § 112, ¶ 6.<br><br>Function: to interconnect the sensing node of the selected unit pixel to the sensing node of a neighboring unit pixel in response to a select signal<br><br>Structure: (as shown in FIG. 4): switching device M400 or M450 for interconnecting the sensing node of the currently selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned, in response to the row select signal. |

| '017 Claim Terms | Claims | Construction |
|---|---|---|
| "selectively | 1 | This term lacks written description support |

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

| '017 Claim Terms | Claims | Construction |
|---|---|---|
| couplable" | | *Alternatively:*<br><br>"electrically couplable" |
| "in response to a select signal" | 7 | "a signal that is applied to a select transistor of a unit pixel to couple the unit pixel to an output line" |
| "a switching device configured to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line" | 7 | This term is governed by 35 U.S.C. § 112, ¶ 6.<br><br>Function: to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line<br><br>Structure: (as shown in FIG. 4): switching device M400 or M450 for interconnecting the sensing node of the currently selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned, in response to a row select signal. |
| '574 Claim Terms | Claims | Construction |
| "select signal" | 2, 5, 7, 13, 17, | "signal for selecting a row of image sensing pixels" |

| '574 Claim Terms | Claims | Construction |
|---|---|---|
| | 18, 19, 22, 29 | |
| "selectively electrically coupling" | 3, 9, 13, 24 | This term lacks written description support<br><br>*Alternatively:*<br><br>"electrically coupling" |

Source:  Closing Instructions from 3221 (Dkt. 511) updated to address 7083 claims per the Court's October 3, 2018 Order (ECF No. 295); N.D. Cal. Model Patent Jury Instructions (Jan. 2018) ("NDCA"), 2.1.

**PLAINTIFFS' OBJECTIONS TO NIKON'S**

**CLOSING INSTRUCTION NO. 2**

**(INTERPRETATION OF CLAIMS)**

Defendants' proposed constructions are incorrect.  Plaintiffs' proposed constructions are set forth in Plaintiffs' Closing Instruction No. 4 of Plaintiff's Proposed Jury Instructions (Interpretation of the Claims) in the contemporaneously filed "Plaintiffs' Proposed Jury Instructions with Defendants' Objections and Plaintiffs' Responses," which is incorporated by reference herein, and should be adopted.[6]

Plaintiffs further object to Defendants' proposed constructions because they are legally incorrect for the reasons set forth in Plaintiff's Response to Nikon's Objections to Plaintiffs' Proposed Jury Instruction No. 4 (Interpretation of the Claims), in the contemporaneously filed "Plaintiffs' Proposed Jury Instructions with Defendants' Objections and Plaintiffs' Responses," which is incorporated by reference herein.

---

[6] To the extent the Court did not adopt Plaintiffs' proposed constructions in its Order on Summary Judgment (ECF No. 305), Plaintiffs object to the Court's constructions, reserve the right to appeal the Court's order, and respectfully urge the Court to adopt Plaintiffs' proposed constructions.

## NIKON'S REPLY TO PLAINTIFFS' OBJECTION
## (INTERPRETATION OF CLAIMS)

Plaintiffs claim that Defendants' claim constructions are "incorrect" but actually provide no explanation of their objection. Nikon has listed the Court's interpretations from its October 4, Amended Order on Summary Judgment (ECF No. 305)[7] as well as other terms the Court should construe. Additionally, Nikon used the language from the Court's Instruction in the 3221 case, but updated the constructions for the instant case.

Nikon also refers the Court to its instructions regarding "Section 112, Paragraph 6," which sets out Nikon's position regarding means-plus function claims.

Finally, Plaintiffs' statement made to the PTO should be "considered for claim construction and relied upon to support a finding of prosecution disclaimer." *Aylus Networks Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017).

---

[7] Nikon continues to object to the Court's constructions related to the '312, '017, and '574 patents in its October 4, Amended 2018, Order on Summary Judgment (ECF No. 305). Nikon disagrees with these constructions and reserves all rights, including its right to object and/or appeal. Moreover, to the extent any of these interpretations change on reconsideration, Nikon reserves all rights.

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

# NIKON'S CLOSING INSTRUCTION NO. 3

## (SECTION 112, PARAGRAPH 6)

Claim 15 of the '163 patent includes two means-plus-function terms. Specifically, (1) "First filtering means" is a means-plus-function limitation. The corresponding structure is "linear matched filter 56, programmed to employ an algorithm described at 7:10-21 and 7:44-53," and performs the multiple function of "identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern" and "correlate said image with a reference image pattern to select said image regions."

(2) "Second filtering means" is also a means-plus-function limitation. The corresponding structure is "non-linear filter 66 programmed to employ an algorithm described at 7:64-8:7," and performs the multiple function of "screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern" and "examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions."

The '312 and '017 patents also include means-plus-function limitations. The term "switching device" as found in claim 7 of both the '312 and '017 patents is a means-plus-function limitation. The recited function is to "interconnect the sensing node of the selected unit pixel to the sensing node of a neighboring unit pixel in response to a select signal," while the corresponding structure is "(as shown in FIG. 4): switching device M400 or M450 for interconnecting the sensing node of the currently selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned, in response to the row select signal."

It is called a "means-plus-function" requirement. It does not cover all of the structures that could perform the function set forth in the claims. Instead, it covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to [at least one of] the [set(s) of] structure(s) described in

1   the patents for performing that function. The issue of whether two structures are

2   identical or equivalent is for you to decide. I will explain to you later how to

3   determine whether two structures or two sets of structures are "equivalent" to one

4   another.

5       When I read you my definitions for certain claim terms a few moments

6   ago, I identified the structures described in the patents for performing the relevant

7   functions. You should apply my definition of the function and the structures

8   described in the patents for performing it as you would apply my definition of any

9   other claim term.

12   Source: Federal Circuit Bar Association, Model Patent Jury Instruction, B.2(2.3a)

13   (July 2016); *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236,

14   1240 - 41 (Fed. Cir. 2007); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448

15   F.3d 1324, 1332-34 (Fed. Cir. 2006) (explaining that an object meeting a means-

16   plus-function limitation with two functions must perform both claimed functions

17   and be an equivalent structure. Equivalence of structure can be shown here if the

18   objects perform both identical functions in substantially the same way to achieve

19   substantially the same result.).

## PLAINTIFFS' OBJECTIONS TO NIKON'S

## CLOSING INSTRUCTION NO. 3

## (SECTION 112, PARAGRAPH 6)

Plaintiffs object to this instruction, which departs significantly from the corresponding instruction that the Court gave in the prior 3221 case. *Compare* Nikon's Closing Instruction No. 6, above *with* Court's Instruction Number 6 in the 3221 case (17-cv-03221 D.I. 511 at 7-8.). In contrast, Plaintiffs have proposed the same instruction that was given by the Court in the 3221 case, with the 7083 patents inserted to replace those tried in 3221, and with a paragraph added at the end to address the holding in *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267-68 (Fed. Cir. 1999). Compare Plaintiffs' Closing Instruction No. 6, above with Court's Instruction Number 6 in the 3221 case (17-cv-03221 D.I. 511 at 7-8.).

Defendants' instruction does not properly instruct the jury as to how to evaluate a means-plus-function claim, where a proper instruction would read, "In deciding if Plaintiffs have proven that Defendants' products include structure covered by a means-plus-function requirement, you must first decide whether the products have any structure that performs the function I just described to you. If not, the claim containing that means-plus-function requirement is not infringed."

Nor does Defendants' instruction address equivalence, where a proper instruction would read "If you find that the Defendants' accused products do have structure that performs the claimed function, you must then determine whether that structure is the same as or equivalent to the structure I have identified in the specification. If they are the same or equivalent, the means-plus-function requirement is satisfied by that structure of the accused product and the other requirements of the claim are satisfied, the accused product infringes the claim. In order to prove that a structure in the accused product is equivalent to the structure in the patent, Plaintiffs must show that a person of ordinary skill in the art would have considered that the differences between the structure described in the

patent and the structure in the accused product are not substantial. The Plaintiffs must also show that the structure was available on the date the patent was granted."

In addition, the instruction is confusing, and misses the *Odetics* instruction entirely, which instructs the jury to consider whether the overall structure is satisfied exactly or equivalently under § 112(6). *Odetics, Inc. v. Storage Tech.*, 185 F.3d 1259, 1268 (Fed. Cir. 1999) ("The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function. This is why structures with different numbers of parts may still be equivalent under § 112, ¶ 6, thereby meeting the claim limitation. … The component-by-component analysis used by the district court finds no support in the law.").

Defendants duplicatively raise the same issues with respect to the '163, '312, and '017 patents that they did in objecting to Plaintiffs' Proposed Jury Instructions.

Plaintiffs fully incorporate its proposed instruction and full response to Plaintiffs' Response Regarding Closing Instruction No. 4 ("Interpretation of the Claims") in the contemporaneously filed "Plaintiffs' Proposed Jury Instructions with Defendants' Objections and Plaintiffs' Responses."

In particular, Plaintiffs dispute that the '163 patent contains terms to be construed as means-plus-function terms for the reasons explained fully in Plaintiffs' incorporated instruction and response to Defendants' objection, and if the terms are construed as means-plus-function, Defendants' constructions of "first filtering means" and "second filtering means" are incorrect for the reasons fully explained in Plaintiffs' Response Regarding Closing Instruction No. 4 ("Interpretation of the Claims"), and incorporated by reference here. Plaintiffs also addressed this issue in their opposition to Defendants' motion for summary adjudication. (D.I. 185-9 at 15-20.)

