1
2
3
4
5

Christopher S. Marchese (SBN 170239),
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240, Fax: (858) 678-5099

6
7
8
9
10

Frank Scherkenbach (SBN 142549),
scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted *Pro Hac Vice*),
glitzenstein@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070, Fax: (617) 542-8906

11
12

*[Additional Counsel listed on last page.]*

13
14

Attorneys for Plaintiffs,
CARL ZEISS AG and ASML NETHERLANDS B.V.

15
16

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

17
18

CARL ZEISS AG and ASML
NETHERLANDS B.V.,

19
20

            Plaintiffs,

v.

21
22
23

NIKON CORPORATION, SENDAI
NIKON CORPORATION, and
NIKON INC.,

            Defendants.

24
25
26
27
28

Case No. 2:17-cv-07083-RGK (MRWx)

**PLAINTIFFS' DISPUTED JURY INSTRUCTIONS**

Trial Date:  November 6, 2018
Courtroom:  850
Judge: Hon. R. Gary Klausner

In accordance with the Court's Order for Jury Trial (ECF No. 50), Plaintiffs hereby submit the following proposed jury instructions. In an attempt to help avoid disputes, Plaintiffs have utilized instructions given by the Court in the 3221 case, where possible.  Plaintiffs expect the instructions to evolve as the case gets closer to trial and issues are narrowed.  Plaintiffs reserve all rights to modify, add, and delete instructions.

# INDEX OF PLAINTIFFS' DISPUTED JURY INSTRUCTIONS

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| **DISPUTED PRELIMINARY** | | | |
| Plaintiffs' Prelim. No. 1 | How A Trial Works | 3221 Trial Tr. Day 1 at 76:20-77:9 | 4 |
| **DISPUTED CLOSING** | | | |
| Plaintiffs' Closing No. 1 | Patent Claims | 3211 Closing Instructions (Dkt. 511). | 8 |
| Plaintiffs' Closing No. 2 | Interpretation of the Claims | 3211 Closing Instructions (Dkt. 511); N.D. Cal. Model Patent Jury Instructions (Jan. 2018), 2.1. | 11 |
| Plaintiffs' Closing No. 3 | Means-Plus-Function Claims-Literal Infringement | 3221 Closing Instructions (Dkt. 511); N.D. Cal., 3.3b; *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1267-68 (Fed. Cir. 1999) | 24 |
| Plaintiffs' Closing No. 4 | Infringement | 3221 Closing Instructions (Dkt. 511); Fed. Jury Prac. & Instr., § 158:20; 35 U.S.C. § 271. | 32 |
| Plaintiffs' Closing No. 5 | Direct Infringement-Literal Infringement | 3221 Closing Instructions (Dkt. 511); Fed. Jury Prac. & Instr., § 158:22; *Limelight Networks, Inc. v. Akamai Techs., Inc.,* 572 U.S. 915 (2014); *Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020 (Fed. Cir. 2015). | 39 |

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Plaintiffs' Closing No. 6 | Contributory Infringement | N.D. Cal. 3.6 (provided by Defendants in 3221, Dkt. 489). | 47 |
| Plaintiffs' Closing No. 7 | Willful Infringement | N.D. Cal., 3.8. | 50 |
| Plaintiffs' Closing No. 8 | Invalidity of Patent | 3221 Closing Instructions (Dkt. 511); FJPI § 158:60. | 53 |
| Plaintiffs' Closing No. 9 | Anticipation-Generally | 3221 Closing Instructions (Dkt. 511); FJPI § 158:68; *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299 (Fed. Cir. 2009). | 56 |
| Plaintiffs' Closing No. 10 | Written Description Requirement | 3221 Closing Instructions (Dkt. 511). | 60 |
| Plaintiffs' Closing No. 11 | Reasonable Royalty-Definition | 3221 Closing Instructions (Dkt. 511). | 63 |

## PLAINTIFFS' PRELIMINARY INSTRUCTION NO. 1
## (HOW A TRIAL WORKS)

Now, trials proceed in the following way. First, each side will make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what the party expects the evidence will show. A party is not required to make an opening statement.

After opening statement, the plaintiff will then present their evidence, and counsel for the defendant may cross-examine. After that, the defendant may present their evidence, and counsel for the plaintiff may cross-examine.

After all the evidence has been presented, I will instruct you on the law that applies to the case, and the attorneys will make their closing argument. After that, you will go to the jury room to deliberate for your verdict.

SOURCE: 2:17-cv-3221 Trial Tr. Day 1 at 76:20-77:9

**NIKON'S OBJECTION TO PLAINTIFFS' PRELIMINARY**

**INSTRUCTION NO. 11**

**(HOW A TRIAL WORKS)**

Nikon objects because this Instruction incorrectly implies that Plaintiffs will be the first and last to present evidence on all issues. On the issue of invalidity, the party that bears the burden of proof both presents its evidence first at trial and has the opportunity to rebut. *See, e.g.*, *Novartis Pharm. Corp. v. Teva Pharm. USA, Inc.*, No. 05-cv-1887 (DMC), 2009 WL 3334850, at *1 (D. N.J. Oct. 14, 2009) ("In a trial of patent validity, bearing the burden of proof entitles a defendant to present first and last with regard to that issue."); *accord Sudden Valley Supply LLC v. Ziegmann*, No. 4:13-cv-53 RLW, 2015 U.S. Dist. LEXIS 75406, at *2–5 (E.D. Mo. June 11, 2015); *Personalized User Model, L.L.P. v. Google Inc.*, No. 09-525-LPS, 2014 U.S. Dist. LEXIS 37817, at *2–3 (D. Del. Mar. 6, 2014).  As in the 3221 case, Nikon should present first and last on the issue of invalidity.

Instead, Nikon asserts that the Court should read Federal Circuit Bar Association Model Patent Jury Instructions A5 (outline of trial with burdens of proof).

**PLAINTIFF'S RESPONSE RE PRELIMINARY INSTRUCTION NO. 1**

**(HOW A TRIAL WORKS)**

In the 3221 case, which had a very similar structure, the Court gave the instruction proposed by the Plaintiff. *See* 3221 Trial Tr. Day 1 at 76:20-77:9. There is no reason to deviate here or go into additional detail. Defendants' concerns regarding the burden will be explained during trial and are appropriately addressed in the Closing Instructions.

If the Court does intend to provide a more detailed instruction regarding how the trial works and burdens of proof, Plaintiffs urge the Court to use Instruction 1.21 from the 9th Circuit Manual of Model Jury Instructions from 2018, which states:

The trial will now begin. Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiffs will then present evidence, and counsel for the defendants may cross-examine. Then the defendants may present evidence, and counsel for the plaintiffs may cross-examine. Finally, the plaintiffs may present some additional evidence to respond to what the defendants presented, and counsel for the defendants may cross-examine.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not, in other words, that it is slightly more probable. This is called the "preponderance of evidence" standard. On other issues you must use a higher standard and decide whether it is highly probable that something is true. This is called the "clear and convincing" standard.

To prove infringement of any claim, plaintiffs must persuade you that it is more likely than not that the defendants have infringed that claim. To prove invalidity of any claim, the defendants must persuade you that it is highly probable that the claim is invalid.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments. After that, you will go to the jury room to deliberate on your verdict.

SOURCE: 9th Cir. Model (2018), 1.21.

**[END OF PRELIMINARY INSTRUCTIONS]**

**PLAINTIFFS' CLOSING INSTRUCTION NO. 1**

**(PATENT CLAIMS)**

Before you can decide whether defendant has infringed plaintiffs' patent, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent. The patent claims involved here are:

| Patent | Beginning at: |
|--------|---------------|
| '163   | Column 15, line 65 |
| '335   | Column 7, line 32 |
| '312   | Column 5, line 41 |
| '017   | Column 5, line 51 |
| '574   | Column 5, line 49 |

Each patent is an exhibit in evidence. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of the patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. Each of the claims must be considered individually, and to show patent infringement, Plaintiffs need only establish that one claim has been infringed.

SOURCE: 3221 Closing Instructions from (Dkt. 511), updated for 7083 case.

5

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS

Case No. 2:17-cv-07083-RGK (MRWx)

# NIKON'S OBJECTION TO PLAINTIFFS' CLOSING INSTRUCTION NO. 1 (PATENT CLAIMS)

Nikon objects because Plaintiffs did not merely "update" the Court's Instruction. Indeed, the Court's Instruction did not specifically list the asserted claims. *See* ECF No. 511 at 4.

Moreover, it will confuse a jury to list the column and line numbers rather than the actual claim numbers asserted. Importantly, Plaintiffs do *not* assert all claims from each patent, thus it is misleading to list claims "Beginning at" a certain column/line number, as Plaintiffs do.

If the Court is inclined to include a list of the asserted claims, the proper Instruction should include the following table:

| Patent | Asserted Claims |
|--------|-----------------|
| '163 | 1–4, 6–7, 15–16, and 19 |
| '335 | 1-12 |
| '312 | 1-3, 6-9, and 11-16 |
| '017 | 1-3, 6-8, and 10-17 |
| '574 | 1-13, and 16-31 |

Nikon additionally objects that the asserted claims Plaintiffs list for the '574 patent are incorrect. In Plaintiffs' interrogatory response regarding infringement, Plaintiffs only charted claims 1-31, and did not address claims 32 and 33. Accordingly, Plaintiffs have waived the ability to assert claims 32 and 33.

