VINCENT J. BELUSKO (CA SBN 100282)
VBelusko@mofo.com
HECTOR G. GALLEGOS (CA SBN 175137)
HGallegos@mofo.com
JONATHAN M. SMITH (CA SBN 292285)
JonathanSmith@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

JACK W. LONDEN (CA SBN 85776)
JLonden@mofo.com
DIANA B. KRUZE (CA SBN 247605)
DKruze@mofo.com
SHAELYN DAWSON (CA SBN 288278)
Shaelyndawson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
NIKON CORPORATION and NIKON INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS, B.V., <br> Plaintiffs, <br> v. <br> NIKON CORPORATION, SENDAI NIKON CORPORATION, and NIKON INC., <br> Defendants. | Case No. 2:17-cv-07083 RGK (MRWx) <br><br> **DEFENDANTS NIKON CORPORATION AND NIKON INC.'S CLAIM CONSTRUCTION BRIEF IN RESPONSE TO PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLOSING INSTRUCTION NO. 2 (INTERPRETATION OF THE CLAIMS) (ECF 385-1)** <br><br> Trial Date: November 6, 2018 <br> Courtroom: 850, 8th Floor <br> Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. ARGUMENT .....................................................................................................1

    A. The '163 Patent ...........................................................................................1

        1. First / Second Filtering Means.........................................................1

            a. Nikon's Construction Is Correct ......................................1

            b. Plaintiffs Fail to Overcome the Strong Presumption that "Means" Terms are Governed By § 112 ¶ 6 ..............3

            c. Plaintiffs' Alternative Construction Is Divorced from the '163 Patent ..................................................................6

                (i) Plaintiffs' Proposed Function is Wrong.................7

                (ii) Plaintiffs' Proposed Structure is Wrong ................9

                (iii) Plaintiffs' Criticism of Nikon's Proposed Structure is Wrong ...............................................10

        2. Remaining Terms in the '163 Patent ...........................................13

    B. The '312/'017/'574 Patents........................................................................13

        1. The "Switching Device" Terms....................................................13

            a. "Device" is a Nonce Word and Subject to § 112 ¶ 6. .....13

            b. Plaintiffs' Alternative Structure Is No Structure at All...14

        2. The "Select Signal" Terms ..........................................................14

        3. The "Selectively" Terms ..............................................................17

    C. The '335 Patent .........................................................................................18

        1. The Court Found that Steps (a) – (f) of Claim 1 Are Performed in Order and Do Not Overlap ...................................18

        2. "Fully depleting the first and second photodiodes" .................20

        3. "Adjusting a turn-on time and a turn-off time for the first and second transfer transistors".......................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*800 Adept, Inc. v. Murex Secs., Ltd.,*
   539 F.3d 1354 (Fed. Cir. 2008) ........................................................................ 17

*Alcon Research, Ltd. v. Apotex Inc.,*
   687 F.3d 1362 (Fed. Cir. 2012) ........................................................................ 20

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,*
   296 F.3d 1106 (Fed. Cir. 2002) .......................................................................... 9

*Ferring B.V. v. Watson Labs., Inc.-Fla.,*
   764 F.3d 1401 (Fed. Cir. 2014) ........................................................................ 20

*Greenberg v. Ethicon Endo-Surgery, Inc.,*
   91 F.3d 1580 (Fed. Cir. 1996) ............................................................................ 5

*Intamin, Ltd. v. Magnetar Techs., Corp.,*
   483 F.3d 1328 (Fed. Cir. 2007) ........................................................................ 19

*Konami Gaming, Inc. v. Marks Studios, LLC,*
   No. 2:14-CV-01485-JAD-CWH,
   2017 WL 3174905 (D. Nev. July 25, 2017) ....................................................... 8

*Koninklijke Philips N.V. v.Wangs Alliance Corp.,*
   No. 14-12298-DJC,
   2017 WL 6329616 (D. Mass. Dec. 11, 2017) ..................................................... 6

*Laitram Corp. v. Rexnord, Inc.,*
   939 F.2d 1533 (Fed. Cir. 1991) ..................................................................... 5, 12

*LifeScreen Sciences, LLC v. Cordis Corp.,*
   No. 6:13-CV-091,
   2014 WL 3956486 (E.D. Tex. Aug. 12, 2014) ................................................... 6

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................... 13, 20

*Rodime PLC v. Seagate Tech., Inc.,*
   174 F.3d 1294 (Fed. Cir. 1999) .......................................................................... 4

*Skky, Inc. v. MindGeek S.A.R.L.*,
    859 F.3d 1014 (Fed. Cir. 2017),
    *cert. denied*, 1385 S. Ct. 1693 (2018) ..................................................................... 4

*St. Isidore Research, LLC v. Comerica Inc.*,
    No. 2:15-CV-1398-JRG-RSP,
    2016 WL 4988246 (E.D. Tex. Sept. 19, 2016) ........................................................ 8

*In re Swinehart*,
    439 F.2d 210 (C.C.P.A. 1971) ............................................................................ 4, 9

*TecSec, Inc. v. IBM Corp.*,
    731 F.3d 1336 (Fed. Cir. 2013) ............................................................................. 4

*TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*,
    375 F.3d 1126 (Fed. Cir. 2004) ............................................................................. 4

*Verint Sys. Inc. v. Red Box Recorders Ltd.*,
    166 F. Supp. 3d 364 (S.D.N.Y. 2016) ................................................................... 8

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) ........................................................................ 2, 13

**Other Authorities**

35 U.S.C. § 112 ¶ 6.............................................................................................*passim*

Merriam-Webster's Collegiate Dictionary (10th ed.) ........................................... 13

# I.   INTRODUCTION

Nikon opposes the constructions in Plaintiffs' Closing Jury Instruction No. 2 ("Interpretation of the Claims").  As shown below, Nikon's constructions conform to the patents and the Court's previous order, while Plaintiffs' constructions do not.

