Christopher S. Marchese (SBN 170239), marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240, Fax: (858) 678-5099

Frank Scherkenbach (SBN 142549), scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted *Pro Hac Vice*), glitzenstein@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070, Fax: (617) 542-8906

Olga I. May (SBN 232012), omay@fr.com
Markus D. Weyde (SBN 285956), weyde@fr.com
K. Nicole Williams (SBN 291900), nwilliams@fr.com
Jared A. Smith (SBN 306576), jasmith@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-4745, Fax: (858) 678-5099

*[Additional Counsel listed on last page.]*

Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS B.V.,<br><br>Plaintiffs,<br><br>v.<br><br>NIKON CORPORATION and NIKON INC.,<br><br>Defendants. | Case No. 2:17-cv-07083- RGK (MRWx)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO PLAINTIFFS' DEMONSTRATIVE EXHIBITS FOR TRIAL DAY 1**<br><br>Trial Date:  November 6, 2018<br>Judge:       Hon. R. Gary Klausner<br>Courtroom:  850, 8th Floor |

I.  **INTRODUCTION**

Plaintiffs Carl Zeiss AG and ASML Netherlands B.V. ("Plaintiffs") hereby offer written response to Defendants' Objections to Plaintiffs' demonstrative exhibits for Trial Day 1 that Defendants Nikon Corporation and Nikon, Inc. ("Nikon" or "Defendants"). As will be described below, Nikon's objections should be overruled.

II. **ARGUMENT**

   A.  **Plaintiffs Should Not Be Precluded from Entering the ZX1 Camera Into Evidence, And Certainly Should Not Be Precluded from Making Any Mention of the ZX1 Camera**

Even though Nikon has had ample opportunity to inspect Zeiss's ZX1 camera, they continue to object to its introduction. As explained in Plaintiffs' response to Nikon's Motion *in Limine* No. 11, Plaintiffs should not be barred from entering the ZX1 camera into evidence because, consistent with the Federal Rules, Plaintiffs made the ZX1 camera available for inspection shortly after it became available, and Plaintiffs did so at time and place that gave Nikon more than ample opportunity to inspect the camera should it have chosen to do so. Specifically, the camera has been available for inspection in San Diego for more than three weeks, and Plaintiffs again made the camera available for inspection here in Los Angeles when Plaintiffs arrived to prepare for trial. Nikon continues to refuse to avail themselves of the opportunity to inspect the ZX1 camera. This Court should allow Nikon to benefit from its refusal to inspect the ZX1 camera when it had ample opportunity to do so.

Moreover, nothing about the ZX1 camera comes as a surprise to Nikon. As explained in Plaintiffs' opposition to Nikon's Motion *in Limine* No. 11, Nikon has taken discovery at every stage of the development of the ZX1 camera, including receiving interrogatory responses concerning the camera's features and design, inspecting various prototypes of the ZX1 throughout the development process, and taking deposition testimony concerning the design, commercialization, and release of the ZX1 camera. In fact, Dr. Singer (from Zeiss) testified all about the plan for releasing the ZX1 camera in

1

PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO PLAINTIFFS' DEMONSTRATIVE EXHIBITS FOR TRIAL DAY 1
Case No. 2:17-cv-07083-RGK (MRWx)

the 3221 trial in July and again at his deposition in this case in August. Just as previewed by Dr. Singer in his testimony, the camera was released in the last week of September of 2018.

Nikon not only seeks to exclude the ZX1 camera itself, but appears to contend that Plaintiffs should be barred from making any mention of the camera. For example, Nikon objects to the following slide simply because it shows the ZX1 camera on a timeline of Zeiss's innovations:



Exhibit D, PDX-103. The fact that Zeiss was developing a camera with a definitive plan to release it in September of 2018 was disclosed well before the close of fact discovery—indeed, Dr. Singer testified in the 3221 trial exactly on this point. *See* Exhibit A (3221 Trial Tr.) at 69:1-8 ("Q. You mentioned launch a moment ago, Dr. Singer. When do you expect the Phoenix camera to be launched? A. It will be launched in September 27 this year, and invitation for the event is already sent out to our distributors and a lot of professional photographers. And after that, there will be kind of an invitation phase, so

you can apply to buy a camera, and the full introduction to the market will be six month from now, so early 2019.")[1]

