Vincent J. Belusko (SBN 100282)
VBelusko@mofo.com
Hector G. Gallegos (SBN 175137)
HGallegos@mofo.com
Jonathan M. Smith (SBN 292285)
JonathanSmith@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Tel: (213) 892-5200/Fax: (213)892-5454

Jack W. Londen (CA SBN 85776)
JLonden@mofo.com
Diana B. Kruze (CA SBN 247605)
DKruze@mofo.com
Shaelyn Dawson (CA SBN 288278)
Shaelyndawson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel: (415)268-7000/Fax: (415)268-7522

Attorneys for Defendants
NIKON CORPORATION and NIKON INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS B.V., <br><br> Plaintiffs, <br><br> v. <br><br> NIKON CORPORATION, SENDAI NIKON CORPORATION, and NIKON INC., <br><br> Defendants. | Case No. 2:17-cv-07083-RGK (MRWx) <br><br> **DEFENDANTS NIKON CORP. AND NIKON INC.'S CLEAN DISPUTED JURY INSTRUCTIONS** <br><br> Trial Date: December 4, 2018 <br> Judge: Hon. R. Gary Klausner <br> Courtroom: 850, 8th Floor |

1    　　　　In accordance with the Court's Standing Order for Jury Trial (ECF No. 50),

2    Defendants Nikon Corporation and Nikon Inc. (collectively, "Defendants" or

3    "Nikon") submit their updated clean proposed jury instructions.   Nikon has

4    updated its proposed Instructions to accurately reflect the currently asserted claims.

5    Nikon has also included two additional Instructions ("Means-Plus-Function

6    Claims—Literal Infringement" and "Printed Publications") because there are live

7    disputes in the case regarding both means-plus-function claims as well as priority

8    dates.

# INDEX OF COURT'S JURY INSTRUCTIONS

| No. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| 1 | OUTLINE OF TRIAL | Federal Circuit Bar Association, Model Patent Jury Instruction, A.5 (July 2016). | 1 |
| 2 | PATENT CLAIMS | Federal Circuit Bar Association, Model Patent Jury Instruction, A.5 (July 2016). | 3 |
| 3 | INTERPRETATION OF CLAIMS | Closing Instructions from 3221 (Dkt. 511) updated to address 7083 claims per the Court's October 3, 2018 Order (ECF No. 295); N.D. Cal. Model Patent Jury Instructions (Jan. 2018) ("NDCA"), 2.1. | 4 |
| 4 | SECTION 112, PARAGRAPH 6 | Federal Circuit Bar Association, Model Patent Jury Instruction, B.2(2.3a) (July 2016); *Allvoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240 - 41 (Fed. Cir. 2007); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332-34 (Fed. Cir. 2006) | 9 |
| 5 | INFRINGEMENT | Closing Instructions from 3221 (Dkt. 511); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). | 11 |
| 6 | DIRECT INFRINGEMENT | Northern District of California, Model Patent Jury Instruction, B.3(3.2) (Jan. 2018). | 12 |
| 7 | LITERAL INFRINGEMENT | Northern District of California, Model Patent Jury Instruction, B.3(3.3) (Jan. 2018). | 14 |

| 8 | MEANS-PLUS-FUNCTION CLAIMS—LITERAL INFRINGEMENT | Northern District of California, Model Patent Jury Instruction, B.3(3.3b) (Jan. 2018). | 15 |
|---|---|---|---|
| 9 | LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS | Northern District of California, Model Patent Jury Instruction, B.3(3.5) (Jan. 2018). | 16 |
| 10 | CONTRIBUTORY INFRINGEMENT | NDCA 3.6; *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). | 18 |
| 11 | INVALIDITY—BURDEN OF PROOF) | Northern District of California, Model Patent Jury Instruction, B.4.1(4.1a) (Jan. 2018). | 19 |
| 12 | INVALIDITY—PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART | Northern District of California, Model Patent Jury Instruction, B.4.1(4.1b) (Jan. 2018). | 20 |
| 13 | ANTICIPATION | Federal Circuit Bar Association, Model Patent Jury Instruction, B.4.3b-1 (July 2016). | 21 |
| 14 | PRINTED PUBLICATION | American Intellectual Property Model Patent Jury Instruction 6.5 (2018) | 23 |
| 15 | WRITTEN DESCRIPTION REQUIREMENT | Federal Circuit Bar Association, Model Patent Jury Instruction, B.4.2 (4.2a) (July 2016); 35 U.S.C. § 112(2). | 24 |
| 15 | REASONABLE ROYALTY—DEFINITION | Federal Circuit Bar Association, Model Patent Jury Instruction, B.6 (6.6) (July 2016). | 26 |
| 16 | LICENSE DEFENSE | 35 U.S.C. § 271(a); *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1535 (2017); *Quanta Computer, Inc. v. L.G. Elecs., Inc.*, 533 U.S. 617, 628–630 (2008). | 27 |

