Christopher S. Marchese (SBN 170239),
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240, Fax: (858) 678-5099

Frank Scherkenbach (SBN 142549),
scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted *Pro Hac Vice*),
glitzenstein@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070, Fax: (617) 542-8906

*[Additional Counsel listed on last page.]*

Attorneys for Plaintiffs,
CARL ZEISS AG and ASML NETHERLANDS B.V.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS B.V., | Case No. 2:17-cv-07083-RGK (MRWx) |
| Plaintiffs, | **CLEAN SET OF PLAINTIFFS' DISPUTED JURY INSTRUCTIONS** |
| v. | |
| NIKON CORPORATION, SENDAI NIKON CORPORATION, and NIKON INC., | Trial Date: December 4, 2018 Courtroom: 850 Judge: Hon. R. Gary Klausner |
| Defendants. | |

In accordance with the Court's Order for Jury Trial (ECF No. 50), Plaintiffs hereby submit the following proposed jury instructions. In an attempt to help avoid disputes, Plaintiffs have utilized instructions given by the Court in the 3221 case, where possible.  Plaintiffs expect the instructions to evolve as the case gets closer to trial and issues are narrowed.  Plaintiffs reserve all rights to modify, add, and delete instructions.

## INDEX OF PLAINTIFFS' DISPUTED JURY INSTRUCTIONS

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| **DISPUTED PRELIMINARY** | | | |
| Plaintiffs' Prelim. No. 1 | How A Trial Works | 3221 Trial Tr. Day 1 at 76:20-77:9 | 4 |
| **DISPUTED CLOSING** | | | |
| Plaintiffs' Closing No. 1 | Patent Claims | 3211 Closing Instructions (Dkt. 511). | 6 |
| Plaintiffs' Closing No. 2 | Interpretation of the Claims | 3211 Closing Instructions (Dkt. 511); N.D. Cal. Model Patent Jury Instructions (Jan. 2018), 2.1. | 7 |
| Plaintiffs' Closing No. 3 | Means-Plus-Function Claims-Literal Infringement | 3221 Closing Instructions (Dkt. 511); N.D. Cal., 3.3b; *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1267-68 (Fed. Cir. 1999) | 10 |
| Plaintiffs' Closing No. 4 | Infringement | 3221 Closing Instructions (Dkt. 511); Fed. Jury Prac. & Instr., § 158:20; 35 U.S.C. § 271. | 13 |
| Plaintiffs' Closing No. 5 | Direct Infringement-Literal Infringement | 3221 Closing Instructions (Dkt. 511); Fed. Jury Prac. & Instr., § 158:22; *Limelight Networks, Inc. v. Akamai Techs., Inc.,* 572 U.S. 915 (2014); *Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020 (Fed. Cir. 2015). | 14 |

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| Plaintiffs' Closing No. 6 | Contributory Infringement | N.D. Cal. 3.6 (provided by Defendants in 3221, Dkt. 489). | 16 |
| Plaintiffs' Closing No. 7 | Willful Infringement | N.D. Cal., 3.8. | 17 |
| Plaintiffs' Closing No. 8 | Invalidity of Patent | 3221 Closing Instructions (Dkt. 511); FJPI § 158:60. | 18 |
| Plaintiffs' Closing No. 9 | Anticipation-Generally | 3221 Closing Instructions (Dkt. 511); FJPI § 158:68; *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299 (Fed. Cir. 2009). | 19 |
| Plaintiffs' Closing No. 10 | Written Description Requirement | 3221 Closing Instructions (Dkt. 511). | 20 |
| Plaintiffs' Closing No. 11 | Reasonable Royalty-Definition | 3221 Closing Instructions (Dkt. 511). | 21 |

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

**COURT'S PRELIMINARY INSTRUCTION NO. __**

**(HOW A TRIAL WORKS)**

Now, trials proceed in the following way. First, each side will make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what the party expects the evidence will show. A party is not required to make an opening statement.

After opening statement, the plaintiff will then present their evidence, and counsel for the defendant may cross-examine. After that, the defendant may present their evidence, and counsel for the plaintiff may cross-examine.

After all the evidence has been presented, I will instruct you on the law that applies to the case, and the attorneys will make their closing argument. After that, you will go to the jury room to deliberate for your verdict.

