Christopher S. Marchese (SBN 170239), marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240, Fax: (858) 678-5099

Frank Scherkenbach (SBN 142549), scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted *Pro Hac Vice*), glitzenstein@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070, Fax: (617) 542-8906

Olga I. May (SBN 232012), omay@fr.com
Markus D. Weyde (SBN 285956), weyde@fr.com
K. Nicole Williams (SBN 291900), nwilliams@fr.com
Jared A. Smith (SBN 306576), jasmith@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-4745, Fax: (858) 678-5099

*[Additional Counsel listed on last page.]*

Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS B.V.,<br><br>Plaintiffs,<br><br>v.<br><br>NIKON CORPORATION and NIKON INC.,<br><br>Defendants. | Case No. 2:17-cv-07083- RGK (MRWx)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS NIKON CORPORATION AND NIKON INC.'S OBJECTIONS TO PLAINTIFFS' DISCLOSURES FOR DRS. MCDUFF, SUBRAMANIAN, AND MUNDY**<br><br>Trial Date: December 4, 2018<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850, 8th Floor |

1    Plaintiffs Carl Zeiss AG and ASML Netherlands B.V. ("Plaintiffs") hereby
2 respond to Defendants' Nikon Corporation and Nikon Inc. ("Nikon" or "Defendants")
3 objections to Plaintiffs' disclosures for Drs. McDuff, Subramanian, and Mundy (D.I.
4 462). For the reasons described below, each of Nikon's objections should be overruled.

5    **A.  This Court Should Exercise Its Considerable Discretion and Allow
6        Dr. Subramanian to Address Issues that Are Relevant to Both
         Plaintiffs' Infringement and Invalidity Case During Their Case-In-
7        Chief**

8    Nikon objects to certain demonstrative slides that Plaintiffs intend to use with
9 their expert witness Dr. Subramanian, contending that because Nikon bears the burden
10 of proof as to the invalidity of the asserted claims of these patents, Plaintiffs' expert
11 should not be able to discuss any issues that touch on invalidity, regardless of whether
12 those issues may also be relevant to infringement. Specifically, Nikon has objected to
13 slides that illustrate, and will accompany testimony regarding, the scope of the claims and
14 the accompanying disclosure. For example, Nikon has objected to a slide that explains
15 the Court's claim constructions (on the left) and a slide explaining the history of the
16 patents and their use of the term "unit pixel" (right):



25    The other objected-to slides (a full compilation of which are provided in Exhibit
26 A) address: the history of the patents (PDX-261), the state of the art at the time of the
27 filing of the patents (PDX-262–PDX-266) and the scope of the claims and disclosure of
28

the patents (PDX-267).[1] While this information is relevant to certain of Nikon's invalidity defenses (including the written description defense that Nikon features prominently in its opening), this information will also provide the jury with informative background information concerning these patents and information that is also relevant to infringement (such as the scope of the claims). Plaintiffs should not be prohibited from presenting these demonstratives and eliciting testimony on these issues simply because they may also concern invalidity defenses raised by Nikon.

It is black-letter law that "[t]he order of proof at trial is a matter within the sound discretion of the trial court . . . ." *United States v. Martinez-Villanueva*, 463 F.2d 1336, 1337 (9th Cir.), cert. denied, 409 U.S. 915 (1972); *see also United States v. Dittrich*, 100 F.3d 84, 86 (8th Cir. 1996) ("Decisions as to the order of proof lie within the sound discretion of the district courts...."); *Pennington v. United Mine Workers of America*, 325 F.2d 804, 817 (6th Cir. 1963) ("The District Judge has a wide discretion in controlling the order of proof."), *rev'd. on other grnds.*, 381 U.S. 657 (1965); *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 378 (9th Cir. 1957) ("The trial court has absolute judicial discretion as to the order of proof.") Indeed, the Federal Rules explicitly provide that a trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time." Fed. R. Evid. 611.

Here, allowing Dr. Subramanian to use these objected-to demonstratives and provide accompanying testimony should be allowed for several reasons. First, allowing Dr. Subramanian to testify now on these issues will likely avoid needless consumption of time and will be more efficient as it could reduce or eliminate rebuttal testimony on these issues. Second, and relatedly, Plaintiffs respectfully submit that allowing this testimony

---

[1] Plaintiffs have withdrawn previously-numbered slides PDX-206, PDX-264, and PDX-268 and served Nikon with updated slides Wednesday evening. As a result of the deletion, the numbering provided on the slides attached in Exhibit A do not align with the numbers identified in Nikon's objection.

