VINCENT J. BELUSKO (CA SBN 100282)
VBelusko@mofo.com
HECTOR G. GALLEGOS (CA SBN 175137)
HGallegos@mofo.com
JONATHAN M. SMITH (CA SBN 292285)
JonathanSmith@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

JACK W. LONDEN (CA SBN 85776)
JLonden@mofo.com
DIANA B. KRUZE (CA SBN 247605)
DKruze@mofo.com
SHAELYN DAWSON (CA SBN 288278)
Shaelyndawson@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
NIKON CORPORATION and NIKON INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS, B.V., <br><br> Plaintiffs, <br><br> v. <br><br> NIKON CORPORATION, SENDAI NIKON CORPORATION, and NIKON INC., <br><br> Defendants. | Case No. 2:17-cv-07083 RGK (MRWx) <br><br> **DEFENDANTS NIKON CORPORATION AND NIKON INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Date:  December 10, 2018 <br> Time:  1:00 p.m. <br> Courtroom:  850, 8th Floor <br><br> Hon. R. Gary Klausner |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

I.  INTRODUCTION ............................................................................................ 1

II.  THE STANDARD FOR GRANTING JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A) ....................................................................... 1

III.  PLAINTIFFS FAILED TO PROVE OWNERSHIP OF THE ASSERTED PATENTS ................................................................................... 2

IV.  PLAINTIFFS FAILED TO PROVE COMPLIANCE WITH THE MARKING STATUTE FOR THE '163 PATENT ........................................... 3

    A.  Applicable Law on Marking .................................................................. 3

    B.  Nikon Met Its Initial Burden of Production on Marking ...................... 4

    C.  Plaintiffs Failed to Present Any Evidence that the Identified HP Products Do Not Practice Any Claim of the '163 Patent ..................... 4

V.  PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF THE '163 PATENT FOR UNIDENTIFIED NIKON PRODUCTS ................................... 6

VI.  PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIM 16 OF THE '163 PATENT ................................................................................. 7

VII.  PLAINTIFFS FAILED TO PROVE INFRINGEMENT BY REPRESENTATIVE PRODUCTS FOR THE '335 PATENT .................... 10

    A.  Dr. Carley Analyzed Only 8 out of 25 Accused Nikon Cameras ....... 10

    B.  Dr. Carley Presented Evidence for All Limitations of Claims 1-3 Only with Respect to the D4, D4S, and Df Cameras ......................... 11

VIII.  PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIMS 1-3 OF THE '335 PATENT ......................................................................... 12

IX.  PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIM 1 OF THE '312 PATENT ............................................................................... 15

X.  PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIM 7 OF THE '017 PATENT ............................................................................... 16

XI.  PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIM 30 OF THE '574 PATENT ............................................................................... 17

XII.  PLAINTIFFS FAILED TO PROVE DIRECT INFRINGEMENT BY NIKON CORP. ............................................................................................ 18

XIII.  PLAINTIFFS FAILED TO PROVE INDUCED INFRINGEMENT BY EITHER NIKON CORP. OR NIKON INC. ........................................... 19

XIV.  PLAINTIFFS FAILED TO PROVE CONTRIBUTORY INFRINGEMENT BY EITHER NIKON CORP. OR NIKON INC. ........... 20

**TABLE OF CONTENTS**
(continued)

Page

XV.   PLAINTIFFS FAILED TO PROVE WILLFUL INFRINGEMENT BY
EITHER NIKON CORP. OR NIKON INC. ........................................................ 21

XVI.  PLAINTIFFS FAILED TO PROVE WILLFUL BLINDNESS BY
EITHER NIKON CORP. OR NIKON INC. ........................................................ 23

XVII. PLAINTIFFS FAILED TO PROVE THAT THEY ARE ENTITLED
TO DAMAGES ...................................................................................................... 24

XVIII.        CONCLUSION ............................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*,
   501 F.3d 1307 (Fed. Cir. 2007) ........................................................... 19

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
   811 F.3d 1334 (Fed Cir. 2016) ............................................................. 7

*Alloc, Inc. v. Pergo, L.L.C.*,
   No. 00-C-999, 2010 WL 3860382 (E.D. Wis. Sept. 30, 2010), *aff'd*,
   426 F. App'x 909 (Fed. Cir. 2011) ...................................................... 10

*Am. Med. Sys. Inc. v. Med. Eng'g Corp.*,
   6 F.3d 1523 (Fed. Cir. 1993) ................................................................. 3

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
   24 F.3d 178 (Fed. Cir. 1994). Notice ..................................................... 3

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017) ..................................................... 3, 4, 5

*Boston Scientific Corp. v. Johnson & Johnson*,
   550 F. Supp. 2d 1102 (N.D. Cal. 2008) ......................................... 24, 25

*CCC Grp., Inc. v. Martin Eng'g Co.*,
   No. 05-cv-00086-RPM-MJW, 2008 WL 4277764 (D. Colo. Sept.
   17, 2008) ............................................................................................... 6

*Creative Compounds, LLC v. Starmark Labs.*,
   651 F.3d 1303 (Fed. Cir. 2011) ........................................................... 18

*Dow Chem. Co. v. Mee Indus., Inc.*,
   341 F.3d 1370 (Fed. Cir. 2003) ........................................................... 24

*DSU Med. Corp. v. JMS Co., Ltd.*,
   471 F.3d 1293 (Fed. Cir. 2006) ..................................................... 19, 20

*E-Pass Techs., Inc. v. 3Com Corp.*,
   473 F.3d 1213 (Fed. Cir. 2007) ........................................................... 15

iii

*Eugene Baratto, Textures, LLC v. Brushstrokes Fine Art, Inc.*,
   701 F. Supp. 2d 1068 (W.D. Wis. 2010) ............................................................ 10

*Festo Corp. V. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
   535 U.S. 722 (2002), *aff'd*, 493 F.3d 1368 (Fed. Cir. 2007) ............................ 12

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ......................................................................... 20

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ........................................................................................... 23

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
   438 F.3d 1354 (Fed. Cir. 2006) ......................................................................... 21

*Halo Electrs., Inc. v. Pulse Electrs., Inc.*,
   136 S. Ct. 1923 (2016) ................................................................................. 21, 23

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
   589 F.3d 1179 (Fed. Cir. 2009) ........................................................................... 9

*Israel Bio-Eng'g Project v. Amgen, Inc.*,
   475 F.3d 1256 (Fed. Cir. 2007) ........................................................................... 2

*L & W, Inc. v. Shertech, Inc.*,
   471 F.3d 1311 (Fed. Cir. 2006) ........................................................................... 6

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.,*
   *Harris Press & Shear Div.*,
   895 F.2d 1403 (Fed. Cir. 1990) ................................................................... 24, 25

*Maxwell v. J. Baker, Inc.*,
   86 F.3d 1098 (Fed. Cir. 1996) ............................................................................. 3

*Medtronic Vascular, Inc. v. Boston Sci. Corp.*,
   No. 2:06-CV-78, 2008 WL 2744909 (E.D. Tex. July 11, 2008) ........................ 10

