FILED
CLERK, U.S. DISTRICT COURT

DEC 1 3 2018

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CARL ZEISS, et al., | ) | CV 17-07083-RGK (MRWx) |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | JURY INSTRUCTIONS |
| | ) | |
| NIKON CORPORATION, et al. | ) | |
| Defendant(s). | ) | |

## COURT'S INSTRUCTION NO. ⏋

Members of the jury, now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law which applies to this case. A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not  You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return—that is a matter entirely up to you.

1

## COURT'S INSTRUCTION NO. 2

2   The evidence from which you are to decide what the facts are consists of:

3   (1) the sworn testimony of any witness;

4   (2) the exhibits which have been received into evidence; and

5   (3) any facts to which the lawyers have agreed or stipulated.

# COURT'S INSTRUCTION NO. 3

## (WHAT IS NOT EVIDENCE)

In reaching the verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence and you may not consider them in deciding what the facts are. And I will list them for you:

(1)   Argument or statements of the attorneys are not evidence. The lawyers are not witnesses. What they may say in their opening statements or closing arguments or at any other time is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember it differ from the way the attorneys have stated it, it is your memory that controls.

(2)   Questions and objections by the attorneys are not evidence. Attorneys have the duty to their client to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or the Court's ruling on it.

(3)   Anything that you may see or hear when the Court is not in session is not evidence. You are to decide this case solely on the evidence received during this trial.

# COURT'S INSTRUCTION NO. 4

## (DIRECT AND CIRCUMSTANTIAL EVIDENCE)

Now, evidence can be either direct or circumstantial. Direct evidence is the direct proof of a fact such as the testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact to be true. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight is to be given to any evidence.

## COURT'S INSTRUCTION NO. 5

### (RULING ON OBJECTIONS)

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and the lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered and the exhibit received. If I sustain the objection, the question cannot be answered or the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess as to what the answer might have been.

Sometimes I may order evidence to be stricken from the record or that you disregard or ignore certain evidence. That means when you are deciding this case, you must not consider the stricken evidence for any purpose.

## COURT'S INSTRUCTION NO. 6

## (CREDIBILITY OF WITNESSES)

In deciding the facts of this case, you may have to decide which testimony is to be believed and which testimony not to believe. You may believe everything that a witness says or part of it or none of it.

In considering the testimony of a witness, you may take into account:

(1) the opportunity and the ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicts the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the other evidence,

(8) or any other fact that bears on believability.

The weight of the evidence as to any fact does not necessarily depend on the number of witnesses who have testified. What is important is how believable the witnesses were and how much weight you think their testimony deserves.

# COURT'S INSTRUCTION NO. 7

## (EXPERT OPINION)

You will hear testimony from several experts who will testify to opinions and the reasons for their opinion. This opinion testimony is allowed because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it or give it as much weight as you think it deserves considering the witness's education and experience, the reasons given for their opinion, and all other evidence in the case.

1

## COURT'S INSTRUCTION NO. 8

2

### (BURDEN – PREPONDERANCE OF EVIDENCE)

3       When a party has the burden of proving any claim or affirmative defense by a

4  preponderance of the evidence, it means you must be persuaded by the evidence that the

5  claim or affirmative defense is more probably true than not true.

6       You should base your decision on all of the evidence, regardless of which party

7  presented it.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COURT'S INSTRUCTION NO. 9
## (BURDEN – CLEAR AND CONVINCING EVIDENCE)

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

## COURT'S INSTRUCTION NO. 10
## (CHARTS, SUMMARIES, AND DEMONSTRATIVES NOT RECEIVED IN EVIDENCE)

Certain charts, summaries, and demonstratives not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts, summaries, and demonstratives are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLOSING INSTRUCTION NO. 11

### (PATENT OWNERSHIP)

In order to establish that Defendants are liable for infringement, Plaintiffs must prove by a preponderance of the evidence that Plaintiffs are the owners of the patents-in-suit.  In order to satisfy this requirement, Plaintiffs must prove by a preponderance of the evidence that the patents have been assigned to Plaintiffs.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLOSING INSTRUCTION NO. 12

### (ASSIGNMENT OF PATENT RIGHTS)

A person or entity may purchase a patent from another, making them successor-in-title. The patent system guarantees all patent owners, whether the original patentee or successors-in-title, a remedy by civil action when their patents are infringed. Therefore, Plaintiffs, as the owners and successors-in-title of the patents-in-suit, hold the same rights and interests in the patents as the inventors originally held, including the right to file a lawsuit against Defendants and to seek damages and other remedies.

