1  Christopher S. Marchese (SBN 170239), marchese@fr.com
2  FISH & RICHARDSON P.C.
   633 West Fifth Street, 26th Floor
3  Los Angeles, CA 90071
   Tel: (213) 533-4240, Fax: (858) 678-5099
4

5  Frank Scherkenbach (SBN 142549), scherkenbach@fr.com
   Kurt L. Glitzenstein (Admitted *Pro Hac Vice*), glitzenstein@fr.com
6  FISH & RICHARDSON P.C.
7  One Marina Park Drive
   Boston, MA 02210-1878
8  Tel: (617) 542-5070, Fax: (617) 542-8906

9
   Olga I. May (SBN 232012), omay@fr.com
10 Markus D. Weyde (SBN 285956), weyde@fr.com
11 K. Nicole Williams (SBN 291900), nwilliams@fr.com
   Jared A. Smith (SBN 306576), jasmith@fr.com
12 FISH & RICHARDSON P.C.
13 12390 El Camino Real
   San Diego, CA 92130
14 Tel: (858) 678-4745, Fax: (858) 678-5099

15
   *[Additional Counsel listed on last page.]*
16
17 Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V.

18        IN THE UNITED STATES DISTRICT COURT
19  FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

20 | CARL ZEISS AG and ASML | Case No. 2:17-cv-07083-RGK (MRWx)
   | NETHERLANDS B.V.,
21 |                          | **PLAINTIFFS' RESPONSE TO**
22 |          Plaintiffs,     | **DEFENDANTS' MOTION FOR**
   | v.                       | **JUDGMENT AS A MATTER OF LAW**
23 |                          | **[DOCKET NO. 480]**
   | NIKON CORPORATION and
24 | NIKON INC.,              | Trial Date:  December 4, 2018
25 |          Defendants.     | Judge:       Hon. R. Gary Klausner
26 |                          | Courtroom:   850, 8th Floor

27
28
   PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS
                           A MATTER OF LAW
                  Case No. 2:17-cv-07083-RGK (MRWx)

# TABLE OF CONTENTS

Pages

I.   INTRODUCTION ................................................................................1

II.  LEGAL STANDARD ..........................................................................1

III. ARGUMENT......................................................................................2

    A.   Defendants Have No Basis To Maintain a Motion For JMOL on Issues for Which the Jury Decided in Their Favor..............................................................................................2

    B.   Plaintiffs Presented Substantial Evidence That They Own the Patents-In-Suit..................................................................2

    C.   Plaintiffs Presented Substantial Evidence Regarding Infringement of Claim 1 of the '312 Patent, Claim 17 of the '017 Patent, and Claim 30 of the '574 Patent ....................3

        1.   Claim 1 of the '312 Patent ..............................................3

        2.   Claim 7 of the '017 Patent ..............................................6

        3.   Claim 30 of the '574 Patent ............................................7

    D.   Plaintiffs Presented Substantial Evidence Regarding Infringement of Claims 1-3 of the '335 Patent ........................9

        1.   Plaintiffs Presented Substantial Evidence for Each Element ............................................................................9

        2.   Plaintiffs Presented Substantial Evidence of Direct Infringement by Defendants ...........................................13

        3.   Plaintiffs Presented Substantial Evidence of Indirect Infringement by Defendants...........................14

    E.   Plaintiffs Presented Substantial Evidence Regarding Infringement of Claim 16 of the '163 Patent .........................15

F.    Plaintiffs Provided Substantial Evidence Sufficient to
      Support a Finding that Defendants' Infringement was
      Willful ...................................................................................18

G.    As Defendants Failed to Meet Their Burden of
      Production Regarding Marking, Defendants Are Not
      Entitled to JMOL...................................................................18

H.    Plaintiffs Provided Substantial Evidence of Infringement
      by Both Nikon Corp. and Nikon Inc. .....................................19

I.    Plaintiffs Provided Substantial Evidence of Entitlement
      to Damages .............................................................................20

IV.   CONCLUSION ................................................................................20

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS
A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017) ................................................................. 18, 19

*Estate of Diaz v. City of Anaheim*,
   840 F.3d 592 (9th Cir. 2016) ........................................................................... 2

*Ericsson, Inc. v. Harris Corp.*,
   352 F.3d 1369, 69 U.S.P.Q.2d 1109 (Fed. Cir. 2003) ....................................... 5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   344 F.3d 1359 (Fed. Cir. 2003) (en banc) ..................................................... 5, 6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002) ......................................................................................... 5

*Guy v. City of San Diego*,
   608 F.3d 582 (9th Cir. 2010) ........................................................................... 2

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) .............................................................. *passim*

## Other Authorities

Federal Rule of Civil Procedure
   Rule 50 ............................................................................................................ 1
   Rule 50(a) ......................................................................................... 1, 2, 18, 20

## I.     INTRODUCTION

Plaintiffs Carl Zeiss AG and ASML Netherlands, B.V. (collectively "Plaintiffs") deny that Defendants Nikon Corporation and Nikon Inc. (collectively "Nikon" or "Defendants") are entitled to judgment as a matter of law ("JMOL") on any issue set forth in Defendants' JMOL motion under Rule 50(a) filed at the close of the Plaintiffs' case-in-chief. (D.I. 480-1). Plaintiffs have already provided a response to Defendants' first 50(a) motion (*see* D.I. 490), and provide this additional response detailing the substantial evidence put forth by Plaintiffs from which a jury could have found in Plaintiffs' favor on the issues raised in Defendants' first 50(a) motion. Defendants additionally filed a second motion for JMOL at the close of all evidence on December 13, 2018. (*See* D.I. 493.)[1]     Plaintiffs understand that the Court has reserved JMOL motions under Rule 50(a). *See* Tr.[2] (Court) at 642:25–643:2. While Plaintiffs are sensitive to the Court's desire not to receive excessive briefing covering the same issues, absent further instruction for the Court, Plaintiffs will respond to each of Defendants' motions so as to protect their right to contest Defendants' assertion of entitlement to JMOL. This response covers only those issues raised in Defendants' first Rule 50(a) motion. As detailed below, Plaintiffs presented substantial evidence from which the jury could have found in favor of Plaintiffs on each of the issues raised in Nikon's motion.

