Christopher S. Marchese (SBN 170239), marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240, Fax: (858) 678-5099

Frank Scherkenbach (SBN 142549), scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted *Pro Hac Vice*), glitzenstein@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070, Fax: (617) 542-8906

Markus D. Weyde (SBN 285956), weyde@fr.com
K. Nicole Williams (SBN 291900), nwilliams@fr.com
Jared A. Smith (SBN 306576), jasmith@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel: (858) 678-4745, Fax: (858) 678-5099

*[Additional Counsel listed on last page.]*

Attorneys for Plaintiffs, CARL ZEISS AG and ASML NETHERLANDS B.V.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CARL ZEISS AG and ASML NETHERLANDS B.V.,<br><br>        Plaintiffs,<br>v.<br><br>NIKON CORPORATION and NIKON INC.,<br>        Defendants. | Case No. 2:17-cv-07083-RGK (MRWx)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR NEW TRIAL**<br><br>Date:      March 11, 2019<br>Time:     9:00 a.m.<br>Judge:    Hon. R. Gary Klausner<br>Courtroom: 850, 8th Floor |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTORY STATEMENT ....................................................... 1

II.    LEGAL STANDARD ....................................................................... 2

III.   ARGUMENT .................................................................................. 3

    A.   Plaintiffs Are Entitled to a New Trial Because the Jury Instructions Were Erroneous and Prejudicial to the Outcome of the Trial ............................... 3

        1.   The Court provided prejudicially erroneous instructions regarding the scope of the asserted claims, mandating a new trial as to the '335 and '163 patents. ......................................................... 3

        2.   The Court's Other Jury Instruction Errors ......................................... 8

    B.   Plaintiffs Are Entitled to a New Trial Because Of Errors in the Admission and Presentation of the Evidence ................................................. 10

    C.   A New Trial Is Warranted Because the Jury's Determinations are Against the Clear Weight of the Evidence ................................................. 12

        1.   The Clear Weight of the Evidence Shows That the Df, D4, and D4S Cameras Infringe the Asserted Claims of the '312 Family ...... 12

        2.   The Clear Weight of the Evidence Shows Nikon's Products Infringe the Asserted Claims of the '335 Patent ............................... 16

        3.   The Clear Weight of the Evidence Shows Nikon's Products Infringe Claim 16 of the '163 Patent ................................... 19

        4.   Sony License Defense ........................................................... 19

IV.   CONCLUSION ............................................................................. 20

PLAINTIFFS' MEMORANDUM ISO MOTION FOR NEW TRIAL
Case No. 2:17-cv-07083-RGK (MRWx)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFG Industries, Inc. v. Cardinal IG Co., Inc.*,
  239 F.3d 1239 (Fed. Cir. 2001) ......................................................................... 3

*Broadcom v. Emulex*,
  732 F.3d 1325 (Fed. Cir. 2013) ......................................................................... 5

*Chiron Corp. v. Genentech, Inc.*,
  363 F.3d 1247 (Fed. Cir. 2004) ......................................................................... 3

*Computer Access Tech. Corp. v. Catalyst Enters., Inc.*,
  273 F. Supp. 2d 1063 (N.D. Cal. 2003) ........................................................... 12

*Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*,
  984 F.2d 410 (Fed. Cir. 1993) ........................................................................... 3

*Ecolab, Inc. v. Paraclipse, Inc.*,
  285 F.3d 1362 (Fed. Cir. 2002) ......................................................................... 4

*EMC Corp. v. Pure Storage, Inc.*,
  No. CV 13-1985-RGA, 2016 WL 775742 (D. Del. Feb. 25, 2016) ........................ 11

*Endo Pharm., Inc. v. Actavis, Inc.*,
  746 F.3d 1371 (Fed. Cir. 2014) ...................................................................... 9, 19

*ERBE Elektromedizin GmbH v. Int'l Trade Comm'n*,
  566 F.3d 1028 (Fed. Cir. 2009) ......................................................................... 6

*Every Penny Counts, Inc. v. American Express Co.*,
  563 F.3d 1378 (Fed. Cir. 2009) ....................................................................... 11

*Georgia-Pac. Corp. v. U.S. Gypsum Co.*,
  195 F.3d 1322 (Fed. Cir. 1999), *opinion amended on reh'g*, 204 F.3d 1349 (Fed. Cir. 2000) ................................................................................................................ 12

*Harris Corp. v. Ericsson Inc.*,
  417 F.3d 1241 (Fed. Cir. 2005) ......................................................................... 3

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
  No. 11-CV-5341 YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014) ..................... 11

*MEMS Tech. Berhad v. ITC*,
  447 F. App'x 142 (Fed.Cir.2011) ............................................................... 6

*Moba, B.V. v. Diamond Automation, Inc.*,
  325 F.3d 1306 (Fed. Cir. 2003) ................................................................. 5

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007) ..................................................................... 12

*Montgomery Ward & Co. v. Duncan*,
  311 U.S. 243 (1940) ..................................................................................... 3

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) .................................................... 3, 5, 6, 7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ............................................... 4

*Promega Corp. v. Life Techs. Corp*,
  No. 10-00281, Dkt. 498 (W.D. Wi. Feb. 3, 2012) ................................... 9

*Santa Maria v. Metro-North Commuter R.R.*,
  81 F.3d 265 (7th Cir. 1996) ....................................................................... 12

*Silicon Graphics v. nVidia*,
  58 F.Supp. 2d 331 (D.Del.1999) ............................................................... 6

*Spindelfabrik Suessen-Schurr v. Schubert & Salzer*,
  903 F.2d 1568 (Fed. Cir. 1990) ................................................................. 9

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015) ................................................................. 8

*WMS Gaming, Inc. v. Int'l Game Tech.*,
  184 F.3d 1339 (Fed. Cir. 1999) ................................................................. 7

*Zhang v. Am. Gem Seafoods, Inc.*,
  339 F.3d 1020 (9th Cir. 2003) ................................................................... 2

**Other Authorities**

Federal Rules of Civil Procedure 50 ..................................................... 15, 18

Federal Rules of Civil Procedure 59 ........................................................... 2

# I.   INTRODUCTORY STATEMENT

In December 2018, this Court held a seven-day trial that resulted in a judgment for Defendants Nikon Inc. and Nikon Corporation (collectively "Nikon" or "Defendants") based on the jury's finding that each of the asserted claims of each of the asserted patents were valid but not infringed. That trial and the resulting jury verdict were flawed. Errors in the instructions given to the jury and in the presentation of evidence led the jury to reach a conclusion that was against the clear weight of the evidence. As described in Plaintiffs' motion for JMOL, judgment should be entered in Plaintiffs' favor as to two of the asserted patents as Defendants failed to present any cognizable evidence of non-infringement to contest Plaintiffs' substantial infringement case. But if this Court does not grant JMOL as to those patents, Plaintiffs are at least entitled to a new trial for those patents as well as the other patents involved in this case to remedy the serious errors that underlie the jury's flawed verdict.