Plaintiffs similarly dispute that the '312 or '017 patents contain terms to be construed as means-plus-function terms, and if the terms are construed as means-plus-function, Defendants' construction of "switching device" is incorrect for the reasons fully explained in Plaintiffs' Response Regarding Closing Instruction No. 4 ("Interpretation of the Claims"), and incorporated by reference here.

Plaintiffs further object to Defendants' proposed constructions because they are legally incorrect for the reasons set forth in Plaintiffs' Response Regarding Closing Instruction No. 4 ("Interpretation of the Claims") in the contemporaneously filed "Plaintiffs' Proposed Jury Instructions with Defendants' Objections and Plaintiffs' Responses" incorporated by reference here.

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

## NIKON'S REPLY TO PLAINTIFFS' OBJECTION
## (SECTION 112, PARAGRAPH 6)

Nikon's proposed Instruction is necessary because claim construction is a matter of law, and the Court should construe terms in dispute, including "means-plus-function" claim terms, before charging the jury. *See Markman v. Westview Instruments*, 517 U.S. 370, 391, 116 S. Ct. 1384, 1396 (1996); *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) ("[T]he court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury.").

Plaintiffs' Closing Instruction No. 4, referenced in Plaintiffs' Objection, cannot replace this instruction because Plaintiffs' Instruction No. 4 contains incorrect claim constructions. For example, with respect to the '163 patent, Plaintiffs have failed to rebut the presumption that the "first filtering means" and "second filtering means" in claim 15 are subject to 35 U.S.C. § 112(6). *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015). Nikon also addressed this issue in its opening brief and reply in support of its Motion for Partial Summary Judgment. (ECF No. 153-1 at 19–20, 196-1 at 9–10.) Plaintiffs' cited cases in their 4-page reply regarding Closing Instruction No. 4 are readily distinguishable. In *Philips*, the court stated that "input filter means" is a standard term of art in the field of *power supplies*." *Koninklijke Philips N.V. v. Wangs All. Corp.*, No. CV 14-12298-DJC, 2017 WL 6329616, at *5 (D. Mass. Dec. 11, 2017) (citing Wiley Electrical and Electronics Engineering Dictionary) (emphasis added). And in *LifeScreen*, the court found "conical filtering means" to not be subject to 35 U.S.C. § 112(f) as having sufficient structure because of its qualifier "conical." *LifeScreen Scis. LLC v. Cordis Corp.*, No. 6:13-CV-091, 2014 WL 3956486, at *8 (E.D. Tex. Aug. 12, 2014) ("[The challenger] omits the full extent of structure recited in the claim, and fails to address the 'conical' which precedes 'filtering

means'").[8]  In the case most on point, cited by Nikon, the court found that "[t]he 'filter means' terms are means-plus-function limitations, and because the claims limitations in each of these claims do not by themselves provide any structure, the term is subject to construction under 35 U.S.C. § 112, ¶ 6."  *Source Search Techs., LLC v. Lending Tree, LLC*, No. CIV.04 4420 DRD, 2006 WL 2990363, at *10 (D.N.J. Oct. 16, 2006), on reconsideration, No. CIV. 04-4420 (DRD), 2006 WL 3289942 (D.N.J. Nov. 13, 2006)

Plaintiffs' Closing Instruction No. 6 is also defective, for several reasons, including because it identifies incorrect corresponding structures.  Again, for example, with respect to the '163 patent, Plaintiffs' proposed corresponding structure for the "first filtering means" in claim 15, "linear matched filter," is inadequate as too broad, because it does not include all the structure in the specification that actually performs the "correlate" and "identify[] a plurality of image regions" functions.  (Darrell Decl. ¶ 61, ECF No. 153-25; *Cardiac*

---

[8] Plaintiffs' other cited cases are also distinguishable.  In *TI Group Auto. Sys. v. VDO N. Am.*, the term "pumping means" did not involve any algorithm.  375 F.3d 1126, 1135 (Fed. Cir. 2004).  And the claim explicitly recited a structure. *Id.*  In contrast, here, the claim only recites desired functionality.  (ECF No. 207-3 (Darrell Decl.) ¶ 58.)  *TecSec, Inc. v. IBM Corp.* also does not help Plaintiffs.  731 F.3d 1336 (Fed. Cir. 2013).  There, in construing "system memory means," the court found it "beyond question that those of skill in the art would understand that a system memory is sufficient structure to perform the general function of 'storing data.'"  *Id.* at 1348.  But, in this case, one would not understand "first filtering means" to be sufficient structure to perform the functions "identify[] a plurality of image regions" and "correlate[e] the input image with the reference image pattern."  (Darrell Decl. ¶ 58.)  *Skky, Inc. v. MindGeek* S.A.R.L. is also inapposite because, unlike here, "the claims [did] not recite a function . . . for the wireless device means to perform."  859 F.3d 1014, 1020 (Fed. Cir. 2017).  Finally, *Rodime PLC v. Seagate Tech., Inc.* also did not involve an algorithm, but rather a mechanical "positioning means" for moving a hard drive component.  174 F.3d 1294, 1299 (Fed. Cir. 1999).  The *Rodime* court found § 112(6) did not apply because the claim itself recited extensive structure, "including: two support arms . . . a pivot shaft . . . a positioning arm . . . a bearing assembly . . . a stepper motor . . . means for operating said stepper motor . . and a tensioned steel band."  *Id.* at 1303.

*Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1119 (Fed. Cir. 2002) ("corresponding structure must include all structure that actually performs the recited function.").)

Finally, in Plaintiffs' Closing Instruction No. 6, Plaintiffs again improperly attempt to insert a paragraph that the Court explicitly removed in the 3221 trial: "In order to determine whether the structure in the accused product is equivalent to the structure in the specification, you must consider the overall structure in the accused product that corresponds to the claimed function. You must not do a component-by-component comparison of the structure in the accused product to the structure in the specification because the individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. This means that structures with different numbers of parts may still be equivalent."

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

**NIKON'S CLOSING INSTRUCTION NO. 4**

**(INFRINGEMENT)**

There are several ways to infringe a patent.

*First*: One may directly infringe a patent;

*Second*: One may induce others to infringe a patent in which case the person inducing infringement is liable for infringement in the same manner as a direct infringer; and

*Third*:[9] One may contribute to the infringement of a patent by another by supplying a component specially designed for the invention, in which case, both the direct infringer and the contributing infringer will be liable for patent infringement." The contributing act must occur in the United States.

Plaintiffs allege that Defendants have directly infringed the '163, '335, '312, '017, and '574 patents and continue to do so. Plaintiffs also allege that Defendants have actively induced infringement of the '163, '335, '312, '017, and '574 patents by others and continue to do so. Plaintiffs further allege that Nikon Corp. and Nikon Inc. contributed to the infringement of the '163, '335, and '574 patents by others and continue to do so.

The burden of proof is on Plaintiffs to prove:

First: that Plaintiffs own the patents-in-suit; and

Second: that Defendants infringed at least one claim of the patents-in-suit by making, using, offering for sale, or selling the invention within the United States, or importing the invention into the United States, before the patent expired; and

Third: Defendants acted without permission of Plaintiffs.

Plaintiffs must prove these things by a preponderance of the evidence. In other words, Plaintiffs must persuade you that it is more likely than not that Defendants have infringed.

---

[9] As in the 3221 case, if Plaintiffs fail to provide evidence of contributory infringement, this portion of the Instruction should not be read.

1    Source: Closing Instructions from 3221 (Dkt. 511), updated for the 7083 case.

2    Nikon added the following sentence, "The contributing act must occur in the

3    United States," which is consistent with settled law. *See, e.g.*, *DSU Med. Corp. v.*

4    *JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

## PLAINTIFFS' OBJECTIONS TO NIKON'S
## CLOSING INSTRUCTION NO. 4
### (INFRINGEMENT)

1. "The contributing act must occur in the United States.": Plaintiffs object to the introduction of this statement in this instruction as wrong, unnecessary, and confusing. First, this instruction describes infringement generally and does not provide detailed requirements for each theory of infringement. Those are provided in separate instructions; in particular, the requirements for contributory infringement are provided in the instruction on that topic. It would be redundant and confusing to repeat parts of those instructions here. It would also be confusing and misleading to choose some arbitrary elements of each theory of infringement to include here without including all elements of those theories.

Second, Defendants' proposed additional statement is confusing (e.g. the jury would have to be further instructed what the "contributing act" means), is not in keeping with the language of the statute, and is not clear that the act can be a sale, offer for sale, or importation. *See* 35 U.S.C. § 271(c) ("Whoever offers to sell or sells within the United States or imports into the United States a component …").

2. Plaintiffs object Nikon's change from "Defendants" to "Nikon Corp. and Nikon Inc." in some but not all parts of this instruction as unnecessary and confusing to the jury. The words "Plaintiffs" and "Defendants" are used throughout the instructions (including this very instruction) and the switch to different terminology would confuse the jury.

3. "By making, using, offering for sale, or selling the invention within the United States, or importing the invention into the United States, before the patent

<u>expired.</u>": Plaintiffs object to the introduction of this phrase as legally incorrect, confusing in the context of the present litigation, and unnecessary.