# PLAINTIFFS' RESPONSE RE CLOSING INSTRUCTION NO. 1
## (PATENT CLAIMS)

Plaintiffs are amenable to remove the sentence "The patent claims involved here are:" and the table that follows.  Alternatively, Plaintiffs propose including the correct listing of asserted claims as shown below:

| Patent | Asserted Claims |
|--------|-----------------|
| '163 | 1–4, 6–7, 15–16, and 19 |
| '335 | 1-12 |
| '312 | 1, 2, 6, 7, 9, and 11-14 |
| '017 | 1, 2, 7, 8, 12, 13, 15, and 16 |
| '574 | 1, 3, 4, 6, 9-11, 17-20, 24, and 30-33 |

Regardless of whether the claims are listed in the instructions, Plaintiffs have not waived the ability to assert claims 32-33 of the '574 patent.  As an initial matter, these two claims have been a part of this case since Plaintiffs' filed their complaint, which alleged infringement of "at least claims 1-13 and 16-33" of the '574 patent.  (*See* D.I. 1 ¶ 90.)  These claims were also included in Plaintiffs' response to Defendants' interrogatory regarding infringement.  Specifically, Plaintiffs supplemented their interrogatory response regarding infringement on August 8—the last day of discovery and the day on which opening expert reports were served.  In that supplement, Plaintiffs incorporated by reference the expert reports, including the expert report of Dr. Subramanian.  Dr. Subramanian's report (which was served on that same day) included allegations of infringement of these two claims.

## PLAINTIFFS' CLOSING INSTRUCTION NO. 2
## (INTERPRETATION OF THE CLAIMS)

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct.[1] My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

For the '163 patent, the scope of the claims is that of their plain and ordinary meaning as understood by a person of ordinary skill in the art. I have provided additional interpretation of the following claim terms:

| '163 patent claim term | What the term means: |
|---|---|
| First filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern | A first filter that identifies a plurality of image regions of said input image that have a likelihood of containing said target image pattern and is configured to correlate said input image with a reference image pattern to select said image regions, said reference image pattern being indicative of said target image pattern |
| Second filtering means ... for screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern | A second filter that screens said image regions to select a candidate region that has a high likelihood of containing said target image pattern and that is configured to examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions |

---

[1] Plaintiffs note that the Court has the discretion to modify the construction of any claim at any time during the trial until evidence closes. *See Mobile Hi–Tech Wheels v. CIA Wheel Group*, 514 F.Supp.2d 1172, 1189 (C.D.Cal.2007) (noting that the only limitation on district courts regarding the timing of claim construction proceedings is that the claims must be construed before the jury is instructed). In cases where the court in its summary judgment order did not adopt the claim constructions that Plaintiffs' provided, Plaintiffs respectfully disagree with the court's constructions, object to the court's constructions, and respectfully urge the court to adopt Plaintiffs' proposed constructions.

For the '335 patent, the scope of the claims is that of their plain and ordinary meaning as understood by a person of ordinary skill in the art.  I have provided additional interpretation of the following claim terms:

| '335 patent claim term | What the term means: |
| --- | --- |
| "turning on" and "turning off" as used in steps 1(c) through 1(f) of claim 1 | The transistors transition from on to off |

I have also held that the steps can overlap in claim 2 and its dependent claims of the '335 Patent.

For the '312/'017/'574 patent family, the scope of the claims is that of their plain and ordinary meaning as understood by a person of ordinary skill in the art.  In the Court's October 3, 2018 Order (ECF No. 295), I provided additional interpretation of the following claim terms:

| '312 patent claim term | What the term means: |
| --- | --- |
| Unit pixel | A structure including one or more photodiodes[2] |
| Selectively shared with a sensing node of a unit pixel in a current scan line | Connectable via a switch with a sensing node of a unit pixel in a current scan line to selectively receive photocharges from one or more photodiodes of the unit pixel in the current scan line and not from any photodiode in the previous scan line |
| Selected unit pixel | Unit pixel enabled to receive photocharges from one or more corresponding photodiodes |

[2] *See* ECF No. 295 at 17-19.  As discussed in Plaintiffs' Opposition to Nikon's Motion for Partial Summary Judgment, Plaintiffs propose the alternate construction of a structure that is "*not limited to a single photodiode.*"  *See* ECF No. 165.  As noted above, Plaintiffs respectfully disagree with and object to the court's construction to the extent it differs from Plaintiffs' proposal, and respectfully urge the court to adopt Plaintiffs' proposed construction.

9

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

| Neighboring unit pixel | Nearby unit pixel that is not connected from its one or more photodiodes |
|---|---|

| '017 patent claim term | What the term means: |
|---|---|
| Sensing pixel | A structure including one or more photodiodes[3] |
| The sensing node is selectively couplable to a sensing node of a sensing pixel in a previous scan line | a sensing node in a current scan line is selectively connectable via a switch with a sensing node of a sensing pixel in a previous scan line to receive an electrical signal from one or more photodiodes of the sensing pixel in the current scan line and not from any photodiode in the previous scan line |
| First sensing pixel | Sensing pixel enabled to receive an electrical signal from one or more corresponding photodiodes |
| Second sensing pixel | Nearby sensing pixel not connected to its one or more photodiodes |

| '574 patent claim terms | What the term means: |
|---|---|
| Sensing pixel<br>First pixel<br>Second pixel<br>Third pixel | A structure including one or more photodiodes[4] |

SOURCE:  3221 Closing Instructions (Dkt. 511) updated to address 7083 claim terms at issue; N.D. Cal. Model Patent Jury Instructions (Jan. 2018) ("N.D. Cal"), 2.1; Amended Order Re Motions for Partial Summary Judgment And Adjudication (D.I. 305).

---

[3] *Id.*
[4] *Id.*

# NIKON'S OBJECTION TO PLAINTIFFS' CLOSING INSTRUCTION NO. 2 (INTERPRETATION OF THE CLAIMS)

Plaintiffs' proposed instruction ignores several terms in the '163 patent claims that require explicit construction.  It also ignores that "first filtering means" and "second filtering means" are subject to 35 U.S.C. § 112(6).  The presumption that these limitations, which explicitly contain the word "means," should be treated under 35 U.S.C. § 112(6) is not rebutted, because nothing in the terms "first filtering means" and "second filtering means" is understood by one of ordinary skill in the art to disclose a sufficiently definite structure.  (Darrell Decl. ¶¶ 58, 63 (ECF No. 153-25); *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348.)  In similar contexts, courts have found terms such as "filter means" to be means-plus-function limitations.  *See e.g.*, *Source Search Techs., LLC v. Lending Tree, LLC*, 2006 U.S. Dist. LEXIS 79651, at *26 (D.N.J. Oct. 16, 2006).

The correct instruction is provided below:

For the '163 patent, the scope of the claims is that of their plain and ordinary meaning as understood by a person of ordinary skill in the art.  I have provided additional interpretation of the following claim terms:

| '163 Patent Claim Term | Claims | Construction |
| --- | --- | --- |
| "correlating" | 1, 6 | "performing an image correlation operation between the input image and a kernel that results in a correlation image" |
| "correlation" | 1, 7 | "an image correlation operation between the input image and a kernel that results in a correlation image" |

| '163 Patent Claim Term | Claims | Construction |
|---|---|---|
| "correlation image" | 1 | "a two-dimensional image obtained by an image correlation operation between the input image and a kernel" |
| "convolution" | 4, 16 | "an image correlation operation between the input image and a kernel, resulting in a correlation image" |
| "convolution kernel" | 4, 16 | "a two-dimensional matrix that represents a target image pattern of interest" |
| "first filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern" | 15 | "linear matched filter 56, programmed to employ an algorithm described at 7:10-21 and 7:44-53." <br><br> *See also* Nikon's Closing Instruction No. ("SECTION 112, PARAGRAPH 6") |

| '163 Patent Claim Term | Claims | Construction |
|---|---|---|
| "second filtering means operatively coupled to and operatively following said first filtering means for screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern, said second filtering means being configured to examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions" | 15 | "non-linear filter 66 programmed to employ an algorithm described at 7:64-8:7." *See also* Nikon's Closing Instruction ("SECTION 112, PARAGRAPH 6") |

Moreover, for the '335 patent, per the Court's October 3, 2018 Order (ECF No. 295), the following terms are construed as follows:

| '335 Patent Claim Terms | Claims | Construction |
|---|---|---|
| "turning on"/"turning off" terms | 1 | the phrases "turning off" and "tuning on" as used in steps l (c) through l (f) mean that the transistors *transition* from on to off, and from off to on, respectively. |

| Whether steps (a) – (f) must be performed in order | 1 | Yes, without any overlap |

Additionally, the following additional interpretations should also apply:

| '335 Patent Claim Terms | Claims | Construction |
| --- | --- | --- |
| "(a) fully depleting the first and second photodiodes" | 1 | fully deplete by "setting both the reset transistor and corresponding transfer transistor on while the select transistor is off" |
| "adjusting a turn-on time and a turn-off time for the first and second transfer transistors" | 3 | "varying the turn-on and turn-off times of the first and second transfer transistors" |

For the '312, '017, and '574 patents, Nikon objects to the Court's construction of terms in its Order on Summary Judgment (ECF No. 295.)  Nikon reserves all rights to object and/or appeal those constructions.