# II.   ARGUMENT

## A.   The '163 Patent

### 1.   First / Second Filtering Means

The parties dispute the construction of the following terms in claim 15:

- "first filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern, said filtering means being configured to correlate said input image with a reference image pattern to select said image regions, said reference image pattern being indicative of said target image pattern";

- "second filtering means operatively coupled to and operatively following said first filtering means for screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern, said second filtering means being configured to examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions."

There is a strong presumption that claim terms using the word "means," such as the "filtering means" terms above, are subject to § 112 ¶ 6.  Nikon's constructions state the exact structures from the specification that conform to these "filtering means."  Plaintiffs fail to overcome the presumption that § 112 ¶ 6 applies, because the claim terms themselves are stated in functional, *not* structural, language.

### a.   Nikon's Construction Is Correct

The "first filtering means" and "second filtering means" are claim terms written in classic means-plus-function form.  They each recite the function to be performed by the claimed "means."  (ECF No. 212-2 ("Darrell Decl.") ¶¶ 58-60,

63-65.)  Given the patentee's reliance on the classic means-plus-function language, it is the specification that provides the structures to perform these functions.  *See, e.g.*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347-48 (Fed. Cir. 2015).

Claim 15 uses functional language to recite the functions performed by the "first filtering means" and "second filtering means."  The claim states that these "means" are "configured" to provide certain functionality, but the claim lacks the structure to provide that functionality.  The claimed functions of the "first filtering means" are "identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern" ("Identifying Function") and "correlate said input image with a reference image pattern to select said image regions" ("Correlate Function").  (Darrell Decl. ¶¶ 58-59.)  The claimed functions of the "second filtering means" are "screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern" ("Screening Function") and "examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions."  ("Examine Function") (*Id*. ¶¶ 63-64.)

Nikon's constructions of these "means" are the structures set forth in the specification to perform the recited functions.  The "first filtering means" is the "linear matched filter 56, programmed to employ an algorithm described at 7:10–21 and 7:44–53."  (Darrell Decl. ¶ 60.)  The "second filtering means" is the "non-linear filter 66, which is programmed to employ an algorithm described at 7:64–8:7."  (*Id*. ¶ 65.)  Nikon's constructions make the "image processing system" of claim 15 structurally complete, i.e., useful "for detecting a target image pattern in an input image."  ('163 patent, 17:28–29.)  The patent teaches that the "first filtering means" performs a linear correlation on the input image using a single N×N filtering kernel to create a correlation image.  (*Id*., 2:40–42, 7:13–16; Darrell Decl. ¶ 60.)  The correlation image is sent to the processing module of the "first filtering means" to select temporary candidate regions, those that contain a local maximum in the

correlation image <u>and</u> have pixel correlation values greater than a threshold value. ('163 patent, 7:44–51; Darrell Decl. ¶ 60.)  These structures perform the Correlate and Identifying Functions above for the "first filtering means."

The patent teaches that the selected temporary candidate regions from the first filtering means are transmitted to the "second filtering means," where the non-linear filter analyzes contrast values of sub-regions in the temporary candidate regions to select, i.e., screen, those exceeding a threshold contrast value.  ('163 patent, 7:61– 8:7; Darrell Decl. ¶ 65.)  These structures perform the claimed Examine and Screening Functions above for the "second filtering means."  This analysis shows the structures identified by Nikon, or their equivalents, are necessary to perform the claimed functions.  There are no alternative structures in the '163 patent, and none identified by Plaintiffs, that perform the recited functions of the "filtering means."

**b.     Plaintiffs Fail to Overcome the Strong Presumption that "Means" Terms are Governed By § 112 ¶ 6**

Plaintiffs weakly assert that § 112 ¶ 6 should not apply, contending that the "first filtering means" and "second filtering means" set forth an algorithm.  (*See* ECF No. 385-1 ("Mem.") at 2-7.)  But, Plaintiffs cannot overcome the presumption that § 112 ¶ 6 applies because Claim 15 recites no algorithm or other structure; it only recites functions to be performed by structures in the specification.  As explained herein, Plaintiffs' failure to add structure from the specification leaves the first and second filtering means without the structure needed to serve their claimed functions.

First, without support, Plaintiffs conflate functional language in the claims with alleged algorithmic steps to be performed—with respect to the phrase "correlate said input image with a reference image pattern to select said image regions" of the first filtering means and the phrase "examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions" of the second filtering means.  (Mem. at 3.)  This is functional language defining each filtering means "by what it does[, in part,] rather than by

3

1    what it is." *In re Swinehart*, 439 F.2d 210, 212 (C.C.P.A. 1971). There are no

2    structures or algorithms in claim 15 to perform the "correlate" / "examine" functions;

3    instead, the structures are in the patent's specification. (*See* Darrell Decl. ¶¶ 56-67.)

4        Plaintiffs' reliance on *TI Group Automotive Systems (North America), Inc. v.*

5    *VDO North America, L.L.C.*, 375 F.3d 1126, 1135 (Fed. Cir. 2004) is misplaced. In

6    that case the term "pumping means" did not involve any algorithm. *TI Group*, 375

7    F.3d at 1135. And, unlike here, the claim there explicitly recited a structure to fully

8    perform its function. *Id.* By contrast, claim 15 here only recites "filtering means,"

9    which as explained below lacks structure of its own. (Darrell Decl. ¶¶ 58, 63.)[1]

10        Second, Plaintiffs assert that the Identifying and Screening Functions are

11    structures. (Mem. at 3-4.) But, Plaintiffs' expert conflates the function of an

12    algorithm with the algorithm itself. A comparison of the specific structures in

13    Nikon's constructions ('163 patent, 7:10–21, 7:44–8:7) to claim 15's functional

14    language confirms this. Dr. Darrell explains that what Dr. Mundy calls algorithms in

15    claim 15 are, in fact, the functions of the first and second filtering means, while the

16    specification provides the structures to carry them out. (*See* Darrell Decl. ¶¶ 56-67.)