Nikon additionally objects to a demonstrative to be used with Dr. Subramanian regarding whether the Zeiss ZX1 camera practices the '312 family of patents, shown below:



Exhibit D, PDX-272. Here too, the fact that the ZX1 camera practices the asserted patents was disclosed well before the close of discovery. Indeed, as pointed out in Plaintiffs' response to Nikon's Motion *in Limine* No. 11, Plaintiffs provided an interrogatory response stating that the ZX1 camera practices the patents, and Dr. Subramanian devoted numerous pages in his opening report providing an analysis of the ZX1 camera and how it practiced the patents. (*See* D.I. 404-8; D.I. 404-5.)

There is no conceivable "ambush" here, as Nikon insists. Nikon's over-heated rhetoric is neither warranted nor accurate. Plaintiffs are seeking only to try their case according to the evidence that was disclosed in accordance with the Federal Rules.

---

[1] "Phoenix" was the internal code name for the camera during its development. The released version is called the ZX1 camera, but the "Phoenix" and ZX1 cameras are one and the same.

3
PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO PLAINTIFFS'
DEMONSTRATIVE EXHIBITS FOR TRIAL DAY 1
Case No. 2:17-cv-07083-RGK (MRWx)

Because Plaintiffs disclosed details concerning the development of and commercialization plans for the ZX1 camera (including that it practiced the patents) during discovery, and because Plaintiffs made the ZX1 camera available for inspection as soon as it was practicably able to do so and with sufficient time for Nikon to inspect the ZX1 camera, Plaintiffs should not be precluded from using the ZX1 camera, let alone referring to it at trial. Nikon's objection, and its supplemental Motion *in Limine* No. 11, should be denied.

### B. Plaintiffs Should Not Be Barred from Correctly Pointing Out that Nikon Does Not Dispute that Its Cameras Practice Certain Limitations of the Asserted Claims

Next, Nikon seeks to preclude Plaintiffs from correctly pointing out that Nikon does not dispute that the accused products practice several limitations of the asserted claims. Tellingly, Nikon does not contend that they <u>will</u> present evidence or testimony that the accused products do not meet these limitations. Nor could they, given that in their response to Plaintiffs' interrogatory on this subject Nikon did not identify any of these "undisputed" limitations as grounds for their non-infringement defense, once this Court's order interpreting the "unit pixel" / "sensing pixel" terms in these patents is accounted for.

Plaintiffs agree that it is their burden to prove infringement, and Plaintiffs intend to do just that. Indeed, the slides immediately surrounding the slides cherry-picked by Defendants provide substantive analysis as to how the accused products meet the undisputed limitations, *e.g.*:




Exhibit D, PDX-245 (showing infringement of Element (A)); Exhibit D, PDX-247 (showing infringement of Element (B)). Given the complexity of the issues in this case, it is perfectly sensible to give the jury a roadmap to where they should focus their attention. Plaintiffs should not be precluded from, in addition to showing *how* the accused products meet these limitations, providing such a roadmap by accurately reporting that Nikon does not dispute that these limitations are present in the accused products. Nikon's objection should be overruled.

### C. The '335 and '163 IPRs Are Irrelevant to Willfulness, Whereas the '574 IPR Is Directly Relevant to Defendants' Invalidity Case

Nikon next seeks "clarification" as to the admissibility of evidence relating to IPRs, contending that they should be allowed to present evidence as to the grant of institution for the '335 and '163 patents, and contending that Plaintiffs should be precluded from presenting evidence regarding the PTO's denial of institution of IPR for the '574 patent. Nikon is wrong on both counts.