**COURT'S INSTRUCTION NO. _**

**(OUTLINE OF TRIAL)**

The trial will now begin.  First, each side may make an opening statement. An opening statement is not evidence.  It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence.  A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor.  On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, i.e., that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt.  On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, Plaintiffs will present its evidence in support of their contention that some of the claims of the '163, '335, '312, '017, and '574 patents have been and continue to be infringed by Nikon.  To prove infringement of any claim, Plaintiffs must persuade you that it is more likely than not that Nikon has infringed that claim.

Nikon will then present its evidence that the claims of the '163, '335, '312, '017, and '574 patents are invalid.  To prove invalidity of any claim, Nikon must

1

persuade you by clear and convincing evidence that the claim is invalid.  In addition to presenting its evidence of invalidity, Nikon will put on evidence responding to Plaintiffs' proof of infringement.

Plaintiffs may then put on additional evidence responding to Nikon's evidence that the claims of the '163, '335, '312, '017, and '574 patents are invalid, and to offer any additional evidence of infringement.  This is referred to as "rebuttal" evidence.  Plaintiffs' "rebuttal" evidence may respond to any evidence offered by Nikon.

Finally, Nikon may have the option to put on its "rebuttal" evidence to support its contentions as to the validity of the claims of the '163, '335, '312, '017, and '574 patents by responding to any evidence offered by Plaintiffs on that issue.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments. These closing arguments by the attorneys are not evidence.  After the closing arguments and instructions, you will then decide the case.

# COURT'S INSTRUCTION NO. _

## (PATENT CLAIMS)

Before you can decide whether defendant has infringed plaintiffs' patent, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent. The patent claims involved here are:

| Patent | Asserted Claims |
|--------|-----------------|
| '163   | 16              |
| '335   | 1-3             |
| '312   | 1               |
| '017   | 7               |
| '574   | 30              |

Each patent is an exhibit in evidence. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. Each of the claims must be considered individually, and to show patent infringement, Plaintiffs need only establish that one claim has been infringed.

# COURT'S INSTRUCTION NO. _

# (INTERPRETATION OF CLAIMS)

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

For the '163 patent, the scope of the claims is that of their plain and ordinary meaning as understood by a person of ordinary skill in the art.  I have provided additional interpretation of the following claim terms:

| '163 Patent Claim Term | Claims | Construction |
|---|---|---|
| "first filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern" | 15 | "linear matched filter 56, programmed to employ an algorithm described at 7:10-21 and 7:44-53."<br><br>*See also* Nikon's Closing Instruction No. ("SECTION 112, PARAGRAPH 6") |
| "second filtering means operatively coupled to and operatively following said first filtering means for | 15 | "non-linear filter 66 programmed to employ an algorithm described at 7:64-8:7."<br><br>*See also* Nikon's Closing Instruction ("SECTION 112, PARAGRAPH 6") |

| '163 Patent Claim Term | Claims | Construction |
|---|---|---|
| screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern, said second filtering means being configured to examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions" | | |

Moreover, for the '335 patent, I have construed the following terms as follows:

| '335 Patent Claim Terms | Claims | Construction |
|---|---|---|
| "turning on"/"turning off" terms | 1 | the phrases "turning off" and "tuning on" as used in steps l (c) through l (f) mean that the transistors *transition* from on to off, and from off to on, respectively. |

|  |  |  |
|---|---|---|
| Whether steps (a) – (f) must be performed in order | 1 | Yes |