4

**[END OF PRELIMINARY INSTRUCTIONS]**

# COURT'S CLOSING INSTRUCTION NO. __

## (PATENT CLAIMS)

Before you can decide whether defendant has infringed plaintiffs' patent, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent. The patent claims involved here are:

| Patent | Beginning at: |
|--------|---------------|
| '163 | Column 15, line 65 |
| '335 | Column 7, line 32 |
| '312 | Column 5, line 41 |
| '017 | Column 5, line 51 |
| '574 | Column 5, line 49 |

Each patent is an exhibit in evidence. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. Each of the claims must be considered individually, and to show patent infringement, Plaintiffs need only establish that one claim has been infringed.

**COURT'S CLOSING INSTRUCTION NO. \_\_**

**(INTERPRETATION OF THE CLAIMS)**

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

For the '163 patent, the scope of the claims is that of their plain and ordinary meaning as understood by a person of ordinary skill in the art. I have provided additional interpretation of the following claim terms:

| '163 patent claim term | What the term means: |
|---|---|
| First filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern | A first filter that identifies a plurality of image regions of said input image that have a likelihood of containing said target image pattern and is configured to correlate said input image with a reference image pattern to select said image regions, said reference image pattern being indicative of said target image pattern |
| Second filtering means ... for screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern | A second filter that screens said image regions to select a candidate region that has a high likelihood of containing said target image pattern and that is configured to examine a grayscale characteristic of said image regions as a determination factor in selecting said candidate region from among said image regions |

For the '335 patent, the scope of the claims is that of their plain and ordinary meaning as understood by a person of ordinary skill in the art. I have provided additional interpretation of the following claim terms:

7

| '335 patent claim term | What the term means: |
|---|---|
| "turning on" and "turning off" as used in steps 1(c) through 1(f) of claim 1 | The transistors transition from on to off |

I have also held that the steps can overlap in claim 2 and its dependent claims of the '335 Patent.

For the '312/'017/'574 patent family, the scope of the claims is that of their plain and ordinary meaning as understood by a person of ordinary skill in the art. In the Court's October 3, 2018 Order (ECF No. 295), I provided additional interpretation of the following claim terms:

| '312 patent claim term | What the term means: |
|---|---|
| Unit pixel | A structure including one or more photodiodes |
| Selectively shared with a sensing node of a unit pixel in a current scan line | Connectable via a switch with a sensing node of a unit pixel in a current scan line to selectively receive photocharges from one or more photodiodes of the unit pixel in the current scan line and not from any photodiode in the previous scan line |
| Selected unit pixel | Unit pixel enabled to receive photocharges from one or more corresponding photodiodes |
| Neighboring unit pixel | Nearby unit pixel that is not connected from its one or more photodiodes |

| '017 patent claim term | What the term means: |
|---|---|
| Sensing pixel | A structure including one or more photodiodes |
| The sensing node is selectively couplable to a sensing node of a sensing pixel in a previous scan line | a sensing node in a current scan line is selectively connectable via a switch with a sensing node of a sensing pixel in a previous scan line to receive an electrical signal from one or more photodiodes of the sensing pixel in the current scan line and not from any photodiode in the previous scan line |

8

| '017 patent claim term | What the term means: |
|---|---|
| First sensing pixel | Sensing pixel enabled to receive an electrical signal from one or more corresponding photodiodes |
| Second sensing pixel | Nearby sensing pixel not connected to its one or more photodiodes |

| '574 patent claim terms | What the term means: |
|---|---|
| Sensing pixel<br>First pixel<br>Second pixel<br>Third pixel | A structure including one or more photodiodes |

9

## COURT'S CLOSING INSTRUCTION NO. __

## (MEANS-PLUS-FUNCTION CLAIMS—LITERAL INFRINGEMENT)

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in some claims. A means-plus-function requirement only covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of those specific structures that perform the claimed function. A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

For purposes of this trial, I have interpreted each means-plus-function requirement for you and identified the structure in the patent specification that corresponds to these means-plus-function requirements. Specifically, I have determined that:

For the '163 patent,

(1) As to the "first filtering means," the corresponding structure is a "linear matched filter" and equivalents thereof that performs the function of "identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern."

(2) As to the "second filtering means," the corresponding structure is a "non-linear filter" and equivalents thereof that performs the function of "screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern."

For the '312 patent,

(3) As to the "switching device," the corresponding structure is a transistor (e.g., M400, M450) and equivalents thereof that performs the function of "interconnect[ing] a sensing node of a selected unit pixel to a sensing node of a neighboring unit pixel in response to a select signal."