1  would be a reasonable accommodation for Dr. Subramanian, who as Nikon knows faces
2  certain scheduling constraints after tomorrow.  (*See* Jt. Mot. re Order of Proof at Tr. (D.I.
3  447), p. 1.)  Lastly, allowing Dr. Subramanian to address the issues on these slides will
4  not present any risk of jury confusion.  Nikon's counsel featured Nikon's written
5  description defense in Nikon's opening, and there is no just reason why Dr. Subramanian
6  should not be permitted to address that issue head-on now.

7  Nikon claims that, as a rule, a party must present first and last at trial on any issue
8  for which it bears the burden of proof.  (*See* Obj., at 1.)  As an initial matter, the objected-
9  to-slides address issues that touch on both infringement (for which Plaintiffs bear the
10 burden of proof) and invalidity (for which Defendants bear the burden), thus even if this
11 were a hard and fast rule, it would not apply here.  In any event, it is not a hard and fast
12 rule.  District courts have nearly unlimited discretion in order to allow the order of proof
13 to proceed in any way they deem fit.  Nikon's cited cases merely illustrate the exercise of
14 that discretion to account for the circumstances of those cases, which are far different
15 than the circumstances of this case.  For example, the *Personalized User Model* case involved
16 a phased trial involving both patent infringement and breach of contract claims, and
17 neither *Personalized User Model* nor *Novartis* involved anything close to the difficult
18 scheduling issues that have arisen in this case, including Nikon's witness's illness and the
19 death of a President.  *Personalized User Model, L.L.P. v. Google Inc.*, No. 09-525-LPS, 2014
20 U.S. Dist. LEXIS 37817, at *2-3 (D. Del. Mar. 6, 2014); *see also Novartis Pharm. Corp. v.
21 Teva Pharm. USA, Inc.*, No. 05-CV-1887 (DMC), 2009 WL 3334850, at *1 (D.N.J Oct. 14,
22 2009) (no scheduling difficulties).

23 Nikon's only other argument is that the parties previously agreed to the schedule
24 set forth in the initial pre-trial conference order, which was filed prior to the continuance
25 of the trial.  However, the parties subsequently jointly agreed to depart from that
26 sequence by filing a joint motion for a recommended schedule to accommodate
27 scheduling problems from both parties.  (*See* Jt. Mot. (D.I. 447).)  While the Court did
28 not accept the order proposed by the parties in that motion, Nikon cannot now claim

1  that the original schedule (which was supplanted by the later joint, signed motion) should
2  apply.
3     As the Court recognized when continuing the trial due to unavailability of Nikon's
4  witness (which Plaintiffs did not oppose), these are "extraordinary circumstances." (D.I.
5  451, at 14:2.) Given these extraordinary circumstances, the efficiency gained, and that no
6  juror confusion will result, Nikon's objections to these demonstratives and accompanying
7  testimony should be overruled.

   **B.   Plaintiffs Should Be Allowed to Offer Into Evidence Compilations of Financial Data Underlying Dr. McDuff's Opinions**

   Nikon next objects to Plaintiffs' introduction of certain appendices to Dr. McDuff's report containing compilations of Nikon's financial data and other evidence and calculations underlying Dr. McDuff's damages opinions. To be clear, contrary to Nikon's characterization, Plaintiffs are not offering portions of Dr. McDuff's "expert report" into evidence, such as Dr. McDuff's discussion of his opinions. Rather, the exhibits Plaintiffs' seek to admit into evidence are appendices to Dr. McDuff's report that constitute (1) compilations of financial data provided to Plaintiffs by Nikon, (2) compilations of other evidence (such as industry licensing rates), and (3) compilations of Dr. McDuff's calculations based on that evidence.

   Dr. McDuff's appendices are classic examples of admissible compilation of other evidence. Federal Rule of Evidence 1006 provides that a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court" provided the party make the data underlying the compilation available to the opposing party. *See* Fed. R. Evid. 1006. Because the Nikon financial data underlying Dr. McDuff's appendices was provided by Nikon, and because other documents (such as licenses) summarized in these appendices were produced to Nikon during discovery, Rule 1006 applies here. Nikon has not alleged that these appendices contain incorrect information or faulty calculations. Moreover, there is no question of hearsay or foundation, as Dr. McDuff will lay the

foundation for the compilations. *See, e.g., U.S. v. Aubrey*, 800 F.3d 1115, 1130–31 (9th Cir. 2015) (admitting summary charts depicting flow of funds in contractor's accounts that summarized boxes of bank records on basis of foundation testimony by forensic auditor who prepared them; defense received copies of original documents during discovery and never objected to charts' accuracy).