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
   571 U.S. 191 (2014) ............................................................................................. 7

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
   851 F.3d 1275 (Fed. Cir. 2016) ......................................................................... 22

*Mobile Telecomms. Techs., LLC v. Samsung Telecomms. Am., LLC*,
  No. 2:13-cv-259, 2014 WL 7146971 (E.D. Tex. Dec. 12, 2014) ...................... 11

*Multiform Desiccants, Inc. v. Medzam Ltd.*,
  133 F.3d 1473 (Fed. Cir. 1998) .......................................................................... 7

*PODS, Inc. v. Porta Stor, Inc.*,
  484 F.3d 1359 (Fed. Cir. 2007) ........................................................................ 18

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  702 F.3d 1351 (Fed. Cir. 2012) .......................................................................... 6

*Radware, Ltd. v. F5 Networks, Inc.*
  No. 5:13-cv-02024-RMW, 2016 WL 4427490,
  (N.D. Cal. Aug. 22, 2016) ................................................................................ 22

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) ........................................................................................... 2

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
  516 F.3d 1290 (Fed. Cir. 2008) ........................................................................ 10

*Unilin Beheer B.V. v. Tropical Flooring*,
  No. CV 14-02209 BRO (SSX), 2014 WL 2795360
  (C.D. Cal. June 13, 2014) .......................................................................... 22, 23

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ........................................................................ 25

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ........................................................................................... 12

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
  824 F.3d 1344 (Fed. Cir. 2016) ........................................................................ 24

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
  837 F.3d 1358 (Fed. Cir. 2016), *rev'd on other grounds*, 138 S. Ct.
  2129 (2018) ...................................................................................................... 21

**Statutes**

35 U.S.C.

    § 271(a) ................................................................................................ 18
    § 284 ............................................................................................... 21, 24
    § 287 ............................................................................................... 1, 3, 4

**Other Authorities**

Fed. R. Civ. P. 50(a) ................................................................................. 1

## I.    INTRODUCTION

Defendants Nikon Corp. and Nikon Inc. (collectively "Nikon") hereby move for an order granting judgment as a matter of law on fifteen issues regarding U.S. Patent Nos. 6,464,163 ("'163 Patent"),  6,731,335 ("'335 Patent"), 8,149,312 ("'312 Patent"), 8,625,017 ("'017 Patent"), and 9,728,574 ("'574 Patent"), (collectively, "Asserted Patents").  Specifically, Plaintiffs failed to prove: (1) that they own the Asserted Patents; (2) that they can recover damages pre-dating the filing of their complaint because they failed completely (*i.e.*, offered *zero* evidence) to show compliance with the marking requirements of 35 U.S.C. § 287 in their case-in-chief; (3) infringement for unidentified Nikon products for the '163 Patent; (4) infringement of Claim 16 of the '163 Patent; (5) infringement by representative products for the '335 Patent; (6) infringement of Claims 1-3  of the '335 Patent; (7) infringement of Claim 1 of the '312 Patent; (8) infringement of Claim 7 of the '017 Patent; (9) infringement of Claim 30 of the '574 Patent; (10) direct infringement of the Asserted Patents by Nikon Corp. within the United States; (11) induced infringement of the Asserted Patents by either Nikon Corp. or Nikon Inc.; (12) contributory infringement of the Asserted Patents by either Nikon Corp. or Nikon Inc.; (13) willful infringement of the Asserted Patents by either Nikon Corp. or Nikon Inc.; (14) willful blindness as to the Asserted Patents by either Nikon Corp. or Nikon Inc.; and (15) that they are entitled to damages.  On each of these issues, Plaintiffs failed to present legally sufficient evidence to support their claims, and the Court should therefore enter judgment under Rule 50(a) of the Federal Rules of Civil Procedure.

## II.    THE STANDARD FOR GRANTING JUDGMENT AS A MATTER OF LAW UNDER RULE 50(A)

A motion for judgment as a matter of law ("JMOL") on a particular issue is proper where a reasonable jury could only find for the movant on that issue after the evidence has been fully presented.  *See* Fed. R. Civ. P. 50(a)(1).  In ruling on JMOL

Case No. 2:17-cv-03221-RGK (MRWx)
Defs.' Mot. For JMOL
la-1401654

1

motions, courts apply the same standard as on summary judgment:  review the evidence of record, draw all reasonable inferences in favor of the nonmoving party, and determine whether the movant prevails as a matter of law.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

### III.   PLAINTIFFS FAILED TO PROVE OWNERSHIP OF THE ASSERTED PATENTS

Plaintiffs have the burden to prove ownership of the Asserted Patents and they failed to carry that burden.  *Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007).

The transfer of patents from the original inventors to Plaintiffs implicates: (1) two different HP entities; (2) the Plaintiffs; (3) at least four other Plaintiff-related entities; and (4) a secret holding company created for the sole purpose of acquiring and maintaining the Asserted Patents (*i.e.*, Tarsium).  (ECF No. 261 at 3.) Plaintiffs' convoluted ownership history also involves at least eight different agreements, a problem with any one of which will render Plaintiffs' title null and void.  (*Id.*)  Compounding this problem, at least two of the agreements are backdated in a legally questionable fashion—including an assignment purportedly effective *Nunc Pro Tunc* to a date before the patents were even acquired by the controlling holding company.  (*Id.*)

Plaintiffs have failed to prove title to the Asserted Patents.  ASML's corporate representative Robert Pressman made conclusory statements that a collection of agreements effectively passed the title to the Plaintiffs without explaining them in any detail.  (Dec. 4, 2018 P.M. Trial Tr. at 176:8-184:20.)  For example, he did not sufficiently clarify how title to the patents transferred after Tarsium bought 14 patents and applications, including the '163 patent, from HP, and 16 patents and applications, including the four other Asserted Patents, from Intellectual Ventures ("IV").  (Dec. 6, 2018 A.M. Trial Tr. at 203:14-16, 204:23-

205:4.)  In particular, the record does not show that Tarsium properly transferred its title to Plaintiffs through their Nunc *Pro Tunc* agreements, which Plaintiffs hid from the U.S. Patent & Trademark Office until 2017, when Plaintiffs brought patent infringement actions against Nikon.  (Dec. 6, 2018 A.M. Trial Tr. at 208:19-210:13.)  Accordingly, the Court should grant judgment as a matter of law that Plaintiffs do not own the Asserted Patents.

## IV.  PLAINTIFFS FAILED TO PROVE COMPLIANCE WITH THE MARKING STATUTE FOR THE '163 PATENT

It is black letter law that the patentee always bears the burden of pleading and proving compliance with marking.  *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996) (explaining patentee bears burden of proving compliance with marking statute); *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("[t]he patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement").  Despite bearing the burden of proof, Plaintiffs were silent on marking in their case-in-chief.  Because Plaintiffs submitted zero evidence to show that the identified HP products do not practice the asserted patents, the Court should grant judgment as a matter of law and exclude pre-filing damages for any alleged infringement of the '163 Patent.