## COURT'S INSTRUCTION NO. 13

### (PATENT CLAIMS)

Before you can decide whether defendant has infringed plaintiffs' patent, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent.

Each patent is an exhibit in evidence. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed. Each of the claims must be considered individually, and to show patent infringement, Plaintiffs need only establish that one claim has been infringed.

# CLOSING INSTRUCTION NO. 14
## (INDEPENDENT AND DEPENDENT CLAIMS)

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

1
2

# COURT'S CLOSING INSTRUCTION NO. 15
## (INTERPRETATION OF THE CLAIMS)

3      I have interpreted the meaning of some of the language in the patent claims
4  involved in this case. You must accept those interpretations as correct. My interpretation
5  of the language should not be taken as an indication that I have a view regarding the
6  issues of infringement and invalidity. The decisions regarding infringement and invalidity
7  are yours to make.

8      For the '163 patent, the scope of the claims is that of their plain and ordinary
9  meaning as understood by a person of ordinary skill in the art. I have provided additional
10 interpretation of the following claim terms:

| '163 patent claim term | What the term means: |
|---|---|
| First filtering means configured for identifying a plurality of image regions of said input image that have a likelihood of containing said target image pattern | Linear matched filter, programmed to employ an algorithm described in the patent |
| Second filtering means ... for screening said image regions to select a candidate region that has a high likelihood of containing said target image pattern | Non-linear filter programmed to employ an algorithm described in the patent |

19
20      For the '335 patent, the scope of the claims is that of their plain and ordinary
21 meaning as understood by a person of ordinary skill in the art. I have provided additional
22 interpretation of the following claim terms:

| '335 patent claim term | What the term means: |
|---|---|
| "turning on" and "turning off" as used in steps 1(c) through 1(f) of claim 1 | The transistors transition from on to off |

JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

# 15 CONT.--

For the '312/'017/'574 patent family, the scope of the claims is that of their plain and ordinary meaning as understood by a person of ordinary skill in the art. I have provided additional interpretation of the following claim terms:

| '312 patent claim term | What the term means: |
| --- | --- |
| Unit pixel | A structure including one or more photodiodes |
| Selectively shared with a sensing node of a unit pixel in a current scan line | Connectable via a switch with a sensing node of a unit pixel in a current scan line to selectively receive photocharges from one or more photodiodes of the unit pixel in the current scan line and not from any photodiode in the previous scan line |

| '017 patent claim term | What the term means: |
| --- | --- |
| Sensing pixel | A structure including one or more photodiodes |
| First sensing pixel | Sensing pixel enabled to receive an electrical signal from one or more corresponding photodiodes |
| Second sensing pixel | Nearby sensing pixel not connected to its own (one or more) photodiodes |

| '574 patent claim terms | What the term means: |
| --- | --- |
| Sensing pixel<br>First pixel<br>Second pixel<br>Third pixel | A structure including one or more photodiodes |

JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

# COURT'S CLOSING INSTRUCTION NO. 16

## (INFRINGEMENT)

There are several ways to infringe a patent.

*First*: One may directly infringe a patent;

*Second*: One may induce others to infringe a patent in which case the person inducing infringement is liable for infringement in the same manner as a direct infringer; and

*Third*: One may contribute to the infringement of a patent by another by supplying a component specially designed for the invention, in which case, both the direct infringer and the contributing infringer will be liable for patent infringement.