## II.    LEGAL STANDARD

Under Rule 50, judgment as a matter of law is proper if the evidence presented at trial "permits only one reasonable conclusion, and that conclusion is contrary to" the jury's verdict. *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 604 (9th Cir. 2016). In other

---

[1] Plaintiffs note that, for both Rule 50(a) motions filed thus far by Defendants, Defendants' memoranda of points and authorities exceeds the 20-page limit allowed by this Court's rules, and Plaintiffs ask that these motions be stricken for violating this Court's rules.

[2] Citations to "Tr." are attached as Exhibit A.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

words, a court must "uphold a jury verdict if it is supported by substantial evidence," which is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Guy v. City of San Diego*, 608 F.3d 582, 585 (9th Cir. 2010).

## III.   ARGUMENT

### A.   Defendants Have No Basis To Maintain a Motion For JMOL on Issues for Which the Jury Decided in Their Favor

While Defendants' motion and this response are styled as being submitted under Rule 50(a),  the jury has already rendered its verdict in this case. As set forth in the verdict, the jury found all patents valid and owned by Plaintiffs, but found no infringement. Although Plaintiffs contest that the jury's verdict of non-infringement is supported by substantial evidence, as will be set forth in Plaintiffs' upcoming Rule 50(a) motion, ownership is the only live issue in Defendants' first motion for JMOL, because the jury found no infringement.  As the verdict-winner on these issues, Defendants cannot move for JMOL on them. *See Estate of Diaz*, 840 F.3d at 604 (noting that a "post-verdict" JMOL is appropriate only if the the evidence at trial permits a conclusion "contrary to" a jury verdict). Nonetheless, this response addresses each issue raised by Defendants in their first motion for JMOL.

### B.   Plaintiffs Presented Substantial Evidence That They Own the Patents-In-Suit

Plaintiffs put forth more than substantial evidence that they own the patents-in-suit. As an initial matter, the Federal Circuit has found that though "[t]he recording of an assignment with the PTO is not a determination as to the validity of the assignment," recordation does "create[] a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327–28 (Fed. Cir. 2010). Robert Pressman testified that Plaintiffs' ownership of each of the patents-in-suit was properly recorded by the USPTO, and Plaintiffs entered into evidence documents evidencing such recordation.

*See* Tr. (Pressman) at 178:18–25 (recordation of ownership of the '163 patent); *id.* at 182:12–17 (recordation of ownership of the '335 patent); *id.* at 185:5–13 (recordation of ownership of the '312 family); *see also* JTX-308; JTX-373; JTX-1373; JTX-2165; JTX-2166 (USPTO records for each of the patents-in-suit). Defendants put forth no contrary evidence, and thus the presumption becomes conclusive that the Plaintiffs own the patents. *See SiRF*, 601 F.3d at 1327–28. However, even without the presumption, Plaintiffs proved ownership by putting forth unrebutted evidence, including testimony from both Dr. Wolfgang Singer and Mr. Pressman and the documents underlying each of the transfers of ownership, showing conclusively that the Plaintiffs own the patents. *See generally* Tr. (Pressman) at 173:24–185:17; Tr. (Singer) at 161:12–162:6. As such, Defendants are not entitled to JMOL on the issue of ownership.

### C.  Plaintiffs Presented Substantial Evidence Regarding Infringement of Claim 1 of the '312 Patent, Claim 17 of the '017 Patent, and Claim 30 of the '574 Patent

Plaintiffs presented more than substantial evidence that the Nikon D4, D4s, and Df infringe each of the asserted claims of the '312, '017, and '574 patents.  Indeed, as noted below, Defendants only disputed a handful of the claim elements.

As to the accused products, Dr. Subramanian testified that each of the D4, D4S, and Df "have similar image sensors" and that "the image sensors in those cameras have the same structure and operation, for purposes of infringement, of the three patents" (the '312, '017, and '574 patents). *See* Tr. (Subramanian) at 349:11–19, 350:4-351:6; PDX-220. Thus, Dr. Subramanian analyzed the three cameras together for infringement.

#### 1.  Claim 1 of the '312 Patent

Plaintiffs presented expert testimony from Dr. Subramanian that each of the Nikon D4, D4S, and Df meets every limitation of claim 1 of the '312 patent, either literally or under the doctrine of equivalents:

- <u>Preamble</u>. Dr. Subramanian's testimony established that each of the Nikon D4, D4S, and Df cameras contains a CMOS image sensor. *See* Tr. (Subramanian) at 368:14–22; *see also* Tr. (Subramanian) at 355:19–356:6; JTX-432, at 11. Defendants did not dispute this element.

- <u>Element 1a</u>. Dr. Subramanian's testimony established that the Nikon D4, D4S, and Df cameras contain the claimed pixel array. *See* Tr. (Subramanian) at 368:14–22; *see also* Tr. (Subramanian) at 356:7–18; JTX-432, at 23. Defendants did not dispute this element.

- <u>Element 1b</u>. Dr. Subramain testified that the image sensors in the D4, D4S, and Df contain the claimed photodiode, which Defendants did not dispute. *See* Tr. (Subramanian) at 366:23–367:3; *see also* Tr. (Subramanian) at 356:19-357:6; JTX-432, at 24.

- <u>Element 1c</u>. Dr. Subramanian testified that the D4, D4S, and Df cameras contain the claimed sensing node. *See* Tr. (Subramanian) at 367:4–9; *see also* Tr. (Subramanian) at 357:7–18; JTX-432, at 24. Defendants did not dispute this element.