These errors include prejudicial and substantial errors in how the jury was instructed. The Court, as it must, provided the jury instructions that defined the scope of Plaintiffs' asserted claims. As to the '335 and '163 patents, the claim constructions adopted by this Court are legally incorrect. In the case of the '335 patent, the Court's claim construction is inconsistent with controlling Federal Circuit law, fails to consider the specification of the '335 patent, and indeed excludes the primary embodiment disclosed there. For the '163 patent, the Court adopted a claim construction that was not proposed by either party on the last day of trial or at any time prior—after both parties had put in evidence and testimony based on the constructions actually proposed by the parties. Moreover, like the '335 patent, the construction that the Court did adopt for the '163 patent is inconsistent with Federal Circuit law, gives insufficient weight to the patent specification, and does not fully resolve the claim construction dispute between the parties or clearly define the limits of the claims. The Court also erred by failing to instruct the jury on contributory infringement. In essence, the Court sua sponte granted JMOL in Defendants' favor on contributory infringement, despite substantial evidence

PLAINTIFFS' MEMORANDUM ISO MOTION FOR NEW TRIAL
Case No. 2:17-cv-07083-RGK (MRWx)

1   supporting such a theory in the trial record and without giving Plaintiffs an opportunity

2   to be heard on this point. Lastly, this Court erred by failing to instruct the jury that Nikon

3   had the burden of proving its license defense, despite both parties agreeing that this was

4   the correct legal standard for the jury to apply. These errors are prejudicial to Plaintiffs

5   and warrant a new trial.

6       Errors in the presentation of the evidence also warrant a new trial. As explained

7   in Plaintiffs' motion for JMOL, this Court erred by permitting Defendants to present a

8   previously undisclosed theory of non-infringement for the '574 patent over Plaintiffs'

9   objection. This Court similarly allowed Nikon to present a new theory of anticipation for

10  the '163 patent, causing Plaintiffs to spend precious trial time unnecessarily at the expense

11  of its infringement case. In addition, this Court allowed Nikon's expert witnesses to

12  provide improper testimony to the jury, over Plaintiffs' objection, concerning the scope

13  of the claims—a legal question that is the exclusive province of the Court.

14      Lastly, even under the incorrect instructions and the flawed presentation of

15  evidence, the jury's verdict was simply against the great weight of the evidence. Plaintiffs

16  presented a substantial case of infringement as to each of the patents. Plaintiffs' experts

17  were well-prepared, taught the jury about the technology, and convincingly explained

18  how Nikon's products infringe each asserted claim. Nikon's experts were repeatedly

19  impeached, contradicted themselves and Nikon fact witnesses on the stand, and forgot

20  how Nikon's products worked and the content of the claims. The Court should find the

21  verdict against the clear weight of the evidence and grant a new trial.

22  **II.    LEGAL STANDARD**

23      After a jury trial, a court may grant a new trial to a party "for any reason for which

24  a new trial has [ ] been granted in an action at law in federal court." Fed. R. Civ. P.

25  59(a)(1)(A). Because Rule 59 does not specify the grounds on which a court may grant a

26  motion for a new trial, the court is "bound by those grounds that have been historically

27  recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Those

28  grounds include, but are not limited to, claims that the verdict is against the great weight

of the evidence, that the trial was not fair to the moving party, that the jury instructions were erroneous or inadequate, or that the court made incorrect and prejudicial admissibility rulings. M*ontgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940); *see also Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004).As explained below, Plaintiffs assert they are entitled to a new trial on each of these basis.

## III.   ARGUMENT

### A.   Plaintiffs Are Entitled to a New Trial Because the Jury Instructions Were Erroneous and Prejudicial to the Outcome of the Trial

Plaintiffs are entitled to a new trial to remedy the errors made by this Court in instructing the jury in how to reach its verdict. These errors include errors in claim construction, a failure to instruct the jury regarding contributory infringement and about the correct burden of proof regarding Nikon's license defense. As these "errors in the instructions as a whole clearly misled the jury," Plaintiffs are entitled to a new trial. *See Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410, 415 (Fed. Cir. 1993).

### 1.   The Court provided prejudicially erroneous instructions regarding the scope of the asserted claims, mandating a new trial as to the '335 and '163 patents.

Plaintiffs are entitled to a new trial because the Court's jury instructions regarding the meaning of various claim terms from the '335 and '163 patents were erroneous.[1] This Court has a duty to resolve disputes between the parties as to the scope of the claims— which is a question of law exclusively for the Court. *See, e.g., O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008); *see also AFG Industries, Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1247, (Fed. Cir. 2001).  While this Court did resolve

---

[1] Plaintiffs preserved their claim of error by asking the Court to construe terms at both summary judgment and in its proposed jury instructions.  As the Federal Circuit has found, where a party has fully presented its position regarding claim construction, "a further objection to the district court's [constructions are] futile [and] unnecessary."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008) (internal quotation marks omitted); *see also Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1250 (Fed. Cir. 2005) (waiver of claim construction argument decided according to Federal Circuit law rather than the law of the regional circuits).

1    some of the claim construction disputes between the parties, it did so erroneously,

2    providing the jury instructions regarding the scope of the asserted claims of the '335 and

3    the '163 patents that depart from binding Federal Circuit law, the specifications of those

4    patents, and the common understanding of skilled artisans at the time of the inventions.

5    This Court also erred by not resolving other disputes regarding claim construction,

6    including not providing the jury an instruction regarding the order of the steps for the

7    '335 patent and by providing a claim construction for the '163 patent that did not fully

8    resolve the disputes between the parties or clearly define the boundaries of the claims.

9        These errors mandate a new trial. As the Federal Circuit has found, "[a]n erroneous

10   instruction regarding claim interpretation that affects the jury's decision on infringement

11   is grounds for a new trial." *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373 (Fed. Cir.

12   2002). Each of the claim constructions discussed below were central to the dispute

13   between the parties regarding infringement, and thus any error regarding claim

14   construction of these terms must result in a new trial for that patent.