The phrase Nikon seeks to include is legally incorrect and confusing to the jury. It states the test for a form of *direct* infringement under 35 U.S.C. § 271(a). However, Plaintiffs has also accused Defendants of indirect infringement, including by inducement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c). Under these theories, Defendants can infringe the claims of the patents in suit *without* "making, using, offering for sale, or selling the invention within the United States," and thus Nikon's statement that Plaintiffs must prove these to prove infringement is legally wrong and will confuse the jury.

The phrase Nikon seeks to include is also unnecessary, since the requirements for both direct and indirect infringement are set out in subsequent instructions.

4. "<u>Third: Defendants acted without permission of Plaintiffs.</u>"  Plaintiffs object to the introduction of this statement because it is legally wrong and confusing. The only possible "permission" at issue in this case is Defendants' license defense, and is *Defendants'* burden to prove that, not Plaintiffs'. *See, e.g.*, *Spindelfabrik Suessen-Schurr v. Schubert & Salzer*, 903 F.2d 1568, 1576 (Fed. Cir. 1990) ("As the proponents of the [license] defense, it was incumbent upon [Nikon] to show that the license authorized the sale of the infringing machines in the United States."); *Rockwell Int'l Corp. v. United States*, 31 Fed. Cl. 70, 77 (1994) ("[D]efendant has the burden of proof to show the existence of a license and the scope of any such license." (*citing Intel Corp. v. United States ITC*, 946 F.2d 821, 828 (Fed. Cir. 1991)); *Promega Corp. v. Life Techs. Corp*, No. 10-00281, Dkt. 498 (Feb. 3, 2012) ("The Court of Appeals for the Federal Circuit consistently and repeatedly has described a license as an affirmative defense to

1   a claim for infringement, which the defendant has the burden to prove.")

2   (collecting cases).  Thus, the instruction that Plaintiffs have the burden of proof

3   on this point is legally incorrect and confusing.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

# NIKON'S REPLY TO PLAINTIFFS' OBJECTION (INFRINGEMENT)

Nikon simply asks the Court to read the Instruction it read during the 3221 trial, but with the inclusion of the instruction that the contributing act for contributory infringement must occur in the United States.  Nikon added the sentence "the contributing act must occur in the United States" because this is consistent with well-settled law and it should be reflected in the Instructions given to the jury.  *See, e.g.*, *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006).

Regarding the use of "Nikon Corp. and Nikon Inc." as opposed to "Defendants," Nikon has amended its proposed Instruction to use the word "Defendants," which is consistent with the Court's Instruction in the 3221 case. (ECF No. 511).

Plaintiffs' objection to the following two sentences is meritless: "By making, using, offering for sale, or selling the invention within the United States, or importing the invention into the United States, before the patent expired" and "Defendants acted without permission of Plaintiffs."  Both sentences **were included in the Court's instruction from the 3221 case** (3221 Case, ECF No. 511).  Moreover, the sentences are consistent with settled law.  *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1535 (2017).  Plaintiffs' argument is thus meritless.

# NIKON'S CLOSING INSTRUCTION NO. 5
## (DIRECT INFRINGEMENT)

A patent's claims define what is covered by the patent. A product and/or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Nikon has made, used, sold, offered for sale or imported within the United States a product covered by the asserted claims. If it has, it infringes. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether Nikon's products infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about both Plaintiffs' product and Nikon's accused products. However, in deciding the issue of infringement you may not compare Nikon's accused products to Plaintiffs' product. Rather, you must compare each Nikon accused product to the claims of the each patent when making your decision regarding infringement.

Whether or not Nikon knew its products infringed or even knew of the patent does not matter in determining direct infringement.

1   There are two ways in which a patent claim may be directly infringed. A
2   claim may be "literally" infringed, or it may be infringed under the "doctrine of
3   equivalents." The following instructions will provide more detail on these two types
4   of direct infringement. You should note, however, that what are called "means-
5   plus-function" requirements in a claim are subject to different rules for deciding
6   direct infringement. I will describe these separate rules shortly.

7
8
9   Source: Northern District of California, Model Patent Jury Instruction, B.3(3.2)
10  (Jan. 2018).

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PLAINTIFFS' OBJECTION TO NIKON'S CLOSING

## INSTRUCTION NO. 5

## (DIRECT INFRINGEMENT)

Plaintiffs' object to the inclusion of this instruction, which is an incomplete and unnecessary rewrite of an instruction that the court gave in the 3221 case. There is no reason to deviate here.  Plaintiffs have proposed an updated version of the 3221 instruction (see instruction "DIRECT INFRINGEMENT—LITERAL INFRINGEMENT" that Plaintiffs proposed) and respectfully request that Plaintiffs' proposal be adopted.

Plaintiffs object to Nikon's proposed instruction as incomplete, misleading, and incorrect.

**<u>First</u>**, Nikon's instruction does not instruct the jury regarding infringement of method claims, which are at issue in this case.  Indeed, Nikon has affirmatively deleted most references to method claims from the Model Jury Instruction it purports to be following.  This is shown the redline below of parts of paragraphs 2, 3, 4, and 5 of the proposed instruction compared with Northern District of California, Model Patent Jury Instruction, B.3(3.2) (Jan. 2018):

> **¶ 2**: …  The second step is to decide whether Nikon has made, used, sold, offered for sale or imported within the United States a product covered by the asserted claims. ….
> **¶ 3:** With one exception, you must consider each of the asserted claims of the patent individually, and decide whether Nikon's products infringe that claim. …
> **¶ 4**: You have heard evidence about both Plaintiffs' product and Nikon's accused products. However, in deciding the issue of infringement you may not compare Nikon's accused products to Plaintiffs' product. Rather, you must compare the each Nikon accused product to the claims of the each patent when making your decision regarding infringement.
> **¶ 4:**Whether or not Nikon knew its products infringed or even knew of the patent does not matter in determining direct infringement.

**<u>Second</u>**, Nikon's proposal does not provide instructions about one important form of direct infringement at issue in this case.  Specifically, the jury should be instructed that "Plaintiffs can prove direct infringement of the method claims by

showing that Defendants conditioned participation in an activity or receipt of a

benefit by someone else upon that other party performing the steps of the patented

method, and that Defendants established the manner or timing of that performance."

The language Plaintiffs' propose is necessary because—as Plaintiffs' experts

have specifically opined—Defendants directly infringe in part by conditioning

participation in an activity or receipt of a benefit (e.g. the ability to take pictures

using Nikon cameras) by someone else (e.g. end-users of Nikon cameras among

others) upon that other party performing the steps of the patented method (e.g. the

claimed methods), and Defendants established the manner or timing of that

performance (e.g. via their design, sales, marketing, and other activities relating to

the accused products).

The language Plaintiffs' propose also correctly states the law. *See Akamai*

*Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015):

> "We will hold an entity responsible for others' performance of
> method steps in two sets of circumstances: (1) where that entity
> directs or controls others' performance, and (2) where the actors
> form a joint enterprise.
> To determine if a single entity directs or controls the acts of
> another, we continue to consider general principles of vicarious
> liability. … We conclude, on the facts of this case, that ***liability***
> ***under § 271(a) [i.e. direct infringement] can also be found when***
> ***an alleged infringer conditions participation in an activity or***
> ***receipt of a benefit upon performance of a step or steps of a***
> ***patented method and establishes the manner or timing of that***
> ***performance. In those instances, the third party's actions are***
> ***attributed to the alleged infringer such that the alleged infringer***
> ***becomes the single actor chargeable with direct***
> ***infringement***. Whether a single actor directed or controlled the
> acts of one or more third parties is a question of fact, reviewable
> on appeal for substantial evidence, when tried to a jury."

797 F.3d at 1023.

Nikon's apparent argument that this law ***only*** applies to cases of "joint

infringement"—i.e. where the directing or controlling entity also happens to

practice at least one claim step—has no legal basis.  The Federal Circuit's logic in *Akamai* is not so limited.  The Federal Circuit "consider[s] general principles of vicarious liability" "[t]o determine if a single entity directs or controls the acts of another."  *Id.*  If it does, then the court "will hold an entity responsible for others' performance of method steps." *Id.*  Nothing here turns on whether the directing or controlling entity also happens to practice one claim step. On the contrary, the Federal Circuit goes on—immediately after the passage quoted above—to separately lay out an "alternative" "joint enterprise" form of infringement:

> *Alternatively*, where two or more actors form a joint enterprise, all can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor."

*Id.* This confirms that "directs or controls" liability applies regardless of whether or not there is joint infringement.

**Third**, Nikon's instruction is redundant, not just as compared with Plaintiffs' proposed instruction on "DIRECT INFRINGEMENT—LITERAL INFRINGEMENT," but even with other instructions that Defendants agree should be included.  For example, Defendants agree to the inclusion of an instruction ("INDEPENDENT AND DEPENDENT CLAIMS") that explains the difference between independent and dependent claims.  But Defendants' instruction above repeats substantially the same material in, for example, paragraph 3.  Similarly, the references to claim construction in, for example, paragraph 2 are redundant and confusing given the specific claim construction instructions that the court will also provide.

**Fourth**, Nikon's instruction does not inform the jury that once the patent is issued, the owner of the patent has a right to exclude others from making, using, offering for sale, or selling the patented invention throughout the United States for a term of 20 years from the date of the filing of the patent application.

## NIKON'S REPLY TO PLAINTIFFS' OBJECTION
## (DIRECT INFRINGEMENT)

First, Nikon's Instruction does in fact follow the model instruction.  Plaintiffs fail to note the second sentence of the Instruction says: "A product and/or method directly infringes a patent if it is covered by at least one claim of the patent." Accordingly, Plaintiffs' complaint that the Instruction does not reference method claims is without merit.