Nikon additionally proposes that the following additional claim terms define the scope of the claims:

| '312 Patent Claim Terms | Claims | Construction |
| --- | --- | --- |
| "in response to a line select signal" (claim 1)  "in response to a select signal" (claim 7) | 1, 7 | "in response to a signal that is applied to a select transistor of a unit pixel to couple the unit pixel to an output line" |

14
PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

| '312 Patent Claim Terms | Claims | Construction |
|---|---|---|
| "a switching device configured to interconnect a sensing node of a selected unit pixel to a sensing node of a neighboring unit pixel in response to a select signal" | 7 | This term is governed by 35 U.S.C. § 112, ¶ 6.<br><br>Function: to interconnect the sensing node of the selected unit pixel to the sensing node of a neighboring unit pixel in response to a select signal<br><br>Structure: (as shown in FIG. 4): switching device M400 or M450 for interconnecting the sensing node of the currently selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned, in response to the row select signal. |

| '017 Patent Claim Terms | Claims | Construction |
|---|---|---|
| "selectively couplable" | 1 | This term lacks written description support<br><br>*Alternatively:*<br><br>"electrically couplable" |

| '017 Patent Claim Terms | Claims | Construction |
|---|---|---|
| "in response to a select signal" | 7 | "a signal that is applied to a select transistor of a unit pixel to couple the unit pixel to an output line" |
| "a switching device configured to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line" | 7 | This term is governed by 35 U.S.C. § 112, ¶ 6.<br><br>Function: to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line<br><br>Structure: (as shown in FIG. 4): switching device M400 or M450 for interconnecting the sensing node of the currently selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned, in response to a row select signal. |

| '574 Claim Terms | Claims | Construction |
|---|---|---|
| "select signal" | 2, 5, 7, 13, 17, 18, 19, 22, 29 | "signal for selecting a row of image sensing pixels" |
| "selectively electrically coupling" | 3, 9, 13, 24 | This term lacks written description support<br><br>*Alternatively:*<br><br>"electrically coupling" |

## PLAINTIFFS' RESPONSE RE CLOSING INSTRUCTION NO. 2
## (INTERPRETATION OF THE CLAIMS)

As there are numerous terms that are disputed between the parties and fundamental disagreements as to how those terms should be construed (i.e. whether terms should be construed as means-plus-function terms), Plaintiffs have attached a memorandum of points and authorities detailing why their proposed constructions should be adopted as part of this jury instruction.  A brief summary of the arguments presented in that MPA is included below.

As to the '163 patent (*see* II.A of the MPA), neither the "first filtering means configured for identifying a plurality of image regions …" term or the "second filtering means operatively coupled to and operatively following said first filtering means ..." terms are means-plus-function elements.  Although the limitations do use the term means, any presumption that these terms should be construed according to 35 U.S.C. § 112 ¶ 6 is overcome because the limitations recite specific and definite algorithm (in prose) that is sufficient to convey structure to a skilled artisan.  "To invoke [35 U.S.C.A. § 112, ¶ 6] the alleged means-plus-function claim element must not recite definite structure which performs the described function." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531, 41 U.S.P.Q.2d 1001 (Fed. Cir. 1996).  As the claim language itself recites this structure (an algorithm), resort to determining a recited function and corresponding structure is unnecessary, and the term should be given its plain an ordinary meaning (which is the meaning set forth in Plaintiffs' claim construction).

Alternatively, should the Court elect to construe the term as a means-plus-function term, the Court should adopt Plaintiffs' recitation of the recited function and corresponding structure.  As to the function, Plaintiffs' recited function aligns with the claim language, and isolates the function performed verses how that function is performed.  *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed. Cir. 2005) (rejecting "construction [that] confuses function with structure").  As to the structure, Plaintiffs' corresponding structure is the structure that is necessary to perform

the function.  *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*, 561 F. App'x 934, 941 (Fed. Cir. 2014) (explaining that corresponding structure should be "what was necessary to perform the claimed function . . . and nothing more.") Defendants' proposed function and structure do not adhere to the language of the claims and add additional structure that is not only not necessary to perform either Plaintiffs or Defendants recited functions, but also departs from how the invention is described in the specification.

As to the other terms for the '163, in each instance, each should be construed according to its plain and ordinary meaning.  These terms are easily understood and (as Defendants own proposed construction shows) any attempts at explicit construction would be merely an exercise in redundancy.  Moreover, Defendants proposed constructions violate basic canons of claim construction by reading language out of the claims or by reading additional limitations into the claims from the specification.  *See Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, LP, 616 F.3d 1249, 1257 (Fed. Cir. 2010) ("[c]laims must be 'interpreted with an eye toward giving effect to all terms in the claim"); *Innogenetics N.V. v. Abbott Labs.*, 512 F.3d 1363, 1370 (Fed. Cir. 2008)  (holding that courts should not "at any time import limitations from the specification into the claims").

As to the '312/'017/'574 patents (*see* II.B of the MPA), this Court should similarly reject Defendants attempts to narrow the claims beyond their appropriate scope. Defendants contend that the "switching devices" terms should be construed as means plus function claims—however, because they do not use the word "means" they are presumptive not construed as means function terms, and what's more, but (as with the '163 patent terms discussed above), these limitations recite more than sufficient structure to remove them from the § 112 ¶ 6 arena.  These terms should instead be construed according to their plain meaning.  The same is true for all of the other terms proposed for construction by Defendants—in each instance, the language to be construed is readily understood and Defendants attempt to depart from that plain language by reading in additional limitations or by ignoring the claim language.

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

1         Lastly, as to the '335 patent (*see* II.C of the MPA), Defendants ignore the Court's

2 order on summary judgment by asserting that steps (a)-(f) of claim 1 must be performed

3 in order "without any overlap."  In contrast to Defendants' proposed construction, the

4 Court stated that "[t]he Court thus construes the method steps in claim 1 to mean that

5 they perform in sequence but is not persuaded that the steps *necessarily* overlap."  (D.I.

6 305 at 21.)  The remaining terms require no construction for the same reasons as

7 discussed above.  The claim language Defendants ask this Court to construe is easily

8 understood, and Defendants attempt to depart from that plain meaning by introducing

9 ambiguity into the claims and inserting limitations from embodiments in the specification

10 where neither the claim language or the specification suggest that the claim should be

11 read so narrowly.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

## PLAINTIFFS' CLOSING INSTRUCTION NO. 3
## (MEANS-PLUS-FUNCTION CLAIMS—LITERAL INFRINGEMENT)

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in some claims. A means-plus-function requirement only covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of those specific structures that perform the claimed function. A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

For purposes of this trial, I have interpreted each means-plus-function requirement for you and identified the structure in the patent specification that corresponds to these means-plus-function requirements. Specifically, I have determined that:

For the '163 patent,[5]

(1) As to the "first filtering means," the corresponding structure is a "linear matched filter" and equivalents thereof that performs the function of "identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern."

(2) As to the "second filtering means," the corresponding structure is a "non-linear filter" and equivalents thereof that performs the function of "screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern."

---

[5] Plaintiffs' position is that the asserted '163 patent claims do not include means-plus-function terms, i.e., that the terms that are listed in this instruction should not be construed under 35 U.S.C. § 112 ¶ 6. If the Court agrees, this portion of the instruction should be removed. However, if the Court disagrees, Plaintiffs note their objection to such construction, and provide the structures listed in the body of this instruction as an alternative construction under § 112 ¶ 6.

For the '312 patent,[6]

    (3) As to the "switching device," the corresponding structure is a transistor (e.g., M400, M450) and equivalents thereof that performs the function of "interconnect[ing] a sensing node of a selected unit pixel to a sensing node of a neighboring unit pixel in response to a select signal."

For the '017 patent,[7]

    (4) As to the "switching device," the corresponding structure is as a transistor (e.g., M400, M450) and equivalents thereof that performs the function of "interconnect[ing] a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line."

    In deciding if Plaintiffs have proven that Defendants' products include structure covered by a means-plus-function requirement, you must first decide whether the products have any structure that performs the function I just described to you. If not, the claim containing that means-plus-function requirement is not infringed.

    If you find that the Defendants' accused products do have structure that performs the claimed function, you must then determine whether that structure is the same as or

---

[6] Plaintiffs' position is that the asserted '312 patent claims do not include means-plus-function terms, i.e., that the terms that are listed in this instruction should not be construed under 35 U.S.C. § 112 ¶ 6. If the Court agrees, this portion of the instruction should be removed. However, if the Court disagrees, Plaintiffs note their objection to such construction, and provide the structures listed in the body of this instruction as an alternative construction under § 112 ¶ 6.

[7] Plaintiffs' position is that the asserted '017 patent claims do not include means-plus-function terms, i.e., that the terms that are listed in this instruction should not be construed under 35 U.S.C. § 112 ¶ 6. If the Court agrees, this portion of the instruction should be removed. However, if the Court disagrees, Plaintiffs note their objection to such construction, and provide the structures listed in the body of this instruction as an alternative construction under § 112 ¶ 6.

equivalent to the structure I have identified in the specification. If they are the same or equivalent, the means-plus-function requirement is satisfied by that structure of the accused product and the other requirements of the claim are satisfied, the accused product infringes the claim.

In order to prove that a structure in the accused product is equivalent to the structure in the patent, Plaintiffs must show that a person of ordinary skill in the art would have considered that the differences between the structure described in the patent and the structure in the accused product are not substantial. The Plaintiffs must also show that the structure was available on the date the patent was granted.

In order to determine whether the structure in the accused products is equivalent to the structure in the specification, you must consider the overall structure in the accused products that corresponds to the claimed function. You must not do a component-by-component comparison of the structure in the accused products to the structure in the specification because the individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. This means that structures with different numbers of parts may still be equivalent.

SOURCE: 3221 Closing Instructions (Dkt. 511); NDCA, 3.3b; *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267-68 (Fed. Cir. 1999)

# NIKON'S OBJECTION TO PLAINTIFFS' CLOSING INSTRUCTION NO. 3 (MEANS-PLUS-FUNCTION CLAIMS—LITERAL INFRINGEMENT)

Nikon objects because the proposed instruction does not construe the means-plus-function terms correctly, including because it does not identify the structure(s) disclosed in the specification.  Further, Plaintiffs' proposed constructions improperly include "equivalents" as part of the structure.