17        Third, Plaintiffs' claim that the word "filtering" by itself describes a specific

18    algorithm is meritless. (Mem. at 4-5.) Plaintiffs' own expert, Dr. Mundy, confirms

19    this in his declaration and in his citation to the extrinsic Fisher reference, claiming

20    only generically that a filter "must take in as input a[n unspecified] signal, perform

21    a[n unspecified] transformation operation, and then construct [in an unspecified

---

[1] Plaintiffs also cite to other inapposite cases. (*See* Mem. at 2.) The *TecSec, Inc. v. IBM Corp.* court found "system memory" is sufficient structure to perform the general function of 'storing data.'" 731 F.3d 1336, 1348 (Fed. Cir. 2013). But, here, the skilled artisan would not understand there to be sufficient structure. (Darrell Decl. ¶¶ 58-60, 63-65.) *Skky, Inc. v. MindGeek S.A.R.L.* is also inapposite because, unlike here, "the claims [did] not recite a function . . . for the wireless device means to perform," making § 112 ¶ 6 inapplicable. 859 F.3d 1014, 1020 (Fed. Cir. 2017), *cert. denied*, 1385 S. Ct. 1693 (2018). Finally, *Rodime PLC v. Seagate Tech., Inc.*, did not involve an algorithm, but rather a mechanical "positioning means" for moving a component, and thus § 112 ¶ 6 did not apply because the claim recited structure. 174 F.3d 1294 (Fed. Cir. 1999). Here, Claim 15 has no such structure.

fashion] a[n unspecified] output signal as modified by the transformation operation."
(*See id*. at 5.)  That is not specific structure.  Indeed, that the "first" and "second"
filtering means" in claim 15 serve *different* filtering functions and have *different*
structures to perform their functions establishes that Plaintiffs cannot rely on the
word "filtering," standing alone, to connote structure.  There is no standard structural
meaning for the term "filtering means" in the art of image processing.[2]

Fourth, Plaintiffs argue that dependent claims 16 and 19 add structure that
should preclude treating the "filtering means" terms of independent claim 15 "as
purely functional."  (Mem. at 5-6.)  Plaintiffs are wrong as a matter of law.  In
*Laitram Corp. v. Rexnord, Inc.*, the Federal Circuit addressed this very issue and
held that the recitation of structural claim elements in dependent claims (e.g., claims
16 and 19) that depend from a mean-plus-function claim term in an independent
claim (e.g., claim 15) cannot be used to avoid the mandate of applying § 112 ¶ 6 to
the mean-plus-function term.  939 F.2d 1533, 1538 (Fed. Cir. 1991).  Though
Plaintiffs erroneously allege this would lead to incompatibility or overbreadth,
(Mem. at 6), Plaintiffs later contradict this allegation by admitting that the structural
limitations expressly recited in claims 16 and 19 are already part of the "means" of
claim 15, (*id*. at 14), like the "cross member" in *Laitram*, 939 F.2d at 1538.  Thus,
the parties agree that the structural limitations in claims 16 and 19 do not expand
claim 15's scope.  Plaintiffs thus cannot use dependent claims 16 and 19 to overcome
the presumption that § 112 ¶ 6 applies to the "filtering means" terms in claim 15.

Fifth, Plaintiffs argue that the "first" and "second" filtering means and image
pattern detector have a structural relationship with respect to one another.  (Mem. at
6.)  For example, claim 15 recites "second filtering means operatively coupled to and
operatively following said first filtering means."  ('163 patent, 17:37−38 (claim 15).)

---

[2] Plaintiffs' citation to *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583
(Fed. Cir. 1996) does not help them.  (Mem. at 5 n.5.)  There, the Court was plainly
referring to a physical "filter," *e.g.*, for a liquid, 91 F.3d at 1583, not a filter for data.

This is true.  But, this is irrelevant to whether the first filtering means and the second filtering means are individually means-plus-function claim elements subject to § 112 ¶ 6.  Plaintiffs cite no precedent that would allow operational linkages among "means" claim elements to overcome the presumption that § 112 ¶ 6 applies.

Finally, Plaintiffs' citation to two other cases, (Mem. at 6 n.6), also does not overcome the presumption that § 112 ¶ 6 applies.  In *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, the court stated that "input filter" is "a standard term of art in the field of power supplies" when it construed the term "input filter means."  No. 14-12298-DJC, 2017 WL 6329616, at *5 (D. Mass. Dec. 11, 2017).  As noted above, there is no standard term in the field of image processing that is "filtering means."  Likewise, in *LifeScreen Sciences, LLC v. Cordis Corp.*, the court found that "conical filtering means" was not subject to § 112 ¶ 6  because the qualifier "conical" and additional "extensive structure recited within the claim itself" provided sufficient structure in the field of blood filters at issue.  No. 6:13-CV-091, 2014 WL 3956486, at *8 (E.D. Tex. Aug. 12, 2014).  Claim 15 here does not have analogous structure to avoid application of § 112 ¶ 6 to "first filtering means" and "second filtering means."

### c.     Plaintiffs' Alternative Construction Is Divorced from the '163 Patent

Assuming that § 112 ¶ 6 does apply to "first" and "second" filtering means," Plaintiffs propose alternative constructions for these terms that are both divorced from the patent and overly broad.  (Mem. at 7-16.)  By contrast to Nikon's complete constructions, Plaintiffs' proposed constructions (i) fail to specify fully the functions in claim 15 for the "first" and "second" filtering means and (ii) fail to specify sufficient structure necessary for the "means" to carry out their claimed functions.