First, Nikon claims it should be allowed to introduce evidence that IPR was instituted for the '335 and the '163 patents because, according to Nikon, the fact that the IPRs were instituted goes to willfulness and "supports a finding of objective reasonableness of invalidity." Obj., at 3. Although Nikon cites to the Supreme Court's decision in *Halo*, they fail to acknowledge what the Court actually decided in that case. In *Halo*, the Supreme Court rejected the Federal Circuit's test—which allowed for litigation defenses to negate a finding of willfulness—because "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016). As the Supreme Court explained, the problem with the Federal Circuit's old test was that "someone who plunders a patent—infringing it without any reason to suppose his conduct is arguably defensible—can nevertheless escape any comeuppance under § 284 solely on the strength of his attorney's ingenuity." *Id.* Thus, after *Halo*, "[p]roof of an objectively reasonable

litigation-inspired defense to infringement is no longer a defense to willful infringement." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

Here, Nikon's IPRs were filed **after** Plaintiffs had brought suit. It is undisputed that Nikon learned of, and analyzed, both the '163 and '335 patents in 2009. Evidence from 2018 concerning Nikon's litigation defenses is completely irrelevant to Nikon's state of mind either (a) when it learned of the patents and did not change its products as a result; or (b) during the entire damages period, which starts in 2012. "[I]n ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct" *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2017), *cert. dismissed*, No. 17-804, 2018 WL 3978434 (U.S. Aug. 17, 2018). Thus, these IPRs have no relevance whatsoever as to Nikon's willfulness, which must be measured "against the knowledge" Nikon had at the time of its infringement. *See Halo*, 136 S. Ct. at 1933.

Moreover, this Court has already tentatively granted Plaintiffs' Motion *in Limine* No. 2, which sought (among other things) to preclude evidence relating to institution of IPRs because, as multiple courts have found, IPR institution decisions are preliminary because "the PTO has not yet reached any conclusions regarding the validity of these patents." (D.I. 244-3.) This remains true for the '163 and '335 IPRs, and thus (even if relevant to willfulness, which they are not), these preliminary decisions by the PTAB should be excluded as unfairly prejudicial because (as this Court has already recognized) the probative value of a preliminary decision by the PTO is far outweighed by the risk the jury will misapprehend the significance of such a preliminary decision.

Second, Nikon contends that Plaintiffs should be precluded from introducing evidence concerning the **denial** of institution on Defendants' petition regarding the '574 patent. As an initial matter, a **denial** of institution is far different than a **grant** of institution, as a denial represents the PTO's final say on the matter (whereas a grant of institution does not). Thus, if relevant to issues involved in the case, a party should not be precluded from introducing evidence as to a denial of institution as the risk of

1  confusion is diminished. *See, e.g., Univ. Elecs., Inc. v. Univ. Remote Control, Inc.*, No. 12-
2  00329, 2014 WL 8096334, at *7 (C.D. Cal. Apr. 21, 2014); *Univ. Elecs., Inc. v. Univ. Remote
3  Control, Inc.*, IPR2013-00152, Paper 8 (PTAB Aug. 19, 2014) (denying institution); *see also*
4  *StoneEagle Servs., Inc. v. PayPlus Sols., Inc.*, No. 8:13-CV-2240-T-33MAP, 2015 WL 3824208,
5  at *8 (M.D. Fla. June 19, 2015) (similarly allowing introduction of a denial of institution
6  decision).

7      Here, the PTAB's denial of institution is directly relevant to Nikon's written
8  description contentions.  Although Nikon is correct that written description is not a basis
9  for the PTO to cancel claims in IPR, the Board's decision denying institution nonetheless
10 resolved written description arguments raised by Nikon, who attempted to claim that the
11 chain of priority back to a parent application was broken because of an alleged failure of
12 written description in order to assert art that did not pre-date the parent application.  *See*
13 Exhibit B (JTX-2106) at 18-29.  Despite the fact that these arguments were rejected by
14 the PTO, Defendants attempt to raise them again in this trial.  Notably, Defendants used
15 the same expert for its IPR—Dr. Stuart Kleinfelder—who will be testifying in this case.
16 *See id.* at 2.  Thus, the '574 denial of institution is at least relevant to the written description
17 defense Nikon intends to assert at trial, as well as the credibility of Nikon's expert Dr.
18 Kleinfelder.