I have also construed the following terms:

| '335 Patent Claim Terms | Claims | Construction |
|---|---|---|
| "(a) fully depleting the first and second photodiodes" | 1 | fully deplete by "setting both the reset transistor and corresponding transfer transistor on while the select transistor is off" |
| "adjusting a turn-on time and a turn-off time for the first and second transfer transistors" | 3 | "varying the turn-on and turn-off times of the first and second transfer transistors" |

For the '312/017/574 patent family, I have construed the following claim terms as follows:

| '312 Patent Claim Terms | Claims | Construction |
|---|---|---|
| Selectively shared with a sensing node of a unit pixel in a current scan line | 1 | Connectable via a switch with a sensing node of a unit pixel in a current scan line to selectively receive photocharges from one or more photodiodes of the unit pixel in the current scan line and not from any photodiode in the previous scan line |

| '017 Patent Claim Terms | Claims | Construction |
|---|---|---|
| First sensing pixel | 7 | Sensing pixel enabled to receive an electrical signal from one or more corresponding photodiodes |
| Second sensing pixel | 7 | Nearby sensing pixel not connected from its one or more photodiodes |

I have also construed the following terms:

| '312 Patent Claim Terms | Claims | Construction |
|---|---|---|
| "in response to a line select signal" (claim 1)   "in response to a select signal" (claim 7) | 1 | "in response to a signal that is applied to a select transistor of a unit pixel to couple the unit pixel to an output line" |

| '017 Claim Terms | Claims | Construction |
|---|---|---|
|  |  |  |
| "in response to a select signal" | 7 | "a signal that is applied to a select transistor of a sensing to couple the sensing pixel to an output line" |
| "a switching device | 7 | This term is governed by 35 U.S.C. § 112, |

| '017 Claim Terms | Claims | Construction |
|---|---|---|
| configured to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line" | | ¶ 6.<br><br>Function: to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line<br><br>Structure: (as shown in FIG. 4): switching device M400 or M450 for interconnecting the sensing node of the currently selected pixel to the sensing node of the nearest neighboring pixel which is lately scanned, in response to a row select signal. |

1
2

# COURT'S INSTRUCTION NO. _
## (SECTION 112, PARAGRAPH 6)

3    Claim 15 of the '163 patent includes two means-plus-function terms.

4   Specifically, (1) "First filtering means" is a means-plus-function limitation. The

5   corresponding structure is "linear matched filter 56, programmed to employ an

6   algorithm described at 7:10-21 and 7:44-53," and performs the multiple function of

7   "identifying a plurality of image regions of said input image that have a likelihood

8   of containing said target image pattern" and "correlate said image with a reference

9   image pattern to select said image regions."

10    (2) "Second filtering means" is also a means-plus-function limitation. The

11   corresponding structure is "non-linear filter 66 programmed to employ an algorithm

12   described at 7:64-8:7," and performs the multiple function of "screening said image

13   regions to select a candidate region that has a high likelihood of containing said

14   target image pattern" and "examine a grayscale characteristic of said image regions

15   as a determination factor in selecting said candidate region from among said image

16   regions."

17    The '312 and '017 patents also include means-plus-function limitations. The

18   term "switching device" as found in claim 7 of both the '312 and '017 patents is a

19   means-plus-function limitation. The recited function is to "interconnect the sensing

20   node of the selected unit pixel to the sensing node of a neighboring unit pixel in

21   response to a select signal," while the corresponding structure is "(as shown in FIG.

22   4): switching device M400 or M450 for interconnecting the sensing node of the

23   currently selected pixel to the sensing node of the nearest neighboring pixel which

24   is lately scanned, in response to the row select signal."

25    These are called "means-plus-function" requirements. I will describe them in

26   more detail shortly. A "means-plus-function" requirement does not cover all of the

27   structures that could perform the function set forth in the claims. Instead, it  covers

28   a structure or a set of structures that performs that function and that is either

9

identical or "equivalent" to at least one of the structures described in the patents for performing that function.  The issue of whether two structures are identical or equivalent is for you to decide.  I will explain to you later how to determine whether two structures or two sets of structures are "equivalent" to one another.

When I read you my definitions for certain claim terms a few moments ago, I identified the structures described in the patents for performing the relevant functions.  You should apply my definition of the function and the structures described in the patents for performing it as you would apply my definition of any other claim term.