10

1   For the '017 patent,

2       (4) As to the "switching device," the corresponding structure is as a transistor (e.g.,

3   M400, M450) and equivalents thereof that performs the function of "interconnect[ing] a

4   first sensing node of a first sensing pixel to a second sensing node of a second sensing

5   pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and

6   the second sensing pixel is in a second scan line."

7

8       In deciding if Plaintiffs have proven that Defendants' products include structure

9   covered by a means-plus-function requirement, you must first decide whether the

10  products have any structure that performs the function I just described to you. If not, the

11  claim containing that means-plus-function requirement is not infringed.

12      If you find that the Defendants' accused products do have structure that performs

13  the claimed function, you must then determine whether that structure is the same as or

14  equivalent to the structure I have identified in the specification. If they are the same or

15  equivalent, the means-plus-function requirement is satisfied by that structure of the

16  accused product and the other requirements of the claim are satisfied, the accused

17  product infringes the claim.

18      In order to prove that a structure in the accused product is equivalent to the

19  structure in the patent, Plaintiffs must show that a person of ordinary skill in the art

20  would have considered that the differences between the structure described in the patent

21  and the structure in the accused product are not substantial. The Plaintiffs must also show

22  that the structure was available on the date the patent was granted.

23      In order to determine whether the structure in the accused products is equivalent

24  to the structure in the specification, you must consider the overall structure in the accused

25  products that corresponds to the claimed function. You must not do a component-by-

26  component comparison of the structure in the accused products to the structure in the

27  specification because the individual components, if any, of an overall structure that

28

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

1   corresponds to the claimed function are not claim limitations. This means that structures

2   with different numbers of parts may still be equivalent.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

**COURT'S CLOSING INSTRUCTION NO. __**

**(INFRINGEMENT)**

There are several ways to infringe a patent.

*First*: One may directly infringe a patent;

*Second*: One may induce others to infringe a patent in which case the person inducing infringement is liable for infringement in the same manner as a direct infringer; and

*Third*: One may contribute to the infringement of a patent by another by supplying a component specially designed for the invention, in which case, both the direct infringer and the contributing infringer will be liable for patent infringement.

Plaintiffs allege that Defendants have directly infringed the '163, '335, '312, '017, and '574 patents and continue to do so. Plaintiffs also allege that Defendants have actively induced infringement of the '163, '335, '312, '017, and '574 patents by others and continue to do so. Plaintiffs further allege that Defendants contributed to the infringement of the '163, '335, and '574 patents by others and continue to do so.

The burden of proof is on Plaintiffs to prove:

First: that Plaintiffs own the patents-in-suit; and

Second: that Defendants infringed at least one claim of the patents-in-suit.

Plaintiffs must prove this by a preponderance of the evidence. In other words, Plaintiffs must persuade you that it is more likely than not that Defendants have infringed.

13

**COURT'S CLOSING INSTRUCTION NO. __**

**(DIRECT INFRINGEMENT—LITERAL INFRINGEMENT)**

Once the patent is issued, the owner of the patent has a right to exclude others from making, using, offering for sale, or selling the patented invention throughout the United States for a term of 20 years from the date of the filing of the patent application. Thus, direct infringement of a patent occurs when a person makes, uses, offers for sale, or sells the patented invention anywhere in the United States, or imports the patented invention into the United States, without the owner's permission while the patent is in force. To determine whether there is an infringement you must compare the allegedly infringing product with the scope of the patent claims.

Plaintiffs may prove their claim of direct infringement for each patent-in-suit and for each of Defendants' products by demonstrating that the product literally infringes at least one claim contained in the patent. In order for you to find that one of Defendants' products literally infringes a claim, you must find that each and every element of the patent claim is found in Defendants' product. In other words, a product literally infringes a patented claim when the same combination of elements found in the patent claim can also be found in the product.

With regard to method claims, Plaintiffs can prove their claim of direct infringement by demonstrating that Defendants practice all the steps of the claimed method. Plaintiffs can prove direct infringement of the method claims by showing that Defendants conditioned participation in an activity or receipt of a benefit by someone else upon that other party performing the steps of the patented method, and that Defendants established the manner or timing of that performance. In making your determination, you must consider each claim separately. Only one claim of a patent must be infringed for there for be infringement of a patent. Plaintiffs are only required to establish by a preponderance of the evidence that one claim is infringed.