Nikon claims that these appendices are not admissible compilations simply because they contain calculations performed by Dr. McDuff (such as multiplying the royalty rate by the number of sales of Nikon cameras). Nikon cites no case for this proposition, which is contrary to law. Courts have allowed exactly these sorts of compilations which contain data and expert calculations of that data to come into evidence. For example, in *United States v. Gold*, 743 F.2d 800, 816 (11th Cir. 1984), the 11th Circuit decided that a district court correctly allowed a chart containing "thirteen columns contained information derived either from other exhibits received into evidence or from oral testimony" as well as "two columns [that] reflected [an expert's] conclusions." *United States v. Gold*, 743 F.2d 800, 816 (11th Cir. 1984); *see also, e.g., State Office Systems, Inc. v. Olivetti Corp.*, 762 F.2d 843, 845 (10th Cir. 1985) (admitting "damage summary" chart summarizing loss of future profits even though it amounted to "projections of future events," not "a simple compilation" of records).

While Plaintiffs maintain that each of the exhibits disclosed to Nikon are admissible compilations, out of an interest to try the case as efficiently as possible and to reduce the number of issues for this Court to decide, Plaintiffs withdraw every objected-to exhibit except for JTX-2207. JTX-2207 is a compilation of Nikon camera sales that form the base for Dr. McDuff's damages calculations and a summary of royalties broken down by year, by patent, and by product type. *See* Exhibit B. JTX-2207 is exactly the same type of information that this Court allowed Plaintiffs to offer into evidence (from the demonstratives) in the 3221 case, except that the numbers are broken down in a more granular level. Accordingly, Nikon's objection should be overruled.

### C.     Plaintiffs Should Be Allowed To Introduce Compilations of Source Code and Manuals

Defendants next object to compilations of source code and manuals used by the accused cameras. Just as with Dr. McDuff's appendices, Nikon conflates *opinions* provided by experts with compilations of evidence underlying those opinions. Here, the charts are summaries of the Omron source code detailing the operation of the accused cameras. The underlying documents were produced by Omron in this litigation, and Nikon does not argue that the Omron code is inadmissible. The original produced Omron source code is nearly 2000 pages long and not convenient for examination in court. JTX-1529 to 1534 are charts prepared by Dr. Mundy that categorize and summarize the relevant Omron documents by page number and name. The charts are one-page summaries of extremely voluminous writings that cannot be conveniently examined in court. Given that Nikon has not contended that anything in these charts inaccurately summarizes the underlying material, and that Nikon does not contend that the underlying is inadmissible, these too should be admitted. *See, United States v. Johnson*, 594 F.2d 1253, 1257 (9th Cir. 1979).

Nikon argues that because the summary includes Dr. Mundy's "mental impressions and categorization of what he believes . . . is relevant to this case" it is inadmissible. (*See* Obj. at 6.) Not so. Necessarily, any summary of records will include the analysis of the individual summarizing, both in how they present the data, and in what they chose to summarize or to omit. These concerns are ameliorated because Dr. Mundy will lay a foundation for these exhibits, will explain to the jury why and how he made his categorization choices, and Nikon is free to cross examine him on those choices. *See, e.g., U.S. v. Mitchell*, 816 F.3d 865, 876 (D.C. Cir. 2016) (admitting summary testimony by officer on phone numbers associated with drug investigation that included conclusion

based on the evidence; officer was thoroughly cross examined and defense had opportunity to challenge underlying summary document).[2]

### D. Plaintiffs Should Be Allowed to Teach the Jury How the Accused Functionality on Nikon's Cameras Works

Nikon next objects to certain demonstratives from Dr. Mundy, contending that Plaintiffs are attempting to mislead the jury into believing that figures shown on these demonstratives are associated with the patent. Dr. Mundy's demonstratives, however, make abundantly clear the source of the image being used, including by explicitly identifying its source just a few slides earlier in the presentation:



If Nikon feels that Dr. Mundy is incorrect, Nikon can, of course, cross examine him on what he says in his direct. At most, Nikon's objection goes to weight, and not admissibility, and Nikon's objection should be overruled.

---

[2] As even the summaries themselves are quite lengthy, Plaintiffs have not attached them as exhibits. Should the Court wish Plaintiffs make them available, Plaintiffs will happily do so.