### A.  Applicable Law on Marking

A patentee may only recover damages as of the date they provide notice to the alleged infringer.  35 U.S.C. § 287(a).  Notice may be actual, such as when a plaintiff sends a letter to the alleged infringer accusing it of infringement or by filing a complaint for patent infringement.  *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).  Notice may also be constructive through marking, which is when a patentee or its licensee distributes patent practicing products marked with the appropriate patent number.  *Am. Med. Sys. Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993).  Absent appropriate notice, Plaintiffs cannot recover pre-suit damages.  *Maxwell*, 86 F.3d at 1111.

1       An alleged infringer who challenges the patentee's compliance with marking

2   under 35 U.S.C. § 287(a) bears an initial burden of production—a low bar—

3   requiring identification of products it believes to be unmarked "patented articles."

4   *Arctic Cat*, 876 F.3d at 1368–69.  But the "burden of proving compliance with

5   marking is and at all times remains on the patentee."  *Id.* at 1367.  To meet this

6   burden, the patentee must prove the identified products do not practice the patents

7   in question during its affirmative case.  *Id.*

8          **B.**    **Nikon Met Its Initial Burden of Production on Marking**

9       Nikon identified HP's unmarked, licensed products both in discovery and

10  during opening statements at trial.  Consequently, there can be no dispute that

11  Nikon has already met the low bar under *Arctic Cat*.

12      Nikon already met its burden during discovery when it identified five HP

13  cameras and other HP products as practicing the '163 Patent in its discovery

14  responses and Dr. Darrell's expert report.  (*See* ECF No. 237, at 3-4.)  These

15  include the HP Photosmart R725, R727, R827, R927, and R967 cameras.  (*Id.*)

16  None of the HP products were marked with the asserted patent numbers, as

17  Plaintiffs' license with HP does not require any marking.  (JTX-0311; *see also* Dec.

18  6, 2018 P.M. Trial Tr. at 403:24-404:9.)  Nikon also met its burden at trial, when it

19  showed the unmarked HP Photosmart R827 camera to the jury and explained HP's

20  failure to mark during opening statement.  (Dec. 4, 2018 P.M. Trial Tr. at 127:1-15

21  (showing JTX-1857).)  Thus, there can be no dispute that Nikon has met its low

22  burden of production to "identify unmarked products."  *Arctic Cat*, 876 F.3d at

23  1369.

24         **C.**    **Plaintiffs Failed to Present Any Evidence that the Identified HP Products Do Not Practice Any Claim of the '163 Patent**

25      Under *Arctic Cat*, Plaintiffs were required in their case-in-chief to establish

26  that the identified HP products "do not practice the asserted patents to recover

27  damages under the constructive notice provisions of § 287."  *Id.* at 1369.  Plaintiffs

28

1   utterly failed to carry this burden at trial, and judgment as a matter of law is
2   therefore required.

3     Like the patentee in *Arctic Cat*, Plaintiffs licensed the '163 Patent to a third
4   party—HP here.  (*Compare* Dec. 6, 2018 P.M. Trial Tr. at 403:13-23 (confirming
5   HP is licensed) *with Arctic Cat*, 876 F.3d at 1366 (licensing asserted patents to third
6   party Honda).)  Like the patentee in *Arctic Cat*, there is no evidence that Plaintiffs
7   made any effort to ensure their licensee HP marked its products.  *See Arctic Cat*,
8   876 F.3d at 1366–67 (patentee made no effort to ensure marking by licensee); *see*
9   *also* Dec. 4, 2018 P.M. Trial Tr. at 127:9-15.)  And like the defendant in *Arctic Cat*,
10  Nikon met its burden of production by identifying unmarked, licensed products—
11  the HP cameras here.  (*Compare* Dec. 4, 2018 P.M. Trial Tr. at 127:1-15
12  (identifying the unmarked HP products) *with Arctic Cat*, 876 F.3d at 1368
13  (identifying fourteen unmarked products); *see also* Dec. 6, 2018 P.M. Trial Tr. at
14  403:24-404:9.)  Thus, *Arctic Cat*'s conclusion applies here, which places the burden
15  squarely on Plaintiffs to come forward with proof that the HP cameras do not
16  practice the '163 Patent.  876 F.3d at 1369.

17    But Plaintiffs completely ignored this burden in their case-in-chief.  They
18  presented ***no evidence*** to the jury on marking.  ASML's corporate representative
19  Mr. Pressman and Plaintiffs' damages expert Dr. DeForest McDuff both admitted
20  that Plaintiffs granted a license back to HP for the '163 Patent.  (Dec. 7, 2018 A.M.
21  Trial Tr. at 504:9-16.)  Dr. McDuff also acknowledged that marking puts certain
22  limits on damages.  (*Id.* at 504:5-8.)  Moreover, Plaintiffs' technical expert Dr.
23  Mundy for the '163 Patent made no effort to address whether the identified HP
24  products practice the '163 Patent.  Dr. Mundy made zero mentions of HP, cited zero
25  HP documents, and discussed zero HP products.  This complete absence of
26  evidence makes it impossible for any jury to conclude that Plaintiffs carried their
27  burden on marking—they cannot prove that the identified HP products do not
28  practice any claim of the asserted patents.  *See Arctic Cat*, 876 F.3d at 1369.  The

Court should therefore grant judgment as a matter of law of no pre-filing damages.

## V.   PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF THE '163 PATENT FOR UNIDENTIFIED NIKON PRODUCTS

Plaintiffs bear the burden of proving infringement. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1358 (Fed. Cir. 2012). When a patentee seeks to prove infringement for multiple devices, "it must make a prima facie showing of infringement as to each accused device . . . ." *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006). In their rush to present their case-in-chief, Plaintiffs ignored this basic requirement. Their technical expert Dr. Joseph Mundy failed to identify the names for any of the 43 products he believes to be infringing the '163 Patent, making it impossible for a jury to conclude that these unidentified products infringe.

Dr. Mundy opined that "43 accused cameras" infringe the '163 Patent because they have Omron's Face Detection software and or hardware. (Dec. 7, 2018 A.M. Trial Tr. at 578:25-579:3.) He explained that nine products have "Okao" software, four have "Parfait" hardware, and thirty have "Pine" hardware. (*Id.* at 579:4-17.) But he never provided the names for any of the 43 accused products and never matched up the software/hardware names to any of the products on the record. (*See generally*, Dec. 7, 2018 Trial Tr.) The jury has no basis to identify which 43 products are at issue, much less conclude that these unidentified products infringe the '163 Patent. (*See id.*)

Accordingly, judgment as a matter of law of non-infringement is appropriate for all of the unidentified Nikon products. *See, e.g., CCC Grp., Inc. v. Martin Eng'g Co.*, No. 05-cv-00086-RPM-MJW, 2008 WL 4277764, at *8 (D. Colo. Sept. 17, 2008) (granting JMOL of non-infringement because accused products were custom installations based on individual customers' needs and patentee's expert failed to testify that each claim limitation is present in each accused product). Thus, no reasonable jury can find that any of the accused products infringe the '163

6

Patent.