Plaintiffs allege that Defendants have directly infringed the '163, '335, '312, '017, and '574 patents and continue to do so. Plaintiffs also allege that Defendants have actively induced infringement of the '163, '335, '312, '017, and '574 patents by others and continue to do so. Plaintiffs further allege that Defendants contributed to the infringement of the '163, '335, and '574 patents by others and continue to do so.

The burden of proof is on Plaintiffs to prove:

First: that Plaintiffs own the patents-in-suit; and

Second: that Defendants infringed at least one claim of the patents-in-suit.

Plaintiffs must prove this by a preponderance of the evidence. In other words, Plaintiffs must persuade you that it is more likely than not that Defendants have infringed.

## COURT'S CLOSING INSTRUCTION NO. 17
### (DIRECT INFRINGEMENT—LITERAL INFRINGEMENT)

Once the patent is issued, the owner of the patent has a right to exclude others from making, using, offering for sale, or selling the patented invention throughout the United States for a term of 20 years from the date of the filing of the patent application. Thus, direct infringement of a patent occurs when a person makes, uses, offers for sale, or sells the patented invention anywhere in the United States, or imports the patented invention into the United States, without the owner's permission while the patent is in force. To determine whether there is an infringement you must compare the allegedly infringing product with the scope of the patent claims.

Plaintiffs may prove their claim of direct infringement for each patent-in-suit and for each of Defendants' products by demonstrating that the product literally infringes at least one claim contained in the patent. In order for you to find that one of Defendants' products literally infringes a claim, you must find that each and every element of the patent claim is found in Defendants' product. In other words, a product literally infringes a patented claim when the same combination of elements found in the patent claim can also be found in the product.

With regard to method claims, Plaintiffs can prove their claim of direct infringement by demonstrating that Defendants practice all the steps of the claimed method. In making your determination, you must consider each claim separately. Only one claim of a patent must be infringed for there for be infringement of a patent. Plaintiffs are only required to establish by a preponderance of the evidence that one claim is infringed.

Plaintiffs are not required to prove Defendants had the intent to literally infringe the patent or that they knew that their acts infringed the patent. Good faith is not a defense to a claim of direct infringement.

1       If you find that Defendants' product does not literally infringe any claim of

2  Plaintiffs' patents-in-suit, then you must determine whether it infringes that claim under

3  the doctrine of equivalents.

## CLOSING INSTRUCTION NO. ~~19~~ 18

### (DIRECT INFRINGEMENT—DOCTRINE OF EQUIVALENTS)

If Plaintiffs do not prove the patented claim was literally infringed, Plaintiffs may still show direct infringement under the theory of "doctrine of equivalents."

Under the doctrine of equivalents, you may find the accused product infringes a patented claim if Plaintiffs prove by a preponderance of the evidence that the accused product contains elements identical or equivalent to each claimed element of the patented invention. The focus is on individual elements of the claim, not on the invention as a whole.

To find infringement, you must find there are no substantial differences between the patent claim and the allegedly infringing product. In order to make a finding under the doctrine of equivalents, you may consider whether the elements of Defendants' product perform substantially the same function in substantially the same way to produce substantially the same result when compared to the claimed elements of Plaintiffs' patented invention.

Even if the accused product contains each element of the patented claim, there is no infringement under the doctrine of equivalents if the accused product is so changed in principle that it performs the same or similar function in a substantially different way than the claimed invention.

In making your determination, you should review the evidence from the perspective of a person of ordinary skill in the art. The test is objective, that is, whether, at the time of the claimed infringement, a person of ordinary skill in the art would have considered the differences insubstantial.

On the issue of equivalence, you may consider evidence of whether persons skilled in the art considered the accused element and the claimed element interchangeable at the time of the alleged infringement. You should consider the context of the entire claim, including the drawings and written descriptions, patent application history, the prior art, and all of the circumstances of the case.

18 cont.

1        Plaintiffs are not required to prove that Defendants had the intent to infringe
2   Plaintiffs' patents under the doctrine of equivalents or that Defendants knew that its
3   devices infringed the patents.