- <u>Element 1d</u>. Dr. Subramanian testified that each of the D4, D4S, and Df cameras meet this element under the doctrine of equivalents ("DOE"). *See* Tr. (Subramanian) at 367:14–369:2. Defendants disputed only two limitations: (a) "previous scan line" and (b) "in response to a line select signal." Althrough the D4, D4S, and Df share capacity of a subsequent scan line, Dr. Subramanian testified that sharing with a previous scan line is insubstantially different from sharing with a subsequent scan line and that, therefore, this element is met under DOE. Tr. (Subramanian) at 367:19–369:2. Plaintiffs also submitted evidence from one of Defendants' own engineers, Mr. Shima, who testified (via deposition testimony read into the record) that "either [previous or subsequent] could be done" and that, from a circuitry perspective, there was no reason to do one over the other. Tr. (Shima) at 235:3-16. As to the limitation "in response to a line select signal," Dr. Subramanian showed

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

that it is met because the sensing nodes are connected in response to the FDSW signal of the D4, D4S, and Df cameras. Tr. at 359:18-360:19, 370:19-371:10.[3]

In their motion for JMOL, Defendants assert (at 16), in a single sentence, that "prosecution history estoppel precludes Plaintiffs from attempting to prove infringement through the doctrine of equivalents." Defendants, however, point to no arguments made during prosecution history by the applicant or any amendments they contend would give rise to prosecution history estoppel. No estoppel applies here—the only element for which Plaintiffs asserted DOE (the "previous scan line" issue) was present in the originally filed claims and was not amended during prosecution. *See* JTX-7, at 8.[4] Thus, because the only amendments were of other limitations and were unrelated to the only limitation for which Plaintiffs asserted DOE, prosecution history estoppel does not apply. *See Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1375, 69 U.S.P.Q.2d 1109 (Fed. Cir. 2003) (finding prosecution history estoppel did not apply to a claim limitation that was not amended during prosecution, even though other limitations contained in the same claim clause were amended, where the subject matter of the amendment did not relate to the unamended portion of the claim). Even assuming *arguendo* that amendment of other limitations does create a presumption of prosecution history estoppel—which it does not—the fact that such amendments were made to other unrelated limitations renders those amendments only tangential to the equivalent at issue here, thereby overcoming the presumption and allowing a range of equivalents. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740–41 (2002) (no prosecution history estoppel where

---

[3] Dr. Subramanian testified in the alternative that, if the Court were to adopt Defendants' construction of "in response to a line select signal," the D4, D4S, and Df would still meet the requirements of the claim under DOE because using a single signal is insubstantially different from using two separate signals to control the sharing transistor and the select transistor. Tr. at 363:10-365:1, 371:11-372:5. However, the Court's claim construction, which did not adopt Defendants' proposal, mooted this issue.

[4] As prosecution history estoppel is exclusively a question of law for this Court, the Court may properly consider evidence which was not before the jury on this issue. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003) (en banc).

5

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS
A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

"the rationale underlying the amendment [bears] no more than a tangential relation to the equivalent in question").

### 2.    Claim 7 of the '017 Patent

Plaintiffs presented more than substantial evidence that the Nikon D4, D4S, and Df infringe claim 7 of the '017 patent.  Notably, many of the limitations of this claim are nearly identical to limitations of claim 1 of the '312 patent.  For example, claim 7 recites an "image sensor" comprising "a pixel array in which a plurality of sensing pixels are arranged in a matrix of rows and columns" wherein "each sensing pixel comprises a photodiode operable to produce an electrical signal in response to incident light; and a sensing node arranged to receive the electrical signal."  Each of these limitations is substantively identical to the preamble and elements a-c of claim 1 of the '312 patent, and, as such, the evidence discussed above showing that each of these limitations are literally met in the accused devices is substantial evidence to support a jury verdict regarding these limitations. [5]

The only substantive difference between claim 1 of the '312 patent and claim 7 of the '017 patent is element d, which for claim 7 of the '017 patent reads: "a switching device configured to interconnect a first sensing node of a first sensing pixel to a second sensing node of a second sensing pixel in response to a select signal, wherein the first sensing pixel is in a first scan line and the second sensing pixel is in a second scan line."  Dr. Subramanian testified that this limitation was literally present in the accused devices.  *See* Tr. (Subramanian) at 357:19–361:2; *see also* JTX-432, at 24; JTX-365, at 4.  Thus,

---

[5] Defendants again invoke prosecution history estoppel (at 17), but Plaintiffs' theory of infringement does not rely on DOE, as the only DOE theory Plaintiffs articulated was an alternative argument based on a claim construction presented by Defendants that the Court did not adopt.  *See supra* note 2; Tr. (Subramanian) at 363:10–17 (providing an analysis "assuming that the select signal was defined to mean the signal that controls the select transistor"); (D.I. 511, at 16–17 (no adoption of Defendants' proposed claim construction)).  Even if Plaintiffs had relied on DOE, no prosecution history estoppel would apply as claim 7 was issued as unamended from when it was originally proposed.  *Festo*, 535 U.S. at 733–34 (PHE arises from narrowing amendments).

6

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Case No. 2:17-cv-07083-RGK (MRWx)

Plaintiffs presented substantial evidence from which a jury could find infringement of claim 7 of the '017 patent.

### 3. Claim 30 of the '574 Patent

Plaintiffs presented more than substantial evidence that the Nikon D4, D4S, and Df infringe claim 30 of the '574 patent. As Dr. Subramanian explained, claim 30, unlike the previous claims of the '312 and '017 patents, "is focused on an imaging system. So it's bigger than just the image sensor." Tr. (Subramanian) at 372:24–373:1. Indeed, the claim covers both the image sensor and an "external system, which is in communication with the image sensor, and an interface unit that sits between the two." *Id.* at 373:6–8. However, just as with the two previous claims from this family, Plaintiffs put forth substantial evidence that each and every limitation was met, and Defendants only disputed a single limitation:

- <u>Preamble</u>. Dr. Subramanian testified that, because each of the accused products is a digital camera, they constitute an "imaging system." *See* Tr. (Subramanian) at 374:4–8. This was undisputed.