15           a.    **'335 Patent: The Court Instructed the Jury to Apply an**

16                 **Incorrect Construction of "Turning on/off"**

17       The Court's instruction that "turning on" and "turning off" requires an affirmative

18   transition into those states is legal error because the specification clearly shows that such

19   a transition is not required. "[T]he specification is always highly relevant to the claim

20   construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of

21   a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*).

22   Here, Plaintiffs discussed in their Motion for Summary Adjudication (D.I. 150 at Section

23   E) and Reply to Defendants' Motion for Summary Adjudication (D.I. 201 at Section V),

24   which are incorporated here by reference, the specification mandates that the terms just

25   require ensuring that transistors are on or off.  *First*, the specification expressly uses "turn

26   on/off" (and variants thereof) where the system ensures that a transistor is on or off,

27   without transitioning it to that state. '335 at 5:29-31, Fig. 5. *Second*, the Court's instruction

28   excluded <u>*all*</u> disclosed embodiments from the scope of the claim, which is not only "rarely,

if ever, correct" and "especially disfavored." *Broadcom v. Emulex*, 732 F.3d 1325, 1333 (Fed. Cir. 2013).

This error is prejudicial. First, the Court granted summary judgment of no literal infringement based on this construction, D.I. 305 at 14, preventing Plaintiffs from presenting their meritorious literal infringement case on these claim limitations to the jury. Plaintiffs are entitled to have a jury consider literal infringement at a new trial. Second, Nikon relied exclusively on the Court's construction of the "turning on/off" terms to respond the case Plaintiffs were permitted to make instead under the doctrine of equivalents. For instance, Nikon's expert's sole non-infringement theory for these limitations was that "[t]hese turning on and turning off steps are not met," *see, e.g.*, Ex. A[2], Tr. (Kleinfelder) at 839:2-14; *id.* at 840:19-841:8, and that the doctrine of equivalents does not apply "[b]ecause by doing nothing instead of turning on and off [as construed by the Court], you're eliminating steps." *Id.* at 846:16-19. Thus, a new trial is necessary.

### b.   '335 Patent: The Court Failed to Instruct the Jury on Overlap of the Method Steps and the "Coupled" Terms

The Court also erred by not instructing the jury on the proper construction of two disputed issues. The first is whether the method steps of the asserted claims can overlap. This dispute was for the Court to resolve, not the jury. *O2 Micro*, 521 F.3d at 1360 ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute."). The Court, however, failed to instruct the jury as to whether the method steps can overlap. (D.I. 511, at 16.) This is legal error. *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313–14 (Fed. Cir. 2003) (reversing district court's denial of patentee's motion for a JMOL of infringement where the jury had returned a non-infringement verdict to a method claim on the basis that the method applied by the accused machine did not sequentially perform the recited guiding steps). The Court's failure to instruct the jury on the scope of the claim is particularly problematic

---

[2]   All references to "Tr." refer to the excerpts from the trial transcript in Exhibit A.

1  because a determination by the jury that the method steps cannot overlap would be an

2  error of law, and contradict the specification.[3] *ERBE Elektromedizin GmbH v. Int'l Trade*

3  *Comm'n*, 566 F.3d 1028, 1034 (Fed. Cir. 2009) (Courts "do not construe claim language to

4  be inconsistent with the clear language of the specification."). This error is prejudicial.

5  Nikon's expert argued it to the jury as a ground for non-infringement. For example, he

6  testified that the steps did have to be performed *in order* (i.e. without overlap), *see, e.g.,* Tr.

7  (Kleinfelder) at 822:18-21 ("[Claim 1] describes a series of steps that the patent requires

8  to be operated *in order* to operate the pixel."); *id.* at 846:20-22—and that this construction

9  led to no infringement under the doctrine of equivalents. *See, e.g., id.* at 846:16–22. Thus,

10 the Court's failure to instruct the jury as to the proper resolution of the parties' claim

11 construction dispute warrants a new trial. *See O2 Micro*, 521 F.3d at 1361.

12      The Court also erred in its construction of the disputed term "coupled"—as

13 requiring a "direct connection"—in its Order on Summary Adjudication, and further erred

14 by failing to include any construction of the term in the instructions to the jury. (*See* D.I.

15 511, at 16.) The Court's construction is inconsistent with the plain meaning of the term,

16 which also covers indirect connections. *See Silicon Graphics v. nVidia*, 58 F.Supp. 2d 331,

17 346 (D.Del.1999) ("couple" in electronics context not limited to "directly coupled.");

18 *MEMS Tech. Berhad v. ITC*, 447 F. App'x 142, 151–52 (Fed.Cir.2011). Even more

19 importantly, limiting the term "coupled" to "direct connections" excludes the very usage

20 of that term in the specification as set forth in Plaintiffs' Opposition to Defendants' MSJ,

21 hereby incorporated by reference. (D.I. 185-9 at Section IV). This error, too, is prejudicial

22 because the Court applied this construction to grant summary judgment of no literal

23 infringement for a number of accused cameras, and Plaintiffs are entitled to have a jury

24 consider their meritorious evidence of literal infringement at a new trial. The Court

25 compounded the error by failing to instruct the jury as to the construction of this disputed

---

[3] It is noted that, under the Court's instruction of "turning on" and "turning off", a determination that the method steps cannot overlap would exclude all disclosed embodiments from the scope of the claim, which is incorrect for the same reasons as discussed above.

term. *See O2 Micro*, 521 F.3d at 1361.

   **c.** **'163 Patent: The Court's Erroneous Means-Plus-Function Instruction**

  The Court also erroneously instructed the jury regarding the alleged means-plus-function claim limitations of the '163 patent. Before trial, the parties disputed whether '163 claim terms were means-plus-function elements, and if so, the terms' correct function and structure. D.I. 421, 419. The Court gave the jury a "means-plus-function" instruction, noting that "you've heard a little bit about means-plus-functions" and instructing the jury about "separate rules that apply to means-plus-function requirements that are used in some of the claims" including function and structure of such claim terms. But the Court did not identify the "means-plus-function requirements that are used in some of the claims," leaving the jury to speculate as to how to apply this instruction, and to resolve for itself the function and structure applicable to the claims.[4] Specifically, the Court deleted the parties' proposed instructions that would have defined the function and structure, and changed Plaintiffs' requested instruction to charge the jury to "first decide whether the products have any structure that performs the ***claimed function***" and then to "determine whether that structure is the same as or equivalent to the structure ***disclosed in the patent specification***." Ex. B at 27 (Court's hand-written redline edits to jury instructions, with Court's changes shown in emphasis). But it is the Court's duty to determine the "claimed function" and to identify the "structure disclosed in the patent specification." *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1347 (Fed. Cir. 1999).  Because this issue was incorrectly sent to the jury, it is unknown and unreviewable what "claimed function" or "structure disclosed" the jury applied.  A new trial is needed to correct this error.