As explained in Nikon's objections to Plaintiffs' proposed instruction (specifically, "Direct Infringement – Literal Infringement"), Plaintiffs' counter Instruction should not be read because Plaintiffs added the following (uncited) paragraph: "With regard to method claims, Plaintiffs can prove their claim of direct infringement by demonstrating that Defendants practice all the steps of the claimed method.  <u>Plaintiffs can prove direct infringement of the method claims by showing that Defendants conditioned participation in an activity or receipt of a benefit by someone else upon that other party performing the steps of the patented method, and that Defendants established the manner or timing of that performance.</u> In making your determination, you must consider each claim separately. Only one claim of a patent must be infringed for there for be infringement of a patent. Plaintiffs are only required to establish by a preponderance of the evidence that one claim is infringed." (emphasis added).  Plaintiffs now try to rely on the "logic" of *Akamai* without citing any model Instruction or reason why the Court should do so.

With respect to the underlined portion above, Plaintiffs provide no citation for this assertion.  To the extent Plaintiffs intend to rely on *Akamai* pertaining to joint infringement, such case law is inapplicable in this case.  Plaintiffs have not alleged or provided *any* evidence regarding joint infringement (or a joint enterprise).  To the extent Plaintiffs argue that one party is controlling others,

again, they have provided no evidence or allegation of this.  Here, the accused parties sell *cameras* and there are no conditions put on the sale of those cameras. Moreover, the additional language is legally incorrect and would confuse the jury, as it is unclear that all steps of the claimed methods must be actually performed. As such, Plaintiffs' proposed objection regarding joint infringement is meritless, and their proposed alternative Instruction should not be read.

Additionally, Plaintiffs' Instruction does not make clear that the claimed method must have been used in the U.S. in order to find infringement.

Finally, Plaintiffs' proposed Instruction fails to describe two important limiting exceptions to the doctrine of equivalents: prosecution history estoppel and ensnarement. Prosecution history estoppel prevents applying the doctrine of equivalents to reach subject matter relinquished by the patent applicant during prosecution. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002).

# NIKON'S CLOSING INSTRUCTION NO. 6
## (LITERAL INFRINGEMENT)

To decide whether Nikon's products and/or methods literally infringe a claim of the asserted patents, you must compare those products and/or methods with the patent claim and determine whether every requirement of the claim is included in that products and/or methods.  If so, Nikon's products and/or methods literally infringe that claim. If, however, Nikon's products and/or methods do not have every requirement in the patent claim, Nikon's products and/or methods do not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in Nikon's product and/or method. The fact that Nikon's product and/or method also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

If Nikon's products and/or methods do not itself include every requirement in the patent claim, Nikon cannot be liable for infringement merely because other parties supplied the missing elements, unless Nikon directed or controlled the acts by those parties. Nikon does not direct or control someone else's action merely because Nikon entered into a business relationship with that person. Instead, Nikon must specifically instruct or cause that other person to perform each step in an infringing manner, so that every step is attributable to [alleged infringer] as controlling party.


Source: Northern District of California, Model Patent Jury Instruction, B.3(3.3) (Jan. 2018).

**PLAINTIFFS' OBJECTION TO NIKON'S CLOSING INSTRUCTION NO. 6**

**(LITERAL INFRINGEMENT)**

Plaintiffs object to the inclusion of this instruction, which is an incomplete and unnecessary rewrite of an instruction that the court gave in the 3221 case. There is no reason to deviate here.  Plaintiffs have proposed an updated version of the 3221 instruction (see instruction "DIRECT INFRINGEMENT—LITERAL INFRINGEMENT" that Plaintiffs proposed) and respectfully request that that proposal be adopted.

Plaintiffs object to Nikon's proposed instruction as incomplete, misleading, and incorrect.

**First**, Nikon's instruction does not provide instructions about one important form of direct infringement at issue in this case.  As noted above, the jury should be instructed that "Plaintiffs can prove direct infringement of the method claims by showing that Defendants conditioned participation in an activity or receipt of a benefit by someone else upon that other party performing the steps of the patented method, and that Defendants established the manner or timing of that performance." *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015).  The language Plaintiffs' propose is necessary and correct as set forth in Plaintiffs' objection to Nikon's previous instruction ("DIRECT INFRINGEMENT").

**Second**, Paragraph 3 of the instruction, quoted below, is incorrect, incomplete and misleading.  Paragraph 3 states:

> If Nikon's products and/or methods do not itself include every requirement in the patent claim, Nikon cannot be liable for infringement merely because other parties supplied the missing elements, unless Nikon directed or controlled the acts by those parties. Nikon does not direct or control someone else's action merely because Nikon entered into a business relationship with that person. Instead, Nikon must specifically instruct or cause that other person to perform

44

each step in an infringing manner, so that every step is attributable to [alleged infringer] as controlling party.

This is incorrect and confusing because, for example, as written it suggests that all forms of infringement require either literal infringement by Nikon or "direction and control" of third parties: "Nikon cannot be liable for infringement … unless Nikon directed or controlled the acts by those parties."  That would exclude infringement under the doctrine of equivalents, inducement and contributory infringement—yet all of these are in law available without direction and control.  Thus, this instruction would confuse the jury.  Further, as noted above, this instruction fails to convey the key point that a party can direct and control another by "condition[ing] participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establish[ing] the manner or timing of that performance."  See *Akamai*, 797 F.3d at 1023 (Fed. Cir. 2015) ("To determine if a single entity *directs or controls* the acts of another, we continue to consider general principles of vicarious liability. … *[L]iability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance.*").  Finally, the instruction that "Nikon must specifically instruct or cause that other person to perform each step in an infringing manner" is confusing and not a complete or correct statement of law.

     **Third**, Nikon's instruction does not inform the jury that once the patent is issued, the owner of the patent has a right to exclude others from making, using, offering for sale, or selling the patented invention throughout the United States for a term of 20 years from the date of the filing of the patent application

## NIKON'S REPLY TO PLAINTIFFS' OBJECTION
## (LITERAL INFRINGEMENT)

Defendants' proposed instruction on literal infringement is based on the Northern District of California's Model Patent Jury Instructions, and therefore is thoroughly vetted and is routinely read to juries without issue.  Plaintiffs make three objections, and each is without merit.

Plaintiffs' first objection should be rejected because it proposes the addition of language that is irrelevant to the issues in this case.  As stated above in Defendants' response to the previous instruction, Plaintiffs have never asserted a theory of joint infringement in which Defendants allegedly conditioned participation in an activity or receipt of a benefit upon performance of a step or steps of any of the methods claimed in the asserted patents, nor have they provided any evidence regarding the same.  Moreover, the additional language is legally incorrect and would confuse the jury, as it is unclear that all steps of the claimed methods must be actually performed.  The proposed additional language is therefore irrelevant, erroneous, and would confuse the jury.

Plaintiffs' second objection is without merit because it presupposes that the jury would be confused into thinking that there could be no infringement "under the doctrine of equivalents, inducement and contributory infringement" unless Nikon directed or controlled the acts of third parties.  But Plaintiffs ignore the context in which the language is read—where "Nikon's products and/or methods do not itself include every requirement in the patent claim."  Plaintiffs' purported concern is unreasonable because it is clear from the instruction's language that not all theories of infringement are dependent on direction or control of a third parties' acts.  Additionally, as explained above, to the extent Plaintiffs intend to rely on *Akamai* pertaining to joint infringement, such case law is inapplicable in this case.  Plaintiffs have not alleged or provided *any* evidence regarding joint infringement

(or a joint enterprise).  To the extent Plaintiffs argue that one party is controlling others, again, they have provided no evidence or allegation of this.  Here, the accused parties sell *cameras* and there are no conditions put on the sale of those cameras.  As such, Plaintiffs proposed objection regarding joint infringement is meritless, and their proposed alternative Instruction should not be read.

Plaintiffs' third objection is without merit because it proposes addition of language that is fitting for a separate instruction relating to the nature of patent rights.  This instruction regards what is required to prove literal infringement.  It has nothing to do with the term of a patent or a patent owner's rights.

# NIKON'S CLOSING INSTRUCTION NO. 7

## (LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS)

Because the patentee made certain claim changes or statements during the patent application process for the '163 patent, the doctrine of equivalents analysis cannot be applied to the following requirements of claim 1:

- correlating said input image with preselected reference data to derive a correlation image
- selecting a candidate region of said input image having a likelihood of containing said target image pattern of interest on a basis of correlating said input image with said preselected reference data
- identifying potential candidate regions of said input image based on detecting a local maximum in said correlation image

Unless each of the above requirements is literally present within the Nikon digital cameras, there can be no infringement of claim 1 of the '163 patent.

Under the claim interpretation I have provided, the structure corresponding to the "first filtering means" in claim 15 includes the algorithm described in the specification at 7:10–21 and 7:44–53. The doctrine of equivalents cannot be applied to the following requirements:

- correlation image
- only regions that contain a local maximum in the correlation image and have pixel correlation values that are greater than a fixed threshold value TL are selected

Unless each of the above requirements is literally present within the Nikon digital cameras, there can be no infringement of claim 15 of the '163 patent.