Independent claim 15 of the '163 patent includes  two means-plus-function terms. The presumption that these limitations should be treated under 35 U.S.C. § 112(6) is not rebutted, because nothing in the terms "first filtering means" and "second filtering means" is understood by one of ordinary skill in the art to disclose a sufficiently definite structure.  (Darrell Decl. ¶¶ 58, 63 (ECF No. 153-25); *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348.)  In similar contexts, courts have found terms such as "filter means" to be means-plus-function limitations.  *See e.g.*, *Source Search Techs., LLC v. Lending Tree, LLC*, 2006 U.S. Dist. LEXIS 79651, at *26 (D.N.J. Oct. 16, 2006).

Plaintiffs' proposed structure, "Linear matched filter," is inadequate as too broad, because it does not include all the structure in the specification that actually performs the "correlate" and "identify[] a plurality of image regions" functions. (Darrell Decl. ¶ 61, ECF No. 153-25; *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1119 (Fed. Cir. 2002) ("corresponding structure must include all structure that actually performs the recited function.").)

The correct instruction is provided below.

(1) "First filtering means" is a means-plus-function limitation.  The corresponding structure is "linear matched filter 56, programmed to employ an algorithm described at 7:10-21 and 7:44-53," and performs the multiple function of "identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern" and "correlate said image with a reference image pattern to select said image regions."

1    (2) "Second filtering means" is a means-plus-function limitation. The
2    corresponding structure is "non-linear filter 66 programmed to employ an algorithm
3    described at 7:64-8:7," and performs the multiple function of "screening said image
4    regions to select a candidate region that has a high likelihood of containing said target
5    image pattern" and "examine a grayscale characteristic of said image regions as a
6    determination factor in selecting said candidate region from among said image regions."

7    The term "switching device" as found in claim 7 of both the '312 and '017 patents
8    is also a means-plus-function limitation. The recited function is to "interconnect the
9    sensing node of the selected unit pixel to the sensing node of a neighboring unit pixel in
10   response to a select signal," while the corresponding structure is "(as shown in FIG. 4):
11   switching device M400 or M450 for interconnecting the sensing node of the currently
12   selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned,
13   in response to the row select signal."

14   Nikon additionally objects because Plaintiffs' proposed Instruction does not
15   provide any meaning of what the structure actually is. Specifically, the following
16   paragraph does not include any meaning of what the structure is: "If you find that the
17   Defendants' accused product does have structure that performs the claimed function,
18   you must then determine whether that structure is the same as or equivalent to the
19   structure I have identified in the specification. If they are the same or equivalent, the
20   means-plus-function requirement is satisfied by that structure of the accused product and
21   the other requirements of the claim are satisfied, the accused product infringes the claim."

22   Finally, in the 3221 trial, the Court explicitly removed the following paragraph,
23   which Plaintiffs have again tried to insert here: "In order to determine whether the
24   structure in the accused product is equivalent to the structure in the specification, you
25   must consider the overall structure in the accused product that corresponds to the
26   claimed function. You must not do a component-by-component comparison of the
27   structure in the accused product to the structure in the specification because the
28   individual components, if any, of an overall structure that corresponds to the claimed

25

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

function are not claim limitations. This means that structures with different numbers of parts may still be equivalent."

For these reasons, Nikon contends that the proper instruction is the Federal Circuit Bar Association, Model Patent Jury Instruction, B.2(2.3a),which is included in Nikon's Proposed Instructions.

**PLAINTIFFS' RESPONSE RE CLOSING INSTRUCTION NO. 3**
**(MEANS-PLUS-FUNCTION CLAIMS—LITERAL INFRINGEMENT)**
**(General)**

As a preliminary note, Plaintiffs have made certain non-substantive changes the wording of their listing of the structure and function in its proposed construction for clarity and consistency.

This is the same instruction that was given by the Court in the 3221 case, with the 7083 patents inserted to replace those tried in 3221, and with a paragraph added at the end to address the holding in *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267-68 (Fed. Cir. 1999). *Compare* Plaintiffs' Closing Instruction No. 6, above *with* Court's Instruction Number 6 in the 3221 case (17-cv-03221 D.I. 511 at 7-8.).

Defendants raise the same general objections that they did in the 3221 case, and where their objections were correctly overruled. (17-cv-03221 D.I. 358 at 39) (objecting on same bases, i.e., allegedly not identifying structure and equivalents). These objections should be overruled again here.

The *Odetics* instruction correctly instructs the jury to consider whether the overall structure is satisfied exactly or equivalently under § 112(6). The proposed instruction is based on the holding taken directly from that case. *Odetics, Inc. v. Storage Tech.*, 185 F.3d 1259, 1268 (Fed. Cir. 1999) ("The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function. This is why structures with different numbers of parts may still be equivalent under § 112, ¶ 6, thereby meeting the claim limitation. … The component-by-component analysis used by the district court finds no support in the law.").[8]

---

[8] *Compare Odetics*, 185 F.3d at 1268 *with* proposed instruction given above ("In order to determine whether the structure in the accused product is equivalent to the structure in the specification, you must consider the overall structure in the accused product that corresponds to the claimed function. You must not do a component-by-component

**('163 Patent)**

Plaintiffs dispute that the '163 patent contains terms to be construed as means-plus-function terms.  Plaintiffs have addressed this objection and Defendants' arguments regarding "first filtering means" and "second filtering means" fully in Plaintiffs' Response Regarding Closing Instruction No. 4 ("Interpretation of the Claims") above, and incorporate that response here.  Plaintiffs also addressed this issue in their opposition to Defendants' motion for summary adjudication.  (D.I. 185-9 at 15-20.)

**('312 / '017 Patent)**

Plaintiffs dispute that the '312 or '017 patent contains terms to be construed as means-plus-function terms.  Plaintiffs have addressed this objection and Defendants' arguments regarding the "switching device" terms fully in Plaintiffs' Response Regarding Closing Instruction No. 4 ("Interpretation of the Claims") above, and incorporate that response here.

comparison of the structure in the accused product to the structure in the specification because the individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations.  This means that structures with different numbers of parts may still be equivalent.").

## PLAINTIFFS' CLOSING INSTRUCTION NO. 4

### (INFRINGEMENT)

There are several ways to infringe a patent.

*First*: One may directly infringe a patent;

*Second*: One may induce others to infringe a patent in which case the person inducing infringement is liable for infringement in the same manner as a direct infringer; and

*Third*: One may contribute to the infringement of a patent by another by supplying a component specially designed for the invention, in which case, both the direct infringer and the contributing infringer will be liable for patent infringement.

Plaintiffs allege that Defendants have directly infringed the '163, '335, '312, '017, and '574 patents and continue to do so. Plaintiffs also allege that Defendants have actively induced infringement of the '163, '335, '312, '017, and '574 patents by others and continue to do so. Plaintiffs further allege that Defendants contributed to the infringement of the '163, '335, and '574 patents by others and continue to do so.

The burden of proof is on Plaintiffs to prove:

First: that Plaintiffs own the patents-in-suit;[9] and

Second: that Defendants infringed at least one claim of the patents-in-suit.

Plaintiffs must prove this by a preponderance of the evidence. In other words, Plaintiffs must persuade you that it is more likely than not that Defendants have

---

[9] The Court denied Plaintiffs' summary judgment motion on ownership.  However, the Plaintiffs continue to assert that ownership is established as a matter of law and include this element of proof only because their motion was denied on this issue.  If the ruling is reversed or modified, Plaintiffs reserve the right to eliminate this element of proof.

1
2

infringed.[10]SOURCE: 3221 Closing Instructions (Dkt. 511); Fed. Jury Prac. & Instr. ("FJPI"), § 158:20; 35 U.S.C. § 271.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

26
27
28

---

[10] Defendants' license defense relating to the Sony image sensors under the '335 patent was the subject of summary judgment briefing.  The Court denied Defendants' motion on this issue. Accordingly, an instruction should be added making clear that it is Defendants' burden to prove their license defense.

# NIKON'S OBJECTION TO PLAINTIFFS' CLOSING INSTRUCTION NO. 4 (INFRINGEMENT)

Nikon objects to this Instruction because Plaintiffs have incorrectly (and without explanation) modified the Court's instruction from the 3221 case.  First, the Court explicitly removed the following paragraph in the 3221 case: "*Third*: One may contribute to the infringement of a patent by another by supplying a component specially designed for the invention, in which case, both the direct infringer and the contributing infringer will be liable for patent infringement."   Here, as in the 3221 case, Plaintiffs have no evidence of any contributory infringement.

Moreover, Plaintiffs make no effort to distinguish between the three separate Nikon defendants: Nikon Corp., Nikon Inc., and Sendai Nikon Corp.  As explained in Nikon's pleadings and other papers, Sendai Nikon has *zero* contacts with the U.S.[11]

Additionally, Plaintiffs inexplicably amended the Court's Instruction regarding the second requirement for infringement, namely, in the 3221 case, the Court read the following: "Second: that Defendants infringed at least one claim of the patents-in-suit by making, using, offering for sale, or selling the invention within the United States, or importing the invention into the United States, before the patent expired."

Here, Plaintiffs amended this to read as: "Second: that Defendants infringed at least one claim of the patents-in-suit."  Plaintiffs have provided no reason for amending this paragraph from the Court's instruction in the 3221 case.  (*See* ECF No. 511 at 9.)

Additionally, Plaintiffs removed the following sentence from the Court's instruction in the 3221 case:  "Third: Defendants acted without permission of Plaintiffs." Again, Plaintiffs provide no reason for deleting this paragraph from the Court's instruction in the 3221 case.  *See* ECF No. 511 at 9.

In the final paragraph, Plaintiffs amended the Court's instruction in the 3221 case to read: "Plaintiffs must prove this by . . ." whereas in the 3221 case the Court stated:

---

[11] As in the 3221 case, if Plaintiffs fail to prove contributory infringement, this Instruction should not be read.