As a result, Plaintiffs must resort to creating strawmen to attack Nikon's constructions.  For example, Plaintiffs unduly criticize the structure of the "second filtering means" in Nikon's construction for having candidate regions corresponding to the "expected positions of the eyes of a human face."  (Mem. at 7, 11-12.)  Yet, as

1  Plaintiffs themselves point out (*id.* at 7), the system "can be readily modified to

2  detect a different image pattern," ('163 patent, 5:9–10).  While the '163 patent

3  discloses candidate regions corresponding to the "expected positions of the eyes of a

4  human face," that is just the example used by the patentee.  It is clear from the '163

5  patent that the system of claim 15 could equivalently use a different candidate

6  region. This is consistent with Nikon's construction of "second filtering means,"

7  which is the expressly disclosed structure and its equivalents.  (*See* Section II.A.1.a.)

8  ### (i)      Plaintiffs' Proposed Function is Wrong

9      Plaintiffs propose an incomplete function for each of the "first filtering means"

10  and the "second filtering means," as shown in the chart.  (Mem. at 8.)[3]

| Term | Defendants' Proposed Function | Plaintiffs' Proposed Function |
|---|---|---|
| "first filtering means" | (1) "identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern," and (2) "correlate said image with a reference image pattern to select said image regions." | (1) "identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern." |
| "second filtering means" | (1) "screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern," and (2) "examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions." | (1) "screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern." |

17      Plaintiffs contend that "correlate . . ." and "examine . . ." in claim 15 connote

18  algorithms used to accomplish the Identifying and Screening Functions, respectively.

19  (Mem. at 7-8.)  But, Plaintiffs provide no support for their position.  (*Id.*)  Assuming

20  "correlate…" in the claim is an algorithm, Plaintiffs fail to articulate how carrying

21  out the alleged "correlate" algorithm achieves the Identifying Function.  Likewise,

22  assuming "examine…" in the claim is an algorithm, Plaintiffs fail to articulate how

23  carrying out the alleged "examine" algorithm achieves the Screening Function.

24      The reason is simple:  Plaintiffs cannot cobble together from the claim alone

25  the structure needed to construct the "first filtering means" and the "second filtering

26

27  [3] Plaintiffs have readily identified a claimed function to be performed by the "first filtering means" and a different claimed function to be performed by the "second

28  filtering means," (Mem. at 7-8), which undermines their arguments that these claim terms should be construed without applying § 112 ¶ 6 at all.

1  means" using the <u>functional language</u> of the "correlate…" and "examine…"

2  limitations.  Rather, they baldly circumvent the § 112 ¶ 6 requirement to identify

3  structures in the specification that perform the Correlate and Examine Functions.

4  　　　To attempt to justify their identification of the "correlate…" and "examine…"

5  limitations as alleged structural algorithms, Plaintiffs resort to parsing a (too) fine

6  distinction between "configured for" and "configured to" in claim 15.  (Mem. at

7  7-8).  According to Plaintiffs, the phrase "configured for" introduces the <u>verb</u>

8  <u>gerunds</u> "identifying" and "screening," alleged to identify <u>functions</u>, while the phrase

9  "configured to" introduces the <u>verb roots</u> "correlate" and "examine," alleged to

10  identify <u>structures</u>.  (*Id*. at 8-9.)  Plaintiffs are attempting to prove too much.

11  Common sense, the claim language, and case law dictate that both "configured for"

12  and "configured to" identify functions performed by the claimed "filtering means."

13  　　　The decision in *Konami Gaming, Inc. v. Marks Studios, LLC*, No. 2:14-CV-

14  01485-JAD-CWH, 2017 WL 3174905, at *4 & n.36 (D. Nev. July 25, 2017) is

15  instructive.  The *Konami* court found that the term "game controller" in the

16  following limitation was a means-plus-function claim element: "a game

17  controller *configured to* initiate the instance of the game"; and "the game controller

18  being further *configured to* replace each of the symbols."  *Id.* at *4 (emphasis in

19  original).  The court found that replacing "game controller" with "computer means"

20  provided "a 'black box' term for carrying out processing functions without any

21  definite structure."  *Id.*  The claim language in *Konami* is analogous to the claim 15

22  terms in this case.  But this case is actually stronger because there is a presumption

23  that § 112 ¶ 6 applies to the "filtering means configured to" terms in claim 15.

24  　　　Other cases have also found that an element "configured to" achieve a purpose

25  is a means-plus-function claim element.  *See Verint Sys. Inc. v. Red Box Recorders*

26  *Ltd*., 166 F. Supp. 3d 364, 374 (S.D.N.Y. 2016) ("analysis module configured to

27  receive an identifier . . ." is subject to § 112, ¶ 6); *see also St. Isidore Research, LLC*

28  *v. Comerica Inc*., No. 2:15-CV-1398-JRG, 2016 WL 4988246, at *14 (E.D. Tex.

Sept. 19, 2016) (finding that § 112, ¶ 6 does not apply to the term 'processor configured to . . .' terms.")

Hence, the "correlate . . ." and "examine . . ." limitations are each functional, part of the multi-functions that define each filtering means "by what it does, rather than by what it is," *In re Swinehart*, 439 F.2d at 212. (*See* Darrell Decl. ¶¶ 56-67.)

### (ii)   Plaintiffs' Proposed Structure is Wrong

Plaintiffs identify overly broad, generic structures in the specification, which are insufficient to carry out the claimed functions of the "first filtering means" and the "second filtering means." (Mem. at 9-11; *see* Darrell Decl. ¶¶ 59-61, 64-67.) Plaintiffs, therefore, have violated the principle that the "corresponding structure must include all structure that actually performs the recited function[s]." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1119 (Fed. Cir. 2002).