19     That being said, Plaintiffs acknowledge that the '574 denial of institution may not
20 be relevant to this case if Nikon does not plan on raising the same argument.  Thus,
21 Plaintiffs reached out to Nikon and proposed that the parties agree to not use IPRs during
22 opening statements, but acknowledging that plaintiffs may use the '574 denial of
23 institution if it becomes relevant.  Nikon did not respond to Plaintiffs' proposal, but
24 instead filed the instant objections.  For the reasons above, the '335 and '163 IPR
25 institutions should be excluded, but the '574 denial of institution should be permitted to
26 be introduced to the extent that Nikon pursues a written description defense for the '574
27 patent in this trial.

28

**D.  Nikon's Freedom-to-Operate Search Is Directly Relevant to Willfulness and Willful Blindness**

Lastly, Nikon objects to several slides showing timelines as to when Nikon learned of the patents-in-suit, contending that "Plaintiffs clearly attempt to use this information in order to mislead the jury about marking and the notice Nikon received." Obj., at 4. As Plaintiffs explained to Nikon on the meet and confer, these slides are not about marking—rather, they go to willfulness and willful blindness, the latter being germane to indirect infringement. Indeed, both the '335 patent and the '312 family of patents are shown in the slide excerpted by Nikon, but this Court has already ruled that Nikon does not, as a matter of law, have a marking defense as to these patents. (D.I. 305, at 4-5.) Moreover, nothing on this slide even mentions marking, nor is there any mention of the HP products that Nikon contends should have been marked with the '163 patent.

As explained in Plaintiffs' response to Nikon's Motion *in Limine* No. 8 seeking to preclude evidence of willfulness and willful blindness (D.I. 349-7), which this Court tentatively denied (*see* Exhibit C (PTC transcript) at 7:3), Nikon's knowledge of the patents-in-suit, and its actions upon learning of them, are directly relevant to Plaintiffs' infringement and willfulness cases. This slide previews the evidence that Plaintiffs will present with respect to these issues and (despite Nikon's attempt to confuse the issues) has nothing to do with marking. Accordingly, Nikon's objection should be overruled.

## III.  CONCLUSION

For the reasons stated above, Nikon's objections should be overruled, and the Court should allow Plaintiffs to present their demonstratives and exhibits for Trial Day 1.

Dated: November 5, 2018

FISH & RICHARDSON P.C.

By: */s/ Oliver J. Richards*

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240, Fax: (858) 678-5099

Frank Scherkenbach (SBN 142549)
scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted Pro Hac Vice)
glitzenstein@fr.com
Proshanto Mukherji (Admitted *Pro Hac Vice*)
mukherji@fr.com
Jeffrey Shneidman (Admitted *Pro Hac Vice*)
shneidman@fr.com
Elizabeth G.H. Ranks (Admitted *Pro Hac Vice*),
ranks@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070, Fax: (617) 542-8906

Olga I. May (SBN 232012)
omay@fr.com
Markus D. Weyde (SBN 285956) weyde@fr.com
K. Nicole Williams (SBN 291900)
nwilliams@fr.com
Jared A. Smith (SBN 306576)
jasmith@fr.com
Oliver J. Richards (SBN 310972)
orichards@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070, Fax:   (858) 678-5099

Jennifer Huang (Admitted *Pro Hac Vice*)
jhuang@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel:  (612) 335-5070, Fax:   (612) 288-9696

Andrew R. Kopsidas (Admitted *Pro Hac Vice*)
kopsidas@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Ste. 1000
Washington, DC 20024
Tel:  (202) 783-5070, Fax: (202) 783-2331

Attorneys for Plaintiffs, CARL ZEISS AG and
ASML NETHERLANDS B.V.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 5, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Oliver J. Richards*
Oliver J. Richards
orichards@fr.com