## COURT'S INSTRUCTION NO. _

## (INFRINGEMENT)

There are several ways to infringe a patent.

*First*: One may directly infringe a patent;

*Second*: One may induce others to infringe a patent in which case the person inducing infringement is liable for infringement in the same manner as a direct infringer; and

*Third*: One may contribute to the infringement of a patent by another by supplying a component specially designed for the invention, in which case, both the direct infringer and the contributing infringer will be liable for patent infringement." The contributing act must occur in the United States.

Plaintiffs allege that Defendants have directly infringed the '163, '335, '312, '017, and '574 patents and continue to do so. Plaintiffs also allege that Defendants have actively induced infringement of the '163, '335, '312, '017, and '574 patents by others and continue to do so. Plaintiffs further allege that Nikon Corp. and Nikon Inc. contributed to the infringement of the '163, '335, and '574 patents by others and continue to do so.

The burden of proof is on Plaintiffs to prove:

First: that Plaintiffs own the patents-in-suit; and

Second: that Defendants infringed at least one claim of the patents-in-suit by making, using, offering for sale, or selling the invention within the United States, or importing the invention into the United States, before the patent expired; and

Third: Defendants acted without permission of Plaintiffs.

Plaintiffs must prove these things by a preponderance of the evidence. In other words, Plaintiffs must persuade you that it is more likely than not that Defendants have infringed.

11

## COURT'S INSTRUCTION NO. _
## (DIRECT INFRINGEMENT)

A patent's claims define what is covered by the patent. A product and/or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Nikon has made, used, sold, offered for sale or imported within the United States a product covered by the asserted claims. If it has, it infringes. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether Nikon's products infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about both Plaintiffs' product and Nikon's accused products.  However, in deciding the issue of infringement you may not compare Nikon's accused products to Plaintiffs' product. Rather, you must compare each Nikon accused product to the claims of the each patent when making your decision regarding infringement.

Whether or not Nikon knew its products infringed or even knew of the patent does not matter in determining direct infringement.

12

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement. You should note, however, that what are called "means-plus-function" requirements in a claim are subject to different rules for deciding direct infringement. I will describe these separate rules shortly.

## COURT'S INSTRUCTION NO. _

## (LITERAL INFRINGEMENT)

To decide whether Nikon's products and/or methods literally infringe a claim of the asserted patents, you must compare those products and/or methods with the patent claim and determine whether every requirement of the claim is included in that products and/or methods.  If so, Nikon's products and/or methods literally infringe that claim. If, however, Nikon's products and/or methods do not have every requirement in the patent claim, Nikon's products and/or methods do not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in Nikon's product and/or method. The fact that Nikon's product and/or method also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

If Nikon's products and/or methods do not itself include every requirement in the patent claim, Nikon cannot be liable for infringement merely because other parties supplied the missing elements, unless Nikon directed or controlled the acts by those parties. Nikon does not direct or control someone else's action merely because Nikon entered into a business relationship with that person. Instead, Nikon must specifically instruct or cause that other person to perform each step in an infringing manner, so that every step is attributable to [alleged infringer] as controlling party.

**COURT'S INSTRUCTION NO. _**

**(MEANS-PLUS-FUNCTION CLAIMS—LITERAL INFRINGEMENT)**

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in some of the asserted claims.  A means-plus-function requirement only covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of those specific structure that perform the claimed function.  A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

As an example, the term "means for processing data" might be understood to encompass a variety of different ways of making a calculation, including not only a computer or calculator but a pencil and paper or even the human brain.  But because the phrase is a means-plus-function requirement, we interpret that phrase not to cover every possible means for processing data, but instead to cover the actual means disclosed in the patent for processing data and other means that are equivalent to it.

# COURT'S INSTRUCTION NO. _

## (LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS)

Because the patentee made certain claim changes or statements during the patent application process for the '163 patent, the doctrine of equivalents analysis cannot be applied to the following requirements of claim 1:

- correlating said input image with preselected reference data to derive a correlation image
- selecting a candidate region of said input image having a likelihood of containing said target image pattern of interest on a basis of correlating said input image with said preselected reference data
- identifying potential candidate regions of said input image based on detecting a local maximum in said correlation image

Unless each of the above requirements is literally present within the Nikon digital cameras, there can be no infringement of claim 1 of the '163 patent.