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

Plaintiffs are not required to prove Defendants had the intent to literally infringe the patent or that they knew that their acts infringed the patent. Good faith is not a defense to a claim of patent infringement.

If you find that Defendants' product does not literally infringe any claim of Plaintiffs' patents-in-suit, then you must determine whether it infringes that claim under the doctrine of equivalents.

15

**COURT'S CLOSING INSTRUCTION NO. __**
**(CONTRIBUTORY INFRINGEMENT)**

Plaintiffs also argue that Nikon Corp., Nikon Inc., and Sendai Nikon have contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

In order for there to be contributory infringement by Nikon Corp., Nikon Inc., and Sendai Nikon, someone other than Nikon Corp., Nikon Inc., and Sendai Nikon must directly infringe a claim of the '163, '335, and '574 patents; if there is no direct infringement by anyone, there can be no contributory infringement.

If you find someone has directly infringed the '163, '335, or '574 patents, then contributory infringement exists if:

Nikon supplied an important component of the infringing part of the product or method that infringes the patent;

The component is not a common component suitable for non-infringing use; and Nikon supplied the component with the knowledge of the '163, '335, or '574 patents and knowledge that the component was especially made or adapted for use in an infringing manner.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the product or method that infringes the patent, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

1
2

## COURT'S CLOSING INSTRUCTION NO. __
## (WILLFUL INFRINGEMENT)

3    In this case, Plaintiffs argue that Defendants (Nikon Corp., Nikon Inc., and/or
4  Sendai Nikon) willfully infringed Plaintiffs' '163, '335, '312, '017, and '574 patents.

5    To prove willful infringement, Plaintiffs must persuade you that the Defendants
6  infringed a valid claim of Plaintiffs' '163, '335, '312, '017, or '574 patent. The
7  requirements for proving such infringement were discussed in my prior instructions.

8    In addition, to prove willful infringement of a claim, Plaintiffs must persuade you
9  that it is more likely true than not true that Defendants intentionally ignored or recklessly
10  disregarded that claim. You must base your decision on Defendants' knowledge and
11  actions at the time of infringement. Evidence that Plaintiffs had knowledge of the patent
12  at the time of infringement by itself is not sufficient to show willfulness. Rather, to show
13  willfulness, you must find that Defendants engaged in additional conduct evidencing
14  deliberate or reckless disregard of Plaintiffs' patent rights.

15    In deciding whether Defendants willfully infringed, you should consider all of the
16  facts surrounding the infringement including: whether Defendants intentionally copied
17  Plaintiffs' patented technology in developing the accused product; whether Defendants
18  knew, or should have known, that its conduct involved an unreasonable risk of
19  infringement; and whether Defendants had a reasonable belief that at the time of
20  infringement that its products did not infringe the asserted patent or that the patent was
21  invalid.

22    Although there was no obligation on Defendants to have obtained an opinion of
23  counsel, you may consider whether Defendants relied on a legal opinion that was well-
24  supported and believable and that advised Defendants: (1) that the Defendants' cameras
25  did not infringe Plaintiffs' patent or (2) that the patent was invalid.

26
27
28

**COURT'S CLOSING INSTRUCTION NO. ____**

**(INVALIDITY OF PATENT)**

Defendants claim the patents-in-suit are invalid because they lack novelty and/or nonobviousness. A patent is presumed to be valid and so Defendants have the burden to establish the invalidity of the patent by clear and convincing evidence.

The elements to a valid patent are (1) novelty and (2) nonobviousness. Defendants claim the each of the patents-in-suit should not have been granted because one or more of the elements is not present. In order to prove invalidity of a patent-in-suit. Defendants must show by clear and convincing evidence that one of these elements is not present in that patent.

If you find by clear and convincing evidence that any of the patents-in-suit lacks novelty or nonobviousness, then you should find that patent invalid and render a verdict for Defendants.

Defendants must prove invalidity separately for each claim by clear and convincing evidence. In other words, Defendants must persuade you that it is highly probable that each claim is invalid.

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

# COURT'S CLOSING INSTRUCTION NO. __
## (ANTICIPATION—GENERALLY)

Defendants claim that one or more patented claims are invalid because they lack novelty in that those claims were anticipated by prior art. In order to prevail on this defense, Defendants must prove anticipation by clear and convincing evidence.