### E. Dr. McDuff Should Be Allowed to Show the Jury the Cameras Which Form His Damages Base

Nikon next objects to two slides from Dr. McDuff providing a list of cameras that form the damages base for his calculation of royalties attributable to each of the patents-in-suit. Nikon contends these slides are inappropriate because, according to Nikon, it believes Dr. McDuff will provide affirmative technical testimony regarding representative products. (*See* Obj., at 7.) However, as Plaintiffs repeatedly made clear when meeting and conferring with Nikon about these slides, Dr. McDuff is not a technical expert and will not be offering technical testimony—and certainly will not offer a technical opinion regarding representative products. The objected-to slides simply show a list of the cameras that form the damages base for Dr. McDuff's royalty opinions, as shown below:

[Two slides shown: "Accused Camera Models (GP Factors 8, 11)" (PDX-610) and "Summary of Nikon Cameras (re '163 Patent)" (PDX-628)]

As is readily apparent from even a cursory examination, nothing on these slides uses the word "representative" or even comes close to suggesting that any one Nikon product is representative of a group of products for a technical analysis. Rather, these slides simply show a list of cameras accused for each of the patents (and, for the '163 patent, a further sectioning based on the version of the software used on the camera). As Plaintiffs do not intend, and have not intended, to have Dr. McDuff offer testimony as to a technical analysis of accused functionality, Nikon's objection should be overruled.

### F.  As the Court Has Already Decided, Plaintiffs May Put on Evidence Concerning Convoyed Sales

Nikon's last objection is simply a re-hash of their Motion *in Limine* No. 1 to exclude Dr. McDuff's purportedly "unreliable" opinions. Nikon argues that plaintiffs should be precluded from presenting evidence regarding Dr. McDuff's calculation of a "lens adjustment" because, according to Nikon, Plaintiffs and Dr. McDuff "provide no evidence that lens sales are driven by, or functionally related to, any accused functionality." (Obj., at 9.) Ironically, some of the evidence Nikon claims does not exist is summarized on the very slides to which they object. In any event, Nikon's argument is not a basis for exclusion, and is nearly word-for-word lifted from the argument Nikon made in its MIL No. 1, which this Court has already denied. (*See* D.I. 239-1, at 3–4.) Because the Court has already ruled on this issue and Nikon has pointed to no reason as this Court's previous order denying Nikon's MIL No. 1, Nikon's objection should be overruled.

| | |
|---|---|
| Dated: December 6, 2018 | FISH & RICHARDSON P.C. |
| | By: /s/ *Christopher S. Marchese* |
| | Christopher S. Marchese (SBN 170239) |
| | marchese@fr.com |
| | FISH & RICHARDSON P.C. |
| | 633 West Fifth Street, 26th Floor |
| | Los Angeles, CA 90071 |
| | Tel: (213) 533-4240, Fax: (858) 678-5099 |
| | |
| | Frank Scherkenbach (SBN 142549) |
| | scherkenbach@fr.com |
| | Kurt L. Glitzenstein (Admitted Pro Hac Vice) |
| | glitzenstein@fr.com |
| | Proshanto Mukherji (Admitted *Pro Hac Vice*) |
| | mukherji@fr.com |
| | Jeffrey Shneidman (Admitted *Pro Hac Vice*) |
| | shneidman@fr.com |
| | Elizabeth G.H. Ranks (Admitted *Pro Hac Vice*), |
| | ranks@fr.com |
| | FISH & RICHARDSON P.C. |
| | One Marina Park Drive |
| | Boston, MA 02210-1878 |
| | Tel: (617) 542-5070, Fax: (617) 542-8906 |

| | |
|---|---|
| 1 | Olga I. May (SBN 232012) |
| 2 | omay@fr.com |
| | Markus D. Weyde (SBN 285956) weyde@fr.com |
| 3 | K. Nicole Williams (SBN 291900) |
| 4 | nwilliams@fr.com |
| | Jared A. Smith (SBN 306576) |
| 5 | jasmith@fr.com |
| 6 | Oliver J. Richards (SBN 310972) |
| | orichards@fr.com |
| 7 | FISH & RICHARDSON P.C. |
| 8 | 12390 El Camino Real |
| | San Diego, CA 92130 |
| 9 | Tel:  (858) 678-5070, Fax:   (858) 678-5099 |
| 10 | |
| | Jennifer Huang (Admitted *Pro Hac Vice)* |
| 11 | jhuang@fr.com |
| 12 | FISH & RICHARDSON P.C. |
| | 60 South Sixth Street, Suite 3200 |
| 13 | Minneapolis, MN 55402 |
| 14 | Tel:  (612) 335-5070, Fax:   (612) 288-9696 |
| 15 | |
| | Andrew R. Kopsidas (Admitted *Pro Hac Vice)* |
| 16 | kopsidas@fr.com |
| | FISH & RICHARDSON P.C. |
| 17 | 1000 Maine Avenue, S.W., Ste. 1000 |
| 18 | Washington, DC 20024 |
| | Tel:  (202) 783-5070, Fax: (202) 783-2331 |
| 19 | |
| 20 | Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V. |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 6, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Christopher S. Marchese*
Christopher S. Marchese
marchese@fr.com