## VI.   PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIM 16 OF THE '163 PATENT

Basic tenets of patent law require Plaintiffs to introduce evidence of infringement for each and every limitation of each asserted claim during their case-in-chief. *See, e.g.*, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 198–9 (2014) (summarizing cases explaining patentee's burden to prove infringement). Finding infringement under the "doctrine of equivalents" analysis requires a showing that the "equivalent" performs "substantially the same function . . . in substantially the same way to achieve substantially the same result." *Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998) (citation omitted). "A patentee must establish 'equivalency on a limitation-by-limitation basis' by 'particularized testimony and linking argument' as to the insubstantiality of the differences between the claimed invention and the accused device or process." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed Cir. 2016).

Plaintiffs accused the Nikon cameras' ability to detect human faces but failed to prove infringement of at least the following limitations of Claim 15 of the '163 Patent: (1) "first filtering means"; (2) first filtering means that is "configured to correlate said input image with a reference image pattern"; (3) "a reference image pattern being indicative of said target image pattern"; (4) "second filtering means"; and (5) "image pattern detector."

First, "first filtering means" is a means-plus-function limitation, and the corresponding structure is the linear matched filter 56 programmed to employ an algorithm described at 7:10-21 and 7:44-53. (Dec. 7, 2018 A.M. Trial Tr. at 601:6-602:2.) But Plaintiffs failed to identify any structures in the accused products that perform the recited functions or contain the algorithm at 7:10-21 and 7:44-53. (Dec. 7, 2018 P.M. Trial Tr. at 606:17-612:21.) Indeed, Plaintiffs' expert Dr.

Mundy merely pointed to one subtraction operation and ignored other operations performed by the Omron source code in concluding that structure corresponding to or equivalent to the linear matched filter 56 exists.  (*Id.*)  Such incomplete analysis is insufficient to prove infringement.

Second, Plaintiffs did not show that the accused products perform any correlation, that a correlation image is derived, or that only regions that have a local maximum in such a correlation image are selected.  Dr. Mundy pointed to a "confidence value" that is allegedly compared with a threshold.  (Dec. 7, 2018 P.M. Trial Tr. at 610:24-611:16.)  But this confidence value is not at all the same as a correlation value.  Indeed, nowhere did Dr. Mundy explain that the accused products perform a linear correlation that results in a correlation value.  Dr. Mundy also provided no testimony or other evidence that a correlation image is derived by the accused products.

Third, no evidence indicates that the accused products correlate an input image with a reference image pattern "being indicative of said target image pattern" (*i.e.*, a human face in the accused products).  Dr. Mundy only showed that some pattern can be used to detect a face.  (*Id.*)  Indeed, Dr. Mundy provides no explanations as to how a pattern used in the accused products is indicative of a human face.  (*Id.* at 609:12-610:5.)

Fourth, "second filtering means" is similarly a means-plus-function limitation and the corresponding structure is the non-linear filter 66 programmed to employ an algorithm described at 7:64-8:7.  (*Id.* at 614:22-617:21.)  Again, Plaintiffs failed to identify any structures in the accused products that perform the recited functions or contain the algorithm at 7:64-8:7.  Nothing shows that contrast is detected or that a contrast value and a threshold are compared, as the corresponding algorithm requires.

Fifth, Plaintiffs failed to show that the accused products include an "image pattern detector" that can perform target image pattern detection in an image by

itself.  (*Id.* at 618:20-620:19.)  Dr. Mundy presented no evidence that the accused product's structure that allegedly corresponds to the claimed "image pattern detector" can actually perform image pattern detection.

Moreover, Plaintiffs failed to prove infringement under the doctrine of equivalents.  As a preliminary matter, Plaintiffs are precluded from asserting infringement by equivalents due to prosecution history estoppel.  Even if they were permitted to pursue infringement by equivalents, Plaintiffs did not show that detecting candidate regions based on a comparison of confidence values with fixed thresholds is the same or equivalent to detecting local maxima in a correlation image.  (Dec. 7, 2018 P.M. Trial Tr. at 610:24-611:16.)  Also, nothing in the record shows that a non-linear filter is equivalent to a linear matched filter.  (*Id.* at 606:17-612:21.)

Because Plaintiffs failed to carry their burden of proving infringement of each and every limitation of Claim 15 for the Nikon products, judgment as a matter of law of non-infringement is appropriate for Claim 16, which depends on Claim 15.  In addition, Plaintiffs did not prove at least the following limitations of Claim 16 of the '163 Patent: (1) "linear matched filter"; (2) "a linear convolution operation"; and (3) reference image pattern that is "representative of a human face" for the same reasons as discussed above with respect to the "first filtering means," correlation, and reference image pattern, respectively.  Thus, no reasonable jury could find infringement of Claim 16.  *See, e.g., Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1187 (Fed. Cir. 2009) (granting summary judgment of non-infringement because patentee failed to "specifically identify[] the allegedly infringing structure in the accused device").

Accordingly, Defendants are entitled to a judgment as a matter of law on non-infringement as to Claim 16 of the '163 Patent.

## VII.   PLAINTIFFS FAILED TO PROVE INFRINGEMENT BY REPRESENTATIVE PRODUCTS FOR THE '335 PATENT

A patentee may attempt to prove infringement by using representative products.  *See TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1308 (Fed. Cir. 2008).  However, representative product groupings do not relieve the patentee of its burden to prove infringement with respect to each and every product accused of infringement.  The patentee must still present evidence showing that each of the other products actually functions in the same manner as the representative product, and therefore also infringe.  *Id.*; *Eugene Baratto, Textures, LLC v. Brushstrokes Fine Art, Inc.*, 701 F. Supp. 2d 1068, 1080-81 (W.D. Wis. 2010).  Indeed, it "is plaintiff's burden to prove by a preponderance of the evidence that each accused product practices all the elements of at least one claim of an asserted patent."  *Id.* at 1080.

### A.   Dr. Carley Analyzed Only 8 out of 25 Accused Nikon Cameras

Here, although Plaintiffs' technical expert Dr. Richard Carley accused 25 Nikon cameras of infringing the '335 Patent, he analyzed only 8 cameras—the D4 (which the parties have agreed is representative of the Df and D4S), D5, D3300, D5300, D5500, and D5600.  Dr. Carley did not examine other cameras—D3100, D3200, D750, D810, D810A, D500, D7500, V1, V2, V3, S1, S2, J1, J2, J3, J4, or AW1.  Nor is there any evidence addressing whether the examined cameras perform the same or substantially similar operation to the unexamined cameras.

As such, Dr. Carley has no basis to extend his infringement read to the cameras for which he did not analyze, which ultimately dooms the representative product theory.  *See Medtronic Vascular, Inc. v. Boston Sci. Corp.*, No. 2:06-CV-78, 2008 WL 2744909, at *3 (E.D. Tex. July 11, 2008) (granting JMOL of non-infringement for accused products that patentee's expert failed to test for infringement); *Alloc, Inc. v. Pergo, L.L.C.*, No. 00-C-999, 2010 WL 3860382, at *10 (E.D. Wis. Sept. 30, 2010), *aff'd*, 426 F. App'x 909 (Fed. Cir. 2011) (granting

1   summary judgment of non-infringement for untested products because expert

2   provided no basis to show the untested products were the same as the tested

3   products).