# COURT'S CLOSING INSTRUCTION NO. 19

## (MEANS-PLUS-FUNCTION CLAIMS—LITERAL INFRINGEMENT)

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in some claims. A means-plus-function requirement only covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of those specific structures that perform the claimed function. A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

In deciding if Plaintiffs have proven that Defendants' products include structure covered by a means-plus-function requirement, you must first decide whether the products have any structure that performs the claimed function. If not, the claim containing that means-plus-function requirement is not infringed.

If you find that the Defendants' accused products do have structure that performs the claimed function, you must then determine whether that structure is the same as or equivalent to the structure disclosed in the patent specification. If they are the same or equivalent, the means-plus-function requirement is satisfied by that structure of the accused product and the other requirements of the claim are satisfied, the accused product infringes the claim.

In order to prove that a structure in the accused product is equivalent to the structure in the patent, Plaintiffs must show that a person of ordinary skill in the art would have considered that the differences between the structure described in the patent and the structure in the accused product are not substantial. The Plaintiffs must also show that the structure was available on the date the patent was granted.

## CLOSING INSTRUCTION NO. 20
### (INDUCING PATENT INFRINGEMENT)

Plaintiffs argue that Defendants have actively induced another to infringe the '163, '335, '312, '017, and '574 patents. In order for Defendants to have induced infringement, Nikon Corp., Nikon Inc., and Sendai Nikon must have induced another to directly infringe a claim of the '163, '335, and '574 patents; if there is no direct infringement by anyone, there can be no induced infringement. As with direct infringement, you must determine induced infringement on a claim-by-claim basis.  In order to be liable for inducing infringement, Defendants must:

(1) have intentionally taken action that actually induced direct infringement;

(2) have been aware of the particular patent; and

(3) have known that the acts it was causing would infringe the patent.

Defendants may be considered to have known that the acts they were causing would infringe the '163, '335, and '574 patents if they subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded themselves to the infringing nature of the direct infringer's acts.

# COURT'S CLOSING INSTRUCTION NO. 21

## (WILLFUL INFRINGEMENT)

In this case, Plaintiffs argue that Defendants (Nikon Corp., Nikon Inc., and/or Sendai Nikon) willfully infringed Plaintiffs' '163, '335, '312, '017, and '574 patents.

To prove willful infringement, Plaintiffs must persuade you that the Defendants infringed a valid claim of Plaintiffs' '163, '335, '312, '017, or '574 patent. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Plaintiffs must persuade you that it is more likely true than not true that Defendants intentionally ignored or recklessly disregarded that claim. You must base your decision on Defendants' knowledge and actions at the time of infringement. Evidence that Plaintiffs had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that Defendants engaged in additional conduct evidencing deliberate or reckless disregard of Plaintiffs' patent rights.

In deciding whether Defendants willfully infringed, you should consider all of the facts surrounding the infringement including: whether Defendants intentionally copied Plaintiffs' patented technology in developing the accused product; whether Defendants knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Defendants had a reasonable belief that at the time of infringement that its products did not infringe the asserted patent or that the patent was invalid.

# COURT'S CLOSING INSTRUCTION NO. 22
## (INVALIDITY OF PATENT)

Defendants claim the patents-in-suit are invalid because they lack novelty and/or nonobviousness. A patent is presumed to be valid and so Defendants have the burden to establish the invalidity of the patent by clear and convincing evidence.

The elements to a valid patent are (1) novelty and (2) nonobviousness. Defendants claim the each of the patents-in-suit should not have been granted because one or more of the elements is not present. In order to prove invalidity of a patent-in-suit. Defendants must show by clear and convincing evidence that one of these elements is not present in that patent.

If you find by clear and convincing evidence that any of the patents-in-suit lacks novelty or nonobviousness, then you should find that patent invalid and render a verdict for Defendants.

Defendants must prove invalidity separately for each claim by clear and convincing evidence. In other words, Defendants must persuade you that it is highly probable that each claim is invalid.

# COURT'S INSTRUCTION NO. 23

## (INVALIDITY—PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART)

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the effective filing date of the patent(s).