- <u>Element 30a</u>. As Dr. Subramanian had already explained, and again referenced with respect to the '574 patent, each of the accused cameras contains an image sensor. *See* Tr. (Subramanian) at 374:9–11. Defendants did not dispute this element.

- <u>Element 30b</u>. As. Dr. Subramanian explained, the accused Nikon cameras meet this limitation as they contain an image signal processor. *See* Tr. (Subramanian) at 374:12–375:4. Defendants did not dispute this element.

- <u>Element 30c(1)</u>. Dr. Subramanian testified, with reference to Nikon documents, that the control terminal in the accused Nikon sensors meet this limitation. Tr. (Subramanian) at 375:5–15; *see also* JTX-432, at 13. Defendants did not dispute this element.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

- Element 30c(2). As Dr. Subramanian testified, this limitation is met for the same reasons described above with respect to similar limitations of the '312 and '017 patents. *See* Tr. (Subramanian) at 375:16–376:25.

The only non-infringement argument that Defendants disclosed prior to trial related to a claim construction that the Court rejected at summary judgment. (*See* D.I. 305, at 19 (rejecting Defendants' proposed construction which sought to limit the claims of the '574 patent to having a single photodiode)). Defendants, however, constructed an entirely new non-infringmeent theory at trial which even their expert Dr. Kleinfelder acknowledged was not in his expert report. *See* Tr. (Kleinfelder) at 886:19–888:5. In particular, Defendants' new non-infringement theory appeared to allege that the accused products failed to meet the limitations of "generate photocharge at the first pixel" and "generate … an output signal that is indicative of the photocharge generated at the first pixel" based on a claim construction that required that "generate photocharge at the first pixel" should be interpreted as "generate photocharge at the first pixel, where the generated photocharge is generated at all photodiodes of the first pixel." *See* Tr. (Kleinfelder) at 876:25–877:17. The Court did not adopt any such construction. Nonetheless, Dr. Subramanian put forth testimony constituting substantial evidence rebutting this new non-infringement theory, which was premised on incorrectly reading a limitation into the claim. *See* Tr. (Subramanian) at 366:19–367:22, 368:16–390:4, 391:4–393:1. Specifically, Dr. Subramanian testified that the claim limitations could be met by a single photodiode in a multiphotodiode pixel. *See* Tr. (Subramanian) at 389:9–390:4, 392:15–393:1. Regardless, the above-referenced testimony and other evidence constitutes substantial evidence from which a jury could have found in Plaintiffs favor.[6]

---

[6] Defendants make reference to prosecution history estoppel (at 17), but as Plaintiffs did not rely on the doctrine of equivalents, prosecution history estoppel has no bearing on claim 30 of the '574 patent.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

### D. Plaintiffs Presented Substantial Evidence Regarding Infringement of Claims 1-3 of the '335 Patent

#### 1. Plaintiffs Presented Substantial Evidence for Each Element

Plaintiffs put forth more than substantial evidence that Defendants directly and indirectly infringe claims 1-3 of the '335 patent in connection with the Nikon D4, Df, D4S, D3100, D3200, D3300, D5300, D5500, D5600, D750, D810, D810A, D500, D7500, D5, 1 V1, 1 J1, 1 J2, 1 S1, 1 AW1, 1 J3, 1 S2, 1 V2, 1 V3,  and 1 J4.

Dr. Carley walked through each and every limitation of the claims, explaining his analysis with respect to each of the accused cameras.   First, when addressing the preamble, Dr. Carley testified that the Nikon D4, D4S, and Df meet these limitations, with reference to circuit diagrams produced by Nikon.[7]  Tr. (Carley) at 264:6–270:12.  Dr. Carley then explained that the Nikon "Group 1" cameras (listed on PDX-350, which was admitted into evidence) "infringe in exactly the same way" as the previously-analyzed Nikon Df, and explained that the basis of his opinion was his analysis of image sensor circuit diagrams for each of those cameras, which were introduced into evidence.  *See* Tr. (Carley) at 270:21–271:16; *see also* JTX-368, at 7; JTX-371, at 27; JTX-489, at 10; JTX-498, at 10; JTX-499, at 10; JTX-490, at 10; JTX-485, at 100; and JTX-460, at 11.  As to the remaining "Group 2" cameras (D5, AW1, J3, S2, and V2), Dr. Carley testified that the image sensors of these cameras have a "slightly different arrangement" but testified that the differences were insubstantial, and thus these cameras satisfied the preamble under DOE.  *See* Tr. (Carley) at 272:1–274:6.

Dr. Carley then analyzed the claimed method steps, explaining that the steps were literally present in the accused cameras or present through DOE—analysis which Dr. Carley explained applied to all accused cameras as a result of his review of timing

---

[7] There is no dispute between the parties that the images sensors in the D4, D4S, and Df cameras have the same pixel structure and implement the same timing with respect to infringement of the '335 patent, and thus, are representative of each other.  Tr. (Carley) at 264:21–265: 2.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

diagrams for each of the accused cameras. *See* Tr. (Carley) at 289:18–290:11; *see also* PDX-367 (received into evidence, listing documents associated with each accused camera); JTX-368, at 6; JTX-497, at 18; JTX-489, at 19; JTX-498, at 21, 23; JTX-490, at 17; JTX-499, at 17.  A summary of Dr. Carley's analysis of each step is set forth below.