  This error was compounded when the Court defined portions of the "first filtering means…" and "second filtering means…" in a way that was unrelated to the claim terms.

---

[4] Plaintiffs asserted claim 16 at trial, which is dependent on claim 15.  '163 patent claims 15 and 16 both explicitly mention "means" terms.  The parties disputed whether they were "means-plus-function terms," and if so, what their function and structure were.  Both parties sought construction of these terms prior to trial.

The Court defined the "first filtering means" as a "linear matched filter, programmed to employ an algorithm described in the patent"; and defined the "second filtering means" to mean a "non-linear filter programmed to employ an algorithm described in the patent." D.I. 511 at 16 (Court's Closing Instruction No. 15). The Court provided no reasoning for these constructions, which neither party had requested. These constructions imposed an incorrect and heightened burden on Plaintiffs, directing the jury to find infringement only if "an algorithm described in the patent" was practiced, even where such algorithms may have had no relation to language in the patent claim. This was prejudicial error, because **(1)** the jury may have found non-infringement based on a portion of an algorithm unrelated to the claim language and not properly before the jury, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1346–47 (Fed. Cir. 2015) ("'[I]t is the claims, not the written description, which define the scope of the patent right. … [A] court may not import limitations from the written description into the claims.'") (internal citations and quotes omitted); **(2)** this instruction limited the jury's consideration to "described" embodiments of algorithms in the patent, which is plain error, *id.*, and **(3)** just as with the means-plus-function instruction, the jury was forced to construe the claim by picking "an algorithm described in the patent" as the bounds for each term.  These errors prejudiced Plaintiffs, since it is impossible to know how the jury performed the "claim construction" tasks improperly delegated to them or how their claim constructions affected the jury's finding of non-infringement. The Court should order a new trial to remedy these errors.

## 2.    The Court's Other Jury Instruction Errors

This Court also erred in failing to instruct the jury regarding contributory infringement and failing to instruct the jury as to which party had the burden regarding Nikon's license defense.

As to contributory infringement, the Court gave no reason for failing to instruct the jury on this meritorious theory of infringement. This amounted to granting JMOL in favor of Nikon on the issue of contributory infringement.  But that was improper.  First, this Court had already stated that all motions for JMOL would be reserved.  Second, the

Court did not give Plaintiffs notice of why the evidence they had put forward was supposedly deficient nor the opportunity to be heard on the issue or to identify the relevant evidence in the record. Third, to the extent that the Court's implicit judgment was based on a perceived lack of evidence of underlying direct infringement by end users—the only issue the Court mentioned in this context, *see* Tr. (Court) at 1117:1-25— it was incorrect. Plaintiffs presented substantial evidence of direct infringement by end-users. For example, as to the '335 patent, Plaintiffs expert Dr. Carley explained that end-users directly infringement when they took a picture with one of the accused cameras, and that Nikon contributed to that infringement. *See* Tr. (Carley) at 295:5-25. As to the '312 family of patents, Dr. Subramanian explained that the claimed invention allowed for better high-light and low-light photography (*see, e.g.,* Tr. (Subramanian) at 339:4-15), and Plaintiffs introduced testimony that Nikon developed low ISO mode in direct response to requests from its customers, *see* Tr. (Etchells) at 536:12-537:19. And as to the '163 patent, Plaintiffs presented evidence that Face Priority AF was used by default in a number of accused products. *See* Tr. (McBride) at 408:8-409:10. In short, Plaintiffs presented ample evidence of direct infringement, and the Court erred in not recognizing this evidence and failing to instruct the jury regarding one of the theories of infringement put forward by Plaintiffs.

As to Nikon's license defense, the Court erred by not instructing the jury that Nikon had the burden to prove this defense. Legally, Nikon unquestionably had the burden of proving its license defense by a preponderance of the evidence. *See, e.g., Endo Pharm., Inc. v. Actavis, Inc.*, 746 F.3d 1371, 1374 (Fed. Cir. 2014) (noting that the burden of proving license as a defense rests with the alleged licensee); *see also Spindelfabrik Suessen-Schurr v. Schubert & Salzer*, 903 F.2d 1568, 1576 (Fed. Cir. 1990) ("As the proponents of the [license] defense, it was incumbent upon [Nikon] to show that the license authorized the sale of the infringing machines in the United States."); *Promega Corp. v. Life Techs. Corp*, No. 10-00281, Dkt. 498 (W.D. Wi. Feb. 3, 2012) (collecting cases). But the instruction given by the Court implied that Plaintiffs had the burden of proving a lack of permission to use the

patent. In particular, the Court found the reference to a lack of permission in the infringement instruction encompassed the license defense (*see* Tr. (Court) at 1117:23-25), and that instruction stated that Plaintiffs had the burden of proving infringement, (*see* D.I. 511, at 18 (infringement instruction); *id.* at 19 (permission instruction included as part of infringement instruction). As Courts have recognized, jury instructions as to the appropriate burden of proof are almost always crucial to the outcome of trial. *See Karnes v. SCI Colorado Funeral Servs.*, Inc., 162 F.3d 1077 (10th Cir. 1998).[5]

## B.   Plaintiffs Are Entitled to a New Trial Because Of Errors in the Admission and Presentation of the Evidence

A new trial is also warranted because of evidence that should have been disallowed was admitted instead. First, Nikon was erroneously allowed to present entirely new theories at trial that had never previously been disclosed. As explained in Plaintiffs' concurrently filed motion for JMOL, Nikon presented a new theory of non-infringement for the '574 patent. As this was Nikon's only non-infringement theory presented for that patent, JMOL should be granted. However, even if this Court does not grant JMOL, it should at least order a new trial free from this prejudicial and improperly admitted evidence. In addition, this Court allowed Nikon to present an entirely new theory of invalidity for the '163 patent. Prior to trial, Nikon had not disclosed any theory that claim 16 of the '163 patent was anticipated.  Nikon's own submitted jury form only provided an anticipation defense for claims 1, 2, 3, and 6 of this patent—not claim 16. (*See* D.I. 431-1, at 33.) For claim 16, Dr. Darrell relied solely on an obviousness argument. (*See* D.I. 466, at 5-6.) Yet Nikon was allowed to present this anticipation theory at trial, causing Plaintiffs to spend precious trial time defending against this new theory—time that would otherwise have been spent explaining why Nikon's products infringe in greater detail.