Additionally, because the applicant of the '335 patent made certain claim changes and/or statements during the patent application process for the '335 patent, the doctrine of equivalents analysis cannot be applied to claim 1, elements (c)-(f). Specifically, steps (c) through (f) of claim 1 must be performed in order without

any overlaps, as construed by this Court.  Unless these steps are literally present within the Nikon D4/D4s/Df (i.e., performed in order without any overlap) there can be no infringement of the claims.

Finally, because the applicant of the '312, '017, and '574 patents made certain claim changes and/or statements during the patent application process for the '312 patent, the doctrine of equivalents analysis cannot be applied to the following claim limitations:

- Claim 1 of the '312 Patent: "wherein a sensing node of a unit pixel in a previous scan line is selectively shared with a sensing node of a unit pixel in a current scan line in response to a line select signal of the current scan line"

- Claim 7 of the '312 Patent: "a select transistor having one side connected to the output unit, wherein the select transistor is configured to switch and address in response to the select signal"

- Claim 1 of the '017 Patent: "a sensing node arranged to receive the electrical signal, wherein the sensing node is selectively couplable to a sensing node of a sensing pixel in a previous scan line of the pixel array"

- Claim 7 of the '017 Patent: "a switching device configured to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line"

- Claim 2 of the '574 Patent (entire claim)

- Claim 5 of the '574 Patent: "applying a select signal to a gate of a transistor providing a source/drain pathway between the first sensing node and the second sensing node prior to said transferring"

- Claim 7 of the '574 Patent (entire claim)

- Claim 17 of the '574 Patent:

- ○ "selecting a first row of sensing pixels from the plurality of sensing pixels in response to a select signal"
- ○ "connecting a first sensing node of a first sensing pixel in the first row with a second sensing node of a second sensing pixel in a second row of sensing pixels in response to the select signal"
- Claim 22 of the '574 Patent: "applying the select signal to a gate of a select transistor"
- Claim 25 of the '574 Patent (entire claim)

Unless each of the above requirements is literally present within the Nikon digital cameras, there can be no infringement of these patents.

Source: Northern District of California, Model Patent Jury Instruction, B.3(3.5) (Jan. 2018).

**PLAINTIFFS' OBJECTION TO NIKON'S CLOSING INSTRUCTION NO. 7**

**(LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS)**

This instruction is not appropriate, and Nikon is using it to assert a late summary judgment argument. Prosecution history estoppel is a question of law to be determined solely by the Court. *See Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 39 n.8 (1997) ("the various legal limitations on the application of the doctrine of equivalents are to be determined by the court"); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367–68 (Fed. Cir. 2003) (en banc) ("*Festo IX*") ("We have stated on numerous occasions that whether prosecution history estoppel applies, and hence whether the doctrine of equivalents may be available for a particular claim limitation, presents a question of law."). Until the Court makes such a determination, it cannot read instructions on the issue to the jury. *See id.* ("[T]he presumption of surrender is a question of law to be determined by the court, not a jury.").

Prosecution-history estoppel can occur either when the patentee makes a narrowing amendment to the claim or surrenders claim scope through argument to the patent examiner." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 2016-2691, 2018 WL 4501536, at *6 (Fed. Cir. Sept. 20, 2018). However, prosecution history estoppel only applies "when an amendment is made to secure the patent and the amendment narrows the patent's scope." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002). Likewise, argument-based estoppel "will be found [] only if they constitute clear and unmistakable surrenders of subject matter." *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008), *supplemented sub nom. Cordis Corp. v. Boston Sci. Corp.*, 275 F. App'x 966 (Fed. Cir. 2008). But, Nikon has not presented any estoppel argument. Without Nikon's position, it is impossible for Plaintiffs' to substantively respond. Unless and until the parties fully brief this issue, and the Court holds a hearing on the matter, the Court should not make any determination of amendment

51

or argument based prosecution history estoppel or include this instruction. Otherwise, including this instruction would deprive Plaintiffs' of the ability to argue their position.

Nonetheless, Nikon has not and cannot successfully argue that any estoppel applies to the claims here. Prosecution history estoppel is a four-step assessment. *See Festo IX*, 344 F.3d at 1366–67. In the first step, the accused infringer, Nikon here, must establish that an amendment "narrowed the literal scope of a claim." *Id.* at 1366. "[I]f the accused infringer establishes that the amendment was a narrowing one, then the second question is whether the reason for that amendment was a substantial one relating to patentability." *Id.* "If [] the court determines that a narrowing amendment has been made for a substantial reason relating to patentability . . . then the third question . . . addresses the scope of the subject matter surrendered by the narrowing amendment." *Id.* at 1367. Finally, "[t]he patentee may rebut that presumption of total surrender by demonstrating that it did not surrender the particular equivalent in question." *Id.* Here, there are at least three ways to overcome this presumption. The patentee has the opportunity to demonstrate that: (1) "the alleged equivalent would have been unforeseeable at the time of the narrowing amendment;" (2) "the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question;" or (3) "that there was 'some other reason' suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent." *Id.* at 1368. Prosecution history estoppel then only applies if the patentee cannot establish any of these. *Id.* at 1367. Nikon's instruction tries to circumvent this framework. Instead, Nikon has not made even a *prima facie* first step argument.

Nikon also has not addressed argument-based estoppel in any meaningful way. As noted above, the standard for showing that statements made in the prosecution lead to estoppel is high—"argument-based disavowals will be found, however, only if they constitute clear and unmistakable surrenders of subject

matter." *Cordis*, 511 F.3d at 1177; *see also AquaTex Industries, Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) ("To invoke argument-based estoppel, the prosecution history must evince a clear and unmistakable surrender of subject matter."). "Moreover, the scope of such a disavowal will depend on the nature of the argument made by the patentee," and even if there is a "clear and unmistakable surrenders" disavowal, "the court must construe the claim congruent with the scope of the surrender." *Cordis*, 511 F.3d at 1177 (internal quotations omitted). Nikon has not even attempted to address these issues. Moreover, nothing suggests that any argument in the prosecution history of the asserted patents is a disavowal of any relevant claim scope, much less a "clear and unmistakable" one.

Until Nikon properly briefs its position, and Plaintiffs' have the opportunity to respond and be heard, the Court should not read this instruction.

## NIKON'S REPLY TO PLAINTIFFS' OBJECTION

## (LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS)

Plaintiffs spend two-and-a-half pages reciting general case law in an attempt to obfuscate an issue that has already been briefed as applied to this case.  Whether prosecution history estoppel applies is indeed an issue for the Court to decide, and Nikon is requesting that the Court decide the issue before charging the jury.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367–68 (Fed. Cir. 2003).  Nikon has briefed the prosecution history estoppel issue before, including in its motion for summary judgment.  Plaintiffs declined to address the issue in response and cannot now be heard to complain that they lacked "the opportunity to respond and be heard."

First, Plaintiffs' contention that "Nikon has not presented any estoppel argument" is plainly false.  For example, with respect to the '163 patent, Nikon explained in its motion for summary judgment how the patentee both narrowed the claims to avoid prior art and also surrendered claim scope through argument to the patent examiner.  (*See* ECF No. 153-1 at 17–18.)  As pointed out there, in amending claim 1, the patentee argued that the Moghaddam prior art reference did not anticipate claim 1 as amended.  Moghaddam discloses obtaining, for each window (*e.g.*, 20 × 30 pixels) in an input image, a probability estimate that the window contains a target image, e.g., face.  (*See* ECF No. 154-20 at 64, ZEISS_ASML_CDCA7083-00000187.)  The patentee argued that Moghaddam did not derive a "correlation image" and stated that "[s]pecifically, the amended claim provides emphasis that ***the selecting step is based on correlating the input image with the preselected reference data to derive a correlation image.***"  (*Id.* at 65, ZEISS_ASML_CDCA7083-00000188 (emphasis in original).)  Plaintiffs' expert Dr. Mundy's argument that the "two-dimensional correlation image is formed *pixel-by-pixel* for each input image location examined" (ECF No. 153-11 ("Mundy Rpt.") at 166, 205, 243, 280) (emphasis added) is similarly estopped.  Even if such (non-

existent) image were constructed from the selected confidence values, the accused products would still operate like Moghaddam.  As the patentee further argued to the patent examiner, obtaining an "image" after the candidate regions are identified would not read on the '163 patent, because the "claimed step of deriving a correlation image *necessarily precedes* the step of identifying potential candidate regions." (ECF No. 154-20 at 95, ZEISS_ASML_CDCA7083-00000218 (emphasis in original).)

As shown above, the patentee made "clear and unmistakable surrenders of subject matter" during prosecution and cannot rely on the doctrine of equivalents to reclaim that matter.  *See Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008).  The doctrine of equivalents cannot be invoked to argue infringement by products where deriving a correlation image does not *precede* the identification of candidate regions.

Second, despite Nikon's raising the prosecution history estoppel in summary judgment briefing, Plaintiffs failed to address it substantively in their opposition, instead avoiding it by arguing that prosecution history estoppel is "irrelevant because there is a genuine dispute of material fact as to whether the accused products literally infringe."  (ECF No. 165-7 at 18 n.13.)  Having declined to address it in briefing, and having failed to even attempt to overcome the presumption that prosecution history applies,[10] Plaintiffs cannot now be heard to complain that they lacked "the opportunity to respond and be heard" on the issue.

In summary, Plaintiffs' contention that "Nikon has not and cannot successfully argue that any estoppel applies to the claims here" not only lacks

---

[10] In any case, none of the exceptions to prosecution history estoppel applies.  In particular, the amendments are not "tangential."  An "amendment made to avoid prior art that contains the equivalent in question is not tangential; it is central to allowance of the claim."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003).