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

1    "Plaintiffs must prove *these things* by . . . ." This is an important distinction because
2    Plaintiffs must prove all three elements, not merely one of them.

3          With regard to inducement, this Instruction fails to make clear that inducement
4    requires a direct infringer.

5          Finally, Nikon objects because Plaintiffs' proposed instruction incorrectly recites
6    the law on contributory infringement. "[I]ndirect infringement, which can encompass
7    conduct occurring elsewhere," *see Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302–03 (Fed.
8    Cir. 2012), requires underlying direct infringement in the "United States." *Power*
9    *Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013).
10   Moreover, "Section 271(c) has a territorial limitation requiring contributory acts to occur
11   in the United States." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006).

12         As proposed by Nikon, the proper instruction is the Instruction the Court read
13   during the 3221 trial but with the following sentence added: "The contributing act must
14   occur in the United States."

15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

# PLAINTIFFS' RESPONSE RE CLOSING INSTRUCTION NO. 4
## (INFRINGEMENT)

1. "*Third*: One may contribute to the infringement of a patent by another by supplying a component specially designed for the invention, in which case, both the direct infringer and the contributing infringer will be liable for patent infringement."  This statement is necessary because contributory infringement is a live issue in the 7083 case and Plaintiffs will put on evidence to establish this form of infringement. Plaintiffs' experts have specifically opined on contributory infringement.

2. Sendai Nikon:  Although Plaintiffs have a meritorious case of indirect infringement against Sendai Nikon, they will dismiss Sendai Nikon purely to simplify the issues at trial.  That moots Defendants' objection.  Plaintiffs' do not understand Defendants to be objecting to the court referring to Nikon Corporation and Nikon Inc. collectively as "Defendants" or "Nikon."  Plaintiffs note that Defendants do the same in their proposed instructions.

3. "Defendants infringed at least one claim of the patents-in-suit by making, using, offering for sale, or selling the invention within the United States, or importing the invention into the United States, before the patent expired.": The use of this phrase would, in the context of the present litigation, be legally incorrect, confusing, and unnecessary.

The phrase Nikon seeks to include is legally incorrect and confusing to the jury.  It states the test for a form of *direct* infringement under 35 U.S.C. § 271(a).  However, Plaintiffs have also accused Defendants of indirect infringement, including by inducement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c).  Under these theories, Defendants can infringe the claims of the patents in suit *without* "making, using, offering for sale, or selling the invention within the United

States," and thus Nikon's statement that Plaintiffs must prove these to prove infringement is legally wrong and will confuse the jury.

The phrase Nikon seeks to include is also unnecessary, since the requirements for both direct and indirect infringement are set out in subsequent instructions.

4. "Third: Defendants acted without permission of Plaintiffs." This statement is legally wrong and confusing in the context of the present case. The only possible "permission" at issue in this case is Defendants' license defense, and is *Defendants'* burden to prove that, not Plaintiffs'. *See, e.g.*, *Spindelfabrik Suessen-Schurr v. Schubert & Salzer*, 903 F.2d 1568, 1576 (Fed. Cir. 1990) ("As the proponents of the [license] defense, it was incumbent upon [Nikon] to show that the license authorized the sale of the infringing machines in the United States."); *Rockwell Int'l Corp. v. United States*, 31 Fed. Cl. 70, 77 (1994) ("[D]efendant has the burden of proof to show the existence of a license and the scope of any such license." (*citing Intel Corp. v. United States ITC*, 946 F.2d 821, 828 (Fed. Cir. 1991)); *Promega Corp. v. Life Techs. Corp*, No. 10-00281, Dkt. 498 (W.D. Wi. Feb. 3, 2012) ("The Court of Appeals for the Federal Circuit consistently and repeatedly has described a license as an affirmative defense to a claim for infringement, which the defendant has the burden to prove.") (collecting cases). Thus, regardless of the instruction given in the 3221 case, Defendants' position invites reversible error by placing the burden of permission (e.g., license) on the Plaintiffs. Such an instruction, imposing the burden of proof on this issue on the burden of proof on the Plaintiffs, would be legally incorrect, prejudicial, and confusing. This is not an element of the Plaintiffs' proof and should not be included in the instruction.

5. "This" vs. "these things": In the last paragraph, the phrases "Plaintiffs must prove *this* by . . ." and "Plaintiffs must prove *these things* by . . . ." mean the same thing. Defendants' objection is form over substance.

6. <u>Inducement and contributory infringement</u>: Defendants' objections to the references to inducement and contributory infringement go to the elements of these infringement theories and will be addressed in connection with the subsequent instructions that specifically lay out those elements.  The present instruction is not the appropriate place to discuss all the elements of these theories and any attempt to so will necessarily be redundant, incomplete, and confusing to the jury.

1
2

## PLAINTIFFS' CLOSING INSTRUCTION NO. 5
## (DIRECT INFRINGEMENT—LITERAL INFRINGEMENT)

3   Once the patent is issued, the owner of the patent has a right to exclude others
4   from making, using, offering for sale, or selling the patented invention throughout the
5   United States for a term of 20 years from the date of the filing of the patent application.
6   Thus, direct infringement of a patent occurs when a person makes, uses, offers for sale,
7   or sells the patented invention anywhere in the United States, or imports the patented
8   invention into the United States, without the owner's permission while the patent is in
9   force. To determine whether there is an infringement you must compare the allegedly
10  infringing product with the scope of the patent claims.

11  Plaintiffs may prove their claim of direct infringement for each patent-in-suit and
12  for each of Defendants' products by demonstrating that the product literally infringes at
13  least one claim contained in the patent. In order for you to find that one of Defendants'
14  products literally infringes a claim, you must find that each and every element of the
15  patent claim is found in Defendants' product. In other words, a product literally infringes
16  a patented claim when the same combination of elements found in the patent claim can
17  also be found in the product.

18  With regard to method claims, Plaintiffs can prove their claim of direct
19  infringement by demonstrating that Defendants practice all the steps of the claimed
20  method.  Plaintiffs can prove direct infringement of the method claims by showing that
21  Defendants conditioned participation in an activity or receipt of a benefit by someone
22  else upon that other party performing the steps of the patented method, and that
23  Defendants established the manner or timing of that performance. In making your
24  determination, you must consider each claim separately. Only one claim of a patent must
25  be infringed for there for be infringement of a patent. Plaintiffs are only required to
26  establish by a preponderance of the evidence that one claim is infringed.

27
28

Plaintiffs are not required to prove Defendants had the intent to literally infringe the patent or that they knew that their acts infringed the patent. Good faith is not a defense to a claim of patent infringement.

If you find that Defendants' product does not literally infringe any claim of Plaintiffs' patents-in-suit, then you must determine whether it infringes that claim under the doctrine of equivalents.

SOURCE: 3221 Closing Instructions (Dkt. 511); FJPI, § 158:22; *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915 (2014); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015).

## NIKON'S OBJECTION TO PLAINTIFFS' CLOSING INSTRUCTION NO. 5
## (DIRECT INFRINGEMENT—LITERAL INFRINGEMENT)

Nikon objects Plaintiffs added the following paragraph without providing a specific citation: "With regard to method claims, Plaintiffs can prove their claim of direct infringement by demonstrating that Defendants practice all the steps of the claimed method. <u>Plaintiffs can prove direct infringement of the method claims by showing that Defendants conditioned participation in an activity or receipt of a benefit by someone else upon that other party performing the steps of the patented method, and that Defendants established the manner or timing of that performance.</u> In making your determination, you must consider each claim separately. Only one claim of a patent must be infringed for there for be infringement of a patent. Plaintiffs are only required to establish by a preponderance of the evidence that one claim is infringed." (emphasis added).

With respect to the underlined portion above, again, Plaintiffs provide no citation for this assertion. To the extent Plaintiffs intend to rely on case law pertaining to joint infringement, such case law is inapplicable in this case.

Additionally, Plaintiffs' Instruction does not make clear that the claimed method must have been used in the U.S. in order to find infringement.

Plaintiffs inexplicably deleted the following paragraph from the Court's instruction in the 3221 case: "In making your determination, you must consider each claim separately. Not all of the claims of a patent must be infringed before a patent is infringed. Plaintiffs are only required to establish by a preponderance of the evidence that one claim is infringed." This paragraph must be included in order to properly instruct the jury that just because one claim may be infringed, not all claims are necessarily infringed.

In the penultimate paragraph, the following sentence is legally incorrect: "Good faith is not a defense to a claim of patent infringement." This should read as "Good faith is not a defense to a claim of **direct** patent infringement." Knowledge and intent are required for claims of indirect infringement.

1    Nikon further objects because the Court held that Nikon cannot literally infringe
2    the '335 patent.   (ECF No. 295.) As such, Plaintiffs only accuse the '335 patent of
3    infringement under the doctrine of equivalents.  Accordingly,  Nikon objects to the extent
4    that Plaintiffs attempt to assert a claim of literal infringement of the '335 patent.

5    Additionally, in  the last paragraph, it should read "Defendants product*s*" plural,
6    rather than "Defendants' product" because Plaintiffs have accused over 100 products.
7    3.5 (Prosecution History Estoppel as a Limit to Doctrine of Equivalents).

8    Nikon further objects because this jury instruction will tend to confuse the jury
9    because Plaintiffs' proposed instruction fails to describe two important limiting
10   exceptions to the doctrine of equivalents: prosecution history estoppel and ensnarement.

11   Prosecution history estoppel prevents applying the doctrine of equivalents to reach
12   subject matter relinquished by the patent applicant during prosecution.  *Festo Corp. v.*
13   *Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002); *Honeywell Int'l Inc. v.*
14   *Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004) (en banc); *Festo Corp. v. Shoketsu*
15   *Kinzoku Kogyo Kabushiki Co.*, Ltd., 344 F.3d 13599 (Fed. Cir. 2003) (en banc).