Plaintiffs urges the Court to construe "first filtering means" to be a generic "linear matched filter" and "second filtering means" to be a generic "non-linear filter," claiming nothing more is necessary to provide structure to the claims. (Mem. at 9-11.) In support of Plaintiffs' construction of "first filtering means," they offer the conclusory statements of Dr. Mundy, pointing only to a generic discussion of "linear systems" in the Jain textbook. (*Id.* at 10-11.) But Plaintiffs fail to explain how the "linear matched filter" alone carries out the claimed Identifying and Correlate Functions. They cannot, because their construction of "first filtering means" is an empty black box: a linear filter that needs the specific algorithm set forth in the specification of the '163 patent to provide sufficient structure. Alone, the linear matched filter is inadequate as it does not necessarily perform the Correlate Function or the Identifying Function. (Darrell Decl. ¶ 61.) And Plaintiffs' extrinsic evidence does not provide the structure that the patent's specification provides, as in Nikon's construction: linear matched filter 56, programmed to employ an algorithm described at 7:10–21 and 7:44–53. Nikon's structure is the minimum necessary to carry out the functions of the "first filtering means." (Section II.A.1.a *supra*.)

Likewise, in support of their construction of "second filtering means," Plaintiffs again offer only the conclusory statements of Dr. Mundy, who provides no specifics of how the "non-linear filter," without the structure in the specification, carries out the claimed Screening and Examine Functions. (*See* Mem. at 11; ECF No. 165-22 ¶¶ 129-41.) Plaintiffs have no explanation because their construction of "second filtering means" is an empty black box, a non-linear filter that needs the specific algorithm set forth in the patent's specification to provide sufficient structure. Alone, the non-linear filter is inadequate as it does not necessarily perform the Examine or Screening Function. (Darrell Decl. ¶ 66.) Only Nikon's construction provides the minimum structure necessary—a non-linear filter 66 programmed to employ an algorithm described at 7:64–8:7. (Section II.A.1.a *supra*.)

Plaintiffs' construction of the "first filtering means" as a "linear matched filter" and the "second filtering means" as a "non-linear filter" leaves claim 15 with insufficient structure to carry out the claimed functions, and should be rejected.

### (iii)   Plaintiffs' Criticism of Nikon's Proposed Structure is Wrong

Plaintiffs wrongly contend that Nikon's constructions include more structure from the specification than necessary to implement the recited functions for the first and second "filtering means." (Mem. at 10-15.) As shown above, Nikon's construction provides only the structure necessary to carry out the claimed functions. (Section II.A.1.a *supra*.) Plaintiffs' other criticisms are meritless. Plaintiffs' first criticism relates to candidate regions that are "the expected positions of the eyes of a human face" in the algorithm for the second filtering means. (Mem. at 11-12; '163 patent, 7:66–8:1.) Nikon addressed this criticism above: Plaintiffs ignore that different possible candidate regions are encompassed by Nikon's construction. (*See* Section II.A.1.c *supra*.) Plaintiffs' second criticism provides three reasons that Plaintiffs contend Nikon's algorithm for the "first filtering means" from the '163 patent specification is allegedly unnecessary. (Mem. at 12-14.) None have merit.

The first reason Plaintiffs allege is that Nikon has included "structure that is

not necessary structure to the function." (Mem. at 13.)  Plaintiffs criticize Nikon for including the "manner in which the 'filtering kernel is calculated'" into the structure of the "first filtering means" (*id.*), but Nikon did not intend the filtering-kernel generator or the manner in which the filter kernel is calculated to be part of "first filtering means."[4]  Plaintiffs also assert that the "correlation image" "appears out of nowhere" (Mem. at 13), but the '163 patent makes plain that the linear matched filter of the "first filtering means" performs a linear correlation on the input image using a single N×N filtering kernel to create a <u>correlation image</u>.  ('163 patent, 2:40–42, 7:13–16; Darrell Decl. ¶ 60.)  Plaintiffs also assert that transmitting the correlating image to the processing module and the processing module itself are not required for the Screening or Examine Function [of the "second filtering means"] (Mem. at 13), but <u>Nikon never said that they are</u>.  Plaintiffs confuse the "first" and "second filtering means."  The "processing module" is required for the "first filtering means" while the Screening and Examine Functions are assigned to the "second filtering means."

For its second purported reason, Plaintiffs contend that Nikon is improperly "describ[ing] just one embodiment."  (Mem. at 13.)  But, as stated above, the filtering-kernel generator itself is not part of, and is irrelevant to, Nikon's construction of the "first filtering means."  Plaintiffs also point to "a less preferred embodiment [in which] steps 114, 116, and 118 are deleted from the pre-filtering process."  (*Id.*)  As is apparent from Figure 9 and column 13, lines 8 to 13, of the '163 patent, in that less preferred embodiment "every image region of the received image is analyzed by the non-linear filter."  In other words the "first filtering means" is eliminated entirely in that embodiment, and thus <u>such embodiment is not and cannot be an embodiment of claim 15</u>.  Neither of Plaintiffs' complaints changes the claim construction analysis.  Plaintiff cannot show that Nikon's constructions of

---

[4] The first filtering means uses a filtering kernel ('163 patent, 7:15-16), but does not include the filtering-kernel generator 16 that generates the filtering kernel (id., 7:17-18, 11:8-67).  Thus, Plaintiffs' criticism is unfounded.

"first" and "second filtering means" exclude any embodiments of claim 15.

The third purported reason that Plaintiffs contend Nikon's structures are unnecessary is claim differentiation between independent claim 15 and dependent claims 16 and 19. (Mem. at 14.) But Plaintiffs try to make exactly the argument that was rejected by the Federal Circuit in *Laitram*, which entirely dispenses with Plaintiffs' claim differentiation argument. (*See* Section II.A.1.b *supra*.)

Finally, Plaintiffs urge the Court to adopt middle-ground constructions if the Court rejects Plaintiffs' constructions. (Mem. at 15.)  These are also insufficient to provide the structure necessary to carry out the claimed functions.  For the "first filtering means," Plaintiffs provide no support for their bald contention that "'a linear matched filter [that] includes a linear-convolution step and a [generic] decision step' (e.g., the language at '163 patent 7:10-13) … is more than sufficient for the 'identifying …' and alleged 'correlate …' functions." (*Id.*)  Rather, the "decision step" has to specify how to "identify[] a plurality of image regions of said input image that have a likelihood of containing said target image pattern" of claim 15. The specification clearly discloses at 7:44-53 the specific decision step needed, which includes selecting only those regions that have a local maximum in the correlation image.  (Darrell Decl. ¶¶ 60-61.)