Under the claim interpretation I have provided, the structure corresponding to the "first filtering means" in claim 15 includes the algorithm described in the specification at 7:10–21 and 7:44–53.  The doctrine of equivalents cannot be applied to the following requirements:

- correlation image
- only regions that contain a local maximum in the correlation image and have pixel correlation values that are greater than a fixed threshold value TL are selected

Unless each of the above requirements is literally present within the Nikon digital cameras, there can be no infringement of claim 15 of the '163 patent.

Additionally, because the applicant of the '335 patent made certain claim changes and/or statements during the patent application process for the '335 patent, the doctrine of equivalents analysis cannot be applied to claim 1, elements (c)-(f).  Specifically, steps (c) through (f) of claim 1 must be performed in order without

any overlaps, as construed by this Court.  Unless these steps are literally present within the Nikon D4/D4s/Df (i.e., performed in order without any overlap) there can be no infringement of the claims.

Finally, because the applicant of the '312, '017, and '574 patents made certain claim changes and/or statements during the patent application process for the '312 patent, the doctrine of equivalents analysis cannot be applied to the following claim limitations:

- Claim 1 of the '312 Patent: "wherein a sensing node of a unit pixel in a previous scan line is selectively shared with a sensing node of a unit pixel in a current scan line in response to a line select signal of the current scan line"

- Claim 7 of the '017 Patent: "a switching device configured to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line"

Unless each of the above requirements is literally present within the Nikon digital cameras, there can be no infringement of these patents.

## COURT'S INSTRUCTION NO. _

## (CONTRIBUTORY INFRINGEMENT)

Plaintiffs also argue that Nikon Corp. and Nikon Inc. have contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

In order for there to be contributory infringement by Nikon Corp. and/or Nikon Inc. someone other than Nikon Corp. and/or Nikon Inc. must directly infringe a claim of the '163, '335, and '574 patents; if there is no direct infringement by anyone, there can be no contributory infringement. The contributing act must occur in the United States.

If you find someone has directly infringed the '163, '335, or '574 patents, then contributory infringement exists if:

- Nikon supplied an important component of the infringing part of the product or method that infringes the patent;
- The component is not a common component suitable for non-infringing use; and
- Nikon supplied the component with the knowledge of the '163, '335, or '574 patents and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the product or method that infringes the patent, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

## COURT'S INSTRUCTION NO. _
## (INVALIDITY—BURDEN OF PROOF)

I will now instruct you on the rules you must follow in deciding whether Nikon has proven that all of the claims of the '163, '335, '312, '017, and '574 patents are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, Nikon must persuade you that it is highly probable that the claim is invalid.

During this case, Defendants have submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the '163, '335, '312, '017, and '574 patents.  Defendants contend that such prior art invalidates certain claims of the '163, '335, '312, '017, and '574 patents.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the '163, '335, '312, '017, and '574 patents.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make the Nikon's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

**COURT'S INSTRUCTION NO. _**

**(INVALIDITY—PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART)**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of [the effective filing date of the patent(s)]. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field; and

(3) the sophistication of the technology.

Plaintiffs contend that the level of ordinary skill in the field was [  ]. [Alleged infringer] contends that the level of ordinary skill in the field was [  ].

# COURT'S INSTRUCTION NO. _

## (ANTICIPATION)

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention. In general, inventions are new when the identical product and/or process has not been made, used, or disclosed before. Anticipation must be determined on a claim-by-claim basis.

Nikon contends that the claims '163, '312, '017, and '574 are invalid because the claimed invention(s) is/are anticipated or because Plaintiffs lost the right to obtain a patent.

Nikon must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claim(s) is/are invalid. Here is a list of ways that Nikon can show that a patent claim was not new or that the patentee lost the right to patent the claim(s):

(1) An invention is not new if it was known to or used by others in the United States before the date of invention of the patents. An invention is known when the information about it was reasonably accessible to the public on that date.

(2) An invention is not new if it was already patented or described in a printed publication, anywhere in the world before the date of invention of the patents. A description is a "printed publication" only if it was publicly accessible.

(3) Plaintiffs have lost their rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by Plaintiffs or anyone else, more than a year before the date of invention of the patents, which is the effective filing date of the application for the patents. An invention was patented by another if the other patent describes the same invention claimed by Plaintiffs to a person having ordinary skill in the technology.