In order for a claim to have been anticipated, you must find the earlier invention completely embodied the same process or product as the patented claim and all the elements listed in the patented claim were previously found in exactly the same situation and united in the same way to perform the identical function. Each and every element of the patented claim must have been either inherent or expressly disclosed in a single prior invention or in a single prior art reference.

You may not combine two or more items of prior art in order to find anticipation.

A person who applied for a patent on a method or process is conclusively presumed to know about the prior art, including all the same or similar existing machines, articles of manufacture, methods or processes that are disclosed in patents issued or publications made prior to the date of the person's alleged invention.

The person is also presumed to have actual or constructive knowledge of all the same or similar machines, articles of manufacture, methods or processes that are publicly known, or used by anyone, at any time more than one year prior to the date of his application for a patent. Inventions previously patented, or publicly described, or publicly known are conclusively characterized as the "prior art."

If you do not find these requirements have been met, then the patented claims are not invalid because of anticipation or lack of novelty.

If you find these requirements have been met, you should then consider whether Defendants have satisfied its burden of proving how the patented claims were anticipated.

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

**COURT'S CLOSING INSTRUCTION NO. __**

**(WRITTEN DESCRIPTION REQUIREMENT)**

The patent law contains certain requirements for the part of the patent called the specification. Nikon Corp., Nikon Inc., and Sendai Nikon contend that that one or more patented claims are invalid because the specifications of the patents do not contain an adequate written description of the invention.

To succeed, Nikon Corp., Nikon Inc., and Sendai Nikon must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application. The disclosure of a species may be sufficient written description support for a later claimed genus including that species. A broad claim is more likely to have written description support if results in the field are relatively predictable.

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

**COURT'S CLOSING INSTRUCTION NO. __**

**(REASONABLE ROYALTY—DEFINITION)**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a reasonable royalty is to determine what is called an "ongoing royalty" or "running royalty." To calculate a running royalty, you must first determine the "base," that is, the product on which the alleged infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the "rate," which may be a dollar value per unit of product including within the base or a percentage applied to each such product that you find would have resulted from the hypothetical negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200

nails, the base revenue would be $200. If the rate you find would have resulted from the hypothetical negotiation is 1% per nail, then the total royalty would be $2, or the rate of 0.01 times the base revenue of $200. By contrast, if you find the rate to be 5%, the total royalty would be $10, or the rate of 0.05 times the base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

Instead of a percentage royalty, you may decide that the appropriate running royalty that would have resulted from a hypothetical negotiation is a fixed number of dollars per unit sold. If you do, the royalty would be that fixed number of dollars times the number of units sold.

Another way to calculate a royalty is to determine a one-time lump sum payment that the alleged infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product, both past and future. This differs from payment of an ongoing or running royalty because, with an ongoing or running royalty, the licensee pays based on the revenue of actual licensed products it sells. When a one-time lump sum is paid, the alleged infringer pays a single price for a license covering both past and future infringing sales.

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

Dated:  December 4, 2018          FISH & RICHARDSON P.C.

By:   /s/ Christopher S. Marchese
_____

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel:  (213) 533-4240, Fax: (858) 678-5099

Frank Scherkenbach (SBN 142549)
scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted Pro Hac Vice)
glitzenstein@fr.com
Proshanto Mukherji (Admitted *Pro Hac Vice*)
mukherji@fr.com
Jeffrey Shneidman (Admitted *Pro Hac Vice*)
shneidman@fr.com
Elizabeth G.H. Ranks (Admitted *Pro Hac Vice*),
ranks@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel:  (617) 542-5070, Fax: (617) 542-8906

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Olga I. May (SBN 232012)
omay@fr.com
Markus D. Weyde (SBN 285956) weyde@fr.com
K. Nicole Williams (SBN 291900)
nwilliams@fr.com
Jared A. Smith (SBN 306576)
jasmith@fr.com
Oliver J. Richards (SBN 310972)
orichards@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070, Fax:   (858) 678-5099

Jennifer Huang (Admitted *Pro Hac Vice*)
jhuang@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel:  (612) 335-5070, Fax:   (612) 288-9696

Andrew R. Kopsidas (Admitted *Pro Hac Vice*)
kopsidas@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Ste. 1000
Washington, DC 20024
Tel:  (202) 783-5070, Fax: (202) 783-2331

Attorneys for Plaintiffs, CARL ZEISS AG and
ASML NETHERLANDS B.V.

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 4, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Christopher S. Marchese*

Christopher S. Marchese
marchese@fr.com

CLEAN JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)