**B.    Dr. Carley Presented Evidence for All Limitations of Claims 1-3 Only with Respect to the D4, D4S, and Df Cameras**

5       To compound the problem, Dr. Carley improperly grouped the Nikon

6   cameras when addressing each claim limitation at trial.  For example, for the

7   preamble of Claim 1, he argued that the Df camera was representative of "Group 1

8   Cameras" (including the D3100, D3200, D5600, D3300, D5300, D5500, D500,

9   D7500, D750, D810, D810A, V1, J1, J2, S1, V3, and J4), without providing any

10  analysis of other products' pixel schematics.  (Dec. 6, 2018 A.M. Trial Tr. at

11  270:13-271:13.)  Similarly, he only discussed the D4, D4S, Df, and D5 cameras for

12  the "fully depleting" limitation of Claim 1; and the D4, D4S, and Df cameras for

13  the remaining steps in Claim 1.  (*Id.* at 264:6-290:1.)  Furthermore, Dr. Carley only

14  relied on a timing diagram for the D4, D4S, and Df cameras to illustrate alleged

15  infringement of Claim 2, and a user manual for the Df camera for Claim 3.  (*Id.* at

16  290:18-294:20.)  For all other cameras, he simply listed their technical

17  specifications or manuals, and concluded without providing any analysis that they

18  operate in the same way.   (*Id.*)  Thus, the D4, D4S, and Df cameras are the only

19  accused Nikon cameras for which Dr. Carley presented alleged infringement

20  evidence for all limitations of Claims 1-3.  No jury could find infringement for all

21  other cameras for which Dr. Carley did not present element-by-element analysis.

22      Accordingly, judgment as a matter of law of non-infringement is appropriate

23  for the unexamined products and for unpresented products, and Plaintiffs'

24  infringement case should be narrowed to the Nikon D4, Df, and D4S cameras for

25  the '335 Patent.  *Mobile Telecomms. Techs., LLC v. Samsung Telecomms. Am.,*

26  *LLC*, No. 2:13-cv-259, 2014 WL 7146971, at *2 (E.D. Tex. Dec. 12, 2014) ("It is

27  without question that [the patentee] must prove infringement for each of the

28

accused products by a preponderance of the evidence, and that [the patentee] bears

the risk of using representative products.").

## VIII.  PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIMS 1-3 OF THE '335 PATENT

Plaintiffs failed to prove at least three limitations of Claims 1-3: (1) "turning

on" and "turning off" sequence; (2) "a reset transistor coupled between a power

supply and the single sensing node"; and (3) "fully depleting" the photodiodes for

all accused cameras.  Also, Plaintiffs failed to prove that the Aptina image sensors

perform any of the claimed steps of Claims 1-3, because Plaintiffs did not present

any timing charts illustrating how these sensors operate.

As an initial matter, the Court already held in its Amended Summary

Judgment Order that "the Accused Products cannot literally infringe," because the

transfer transistors remain in an "off" state while steps 1(c) and 1(e) are allegedly

performed instead of "turning off" or transitioning from on to off.  (ECF No. 305 at

14.)  Therefore, Plaintiffs must prove that the Nikon cameras infringe under the

doctrine of equivalents.  (Dec. 6, 2018 P.M. Trial Tr. at 323:9-25.)

Also, prosecution history estoppel precludes Plaintiffs from attempting to

show infringement under doctrine of equivalents.  "Estoppel arises when an

amendment is made to secure the patent and the amendment narrows the patent's

scope."  *Festo Corp. V. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722,

736 (2002), *aff'd*, 493 F.3d 1368 (Fed. Cir. 2007).  Here, during the prosecution of

the '335 patent, the patent examiner found that the pending method claims were

unpatentable over the Guidash reference.  (Dec. 6, 2018 A.M. Trial Tr. at 302:24-

310:16.)  In response, the applicants narrowed the scope of Claim 1 (which

corresponds to Claim 16 in the application) to distinguish it from the Guidash

reference.  (*Id.*)  Although Plaintiffs have the burden to show that prosecution

history estoppel does not apply, Plaintiffs presented no evidence that this

amendment was made for purposes other than patentability.  *Warner-Jenkinson Co.,*

*Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33 (1997) ("[W]e think the better rule is to place the burden on the patent holder to establish the reason for an amendment required during patent prosecution.").  And Plaintiffs cannot carry that burden as Claim 1 was clearly narrowed to overcome the examiner's rejection based on the Guidash reference.  Thus, prosecution history estoppel applies to Claim 1.

Even if Plaintiffs were allowed to pursue infringement theory under the doctrine of equivalents, Plaintiffs failed to show that the accused products infringe. First, Plaintiffs did not prove that these accused products perform the "turning on" and "turning off" sequence recited in Claim 1 by equivalents.  Dr. Carley did not show that the passive state of keeping a transistor on/off is equivalent to the active step of turning a transistor on/off.  (Dec. 6, 2018 A.M. Trial Tr. at 282:24-284:6.) And, for steps 1(d), 1(e), and 1(f), Dr. Carley did not even provide a function-way-result test to show that these active and passive states are equivalent.  (*Id.* at 285:2-286:25 for 1(d), 287:17-288:4 for 1(e), and 288:25-289:3 for 1(f).)  Therefore, no reasonable jury can find that the accused products perform the recited "turning on" and "turning off" sequence by equivalents.

Second, Plaintiffs did not show that the Toshiba image sensor in the D5 and certain Aptina image sensors in the mirrorless cameras satisfy the "reset transistor coupled between" limitation recited in the preamble of claim 1.  The Court held that the "Nikon D5 camera cannot literally infringe [the claims of the '335 patent] because its reset transistor and sensing node are not directly connected."  (ECF No. 305 at 22 (construing "coupled" to mean "directly connected").)  The Court's holding also applied to the Nikon cameras that incorporate the Aptina AR1410 image sensor (i.e., V2, J3, S2, and AW1).  (*Id.* at 21 n.1.)

At trial, Dr. Carley did not show how the Toshiba and Aptina image sensors, which do not have a reset transistor coupled to a sensing node, were equivalent to the claimed image sensor with "a reset transistor coupled [to] . . . the single sensing node, for outputting the photoelectric charges stored in the single sensing node"

13

(Dec. 6, 2018 A.M. Trial Tr. at 272:5-274:2.)  He ignored the extra control transistor that exists between the reset transistor and sensing node in these Toshiba and Aptina image sensors, even though he admitted that turning the control transistor off would cut off electrical connection between the reset transistor and sensing node.  (*Id.* at 313:24-314:2, 317:13-21.)  Merely stating that this extra control transistor did not affect the reset transistor's ability to "output[] the photoelectric charges stored in the single sensing node" is insufficient to prove infringement under the doctrine of equivalents.