1
2

# COURT'S CLOSING INSTRUCTION NO. 24
## (ANTICIPATION—GENERALLY)

3    Defendants claim that one or more patented claims are invalid because they lack

4 novelty in that those claims were anticipated by prior art. In order to prevail on this

5 defense, Defendants must prove anticipation by clear and convincing evidence.

6    In order for a claim to have been anticipated, you must find the earlier invention

7 completely embodied the same process or product as the patented claim and all the

8 elements listed in the patented claim were previously found in exactly the same situation

9 and united in the same way to perform the identical function. Each and every element of

10 the patented claim must have been either inherent or expressly disclosed in a single prior

11 invention or in a single prior art reference.

12    You may not combine two or more items of prior art in order to find anticipation.

13    A person who applied for a patent on a method or process is conclusively

14 presumed to know about the prior art, including all the same or similar existing machines,

15 articles of manufacture, methods or processes that are disclosed in patents issued or

16 publications made prior to the date of the person's alleged invention.

17    The person is also presumed to have actual or constructive knowledge of all the

18 same or similar machines, articles of manufacture, methods or processes that are publicly

19 known, or used by anyone, at any time more than one year prior to the date of his

20 application for a patent. Inventions previously patented, or publicly described, or publicly

21 known are conclusively characterized as the "prior art."

22    If you do not find these requirements have been met, then the patented claims are

23 not invalid because of anticipation or lack of novelty.

24    If you find these requirements have been met, you should then consider whether

25 Defendants have satisfied its burden of proving how the patented claims were

26 anticipated.

27
28

JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

1

2

## CLOSING INSTRUCTION NO. ❡ 25

## (OBVIOUSNESS—GENERALLY)

3      Defendants contend that one or more patented claims are invalid because of

4  obviousness.

5      To succeed on this contention, Defendants must prove by clear and convincing

6  evidence [as to the particular claim you are considering] that a person of ordinary skill in

7  the art of the invention, who knew about all the prior art existing at the time the invention

8  was made, would have come up with the invention at that time. Unlike anticipation,

9  obviousness may be shown by considering two or more items of prior art in combination.

10      In deciding obviousness, you should put yourself in the position of a person with

11  ordinary skill in the field at the time of the claimed invention. You must not use hindsight.

12  You may not consider what is known now or what was learned from Plaintiffs' patent.

13  In addition, you may not use Plaintiffs' patent as a roadmap for selecting and combining

14  items of prior art.

15      In deciding obviousness, you may also consider whether a person of ordinary skill

16  in the art would have been discouraged from following the path the inventor took,

17  keeping in mind that the Plaintiffs are not required to show such discouraging factors.

18  As I have stated, Defendants have the burden of proving obviousness by clear and

19  convincing evidence.

20      In making your decision regarding obviousness, you should consider the following:

21      (1) The scope and content of the prior art. You may consider prior art that was

22  reasonably relevant to the problem the inventor faced, including prior art in the field of

23  the invention and prior art from other fields that a person of ordinary skill would consider

24  when attempting to solve the problem.

25      (2) Any differences between the prior art and the invention in the patent claim.

26      (3) The level of ordinary skill in the field of the invention at the time of the

27  invention.

28

Cont 25

In deciding obviousness you should consider any of the following factors that, if present in the case, may indicate the invention was not obvious:

- The invention achieved commercial success, so long as the commercial success resulted from the claimed invention, rather than from something else, such as innovative marketing;

- The invention satisfied a long felt need;

- Others failed in attempting to make the invention;

- Others copied the invention;

- The invention achieved unexpected results;

- Defendants or others in the field praised the invention;

- Others sought or obtained rights to the patent from the patent holder;

- Experts or persons of ordinary skill in the field of the invention expressed surprise at the making of the invention: or

- The inventor proceeded contrary to accepted wisdom.

Not all of these factors may be present. No single factor is more or less important than the others.

# COURT'S CLOSING INSTRUCTION NO. 26
## (WRITTEN DESCRIPTION REQUIREMENT)

The patent law contains certain requirements for the part of the patent called the specification. Nikon Corp., Nikon Inc., and Sendai Nikon contend that that one or more patented claims are invalid because the specifications of the patents do not contain an adequate written description of the invention.