- Method step (a).  Dr. Carley testified that each of the accused cameras performs this step, with reference to testimony from Nikon's own engineers and timing diagrams produced by Nikon or third parties, or obtained from TechInsights.  Specifically, Dr. Carley testified that accused cameras perform this step in two different ways.  In the case of the Nikon D4, D4S, and Df, the accused sensors "empty out the photodiodes by alternately turning on the reset transistor and the transfer transistor."  Tr. (Carley) at 275:10–277:20; *see also* JTX-321, at 10; Tr. (Shima) at 237:18–21.  As to the remaining accused cameras, Dr. Carley explained that the cameras perform this step by "turn[ing] on the reset valve, open[ing] that one, [and] open[ing] both transfer transistors."  Tr. (Carley) at 277:25–278:13; *see also* JTX-497, at 15 (timing diagram for the D5); PDX-358 (listing all other sensors that have the same method as the D5); Tr. (Carley) at 278:25–279:8 (testimony regarding other image sensors); JTX-398, at 6 (timing diagram for the D3100 and D3200); JTX-489, at 17 (timing diagram for the D5600, D3300, D5300, and D5500); JTX-499, at 16 (timing diagram for the D750); JTX-490, at 16 (timing diagram for the D810/D810A); and JTX-498, at 17 (timing diagram for the D500 & D7500).

- Method step (b).  Dr. Carley testified that each and every accused camera infringes this step "in the same way" with reference to timing diagrams produced by Nikon or third parties, or obtained from TechInsights.  *See* Tr. (Carley) at 279:20–281:2; *see also* JTX-321, at 11; JTX-497, at 14; JTX-368, at 6; JTX-489, at 16; JTX-198, at 16; JTX-490, at 16, JTX-499, at 16.

- Method step (c).  Dr. Carley testified that this step was infringed under the doctrine of equivalents because, although the transfer transistors "were turned off a while

10

before this period started," the "whole point of the transistor being off here is the valve is closed" and "[n]o charge can flow through during this period," which is accomplished by either keeping the transistor off (as in the accused cameras) or turning it off.  Tr. (Carley) at 281:15–285:1; *see also* JTX-321, at 12.

- <u>Method step (d)</u>.  Dr. Carley testified that this element was infringed under the doctrine of equivalents because, although the reset transistor "turned off in the previous step," the "whole point" of this step is "that we're now pouring the charge from our photodiode into the sense node" and "all that matters is the the transistor is off," which is what the accused cameras do.  *See* Tr. (Carley) at 285:7–286:25.

- <u>Method step (e)</u>.  Dr. Carley testified that this element was infringed under doctrine of equivalents because, although the first transfer transistor "turned off during the previous step," "all 1E is really trying to do is make sure that we don't have the charge that's stored in the photodiodes be disrupted because we're draining" and "[w]e have to keep the photodiodes cut off from that," which is what the accused cameras do. *See* Tr. (Carley) at 287:1-288:13.

- <u>Method step (f)</u>.  Dr. Carley testified that this step was infringed under the doctrine of equivalents because, although the reset transistor "turned off in the previous step," all that matters is that the transistor is off and no charge can flow through during this period, which is what the accused cameras do.  *See* Tr. (Carley) at 288:14–289:19.

    As to claims 2 and 3, Dr. Carley also testified that each of the accused cameras meet the additional limitations of these claims.  Claim 2, which depends from claim 1, recites that step (b) of claim 1 additionally "comprises the step of generating and integrating the photoelectric charges of the first photodiode, regardless of the states of the reset transistor, the second transfer transistor and the select transistor, while the first transfer transistor is turned off."  Dr. Carley testified that each of the accused cameras performed these additional actions as part of step (b).  *See* Tr. (Carley) at 290:15–292:2. As to claim 3, which depends from claim 2 and recites that the method "controls a

depletion time and a photo charge generating and integrating time by adjusting a turn-on time and a turn-off time for the first and second transfer transistors," Dr. Carley explained, with reference to Nikon manuals, that each of the accused cameras meet this additional limitation because they allow users to "dial the exposure time up and down." Tr. (Carley) at 292:11–295:4; *see also* PDX-376 and exhibits and page numbers cited therein (listing pages from manuals referenced by Dr. Carley).

Of these limitations as applied to all of the accused cameras, Defendants only raise three issues on which they contend Plaintiffs failed to meet their burden.   First, Defendants contend (at 13) that Plaintiffs failed to prove that the "passive state of keeping a transistor on/off is equivalent to the active step of turning a transistor on/off." Defendants' contention is belied by the actual testimony from Dr. Carley referenced above that keeping a transistor off is insubstantially different from turning it off as it accomplishes the same goal in the same way with the same result.  Moreover, Dr. Carley specifically addressed this criticism by Defendants in the rebuttal case, where he explained that the difference between turning the transistor off and keeping it off was insubstantial from an infringement perspective, from an engineering perspective, and from a user perspective.  *See.* Tr. (Carley) at 1049:7–1050:1  As to Defendants' claim that Dr. Carley did not perform the correct legal analysis, that is again belied by Dr. Carley's actual testimony, which provides an analysis as to why what the accused cameras do is insubstantially different from what is claimed by the '335 patent, referenced above.

Second, Defendants claim (at 13–14) that Plaintiffs failed to meet their burden as to the cameras which use Toshiba TCM5119 and Aptina AR1410 image sensors because Dr. Carley allegedly "ignored" the extra control transistor that exists between the reset transistor and sensing node in these Toshiba and Aptina image sensors." To the contrary, Dr. Carley acknowledged this difference, but testified that the difference was insubstantial to his infringement analysis under DOE.  *See* Tr. (Carley) at 272:11–13 (noting that "there's another transistor in between that's got a control signal that's labeled CTL"); Tr.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS
A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

(Carley) at 272:23–274:6 (explaining that the difference is insubstantial and applying the function, way, result analysis under DOE).

Third, Defendants claim that Plaintiffs failed to meet their burden to show that each of the accused cameras was not "fully depleted" because, according to Defendants, proving this element is met would require performing "measurements of the actual charges in the photodiodes."  Defendants' argument is predicated on an unduly narrow construction which has no basis in the language of the claim or the specification, and one which was not adopted by the Court.  As described above, Plaintiffs presented substantial evidence, including testimony from a Nikon engineer, that this limitation was met.