---

[5]      The Court also erroneously instructed the jury on enablement, even though Nikon failed to present any enablement defense at trial.  While Defendants attempted to justify keeping this instruction because of discussion as to whether certain prior art was enabled, the instruction specifically stated that "Defendants contend that one or more patent claims are not enabled."  (*See* D.I. 511, at 32.)  Such an instruction serves no purpose other than to confuse the jury.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR NEW TRIAL
Case No. 2:17-cv-07083-RGK (MRWx)

Second, Nikon's expert witnesses was improperly allowed to argue claim construction to the jury. Specifically, with respect to the '312 patent family, Dr. Kleinfelder testified about the meaning of "line select signal" based on the prosecution history. *See* Tr. (Kleinfelder) at 871:17-873:14. Plaintiffs objected to this evidence, but this objection was overruled. *See* Tr. at 872:16-17. Claim construction, though, is a matter solely for this Court to decide, not the jury. *Every Penny Counts, Inc. v. American Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009). Thus, it is error for a Court to allow "testimony grounded in the prosecution history to discern the meaning of a claim is properly excluded from presentation to the jury." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL 971765, at *5 (N.D. Cal. Mar. 5, 2014); *see also EMC Corp. v. Pure Storage, Inc.*, No. CV 13-1985-RGA, 2016 WL 775742, at *4 (D. Del. Feb. 25, 2016). The presence of claimed "line select signal" was disputed at trial, and thus allowing this improper testimony was prejudicial to plaintiffs. *See* Tr. (Kleinfelder) at 873:19-874:14.

Compounding the errors discussed above, the approach taken to the order of proof at trial, the admission of evidence, and legitimate disputes raised by the parties were also prejudicial and warrant correction. Despite the parties agreeing before trial as to an order of proof that would accommodate conflicts of expert witnesses—conflicts that arose as a result of the last minute postponement of trial due to illness of one of Defendants' expert witnesses—the Court on the first day of trial rejected the stipulation filed by the parties. *See* Tr. (Court) at 8:7-11:25. The Court did this despite having previously stated that it would do its best to accommodate witness unavailability because of the rescheduled trial. *See* Ex. C (Continuance Hearing Transcript) at 13:2-30. Plaintiffs had prepared to present its evidence in the order that the parties had agreed to. Yet, without advance notice, the Court rejected the agreed plan, causing Plaintiffs to have to, among other problems, forego presenting rebuttal testimony from one of its experts.

The introduction of evidence also presented prejudicial errors. At the outset of trial, the parties reasonably believed that the rules regarding the introduction of exhibits would be the same as the previous trial between the parties. However, the Court changed the

rules in the middle of trial, explaining that only the page numbers actually mentioned by witnesses would be allowed into evidence. *See* Tr. (Court) at 195:4-201:9. Additionally, when the parties filed written objections to certain evidence—even when done so at the Court's direction, the Court struck the pleadings without explanation. *See, e.g.,* Tr. (Court) at 983:24-984:2 (instructing Plaintiffs to file a motion to strike); (D.I. 489 (motion to strike)); (D.I. 492 (striking Plaintiffs motion to strike for allegedly being untimely made).

"A judge must strive to be a model of patience and impartiality, even when faced with an irritating attorney. Though often difficult to maintain, judicial decorum is necessary to preserve the litigant's right to a fair trial." *See, e.g., Santa Maria v. Metro-North Commuter R.R.,* 81 F.3d 265 (7th Cir. 1996) (finding an abuse of discretion in not granting a new trial because of a lack of judicial decorum). Because the Court's actions affected the fairness of the trial, this Court should grant this motion for a new trial. *See id.*

### C.    A New Trial Is Warranted Because the Jury's Determinations are Against the Clear Weight of the Evidence

Plaintiffs are also entitled to a new trial because the jury's non-infringement verdict is against the clear weight of the evidence. *See Georgia-Pac. Corp. v. U.S. Gypsum Co.,* 195 F.3d 1322, 1333 (Fed. Cir. 1999), *opinion amended on reh'g,* 204 F.3d 1349 (Fed. Cir. 2000). Courts apply a lower standard of proof to motions for a new trial than they do to motions for JMOL. A verdict may be supported by substantial evidence, and thus survive JMOL, yet still be against the clear weight of the evidence. *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007). Unlike motions for JMOL, "[t]he court may weigh the evidence, assess the credibility of witnesses, and need not view the evidence in the light most favorable to the prevailing party." *Computer Access Tech. Corp. v. Catalyst Enters., Inc.,* 273 F. Supp. 2d 1063, 1066 (N.D. Cal. 2003). In ruling on a motion for new trial, the district court has the duty to set aside the jury's verdict when, "in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski,* 481 F.3d at 729.

### 1.    The Clear Weight of the Evidence Shows That the Df, D4, and D4S Cameras Infringe the Asserted Claims of the '312 Family

A new trial is warranted on the '312 family because the clear weight of the evidence

12

1   demonstrates that Nikon's accused cameras infringe the asserted claims of the '312 family.

2   As explained in in Plaintiffs' motions for JMOL, Plaintiffs' expert Dr. Subramanian

3   conclusively demonstrated that the image sensors in the accused Nikon Df, D4, and D4S

4   cameras infringe claim 7 of the '017 patent and claim 30 of the '574 patent, either literally

5   or under the doctrine of equivalents. The only evidence of non-infringement that

6   Defendants presented to the jury with respect to these claims was based on improper

7   and/or new claim construction arguments that the Court did not adopt.

8           With respect to claim 1 of the '312 patent, as explained in detail in Plaintiffs'

9   response to Nikon's motion for JMOL (D.I. 515 at pages 3-5), Dr. Subramanian

10   conclusively demonstrated that the image sensors in the accused Nikon Df, D4, and D4S

11   cameras infringe claim 1 of the '312 patent by comparing the specification of the image

12   sensor in the Nikon Df camera (Ex. D, JTX-432) and the timing diagram for the Nikon

13   Df image sensor (Ex. E, JTX-365),[6] and compared those exhibits to each element of claim

14   1. The only evidence of non-infringement that Defendants presented to the jury was Dr.