1   support, but is plainly false, as detailed above.  The Court should find that

2   prosecution history estoppel applies and enter Nikon's instruction above.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

## NIKON'S CLOSING INSTRUCTION NO. 8
## (CONTRIBUTORY INFRINGEMENT)[11]

Plaintiffs also argue that Nikon Corp., Nikon Inc., and Sendai Nikon have contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

In order for there to be contributory infringement by Nikon Corp., Nikon Inc., and Sendai Nikon, someone other than Nikon Corp., Nikon Inc., and Sendai Nikon must directly infringe a claim of the '163, '335, and '574 patents; if there is no direct infringement by anyone, there can be no contributory infringement. The contributing act must occur in the United States.

If you find someone has directly infringed the '163, '335, or '574 patents, then contributory infringement exists if:

- Nikon supplied an important component of the infringing part of the product or method that infringes the patent;
- The component is not a common component suitable for non-infringing use; and
- Nikon supplied the component with the knowledge of the '163, '335, or '574 patents and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the product or method that infringes the patent, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

---

[11] As in the 3221 case, if Plaintiffs fail to provide evidence of contributory infringement, this Instruction should not be given.

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

1   Source: NDCA 3.6 (also proposed by Plaintiffs in this case), modified to include

2   the following sentences: "The contributing act must occur in the United States."

3   *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# PLAINTIFFS' OBJECTION TO
# NIKON'S CLOSING INSTRUCTION NO. 8
# (CONTRIBUTORY INFRINGEMENT)

Nikon's request to change an instruction that it proposed in the 3221 case is meritless.  In particular, the instruction read as a whole accurately conveys the requirement that contributory infringement requires a sale, offer for sale, or importation into the United States.  Defendants' proposed additional statement is confusing (e.g. the jury would have to be further instructed what the "contributing act" means), is not in keeping with the language of the statute, and is not clear that the act can be a sale, offer for sale, or importation.  *See* 35 U.S.C. § 271(c) ("Whoever offers to sell or sells within the United States or imports into the United States a component …").

Accordingly, if the court is inclined to add an additional statement of this requirement, the language of the statute should be used.  Specifically, the court should modify the following sentence from the first paragraph of the instruction as follows:

"Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims <u>by offering to sell or selling it within the United States or importing it into the United States</u>."

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

1
2

## NIKON'S REPLY TO PLAINTIFFS' OBJECTION
## (CONTRIBUTORY INFRINGEMENT)

3
4
5
6
7
8

The parties agree that this Instruction should be read.  Nikon merely asks that the Court clarify that the contributing act *must* occur in the United States. This is important in the instant case because Nikon Corp. is a Japanese company and conducts its business in Japan.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) ("Section 271(c) has a territorial limitation requiring contributory acts to occur in the United States.").

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# NIKON'S CLOSING INSTRUCTION NO. 9
## (INVALIDITY—BURDEN OF PROOF)

I will now instruct you on the rules you must follow in deciding whether Nikon has proven that all of the claims of the '163, '335, '312, '017, and '574 patents are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Nikon must persuade you that it is highly probable that the claim is invalid.

During this case, Defendants have submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the '163, '335, '312, '017, and '574 patents.  Defendants contend that such prior art invalidates certain claims of the '163, '335, '312, '017, and '574 patents.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the '163, '335, '312, '017, and '574 patents.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make the Nikon's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

Source: Northern District of California, Model Patent Jury Instruction, B.4.1(4.1a) (Jan. 2018).

# PLAINTIFFS' OBJECTION TO
# NIKON'S CLOSING INSTRUCTION NO. 9
# (INVALIDITY—BURDEN OF PROOF)

Plaintiffs propose that no instruction be given on this topic as it would be unnecessary, incorrect, and confusing to the jury, especially Nikon's proposed instruction regarding art that was not before the Patent Office.  First, Plaintiffs' proposed construction No. 13 ("invalidity of patent") contains a clear and concise statement of the burden of proof, including the instruction that the party challenging validity has the burden by "clear and convincing evidence," which language is conspicuously absent from Nikon's proposed instruction.  Second, no such instruction was given in the 3221 case.  Other Courts have rejected Nikon's proposed language. *See, e.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 07-CV-331, 2013 WL 4458754, at *10–12 (D. Nev. Aug. 16, 2013), *aff'd*, 769 F.3d 1371 (Fed. Cir. 2014), *vacated on other grounds and remanded*, 136 S. Ct. 1923 (2016), *and aff'd in part*, 831 F.3d 1369 (Fed. Cir. 2016):

> "Pulse argues it was error for the Court not to include Pulse's proposed jury instruction regarding validity that '[p]rior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make Pulse's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.' … **Microsoft [v i4i]** ***does not require that Pulse's proposed instruction be given***. … The Court therefore denies Pulse's Motion for a New Trial due to the Court's rejection of Pulse's proposed jury instruction regarding the prior art."

This instruction is particularly inappropriate in the present case.  First, Nikon has not made the necessary evidentiary showing that any of its art is "materially new."  "As the Supreme Court explained in *i4i*, there is no heightened burden of proof when a reference was previously considered by the PTO, and no lowered burden of proof if a defendant raises a new reference or argument during litigation. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011).  The burden does not

suddenly change to something higher—'extremely clear and convincing evidence'
or 'crystal clear and convincing evidence'—simply because the prior art references
were considered by the PTO." *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253,
1260 (Fed. Cir. 2012). Rather, the Supreme Court has instructed that "the jury ***may***
be instructed to evaluate whether the evidence before it is ***materially new***, and if so,
to consider that fact when determining whether an invalidity defense has been
proved by clear and convincing evidence." *i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011).

Here, none of Nikon's experts has made any attempt to compare the art
Nikon relies on with the art that was before the Patent Office, let alone to show that
Nikon's art contains "materially new" disclosures that were not before the Patent
Office. As such, Nikon simply has not put forward the evidence it needs to trigger
the instruction that is permitted (not compelled) by *i4i.*

Second, the instruction as written would be incorrect, confusing, and unfairly
prejudicial to Plaintiffs because, as written, it suggests that ***any*** difference from the
prior art before the Patent Office—not just a material difference—is entitled to
greater weight. It says: "[p]rior art that ***differs*** from the prior art considered by the
PTO may carry more weight than the prior art that was considered and may make
the Nikon's burden of showing that it is highly probable that a patent claim is
invalid easier to sustain." This incorrect instruction would confuse the jury and
lead them to improperly give Defendants' proposed art more weight than it is
entitled to.

Third, the instruction would confuse the jury because Nikon is relying on a
great deal of art that ***was*** before the Patent Office. For example, Nikon is asserting
references to Kaifu, Yuki, and Guidash as prior art against one or more of the '312,
'017, and '574 patents that were before the patent examiners for one or more of the
cases (or an application on which the publication claims priority). Nikon's
proposed instruction makes no attempt to distinguish such references.

1    Finally, if the court were inclined to provide any instruction on this issue—

2 which Plaintiffs submit it should not for the reasons above—it should instead use

3 the following instruction based on the Federal Circuit Bar Association model that

4 more accurately reflects the law:

5    Where the party challenging the validity of the patent is relying on prior art
     that was not considered by the PTO during examination, you may consider

6    whether that prior art is significantly different and more relevant than the
     prior art that the PTO did consider. If you decide it was different and more

7    relevant, you may weigh that prior art more heavily when considering

8    whether the challenger has carried its clear-and-convincing burden of
     proving invalidity.

9

10 Federal Circuit Bar Association, Model Patent Jury Instruction, B.4.3 (4.3c(ii))

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NIKON'S REPLY TO PLAINTIFFS' OBJECTION
## (INVALIDITY – BURDEN OF PROOF)

Plaintiffs' arguments are without merit.  First, Nikon's experts do not need to compare the prior art with what was before the PTO to show it is "materially new." Just the fact that the reference was not explicitly considered by the PTO suffices, and that's visible from the face of the patent.   In fact, the following is from the very case Plaintiffs cited: "[I]t could be reasonable to give more weight to new arguments or *references that were not explicitly considered by the PTO* when determining whether a defendant met its burden of providing clear and convincing evidence of invalidity."  *Sciele Pharma, Inc. v. Lupin Ltd*., 684 F.3d 1253, 1260 (Fed. Cir. 2012) (emphasis added).

Addressing Plaintiffs' second and third objections, the Instruction would not confuse the jury.  The Instruction addresses both cited and non-cited prior art. Specifically, the Instruction states: "[i]n deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the '163, '335, '312, '017, and '574 patents.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make the Nikon's burden of showing that it is highly probable that a patent claim is invalid easier to sustain."  This does not say that there is *no* prior art that was before the PTO.  Plaintiffs' objection is therefore without merit.

In sum, giving no Instruction, as Plaintiffs propose, would be inappropriate, given that Nikon's experts heavily rely on non-cited prior art.  Additionally, it would be highly prejudicial to Nikon because Plaintiffs undoubtedly will argue to the jury—as they did in the 3221 case—that the PTO is a highly sophisticated and respected institution that thoroughly vetted the patents against prior art and determined that they should be issued.  The jury should know about and be instructed regarding the fact that the PTO did not consider all of the prior art

1   references that Nikon now relies upon in contending that the asserted patents are

2   invalid.