16   Additionally, Nikon contends the D5600, D500, D600, D750, D800, D800E,
17   D810, D810A, D3300, D5300, D5500, D7000, D7500, and D850 Nikon cameras are
18   subject to a license agreement and therefore cannot infringe the '335 Patent. Accordingly,
19   it is necessary to read an instruction regarding Nikon's license defense, as proposed by
20   Defendants.

21   Given these issues, Nikon proposes that the Court read the Northern District of
22   California, Model Patent Jury Instruction, B.3 (3.2) (Direct Infringement"), (3.3) (Literal
23   Infringement) and 3.5 (Prosecutiolic History Estoppel as a Limit to Doctrine of
24   Equivalents) (Jan. 2018).

25

26

27

28

## PLAINTIFFS' RESPONSE RE CLOSING INSTRUCTION NO. 5
## (DIRECT INFRINGEMENT—LITERAL INFRINGEMENT)

1. "<u>Plaintiffs can prove direct infringement of the method claims by showing that Defendants conditioned participation in an activity or receipt of a benefit by someone else upon that other party performing the steps of the patented method, and that Defendants established the manner or timing of that performance.</u>"

First, this instruction is necessary because—as Plaintiffs' experts have specifically opined—Defendants directly infringe by conditioning participation in an activity or receipt of a benefit (e.g. the ability to take pictures using Nikon cameras) by someone else (e.g. end-users of Nikon cameras among others) upon that other party performing the steps of the patented method (e.g. the claimed methods), and Defendants established the manner or timing of that performance (e.g. via their design, sales, marketing, and other activities relating to the accused products).  This is an important instruction that should be read to the jury.

Second, this instruction correctly states the law and Nikon's objection to the use of this language is meritless.  The Federal Circuit stated this rule in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015), which Plaintiffs expressly cited.  There, the Federal Circuit held that:

> "We will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.
>
> To determine if a single entity directs or controls the acts of another, we continue to consider general principles of vicarious liability. … We conclude, on the facts of this case, that **liability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance.  In those instances, the third party's actions are attributed to the alleged infringer such that the alleged infringer becomes the single actor chargeable with direct**

> ***infringement***. Whether a single actor directed or controlled the acts of one or more third parties is a question of fact, reviewable on appeal for substantial evidence, when tried to a jury."

797 F.3d at 1023.  Here, Plaintiffs have alleged and will put forward evidence that Nikon "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance," and thus is "responsible for others' performance of method steps," which in turn is sufficient to establish "liability under § 271(a)."

Nikon's apparent argument that this law ***only*** applies to cases of "joint infringement"—i.e. where the directing or controlling entity also happens to practice at least one claim step—has no legal basis (Nikon provides no citation).  The Federal Circuit's logic in *Akamai* is not so limited.  The Federal Circuit "consider[s] general principles of vicarious liability" "[t]o determine if a single entity directs or controls the acts of another." *Id.*  If it does, then the court "will hold an entity responsible for others' performance of method steps." *Id.*  Nothing here turns on whether the directing or controlling entity also happens to practice one claim step. On the contrary, the Federal Circuit goes on—immediately after the passage quoted above—to separately lay out an "alternative" "joint enterprise" form of infringement:

> "***Alternatively***, where two or more actors form a joint enterprise, all can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor."

*Id.* This confirms that "directs or controls" liability applies regardless of whether or not there is joint infringement.

2. <u>Connection to United States</u>: Nikon's objection that the instruction does not state the necessary connection to the United States is incorrect.  The instruction states: "direct infringement of a patent occurs when a person makes, uses, offers for sale, or sells the patented invention anywhere ***in the United States***, or imports the patented

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

1  invention ***into the United States***….." There is no reason to repeat this language multiple

2  times in the instruction

3      3. <u>Infringement by one claim</u>: Nikon's objection that the proposed instruction fails

4  to instruct that only one claim need be infringed is incorrect.  The instruction specifically

5  states "[o]nly one claim of a patent must be infringed for there for be infringement of a

6  patent. Plaintiffs are only required to establish by a preponderance of the evidence that

7  one claim is infringed."

8      4. <u>"Good faith is not a defense to a claim of patent infringement."</u>  Nikon's

9  suggestion to insert the word "direct" before "patent infringement" (which was not done

10  in the 3221 case) is unnecessary since this whole instruction plainly deals only with direct

11  patent infringement and the requirements for indirect patent infringement are set out in

12  other instructions.

13      5. <u>Literal infringement of, e.g., claim 2 of the '335 patent</u>:  Nikon misstates the

14  Court's holding regarding no literal infringement.  This holding does not apply to at least

15  claim 2 (and claims that depend from it).  For these claims, the court expressly held that

16  "the steps overlap in claim 2" (ECF 305 at 21.)  Where the claimed steps can overlap,

17  there is a genuine dispute of material fact as to literal infringement.  Plaintiffs' expert, Dr.

18  Carley, opined at length that there is literal infringement if the claimed steps can overlap

19  even under the court's construction of "turning on" and "turning off," Nikon did not

20  argue otherwise in the motions for summary judgment, and the court did not resolve that

21  question.

22      6. <u>"Defendants' product"</u>: Plaintiffs do not believe that it is necessary to revise the

23  last paragraph to read "Defendants product***s***" plural, rather than "Defendants' product"

24  but would not object to such a revision.

25      7. <u>"Limitation on doctrine of equivalents"</u>: Nikon's proposal to instruct the jury

26  regarding alleged limitations on the doctrine of equivalents is legally improper, confusing,

27  and unnecessary.  First, any such limitations would be questions of law of the court, not

28  questions of fact for the jury and are thus legally incorrect.  Second, Defendants do not

1   identify what limitations they propose to add and in any case they are incorrect as a matter

2   of law that any such limitations apply (to any term where DOE is asserted) given the

3   prosecution histories and specifications of the patents in suit.  Third, this instruction does

4   not lay out the requirements for doctrine of equivalents in the first place and thus it would

5   be confusing to add such language here.

6        8. License defense: Nikon's license defense should be denied as a matter of law.

7   However, without waiving any rights or objections, should the court send this defense to

8   trial, this instruction already indicates that direct infringement requires practicing the

9   patent without permission.  For example, it says that: "direct infringement of a patent

10   occurs when a person makes, uses, offers for sale, or sells the patented invention

11   anywhere in the United States, or imports the patented invention into the United States,

12   without the owner's permission while the patent is in force."  Nikon can explain its

13   contention as to why it has permission without needing additional instruction.

14        However, if the court finds that an additional instruction should be given on

15   Nikon's license defense, then Plaintiffs request that the Court present the following

16   simple instruction:

17        "Defendants contend that those of its cameras that use Sony-branded image
        sensors do not infringe the '335 patent because of a license to Sony.  Plaintiffs
18        contend that the Sony license does not authorize Defendants' activities under
19        the '335 patent.  Defendants have the burden of proving this license defense by
20        a preponderance of the evidence."

21

22

23

24

25

26

27

28

# PLAINTIFFS' CLOSING INSTRUCTION NO. 6
## (CONTRIBUTORY INFRINGEMENT)

Plaintiffs also argue that Nikon Corp., Nikon Inc., and Sendai Nikon have contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

In order for there to be contributory infringement by Nikon Corp., Nikon Inc., and Sendai Nikon, someone other than Nikon Corp., Nikon Inc., and Sendai Nikon must directly infringe a claim of the '163, '335, and '574 patents; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '163, '335, or '574 patents, then contributory infringement exists if:

Nikon supplied an important component of the infringing part of the product or method that infringes the patent;

The component is not a common component suitable for non-infringing use; and Nikon supplied the component with the knowledge of the '163, '335, or '574 patents and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the product or method that infringes the patent, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

SOURCE: N.D. Cal. 3.6 (provided by Defendants in 3221, Dkt. 489)

# NIKON'S OBJECTION TO PLAINTIFFS' CLOSING INSTRUCTION NO. 6 (CONTRIBUTORY INFRINGEMENT)

As in the 3221 case, if Plaintiffs fail to provide any evidence of contributory infringement, this Instruction should not be read.

Nikon further objects because Plaintiffs' proposed instruction incorrectly recites the law on contributory infringement. "[I]ndirect infringement, which can encompass conduct occurring elsewhere," *see Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1302–03 (Fed. Cir. 2012), requires underlying direct infringement in the "United States". *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013). Moreover, "Section 271(c) has a territorial limitation requiring contributory acts to occur in the United States." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006).

As such, Nikon agrees that this Instruction should be used, but with the addition of the following sentence, "The contributing act must occur in the United States," which is consistent with settled law. *See, e.g., DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006).

# PLAINTIFFS' RESPONSE RE CLOSING INSTRUCTION NO. 6
## (CONTRIBUTORY INFRINGEMENT)

Nikon's objection to an instruction that it proposed in the 3221 case is meritless.

1. <u>Evidence of contributory infringement</u>: Plaintiffs here are accusing Defendants of contributory infringement and Plaintiffs' experts have opined upon it.  Plaintiffs intend to present evidence of contributory infringement at trial.  Accordingly, this instruction is necessary and should be read.

2. <u>Underlying direct infringement</u>: The instruction correctly states that, for contributory infringement to exist, there must be direct infringement.  The requirements for direct infringement, including the necessary connection to the United States, are laid out in the instructions on direct infringement.  It would be a waste of time, as well as confusing to the jury, to repeat them here.

3. <u>Sale, offer, or importation in U.S.</u>: The instruction read as a whole accurately conveys the requirement that contributory infringement requires a sale, offer for sale, or importation into the United States.  Defendants' proposed additional statement is confusing (e.g. the jury would have to be further instructed what the "contributing act" means), is not in keeping with the language of the statute, and is not clear that the act can be a sale, offer for sale, or importation.  *See* 35 U.S.C. § 271(c) ("Whoever offers to sell or sells within the United States or imports into the United States a component …").