Regarding the "second filtering means," Plaintiffs similarly provide no support for their bald contention that "'a non-linear filter that analyzes the local contrast values within predetermined subregions of the temporary candidate region' (e.g., the language at '163 patent 7:64-66)…is more than sufficient for the 'screening…' and alleged 'examine…' functions." (Mem. at 15.)  This construction on its face does not state how to analyze the contrast values to perform the required "screening." But, the specification clearly discloses from 7:64 to 8:7 the use of a threshold contrast value to perform the screening function.  (*See* Darrell Decl. ¶¶ 65-67.)  Even Plaintiffs' middle-ground constructions of the "first filtering means" and "second filtering means" are incomplete.  The Court should adopt Nikon's constructions.

### 2. Remaining Terms in the '163 Patent

Plaintiffs' agree the terms "correlating"; "correlation"; "convolution"; and "correlation image" need no construction, and should be given their plan and ordinary meaning as understood by a person of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

### B. The '312/'017/'574 Patents

#### 1. The "Switching Device" Terms

The parties dispute the meaning of the "switching device" terms, namely (1) "a switching device configured to interconnect a sensing node of a selected unit pixel to a sensing node of a neighboring unit pixel in response to a select signal" ('312 patent, claim 7); and (2) "a switching device configured to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line" ('017 patent, claim 7).

Nikon contends that these terms are subject to § 112 ¶ 6 because they use the word "device" as a nonce term that does not connote any specific structure.

##### a. "Device" is a Nonce Word and Subject to § 112 ¶ 6.

The term "device" is not defined in the '312 or '017 patent, and is not meaningful by itself. Merriam-Webster's Collegiate Dictionary (10th ed.) defines the term to mean "something fanciful, elaborate, or intricate in design." Adding "switching" in front of "device" does not reduce its vagueness. "Generic terms such as 'mechanism,' 'element,' '<u>device</u>,' and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." *Williamson*, 792 F.3d at 1350 (citation omitted). The word "device" "does not provide any indication of structure because it sets forth the same black box recitation of structure for providing the same specified function as if the term 'means' had been used." *Id.*

### b. Plaintiffs' Alternative Structure Is No Structure at All

Plaintiffs' proposed structure, "switching device, such as a transistor," is insufficient for purposes of performing the recited functions of the means-plus-function terms. The function of a transistor, by itself, is to either turn on or turn off, in response to a control signal. For example, if any of the transistors shown in Fig. 4 of the '312/'017 patents, including the transfer transistor, reset transistor, etc., are disconnected, they each perform the identical function of turning on or turning off in response to a corresponding control signal. However, when connected in a specific way, each transistor performs a very different function, such as transferring charges from a photodiode to the sensing node (transfer transistor) or resetting the sensing node (reset transistor). Similarly, M400 and M450 transistors, by themselves, do not "interconnect a sensing node of a selected unit pixel to a sensing node of a neighboring unit pixel in response to a select signal" ('312 patent, claim 7) or "interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line" ('017 patent, claim 7). By themselves, transistors M400/M450 are not any different than any other transistors in Fig. 4. In order to perform the recited functions of the means-plus-function element, M400/M450 must be configured "for interconnecting the sensing node of the currently selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned, in response to the row select signal." ('312 patent at 5:7–9.) Plaintiffs' contrary argument is simply another attempt to encompass subject matter that was not disclosed by the written description.

### 2. The "Select Signal" Terms

Nikon requests that the Court construe the "select signal" terms, which are: (1) "in response to a line select signal" ('312 patent, claim 1); (2) "in response to a select signal" (*id*., claim 7); (3) "in response to a select signal" ('017 patent, claim 7); and (4) "select signal" ('574 patent, claims 2, 5, 7, 13, 17-19, 22, 29).

1   These terms should be construed consistent with their ordinary meaning to one

2   of skill in the art and consistent with the specification and file history of the '312

3   patent.  They should be construed as: "a signal that is supplied to a select transistor

4   of a unit pixel to couple the unit pixel to an output line."  Claim 1 of the '312 patent

5   recites that a "sensing node of a unit pixel in a previous scan line is selectively

6   shared with a sensing node of a unit pixel in a current scan line in response to a line

7   select signal of the current scan line."  Claim 7 recites that the "select transistor" is

8   configured to switch an address "in response to the select signal." Figures 2 and 4 of

9   the '312 patent include select transistors used to select a scan line in a pixel array.

10   In Figure 2, select transistors M41 and M42 are driven by select signals Sx1

11   and Sx2, respectively.  As noted in the '312 patent, a select transistor in Figure 2 is

12   "for switching and addressing." ('312 patent, 1:61–62.)  In Figure 4, corresponding

13   transistors M414 and M424 are controlled by the select signals Sx1 and Sx2,

14   respectively.  In accordance with the labels n-1, and, n+1 shown in Figure 4, the

15   three unit pixels are read out sequentially from top to bottom in response to the select

16   signals Sx1, Sx2 and Sx3, respectively.  And, as noted at 4:24-35, the switching

17   device for sharing sensing nodes is also controlled "by a line select signal," and more

18   particularly, the switch M400 is driven by the "row select signal SX2" [sic Sx2].  As

19   can be seen in Figure 4 and described at 4:51-54, the row select signal Sx2 is applied

20   to transistor M424 "for switching and addresses."  Thus, in both the prior art of

21   Figure 2 (which does not have sharing of sensing nodes) and the circuit of Figure 4

22   (which does have sharing of sensing nodes), a "select signal" is the control signal

23   that is applied to a select transistor which couples a unit pixel to an output line, so as

24   to select a line (row or column).  (3221 ECF No. 182-2 ¶¶ 35-40.)