(4) An invention is not new if it was described in a published patent application filed by another in the United States [or under the PCT system and designated the United States, and was published in English] before [insert date of invention].

(5) An invention is not new if the claimed invention was described in a patent granted on an application for patent by another filed in the United States [or under the PCT system and designated the United States, and was published in English] and the application was filed before [insert date of reduction to practice or the filing date of the application for the '312, '017, and '574 patents.

# COURT'S INSTRUCTION NO. _

## (PRINTED PUBLICATIONS)

Defendants contend that claim 1 of the '312 patent, claim 7 of the '017 patent, and claim 30 of the '574 patent are invalid because the subject matter described in those claims was described in a printed publication that was sufficiently accessible to persons interested in the subject matter of its contents more than one year before the patents were filed, or described in a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent.

The '312 patent was filed on January 31, 2006.  The '017 patent was filed on March 2, 2012.  The '574 patent was filed on January 3, 2014.

Plaintiffs bear the burden to come forward with evidence to prove entitlement to claim priority to an earlier filing date than January 31, 2006 for the '312 patent, March 2, 2012 for the '017 patent, and January 3, 2014 for the '574 patent.  For a claim in a later-filed application to be entitled to the filing date of an earlier application, the earlier application must provide written description support for the later-filed claim and be complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation.

1

2

**COURT'S INSTRUCTION NO. _**

**(WRITTEN DESCRIPTION REQUIREMENT)**

3   The patent law contains certain requirements for the part of the patent called

4   the specification.   Nikon contends that all asserted claims of the '312, '017, and

5   '574 patents are invalid  because the specification of those patents does not

6   contain an adequate written description of the  invention.  To succeed, Nikon must

7   show by clear and convincing evidence that the  specification fails to meet the

8   law's requirements for written description of the invention.  In the  patent

9   application process, the applicant may keep the originally filed claims, or change

10  the  claims between the time the patent application is first filed and the time a

11  patent is issued.  An  applicant may amend the claims or add new claims.  These

12  changes may narrow or broaden the  scope of the claims.  The written description

13  requirement ensures that the issued claims  correspond to the scope of the written

14  description that was provided in the original application.

15  In deciding whether the patent satisfies this written description requirement,

16  you must consider  the description from the viewpoint of a person having ordinary

17  skill in the field of technology of  the patent when the application was filed.  The

18  written description requirement is satisfied if a  person having ordinary skill

19  reading the original patent application would have recognized that it  describes the

20  full scope of the claimed invention as it is finally claimed in the issued patent and

21  that the inventor actually possessed that full scope by the filing date of the original

22  application.

23  The written description requirement may be satisfied by any combination of

24  the words,  structures, figures, diagrams, formulas, etc., contained in the patent

25  application.  The full scope  of a claim or any particular requirement in a claim

26  need not be expressly disclosed in the original  patent application if a person

27  having ordinary skill in the field of technology of the patent at the  time of filing

28

24

1  would have understood that the full scope or missing requirement is in the written

2  description in the patent application.

## COURT'S INSTRUCTION NO. _
## (REASONABLE ROYALTY—DEFINITION)

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.   A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.   Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

**COURT'S INSTRUCTION NO. _**

**(LICENSE DEFENSE)**

I will now instruct you on how to decide Nikon's license defense regarding the '335 patent.  Nikon contends that Plaintiffs are barred from enforcing the '335 patent against Nikon's products that contain image sensors designed and manufactured by Sony because Sony is authorized to design and manufacture products that practice the '335 patent.  Specifically, Nikon contends that Sony obtained a license to design, manufacture, and sell products that practice the '335 patent, and thus the Sony image sensors, and Nikon's cameras that incorporate Sony's image sensors, do not infringe the '335 patent.  Plaintiffs contend that the Sony license does not apply.  The fact that Nikon raises this defense should not be understood as an acknowledgment that its products practice the '335 patent.

1

Dated: December 3, 2018

2

Respectfully submitted,
MORRISON & FOERSTER LLP

3

By:  /s/ *Vincent J. Belusko*

4

Vincent J. Belusko

5

Attorneys for Defendants
NIKON CORPORATION AND
NIKON INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28