Third, Plaintiffs did not present sufficient evidence that the photodiodes in the accused cameras are "fully deplet[ed]."  Dr. Carley stated that the "step of fully depleting the photodiodes . . . means removing all the charge from them right before we go take a new image.".  (Dec. 6, 2018 A.M. Trial Tr. at 251:4-6; *see also id.* at 273:24-274:2; *id.* at 277:17-20 ("cameras do it . . . to make absolutely sure there's no charge left in the photodiodes").)  But Dr. Carley did not show any measurements of the actual charges in the photodiodes, and thus, Plaintiffs failed to show that "all the charge" from the photodiodes are removed in the accused products.  Plaintiffs rely on Nikon's corporate representative Toru Shima's deposition testimony about how the photodiodes are emptied out in theRenesas image sensors.  (Dec. 6, 2018 A.M. Trial Tr. at 237:18-238:17.)  That testimony alone does not show that the photodiodes are fully depleted, or that the charges are removed to the noise floor, in the D4, D4S, and Df cameras.  And his testimony does not extend to any of the other products accused of infringing the '335 patent.  Thus, no reasonable jury can find that the accused products' photodiodes are "fully depleted."

Fourth, Plaintiffs presented zero evidence that the Aptina image sensors perform the claimed steps of Claims 1-3.  Dr. Carley's explanation included zero timing charts.  He merely stated that he has reviewed "the timing diagrams for the Aptina sensors," which are not in evidence, and that "they operate in exactly the

same way as the D5 sensors" (Dec. 6, 2018 A.M. Trial Tr. at 279:17-19.)  Without the timing charts, the jury cannot confirm how the Aptina image sensors operate and thus has no basis to find that these sensors perform the claimed steps.

Finally, to prove infringement of a method claim, a patentee must show at least one specific instance of use of the claimed methods in the U.S.  *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007).  Plaintiffs failed to carry that burden at trial, as they introduced no evidence of customers using the claimed methods.  He never opined that a customer in the U.S. has practiced the methods of Claims 1-3, or that one of the Nikon defendants has practiced the claimed method in the U.S.  (*See* Dec. 6, 2018 A.M. Trial Tr. at 295:5-15.)  He made a conclusory statement that the '335 patent is infringed every time a picture is taken, but did not explain why this was the case and did not show a single instance of actual use.  (*Id.*)

Accordingly, judgment as a matter of law of no infringement of method Claims 1-3 is appropriate because Plaintiffs failed to introduce any evidence of use of the claimed method, which forecloses both direct and indirect infringement of Claims 1-3.

## IX.  PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIM 1 OF THE '312 PATENT

Plaintiffs failed to prove at least two limitations of Claim 1: (1) a sensing node that is selectively shared "in response to a line select signal of the current scan line";  and (2) "a sensing node of a unit pixel in a previous scan line is selectively shared with a sensing node of a unit pixel in a current scan line . . . ."

As Plaintiffs' expert Dr. Subramanian admitted, the D4 cannot literally infringe Claim 1.  (*See, e.g.*, Dec. 6, 2018 P.M. at 367:14-18.)  First, they do not include "a line select signal" that causes selective sharing of a sensing node in a current scan line and a sensing node in a previous scan line under the proper construction of "line select signal."  Second, the D4 does not share sensing nodes between a current and a previous scan line, regardless of whether it is "in response

to a select signal," because the accused products share sensing nodes only between a current and next scan line.  Lack of literal infringement forecloses any infringement finding where, as here, prosecution history estoppel precludes Plaintiffs from attempting to prove infringement through the doctrine of equivalents.

Even if Plaintiffs can pursue the doctrine of equivalents, Plaintiffs failed to carry their burden to show that the D4 infringes Claim 1 under the doctrine of equivalents.  Dr. Subramanian did not sufficiently articulate why using independent control signals to control the floating-diffusion switch and the select transistor (as it is done in the D4) in the accused products achieve the floating diffusion switching function via a substantially the same way to achieve a substantially the same result from the perspective of one of ordinary skill in the art.  (Dec. 6, 2018 P.M. Trial Tr. at 371:22-372:5.)  Also, Dr. Subramanian did not provide sufficient analysis of why sharing sensing nodes between a current and a previous scan line is equivalent to sharing sensing nodes between a current and next scan line.  (*Id.* at 367:21-369:2.) In particular, he did not articulate why "previous" is equivalent to "next."  (*Id.*) Therefore, no reasonable jury can find that the accused products infringe by the doctrine of equivalents.

Accordingly, Defendants are entitled to judgment as a matter of law of no infringement of Claim 1.

## X.   PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIM 7 OF THE '017 PATENT

Plaintiffs failed to prove at least the following limitation of Claim 7: have "a switching device configured to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal . . . ."

No literal infringement exists under the proper construction of "select signal" because the D4's floating diffusion switch is not controlled by the "select signal"

(SEL signal) but instead is controlled by a separate, floating diffusion switch signal (FDSW signal).  (Dec. 6, 2018 P.M. Trial Tr. 361:18-23.)  Even if Plaintiffs are allowed to pursue doctrine of equivalents, which they are not due to prosecution history estoppel, they have failed to show that having two separate signals (SEL and FDSW signals), one for the select transistor and another for the floating diffusion switch, is equivalent to having just one signal for controlling both.  (*Id.* at 363:10-365:1.)

Moreover, "a switching device" is a means-plus-function limitation with the claimed function of "interconnect a first sensing node of a first sensing pixel in response to a select signal" and corresponding structure of Figure 4 in the '017 patent.  Plaintiffs presented no evidence that the D4 has the same or equivalent structure to that in Figure 4.  Thus, the jury has no basis to compare the two structures to determine whether they are the same or equivalent.

Accordingly, judgment as a matter of law of no infringement of Claim 7 is appropriate.

## XI.   PLAINTIFFS FAILED TO PROVE INFRINGEMENT OF CLAIM 30 OF THE '574 PATENT

Plaintiffs failed to prove at least the following limitation of Claim 30: "generate . . . an output signal that is indicative of the photocharge generated at the first pixel."

Dr. Subramanian's analysis assumed that "one pixel" includes two photodiodes in the accused products.  (Dec. 6, 2018 P.M. at 386:19-387:21, 388:16-389:1.)  Thus, under his construction, the "generate photocharges at the first pixel" limitation requires generating photocharges in both photodiodes.  (*Id.*)  But he never presented any evidence that the accused products "generate . . . an output signal that is indicative of the photocharge generated at" both photodiodes at that same pixel.  (*Id.*)  Instead, he only opined that the output signal is indicative of the photocharge generated at one of the two photodiodes.  Plaintiffs cannot

conveniently interpret the term "pixel" as containing two photodiodes for one limitation and as containing only one photodiode for another limitation in the same claim. *See PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007) ("We apply a presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.") (citation omitted).  Thus, Dr. Subramanian's infringement analysis fails.

Even if Plaintiffs are allowed to pursue doctrine of equivalents, which they are not due to prosecution history estoppel, they have failed to show how an output signal that is indicative of photocharge generated at one photodiode is equivalent to an output signal that is indicative of photocharge generated at two photodiodes.

Accordingly, Defendants are entitled to judgment as a matter of law of no infringement of Claim 30.