To succeed, Nikon Corp., Nikon Inc., and Sendai Nikon must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

## CLOSING INSTRUCTION NO. 727

### (ENABLEMENT)

A patent claim is invalid if the patent at the time it was originally filed did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the full scope of the invention. This is known as the "enablement" requirement.  Defendants contend that that one or more patented claims are not enabled.

The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without having to do excessive experimentation. In determining whether excessive experimentation is required, you may consider the following factors:

- The scope of the claimed invention;

- The amount of guidance presented in the patent;

- The amount of experimentation necessary;

- The time and cost of any necessary experimentation;

- How routine any necessary experimentation is in the field;

- Whether the patent discloses specific working examples of the claimed invention;

- The nature and predictability of the field; and

- The level of ordinary skill in the field.

The question of whether a patent is enabling is judged as of the date the original application for the patent was first filed.

# COURT'S CLOSING INSTRUCTION NO. 28

## (PRINTED PUBLICATION)

Defendants contend that certain claims of the patents-in-suit are invalid because the subject matter described in those claims was described in a printed publication that was sufficiently accessible to persons interested in the subject matter of its contents more than one year before the patents were filed, or described in a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent. Defendants bear the burden of proving, by clear and convincing evidence, that a printed publication was publically available more than one year before the patents were filed, or described in a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent.

Information is publicly accessible if it was distributed or otherwise made available such that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence can locate it.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLOSING INSTRUCTION NO. 29

### (DAMAGES—REASONABLE ROYALTY)

If you find any one of the Defendants has infringed any claim of either of the patents-in-suit and that claim is not invalid, Zeiss and ASML are entitled to an award of damages adequate to compensate for the infringement, but in no event may the award of damages be less than a reasonable royalty for the use made of the invention by Defendants.

1
2

# COURT'S CLOSING INSTRUCTION NO. 3 0
## (REASONABLE ROYALTY—DEFINITION)

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

20
21
22
23
24
25
26
27
28

## CLOSING INSTRUCTION NO. ♣ 31

## (REASONABLE ROYALTY—FACTORS)

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the factors you may consider in making your determination are;

(a) The value that the claimed invention contributes to the Nikon digital cameras.

(b) The value that factors other than the claimed invention contribute to the Nikon digital cameras.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors that in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLOSING INSTRUCTION NO. 32

## (REASONABLE ROYALTY—MULTIPLE PATENTS)

If you find that Defendants infringed more than one patent, even by a single infringing act, then you may award separate royalties to Zeiss and ASML for each patent that was infringed. You also may consider the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

## <u>CLOSING INSTRUCTION NO. 33</u>

## (DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS)

In determining the amount of damages, you must determine when the damages began. As to the '335, '312, '017, and '574 patents, damages commence on the date of first infringement, or six years prior to the filing of the Complaint, whichever is later. As to the '163 patent, damages commence on the date that Defendants have both infringed and been notified of the alleged infringement of the '163 patent.

If you find that Plaintiffs or their licensee, HP, sell a product that includes the claimed invention of the '163 patent, you must determine whether Plaintiffs or their licensee (HP) have "marked" that product with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. Plaintiffs have the burden of establishing that they substantially complied with the marking requirement. This means Plaintiffs must show that they or their licensee (HP) marked substantially all of the products they made, offered for sale, or sold that practice the '163 patent, and that Plaintiffs or their licensees made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products that practice the '163 patent marked the products.

If Plaintiffs or their licensee, HP, have not marked that product with the patent number, you must determine the date that Defendants received actual notice of the '163 patent and at least one specific product alleged to infringe. Actual notice means that Plaintiffs communicated to Nikon a specific charge of infringement of the '163 patent by a specific accused product or device. The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CLOSING INSTRUCTION NO. 12 34</u>

### (DUTY TO DELIBERATE)

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

JURY INSTRUCTIONS
Case No. 2:17-cv-07083-RGK (MRWx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CLOSING INSTRUCTION NO. 35</u>

## (COMMUNICATION WITH COURT)

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.