Lastly, Defendants argue (at 14–15) that Plaintiffs produced "zero evidence" that the Aptina image sensors perform the claimed steps because Plaintiffs did not introduce timing diagrams for these sensors.  Expert testimony, though, is also evidence, and Dr. Carley testified that he reviewed the timing diagrams for these sensors and explicitly testified that the Aptina sensors infringe based on those timing diagrams.  *See* Tr. (Carley) at 279:15–19 ("I have reviewed the timing diagrams for the Aptina sensors and they operate in exactly the same way as the D5 sensors"); *id.* at 280:24–281:2 (same); *id.* at 290:7–11 (same).  Defendants cite no case as to why expert testimony based on a review of documents is insufficient, even if the underlying documents reviewed by the expert are not introduced into evidence.

### 2. Plaintiffs Presented Substantial Evidence of Direct Infringement by Defendants

As Dr. Carley explained, "[a]ny operation" performed on the accused cameras "that reads out the data from the image sensor infringes the '335 patent" because the "accused cameras are designed in a way to read out the image that infringes the '335 patent," such as when "taking [] a photo" or "even just displaying [an image] on the viewfinder."  Tr. (Carley) at 295:5–13.  In short, "[e]very time [someone] take[s] a picture, they infringe."  *Id.* at 295:14–15.  This evidence alone is sufficient to show direct

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

infringement.  The Federal Circuit has held that a product manufacturer can directly infringe a method claim if its products "automatically perform the disputed steps" "without user modification," as here.  *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010).  Thus, Nikon directly infringes simply by virtue of making and selling the accused cameras.  In addition, Plaintiffs put forth substantial evidence to show actual use by Defendants in the United States.  For example, the evidence demonstrated that Nikon employees demonstrate Nikon cameras by taking photos at trade shows and cameras shops.  *See, e.g.,* Tr. (Vannatter) at 421:1–422:20.  As discussed below in section H, this evidence applies both the Nikon Inc. and Nikon Corp.

### 3.    Plaintiffs Presented Substantial Evidence of Indirect Infringement by Defendants

Plaintiffs also put forth sufficient evidence to show indirect infringement.  Specifically, Plaintiffs introduced Nikon manuals instructing users on how to take photos (which, as explained above, necessarily uses the method of the '335 patent) and testimony from Nikon witnesses that Defendants produce those manuals with the intent that users follow those instructions.  *See, e.g.*, Tr. (Vannatter) at 422:22–423:24; Tr. (Shima) at 237:13–17 (testifying that taking photographs is the main purpose of Defendants' cameras and that Defendants expect that users will use live-view mode).  Defendants contend this evidence is insufficient because, according to Defendants, Plaintiffs did not demonstrate any actual use of Nikon cameras in the U.S.  In addition to being contrary to the evidence of its own witnesses regarding the use of Nikon cameras in the U.S., Defendants' argument defies common sense—Defendants cannot seriously contend that no one uses Nikon's cameras to take photos in the United States, especially given U.S. sales are in the billions.

As to Defendants' knowledge that their customers would infringe the '335 patent by taking photos, Plaintiffs presented evidence that Defendants knew about, and purportedly analyzed, the '335 patent in 2009.  *See, e.g.,* Tr. (Kato) at 218:15–22.  However,

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

Defendants willfully blinded themselves to their infringement by failing to consult the third party image sensor manufacturers and by failing to even consult their own technical engineers for this analysis. *See, e.g.*, Tr. (Kato) at 223:4–224:20. As has been repeatedly briefed to this Court, these facts are sufficient to show knowledge of infringement. (*See generally, e.g.,* D.I. 346.)

### E. Plaintiffs Presented Substantial Evidence Regarding Infringement of Claim 16 of the '163 Patent

Plaintiffs presented more than substantial evidence that Nikon infringes claim 16 of the '163 patent. Specifically, Plaintiffs expert Dr. Mundy carefully walked through each of the limitations of this claim, including addressing both Plaintiffs' and Defendants' proposed constructions for the two "means" elements ("first filtering means" and "second filtering means"), as follows:

- <u>Preamble</u>. Dr. Mundy testified that each of the 43 cameras accused of infringement satisfy the preamble because each is an "image processing system," i.e., a digital camera, which detects faces (i.e. a target image pattern.). Tr. (Mundy) at 600:4–8. The preamble was not disputed.

- <u>Element 15a</u> ("first filtering means …"). Dr. Mundy gave extensive evidence as to how the "first filtering means" was satisfied by the 43 accused cameras, walking through each requirement of the claim element in detail, and showing the jury how the Nikon cameras infringed this element, with reference to the source code and his own diagrams created from the source code. Tr. (Mundy) at 599:10-612:21, 1066:20-1078:1. He addressed both the function and structure for Plaintiffs' and Defendants' proposed constructions, as well as infringement if the claim were interpreted not as a means plus function claim. *Id.*

- <u>Element 15b</u> ("second filtering means …"). Dr. Mundy gave extensive evidence as to how the "second filtering means" was satisfied, walking through each requirement of this claim element in detail, and showing the jury how the Nikon cameras infringed

this element, with reference to the source code and his own diagrams created from the source code. Tr. (Mundy) at 612:22–618:8, 1076:3-1078:6. As with the "first filtering means," Dr. Mundy addressed this claim element for each of Plaintiffs' and Defendants' proposed means-plus-function constructions, as well as infringement if the claim were interpreted not as a means plus function claim. *Id.*

- Element 15c ("an image pattern detector …"). Dr. Mundy again gave extensive testimony regarding how this limitation was infringed, explaining how each part of the limitation was present in the accused cameras. *See* Tr. (Mundy) at 618:6–620:23.

- Element 16 ("wherein said first filtering means includes a linear matched filter …."). Each of the previous limitations come from claim 15, from which claim 16 depends. Dr. Mundy also explained how the additional limitations of claim 16 were met in the accused product during his discussion of the "first filtering means" discussed above, as claim sixteen adds additional aspects to that filter. *See* Tr. (Mundy) at 610:14-612:18.