15   Kleinfelder's conclusory testimony that sharing the sensing node of a current scan line

16   with a sensing node of a subsequent scan line is substantially different than sharing with a

17   sensing node of a previous scan line, an opinion contradicted by Nikon's own image

18   sensor engineer. The Court's claim construction precluded Defendants' other arguments

19   with respect to non-infringement of claim 1 of the '312 patent. In particular, the Court

20   construed two terms from the claim 1: (1) "unit pixel" was construed as "[a] structure

21   including one or more photodiodes"; and (2) "selectively shared with a sensing node of a

22   unit pixel in a current scan line" was construed as "[c]onnectable via a switch with a

23   _____

24   [6] Dr. Subramanian's testimony described above applies to each of the cameras accused of infringement. Dr. Subramanian testified that each of the D4, D4S, and Df "have similar

25   image sensors" and that "the image sensors in those cameras have the same structure and

26   operation, for purposes of infringement, of the three patents" (the '312, '017, and '574 patents). *See Tr.* (Subramanian) at 349:11–19, 350:4-351:6; Ex. F, PDX-220. Defendants

27   never challenged this statement, and thus it stands unrebutted. *See Integra*, 496 F.3d at 1345

28   (holding that a court on motion for JMOL "should give credence to … that evidence supporting the moving party that is uncontradicted and unimpeached).

sensing node of a unit pixel in a current scan line to selectively receive photocharges from one or more photodiodes of the unit pixel in the current scan line and not from any photodiode in the previous scan line." (*See* D.I. 511, at 17.) In doing so, the Court rejected Defendants' proposed construction for the term "in response to a line select signal"—instead opting to give the term the full breadth of its plain and ordinary meaning.

Plaintiffs' expert Dr. Subramanian gave the jury a detailed and thorough analysis of the specification for the image sensor in the Nikon Df camera (Ex. D, JTX-432) and the timing diagram for the Nikon Df image sensor (Ex. E, JTX-365),[7] and compared those exhibits to each element of claim 1. (D.I. 515 at pages 3-5.) Defendants disputed two limitations of the "wherein" element (element D). Defendants argued, first, that according to Defendants' claim construction, the Nikon image sensors do not perform sharing in response to a "line select signal," and, second, that the Nikon image sensors do not share sensing nodes with a previous scan line.

As with Defendants' position with respect to the "select signal" limitation of claim 7 of the '017 patent, Defendants' non-infringement argument with respect to the "line select signal" of claim 1 of the '312 patent completely relies on Defendants' construction of the term, but because the Court did not adopt this construction, the non-infringement argument is moot. Regarding the "previous scan line" limitation, Dr. Subramanian explained how the image sensors in the D4, D4S, and Df cameras infringe the limitation under the doctrine of equivalents. Specifically, Dr. Subramanian explained that the Nikon image sensors "implement selective sharing between a current scan line and a subsequent scan line," rather than "a current scan line and a previous scan line," but that the two types

---

[7] Dr. Subramanian's testimony described above applies to each of the cameras accused of infringement. Dr. Subramanian testified that each of the D4, D4S, and Df "have similar image sensors" and that "the image sensors in those cameras have the same structure and operation, for purposes of infringement, of the three patents" (the '312, '017, and '574 patents). *See Tr.* (Subramanian) at 349:11–19, 350:4-351:6; Ex. F, PDX-220. Defendants never challenged this statement, and thus it stands unrebutted. *See Integra*, 496 F.3d at 1345 (holding that a court on motion for JMOL "should give credence to … that evidence supporting the moving party that is uncontradicted and unimpeached).

14

of sharing were insubstantially different. Tr. (Subramanian) at 367:23–368:9. Dr. Subramanian applied the function-way-result test to compare sensing node sharing between a current and previous scan line (as in claim 1) and sharing between a current and previous scan line (as in the Nikon image sensors), and concluded that both cases increase or decrease the available capacitance (substantially same function), both switch an additional capacitance into the pixel circuit (substantially same way), and both provide a variable sensing node capacitance (substantially same result). *See* Tr. (Subramanian) at 368:10–24. Moreover, when asked about sharing with a sensing node in a previous versus a subsequent scan line, Nikon's image sensor engineer Mr. Shima testified that "either could be done," and that from a circuitry perspective, there was no reason to do it one way or the other. Tr. (Shima) at 235:5–12. With respect to the rest of element D, Dr. Subramanian explained how the Nikon image sensors "selectively share" sensing nodes "in response to a line select signal of the current scan line" using a transistor acting as a switch that is controlled by line select signal FDSW. Tr. (Subramanian) at 369:24–372:5; Ex. D, JTX-432, at 24; Ex. E, JTX-365, at 6 (timing diagram).

Dr. Subramanian was never impeached in connection with this or any other testimony. *See United Nat'l Maint.*, 2012 WL 12845620, at *3 (explaining that, "[i]n deciding a Rule 50 motion, the Court should review all of the evidence in the record and give credence to uncontradicted and unimpeached evidence supporting the moving party"). In contrast, Dr. Kleinfelder's testimony about whether the sensing node from a current scan line could be shared with a previous or subsequent scan line contradicted Nikon's image sensor engineer Mr. Shima's testimony. Tr. (Kleinfelder) 883:15-21. In fact, at trial, Dr. Kleinfelder could not recall Mr. Shima's role at Nikon or that Nikon had designated Mr. Shima to testify about the technical aspects of the structure and design of Nikon's image sensors. Tr. (Kleinfelder) 884:8–23. And while Dr. Kleinfelder disagreed with Mr. Shima's testimony, he conceded that he was not claiming to know more about Nikon's image sensors than Nikon's image sensor engineers. Tr. (Kleinfelder) 885:9–11. Moreover, at trial Dr. Kleinfelder appeared not remember the details of his non-infringement positions

1  and or the language of the asserted claims. *See* Tr. (Kleinfelder) 881:22–883:12 (repeatedly

2  asking to see the language of the asserted claims to confirm whether his non-infringement

3  positions applied to those claims). Finally, Dr. Kleinfelder additionally improperly

4  proffered a new non-infringement position regarding claim 30 of the '574 patent at trial.

5  *See* Tr. (Kleinfelder) 887:5–888:5. Each of these issues seriously calls into question Dr.

6  Kleinfelder's credibility. Thus, the evidence supporting infringement was overwhelming,

7  and Nikon's rebuttal case was based on a claim construction inconsistent with the Court's

8  jury instructions and/or based on a non-infringement argument that contradicted Nikon's

9  own image sensor engineers. Thus, the jury's verdict of non-infringement was against the

10 clear weight of the evidence and cannot stand.