# NIKON'S CLOSING INSTRUCTION NO. 10

## (INVALIDITY—PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART)

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of [the effective filing date of the patent(s)]. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field; and

(3) the sophistication of the technology.

[Patent holder] contends that the level of ordinary skill in the field was [  ]. [Alleged infringer] contends that the level of ordinary skill in the field was [  ].

Source: Northern District of California, Model Patent Jury Instruction, B.4.1(4.1b) (Jan. 2018).

# PLAINTIFFS' OBJECTION TO

# NIKON'S CLOSING INSTRUCTION NO. 10

# (INVALIDITY—PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART)

Plaintiffs do not object to an instruction statement that "The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the effective filing date of the patent."

Plaintiffs object to the remainder of Nikon's proposal as unnecessary and confusing. The parties can present evidence as to the level of ordinary skill in the art and the jury will resolve any disputes about it based on all the evidence presented. There is no reason to instruct the jury specifically to do so nor to repeat the parties' contentions as to level of skill in the art in the instructions.

**NIKON'S REPLY TO PLAINTIFFS' OBJECTION**

**(INVALIDITY—PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART)**

Plaintiffs agree to the Instructive and introductory sentence but object to the remainder of Nikon's proposal as "unnecessary and confusing."  Plaintiffs do not explain why it is either.  In fact, the Instruction does not make sense if the factors the jury is to consider when determining the level of skill in the art are not included.  Accordingly, the Court should read the entire Instruction, which is taken directly from the model instruction.

# NIKON'S CLOSING INSTRUCTION NO. 11

## (ANTICIPATION)

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention. In general, inventions are new when the identical product and/or process has not been made, used, or disclosed before. Anticipation must be determined on a claim-by-claim basis.

Nikon contends that the claims '163, '312, '017, and '574 are invalid because the claimed invention(s) is/are anticipated or because Plaintiffs lost the right to obtain a patent.

Nikon must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claim(s) is/are invalid. Here is a list of ways that Nikon can show that a patent claim was not new or that the patentee lost the right to patent the claim(s):

(1) An invention is not new if it was known to or used by others in the United States before the date of invention of the patents. An invention is known when the information about it was reasonably accessible to the public on that date.

(2) An invention is not new if it was already patented or described in a printed publication, anywhere in the world before the date of invention of the patents. A description is a "printed publication" only if it was publicly accessible.

(3) Plaintiffs have lost their rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by Plaintiffs or anyone else, more than a year before the date of invention of the patents, which is the effective filing date of the application for the patents. An invention was patented by another if the other patent describes the same invention claimed by Plaintiffs to a person having ordinary skill in the technology.

(4) An invention is not new if it was described in a published patent application filed by another in the United States [or under the PCT system and designated the United States, and was published in English] before [insert date of invention].

(5) An invention is not new if the claimed invention was described in a patent granted on an application for patent by another filed in the United States [or under the PCT system and designated the United States, and was published in English] and the application was filed before [insert date of reduction to practice or the filing date of the application for the '312, '017, and '574 patents.

Source: Federal Circuit Bar Association, Model Patent Jury Instruction, B.4.3b-1 (July 2016).

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)

# PLAINTIFFS' OBJECTIONS TO

# NIKON'S CLOSING INSTRUCTION NO. 11

# (ANTICIPATION)

In the 3221 case, which had a very similar structure, the Court gave the same instruction that is currently proposed by the Plaintiff. 3221 Case, D.I. 511, at p. 17. There is no reason to deviate here. The instruction is not confusing and is a proper recitation of the law.

The Court's Order for Jury Trial directs counsel to use the 9th Circuit's instructions, where applicable, or the Federal Jury Practice Instructions. Because the Ninth Circuit's model patent instructions have been withdrawn, Plaintiffs have looked to the 6th edition of the Federal Jury Practice and Instructions at § 158:68. Plaintiffs proposed instruction is consistent with § 158:68. This instruction presents the issue of anticipation in a neutral, factual manner.

Conversely, Defendants' proposed instruction provides reasons why a patent may be found invalid, but fails to properly frame the standard for finding anticipation. Clean and convincing evidence is a high bar in light of the presumption of validity to which a patent is entitled, and Plaintiffs' instruction properly frames the law for the jury. Additionally, Defendants' instruction provides unclear and confusing statements on the law. For example, "the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention." There is no allegation by Defendants' of any delay in filing and this instruction will surely confuse the jury. Further, Defendants' instruction number 5 is confusing because in this case the date at issue is the effective filing date, not the invention date or the reduction to practice. Further, Defendants' instruction is confusing regarding the filing date of the application, because with regard to number 5 and the '312 family, the proper date is the effective filing date, not just the filing date of the invention.

## NIKON'S REPLY TO PLAINTIFFS' OBJECTION
## (ANTICIPATION)

Plaintiffs' proposed instruction, entitled "Anticipation—Generally" provides an introductory discussion of patent anticipation yet fails to describe with specificity the different ways a patent claim can be anticipated, for example by a printed publication, a prior art patent, or by knowledge or use of the invention by others before the priority date.

Nikon's proposed instruction provides a helpful roadmap for the jury to apply when deciding anticipation.  While Plaintiffs contend that their proposed instruction is "consistent with [Fed. Jury Prac. & Instr.] § 158:68," tellingly they failed to add Fed. Jury Prac. & Instr. § 158:61, "Conditions that invalidate patent" which contains a clear road map, similar to the one in Nikon's proposed instruction, for use by the jury.

# NIKON'S CLOSING INSTRUCTION NO. 12
## (WRITTEN DESCRIPTION REQUIREMENT)

The patent law contains certain requirements for the part of the patent called the specification. Nikon contends that all asserted claims of the '312, '017, and '574 patents and claims 5, 7, and 9 of the '335 patent are invalid because the specification of those patents do not contain an adequate written description of the invention. To succeed, Nikon must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention. In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued. An applicant may amend the claims or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing

would have understood that the full scope or missing requirement is in the written description in the patent application.

Source: Federal Circuit Bar Association, Model Patent Jury Instruction, B.4.2 (4.2a) (July 2016); 35 U.S.C. § 112(2).

# PLAINTIFFS' OBJECTIONS TO

# NIKON'S CLOSING INSTRUCTION NO. 12

# (WRITTEN DESCRIPTION REQUIREMENT)

Defendants' proposed instruction includes unnecessary information regarding means-plus-function claims in this instruction because means-plus-function claims are addressed in other instructions, including INTERPRETATION OF THE CLAIMS and MEANS-PLUS-FUNCTION CLAIMS.  Further, Defendants' proposed construction does not address the issue raised by Defendants in response to Plaintiffs' proposed construction regarding structure.  In fact, Defendants' proposed instruction is essentially the same as the instruction it proposed in the 3221 case with the addition only of a description of the patent application process in the second paragraph.  Plaintiffs do not believe this addition adds anything that would benefit the jury's understanding of the written description requirement.

## NIKON'S REPLY TO PLAINTIFFS' OBJECTION
## (WRITTEN DESCRIPTION REQUIREMENT)

Though Nikon follows the Model Instruction, Plaintiffs seek to cut the portions of the Instruction they do not like, specifically those regarding means-plus-function claims.  Nikon contends that the asserted patents contain means-plus-function claims, and therefore the Instruction must be read.

Additionally, Plaintiffs' Instruction does not follow the model.  Specifically, Plaintiffs write that "Defendants' proposed instruction is essentially the same as the instruction it proposed in the 3221 case with the addition only of a description of the patent application process in the second paragraph."  But this paragraph is included in the model and is necessary to provide a complete description of the written description requirement, and therefore should be read.

Plaintiffs also inappropriately added the following sentences to their alternative written description instruction: "The disclosure of a species may be sufficient written description support for a later claimed genus including that species.  A broad claim is more likely to have written description support if results in the field are relatively predictable." These sentences do not come from *any* model instruction and are likely to confuse the jury with terms such as "genus/species."

# NIKON'S CLOSING INSTRUCTION NO. 13
## (REASONABLE ROYALTY—DEFINITION)

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

Source: Federal Circuit Bar Association, Model Patent Jury Instruction, B.6 (6.6) (July 2016).

**PLAINTIFF'S OBJECTIONS TO**

**DEFENDANTS' PROPOSED CLOSING INSTRUCTION NO. 13**

**(REASONABLE ROYALTY—DEFINITION)**

Plaintiffs agree that Defendants' instruction should be read.  However, Plaintiffs believe that additional instructions may better allow the jury to understand the complex subject of patent damages.  As with the 3221 case, Plaintiffs have suggested additional paragraphs which further elucidate how different methodologies of damages may be calculated and applied (such as a running royalty vs. a lump sum payment.  *See* Plaintiffs' preliminary instruction No. 19.  While Plaintiffs are mindful that the Court would wish to minimize the instructions provided to the jury, Plaintiffs feel that these additional instructions—in which Defendants have not identified any error, *see id.*—would be beneficial to the jurors as they lay out how damages may be applied in this case.

## NIKON'S REPLY TO PLAINTIFFS' OBJECTION
## (REASONABLE ROYALTY—DEFINITION)

As noted in Nikon's Objections to Plaintiffs' proposed instruction, Nikon contends the Court should read the Instruction given in the 3221 case.

Plaintiffs have modified the Court's Instruction from the 3221 case by adding the entire last three paragraphs of their proposed Instruction (*i.e.* the Court's instruction from the 3221 case ended with "[a]lthough evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.").