Accordingly, if the court is inclined to add an additional statement of this requirement, the language of the statute should be used.  Specifically, the court should modify the following sentence from the first paragraph of the instruction as follows:

"Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims <u>by offering to sell or selling it within the United States or importing it into the United States</u>."

# PLAINTIFFS' CLOSING INSTRUCTION NO. 7
## (WILLFUL INFRINGEMENT)

In this case, Plaintiffs argue that Defendants (Nikon Corp., Nikon Inc., and/or Sendai Nikon) willfully infringed Plaintiffs' '163, '335, '312, '017, and '574 patents.

To prove willful infringement, Plaintiffs must persuade you that the Defendants infringed a valid claim of Plaintiffs' '163, '335, '312, '017, or '574 patent. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Plaintiffs must persuade you that it is more likely true than not true that Defendants intentionally ignored or recklessly disregarded that claim. You must base your decision on Defendants' knowledge and actions at the time of infringement. Evidence that Plaintiffs had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that Defendants engaged in additional conduct evidencing deliberate or reckless disregard of Plaintiffs' patent rights.

In deciding whether Defendants willfully infringed, you should consider all of the facts surrounding the infringement including: whether Defendants intentionally copied Plaintiffs' patented technology in developing the accused product; whether Defendants knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Defendants had a reasonable belief that at the time of infringement that its products did not infringe the asserted patent or that the patent was invalid.

Although there was no obligation on Defendants to have obtained an opinion of counsel, you may consider whether Defendants relied on a legal opinion that was well-supported and believable and that advised Defendants: (1) that the Defendants' cameras did not infringe Plaintiffs' patent or (2) that the patent was invalid.

SOURCE: N.D. Cal., 3.8

## NIKON'S OBJECTION TO PLAINTIFFS' CLOSING INSTRUCTION NO. 7 (WILLFUL INFRINGEMENT)

Nikon objects to this instruction because Plaintiffs have failed to plead willful infringement, and whether willful infringement can be discussed at trial is the subject of Nikon's Motion in *Limine* No. 8. (ECF No. 228-1.) Specifically, Plaintiffs' Complaint seeks a finding that this case is "exceptional," but it never accuses Nikon of willful infringement. (*See* 7083 Complaint; 3221 FAC.) This fact alone should preclude Plaintiffs from introducing evidence of willful infringement, as "California federal courts have required plaintiffs to plead pre-suit knowledge in order to [pursue] willful infringement." *Unilin Beheer B.V. v. Tropical Flooring*, No. CV 14-02209 BRO (SSX), 2014 U.S. Dist. LEXIS 85955, at *17-18 (C.D. Cal. June 13, 2014). As the Federal Circuit has noted, "willfulness [generally] will depend on an infringer's prelitigation conduct because a patentee must have a good faith basis for alleging willful infringement." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2016) (citation omitted).

Here, not only did Plaintiffs fail to allege willful infringement; Plaintiffs' Complaint also failed to allege any pre-filing acts by Nikon relating to willful infringement. This Instruction should therefore not be read.

## PLAINTIFFS' RESPONSE RE CLOSING INSTRUCTION NO. 7
### (WILLFUL INFRINGEMENT)

This instruction is appropriate. As explained in Plaintiffs' opposition to Nikon's Motion in *Limine* 8, Nikon misstates the pleadings and the law. As the case Nikon relies on explains, "California federal courts have required plaintiffs to plead *presuit knowledge* in order to adequately plead willful infringement." *Unilin Beheer B.V. v. Tropical Flooring*, No. CV 14-02209 BRO (SSX), 2014 U.S. Dist. LEXIS 85955, at *17-19 (C.D. Cal. June 13, 2014) (emphasis added). There, the Court founding the plaintiff's pleadings sufficient where the plaintiff alleged that they sent warning letters to certain defendants before the case was filed. *Id.* Here, Plaintiffs' complaint also clearly alleges that Defendants knew their products infringed the asserted patents before the filing of the complaint in the 7083 case. (*See* D.I. 1, ¶¶ 55 ("Nikon Corporation had actual notice of the '163 patent at least upon the filing or service on Defendants of the Complaint in the 3225 case and/or of the Complaint in the ITC case."); *see also* D.I. 1, ¶¶ 59, 62, 77, 81, 85, 100, 103, 106.)

Moreover, Defendants' own discovery requests directed towards presuit knowledge and willfulness show Defendants knew willful infringement was at issue in the case. Finally, Defendants are pursuing theories that they did not plead, such as their license defense, and cannot now complain about plaintiffs' pleadings. (Compare D.I. 35 (not asserting a license defense) with D.I. 153.2 at 12–15 (asserting a license defense).) If willfulness infringement instruction is not read on this ground so too should Defendants' license defense instruction.

**PLAINTIFFS' CLOSING INSTRUCTION NO. 8**

**(INVALIDITY OF PATENT)**

Defendants claim the patents-in-suit are invalid because they lack novelty and/or nonobviousness. A patent is presumed to be valid and so Defendants have the burden to establish the invalidity of the patent by clear and convincing evidence.

The elements to a valid patent are (1) novelty and (2) nonobviousness. Defendants claim the each of the patents-in-suit should not have been granted because one or more of the elements is not present. In order to prove invalidity of a patent-in-suit. Defendants must show by clear and convincing evidence that one of these elements is not present in that patent.

If you find by clear and convincing evidence that any of the patents-in-suit lacks novelty or nonobviousness, then you should find that patent invalid and render a verdict for Defendants.

Defendants must prove invalidity separately for each claim by clear and convincing evidence. In other words, Defendants must persuade you that it is highly probable that each claim is invalid.

SOURCE: 3221 Closing Instructions (Dkt. 511); FJPI § 158:60.

1
2

# NIKON'S OBJECTION TO PLAINTIFFS' CLOSING INSTRUCTION NO. 8 (INVALIDITY OF PATENT)

3    Nikon objects because Plaintiffs' proposed Instruction is incomplete and
4    inaccurate as it makes no mention of 35 U.S.C § 112 and non-cited prior art.  Failure to
5    "fairly and adequately cover" core legal principles of the case is reversible
6    error.  *See ExxonMobil Corp. v. S. Cal. Edison Co.*, No. 16-56027, 2018 U.S. App. LEXIS
7    895, at *3 (9th Cir. Jan. 12, 2018).

8    Additionally, the following two sentences are vague and could mislead a jury: "The
9    <u>elements</u> to a valid patent are (1) novelty and (2) nonobviousness. Defendants claim the
10   each of the patents-in-suit should not have been granted because one or more of the
11   <u>elements</u> is not present."  (underline added).  In the second sentence, it is not clear
12   whether the word "elements" is referring to the elements of novelty and nonobviousness
13   in the preceding sentence, or whether the second sentence is an allusion to the written
14   description requirement.

15   For these reason, Nikon has proposed additional separate instructions on
16   Invalidity-Burden of Proof, based on Northern District of California, Model Patent Jury
17   Instruction, B.4.1(4.1a); Invalidity-Perspective of One of Ordinary Skill in the Art," based
18   on Northern District of California, Model Patent Jury Instruction, B.4.1(4.1b); and the
19   Written Description, based on Federal Circuit Bar Association, Model Patent Jury
20   Instruction, B.4.2 (4.2a) (July 2016); 35 U.S.C. § 112(2).

21
22
23
24
25
26
27
28

## PLAINTIFFS' RESPONSE RE CLOSING INSTRUCTION NO. 8
## (INVALIDITY OF PATENT)

Plaintiffs' proposal is in all relevant ways identical to the instruction the court gave in the 3221 case.  Nikon's objection that the instruction is "incomplete and inaccurate" because it does not mention Nikon's defenses under 35 U.S.C § 112 (e.g. written description) is meritless.  As in the 3221 case, there are separate instructions addressing these defenses.

As to Nikon's objection that the court must instruct the jury regarding "non cited prior art," it provides no citation for that position, and it is wrong as a matter of law.  No such instruction was given in the 3221 case. Nikon's proposal in this regard is incorrect for the reasons discussed in Plaintiffs Objection to Nikon's Closing Instruction on INVALIDITY—BURDEN OF PROOF, which is incorporated here by reference. Other Courts have rejected Nikon's proposal. *See, e.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 07-CV-331, 2013 WL 4458754, at *10–12 (D. Nev. Aug. 16, 2013), *aff'd*, 769 F.3d 1371 (Fed. Cir. 2014), *vacated on other grounds and remanded*, 136 S. Ct. 1923 (2016), *and aff'd in part*, 831 F.3d 1369 (Fed. Cir. 2016).

Finally, Nikon's assertion that the use of the word "elements"—the same word that the court used in the 3221 case and appears in the sample instruction Plaintiffs have cited—is "vague and … mislead[ing]" is incorrect.  "These elements" clearly refers to the elements described above.  Written description is addressed in a separate instruction.

**PLAINTIFFS' CLOSING INSTRUCTION NO. 9**

**(ANTICIPATION—GENERALLY)**

Defendants claim that one or more patented claims are invalid because they lack novelty in that those claims were anticipated by prior art. In order to prevail on this defense, Defendants must prove anticipation by clear and convincing evidence.

In order for a claim to have been anticipated, you must find the earlier invention completely embodied the same process or product as the patented claim and all the elements listed in the patented claim were previously found in exactly the same situation and united in the same way to perform the identical function. Each and every element of the patented claim must have been either inherent or expressly disclosed in a single prior invention or in a single prior art reference.

You may not combine two or more items of prior art in order to find anticipation.

A person who applied for a patent on a method or process is conclusively presumed to know about the prior art, including all the same or similar existing machines, articles of manufacture, methods or processes that are disclosed in patents issued or publications made prior to the date of the person's alleged invention.