25   This is consistent with the plain and ordinary meaning.  The select signal is

26   always associated with the select transistor in connection with image sensors.  The

27   applicant emphasized this in the file history of the patent.  Claim 1, as filed, was

28   initially rejected in view of prior art.  In arguing over the prior art, applicant stated:

1    However, the sharing of the floating diffusion node for 30 according

2    to Altice, Jr. is not selective much less **based on a line select signal**.

3    In particular, according to Altice, Jr., the two pixels shown in Figs. 3

4    and 10, <u>always</u> share the floating diffusion node 430, and that such

5    sharing of the node thus cannot be selected in response to a signal,

6    ***much less by a line select signal as required by the present claim 1***.

7    (3221 ECF No. 164-16 at 448-49 (emphasis added).)  Applicant also noted in the

8    same Remarks in the history: "[A] line select signal may be, e.g., either the row

9    select signal or the column select signal [if row or column line scanning

10   respectively]." (*Id.* at 449.)  The Applicant further stated:

11   [C]laim 1 of the present application requires that the sensing node of

12   the unit pixel in a *previous* scan line, i.e., a previously selected line, is

13   shared with a sensing node of a unit pixel in a *current* scan line, i.e.,

14   the currently selected line, and that such sharing is accomplished

15   <u>selectively in response to a line select signal</u>, **i.e., the signal that**

16   **selects the current scan line**. (*Id.* at 450 (emphasis added in bold).)

17   The Applicant distinguished claim 7 over the same prior art on the basis of "in

18   response to a select signal" and referenced its claim 1 arguments. (*Id.* at 451.)

19   Therefore, "select signal" should be construed as "a signal that is supplied to a

20   select transistor of a unit pixel to couple the unit pixel to an output line."  As claimed

21   in claim 1, sensing nodes are selectively shared "in response to a line select signal."

22   And as claimed in claim 7, the switching device interconnects sensing nodes "in

23   response to the select signal."  Thus, line selection in a sensing node interconnection-

24   sharing are both controlled by the *same* control signal, i.e., the select signal.  Claim

25   7 of the '017 patent also recites the "select signal," which should be construed

26   consistently with the parent '312 patent. (ECF No. 182-2 ¶ 44.)  Similarly, claims 2,

27   5, 7, 13, 17, and 25 of the '574 patent refer to the "select signal" in one form or

28   another.  All claims should be provided a similar construction.

1      Plaintiffs' argument that Nikon imports a limitation into the claims is simply

2  wrong.  Initially, the select signal is the signal that controls the select transistor for an

3  image sensor – no improper importation is necessary for one of ordinary skill in the

4  art to understand that.  Further, applicants consistently pointed that out in the

5  specification and the file history as discussed above.  *800 Adept, Inc. v. Murex Secs.,*

6  *Ltd.*, 539 F.3d 1354, 1364-65 (Fed. Cir. 2008) (prosecution history used as support

7  for the construction already discerned from the claim language and confirmed by the

8  written description).  In seeking and obtaining construction of the underlined phrase

9  of claim 1, (which precedes the bolded phrase that Nikon seeks to construe),

10  Plaintiffs thus relied on the specification for their construction. (ECF No. 173 at 5.)

11          Wherein a sensing node of a unit pixel in a previous scan line is

12          <u>selectivey shared with a sensing node of a unit pixel in a current scan</u>

13          <u>line</u> **in response to a line select signal** of the current scan line.

14  (emphasis added).  This Court adopted the Plaintiffs' proposed construction[5] as

15  consistent with the specification, expressly relying on the specification.  (ECF No.

16  305 at 6-7.)  It is the height of hypocrisy for Plaintiffs to now argue that one looks to

17  the specification to inform the construction for one portion and not the immediately

18  following portion of the very same claim clause.

19          **3.**    **The "Selectively" Terms**

20      Nikon's position on (1) "selectively couplable" ('017 patent, claim 1); and

21  (2) "selectively electrically coupling" ('574 patent, claims 3, 9, 13, 24) has been that

22  these terms lack written description, or in the alternative take their plain and ordinary

23  meanings that require no construction.  (ECF No. 261 at 7-9.)  Nikon's position for

24  (1) was rejected by the Court, which also adopted Plaintiffs' construction of the

25  longer phrase, "the sensing node is *selectively couplable* to a sensing node of a

26

----

[5] The court construed the underlined term as "connectable via a switch with a sensing node of a unit pixel in a current scan line to selectively receive photocharges from one or more photodiodes of the unit pixel in the current scan line and not from any photodiode in the previous scan line."  (ECF No. 305 at 607.)

sensing pixel in a previous scan line."[6]  (ECF No. 305 at 8-9, 11-12 (emphasis added).)  Ironically, Plaintiffs are flip-flopping on their own prior position by now suggesting "selectively couplable," which is the most significant aspect of the construed phrase, needs no construction.  Essentially, **Plaintiffs now apparently agree with Nikon's position**.  (*See id*.)  More importantly, if "selectively couplable" needs no construction, then it necessarily follows that the longer phrase "the sensing node is selectively couplable …" also needs no construction and should be given its plain and ordinary meaning.  The same treatment should be given to the "selectively" term for claim 1 of the '312 patent. (*Id.* at 6.) Nikon requests the Court reconsider the constructions for the "selectively" terms vis-à-vis the parties' agreement that the terms be given plain and ordinary meaning and thus require no construction.