## XII.   PLAINTIFFS FAILED TO PROVE DIRECT INFRINGEMENT BY NIKON CORP.

Plaintiffs bear the burden of proving patent infringement.  *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1314 (Fed. Cir. 2011).  Direct infringement requires proof that Nikon "makes, uses, offers to sell, or sells [the accused products], within the United States or imports into the United States . . ." 35 U.S.C. § 271(a).

Here, Plaintiffs introduced no evidence during their case-in-chief that Nikon Corp., a Japanese entity, performs any act of direct infringement in the U.S.  The record is devoid of any evidence suggesting that Nikon Corp. makes, uses, offers to sell, or sells any products in the U.S. or imports products into the U.S.  Faced with this lack of evidence, a reasonable jury must necessarily conclude Nikon Corp. does not infringe any asserted claim of the Asserted Patents, and thus, judgment as a matter of law of no direct infringement as to Nikon Corp. is appropriate.

### XIII.  PLAINTIFFS FAILED TO PROVE INDUCED INFRINGEMENT BY EITHER NIKON CORP. OR NIKON INC.

In order to present a *prima facie* case of induced infringement, the patentee must show that "the alleged infringer knew or should have known his actions would induce actual infringement . . . ." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (*en banc* in relevant part).  This includes proof that the accused infringer knew of the patent.  *Id.*  Induced infringement also requires proof of a specific intent to induce-i.e., something more than "just intent to cause the acts that produce direct infringement."  *Id.* at 1306.

At trial, Plaintiffs failed to prove either requirement of induced infringement for both Nikon Corp. and Nikon Inc.  During Plaintiffs' case-in-chief, they presented no evidence that Nikon Inc. knew about the patents prior to the start of this lawsuit, much less before Nikon Corp. designed the products and Nikon Inc. sold them.  In fact, the record evidence is empty on inducement.  The only aspect of infringement addressed by Plaintiffs' case-in-chief are (1) whether certain limitations of the asserted claims are infringed by the Nikon products (*see generally* Dec. 6 & 7, 2018 Trial Tr. (testimony by Plaintiffs' technical expert) and (2) whether Nikon published user manuals telling its customers to take a picture.  (*See* Dec. 6, 2018 A.M. Trial Tr. at 296:15-297:2.)  But these pieces of evidence are legally insufficient to create a triable issue on induced infringement.  There is no evidence that Nikon Inc. knew about the Asserted Patents before an act of direct infringement.  Nor is there any evidence that a Nikon defendant actively encouraged its customers to infringe the Asserted Patents after learning of the patents.  User manuals describing the camera features accused of infringement, standing alone, do not create a triable issue of induced infringement.  *ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d 1307, 1313–14 (Fed. Cir. 2007).  Also, there is no evidence that Nikon acted despite the knowledge of potential infringement.  The freedom to operate searches only establish Nikon's knowledge

of the patent and does not address Nikon's specific intent to induce.   (Dec. 6, 2018
A.M. Trial Tr. at 218:23-220:5, 222:14-227:18.)  There is no evidence, direct or
indirect, on Nikon's state of mind after learning about the patent.

Accordingly, judgment as a matter of law of no induced infringement for
both Nikon Corp. and Nikon Inc. is appropriate.

### XIV.  PLAINTIFFS FAILED TO PROVE CONTRIBUTORY INFRINGEMENT BY EITHER NIKON CORP. OR NIKON INC.

To prove contributory infringement, the patentee must prove (1) there is
direct infringement; (2) the accused infringer had knowledge of the patent; (3) the
component has no substantial non-infringing uses; and (4) the component is a
material part of the invention.  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326
(Fed. Cir. 2010).  Moreover, "Section 271(c) has a territorial limitation requiring
contributory acts to occur in the United States."  *DSU Med.*, 471 F.3d at 1304.
Plaintiffs failed to carry their burden on all prongs of contributory infringement,
and accordingly, judgment as a matter of law of no contributory infringement is
appropriate.

First, Plaintiffs never introduced any evidence of direct infringement that
could be tied to contributory infringement.  Second, Plaintiffs introduced zero
evidence in their case-in-chief regarding Nikon Inc.'s knowledge of the Asserted
Patents.  Third, the evidence shows that there are substantial non-infringing uses for
the Nikon cameras; for example, Plaintiffs' technical expert Dr. Subramanian
admitted that the sensing nodes are shared only in low ISO modes in the cameras
accused of infringing the '312, '017, and '574 patents and not in the high ISO
modes.  (Dec. 6, 2018 P.M. Trial Tr. at 390:7-22.)  Fourth, the accused Nikon
products are not components—they are complete cameras.  And fifth, as described
above, Plaintiffs introduced no evidence during their case-in-chief that Nikon
Corp., a Japanese entity, performs any act of infringement in the U.S.

Because no reasonable jury can conclude the Nikon defendants contributed to

infringement, judgment as a matter of law of no contributory infringement for both Nikon Corp. and Nikon Inc. is appropriate.

## XV.   PLAINTIFFS FAILED TO PROVE WILLFUL INFRINGEMENT BY EITHER NIKON CORP. OR NIKON INC.

In *Halo Electrs., Inc. v. Pulse Electrs., Inc.*, 136 S. Ct. 1923 (2016), the Supreme Court instructed that willful infringement is "a 'punitive' or 'vindictive' sanction" that is "reserved for egregious cases of culpable behavior." *Id.* at 1932-35.  In order to be liable for willful infringement, pursuant to 35 U.S.C. § 284, the infringing conduct must be "willful, wanton, malicious, [in] bad-faith, deliberate, consciously wrongful [or] flagrant . . . ." *Id.* at 1932.  It can also be described as action that was taken "for no purpose other than to steal the patentee's business" or "egregious infringement behavior." *Id.*

The patentee must prove by a preponderance of the evidence that the defendant acted despite a risk of infringement that was "'either known or so obvious that it should have been known to the accused infringer.'" *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (citing *Halo*, 136 S. Ct. at 1930), *rev'd on other grounds*, 138 S. Ct. 2129 (2018).  "Willful infringement is not established by the simple fact of infringement, even where the accused has knowledge of the patents."  *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1368 (Fed. Cir. 2006) (citation omitted).  Rather, "[t]he patentee must present threshold evidence of culpable behavior before the burden of production shifts to the accused to put on evidence that it acted with due care." *Id.* (citation omitted).

Not only did Plaintiffs fail to separately or specifically allege willfulness in their Complaint (*see* ECF No. 228-1), Plaintiffs also failed to present any evidence of any pre-litigation behavior that is willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, or flagrant.  First, Plaintiffs did not identify any evidence indicating pre-litigation conduct by Nikon Corp. or Nikon Inc. relating to

1   willfulness for the '312, '017, and '574 Patents.  *Mentor Graphics Corp. v. EVE-*

2   *USA, Inc.*, 851 F.3d 1275, 1295 (Fed. Cir. 2016) ("[W]illfulness [generally] will

3   depend on an infringer's prelitigation conduct because a patentee must have a good

4   faith basis for alleging willful infringement.") (citation omitted).  And they did not

5   identify any such evidence relating to Nikon Inc. for any of the asserted patents.  As

6   Nikon's corporate representative Mr. Nobuyuki Kato testified, Nikon Inc. only

7   became aware of the '335 and '163 Patents when Plaintiffs filed a Complaint at the

8   U.S. International Trade Commission and like Nikon Corp., it only became aware

9   of the '312, '017, and '574 Patents when Plaintiffs filed the Complaints in the 3221

10   and 7083 cases.  (Dec. 6, 2018 A.M. Trial Tr. at 219:11-18.)