Defendants' motion only takes issue with a few aspects of Dr. Mundy's analysis. Defendants contend (at 5–6) that Plaintiffs failed to meet their burden regarding allegedly "unidentified Nikon products." However, Plaintiffs **did** identify each of the accused products by introducing into evidence a table from a Nikon interrogatory response that identified which accused cameras used the "Okao," "Parfait," and "Pine" software and hardware implementations of face detection functionality (JTX-74); reading into the record testimony from a Nikon witness that the aforementioned list was correct (Tr. (Yamagata) at 427:11-429:7); and Dr. Mundy's testimony linking the information in the interrogatory response (JTX-74) to the "Okao," "Parfait," and "Pine" software and hardware implementations (Tr. (Mundy) at 578:25-580:8). This evidence was unrebutted. Dr. Mundy also testified repeatedly about the 43 cameras he found to be infringing, linking them to the various elements of claim 16. *See, e.g.*, Tr. (Mundy) at 598:3-6, 600:2-8, 606:7-11, 608:6-10, 615:23-616:19, 1067:2-7.

The remaining criticisms regarding Plaintiffs' infringement case largely stem from a claim construction proposed by Defendants, which was not adopted by the Court. First, Defendants argue (at 7–8) that Dr. Mundy failed to identify structure that corresponded to the algorithms listed at 7:10-21 and 7:44-53 of the '163 specification, but the Court did not point to these algorithms in the claim construction provided to the jury. (*See* D.I. 511, at 16.) In any event, Dr. Mundy did provide corresponding structure for these algorithms on rebuttal. *See* Tr. (Mundy) at 1066:20-1078:1. Second, Defendants argue (at 8) that Plaintiffs failed to meet their burden regarding "correlation," but again, this was predicated on a claim construction which required a correlation image, which was not adopted by the Court. (*See* D.I. 511, at 16.) Again, though, Dr. Mundy addressed this on rebuttal. Tr. (Mundy) at 1074:9-12, 1073:22-23. Third, Defendants argue (at 8) that Plaintiffs failed to meet their burden regarding whether the accused products correlate an image with a reference image pattern. The Court did not adopt Defendants' claim construction here either, and Dr. Mundy again addressed this criticism on rebuttal. (*See* D.I. 511, at 16); Tr. (Mundy) at 1076:3-1078:6. Fourth, Defendants argue that Plaintiffs did not prove the presence of the "second filtering means" under their proposed construction, which was again not adopted by the Court. (*See* D.I. 511). Fifth, Defendants argue that Plaintiffs failed to provide evidence that the accused products include an "image pattern detector," but this argument disregards the admitted evidence and testimony from Dr. Mundy, which discussed the image pattern detector at length. Tr. (Mundy) at 618:9-620:23).

Lastly, Defendants assert that Plaintiffs were estopped from asserting DOE. Defendants' argument (at 16) assumes their incorrect claim construction that was rejected by the Court, as the "first filtering means" does not require detecting local maxima in a correlation image as this construction was not adopted by the Court. Moreover, plaintiffs identified equivalents pursuant to section 112(f) (which covers both recited structure and "equivalents thereof"), not under the doctrine of equivalents.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS
A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

### F.   Plaintiffs Provided Substantial Evidence Sufficient to Support a Finding that Defendants' Infringement was Willful

As noted above, Plaintiffs introduced evidence that at least Nikon Corp. was aware of the '335 patent and purported to conduct an analysis of it, but willfully blinded itself to its infringement of this patent by failing to check with either suppliers or its own technical engineers during this purported analysis.  *See* Part II.D.3, *supra*.  Plaintiffs additionally produced mirrored evidence for the '163 patent as well, reading into the record testimony from Mr. Kato that, though Nikon was aware of the patent, Nikon did not seek any technical guidance regarding potential infringement, thus willfully blinding itself to its infringement of that patent.  *See* Tr. (Kato) at 225:8–226:19.  Moreover, Nikon acknowledged being aware of the '312 patent before the suit, and acknowledged it hadn't made any changes to products to avoid infringement of any of these patents, nor had Nikon updated its analysis for '335 and '163 patents after releasing many new products after learning of the patents.  *See, e.g.,* Tr. (Kato) at 226:22–229:15.  As has been previously briefed, these facts are sufficient to prove willfulness.  (*See generally, e.g.*, D.I. 346.)

### G.   As Defendants Failed to Meet Their Burden of Production Regarding Marking, Defendants Are Not Entitled to JMOL

Defendants' first Rule 50(a) motion (to which this brief responds) was filed at the close of Plaintiffs' case-in-chief and before Defendants had even put on a single witness. Defendants, however, moved for JMOL as to the issue of marking, contending that Plaintiffs should have been required to address marking in their case-in-chief before Defendants had put forth any evidence on the issue (apart from the opening statement, which is not evidence). Defendants' argument has it exactly backwards according to the controlling case on the issue, *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).  Before *Arctic Cat*, "there was a split among the district courts regarding which party must initially identify the products which it believes the patentee failed to mark." *Id.* at 1367. The Federal Circuit resolved this split, and stated the holding

of the case as follows: "We hold an alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Id.* at 1368. Thus, only "[o]nce the alleged infringer meets its burden of production" does "the patentee bear[] the burden to prove the products identified do not practice the patented invention." *Id.* Defendants did not meet this burden during Plaintiffs case-in-chief, and thus Plaintiffs had no reason to address marking.