11          **2.      The Clear Weight of the Evidence Shows Nikon's Products Infringe the Asserted Claims of the '335 Patent**

12

13          A new trial is similarly warranted on the '335 patent because the clear weight of the

14 evidence demonstrates that Nikon's accused cameras infringe claims 1-3. Plaintiffs' expert,

15 Dr. Carley, presented extensive and compelling evidence as to the structure and operation

16 of the image sensors implemented in the accused cameras. Specifically, as discussed in D.I.

17 515, which is hereby incorporated by reference, Dr. Carley explained the evidence he

18 analyzed in determining infringement and that, based on this evidence, he was able to

19 conclude that—even under the Court's incorrect claim constructions—Nikon's accused

20 cameras infringe claims 1-3 of the '335 patent.

21          Nikon disputed only three aspects of Dr. Carley's analysis. ***First***, it contended that

22 the D5 and AR1410 images sensors do not practice the preamble of claim 1, because

23 "there is no direct connection between a power supply and a single sensing node between

24 the reset transistor."[8] Tr. (Kleinfelder) at 833:9-834:9, 834:22-835:4, 837:2-25. However,

25 although the Court specifically stated in its D.I. 305 that these image sensors "may,

26 however, infringe under the doctrine of equivalents" (D.I. 295 at 22), Dr. Kleinfelder has

27

28 ─────────────────────
[8] The Court construed the term "coupled" to mean "directly connected."  D.I. 295 at 22.
Plaintiffs disagree with the Court's construction for the reasons set forth above.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR NEW TRIAL
Case No. 2:17-cv-07083-RGK (MRWx)

1   failed to show that the DoE does not apply. Other than conclusory statements that

2   "[t]here's substantial differences and therefore there's no infringement under the Doctrine

3   of Equivalents for this sensor" and "[t]here's a substantial difference between the claims

4   of the patent and the way that the sensors actually operated," Dr. Kleinfelder did not

5   provide *any* evidence or reasoning to support his contention that the DoE does not apply.

6   *See* Tr. (Kleinfelder) at 836:2-22, 838:2-19.  In contrast, Dr. Carley explained in great detail

7   that the additional transistor between the reset transistor and the sensing node constitutes

8   an insubstantial difference to his infringement analysis under DoE.  *See* Tr. (Carley) at

9   272:5–13, 272:19–274:6.

10        ***Second***, Dr. Kleinfelder disagreed with Dr. Carley's conclusion that the accused

11   cameras meet limitations (c) through (f) of claim 1 under the doctrine of equivalents

12   because the exact timing at which certain transistors transition from one state to the other

13   is insubstantial.[9] Tr. (Kleinfelder) at 838:20-839:14. Dr. Kleinfelder, however, failed to

14   provide any substantive analysis under the doctrine of equivalents. Instead, he simply

15   stated in entirely conclusory fashion that there is a substantial difference "[b]ecause by

16   doing nothing instead of turning on and off, you're eliminating steps and those steps are

17   necessary to be implemented per the patent." Tr. (Kleindelder) at 846:9-19. In fact, Dr.

18   Kleinfelder did not even explain why keeping on or off a transistor would "eliminate"

19   steps, let alone how keeping a transistor on or off instead of transitioning the transistor

20   ***within*** the respective steps constituted a substantial difference. In contrast, Dr. Carley

21   explained in his DoE analysis that the actual state transition of certain transistors occurs

22   ***before*** the recited step, which constitutes an insubstantial difference to transitioning the

23   transistor ***within*** the recited step. Tr. (Carley) at 282:19-285:1, 285:12-286:7, 287:9-288:4,

24   288:21-289:3. In other words, as Dr. Carley explained, the state transition of the respective

25   transistor still occurs, but in certain cases it does before the recited step, which constitutes

26

27   [9] The Court construed the terms "turning off" and "turning on" to mean "that the

28   transistors *transition* from on to off." D.I. 295 at 13. Plaintiffs disagree with the Court's construction for the reasons discussed above.

infringement under the DoE. *Id.* Thus, contrary to Dr. Kleinfelder's contention, **no step** is eliminated. Notably, Dr. Kleinfelder took the **opposite** position when arguing invalidity. There, Dr. Kleinfelder testified it is acceptable that the actual state transition of certain transistors occurs **before** the recited step to show that the asserted prior art reads on the claims. Tr. (Kleinfelder) at 857:14-859:17.

*Third*, Dr. Kleinfelder contended that the accused cameras do not meet limitation (a) of claim 1, because "plaintiffs have not presented any technical data or evidence to demonstrate full depletion." Tr. (Kleinfelder) at 847:7-10. However Dr. Carley explained that each of the accused cameras performs this step with reference to testimony from Nikon's own engineers and timing diagrams—and Nikon's own engineers agreed with him. Tr. (Carley) at 275:10–277:20, 277:25–278:13, 278:25–279:8; *see also* Ex. G, JTX-321, at 10; Tr. (Shima) at 237:18–21; Ex. H, JTX-497, at 15; Ex. I, PDX-358; Ex. J, JTX-368, at 6; Ex. K, JTX-489, at 17; Ex. L, JTX-499, at 16; Ex. M, JTX-490, at 16; and Ex. N, JTX-498, at 17.[10]

Given the overwhelming evidence of infringement and the lack of any substance in Nikon's non-infringement case, a new trial should be ordered.

---

[10]     Nikon may attempt to argue that the jury could have found non-infringement based on Mr. Sanbongi's testimony that the photodiodes of the accused cameras might not be depleted to the noise floor, because "it could be said that the residual image is higher than the noise floor." Tr. (Sanbongi) at 785:12-18 (emphasis added.)  This opinion, notably, was not shared by either Dr. Carley or Dr. Klienfelder, who both agreed that full depletion for practical purposes means depleting the photodiodes to the noise floor. *See* Tr. (Carley) at 325:17-326:15; Tr. (Kleinfelder) at 820:11-821:13.  Moreover, Mr. Sangbongi did not know and admitted that Nikon does not "check if the photodiodes ever become completely empty." Tr. (Sanbongi) at 785:19-21 (emphasis added.) In contrast, Dr. Carley explained that he tested full depletion of the Nikon image sensors by having "TechInsights [] literally tear down the sensors" and "attach wires so that we could see the signals that carry out the full depletion step." Tr. (Carley) at 1050:11-1051:2; *see also id.* at 1052:14-17. Mr. Sanbongi's testimony also contradicted the testimony from Nikon's designated witness on the subject prior to trial-- Mr. Shima, confirmed that "the purpose of the reset phase in Nikon's image sensors is to empty out the photodiodes before accumulating charge for a new image." Tr. (Shima) at 237:18-21.  In short, this purported theory is not supported by any evidence presented at trial.