In this case, the dispute over damages is largely identical to that in the 3221 case: Plaintiffs request a running royalty and Nikon avers that any damages would be a lump-sum.  Thus, there is no reason to depart from the Court's Instruction in this case.  Accordingly, Nikon requests that the Court read its instruction from the 3221 case.

# NIKON'S CLOSING INSTRUCTION NO. 14[12]

## (LICENSE DEFENSE)

I will now instruct you on how to decide Nikon's license defense regarding the '335 patent.  Nikon contends that Plaintiffs are barred from enforcing the '335 patent against Nikon's products that contain image sensors designed and manufactured by Sony because Sony is authorized to design and manufacture products that practice the '335 patent.  Specifically, Nikon contends that Sony obtained a license to design, manufacture, and sell products that practice the '335 patent, and thus the Sony image sensors, and Nikon's cameras that incorporate Sony's image sensors, do not infringe the '335 patent.  Plaintiffs contend that the Sony license does not apply.  The fact that Nikon raises this defense should not be understood as an acknowledgment that its products practice the '335 patent.

Source: Source: 35 U.S.C. § 271(a); *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1535 (2017); *see also Quanta Computer, Inc. v. L.G. Elecs., Inc.*, 533 U.S. 617, 628–630 (2008).

---

[12] In response to Plaintiffs' objections, Nikon has slightly modified this Instruction. The Instruction that Nikon proposes is as follows: "I will now instruct you on how to decide Nikon's license defense regarding the '335 patent.  Nikon contends that Plaintiffs are barred from enforcing the '335 patent against Nikon's products that contain Sony-branded image sensors because Sony is authorized to design, manufacture, and sell products that practice the '335 patent.  Specifically, Nikon contends that Sony obtained a license to design, manufacture, and sell products that practice the '335 patent, and thus the Sony image sensors, and Nikon's cameras that incorporate Sony's image sensors, do not infringe the '335 patent.  Plaintiffs contend that the Sony-branded image sensors included in Nikon's cameras are not designed by Sony and therefore the Sony license does not apply.  The fact that Nikon raises this defense should not be understood as an acknowledgment that its products practice the '335 patent.  Nikon must prove this defense by a preponderance of the evidence."

# PLAINTIFF'S OBJECTIONS TO
## DEFENDANTS' PROPOSED CLOSING INSTRUCTION NO. 14
### (LICENSE DEFENSE)

Plaintiffs object to this instruction—which Nikon has not based on any model—because it is unnecessary, incomplete, misstates the law, purports to establish fact issues that Nikon has to prove at trial, is misleading, and is prejudicial to Plaintiffs.  Furthermore, this is not an "instruction" at all, but rather a recitation of Nikon's contentions, framed in such a way as to significantly slant the issue in Nikon's direction.  In effect, it provides a summary of Nikon's purported license defense in an effort to create an impression that this this defense has merit.

First, the instruction is unnecessary because other instructions already indicate that direct infringement requires practicing the patent without permission.  For example, Plaintiffs' proposed Closing Instruction on DIRECT INFRINGEMENT—LITERAL INFRINGEMENT says that: "direct infringement of a patent occurs when a person makes, uses, offers for sale, or sells the patented invention anywhere in the United States, or imports the patented invention into the United States, ***without the owner's permission*** while the patent is in force."  Nikon can explain its contention as to why it has permission without needing a special instruction.

Second, Nikon's proposed instruction purports to instruct the jury to adopt Nikon's position on issues that Nikon has to prove and the jury has to decide.  For example, Nikon's proposal states that "Nikon's products [] contain image sensors ***designed … by Sony***," but one of the key contested issues is whether Sony in fact "designs" these sensors.  That is plainly improper and prejudicial.

Third, Nikon's proposed instruction fails to state that Nikon has the burden of proving its license defense. *See, e.g., Spindelfabrik Suessen-Schurr v. Schubert & Salzer*, 903 F.2d 1568, 1576 (Fed. Cir. 1990) ("As the proponents of the [license] defense, it was incumbent upon [Nikon] to show that the license authorized the sale

of the infringing machines in the United States."); *Rockwell Int'l Corp. v. United States*, 31 Fed. Cl. 70, 77 (1994) ("[D]efendant has the burden of proof to show the existence of a license and the scope of any such license." (citing *Intel Corp. v. United States ITC*, 946 F.2d 821, 828 (Fed. Cir. 1991)); *Promega Corp. v. Life Techs. Corp.*, No. 10-00281, Dkt. 498 (W.D. Wis. Feb. 3, 2012) ("The Court of Appeals for the Federal Circuit consistently and repeatedly has described a license as an affirmative defense to a claim for infringement, which the defendant has the burden to prove.") (collecting cases).

Fourth, the instruction is plainly biased in favor of Nikon, spending multiple lines to describe Nikon's position and failing to state the basis for Plaintiffs' position.

Therefore, if the court finds that an additional instruction should be given on Nikon's license defense, then Plaintiffs request that the Court present the following simple and more accurate instruction:

> "Defendants contend that those of its cameras that use Sony-branded image sensors do not infringe the '335 patent because of a license to Sony. Plaintiffs contend that the Sony license does not authorize Defendants' activities under the '335 patent. Defendants have the burden of proving this license defense by a preponderance of the evidence."

## NIKON'S REPLY TO PLAINTIFFS' OBJECTION
## (LICENSE DEFENSE)

Plaintiffs' objection asserts that Defendants' Instruction is misleading and misstates the law, but Plaintiffs fail to explain or provide any basis for those assertions.  Their assertions are without merit.

Plaintiffs object that Defendants' proposed "instruction is unnecessary because other instructions already indicate that direct infringement requires practicing the patent without permission."  The objection is premised on the notion that a lay juror already understands the significance of a license—what it is and that it provides authority to engage in certain activities.  The premise is flawed, as license is not something that a reasonable juror would be expected to understand without instruction from the Court.  Moreover, while other instructions may explain that infringement requires an absence of authority, none of the other instructions mentions license, nor do they explain the significance of a license.  Accordingly, an instruction specific to license is necessary.

Plaintiffs next object that the proposed instruction purports to "instruct the jury to adopt Nikon's position on issues that Nikon has to prove and the jury has to decide."  Defendants disagree with Plaintiffs' assertion because the instruction is clear that it is Defendants' contention.  Nevertheless, in an effort to address Plaintiffs' concern, Nikon proposes modifying that sentence as follows:

> Nikon contends that Plaintiffs are barred from enforcing the '335 patent against Nikon's products that contain Sony-branded image sensors ~~designed and manufactured by Sony~~ because Sony is authorized to design, ~~and~~ manufacture, and sell products that practice the '335 patent.

Plaintiffs object that Defendants' proposed instruction does not inform the jury that Defendants have the burden of proof with respect to this defense.  To

address Plaintiffs' objection, Defendants propose adding the following language to the end of the instruction:  "Nikon must prove this defense by a preponderance of the evidence."

Plaintiffs' final objection is that the instruction is biased because it does not state the basis of Plaintiffs' position.  Defendants disagree that the instruction is biased.   Nevertheless, to address Plaintiffs' concerns, Defendants propose modifying the sentence that currently is the penultimate sentence in the proposed instruction as follows:  "Plaintiffs contend that the <u>Sony-branded image sensors included in Nikon's cameras are not designed by Sony and therefore</u> the Sony license does not apply."

The instruction that Plaintiffs propose in their objection is incomplete because it fails to explain what a license is or the significance of a license. Moreover, Plaintiffs' proposed instruction is biased because it implies that the terms of the Sony license must specifically authorize Defendant's activities for it to exhaust Plaintiffs' rights in the Sony-branded image sensors.  Such an implication is inconsistent with the law. *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1535 (2017); *see also Quanta Computer, Inc. v. L.G. Elecs., Inc.*, 533 U.S. 617, 628–630 (2008).

With Defendants' modifications proposed in response to Plaintiffs' objections, the proposed instruction reads as follows:

> I will now instruct you on how to decide Nikon's license defense regarding the '335 patent.  Nikon contends that Plaintiffs are barred from enforcing the '335 patent against Nikon's products that contain Sony-branded image sensors because Sony is authorized to design, manufacture, and sell products that practice the '335 patent. Specifically, Nikon contends that Sony obtained a license to design, manufacture, and sell products that practice the '335 patent, and thus the Sony image sensors, and Nikon's cameras that incorporate Sony's

1  image sensors, do not infringe the '335 patent.  Plaintiffs contend that

2  the Sony-branded image sensors included in Nikon's cameras are not

3  designed by Sony and therefore the Sony license does not apply.  The

4  fact that Nikon raises this defense should not be understood as an

5  acknowledgment that its products practice the '335 patent.  Nikon

6  must prove this defense by a preponderance of the evidence.

7

8

9  **[END OF CLOSING INSTRUCTIONS]**

10

11

12

13  Dated:   October 19, 2018          Respectfully submitted,

14                                     JACK LONDEN
                                       VINCENT J. BELUSKO
15                                     MORRISON & FOERSTER LLP

16

17                                     By:  */s/ Vincent J. Belusko*
                                            Vincent J. Belusko

18                                     Attorneys for Defendants
19                                     NIKON CORPORATION, SENDAI
                                       NIKON CORPORATION, AND
20                                     NIKON INC.

21

22

23

24

25

26

27

28

DEFS.' DISPUTED JURY INSTRUCTIONS W/ PLS' OBJS. & DEFS.' REPLIES
Case No. 2:17-cv-07083-RGK (MRWx)