The person is also presumed to have actual or constructive knowledge of all the same or similar machines, articles of manufacture, methods or processes that are publicly known, or used by anyone, at any time more than one year prior to the date of his application for a patent. Inventions previously patented, or publicly described, or publicly known are conclusively characterized as the "prior art."

If you do not find these requirements have been met, then the patented claims are not invalid because of anticipation or lack of novelty.

If you find these requirements have been met, you should then consider whether Defendants have satisfied its burden of proving how the patented claims were anticipated.

SOURCE: 3221 Closing Instructions (Dkt. 511); FJPI § 158:68; *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299 (Fed. Cir. 2009).

# NIKON'S OBJECTION TO PLAINTIFFS' CLOSING INSTRUCTION NO. 9 (ANTICIPATION-GENERALLY)

Nikon objects to this Instruction because Plaintiffs' proposed Instruction is unnecessarily complicated and will tend to confuse the jury. Instructions that can communicate the same ideas with less words and that would not be "taxing for even the most conscientious juror's attention span" are preferred. *See Macy's, Inc. v. Strategic Marks, LLC*, No. 11-6198 SC, 2014 U.S. Dist. LEXIS 168376, at *1-6 (N.D. Cal. 2014) (finding parties' complicated instructions "unacceptable" and vacating trial).

If the Court decides to give Plaintiffs' instruction, Nikon requests that the court also add Fed. Jury Prac. & Instr.,§ 158:61, "Conditions that invalidate patent" which clearly recites 102(a) in the first paragraph.

Nikon requests that the Court give their proposed alternative Instruction on anticipation, based on Federal Circuit Bar Association, Model Patent Jury Instruction, B.4.3b-1 (July 2016).

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

1    **PLAINTIFFS' RESPONSE RE CLOSING INSTRUCTION NO. 9**

2    **(ANTICIPATION-GENERALLY)**

3    In the 3221 case, which had a very similar structure, the Court gave the same

4    instruction that is currently proposed by the Plaintiff. 3221 Case, D.I. 511, at p. 17. There

5    is no reason to deviate here. The instruction is not confusing and is a proper recitation

6    of the law.

7    The Court's Order for Jury Trial directs counsel to use the 9th Circuit's

8    instructions, where applicable, or the Federal Jury Practice Instructions. Because the

9    Ninth Circuit's model patent instructions have been withdrawn, Plaintiffs have looked to

10   the 6th edition of the Federal Jury Practice and Instructions at § 158:68. Plaintiffs

11   proposed instruction is consistent with § 158:68. This instruction presents the issue of

12   anticipation in a neutral, factual manner. Defendants' proposed instruction provides

13   reasons why a patent may be found invalid, but fails to properly frame the standard for

14   finding anticipation. Clean and convincing evidence is a high bar in light of the

15   presumption of validity to which a patent is entitled, and Plaintiffs' instruction properly

16   frames the law for the jury.

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

## PLAINTIFFS' CLOSING INSTRUCTION NO. 10

### (WRITTEN DESCRIPTION REQUIREMENT)

The patent law contains certain requirements for the part of the patent called the specification. Nikon Corp., Nikon Inc., and Sendai Nikon contend that that one or more patented claims are invalid because the specifications of the patents do not contain an adequate written description of the invention.

To succeed, Nikon Corp., Nikon Inc., and Sendai Nikon must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.  The disclosure of a species may be sufficient written description support for a later claimed genus including that species.  A broad claim is more likely to have written description support if results in the field are relatively predictable.

SOURCE: 3221 Closing Instructions (Dkt. 511); *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1124-25 (Fed. Cir. 2004).

**NIKON'S OBJECTION TO PLAINTIFFS' CLOSING INSTRUCTION NO. 10 (WRITTEN DESCRIPTION REQUIREMENT)**

Nikon objects because this instruction fails to take into account settled law, specifically that for means-plus-function claims, the original disclosure must "describe the invention, with all its claimed limitations," including structure. *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

Nikon objects to the final two sentences: "The disclosure of a species may be sufficient written description support for a later claimed genus including that species. A broad claim is more likely to have written description support if results in the field are relatively predictable." These sentences do not come from any model instruction and are likely to confuse the jury with terms such as "genus/species."

Nikon has proposed an alternative instruction, as found in Federal Circuit Bar Association, Model Patent Jury Instruction, B.4.2 (4.2a) (July 2016); 35 U.S.C. § 112(2).

## PLAINTIFFS' RESPONSE RE CLOSING INSTRUCTION NO. 10
## (WRITTEN DESCRIPTION REQUIREMENT)

Plaintiffs' proposed instruction is very similar to the instruction that Defendants proposed in the 3221 case. *See* 3221 Case, D.I. 359 at 98-99; *see also* 3221 Case, D.I. 486 at 4 (Plaintiffs agree to Defendants' proposed construction for WRITTEN DESCRIPTION in D.I. 359).

Contrary to Defendants' assertion, there is no need to include additional information regarding means-plus-function claims in this instruction because means-plus-function claims are addressed in other instructions, including INTERPRETATION OF THE CLAIMS and MEANS-PLUS-FUNCTION CLAIMS. Further, Defendants' proposed construction does not address the issue raised by Defendants regarding structure. In fact, Defendants' proposed instruction is essentially the same as the instruction it proposed in the 3221 case with the addition only of a description of the patent application process in the second paragraph. Plaintiffs do not believe this addition adds anything that would benefit the jury's understanding of the written description requirement.

Additionally, Plaintiffs have (in response to Nikon's objections and recent developments in the case) added well-settled law concerning written description to the instructions: "The disclosure of a species may be sufficient written description support for a later claimed genus including that species. A broad claim is more likely to have written description support if results in the field are relatively predictable." *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1124-25 (Fed. Cir. 2004).

## PLAINTIFFS' CLOSING INSTRUCTION NO. 11
## (REASONABLE ROYALTY—DEFINITION)

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a reasonable royalty is to determine what is called an "ongoing royalty" or "running royalty." To calculate a running royalty, you must first determine the "base," that is, the product on which the alleged infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate," which may be a dollar value per unit of product including within the base or a percentage applied to each such product that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200

nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1% per nail, then the total royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the total royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate running royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.

Another way to calculate a royalty is to determine a one-time lump sum payment that the alleged infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from payment of an ongoing or running royalty because, with an ongoing or running royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the alleged infringer pays a single price for a license covering both past and future infringing sales.

SOURCE: 3221 Closing Instructions (Dkt. 511).

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

## NIKON'S OBJECTION TO PLAINTIFFS' CLOSING
## INSTRUCTION NO. 11
## (REASONABLE ROYALTY—DEFINITION)

Plaintiffs have modified the Court's Instruction from the 3221 case by adding the entire last three paragraphs of their proposed Instruction (*i.e.* the Court's instruction from the 3221 case ended with "[a]lthough evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.").

In this case, the dispute over damages is largely identical to that in the 3221 case: Plaintiffs request a running royalty and Nikon avers that any damages would be a lump-sum. Thus, there is no reason to depart from the Court's Instruction in this case. Accordingly, Nikon requests that the Court read its instruction from the 3221 case.

## PLAINTIFF'S RESPONSE RE CLOSING INSTRUCTION NO. 11
## (REASONABLE ROYALTY—DEFINITION)

Plaintiffs believe that additional instructions may better allow the jury to understand the complex subject of patent damages.  As with the 3221 case, Plaintiffs have suggested additional paragraphs which further elucidate how different methodologies of damages may be calculated and applied (such as a running royalty vs. a lump sum paymentWhile Plaintiffs are mindful that the Court would wish to minimize the instructions provided to the jury, Plaintiffs feel that these additional instructions—in which Defendants have not identified any error—would be beneficial to the jurors as they lay out how damages may be applied in this case.

Dated:  October 19, 2018          FISH & RICHARDSON P.C.

By:   */s/ Christopher S. Marchese*

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel:  (213) 533-4240, Fax: (858) 678-5099

Frank Scherkenbach (SBN 142549)
scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted Pro Hac Vice)
glitzenstein@fr.com
Proshanto Mukherji (Admitted *Pro Hac Vice*)
mukherji@fr.com
Jeffrey Shneidman (Admitted *Pro Hac Vice*)
shneidman@fr.com
Elizabeth G.H. Ranks (Admitted *Pro Hac Vice*),
ranks@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel:  (617) 542-5070, Fax: (617) 542-8906

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Olga I. May (SBN 232012)
omay@fr.com
Markus D. Weyde (SBN 285956) weyde@fr.com
K. Nicole Williams (SBN 291900)
nwilliams@fr.com
Jared A. Smith (SBN 306576)
jasmith@fr.com
Oliver J. Richards (SBN 310972)
orichards@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070, Fax:   (858) 678-5099

Jennifer Huang (Admitted *Pro Hac Vice*)
jhuang@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel:  (612) 335-5070, Fax:   (612) 288-9696

Andrew R. Kopsidas (Admitted *Pro Hac Vice*)
kopsidas@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Ste. 1000
Washington, DC 20024
Tel:  (202) 783-5070, Fax: (202) 783-2331

Attorneys for Plaintiffs, CARL ZEISS AG and
ASML NETHERLANDS B.V.

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

## <u>CERTIFICATE OF SERVICE</u>

1

2       The undersigned hereby certifies that a true and correct copy of the above and

3  foregoing document has been served on October 19, 2018, to all counsel of record who

4  are deemed to have consented to electronic service via the Court's CM/ECF system per

5  Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail,

6  facsimile and/or overnight delivery.

7

8                                          */s/ Christopher S. Marchese*
                                           Christopher S. Marchese
9                                          marchese@fr.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' DISPUTED JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)