### C.    The '335 Patent

The disputed '335 patent terms are (1) whether steps (a) – (f) must be performed in order without overlap (claim 1); (2) "fully depleting the first and second photodiodes" (claim 1); and (3) "adjusting a turn-on time and a turn-off time for the first and second transfer transistors" (claim 3).[7]

#### 1.    The Court Found that Steps (a) – (f) of Claim 1 Are Performed in Order and Do Not Overlap

Consistent with the Court's Order, a plain reading of claim 1 indicates there is no overlap of the method steps.  (ECF No. 305.)  The prosecution history confirms there can be no overlap of the method steps.  In the Amendment filed on October 21, 2003, the applicants of the '335 patent specifically described the claimed method steps – making clear that the steps follow one after the other – in an effort to distinguish the cited prior art reference, Guidash.  Specifically, the application went through each step and used the terms "following, "and subsequent," "as a next step,"

---

[6] The Court construed this as "a sensing node in a current scan line is selectively connectable via a switch with a sensing node of a sensing pixel in a previous scan line to receive an electrical signal from one or more photodiodes of the sensing pixel in the current scan line and not from any photodiode in the previous scan line."
[7] No dispute remains for the "turning on" / "turning off," terms which was construed by the Court to mean "the transistors transition from on to off." (ECF No. 305 at 13.)

"next," and "finally."[8] The '335 patent specification discloses embodiments, without overlapping steps, that are covered by claim 1.  (*See, e.g.*, '335 patent, 3:64–4:37.) The fact that another embodiment, Figure 5, shows step B overlapping with other steps is of no moment.[9]  There is no requirement that the claims cover all disclosed embodiments.  *See Intamin, Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1336-337 (Fed. Cir. 2007) ("[A] claim need not cover all embodiments.").

Additionally, as the Court recognized, there can be no literal infringement because there is no "turning off" of the transfer transistors as required during steps 1(c) and 1(e).  (ECF No. 305 at 14.)  The plain meaning of the claim language and the prosecution history preclude expanding a method step to encroach (i.e., overlap) into time periods of other steps in order to capture unrelated signal transitions.  The Court's finding of non-infringement confirms that there can be no such overlap – specifically with respect to steps (c) through (e).

Dependent claim 2 cannot permit an overlap of the steps recited in claim 1 as a matter of law.  Claim 1 is the only independent claim of the '335 patent, and claims 2–12 each depend from claim 1.  That means that each of claims 2–12 has all of the steps recited in claim 1—including steps 1(c) and 1(e)—in addition to whatever steps

---

[8] "According to the method as set forth in [claim 1], <u>following</u> [a] depletion of the first and second photodiodes <u>and subsequent</u> [b] receipt of light therein for generating photoelectric charges, [c] the reset transistor is turned on, the first and second transfer transistors are turned off, the select transistor is turned on, and the reset voltage level is output through the single sensing node, the drive transistor and the select transistor.  <u>As a next step,</u> [d] the reset transistor is turned off and then the first transfer transistor is turned on *while the reset transistor remains off*; a data voltage level of the photoelectric charges generated in the first photodiode is then output. <u>Next,</u> [e] the reset transistor is turned back on, the first transfer transistor is turned off (the second transfer transistor already being off), and the reset voltage is output. <u>Finally,</u> [f] the reset transistor is turned off and the second transfer transistor is turned on *while the reset transistor remains off*, and the data voltage level of the photoelectric charges generated in the second photodiode is output. This is not shown or suggested by Guidash." (ECF No. 154-9 at NIKON708300010934-35; *see also* ECF No. 153-1 at 8-9, underlined added, italicized emphases in original ).)

[9] Figure 5 itself only shows overlap by step B.  ('335 patent, FIG. 5; ECF No. 196-1 at 3.)  Steps (c) through (f) do not overlap.  Steps (c) through (f) show a series of transistors turning on and off sequentially. The timing of these signal transitions is essential to the operation of claim 1. If the steps overlapped, they would not be performed at the right time. The steps cannot overlap to operate correctly.  (*Id.*)

appear in that particular dependent claim.[10]  *Ferring B.V.*, 764 F.3d at 1411 (dependent claim contains all limitations of claim from which it depends); *see also Alcon Research, Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1367 (Fed. Cir. 2012) ("It is axiomatic that a dependent claim cannot be broader than the claim from which it depends. . . .  A dependent claim narrows the claim from which it depends.") (internal quotations and citations omitted).  The Court found that "the patent does not disclose an overlap in claim 1."  (ECF No. 305 at 21.)  It follows that claim 2 necessarily does not permit an overlap of the steps recited in claim 1.

Nor does claim 2 describe overlapping steps.  Claim 2 further limits step (b) (and step (b) alone) of claim 1 by requiring generating photocharges while the first transfer transistor is turned off.  The claim states that this is performed "regardless of the *states* of [the other transistors]," not regardless of the other *steps*. For example, the second transfer could be either on or off during step (b) without impacting step (b).  But the transistors still need to transition to their proper states in subsequent steps, including the transfer transistors.  Thus, none of the claims permit overlap.

### 2.   "Fully depleting the first and second photodiodes"

Nikon agrees that the term "fully depleting the first and second photodiodes" needs no construction, and should be given its plan and ordinary meaning as understood by a person of ordinary skill in the art.  *Phillips*, 415 F.3d 1313.

### 3.   "Adjusting a turn-on time and a turn-off time for the first and second transfer transistors"

Nikon agrees that the term "adjusting a turn-on time and a turn-off time for the first and second transfer transistors" needs no construction, and should be given its plain and ordinary meaning.  *Phillips*, 415 F.3d at 1313.

---

[10] Accordingly, for any of claims 2–12 to be literally infringed, all of the steps recited in claim 1 must be literally satisfied—including steps 1(c) and 1(e)—in addition to whatever steps appear in that particular dependent claim.  Because the Court already held as a matter of law that steps 1(c) and 1(e) are not literally satisfied, the claims that depend from claim 1—i.e. all of the remaining claims of the '335 patent—also are not literally satisfied and therefore are not literally infringed. *Ferring B.V. v. Watson Labs., Inc.-Fla.*, 764 F.3d 1401, 1411 (Fed. Cir. 2014).

1

2    Dated:  November 1, 2018            Respectfully submitted,

3                                        MORRISON & FOERSTER LLP

4                                        By:  */s/ Vincent J. Belusko*
                                              Vincent J. Belusko
5

6                                        Attorneys for Defendants
                                         NIKON CORPORATION and
7                                        NIKON INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28