11        Second, Plaintiffs have not presented any evidence that Nikon Corp.'s pre-

12   suit knowledge of and conduct regarding the '335 and '163 Patents rose to any level

13   above mere knowledge, let alone an egregious case of culpable behavior.  The

14   evidence only shows the existence of freedom to operate searches with respect to

15   the '335 and '163 Patents, and no changes in design to products.  (Dec. 6, 2018

16   A.M. Trial Tr. at 226:20-227:18.)  Nikon maintained and still maintains a good-

17   faith belief that the asserted patents are invalid and not infringed.

18        Third, like in *Radware, Ltd. v. F5 Networks, Inc.*, it is undisputed that

19   Plaintiffs did not send a pre-litigation demand or notice letter to Nikon regarding

20   alleged infringement of any of the asserted patents.  No. 5:13-cv-02024-RMW,

21   2016 WL 4427490, at *3-4 (N.D. Cal. Aug. 22, 2016) (granting defendant's

22   renewed motion for judgment as a matter of law on willfulness when plaintiff never

23   actively informed defendant of any of its patents or patent applications before the

24   filing of the suit and never sent a pre-suit notice letter to defendant to warn

25   defendant of its infringement).

26        Fourth, even with actual notice of the asserted patents at the filing of the

27   Complaint, post-filing acts are not enough to create a claim for willful infringement

28   as a matter of law.  *Unilin Beheer B.V. v. Tropical Flooring*, No. CV 14-02209

BRO (SSX), 2014 WL 2795360, at *6-7 (C.D. Cal. June 13, 2014) (citation omitted).  And Plaintiffs have not shown any culpable behavior associated with any post-filing acts.  (Dec. 6, 2018 A.M. Trial Tr. at 229:6-230:14.)

Plaintiffs have not offered any evidence showing that Nikon's conduct rises even close to the level of "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful [or] flagrant" conduct required by *Halo*.  In fact, the evidence demonstrated the opposite—namely that Nikon Inc. had no pre-suit knowledge of any of the asserted patents and that Nikon Corp.'s pre-suit conduct with respect to the asserted patents was in no way indicative of culpable behavior.  Because no reasonable jury can conclude that Nikon willfully infringed, judgment as a matter of law of no willfulness as well as no enhanced damages for both Nikon Corp. and Nikon Inc. is appropriate.

## XVI.  PLAINTIFFS FAILED TO PROVE WILLFUL BLINDNESS BY EITHER NIKON CORP. OR NIKON INC.

Willful blindness requires a defendant to take "deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).  A defendant who merely knows of a substantial and unjustified risk of wrongdoing is not willfully blind.  *Id.* at 770.  Plaintiffs failed to present any evidence regarding any deliberate actions that Nikon took to avoid learning of the Asserted Patents let alone Nikon's subjective belief on the existence of all of the asserted patents.  The evidence does not show Nikon's subjective belief that there is a high probability that each of the Asserted Patents exists for the same reasons indicated in the previous section.  Particularly, Nikon Inc. has never conducted a freedom to operate search and did not learn of any of the asserted patents until Plaintiffs filed suits against Nikon.  (Dec. 6, 2018 A.M. Trial Tr. at 219:11-18, 221:15-22.)  Nikon Corp. did not know of the contents of the '312, '017, and '574 Patents until Plaintiffs filed suit and merely had knowledge of the

'335 and '163 Patents through freedom to operate searches.  There is zero evidence that Nikon knew of a risk of wrongdoing or took deliberate actions to avoid learning of such risk.  Plaintiffs cannot meet the high burden for establishing willful blindness.  *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1352 (Fed. Cir. 2016).  No reasonable jury can conclude that Nikon was willfully blinded.  Accordingly, the Court should enter judgment as a matter of law in Nikon's favor on willful blindness.

## XVII. PLAINTIFFS FAILED TO PROVE THAT THEY ARE ENTITLED TO DAMAGES

Even if the jury finds infringement of a valid patent, Plaintiffs failed to present a legally sound basis for the jury to award reasonable royalty damages.  Although there is a presumption of damages when infringement is proven, "[t]he patentee must . . . prove the amount of damage."  *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., Harris Press & Shear Div.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990).  "The reasonably royalty analysis involves an approximation of the market as it would have hypothetically developed, and this, 'in turn, requires *sound economic and factual predicates*.'"  *Boston Scientific Corp. v. Johnson & Johnson*, 550 F. Supp. 2d 1102, 1120 (N.D. Cal. 2008) (quoting *Riles,* 298 F.3d at 1311 (emphasis added)).  Indeed, "[t]he district court's obligation to award some amount of damages 'does not mean that a patentee who puts on little or no satisfactory evidence of a reasonable royalty can successfully appeal on the ground that the amount awarded by the court is not 'reasonable' and therefore contravenes section 284.'"  *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) (quoting *Lindemann*, 895 F.2d at 1407).  "Where the record lacks any evidence of a reasonable royalty rate, the Federal Circuit has approved of awarding 'zero damages' because the statute 35 U.S.C. § 284 requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the

Case No. 2:17-cv-07083 RGK (MRWx)
Defs.' Mot. For JMOL
la-1401654

24

possible meaning of the statute." *Boston Scientific Corp.*, 550 F. Supp. 2d at 1120

(quoting *Lindemann*, 895 F. 2d at 1407) (quotation marks omitted).

Here, Plaintiffs' damages expert Dr. McDuff presented damages theories that

are entirely unsupported by the record or are contrary to well-established law.

Plaintiffs' failure to provide any evidentiary support for their damages amount is

fatal and not sufficient to sustain an award of damages. (*See generally*, Dec. 6,

2018 P.M. Trial Tr.; Dec. 7, 2018 A.M. Trial Tr.)  And it "cannot help but skew the

damages horizon for the jury . . . ." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d

1292, 1320 (Fed. Cir. 2011) (granting a new trial after plaintiff's expert presented

damages numbers to the jury that were based on legally flawed theories because of

inaccurate numbers).  Because of fundamental defects in Plaintiffs' reasonable

royalty, the Court should grant judgment as a matter of law on damages.

## XVIII.   CONCLUSION

For the foregoing reasons, Nikon requests that the Court grant judgment as a

matter of law in favor of Nikon.


Dated:        December 10, 2018        Respectfully submitted,

                                       JACK LONDEN
                                       VINCENT J. BELUSKO
                                       MORRISON & FOERSTER LLP


                                       By: */s/ Vincent J. Belusko*
                                            Vincent J. Belusko

                                       Attorneys for Defendants
                                       NIKON CORPORATION;
                                       AND NIKON INC.