Nor did Defendants meet any burden of production during their case-in-chief. Defendants did not identify cameras which practice face detection, only identifying cameras which have a "red-eye" feature. Tr. (Darrell) at 756:14-760:10. Plaintiffs also showed that the technical papers on which Dr. Darrell and Defendants relied, i.e., an HP white paper and a different HP patent, were published prior to the existence of the five HP cameras, and therefore could not be describing the five HP cameras asserted to practice the '163 patent at trial. *Id.* This evidence was unrebutted, showing that Dr. Darrell had no basis for his opinion that the five HP cameras practiced claim 15 of the '163 patent. In any event, Dr. Mundy did address Defendants' claims regarding marking on rebuttal testifying that the HP cameras did not practice the claims because they did not perform correlation, one of the elements of claim 15. Tr. (Mundy) at 1084:23-1085:1.

### H. Plaintiffs Provided Substantial Evidence of Infringement by Both Nikon Corp. and Nikon Inc.

Nikon argues that Plaintiffs failed to meet their burden of demonstrating infringement by Nikon Inc. and Nikon Corp., contending (as they did at trial) that these are separate companies. However, Plaintiffs put forth substantial evidence that the separation between these two companies that Nikon attempted to draw at trial is purely artificial, and that Nikon Corp. directs and controls the activities of Nikon Inc. For example, Nikon's own witness testified that Nikon Corp. is the head of the world-wide "Nikon Group," which is a "multinational, with legal entities in many areas of the world."

Tr. (Murphy) at 411:7–412:5.  As Mr. Murphy testified, Nikon is "one company across the world" and that each company "tries to have the identity of being Nikon."  *Id.* at 412:12–21.  Indeed, Nikon's own IP policy prohibits subsidiaries, such as Nikon Inc., from doing any work regarding intellectual property without permission from Nikon Corp., illustrating the control Nikon Corp. has over Nikon Inc.  *See, e.g.,* Tr. (Kato) at 216:18–23; *id.* at 218:6–14.  Moreover, Plaintiffs presented evidence of specific actions by both Nikon Corp. (such as making manuals and firmware available for download in the United States) and by Nikon Inc. (such as selling cameras in the United States).  *See* Tr. (Vannatter) at 423:10–424:22; Tr. (McDuff) at 441:12–20 (showing billions of dollars in U.S. sales of accused cameras).

### I.    Plaintiffs Provided Substantial Evidence of Entitlement to Damages

Lastly, Nikon argues that Plaintiffs did not meet their burden of proving entitlement to damages because, according to Nikon, Dr. McDuff's theories are "entirely unsupported by the record or are contrary to well-established law."  (Mot. at 24–25.)  Notably, this Court already denied Nikon's MIL seeking to preclude Dr. McDuff's damages testimony.  Moreover, Nikon did not question any of the numbers on which Dr. McDuff relied on cross examination, nor did Nikon's damages expert question the rigor of the methodologies applied by Dr. McDuff—her only testimony was that the patent sales agreement should form the basis for a royalty.  As Dr. McDuff carefully explained the basis for his damages opinions—including reliance on testimony from Nikon witnesses, Nikon user surveys, unrebutted technical analysis of cost-savings in Nikon's image sensors from applying the patented technology, and countless other sources, Nikon's JMOL should be denied.

### IV.   CONCLUSION

For the reasons stated above, Nikon's rule 50(a) motion filed at the close of Plaintiffs' case in chief should be denied.

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

Dated:  December 17, 2018                 FISH & RICHARDSON P.C.

                                   By:   /s/ Christopher S. Marchese
                                   _____

                                   Christopher S. Marchese (SBN 170239)
                                   marchese@fr.com
                                   FISH & RICHARDSON P.C.
                                   633 West Fifth Street, 26th Floor
                                   Los Angeles, CA 90071
                                   Tel:  (213) 533-4240, Fax: (858) 678-5099

                                   Frank Scherkenbach (SBN 142549)
                                   scherkenbach@fr.com
                                   Kurt L. Glitzenstein (Admitted *Pro Hac Vice*)
                                   glitzenstein@fr.com
                                   Proshanto Mukherji (Admitted *Pro Hac Vice*)
                                   mukherji@fr.com
                                   Jeffrey Shneidman (Admitted *Pro Hac Vice*)
                                   shneidman@fr.com
                                   Elizabeth G.H. Ranks (Admitted *Pro Hac Vice*),
                                   ranks@fr.com
                                   FISH & RICHARDSON P.C.
                                   One Marina Park Drive
                                   Boston, MA 02210-1878
                                   Tel:  (617) 542-5070, Fax: (617) 542-8906

                                   Olga I. May (SBN 232012)
                                   omay@fr.com
                                   Markus D. Weyde (SBN 285956) weyde@fr.com
                                   K. Nicole Williams (SBN 291900)
                                   nwilliams@fr.com
                                   Jared A. Smith (SBN 306576)
                                   jasmith@fr.com
                                   Oliver J. Richards (SBN 310972)
                                   orichards@fr.com
                                   FISH & RICHARDSON P.C.
                                   12390 El Camino Real
                                   San Diego, CA 92130
                                   Tel:  (858) 678-5070, Fax:   (858) 678-5099

21
PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW
Case No. 2:17-cv-07083-RGK (MRWx)

1

2

3      Jennifer Huang (Admitted *Pro Hac Vice*)
       jhuang@fr.com
4      FISH & RICHARDSON P.C.
       60 South Sixth Street, Suite 3200
5      Minneapolis, MN 55402
       Tel:  (612) 335-5070, Fax:  (612) 288-9696
6

7      Andrew R. Kopsidas (Admitted *Pro Hac Vice*)
       kopsidas@fr.com
8      FISH & RICHARDSON P.C.
       1000 Maine Avenue, S.W., Ste. 1000
9      Washington, DC 20024
       Tel:  (202) 783-5070, Fax: (202) 783-2331
10

11

12     Attorneys for Plaintiffs, CARL ZEISS AG and
       ASML NETHERLANDS B.V.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    22
       PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS
                              A MATTER OF LAW
                        Case No. 2:17-cv-07083-RGK (MRWx)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 17, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Christopher S. Marchese*
Christopher S. Marchese
marchese@fr.com