### 3.   The Clear Weight of the Evidence Shows Nikon's Products Infringe Claim 16 of the '163 Patent

A new trial is warranted on the '163 patent because the clear weight of the evidence demonstrates that Nikon's accused cameras infringe claim 16 of the '163 patent. At trial, Plaintiffs' expert Dr. Mundy testified that he had spent 130 hours reviewing the accused source code and had concluded Nikon's accused cameras practiced claim 16 of the '163 patent. Tr. (Mundy) at 561:18-22, 598:3-14. Dr. Mundy carefully walked through the evidence, explaining the how the Pine, Parfait, and Okao face detection source code on the accused products demonstrates infringement of the '163 patent claim 16. Tr. (Mundy) at 583:24-602:22, 606:1-621:2 (JTX-1623A, JTX-1623B, JTX-1623C). Nikon's expert Dr. Darrell, on the other hand, presented no source code to the jury. He testified that he was not familiar with implementations of the face detection algorithm on the Nikon cameras necessary to evaluate infringement by those products. For example, at trial, although he claimed familiarity with the face detection hardware called Pine running on most accused cameras, he was confronted with testimony he gave previously at deposition that when asked "are you familiar with Pine in the Omron produced code?" his response was "I am not familiar with that." Tr. (Darrell) at 765:10-14. Dr. Darrell's conclusory rebuttal to Dr. Mundy was not based on more than Dr. Darrell's own ipse dixit.

### 4.   Sony License Defense

Plaintiffs are entitled to a new trial because a jury finding that Nikon did not infringe due to its license defense is against the clear weight of the evidence. As discussed above, Nikon has the burden of proving its license defense. *Endo Pharm.*, 746 F.3d at 1374. As the Sony license undisputedly does not cover every image sensor made by Sony—for example, the license carves out sensors made by Sony where Sony acts as a foundry or a contract manufacturer for another party—Nikon's burden included proving that the image sensors it acquired from Sony were not subject to this exception. *See* Ex. O, JTX-385, at 4; Tr. (Carley) at 1046:4-1047:17. Nikon did not meet its burden.

Plaintiffs presented unrebutted testimony that, regardless of whether Nikon designs

its sensors, Sony acts as a contract manufacturer with respect to the sensors it makes for Nikon. As Dr. Carley explained, " [a] contract manufacturer is if Nikon came to Sony and said: We want image sensors that meet these specs and we've done part of the design and you Sony do the rest of the design and fabricate them and sell them back to us under some conditions of exclusivity." Tr. (Carley) at 1046:22–1047:1. Dr. Carley further explained that "that [is] exactly what the Japanese Sony entity does with the [accused] image sensors" made by Sony for Nikon, meaning that "the sale of [those sensors] is excluded from th[e Sony] license agreement." *Id.* at 1047:12–17. Defendants offered no evidence whatsoever regarding the contract manufacturer exclusion from the contract.

Instead, the only evidence that Nikon offered related to the foundry exception. In particular, Nikon offered testimony from Mr. Sanbongi, who testified that Sony designs the internals for the sensors. *See* Tr. (Sanbongi) at 783:3-784:15. This evidence is irrelevant to the contract manufacturer question and was not credible. Mr. Sanbongi acknowledged that he was interviewed for and reviewed the accuracy of a draft of an article that Mr. David Etchells published, which was sponsored by Nikon and stated that Nikon designs its image sensors "from the ground up." Ex. P, JTX-178, at 1; Tr. (Sanbongi) at 789:4-17. Mr. Sanbongi was impeached at trial with testimony from his deposition, where he stated that he was unable to identify any errors in this article. *See* Tr. (Sanbongi) at 790:2-21. Yet the article directly contradicted Mr. Sanbongi's testimony that Nikon does not design its own image sensors: the article repeatedly stated that Nikon designs its sensors to "an incredible level of detail," including the internal components that Mr. Sanbongi claims Nikon does not design. Ex. P, JTX-178, at 3; *see also, e.g., id.* at 4. Nikon made no attempt to resolve the contradictory statements from the article with the testimony of Mr. Sanbongi. The only reasonable conclusion a jury could have made was that Nikon failed in its burden of proving its license defense. At the very least, this Court should grant a new trial to reverse a potential jury verdict to the contrary.

## IV.    CONCLUSION

Accordingly, Plaintiffs' motion should be granted in its entirety.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR NEW TRIAL
Case No. 2:17-cv-07083-RGK (MRWx)

Dated:  February 5, 2019          FISH & RICHARDSON P.C.

By:  /s/ Proshanto Mukherji

Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel:  (213) 533-4240, Fax: (858) 678-5099

Frank Scherkenbach (SBN 142549)
scherkenbach@fr.com
Kurt L. Glitzenstein (Admitted Pro Hac Vice)
glitzenstein@fr.com
Proshanto Mukherji (Admitted *Pro Hac Vice*)
mukherji@fr.com
Jeffrey Shneidman (Admitted *Pro Hac Vice*)
shneidman@fr.com
Elizabeth G.H. Ranks (Admitted *Pro Hac Vice*),
ranks@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel:  (617) 542-5070, Fax: (617) 542-8906

Markus D. Weyde (SBN 285956) weyde@fr.com
K. Nicole Williams (SBN 291900)
nwilliams@fr.com
Jared A. Smith (SBN 306576)
jasmith@fr.com
Oliver J. Richards (SBN 310972)
orichards@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Tel:  (858) 678-5070, Fax:   (858) 678-5099

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jennifer Huang (Admitted *Pro Hac Vice*)
jhuang@fr.com
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
Tel:  (612) 335-5070, Fax:   (612) 288-9696

Andrew R. Kopsidas (Admitted *Pro Hac Vice*)
kopsidas@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W., Ste. 1000
Washington, DC 20024
Tel:  (202) 783-5070, Fax: (202) 783-2331

Attorneys for Plaintiffs, CARL ZEISS AG and
ASML NETHERLANDS B.V.

PLAINTIFFS' MEMORANDUM ISO MOTION FOR NEW TRIAL
Case No. 2:17-cv-07083-RGK (MRWx)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 5, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.


*/s/ Proshanto Mukherji*
Proshanto Mukherji